UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

SECURITIES AND EXCHANGE COMMISSION,         :

                Plaintiff,         :         05 Civ. 5231
                                        (LTS) (DFE)

   -against-         :

AMERINDO INVESTMENT ADVISORS INC.,         :
AMERINDO INVESTMENT ADVISORS, INC.,
AMERINDO ADVISORS U.K. LIMITED,         :
AMERINDO MANAGEMENT INC.
AMERINDO TECHNOLOGY GROWTH FUND, INC.,   :
AMERINDO TECHNOLOGY GROWTH FUND II, INC.,
TECHNO RAQUIA, S.A.,         :
ALBERTO W. VILAR, and
GARY ALAN TANAKA,         :
                Defendants.
------------------------------------------------------------------x

## REPORT OF ROBERT KNUTS, AS MONITOR FOR DEFENDANT AMERINDO INVESTMENT ADVISORS INC.

A.   **Introduction**

By order dated June 2, 2005 ("Order"), this Court appointed me to serve as Monitor for defendant Amerindo Investment Advisors Inc. ("Amerindo U.S.") and perform certain tasks described in the Order. Those tasks included: (a) monitoring the ongoing business operations of Amerindo U.S., a registered investment advisor, including investment decisions made on behalf of clients; and (b) gathering certain information concerning the past business operations of Amerindo U.S. and its current financial condition.

As reported orally to the Court during the last pretrial conference in this matter, the business operations of Amerindo U.S. experienced severe challenges in the wake of the civil action brought by plaintiff Securities and Exchange Commission ("SEC") and the criminal

charges brought by the U.S. Department of Justice against defendants Alberto W. Vilar ("Vilar") and Gary A. Tanaka ("Tanaka"). Within approximately sixty days of the institution of the civil and criminal proceedings, all investment company and institutional clients of Amerindo U.S. elected to terminate the advisory contracts that constituted the primary source of regular revenue for Amerindo U.S. Since that time, Amerindo U.S. has terminated many of its employees and has not attempted to provide investment advisory services to any investment companies or institutional investors. The financial consequences for Amerindo U.S. have been a shrinking asset base and an inability to continue paying fixed operating expenses indefinitely in the absence of a fundamental change in business prospects.

As a result of these events, in performing my duties as Monitor, I have attempted at all times to minimize the costs and fees associated with these duties. In that way, I have hoped to help preserve the remaining assets of Amerindo U.S. so that those assets might be available to satisfy, at least in part, any investor claims for which Amerindo U.S. may be held liable or, in the event that no such claims are found valid, such assets could be returned to the owners of Amerindo U.S. In particular, to date, I have not attempted to identify, document, evaluate, and investigate each possible business relationship between and among Amerindo U.S. and the other "Amerindo" entities that the SEC recently named as additional defendants in this action. Nor have I attempted to investigate and make a factual determination as to whether various individuals who transacted business with certain "Amerindo" entities should also be considered "clients" of Amerindo U.S.[1] The remainder of this report describes the information that I have

---

[1] The determination of who should be considered a "client" of Amerindo U.S. is also the subject of certain private civil litigations and the claims brought by the SEC in this action.

gathered concerning Amerindo U.S. in accordance with the Order and the steps that have been taken to corroborate that information.[2]

**B.    Clients of Amerindo U.S.**

Paragraph III(G) of the Order empowers the Monitor to:

> determine the names and addresses of all Amerindo [U.S.] clients, and how their funds were invested by Amerindo [U.S.], including but not limited to the amount of funds they had invested as of December 31, 2004, the type of investments held, where their investments were custodied, and who had discretionary authority over their accounts . . .

Attached as Exhibit 1 is a list of all investment company and institutional investor clients of Amerindo U.S. as of December 31, 2004.[3] The exhibit also describes the amount invested as of that date, where their investments were custodied, and who had discretionary authority over the accounts. We compared the names of the clients on the list with other records maintained by Amerindo U.S., including internal accounting records, bank statements, and redemption letters received from clients. Attached as Exhibit 2 are Transaction Summaries for each client, which describes the investments held by each client as of December 31, 2004.

---

[2]    In gathering the information described in the report, I received assistance from my colleagues at Day, Berry & Howard LLP.

[3]    Many of the exhibits referenced in this report contain nonpublic information concerning entities and persons who are not parties to the pending litigation. Other exhibits contain nonpublic financial information concerning Amerindo U.S. In order to provide an opportunity for the parties to the litigation to consider whether or not the exhibits to this report should be filed under seal, I have served copies of the exhibits upon counsel for all parties and transmitted a courtesy copy to the Court but I have not yet filed a set of exhibits with the Clerk of the Court.

C.  **Other Relevant Accounts**

Paragraph III(H) of the Order empowers the Monitor to:

> determine the names of all individuals and entities owning securities accounts or initiating securities transactions over which Amerindo, Alberto William Vilar ("Vilar"), Gary Alan Tanaka ("Tanaka") or any other Amerindo employee have maintained and/or exercised discretionary authority, how these individuals' and entities' funds were invested, including but not limited to the amount of funds they had invested as of December 31, 2004, the types of investments they held, where their investments were custodied, and who maintained discretionary authority over the account . . .

This paragraph of the Order concerns accounts over which Amerindo U.S., Vilar or Tanaka exercised discretionary authority, other than the accounts of the investment company and institutional investor clients of Amerindo U.S. To attempt to identify all such accounts, we first identified all possible account custodians that were referenced in the books and records of Amerindo U.S. We then sent letters to all the institutions that had been identified as possible account custodians and requested that they provide account identifying information for any accounts over which Amerindo U.S., Vilar, Tanaka, or certain employees of Amerindo U.S. held discretionary authority. Attached as Exhibit 3 is a list of all possible account custodians that we identified from our review of Amerindo U.S. documents and from whom we requested account information.

I received limited information in response to the request for information. Several of the institutions declined to provide all requested information because the requested information was nonpublic and subject to privacy and confidentiality restrictions. Other institutions did not respond to the request for information at all. As a result, to date, I do not know whether I have obtained complete information concerning all accounts for which Amerindo U.S., Vilar, Tanaka, or employees of Amerindo U.S. exercised discretionary authority. Attached as Exhibit 4 is a list

of the accounts that have been identified by financial institutions as providing discretionary authority for Amerindo U.S., Vilar, Tanaka, or employees of Amerindo U.S. and were not investment company or institutional investor clients of Amerindo U.S.

**D.     Business Relationships Among "Amerindo" Entities**

> Paragraph III(I) of the Order empowers the Monitor to:
>
> > determine the relationship between or among Amerindo [U.S.], Amerindo Investment Advisors, Inc. (Panama), Amerindo Advisors (U.K.) Limited, and Amerindo Investment Advisors (Cayman) Limited . . .

As noted above, in light of the limited financial assets of Amerindo U.S. and the powers of the Monitor described in the Order, to date, I have not attempted to identify, investigate, and determine all business relationships between or among Amerindo U.S. and other "Amerindo" entities. Many financial transactions occurred between Amerindo U.S. and other "Amerindo" entities during the period from 2002 through May 2005, when this action was instituted, and are identified in Exhibit 5. Recently, the following additional transaction occurred at the direction of defendants Vilar and Tanaka: Amerindo U.S. transferred $26,635.50 to Amerindo Advisors U.K. Limited ("Amerindo U.K.").

**E.     Balance Sheet of Amerindo U.S.**

> Paragraph III(J) of the Order empowers the Monitor to:
>
> > determine the location and amount of all assets, liabilities, and property currently held, directly or indirectly, by or for Amerindo [U.S.]'s benefit . . .

Attached as Exhibit 6 is a draft balance sheet prepared by employees of Amerindo U.S. as of September 30, 2005. Our review of the financial records and past business operations of Amerindo U.S. corroborates generally the information contained in this draft balance sheet. This draft balance sheet does not attempt to quantify any liabilities of Amerindo U.S. relating to the action brought by the SEC or other claims by persons who contend that they were clients of

Amerindo U.S. The draft balance sheet also does not attempt to value an outstanding claim for fees that may be owed to Amerindo U.S. by Amerindo Funds, Inc.[4]

Since September 30, 2005, the assets of Amerindo U.S. have continued to be depleted by payment of operating expenses, including substantial rent payments and legal fees. Also included in Exhibit 6 is an estimate of Amerindo U.S.'s assets as of December 1, 2005.

### F.   **Financial Transaction History: January 2002 – June 2005**

Paragraphs III(K), III(L), and III(M) of the Order empower the Monitor to gather information, for the period from January 2002 through the date of the Order, concerning all funds received by Amerindo U.S., all funds received by Amerindo U.S. from clients of Amerindo U.S., and all funds transferred by Amerindo U.S. to any other person.

To compile this information, we reviewed internal financial records of Amerindo U.S., as well as bank statements, payroll records, and brokerage account statements. Attached as Exhibit 7 is a chart that describes funds received by Amerindo U.S. during the relevant time period from any person other than an investment company or institutional investor client of Amerindo U.S. Attached as Exhibit 8 is a chart that describes funds received by Amerindo U.S. during the relevant time period from investment company and institutional investor clients of Amerindo U.S. Attached as Exhibit 9 is a chart that describes funds transferred by Amerindo U.S. to others during the relevant time period.

---

[4] In paying certain advisory fees and honoring a redemption demand by Amerindo U.S., the Amerindo Technology Fund set off certain expenses against the payment made to Amerindo U.S. According to counsel for Amerindo Funds, Inc., this set-off was authorized by an agreement entered into between Amerindo U.S. and Amerindo Funds, Inc. to limit the operating expenses of the Amerindo Technology Fund. Counsel for Amerindo U.S. contends that the payments withheld by Amerindo Funds, Inc. were not authorized by the agreement between the parties.

G. **Custodians of Amerindo U.S. Assets**

Paragraph III(N) of the Order empowers the Monitor to:

> determine the names and last known addresses of all banks, brokers, insurance companies, bailees, debtors, trustees, custodians, or other persons or entities currently holding assets belonging to or for the benefit of Amerindo [U.S.] . . .

To assemble this information, we first identified all financial institutions that maintained custody of accounts held by investment company and institutional investor clients of Amerindo U.S. Then, we reviewed all internal financial records of Amerindo U.S. to identify other financial institutions that might hold assets belonging to Amerindo U.S. After identifying this list of possible custodians of Amerindo U.S. assets, we contacted each of those institutions and requested information concerning any assets held by those financial institutions.

As in the case of the attempt to obtain full information concerning accounts over which Amerindo U.S. and others exercised discretionary authority, we had limited success in obtaining complete responses to our request for information from possible custodians of assets belonging to Amerindo U.S. Some financial institutions did not respond to our request for information; others appeared to provide only partial responses to the request. As a result, I do not know whether I have identified all financial institutions that currently hold assets belonging to Amerindo U.S. Attached as Exhibit 10 is a list of financial institutions that I have identified as currently holding assets belonging to Amerindo U.S.

**H.     Disbursements By Amerindo U.S. To Individual Defendants**

Paragraph III(O) of the Order empowers the Monitor to:

> identify all money, assets, funds, securities, and real or personal property disbursed by Amerindo [U.S.] for the direct or indirect benefit of Vilar, Tanaka, of any of their beneficiaries, including Renata Tanaka, at any time from January 1, 2002 to the present, describing the source and recipient, amount, and date of disbursement of each of the items listed . . .

To obtain the information concerning all disbursements of funds by Amerindo U.S. during the relevant time period, we reviewed the internal financial records of Amerindo U.S., including the general ledger, bank accounts, and brokerage account statements. Attached as Exhibit 11 is a chart that identifies disbursements made by Amerindo U.S. to Vilar during the relevant time period. Attached as Exhibit 12 is a chart that identifies disbursements made by Amerindo U.S. to Tanaka during the relevant time period. Attached as Exhibit 13 is a chart the identifies disbursements made by Amerindo U.S. to Renata Tanaka during the relevant time period.

**I.     Conclusion**

As of the date of this report, although it remains registered with the SEC as an investment advisor, Amerindo U.S. does not currently provide investment advisory services to any clients and, therefore, there is currently no need to monitor such services for compliance with the federal securities laws. The only advisory fees that remain to be collected concern a possible claim of less than $250,000 against Amerindo Funds, Inc. Amerindo U.S. continues to incur substantial operating expenses, including legal fees and lease payments in excess of $100,000 per month. Unless this ongoing dissipation of Amerindo U.S.'s remaining assets is halted or the business operations of Amerindo U.S. are revived, it is unlikely that there will remain any funds by April 2006 for either: (a) payment of valid claims by persons who contend that they were

clients of Amerindo U.S. and are owed money by Amerindo U.S., or (b) payment to the owners of Amerindo U.S.

Dated: New York, New York
       December 5, 2005

                                           /s/ Robert Knuts
                                 Robert Knuts, As Monitor For Defendant
                                 Amerindo Investment Advisors Inc.

                                 c/o Day, Berry & Howard LLP
                                 875 Third Avenue
                                 New York, NY 10022
                                 (212) 829-3620

TO:    Attached Service List

**SEC v. Amerindo**

Service List

Kay Lackey, Esq.
U.S. Securities and Exchange Commission
Three World Financial Center
New York, NY 10281
Fax: (212) 336-1317

Paul Gizzi, Esq.
U.S. Securities and Exchange Commission
Three World Financial Center
New York, NY 10281
(212) 336-0077

Attorneys for Plaintiff Securities and Exchange Commission


Eugene R. Licker, Esq.
Loeb & Loeb LLP
345 Park Avenue
New York, NY 10154-0037
(212) 407-4157
Fax: (212) 407-4990

Attorneys for Defendant Amerindo Investment Advisers Inc.


Robert R. Leinwand, Esq.
Robinson Brog Leinwand Greene Genovese & Gluck P.C.
1345 Avenue of the Americas
New York, NY 10105-0143
(212) 603-6309
Fax: (212) 956-2164

Attorneys for Defendant Alberto William Vilar


Glenn C. Colton, Esq.
Wilson Sonsini Goodrich & Rosati
12 East 49th Street, 30th Flr.
New York, NY 10017
(212) 999-5804
Fax: (212) 999-5899

Attorneys for Defendant Gary Alan Tanaka