D & F

Gary A. Tanaka

Terminal Island FCI
P.O. Box 3007
San Pedro CA 90731



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 1 3 JUN 2011

6 June 2011

The Honorable Laura Taylor Swain
United States District Court
Southern District of New York
40 Centre Street, Room 1205
New York NY 10007-1581

    Re: SEC v. Amerindo Investment Advisors et. al.
      05-CV-5231(LTS)(S.D.N.Y.)

Dear Judge Swain,

I am taking this opportunity to address the court on the eve of the scheduled court conference on the 15th, which I hope to be a participant by phone connection.

My fundamental concern as we move forward in these proceedings are: 1) an all-encompassing, systematic method is implemented to contact all of our clients who might have any claims to the frozen asset pool, 2) that the assets have been fully maximized in value, especially with respect to any remaining securities, and to institute claims against any parties who have either withheld or underfunded past obligations belonging to the asset portfolio, and 3) to have a transparent and responsible committee of appropriate interested parties in situ to make any final recommendations of restitution, or otherwise, to the court.

While Amerindo, Mr. Vilar or myself cannot be held in any way responsible, the passage of over six years for the much delayed distribution of our client balance claims, has been truly unfortunate and unfair to them. On the other hand, I believe most observers will concur, this unexpected development will better facilitate this process to be concluded in a more analytical and fairer methodology, which should result in fewer adverse complications and/or oversights.

As the record shows, the criminal action was charged in May 2005 with the frenzied backdrop commensurate with a fraud of feared Madoff proportions ("massive international fraud, huge Ponzi scheme, tip of the iceberg !" expounded David Essecks, SDNY).

Despite an embarrassing shrinkage in these initial allegations as the years passed, the events would show that the DOJ, after a 3 ½ year prosecution effort and a 9 week trial, obtained criminal convictions (now under appeal) predicated on the discrepancies with investment management documents. In my estimation, the critical factor was that the evidence and trial proceedings clearly demonstrated that the Amerindo private clients were financially 'intact'-and in some cases either hundreds of percent ahead, or millions of dollars to the profit-by the day of our forced closing when the cash flow was taken into account (the initial investment adjusted for dividends, interest, and encroachments of principal). More importantly, with respect to the client balances as shown on our books and/or their latest statements, was, as grudgingly admitted by the government only at sentencing, nearly five years later in February 2010-that there were ample available assets to fully cover the probable claims of all investors, thereby laying to rest any stigma of fraudulent intent.

Even more relevant and vital to these proceedings, it is hoped that the final key questions will be asked, and the indications are forthcoming from the government as to why 1) there was never any attempt to inform our private clients of the existence and approximate size of the large frozen asset pool to curtail their anxieties, 2) why there was no attempt to safeguard from potential market dangers (i.e., no portfolio manager), to oversee their prudent safekeeping (e.g. the millions lost, and yet still unclaimed due to $19 million neglected in non-interest bearing accounts), 3) the logic behind the stance of Judge Sullivan in giving the five clients who testified for the prosecution in the criminal case preference with respect to awards of the client assets with apparent total disregard for the interest of our other investors.  This does not even touch on his "9%" restitution interest awarded to the same parties that would necessarily create disruptive inroads into the available funds, while he was seemingly unconcerned about the $19 million negligently not accruing any interest for the portfolio.

It is my hope that after six years, the current staff of the SEC will conclude that the criminal action has meted out ample retribution and disruption to Amerindo and its founding principals. It is incredible that, on top of our besmirched professional reputations, 9 years of total house arrest and the prospect of 14 years of total incarceration that there could be the threat of additional adversity ahead of us.  While it is understandable in that this action was spawned within two month's proximity of the uncovering of a fraud of potentially immense proportions, but it also should not be forgotten that a major international institutional money manager with a sterling 25-year performance record was savagely destroyed because of these

allegations directed against 1% of their book of business. Here it should be also pointed out Amerindo had just completed its third-within a 12 year span-institutional firm inspection by the SEC only months before its doors were shuttered, with the private client accounts having been fully disclosed.

The firm, my partner, and myself are interested in a speedy resolution of these proceedings and will continue to be dedicated and fully cooperative in that regard.

Your sincerely,

*[signature]*

c.c.  Mark D. Salzberg, Senior Counsel
Securities & Exchange Commission
3 World Trade Center, Suite 240
New York NY 10281-1022

Nathan Dershowitz
Dershowitz, Eiger & Adelson PC
220 Fifth Avenue, Suite 300
New York NY 10001

Robert Leinwand
Robinson Brog Leinwand, Greene, Genovese & Gluck PC
875 Third Avenue
New York NY 10022

Julian W. Friedman
Stillman, Friedman & Schechtman PC
425 Park Avenue
New York NY 10022