

**Begos Horgan & Brown LLP**
Attorneys At Law

RECEIVED
SEP 2 2 2011
CHAMBERS OF
LAURA TAYLOR SWAIN
U.S.D.J.

Patrick W Begos
Christopher G Brown
Michael F Horgan Jr

www.begoshorgan.com

327 Riverside Avenue
Westport Connecticut 06880
Tel 203.226.9990
Fax 203.222.4833

7 Pondfield Road
P O Box 369
Bronxville New York 10708.0369
Tel 914.961.4441
Fax 914.961.4442

September 21, 2011

**By Federal Express**

Hon. Laura Taylor Swain
United States District Court
500 Pearl Street
New York, NY 10007



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2 3 SEP 2011

   Re: SEC v. Amerindo
      05-cv-5231

Dear Judge Swain:

   This firm represents three victims of defendants' crimes, Lisa, Debra and Herbert Mayer. Alberto Vilar and Gary Tanaka stole more from the Mayers than from any other victims; of the $34,899,102.53 in restitution awarded, $18,306,984.53 - more than half – is payable to the Mayers.

   I had planned to attend the September 14, 2011 conference in this matter; I am, unfortunately, unable to attend on the adjourned date of September 23, 2011. I respectfully request that the Court grant to me the same courtesies extended to Julian Friedman (counsel for Paul Marcus) and Eugene Hestres-Velez (counsel for Alfred Heitkoenig), and permit me to be placed on the service list and to address the Court on behalf of my clients. May this letter serve as my remarks.

   Over the last eighteen months, I have made repeated pleas – to Judge Sullivan, to the US Attorney's office, and to counsel for Vilar and Tanaka – to take whatever steps are necessary to allow the money and securities that have been frozen by the Government to be distributed to the victims of Vilar's and Tanaka's crimes. I enclose a copy of my September 22, 2010 letter to criminal counsel, and my October 1, 2010 letter to Judge Sullivan, as examples. Though Vilar and Tanaka, and their attorneys, all told Judge Sullivan that they wanted to see the Mayers and other victims repaid (and they received lighter sentences in return), no money has been distributed to any victim since the restitution orders were entered in April 2010.

   Because substantially all of their money was invested with Amerindo (and personally guaranteed by Vilar and Tanaka), the Mayers were in desperate financial straits in 2010, and their situation is even more dire today. Dr. Herbert Mayer, who has been ill for many years, has gotten significantly sicker in recent weeks, and may not live to see any restitution. His daughters, Lisa and Debra Mayer, currently do not have the funds for a funeral. The house that the three of them share is in foreclosure; and a sale has been delayed only through continued efforts of counsel. Winter


approaches, and it is anyone's guess how they will pay to heat their house and keep the electricity on.

As I understand the status, the Government requires an agreement by Vilar and Tanaka before any of the to-be-forfeited money will be distributed to victims before Vilar's and Tanaka's criminal appeal is concluded. Given Vilar's and Tanaka's statements to Judge Sullivan (as summarized in my October 10, 2010 letter), such an agreement would appear to be no problem. Yet no agreement has been reached, and, as I understand it, Vilar and/or Tanaka's lawyers continue to find reasons not to agree. I understand that Your Honor cannot force them to agree, but I hope that Your Honor can use any appropriate means at your disposal to attempt to persuade the parties to reach an agreement that permits restitution to be distributed.

One final point that I would like to make is that I understand Vilar and/or Tanaka are contending that any distribution should be made pro rata to the victims of Vilar's and Tanaka's crimes, and to non-victim investors. While the Mayers do not want anything to delay a distribution to them, they do not see how that method of distribution is appropriate. The victims were awarded formal restitution more than a year ago, but the investors have yet to prove any claim. Victims, like the Mayers, had funds in guaranteed, fixed-rate deposits that were stolen, while investors suffered losses of investments in a mutual fund, which is expected to fluctuate in value. (I note that the Mayers also have such investment losses.) The victims assisted in the conviction of Vilar and Tanaka, while various investors maintained that Vilar and Tanaka were innocent, or should continue to control Amerindo's investments. One or more even assisted in the defense of criminal charges and/or posted bail. Given the anguish that victims like the Mayers have suffered for years as a result of Vilar's and Tanaka's crimes, it is difficult to understand how their restitution should be reduced by payments to investors who were not the victims of any crime.

Respectfully submitted,

Patrick W. Begos

PWB:mtf
Enclosures
cc: (by email; w/enclosure)
    Mark D. Salzberg, Esq. (salzbergm@sec.gov)
    Sharon Levin, Esq. (Sharon.Levin@usdoj.gov)
    Robert Leinwand, Esq. (rrl@robinsonbrog.com)
    Julian W. Friedman, Esq. (jfriedman@stillmanfriedman.com)
    Eugene F. Hestres-Velez, Esq. (ehestres@bbh-law.com)
    Mr. Gary Tanaka (by regular mail)



# Begos Horgan & Brown LLP
Attorneys At Law

Patrick W Begos  
Christopher G Brown  
Michael F Horgan Jr  

www.begoshorgan.com

327 Riverside Avenue  
Westport Connecticut 06880  
Tel 203.226.9990  
Fax 203.222.4833  

7 Pondfield Road  
P O Box 369  
Bronxville New York 10708.0369  
Tel 914.961.4441  
Fax 914.961.4442  

October 1, 2010

**By Federal Express**

Hon. Richard J. Sullivan  
United States District Court  
500 Pearl Street  
New York, NY 10007

        Re:    **U.S. v. Vilar and Tanaka**  
                **05 Cr. 0621 (RJS)**

Dear Judge Sullivan:

      This firm represents three victims of defendants' crimes, Lisa, Debra and Herbert Mayer. I write to notify the Court that defendants have willfully defaulted on their obligation to pay restitution to the Mayers and their other victims. I respectfully request that the Court punish the defendants for their defaults, and order appropriate relief. As discussed further below, 18 U.S.C. § 3613A gives the Court broad authority to address a default in payment of restitution, including the power to resentence the defendants, hold them in contempt, and to "take any other action necessary to obtain compliance with the order[.]"

      The Court entered Orders of Restitution against Vilar and Tanaka on April 7, 2010, providing for restitution to five of defendants' victims in the amount of $34,899,102.53, payable in a lump sum. Of that total, $18,306,984.53 is payable to the Mayers. At the time restitution was ordered, the Court had restrained the contents of several accounts at JP Morgan Chase, with a total value that the Government estimated to be in excess of $42,000,000. Of that total, $29,000,000 to $34,000,000 was in cash and publicly traded securities (*see* Marc Litt's February 3, 2010 letter to Court, Doc. No. 418).

**The Existence of the Chase Accounts Reduced Defendants' Sentences**

      Defendants argued at sentencing their victims would be repaid, and that the existence of the Chase accounts justified a reduction in their sentences:

▸    Mr. Marks (Vilar's counsel): "They will get the money back. The money is just sitting there, safely frozen and they will get it back[.] ... [T]he fact that there is money to pay them, that [Vilar] didn't run away with the money, ... are factors which militate against considering this



Hon. Richard J. Sullivan
October 1, 2010
Page 2

> as serious a crime as where people just run away with money and the money just goes missing. " (Transcript of Sentencing Hearing ("Tr.") at 37).

- Mr. Vilar: "Fortunately there are only five victims, and I would be 95 percent confident that they will be paid and that they will not have lost anything." (Tr. at 60).

- Mr. Colton (Tanaka's counsel): "Why should we have civil litigation [by the Mayers] when there is going to be a restitution judgment? Why are we wasting court time and money when there will be a civil judgment [of restitution] for the Mayers anyway? ... We have consented to restitution for the Mayers, it will be entered. ... The papers before the court are clear: No objection to a restitution judgment in favor of the Mayers." (Tr. at 124).

- Mr. Tanaka: "But our private clients for whatever reason have had their money tied up for five years or so, and I feel that they definitely are victims. ... So, they are all kind of known to us, and we do care about them, and their monies have been tied up, and so they are definitely the victims here." (Tr. at 139-40).

The Court, at sentencing, stated that the existence of the Chase accounts had a bearing on the severity of defendants' crimes: "But there are Ponzi schemes and then there are Ponzi schemes. Right? I mean you [the Government] are conceding that there is $42 million or so in a pot someplace that can be used to pay restitution to pay back investors." (Tr. at 43). More significantly, the Court cited the existence of these accounts as a factor in reducing Vilar's sentence (Tr. at 66). Though the Court did not expressly mention this factor in sentencing Tanaka, it presumably was as applicable to Tanaka as it had been to Vilar.

**Defendants Represented to the Court That They Would Work to Release Money to Victims**

At the sentencing and thereafter, both defendants' attorneys made a point of stating that they would cooperate with the release of funds to their victims. For example, Mr. Marks stated at sentencing that Vilar had been waiting for someone to ask him to release the frozen funds:

> It's terribly unfortunate that the Mayers have been without their funds all of these years, but I don't think that all of that can be put at Mr. Vilar's doorstep, in view of the fact that the money was at JP Morgan Chase, nobody ever got in touch with me, and to my knowledge nobody ever got in touch with Mr. Vilar or Mr. Vilar's prior four or five lawyers to ask whether any of this money could be released. It was never done. So, I don't think that's his fault.

(Tr. at 56).

Vilar's new lawyer, Vivian Schevitz, repeated this assertion more recently: "the defendant would cooperate with the release of some of the funds being held by the government to pay over to the 'victims' (though not all), as was done in the past. No one has yet asked us. (One wonders why?!)" (July 29, 2010 Memorandum of Defendant Vilar in Response to Government Attempt to Sustain Invalid Forfeiture, at 5).



Hon. Richard J. Sullivan
October 1, 2010
Page 3

Similarly, Mr. Colton asserted that Tanaka was working diligently to repay victims: "[Tanaka] has shown a determination to get these people paid and has done so even post conviction." (Tr. at 106-07; *see also* Tr. at 124: "And the efforts he has made and will continue to make to see people repaid are really what is important to him, and he wants to see his clients taken care of").

**Despite Their Representations, Defendants Have Refused to Release Funds to Any Victim**

The Mayers recently asked the defendants to consent to the release of money from the Chase accounts to the victims. Specifically, by letter dated September 22, 2010 (a copy of which is enclosed), I told defendants of the Mayers' dire financial situation, and I requested that they agree to the prompt distribution of the undisputed portion of the restitution to the Mayers and the other victims.

No representative of either defendant contacted me to discuss my request. It is my understanding that defendants' attorneys discussed my letter with Marc Litt of the U.S. Attorney's Office, but that they have refused to release money to the victims.

Thus, after defendants persuaded the Court to reduce their sentences because there was money available to repay the victims of their crimes, and after they affirmatively represented to the Court that they were working to repay those victims, the defendants have once again shown their fundamental dishonesty. After what Vilar and Tanaka previously did to the Mayers and their other victims, I suppose one should not be shocked by their actions. Nonetheless, it appears that defendants (and their lawyers) have now decided to rub salt in their victims' wounds.

The Mayers are in desperate financial straits. The $150,000 which the parties and the Court arranged to distribute to them approximately a year ago is almost all gone, having been used by Debra, Lisa and Herbert Mayer for items such as food, utilities, insurance, and medical care. The home in which they live is in foreclosure, and it is far from certain how much longer a judgment can be delayed. The defendants know all this, yet they refuse to allow the release of the money that they agree the Mayers are owed.

**The Court Can and Should Punish Defendants and Order Other Appropriate Relief**

The Court has broad power to punish defendants and/or to order the release of the JP Morgan Chase assets to the victims:

> Upon a finding that the defendant is in default on a payment of a fine or restitution, the court may ... resentence a defendant pursuant to section 3614, hold the defendant in contempt of court, enter a restraining order or injunction, order the sale of property of the defendant, accept a performance bond, enter or adjust a payment schedule, or take any other action necessary to obtain compliance with the order of a fine or restitution.

18 U.S.C. § 3613A(a)(1).



Hon. Richard J. Sullivan
October 1, 2010
Page 4

The statute continues: "In determining what action to take, the court shall consider ... the willfulness in failing to comply with the fine or restitution order, and any other circumstances that may have a bearing on the defendant's ability or failure to comply with the order[.]" § 3613A(a)(2). There can be little question that the defendants' refusal to comply with the restitution order has been entirely willful, as evidenced by their rejection of my recent request. Further, I submit that defendants' misrepresentations to the Court at sentencing comprise "other circumstances that may have a bearing on [their] ... failure to comply with the order[.]"

The Court ordered full restitution almost six months ago. The defendants have represented that they would make their victims whole, and they have the ability and assets to do so, yet they have refused. Under these circumstances, and because of the Mayers' dire financial straits, I respectfully request the Court to take prompt action "to obtain compliance with the order" of restitution, and to take such other action as the Court considers appropriate to punish defendants' defaults.

Respectfully submitted,

Patrick W. Begos

PWB:mtf
Enclosure
cc:   (by email; w/enclosure)
      Marc Litt, Esq.
      Glenn C. Colton, Esq.
      Vivian Schevitz, Esq.



# Begos Horgan & Brown LLP
Attorneys At Law

Patrick W Begos
Christopher G Brown
Michael F Horgan Jr

www.begoshorgan.com

327 Riverside Avenue
Westport Connecticut 06880
Tel 203.226.9990
Fax 203.222.4833

7 Pondfield Road
P O Box 369
Bronxville New York 10708.0369
Tel 914.961.4441
Fax 914.961.4442

September 22, 2010

**By Email**

Glenn C. Colton, Esq.
Sonnenschein Nath & Rosenthal LLP
1221 Avenue of the Americas
New York, NY 10020
gcolton@sonnenschein.com

Vivian Schevitz, Esq.
50 Greenway Terrace
Forest Hills, NY 11375
vivian@shevitzlaw.com

Marc Litt, Esq.
U.S. Attorney's Office
One St. Andrew's Plaza
New York, NY 10007
Marc.Litt@usdoj.gov

    **Re: U.S. v. Vilar and Tanaka**
      **05 Cr. 0621 (RJS)**

Dear Sirs and Madam:

   This firm represents the Mayer family. I write in connection with the restitution orders issued in this matter in April 2010, and particularly to ask the parties to agree to release from the JP Morgan Chase accounts funds sufficient to pay the victims the amount of restitution that is undisputed by the defendants.

   As you know, the Court entered Orders of Restitution on April 7, 2010, ordering the defendants to pay restitution to five victims in the total amount of $34,899,102.53. Of that total, $18,306,984.53 was payable to the Mayers. At that time, the Court had restrained the contents of several JP Morgan Chase accounts, with a total value that the Government estimated to be in excess of $42,000,000, of which approximately $26,500,000 was in cash, and $3,600,000 to $7,700,000 was in publicly traded securities (*see* Marc Litt's February 3, 2010 letter to Court, Doc. No. 418).


**Begos Horgan & Brown LLP**
Attorneys At Law

Glenn C. Colton, Esq.
Vivian Schevitz, Esq.
Marc Litt, Esq.
September 22, 2010
Page 2

  Both of the defendants made clear at sentencing that they understood and expected that the assets in the JP Morgan Chase accounts would make the victims whole (*See, e.g.* Transcript of Sentencing Hearing at 37 (Marks): "They will get the money back. The money is just sitting there, safely frozen and they will get it back"; at 60 (Vilar): "Fortunately there are only five victims, and I would be 95 percent confident that they will be paid and that they will not have lost anything"; at 139 (Tanaka): "But our private clients for whatever reason have had their money tied up for five years or so, and I feel that they definitely are victims").

  Counsel for both defendants have asserted that their clients would act affirmatively to assure that the victims are repaid (Tr. at 124 (Colton): "And the efforts [Tanaka] has made and will continue to make to see people repaid are really what is important to him, and he wants to see his clients taken care of"; July 29, 2010 Memorandum of Defendant Vilar in Response to Government Attempt to Sustain Invalid Forfeiture at 5: "the defendant [Vilar] would cooperate with the release of some of the funds being held by the government to pay over to the 'victims' (though not all), as was done in the past. No one has yet asked us. (One wonders why?!)").

  On behalf of the Mayers, I am expressly asking that both defendants cooperate with the release to the Mayers of the undisputed portion of the restitution award (or such other amount as can be agreed upon). While I cannot speak for the other victims, it would appear to be reasonable to do for them whatever the parties agree to do for the Mayers. Assuming the defendants agree to such a release, I would ask the Government to agree to lift the restraint to allow that distribution to be made. There is no reason why the parties could not enter into a stipulation to accomplish all this, similar to the stipulation that was executed last year.

  I understand that there exist disputes regarding forfeiture and some components of restitution to some victims. I do not ask any party to waive or compromise those disputes. I do ask, however, that the parties work together to allow for a prompt distribution of the undisputed portion of the restitution (or such other amounts as can be agreed upon). As Judge Sullivan stated at the sentencing: "[The] verdict was a year ago, and it would seem to me that it might have been in everyone's interest, including the government's, to try to figure out what these assets are worth, get them liquidated so that ... we could just enable investors to get on with their lives." (Tr. at 113-15).

  I do not know the financial situations of the other four victims, but the Mayers are in desperate financial straits. The $150,000 which the parties arranged to distribute to them approximately a year ago, is almost all gone, having been used by Debra, Lisa and Herbert Mayer for items such as food, utilities, insurance, and medical care. The home in which the three Mayers live is in foreclosure, and it is far from certain how much longer a judgment can be delayed in that case. The Mayers are in the truly perverse situation of knowing that they have been awarded $18,000,000 in restitution, knowing that the money is available to pay it, but being unable to pay for basic living expenses.



Begos Horgan & Brown LLP
Attorneys At Law

Glenn C. Colton, Esq.
Vivian Schevitz, Esq.
Marc Litt, Esq.
September 22, 2010
Page 3

    I ask that you please respond at your earliest convenience. If I cannot obtain a commitment to resolve this issue by October 1, 2010, I will have no alternative but to seek all appropriate relief from the Court.

Very truly yours,

Patrick W. Begos

PWB:mtf