

LAW OFFICES
## STILLMAN & FRIEDMAN, P.C.
425 PARK AVENUE
NEW YORK, NY 10022
www.stillmanfriedman.com

CHARLES A. STILLMAN
JULIAN W. FRIEDMAN
SCOTT M. HIMES
MARJORIE J. PEERCE
JOHN B. HARRIS
JAMES A. MITCHELL
MICHAEL J. GRUDBERG
NATHANIEL Z. MARMUR

MARY MARGULIS-OHNUMA
NATHANIEL I. KOLODNY
ELIZABETH S. WEINSTEIN
DANIEL V. SHAPIRO
ERIK M. ZISSU
LAURA P. WEXLER

TELEPHONE
(212) 223-0200
FACSIMILE
(212) 223-1942

**VIA HAND DELIVERY**

November 22, 2011

Honorable Richard J. Sullivan
United States District Court
500 Pearl Street
New York, NY 10007

Honorable Laura Taylor Swain
United States District Court
500 Pearl Street
New York, NY 10007

    Re:    U.S. v. Vilar and Tanaka
            05-Cr-0621-RJS

            SEC v. Amerindo
            05-cv-5231-LTS

Dear Judges Sullivan and Swain:

       This firm represents Paul Marcus and members of his family (collectively, the "Marcuses") and Alfred Heitkoenig and members of his family (collectively, the "Heitkoenigs"), all of whom are investors in various entities involved in the above-captioned proceedings pending before Your Honors. Judge Swain has previously granted me permission to participate in the conferences before her in the above-captioned SEC matter, and I have done so. I am writing this letter in response to the letter dated November 18, 2011 from Patrick Begos, counsel for the Mayers, to Your Honors.

       The Marcuses and the Heitkoenigs together own approximately 336,000 shares of the outstanding stock of Amerindo Technology Growth Fund, Inc. ("ATGF"), amounting to roughly 75% of the total number of ATGF shares. In addition, the Heitkoenigs own substantial investments in Guaranteed Fixed Rate Deposit Accounts ("GFRDA"). I believe that the Heitkoenig family has the largest position in GFRDA with the sole exception of the Mayers. Therefore, based on their interests in both ATGF and GFRDA, my clients have a substantial

Law Offices<br>
**Stillman & Friedman, p.c.**

interest in the proceedings in the above-captioned matters. For that reason, I hereby request that Judge Sullivan grant me permission to participate in any conference that is held "in *both* cases, with *all* attorneys for the parties involved" as requested in Mr. Begos' November 18 letter.

The Marcuses and the Heitkoenigs hereby join in Mr. Begos' request that a joint conference be held. In view of what has happened at the various conferences held over the last year in the SEC matter, we agree with Mr. Begos' statement that a joint conference would be the most effective way to break the logjam that has prevented the distribution of any monies to the Mr. Begos' clients, my clients, or any of the other investors in ATGF and GFRDA.

We disagree, however, with the "mechanism to satisfy all parties' concerns" that is referred to on page 3 of Mr. Begos' November 18 letter. Our most significant point of disagreement is that any procedure adopted for distribution of assets to the investors should not be limited to the $17 million figure stated by Judge Swain at the September 23 conference (and quoted at the bottom of page 2 of Mr. Begos' letter).

In using that figure, Judge Swain was summarizing her understanding of a possible method for interim distributions that had been raised at the conference by Assistant United States Attorney Sharon Levin as a possible compromise with the defendants. However, we believe that there is no support for limiting to $17 million any distributions made before the determination of the appeals by the defendants from their criminal convictions.

We believe that the confusion over this matter goes back to the Order of Forfeiture of Substitute Assets submitted by the Government and entered by Judge Sullivan on November 9, 2010 in *United States v. Vilar and Tanaka* (the "Forfeiture Order"). In the Forfeiture Order, the eighth WHEREAS clause (on page 3) states that:

> the Government has identified the following assets as property of the defendants:
>
> a.   Any and all assets of the following companies:
>
>       \*   \*   \*
>
>     iv.   Techno Raquia, S.A.;
>
>       \*   \*   \*
>
>     vi.   Amerindo Technology Growth Fund, Inc.;
>
>     vii.   Amerindo Technology Growth Fund II, Inc.;
>
>       \*   \*   \*
>
> b.   J.P. Morgan Chase (f/k/a Bear Stearns & Co., Inc.) brokerage account numbers:

2

   i. 102-17995, held in the name of Techno Raquia, S.A. ...;

   ii. 102-01485, held in the name of Amerindo Management Inc., sub-account M26 ...;

   iii. 102-01490, held in the name of Amerindo Technology Growth Fund Inc. ...;

   iv. 102-01495, held in the name of Amerindo Technology Growth Fund II, Inc. ...;

   v. 102-15833, held in the name of Olafson, Inc.;

   \*  \*  \*

c. SG Americas Securities, LLC account number 64524357, held in the name of Amerindo Technologies Growth Fund ...;

   \*  \*  \*

e. Approximately $273,611.89 in funds formerly held by @Ventures Management, LLC for the benefit of Amerindo Technology Growth Fund II, Inc.;

f. Approximately $1.6 million in funds on deposit at U.S. Bank for the benefit of Amerindo Technology Growth Fund II, Inc.;

   \*  \*  \*

(collectively, the "Substitute Assets").

  In paragraph 1 of the Forfeiture Order, the Court ordered as follows: "All of the defendants' right, title, and interest in the Substitute Assets [as defined above] is forfeited to the United States...." The issue that I believe has to be addressed at this point is whether "the defendants" had any "right, title, and interest" in those of the "Substitute Assets" listed in the language from the Forfeiture Order quoted above. As set forth below, the defendants have **admitted** that they have no such right, title, and interest. As such, whether they consent to the forfeiture of those Substitute Assets -- and the subsequent distribution of any such forfeited assets -- is immaterial, and they should not be permitted to delay the distribution of those assets by withholding such consent. We have urged this position in several letters to Judge Swain written in connection with status conferences held by her, but it became clear during those

conferences that the only effective way to raise this point would be in a joint conference held before Your Honors in both cases.[1] That is why we are joining in Mr. Begos' request.

The assets listed above consist of cash and marketable securities that belong to funds that were managed by Amerindo Investment Advisors, Inc. -- a management company that I believe was owned by the defendants -- but which belonged to the investors in ATGF and GFRDA. We do not believe that Messrs. Vilar and Tanaka have any claim to those funds, since we do not believe that they own shares in those entities. If it is true, as we believe, that Messrs. Vilar and Tanaka do not have any claim to the underlying assets, then their consent should not be required as a prerequisite to any distribution. And if that is so, their withholding of such consent should not be permitted to block or delay the distribution of the assets in question.

To the degree that there was ever any doubt about whether Messrs. Vilar and Tanaka had a beneficial interest in the assets of ATGF and GFRDA, that doubt ended when the defendants filed their briefs on the appeals of their convictions. Those briefs made clear that the defendants claimed no interest in the ATGF assets, and that those assets should be distributed as soon as possible. In fact, at several points in their appellate briefs, Messrs. Vilar and Tanaka claimed that they were advocates of prompt distribution of these assets, that their willingness to make such distributions should have been recognized by the Court during the sentencing process, and that it was only the actions of the Government that prevented them from making the distributions to the investors even prior to their sentencing.

Thus, in his appellate brief, Mr. Vilar made the following admissions and arguments:

- That the assets in the Amerindo accounts restrained by the Government had a value of approximately $37.8 million, and were "enough to repay any Amerindo investors who had not previously redeemed their investments." (PP. 169, 213)

- That based on a letter from AUSA Marc Litt to the Court, the amount in the Amerindo accounts was $42 million which can be used to repay investors. (P. 170)

- That the $42 million in the Amerindo accounts should not have been part of the forfeiture because these were not "proceeds" of the defendants' fraud, since this money was held in trust by the defendants as fiduciaries and they never acquired any true ownership interest in these assets. (PP. 203-204)

- That "the investors, as the beneficiaries of a constructive trust, have an interest in the forfeitable property that is superior to defendants...." (P. 205)

---

[1] It was our original belief that our arguments could be raised in the context of an objection to the Forfeiture Order. However, AUSA Levin told us that filing such objections would just result in further delay of any distribution of the assets.

LAW OFFICES
**STILLMAN & FRIEDMAN, P.C.**

- That "this property (in the amounts reflected in the account statements) should be returned to the investors...." (P. 225)

Similarly, in his own appellate brief, Mr. Tanaka stated as follows:

- That at the time of sentencing, there was sufficient cash and securities in the Amerindo brokerage accounts to pay the claims of all of the Amerindo investors. (P. 99)

- That the Government had conceded that the value of the Amerindo accounts was over $42 million, and that this was sufficient to cover the losses of the Amerindo investors, the ATGF investors, and Lily Cates. (P. 108)

- That for this reason, there was no actual loss caused by the defendants' conduct. (PP. 107, 112)

- That it is only the criminal prosecution and the SEC action "which have kept the assets from the investors." (P. 110)

- That the court's award of pre-judgment interest to the victims who testified in the criminal case was the only reason that there were insufficient assets "to satisfy the claims of all Amerindo investors." (P. 118)

Despite these statements, Messrs. Vilar and Tanaka have still refused to agree in writing that if their convictions are overturned on appeal, they will not seek the return of any money previously distributed to the ATGF and GFRDA investors. That refusal has continued for more than a year throughout a series of pre-trial conferences held by Judge Swain in the SEC action. The history of these events is that counsel for the defendants continually led the Government to believe that they would agree not to seek the return of any amounts distributed prior to the determination of that appeal. However, they have not been willing to sign such an agreement. The most recent example of such refusal occurred during the September 23, 2011 status conference before Judge Swain.

However, we respectfully submit that the assets belonging to the investors in ATGF and GFRDA -- assets in which Mr. Vilar and Mr. Tanaka have no interest -- should be distributed with no further delay regardless of whether or not they sign an agreement waiving any right to seek recovery of those assets. For they cannot waive a right that they never had in the first place. While the Forfeiture Order did refer by its terms to any interest that the defendants had in assets belonging to ATGF and the related entities listed above, this does not mean that such interests ever existed in the first place. If Messrs. Vilar and Tanaka had no interest in these funds, the Forfeiture Order did not create such an interest. Therefore, if that Order is vacated because the defendants' convictions are reversed on appeal, the defendants would be left in the same position as they have been in all along -- that, as admitted in their appellate briefs, they were fiduciaries who held these assets for the benefit of the investors, but who had no beneficial interest themselves.

Law Offices
**STILLMAN & FRIEDMAN, P.C.**

For all of the above reasons, we respectfully submit that the pendency of the appeals from the convictions should not give Messrs. Vilar and Tanaka any leverage to block or limit the distribution of the assets belonging to the investors in ATGF and GFRDA. Therefore, we do not believe that the $17 million figure referred to in Mr. Begos' letter should be applied to limit such distributions. Rather, the amount distributed should be all assets previously restrained by the Government that belong to ATGF and GFRDA.

We believe this figure is in excess of $40 million, as stated in the February 3, 2010 letter to Judge Sullivan from Mr. Litt. We respectfully request, therefore, that the joint conference requested in Mr. Begos' letter be held as soon as possible, and that we be permitted to participate in that conference. However, we do not believe that the distributions to be discussed at that conference should be limited to the $17 million figure referred to in Mr. Begos' letter. Rather, there should be discussion at that conference of a methodology for distributing **all assets** of ATGF and GFRDA to the beneficial owners of those entities -- a category that does not include Messrs Vilar and Tanaka.

Respectfully submitted,

Julian W. Friedman

JWF:cn

cc:   Sharon Levin, Esq. (*by email*)
      Benjamin Naftalis, Esq. (*by email*)
      Mark D. Salzberg, Esq. (*by email*)
      Neal Jacobson, Esq. (*by email*)
      Vivian Shevitz, Esq. (*by email*)
      Nathan Dershowitz, Esq. (*by email*)
      David C. Burger, Esq. (*by email*)
      Eugene F. Hestres-Velez, Esq. (*by email*)
      Mr. Gary Tanaka (*by regular mail*)