From: Vivian Shevitz      Fax: +1 (888) 859-0158      To: Hon. Laura Taylor Swai Fax: +1 (212) 805-0426      Page 2 of 6  12/31/2011 2:30

Case 1:05-cv-05231-LTS   Document 177   Filed 01/05/12   Page 1 of 6

Vivian Shevitz
Attorney at Law
401 Cumberland Avenue – Apt. 60D
Portland, Maine 04101
(914) 763 2122
Vivian@shevitzlaw.com

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: JAN 0 5 2012

December 31, 2011

Hon. Laura Taylor Swain (By Fax: 212 805-0426)
United States District Court
Southern District of New York
New York, New York 10007

Hon Richard J. Sullivan (By email – sullivannysdchambers@nysd.uscourts.gov)
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

> Re:   SEC v. Amerindo – 05 civ. 5231 (LTS) and
> United States v. Vilar and Tanaka, 05 cr. 621 (RJS)

Dear Judges Sullivan and Swain:

I write in connection with the Court's December 19, 2011 Orders to the parties in No. 05 cr. 621 and 05 civ. 5231, to make joint written submissions "setting forth a brief explanation of the value of the property referenced in the government's submissions in connection with its motion" for entry of a final order of forfeiture. As indicated in the joint submission filed on December 30, 2011, Mr. Vilar has no information regarding the valuation of the assets, no access to the assets, and no present ability to confirm any valuation provided by the government.

We do, however, have something to say about what the Court is seeking to learn, and to explain why we will not "agree to forfeiture," and why we are "resisting" the government's stated goal of figuring out which Amerindo claimants to pay, how much to pay each claimant, and then paying claimants (and accomplishing stunningly little in the almost seven years the government has been *de facto* responsible for the funds it caused to be in limbo since 2005).

Throughout the post-trial/ post-sentencing proceedings, the defense has tried to obtain from the government an *accounting* of individuals and entities to whom they intend to distribute, as well as information about how the government values the assets included in the forfeiture orders, how the government determines the

From: Vivian Shevitz    Fax: +1 (888) 859-0158    To: Hon. Laura Taylor Swai  Fax: +1 (212) 805-0426    Page 3 of 6  12/31/2011 2:30

Case 1:05-cv-05231-LTS   Document 177   Filed 01/05/12   Page 2 of 6

amounts owed to any particular investor, and how it intends to accomplish the distribution. The government has refused to provide this information to the defense, taking the position that the defendants have no interest in the matter and no right to know. This is troubling for a number of reasons.

1. In its latest submission, the government continues its history of carelessness with numbers. Our appellate brief, previously provided to the court, discusses instances of number confusion with no legitimate explanation. In its current submission, it has provided the defense with *no* documentary support for valuations, and no indication of the universe of claimants and how it deems its obligations satisfied. There has been, and will be, neither transparency nor accountability as to what happened to the assets since the SEC initially sought a Receiver by emergency motion in June 2005.

The government wants no check on its accuracy, but there ought to be one. We note several unexplained discrepancies between the valuation of substitute assets the government provided just now, on December 30, 2011, and the estimate provided to the Court on February 3, 2010:

> In 2010, when forced by Judge Sullivan to respond to valuations sought by defendant Tanaka through an expert's analysis, the government maintained that ATGF II account 102-01495 consisted of $19,506,873 in cash, and $3,654,517 in public securities (for a subtotal of $23,161,390), and $8,000,000 in private securities (for a total of $31,161,390). The $8 million figure was supported by a detailed schedule apparently given to then-defense counsel prior to sentencing. Labeled "for settlement discussions only", this document appears to be a listing of all the private securities in the account with either a value or the words "probably no value" assigned to each security. Then-counsel for Mr. Vilar attached the schedule to a letter to the Court dated January 21, 2010.

Now the government says that it cannot provide a value for the private securities "without incurring substantial expense," and that, not counting certain "unpriced stock" in the account (presumably another term for private securities), this account has a value of $21,030,960. In other words, according to the government's figures, wholly apart from the unpriced private equities, per the government this particular account lost more than $2 million in value in less than 2 years. There is no explanation.

In 2010, the government provided an estimate of Vilar and Tanaka shares in account 102-05012, an account held in the name of the Trustees of Amerindo Advisors (UK) Ltd. Ret. Benefits Scheme. The estimate then was $6,000,000 ($1,500,000 in cash and $4,500,000 in securities). In its recent submission, it says the value is $14,021,855 without counting "unpriced

stocks". There is no indication as to why this account jumped in value so dramatically.

Again, the government has provided us with *no backup*. Without any records, we are left to speculate. Could it be that the government has failed to limit its current "appraisal" to Vilar's and Tanaka's interests in this account. See, Order of Forfeiture of Substitute Assets, ¶ 4.) We do not know. Apparently, neither do they.

In its 2010 submission, the government maintained that there was $522 in case in ATGF Inc. account 102-01490. Now, it says, the value is $0. "Small potatoes," perhaps. But just how and why did the money in the account disappear?

2. The criminal case only involves a subset of Amerindo investors, while the assets/accounts that have been *de facto* frozen since 2005 are commingled accounts that contain investments from not only the criminal case claimants but also others (such as investors in ATGF). Mr. Vilar acknowledges obligations to these investors. But he does not have the books and records necessary to determine amounts owed to each investor, or whether the government is considering claims of others as well. And he and Tanaka have been precluded from participating in any planned distribution by the government.

We thus have no way to confirm whether the full universe of claimant/investors (a) has been identified by the government; (b) has been or will be notified by the government prior to any distribution; and (c) will share in any distribution.

This is not of mere theoretical concern. I was told by Mr. Vilar recently that he was contacted by someone connected with the "Jordan family", which has a claim, apparently, and wanted to know whom to contact. It is troubling that Amerindo investors exist at this time who have not been contacted by the Department of Justice or the SEC. We, again, have *no* control (It is reasonable to assume that investors with no "ties" to the prosecutors do not regularly read the DOJ website if that is where Notice was published.)

3. It is also of more than theoretical concern because Mr. Vilar has continuing potential liability to all investors whose investments were effectively frozen in 2005, and, therefore, an interest in insuring that as much as possible is realized from "the pot" of restrained assets. Some of the assets include complex financial instruments that require sophisticated marketing.

From: Vivian Shevitz    Fax: +1 (888) 859-0158    To: Hon. Laura Taylor Swai Fax: +1 (212) 805-0426    Page 5 of 6  12/31/2011 2:30

Case 1:05-cv-05231-LTS   Document 177   Filed 01/05/12   Page 4 of 6

AUSA Levin wants us to agree to put all of the "substitute assets" under the control of the United States Marshals Service Asset Forfeiture Division, at the same time that no one has a handle on the universe of claims.

That Division has the responsibility for managing and disposing of forfeited assets. Theoretically, it is supposed to be involved even before assets are "seized".

Based on the DOJ's September 2011 "Audit of the United States Marshals Service Complex Asset Team Management and Oversight", the Marshals Service performs its task poorly and even assuming that its people have been or will be "involved," the Marshals Service is apparently not up to the task of maximizing the value of the assets ordered forfeited in this case.

(The Audit Report is at http://www.justice.gov/oig/reports/USMS/a1142r.pdf A story about this was reported in, *inter alia*, the *New York Times*, September 13, 2011. http://www.nytimes.com/2011/09/14/nyregion/auditors-find-chaos-in-us-marshals-asset-sales-record-keeping.html )

4. We are concerned with what may happen once the Marshals Service starts "taking over" assets about which the government know nothing concerning "value," though it has been sitting on the assets since 2005 (and sitting on the principals who could have been useful in maximizing the assets). Once again, Mr. Vilar's position is that he wants to pay ALL claimants what they are due. Once the U.S. Marshalls Service "scrambles" assets, it will be impossible for Mr. Vilar and Mr. Tanaka to "unscramble" them.

It is important to repeat that the government's "handling" of the assets to date is pitiful. The fact is, NO ONE HAS BEEN MANAGING THEM since the arrests in 2005, and, based on the government's recent submission, it appears that the assets may have substantially deteriorated in value.

This is especially galling in that the SEC originally asked for a Receiver in the case before Judge Swain in June 2005 -- but it did not pursue the request. It installed a Monitor, but then asked Judge Swain to dismiss him. NOTHING has been done to maximize the assets' value since 2005. Moreover, it has said nothing to Your Honors about the real state of affairs. We are, simply, not hopeful that now, a "good job" will be done, when no one has bothered to do this job since 2005!

5. At Mr. Tanaka's sentencing, investor Paul Marcus urged the Court to let Mr. Tanaka play a role in the sale and distribution of the frozen securities to the investors. Notwithstanding his conviction – which is on appeal -- Mr. Tanaka has expertise in this area and is uniquely suited to participate in the process of maximizing the return on the sale of securities. To exclude him, and not seek his expertise when offered (and valued by investors whose money is at risk), is a waste

From: Vivian Shevitz    Fax: +1 (888) 859-0158    To: Hon. Laura Taylor Swai, Fax: +1 (212) 805-0426    Page 6 of 6  12/31/2011 2:30

Case 1:05-cv-05231-LTS  Document 177  Filed 01/05/12  Page 5 of 6

of a valuable resource. We urge that either he be allowed to participate with the government or, at a minimum, there be a representative selected by the defense with comparable expertise who can work with the government agents assigned responsibility for managing and disposing of the assets prior to distribution to the investors.

6. Again, we are willing to have the government make interim payments to those "in need" – like the Mayer family claims to be. Then, if the forfeiture (and convictions) are upheld, the government can take the remaining steps. And if – as is more than possible – convictions are reversed, then the defendants, who will then have been wrongly convicted, can take the necessary steps to maximize the value of the assets and distribute them to ALL claimants. As noted, appellate briefs were filed by defendants in September. The government's appellate brief is due in March. A stay is appropriate.

7. We also wish to say – since Judge Swain, as well as Judge Sullivan, has asked for this information – that to date, as far as defense counsel is concerned, the only role the SEC attorneys' have played in trying to resolve things is to THREATEN us that, unless we agree to a forfeiture of the "entire amount" ordered by Judge Sullivan (some $54 million) – a number that exceeds at least by $36 million the amount Judge Sullivan said he INTENDED to order – it will "have to" pursue even greater punishment in the SEC case. Coming from attorneys who have done nothing to move a resolution forward since 2005, this threat is offensive.

These defendants have been prosecuted and convicted, and forfeiture penalties far beyond anything even Judge Sullivan thought was appropriate have been imposed. The money and equities are still in the accounts, not dissipated or squirreled away in secrecy jurisdictions. Threatening more "ultimate" penalties instead of working to get people paid fairly is not what the SEC's job should be.

Equitable remedies in an SEC action are NOT mandatory, and should not be granted here. They should not be pursued vindictively by SEC counsel to punish the defendants for asserting their rights and interests in the criminal case.

We hope that this information will help the Courts agree that a stay is appropriate and that the defendants should be allowed to participate in an *orderly* liquidation of remaining assets.

Very truly yours

**Vivian Shevitz**

Vivian Shevitz

Cc: All counsel, both cases, and Messrs. Begos and Friedman

From: Vivian Shevitz    Fax: +1 (888) 859-0158    To: Hon. Laura Taylor Swain Fax: +1 (212) 805-0426    Page 1 of 6   12/31/2011 2:30

Case 1:05-cv-05231-LTS   Document 177   Filed 01/05/12   Page 6 of 6

# FAX

| Date: | 12/31/2011 |
|---|---|
| Pages including cover sheet: | 6 |

| To: | Hon. Laura Taylor Swain |
|---|---|
| | United States District Judg |
| | |
| | |
| | |
| | |
| Phone | |
| Fax Number | +1 (212) 805-0426 |

| From: | Vivian Shevitz |
|---|---|
| | |
| | 150 Greenway Terrace - 52\ |
| | Forest hills |
| | NY    11375 |
| | |
| Phone | 914 763 2122 |
| Fax Number | +1 (888) 859-0158 |

**NOTE:**

This letter has been emailed to Hon. Richard J. Sullivan, and all parties and claimants Friedman and Begos.