Gary A. Tanaka
Terminal Island FCI
P.O. Box 3007
San Pedro CA 90731

5 January 2012

The Honorable Laura Taylor Swain
United States District Court
Southern District of New York
500 Pearl Street, Room 620
New York NY 10007

The Honorable Richard J. Sullivan
United States District Court
Southern District of New York
500 Pearl Street, Room 775
New York NY 10007



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: JAN 0 9 2012

Re: SEC v Amerindo et al. 05-CV 5231(LTS) and United States v Vilar/Tanaka 05-CR 621(RJS)

Dear Judges Swain and Sullivan,

I write in an attempt to add some useful input in conjunction with the submissions of Vivian Shevitz of 31 December, and Victoria Eiger of 4 January to the court with respect to the session slated for 10 January 2012 in the above civil proceedings for which I represent myself pro se. Whereas I have been able to participate telephonically in the last two sessions, it appears the all-too-numerous instances of "inaudible" appearing in the transcripts indicate to me that my comments have probably been lost for the record. Therefore, this will serve to augment my participation with some written comments here, further to my earlier letters to Judge Swain dated 6 June 2011, and 9 September 2011.

It is obvious that our former clients have been poorly served by the extensive five-year prosecution and trial results of the associated criminal case that summarily destroyed our investment management company, Amerindo Investment Advisors, then achieved criminal convictions–currently under appeal–for myself, and my partner for "fraudulent" actions contrary to the interests of our private clients who were shown in court to have suffered no losses at all (either those deemed "victims" who testified in the proceedings or the remainder), since there appears to be sufficient liquid balances to meet all their outstanding balances on our books.

The issues, many of which have been the focus of our previous discussion, yet to be sufficiently addressed in my opinion are:

1) Client communication–identification. A systematic search and identification procedure has never surfaced, certainly none utilizing any input from me or Mr. Vilar when many private clients have been known to us for nearly twenty years.

2) Client communication–asset status. As far as we are aware, the government gave no indication of the existence of any client assets until the defense inquiries at the time of sentencing, nearly five years afterwards. It is my belief that even today, there still has not been any scheme to inform known, and unidentified clients of the amounts and description of assets available for distribution.

3) Assets–investment management. We have already informed the court of the seeming indifference of the government to maximize the assets contained in the once volatile, high-performance client portfolio, in ignoring our request for a third-party independent money manager. Whereas the government neglect

has deprived our clients of our expertise (with a historically-audited return of over 21% per annum), it was certainly imprudent to subject the rudderless portfolio to navigate through the risky environment of the 2008-9 recession in which the Dow Jones Average was nearly cut in half.

4) Assets—safekeeping. We have previously alluded to the negligence of the custodial agent (formerly Bear Stearns, now JP Morgan Chase) in allowing $19 million to sit idly in cash without accruing any interest. Evidently, the potential $1 million in unclaimed interest and penalties is not of any major concern to the government. As fantastic as it seems, this situation could be unaddressed today (i.e., the funds are still not drawing any interest)!

5) Asset appraisal. Until my submission to court in January 2010, on the eve of my sentencing, there was no attempt by the government to identify or to appraise any of the $50 million in the client asset portfolio. I have not received month-end statements of the principal Amerindo accounts for over three years from the custodian broker, ever since the changeover to J.P. Morgan Chase. It would be prudent to request back missing copies, and for me to be returned to the current mailing list to be in place to be able to scrutinize for operational 'errors' such as the non-payment of interest episode described earlier.

6) Asset appraisal—costs. The precise analysis commissioned to D.H. Ross & Associates was completed in nine-months at a cost of $100,000, the remainder of my personal funds. This resulted in my self-representation status in his case. It is ludicrous for the government to claim they cannot value the remaining dozen private holdings, except for "incurring substantial expense" when it is well-known they have spent over $15 million on our criminal prosecution and trial. I believe D.H. Ross & Associates could bring their expert asset analysis up-to-date at a cost of a paltry $25,000 !

7) Complications of the criminal proceedings—collateral. Besides the elimination of a highly-professional performance investment manager long-familiar to our private clients, its destruction has deprived them of the collateral safety net standing behind their investments, since, as we stated in all of our documentation and communications to them, their accounts were further backed by our firm assets, and the personal assets of its owners.

8) Complications of the criminal proceedings—client favoritism. The award with mind-boggling (when considering in the minuscule prevailing rates of interest during the period in question, compounded by the fact these assets were de facto frozen under government 'management') rates of interest as a bonus to those clients who testified in the criminal proceedings, deemed "victims," not only smacks of preferential enhancement, but greatly jeopardizes the equitable treatment of the vast preponderance of our remaining clients by disproportionately depleting the asset pool rightly belonging to all of them.

I am regretful for the current sorry situation which has victimized the overwhelming majority of our private clients who did not even participate in the criminal proceedings. I am confident that most of them, after reviewing the trial evidence attesting to our professional integrity in confronting the difficult tech environment of 2000-02, and then having been advised as to the backdrop of the delays in payment they have suffered since 2005—now six years later with uninvested, unremitted balances, they will not hold us accountable. I reiterate, as before, I am in favor of an equitable and speedy distribution process, in a fair resolution of our Amerindo private client balances. I am prepared in this regard to assist in any manner to attain this goal.

Sincerely yours,

c.c. Mark D. Salzberg, Senior Counsel
Securities & Exchange Commission
3 World Trade Center, Suite 240
New York NY 10281-1022

Sharon Levin, Assistant U.S. Attorney
Southern District of New York
One St. Andrews Plaza
New York NY 10007

Nathan Dershowitz and Victoria Eiger
Dershowitz, Eiger & Edelson PC
220 Fifth Avenue, Suite 300
New York NY 10001

David C. Burger
Robinson Brog Leinwand Greene Genovese & Gluck PC
875 Third Avenue, 9th Floor
New York NY 10022-6225

Vivian Shevitz
401 Cumberland Avenue, Apartment 609
Portland ME 04101

Julian W. Friedman
Stillman, Friedman & Shechtman P.C.
425 Park Avenue
New York NY 10022

# FAX

| | |
|---|---|
| | To: Hon. Laura Taylor Swain <br> Fax number: 212-805-0426 |
| | From: Barbara Tanaka Cerrudo <br> Fax number: 760-564-9817 |
| 3 pages + cover page | Date: 1/9/2012 |
| | Regarding: <br> Letter from Gary Tanaka |
| | Phone number for follow-up: <br> 760-564-8156 |

**Comments:**

Gary asked that I distribute this letter on his behalf.

Barbara Cerrudo