UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



---

UNITED STATES OF AMERICA

-v-

ALBERTO WILLIAM VILAR and
GARY ALAN TANAKA,

                Defendants.

No. 05 Cr. 621 (RJS)

---

SECURITIES AND EXCHANGE
COMMISSION,

                Plaintiff,

-v-

AMERINDO INVESTMENT ADVISORS
INC., *et al.*,

                Defendants.

No. 05 Civ. 5231 (LTS)

---

ORDER

LAURA TAYLOR SWAIN, District Judge, and RICHARD J. SULLIVAN, District Judge:

       On December 1, 2011, the Government filed a motion for entry of a final order of forfeiture with respect to various substitute assets in No. 05 Cr. 621, and on December 2, 2011, Defendant Alberto William Vilar filed a motion to stay forfeiture pending resolution of Defendants' appeal. The parties do not dispute that a final order of forfeiture would give the Government title to the substitute assets identified in the Court's November 9, 2010 Order, and permit the Government to initiate the remission and mitigation process whereby seized funds are returned to victims and persons with ownership interests in seized funds. *See* 28 C.F.R. Part 9.

Copies mailed/faxed to Mr. Tanaka
Chambers of Judge Swain   1-13-2012

1

Such a process does not require consent or input from Defendants. *See* 21 U.S.C. § 853(h)-(i) (authorizing Attorney General to distribute forfeited property); 28 C.F.R. Part 9 (describing process for remission and mitigation, which is within discretion of Department of Justice officials). Nevertheless, the Government has represented that, as a result of U.S. Department of Justice policy, none of the seized funds will be distributed to investors following entry of a final order of forfeiture until the Second Circuit issues a final ruling on Defendants' appeals, an event that is not likely to take place for many months or even years. In response to several requests from investors and victims, the Court ordered the parties in both the above-captioned cases to appear for a joint conference, which took place on January 10, 2012.

The Court has considered carefully the parties' written submissions[1] and their representations at the January 10, 2012 joint conference concerning the identification of investors and assets and objections to proposals for interim distributions of assets to investors, including persons who have been identified as victims in the criminal proceeding (the collective term "investors" is used in this order to describe all such persons). It appears that there is general agreement in principle that investors are entitled to the return of substantially all of the funds and other assets that have been restrained in the criminal proceeding in connection with the forfeiture process, and that it is appropriate for the distribution of such assets to commence as expeditiously as possible. Any such interim distribution, however, is only possible with the consent of the parties, and thus far the parties have been unable to agree on a consensual framework for a partial distribution on an interim basis. There is also concern regarding the

---

[1] The Court is in receipt of the following submissions: 1) a letter, dated December 30, 2011, from the Government; 2) a letter, dated December 30, 2011, from the Securities and Exchange Commission; 3) a letter, dated December 31, 2011, from Vivian Shevitz, counsel for Mr. Vilar; 4) a letter, dated January 4, 2012, from Victoria Eiger, Mr. Tanaka's appellate counsel; 5) a letter, dated January 4, 2012, from Thomas Hall, counsel for Robin Sayko, an Amerindo investor; 6) a letter, dated January 5, 2012, from Mr. Tanaka himself; and 7) a submission from the Government, dated January 9, 2012.

valuation and management of illiquid assets that are held in various Amerindo-related accounts and funds. At the conference, the Court directed the parties and investors to make certain submissions in aid of provisions for short-term hardship distributions, and undertook to formulate a proposed structure for an interim distribution of a fund consisting of $17 million in cash from the assets and accounts listed in the November 9, 2010 Order of Forfeiture of Substitute Assets (less the amounts of any prior hardship distributions) (the "Fund"). Attachment A sets forth a proposed structure under which distributions would be made by a receiver pursuant to an agreement among the Government, the SEC and the individual defendants. Attachment B contemplates certain motion practice followed by Fund distributions through a receiver, and involves fewer consensual predicates to distributions. Attachment C outlines a possible approach to distribution, valuation and management of illiquid assets.

IT IS HEREBY ORDERED THAT the parties in each of the above-captioned cases, and each investor who has communicated with the Court regarding the asset distribution issue, shall submit to the Court in writing, and serve on all parties to these proceedings and the representatives of the investors who have thus far made written submissions to the Court in connection with either proceeding, any objections they may have to the proposed distribution mechanisms described in Attachments A and B, and the approach regarding illiquid assets that is described in Attachment C. Written submissions must include a detailed explanation of the nature of the party's objection and may include any counter-proposals or alternative suggestions. Written submissions may also identify individuals suggested for appointment as receiver, with appropriate curriculum vitae information.

All submissions in response to this Order are to be directed to both Judge Sullivan and Judge Swain so as to be received no later than January 27, 2012. All submissions are to be

captioned with both case titles and docket numbers and filed on the ECF system as responses to this Order, insofar as the filing party's representative is a registered ECF user for either case. Such submissions by non-ECF registered users must be served on all counsel, Mr. Tanaka, and Messrs. Patrick W. Begos, Julian W. Friedman, John Preetzmann Aggerholm, Alfred Heitkonig, Thomas J. Hall, and Timothy Wright. Courtesy copies must also be provided for the Chambers of each of the undersigned.

The Clerk of Court is respectfully requested to docket this order in each of the above captioned cases and to mail a copy of the order to Mr. Gary Alan Tanaka. The SEC is directed to provide copies of this order to Patrick W. Begos, Esq., Julian W. Friedman, Esq., John Preetzmann Aggerholm, Esq., Mr. Alfred Heitkonig, Thomas J. Hall, Esq. and Timothy Wright, Esq. promptly by fax or similarly rapid mode of delivery.

SO ORDERED.

Dated: January 13, 2012
New York, New York

_____
LAURA TAYLOR SWAIN
UNITED STATES DISTRICT JUDGE

_____
RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE

ATTACHMENT A - CONSENSUAL STRUCTURE

I.  The parties in both the civil and criminal actions consent to distribution of the Fund through a receivership established under the SEC action, on the following terms:

   a. Defendants Vilar and Tanaka (collectively, "Defendants") and the Government agree to exempt the Fund from the assets enumerated in the November 9, 2010 Substitute Assets Forfeiture Order (the "Substitute Assets Order") entered in U.S. v. Vilar and Tanaka.

   b. A Receiver will be appointed in the SEC case to administer the Fund. The Receiver's compensation and expenses will be paid from the Fund.

   c. All amounts distributed from the Fund will be offset from the forfeiture money judgments previously entered against the defendants in U.S. v. Vilar and Tanaka.

   d. Defendants Vilar and Tanaka will not make any claim against the Government for any amount distributed from the Fund, even if the criminal convictions and forfeiture orders are overturned.

   e. Distributions from the Fund will be conditioned upon, inter alia, the investor's release of Messrs. Vilar and Tanaka and their affiliates from liability relating to the Amerindo investments *to the extent of the Fund distribution received.*

   f. Distributions will be accounted for as the return of principal, until the total amount distributed to the particular investor by the Fund, Amerindo and any affiliates exceeds the amounts originally entrusted to Amerindo and

5

affiliates by such investor. The recipient of the distribution is solely responsible for any and all tax consequences of receipt of the distribution, however it may be characterized.

II. The Receiver will be responsible for administering the investor notification and claim evaluation process and will formulate a specific proposed distribution plan and proposed distribution amounts in accordance with the principles and process outlined below.

    a. The Receiver will mail notice of the claims procedure and bar date approved by the Court to each investor at his or her last known address and will, in addition, publish such notice in a manner approved by the Court.

    b. Each investor will be required to submit sworn written claims 1) identifying a) all amounts he or she contends that he or she entrusted to Amerindo and its affiliates for investment ("Amerindo Investment"), b) all distributions previously received in respect to the Amerindo Investment, c) the total amount of loss claimed as a result of the Amerindo Investment, and d) the particular Amerindo or related fund, entity or investment vehicle(s) in or with which the Amerindo Investment was entrusted or assigned; and 2) releasing the individual defendants from liability to the extent of any amount distributed to the investor from the Fund. The claim must be accompanied by copies of all available documentation, including but not limited to account statements, transaction statements and receipts.

    c. The Receiver will make the submitted claims available for inspection by interested parties, and interested parties will have a defined period of time

       in which to file objections with the Receiver to any claim. Such objections will be posted to the ECF system or otherwise made available for review by interested parties. Claimants will have an opportunity to file replies to any objections, and these replies will also be made part of the record.

d.   Following consideration of the claims and any objections, and after consideration of such Amerindo books and records and other relevant information that may be available, the Receiver will formulate a proposed plan for distribution of the Fund. The distribution plan will allocate distributions proportionately to the allowed amount of each investor's claimed loss and will account equitably for original investments and prior distributions, with the goal that no investor should, by reason of the distribution from the Fund, receive a greater proportionate return of his original investment than any other investor. (For example, if an investor has previously received distributions constituting 10% of his original principal investment and the Fund distributions would, before any adjustments, constitute 15% of original principal amount, the distributions will be adjusted so that the first investor receives less than 15% and the others somewhat more than 15%, so as to equalize the overall percentage received by all investors including the Fund distribution).

e.   The Receiver will provide notice of the proposed distribution plan, and of the amounts proposed to be distributed to investors, and a period will be allowed for the filing of objections to the proposed plan.

f.  The Receiver will provide notice of any revisions of the plan in response to the objections.

g.  Any objections to the revised plan will be determined by Judge Swain, whose determination will be final, subject only to appeal in accordance with the relevant provisions of Title 28 of the United States Code.

8

<u>ATTACHMENT B - CONSENT AND MOTION PRACTICE</u>

I. The Government and the individual defendants agree that, if the default judgment motion described below is granted, the Fund will be exempted from the Substitute Assets Order and delivered to the Receiver appointed in the SEC case for distribution to Amerindo investors.

II. The Government further agrees that all amounts distributed from the Fund will be offset from the forfeiture money judgments previously entered against the defendants in <u>U.S. v. Vilar and Tanaka</u>.

III. Defendants Vilar and Tanaka further agree that they will not make any claim against the Government for any amount distributed from the Fund, even if the criminal convictions and forfeiture orders are overturned.

IV. The SEC will move for judgment by default in the civil case against named defendants Amerindo Investment Advisors Inc. ("Amerindo US"), Amerindo Investment Advisors, Inc. (Panama), Amerindo Advisors UK Limited, Amerindo Management Inc., Amerindo Technology Growth Fund, Inc., Amerindo Technology Growth Fund II, Inc., and Techno Raquia, S.A. (collectively, the "entity defendants"), seeking the entry of judgment against those entities for up to $17 million, as funds owed to investors, and the establishment of a receivership structure for distribution of the Fund as described in Attachment A. The SEC will serve the motion for default judgment on Defendants Vilar and Tanaka (as representatives of the entities) and on all known potential claimants against the entity defendants.

V.  If the motion for default judgment is granted, the Court will enter a partial judgment against the entity defendants, the Fund will be exempted and transferred, and the Receivership distribution process will proceed as approved by the Court.

Case 1:05-cv-05231-LTS   Document 183   Filed 01/13/12   Page 10 of 12

10

ATTACHMENT C

The parties in the criminal and civil cases consent to management and distribution of any illiquid assets (notably, the private securities) in Amerindo-related accounts:

I.  Defendants Vilar and Tanaka (collectively, "Defendants") and the Government agree to exempt the illiquid assets from the assets enumerated in the November 9, 2010 Substitute Assets Forfeiture Order (the "Substitute Assets Order") entered in U.S. v. Vilar and Tanaka

II. The Receiver will identify any investors with interests in the illiquid private securities. This identification process will be facilitated by both self-identification and investor information gained during the claims submission process.

III. Once all such investors have been identified, the Receiver and/or the Court will oversee a process by which the investors elect or designate a steering committee. This steering committee can then propose and, with Court approval, retain counsel and a financial advisor.

IV. The goal of this process is to create a vehicle to which the illiquid securities (and some appropriate amount of cash to cover transaction expenses) can be transferred for management and/or distribution under a structure agreed upon by the investors, and at the expense of the investors with interests in those assets.

V.  Limited funding for preliminary legal and financial advice can come from existing cash in the Amerindo accounts in excess of the $17 million Fund pursuant to consent by the

Government and the Defendants in the criminal matter to release funds from the Substitute Assets Order for that purpose.

VI. All amounts distributed from the illiquid assets will be offset from the forfeiture money judgments previously entered against the defendants in U.S. v. Vilar and Tanaka.

VII. Defendants Vilar and Tanaka will not make any claim against the Government for any amount distributed from the illiquid assets, even if the criminal convictions and forfeiture orders are overturned.

VIII. Distributions will be accounted for as the return of principal, until the total amount distributed to the particular investor by the Fund, Amerindo and any affiliates exceeds the amounts originally entrusted to Amerindo and affiliates by such investor. The recipient of the distribution is solely responsible for any and all tax consequences of receipt of the distribution, however it may be characterized.