UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>-v-<br><br>ALBERTO WILLIAM VILAR and<br>GARY ALAN TANAKA,<br><br>            Defendants.<br>----------------------------------------------------------------------<br>SECURITIES AND EXCHANGE COMMISSION,<br><br>            Plaintiff,<br><br>-v-<br><br>AMERINDO INVESTMENTS ADVISORS, INC., *et al.*,<br><br>            Defendants. | No. 05 Cr. 621 (RJS)<br><br><br><br><br><br><br><br><br><br>No.  05 Civ. 5231 (LTS) |

SECURITIES AND EXCHANGE COMMISSION'S
RESPONSE TO THE COURTS' JANUARY 13, 2012 ORDER

The staff of the Securities and Exchange Commission ("SEC") submits this response to the Courts' January 13, 2012 Order (the "Order") directing the parties to respond to the Courts' proposed distribution mechanisms for Amerindo-related assets (the "Assets") described in Attachments A and B to the Order and the approach for managing the illiquid assets described in Attachment C to the Order.

The SEC staff's goals in this case are twofold.  First, to return assets to investors in the Amerindo funds, and second, to obtain all appropriate relief against the defendants in the SEC's

civil action.  The SEC staff believes that either method for distributing the Assets set forth in Attachments A and B to the Order is consistent with the SEC staff's goals in this case, but that the amount distributed should not be limited to $17 million.  The SEC staff also respectfully submits that the Courts' proposed method for managing the illiquid assets appears to be based on an incorrect premise regarding investor interest in those securities and that they and all other securities should be managed and/or liquidated by the receiver to be appointed in accordance with Attachments A and B to the Order.

**Attachment A – Consensual Structure**

The consensual structure contemplates an agreement among all of the parties for distribution of the Assets to Amerindo investors by a receiver appointed in the SEC's civil action.

The SEC staff would agree to the structure set forth in Attachment A without modification but believes that it would be more appropriate to distribute all of the Assets, not only the $17 million discussed at the January 10, 2012 hearing, to Amerindo investors.  Distribution of all of the Assets in this manner would be consistent with the defendants' stated desire to return all assets to investors and would satisfy their stated goal of ensuring that all investor claims are calculated in a uniform manner.  As discussed more fully in the next section, limiting the distribution to $17 million would make little sense in the context of the SEC's civil action, which seeks full disgorgement and prejudgment interest as well as penalties and injunctive relief against all of the defendants for the benefit of the Amerindo investors.  Nonetheless, the SEC staff would agree to the $17 million initial distribution so long as it is not barred from seeking full relief against all of the defendants in the civil action.

The SEC staff is not in a position to recommend any receiver candidates until the scope

2

Case 1:05-cv-05231-LTS   Document 191   Filed 01/27/12   Page 3 of 5


of the potential receivership is clarified. The SEC staff's internal guidelines require that the staff obtain written proposals from at least three candidates for submission for the Court's consideration and the SEC staff would willingly engage in that process at the appropriate time. Although not yet in a position to recommend a receiver, the SEC staff believes that because the receiver's duties will be limited to identifying claimants and structuring a fair method for calculating claims and distributing the Assets, an appropriate candidate should be experienced with claims analysis and distributions but need not be a practicing attorney.

**Attachment B – Consent and Motion Practice**

The consent and motion practice structure contemplates an agreement by the parties whereby the SEC would move for default judgments against the so-called Amerindo entity defendants seeking entry of a judgment for up to $17 million. If the Court presiding over the SEC's civil action grants such motions, the Department of Justice will release $17 million of the Assets from the Substitute Assets Order and deliver the funds to a receiver in the SEC's civil action who would distribute the assets in accordance with the mechanism described in Attachment A.

The SEC staff would agree to such a procedure provided that it is permitted to seek judgment against the entity and individual defendants for the full amount of their potential disgorgement liability and not be limited to $17 million. In the SEC staff's view, the monies fraudulently raised by the defendants and commingled among the various funds in addition to any monies diverted by the defendants for their own use, plus prejudgment interest, should be disgorged to deprive the defendants of their ill-gotten gain and to benefit all Amerindo investors. The SEC should also be permitted to seek injunctive relief and the maximum civil penalty against all of the defendants. It would be unfair to limit the SEC's ability to recover the full

of the potential receivership is clarified.  The SEC staff's internal guidelines require that the staff obtain written proposals from at least three candidates for submission for the Court's consideration and the SEC staff would willingly engage in that process at the appropriate time. Although not yet in a position to recommend a receiver, the SEC staff believes that because the receiver's duties will be limited to identifying claimants and structuring a fair method for calculating claims and distributing the Assets, an appropriate candidate should be experienced with claims analysis and distributions but need not be a practicing attorney.

**Attachment B – Consent and Motion Practice**

The consent and motion practice structure contemplates an agreement by the parties whereby the SEC would move for default judgments against the so-called Amerindo entity defendants seeking entry of a judgment for up to $17 million.  If the Court presiding over the SEC's civil action grants such motions, the Department of Justice will release $17 million of the Assets from the Substitute Assets Order and deliver the funds to a receiver in the SEC's civil action who would distribute the assets in accordance with the mechanism described in Attachment A.

The SEC staff would agree to such a procedure provided that it is permitted to seek judgment against the entity and individual defendants for the full amount of their potential disgorgement liability and not be limited to $17 million.  In the SEC staff's view, the monies fraudulently raised by the defendants and commingled among the various funds in addition to any monies diverted by the defendants for their own use, plus prejudgment interest, should be disgorged to deprive the defendants of their ill-gotten gain and to benefit all Amerindo investors. The SEC should also be permitted to seek injunctive relief and the maximum civil penalty against all of the defendants.  It would be unfair to limit the SEC's ability to recover the full

relief it is entitled to under the law for the protection of investors.

In the SEC staff's view, maintaining the ability to seek full disgorgement and penalties against the entity and individual defendants is also necessary to ensure that all of the Amerindo funds are returned to investors in the event that the convictions are sustained but the Final Forfeiture Order is reversed on appeal. In that event, the defendants, both convicted felons, would presumably have the ability to control the Assets. This would be an unacceptable outcome for the SEC. The SEC staff would consider deferring seeking judgments against the defendants for their full potential liability to the SEC if the defendants agree to a voluntary stipulated order restraining all of the Assets until after the SEC's claims are adjudicated or settled in the SEC's civil action.

**Attachment C – Management and Distribution of Illiquid Assets**

The Courts' proposed method for management and distribution of the illiquid securities appears to be based on an incorrect premise – that only a certain subset of Amerindo investors have an interest in the illiquid securities. According to the SEC staff's understanding, substantially all of the Amerindo related accounts, whether they hold cash or illiquid securities, were commingled and all of the Assets should be distributed to all Amerindo investors on a pro-rata basis. The SEC staff believes that this is the outcome envisioned by the defendants who have expressed the desire to have the Assets returned to all investors and not merely to a subset of investors.

If all parties agree that the Assets should be returned on a pro rata basis to all Amerindo investors, then, in the SEC staff's view, it would be appropriate for the illiquid securities and any other securities to be administered by the receiver to be appointed in the SEC's civil action. If necessary, the Court could permit the receiver to retain a financial advisor on a capped-fee basis

to assist the receiver in managing and/or liquidating those securities.  The SEC staff believes that retaining an experienced financial advisor on a capped-fee basis would be more efficient and cost-effective than attempting to configure a steering committee that would then hire its own counsel and a financial advisor.

Dated: New York, New York
       January 27, 2012

                               Respectfully submitted,

                               /s/ Neal Jacobson
                               By:  Neal Jacobson

                               Securities and Exchange Commission
                               New York Regional Office
                               3 World Financial Center, Suite 400
                               New York, New York  10281
                               Telephone: (212) 336-0095
                               Facsimile:  (212) 336-1324
                               Email: Jacobsonn@sec.gov