LAW OFFICES

# STILLMAN & FRIEDMAN, P.C.

425 PARK AVENUE
NEW YORK, NY 10022
www.stillmanfriedman.com

CHARLES A. STILLMAN
JULIAN W. FRIEDMAN
SCOTT M. HIMES
MARJORIE J. PEERCE
JOHN B. HARRIS
JAMES A. MITCHELL
MICHAEL J. GRUDBERG
NATHANIEL Z. MARMUR

MARY MARGULIS-OHNUMA
NATHANIEL I. KOLODNY
ELIZABETH S. WEINSTEIN
DANIEL V. SHAPIRO
ERIK M. ZISSU
LAURA P. WEXLER

TELEPHONE
(212) 223-0200

FACSIMILE
(212) 223 1942

**VIA HAND DELIVERY**

January 27, 2012

Honorable Richard J. Sullivan, U.S.D.J.
United States District Court
500 Pearl Street
New York, NY 10007

Honorable Laura Taylor Swain
United States District Court
500 Pearl Street
New York, NY 10007

> Re:   U.S. v. Vilar and Tanaka
>          05-Cr-0621-RJS
>
>          SEC v. Amerindo
>          05-cv-5231-LTS

Dear Judges Sullivan and Swain:

I represent Paul Marcus and Dr. Ronald Salvitti, owners of large positions in the outstanding stock of Amerindo Technology Growth Fund, Inc. ("ATGF").

I am writing this letter pursuant to the Order entered by Your Honors on January 13, 2012 (the "Order"). On page 3 of the Order, the Court gave counsel for each investor the opportunity to comment on the proposed distribution mechanisms described in Attachments A and B to the Order itself, as well as the approach regarding illiquid assets described in Attachment C. I am writing to suggest certain alternatives and make certain observations that I hope will be helpful to the Court.

## The Mechanism for Distribution the Investors' Funds

It was not clear to me whether Your Honors' intended Attachments A and B to be alternatives to each other, or two parts of the same overall distribution mechanism. If the former, we believe that Attachment B is unnecessary and perhaps counterproductive. The reason is that

LAW OFFICES
**STILLMAN & FRIEDMAN, P.C.**

unless the individual Defendants agreed to the entry of judgment, we believe that having the SEC move for the entry of a default judgment could actually delay the time that the ATGF and Guaranteed Fixed Rate Deposit Accounts ("GFRDA") assets are distributed to the beneficial owners. If, for example, the Defendants oppose such a motion, there would be substantial additional delay.

We believe that the approach outlined in Attachment A is more likely to result in a timely distribution of the ATGF and GFRDA assets. While page 2 of the Order states that a distribution "is only possible with the consent of the parties," we have already stated in detail (for example, in a letter to Your Honors dated November 22 and at the January 13 conference) the reasons we believe that such consent is unnecessary, since the Defendants have **acknowledged** that they held those assets in a fiduciary capacity, and were **not the beneficial owners**. We will not repeat those arguments here. Although we do not believe that the consent of the Defendants should be required, we think it is more productive to focus on how to obtain that consent, since this would serve the interests of our clients by bringing about a faster distribution.

In an effort to move the ball forward, I have talked to counsel for Messrs. Vilar and Tanaka and asked the circumstances under which they would be willing to consent to the distribution of the ATGF and GFRDA assets. They have informed me that they believe that the best way to proceed is for them to negotiate a settlement with the SEC which would result in satisfying the claims of the ATGF and GFRDA investors.

They have also stated that as part of any disposition here, they want the Order of Forfeiture of Substitute Assets vacated ("Forfeiture Order"). Defendants' counsel have acknowledged that they are taking this position because there are certain assets covered by the Forfeiture Order to which they believe the ATGF and GFRDA investors have no claim, and because they believe that other assets covered by the Forfeiture Order have sufficient value to satisfy fully the claims of the ATGF and GFRDA investors.

With regard to the Defendants' request that the Forfeiture Order be vacated, my clients do not oppose such action if the Court determines that vacating the Order would be the most efficient way to secure prompt payment to the investors of all of the amounts to which they are entitled. Therefore, we suggest that any determination by Judge Sullivan to vacate the Forfeiture Order should be conditioned on each of the following events:

(a)     the Court appoint a Magistrate Judge to supervise the settlement discussions between Defendants and the SEC, and keep the Court advised of the progress of those negotiations so that there is no unreasonable delay;

(b)     Defendants and the SEC agree to a settlement that provides for the return to the investors of all assets (cash, publicly-traded securities, and non-publicly-traded securities) belonging to ATGF and GFRDA;

2

LAW OFFICES

**STILLMAN & FRIEDMAN, P.C.**

(c)     the settlement provide for the distribution of the ATGF and GFRDA assets in accordance with the procedures discussed in the balance of this letter; and

(d)     the settlement provide that unless the claims of the ATGF and GFRDA investors are paid in full, all of their rights against the Defendants will be reserved.

## The Amount to be Distributed

Although the Order (page 3) and Judge Swain's comments at the January 13 conference referred to "an interim distribution of a fund consisting of $17 million in cash," we respectfully submit that there is no basis for imposing such a limitation. The December 30, 2011 letter from Ms. Levin to Your Honors valued the accounts belonging to ATGF and related entities at a total of $26,982,060. This figure is derived by adding up items 12, 13, 15, 20, 21, and 22 on pages 2-3 of Ms. Levin's letter.

Assuming that Ms. Levin's figure is correct, there can be little argument that these assets belong to the ATGF and GFRDA investors, it is respectfully submitted that the amount distributed should be the portion of the $26,982,060 in Ms. Levin's letter that consists of cash or cash equivalents. It seemed to be the consensus of the parties at the January 10 conference that this figure was far in excess of $17 million. This latter amount, when first suggested by Ms. Levin, was proposed as a compromise in the hope that the individual Defendants would consent. However, the proposal contained in this letter is premised on the negotiation of a settlement with the SEC -- obviously another way for the Defendants to manifest their consent. It is respectfully submitted that the rationale for limiting the interim distribution to $17 million would disappear if such a settlement is made.

## The Administration of the Distribution Process

Any mechanism for distribution of the ATGF and GFRDA assets would have to take account of the fact that those assets fall into three categories: cash (and presumably cash equivalents such as short-term treasury obligations); publicly-traded securities; and securities that are not publicly traded.

As stated at the January 13 conference, we respectfully submit that the most efficient way to manage the distribution process would be to assign that responsibility to a United States Magistrate Judge. It would make sense to have that responsibility given to the same Magistrate Judge that supervises the settlement discussions between the SEC and the Defendants.

While Your Honors stated the view at the conference that such a task may be beyond the jurisdiction of the Magistrate Judges, and might impose upon them unduly, we believe that we have a solution to those problems. Our suggestion is that David Ross, a forensic examiner who is already familiar with all of the assets owned by the investors, be appointed as a Court expert to aid the Magistrate Judge in fulfilling this task.

3

As I indicated at the conference, Mr. Ross has already immersed himself in the issues regarding the location and valuation of the ATGF and GFRDA assets. In fact, he valued those assets as of September 30, 2009, and reported his findings regarding the cash and marketable securities to Judge Sullivan in a series of letters dated January 27, 2010. In addition, Mr. Ross has also devoted substantial effort to tracing the non-publicly owned securities. This has included determining what transactions occurred (such as mergers or acquisitions) that resulted in some of these securities being replaced by publicly-traded stock which can now be sold. Having already done this work, it would seem that involvement of Mr. Ross at this point would serve the interests of all concerned by avoiding needless duplication and reducing costs.

In the event the Court remains disinclined to appoint a Magistrate Judge in this matter and prefers to appoint a Receiver, then we respectfully submit that Mr. Ross should be appointed to that position. A description of Mr. Ross' firm, and a January 20, 2012 proposal from him for future work in this matter are annexed to this letter. As a review of the proposal will indicate, Mr. Ross has developed a detail work plan which we believe would be the most efficient way to make sure that each ATGF shareholder and GFRDA depositor receives the maximum amount, and he is prepared to execute that plan for a reasonable fee.

## The Claims That Should Qualify for Distribution

All ATGF shareholders and all holders of GFRDA accounts should be given notice and the opportunity to participate in the distribution. However, because certain ATGF shares may have been redeemed, and certain GFRDA accounts might have been repaid, we believe that the decision-making process must take account of these events so that the amount of each claim is limited to the positions actually held at the time the Amerindo entities ceased to conduct business.

We believe that the two categories of claims should be dealt with separately. As to the GFRDA depositors, we believe that claims should be quantified by starting with the total sums invested in GFRDA and subtracting any monies received on account of those investments. Each claim would then result in a specific dollar amount remaining unpaid. The GFRDA accounts were debt securities, so the holders of those accounts are not entitled to any appreciation in excess of the interest that each deposit account bore.

As to ATGF investors, we think that the focus should be not on specific dollar amounts, but rather on the number of ATGF shares owned by each shareholder as of the last net asset valuation report dated March 31, 2005. The ATGF shares were equity investments, so that the shareholders should get the benefit of any increases in the value of their shares during the time they were outstanding (just as their claims would be reduced for any drop in value during that time). Therefore, we respectfully submit that the total amount of assets remaining after satisfaction of the GFRDA claims should be distributed to the ATGF shareholders in the proportion that the share ownership of each bears to the total number of ATGF shares outstanding at the time the Company ceased to do business.

## The Determination of the Cash Amounts to be Distributed to Each Claimant

If there are sufficient assets to satisfy the claims of all investors, we believe that the amounts owing to the GFRDA investors and the ATGF shareholders should be quantified and apportioned in accordance with the two above paragraphs. In the event there are not sufficient assets to satisfy all the claims, then we respectfully submit that the total assets should be divided among all of the GFRDA account holders and ATGF shareholders in proportion to the value of the claims of each Claimant (as calculated according to the methodology discussed above). In such event, my clients explicitly reserve all of their rights against the Defendants and any assets they own.

## The Securities Owned by ATGF

If there is sufficient cash in the accounts to satisfy all of the GFRDA claims, then any securities belong solely to the ATGF investors. We believe that those securities should be dealt with as follows:

### Publicly-Traded Securities

Attachment C to the Order refers to "illiquid assets (notably, the private securities)." Nowhere does the Attachment or any other portion of the Order refer to publicly-traded securities. We respectfully submit that this is an oversight which should be corrected.

If the ATGF assets include any publicly-traded securities, then those securities should be liquidated and the resulting capital should be distributed to the ATGF investors. However, the liquidation of the securities should take place in an orderly manner so as to maximize, to the extent reasonably possible, the proceeds realized. We believe that the suggestion in paragraph III of Attachment C that "the investors elect or designate a steering committee" should apply as well to publicly-traded securities, and that the Magistrate Judge or Receiver appointed to administer the distribution process should be directed to sell those securities in consultation with the steering committee. Because my clients are ATGF investors with large share positions, we believe they should be on any such steering committee.

### Non-Publicly-Traded Securities

As noted above, Mr. Ross has already determined that certain of the securities originally held by ATGF have been converted into publicly-traded securities. Any securities in that category can be sold in accordance with the procedure described above, and the proceeds of the sale can be distributed to the ATGF shareholders.

As for non-publicly-traded securities issued by companies that are still in existence, we believe that there are only two reasonable courses of action -- either that the securities be sold in a private sale, or they be held pending further developments. We believe that this is a decision that should initially be made by the Magistrate Judge (with the advice of the investor steering committee) or the Receiver. However, it is highly likely that at the end of the distribution process, there will still be some securities remaining unsold. At that point,

LAW OFFICES
**STILLMAN & FRIEDMAN, P.C.**

consideration would have to be given either to creating a vehicle (analogous to a liquidating trust used in the bankruptcy context) to continue to hold those securities, or distributing them to the ATGF investors in kind.

\*　　\*　　\*

I apologize for the length of this letter, but I wanted to set forth for consideration by Your Honors all of the factors that I believe relevant to the complex issues before the Court.

Respectfully submitted,

Julian W. Friedman

JWF:cn
Enclosure

6

LAW OFFICES
STILLMAN & FRIEDMAN, P.C.

cc:     Mr. Alfred Heitkonig (alfredo@ahfs.biz)
        Sharon Levin, Esq. (Sharon.levin@usdoj.gov)
        Benjamin Naftalis, Esq. (Benjamin.naftalis@usdoj.gov)
        Mark D. Salzberg, Esq. (salzbergm@sec.gov)
        Neal Jacobson, Esq. (jacobsonn@sec.gov)
        Vivian Shevitz, Esq. (Vivian@shevitzlaw.com)
        Jane Simkin Smith, Esq. (jssmith1@optonline.net)
        Victoria B. Eiger, Esq. (veiger@lawdea.com)
        David C. Burger, Esq. (dcb@robinsonbrog.com)
        Patrick W. Begos, Esq. (pwb@begoshorgan.com)
        Thomas J. Hall, Esq. (hallt@hallandhalllaw.com)
        Mr. Gary Tanaka (*by regular mail*)

7

# DM Ross Associates Inc.

Since 2006, DM Ross Associates Inc. has provided financial, marketing, and technology services to financial services companies. These clients have included Citigroup Smith Barney (now part of Morgan Stanley) and the Bank of New York Mellon.

The president and principal of DM Ross Associates Inc. is David Ross. Mr. Ross has worked with and for financial services companies since 1984. He has held executive and/or professional positions, consecutively, with the Federal Reserve Bank of New York, Bankers Trust Company (now part of Deutsche Bank), and Citigroup. At those firms, Mr. Ross worked at various times in their marketing, finance, accounting, and technology areas. For more than 25 years, Mr. Ross has been responsible for valuing and reporting on private and public securities, both client-owned and bank-owned holdings. He has also been responsible for designing, managing, and assisting in the implementation of five client investment reporting systems. Finally, Mr. Ross has managed or assisted in the management of the implementation of more than 10 major new systems or operational processes at several of the largest financial institutions in the United States.

Mr. Ross holds a Masters in Business Administration in Finance and Accounting from Columbia University and a Bachelor of Arts degree from Duke University.

# DM Ross Associates Inc.

315 East 72 Street
Suite 19B
New York, NY 10021
(917) 251-8456
DM.Ross.Associates@earthlink.net

20-Jan-2012

Julian Friedman, Esq.
Stillman, Friedman & Shechtman
425 Park Avenue
New York, NY 10022

Dear Mr. Friedman,

DM Ross Associates welcomes the opportunity to render further services to the Court regarding the rendering of forensic analytical services in the Amerindo matter.

We understand that the analysis would encompass all designated Amerindo Investment Advisor funds.

We would welcome the opportunity to provide an updated valuation of these funds. As you know, DM Ross Associates provided a comprehensive valuation of most of these funds under the direction of one of the Amerindo Investment Advisor principals in 2009.

These valuation activities are expected to include, but not necessarily be limited to:
- Obtain updated fund bank account statements for the involved funds, both current and required historical statements. DM Ross Associates will identify the appropriate contacts at the banks, prepare request for information letters, and follow up the written requests. We will work with appropriate individuals designated by the court to issue the written requests in such a manner as to obtain timely responses.
- Identify and confirm the current status of each originally private company in which the Amerindo Investment Advisor funds had invested. Later in this letter, these companies may be referred to as the portfolio companies. While much of this confirmation will only require access to prior reports, some additional analysis will be performed on companies which remained private as of late 2009.
- Obtain current financial reports, required historical reports, and all recapitalization documents published since early 2009 from appropriate companies in which the Amerindo Investment Advisors funds had invested. These portfolio companies will include still operating private companies, and companies that went public since early 2009. DM Ross Associates will identify the appropriate contacts at these portfolio companies, prepare request for information letters, and follow up the written requests. We will work with appropriate individuals designated by the court to issue the written requests in such a manner as to obtain timely responses.

# DM Ross Associates Inc.

315 East 72 Street
Suite 19B
New York, NY 10021
(917) 251-8456
DM.Ross.Associates@earthlink.net

- Provide updated valuations of portfolio companies previously valued by DM Ross Associates in 2009. These updated valuations will be provided using current standard industry valuation methods, as published by the Private Equity Industry Guidelines Group, or successor body. These valuations will typically be based upon valuations provided in company recapitalization events and/or through analysis of comparable public companies. Where a portfolio company has not had a recapitalization event, the updated valuation will be streamlined. When there is a recapitalization event, the updated valuation may take more effort.
- Provide valuations of additional designated portfolio companies. DM Ross Associates was not able to value all appropriate portfolio companies in 2009 and 2010, due to a lack of time and or documentation. At the direction of appropriate individuals designated by the court, DM Ross Associates will value additional portfolio companies where directed. DM Ross Associates will provide a list of these portfolio companies and an indication of which may have value that would exceed the effort required to confirm and gather that value.
- Provide overall estimated investment values of each involved Amerindo Investment Advisor fund.
- Provide periodic project management reports of the progress of these valuation efforts, in the form and frequency directed by appropriate individuals designated by the court and your clients.
- Provide other valuation activities as directed. For example, if directed to do so, DM Ross Associates can also seek out liquidation values for specific investments.

DM Ross Associates will provide these activities at the hourly rate of $175/hour. At this time, we cannot estimate the number of hours that will be needed because of a number of unknown factors, such as time needed to obtain necessary documents or number of portfolio companies that have had recapitalization events since early 2009. We will keep the time to a minimum, and provide estimates of time needed as the unknown factors are addressed.

While we do not expect to travel and expect to manage all mailings through your firm, DM Ross Associates will also need to be reimbursed for any pre-approved required travel or mailing expenses. DM Ross Associates will absorb costs for travel within the New York metropolitan area.

DM Ross Associates will present invoices every two weeks for payment. We will expect to receive payment within several weeks of presentation of the invoice.

Please note that DM Ross Associates is also prepared to provide or assist in providing two other services.

The first of these services is gathering the dispersed assets in preparation for distribution.

# DM Ross Associates Inc.

315 East 72 Street
Suite 19B
New York, NY 10021
(917) 251-8456
DM.Ross.Associates@earthlink.net

The second of these services is reviewing documents to prepare a list of Amerindo Investment Advisor fund investors and GFRDA investors, including respectively current shares and outstanding amounts, under the direction of appropriate individuals designated by the court.

We will provide a initial list of either the asset gathering activities and/or investor outstanding investment analyses upon request.

Best regards,


David Ross
President