LAW OFFICES
# STILLMAN & FRIEDMAN, P.C.

425 PARK AVENUE
NEW YORK, NY 10022
www.stillmanfriedman.com

CHARLES A. STILLMAN
JULIAN W. FRIEDMAN
SCOTT M. HIMES
MARJORIE J. PEERCE
JOHN B. HARRIS
JAMES A. MITCHELL
MICHAEL J. GRUDBERG
NATHANIEL Z. MARMUR

MARY MARGULIS-OHNUMA
NATHANIEL I. KOLODNY
ELIZABETH S. WEINSTEIN
DANIEL V. SHAPIRO
ERIK M. ZISSU
LAURA P. WEXLER

TELEPHONE
(212) 223-0200

FACSIMILE
(212) 223-1942

**VIA HAND DELIVERY**

February 2, 2012

Honorable Richard J. Sullivan
United States District Court
500 Pearl Street
New York, NY 10007

Honorable Laura Taylor Swain
United States District Court
500 Pearl Street
New York, NY 10007



   Re: U.S. v. Vilar and Tanaka
     05-Cr-0621-RJS

     SEC v. Amerindo
     05-cv-5231-LTS

Dear Judges Sullivan and Swain:

   I represent Paul Marcus and Dr. Ronald Salvitti, owners of large positions in the outstanding stock of Amerindo Technology Growth Fund, Inc. ("ATGF").

   I am writing this letter as a supplement to my letter to Your Honors dated January 27. More particularly, I am writing in order to state my clients' objections to certain proposals made in Defendant Vilar's recent Submission in response to the Court's January 13, 2012 Order.

   In our January 27 letter, we stated (at pages 2-3) that Mr. Marcus and Dr. Salvitti had no objection to vacating the Forfeiture Order provided that any such action was made contingent, among other things, on the investors in ATGF and GFRDA receiving the return of all of their assets, and all of the investors' rights against the Defendants were reserved unless and until such complete distribution was made. In his Submission, Mr. Vilar seeks to establish certain conditions for the distribution process which would do material harm to the ATGF and GFRDA investors, and result in material personal benefit to Mr. Vilar himself and Mr. Tanaka. We deal separately below with each of those aspects of Mr. Vilar's Submission.

LAW OFFICES
STILLMAN & FRIEDMAN, P.C.

**First,** Mr. Vilar attempts to carve out of the distributions to the ATGF and GFRDA investors the assets allegedly belonging to "The Trustees of the Amerindo Advisors Ltd. Ret. Benefits Scheme." (Vilar Submission, pp. 8-9.) As set forth in the Government's December 30 Submission to Your Honors, the amount in question is in excess of $14 million. Defendant Vilar argues that if the amounts in the remaining accounts (approximately $26 million) are insufficient to satisfy all of the investors' claims, "then a pro rata distribution would be appropriate." (Vilar Submission, p. 24.) In other words, Defendant Vilar seeks to insulate the entire $14 million in the alleged pension plan from any claims by the investors, and to shift entirely to the investors the burden of any shortfall in the amount of funds available for distribution.

We strenuously object to Mr. Vilar's attempt to carve out the $14 million in the account in the name of "The Trustees of the Amerindo Advisors Ltd. Ret. Benefit Scheme." The only indication that this money does not belong to the creditors is the name that the Defendants attach to this account at the time it was opened. Without a detailed inquiry as to what the $14 million consists of, and where it came from, it is respectfully submitted that this money should be protected so that it will be available to satisfy claims of the investors. Therefore, we reiterate our request that if this account is to be released from the Forfeiture Order, any such release be conditional on the investors being fully compensated.[1]

We also request that the Magistrate Judge or Receiver who will administer the distribution process adopted by this Court be directed to ascertain the sources and true ownershi8p of the assets in the retirement account. Unless that is done, my clients will be compelled to institute an action against Messrs. Vilar and Tanaka in the event they do not receive the full amount to which they are entitled by virtue of their ATGF and GFRDA investments.

**Second,** Mr. Vilar claims that the pension account includes "an unspecified number of shares of 'unpriced stock.'" (Vilar Submission, p. 8.) We do not know what this language refers to, but its inclusion in Mr. Vilar's Submission reinforces the importance of treading carefully before excluding so-called pension or retirement assets from the Forfeiture Order. If it turns out that the securities in question were purchased by one of the ATGF entities, the fact that they may be held in the name of a pension or retirement plan does not exempt them from the claims of the investors.

**Third,** Mr. Vilar argues that the investor claims should only be allowed "based on the valuation of the qualifying investors' interest[s] at (or as near as possible) to May 2005...." (Vilar Submission, p. 22.) We believe this would be inappropriate, since -- as investors in an equity fund -- the ATGF shareholders have the right to all appreciation in the assets of that fund regardless of when it occurred (just as they would be taxed with all depreciation in the value of the assets). Although he does not explicitly say so, Mr. Vilar seems to be arguing that he and Mr. Tanaka are entitled to any appreciation in the ATGF assets after May 2005 -- the inevitable consequence of limiting the investors' claims to their account balances as of that date. We do

---

[1] Interestingly, Mr. Tanaka parts company from Mr. Vilar, stating that the "pension account" should be protected only "to the extent investor claims can be satisfied without touching it...." We think that Mr. Tanaka's approach is far better, since it establishes as a first priority the full satisfaction of all investor claims.

2

LAW OFFICES
**STILLMAN & FRIEDMAN, P.C.**

not believe there is any basis for Mr. Vilar or Mr. Tanaka participating in the post-May 2005 appreciation in value, since -- as they have stated many times -- they held the ATGF money as fiduciaries, and had no beneficial interest in it.

**Fourth,** Mr. Vilar's proposal that the investor claims be cut off at May 2005 suffers from an additional defect. He premises his argument on the account statements issued to the investors at that time. (Vilar Submission, p. 22.) However, those statements -- phrased in terms of Net Asset Value ("NAV")[2] in the case of ATGF -- were documents created by Messrs. Vilar and Tanaka themselves, and an inquiry should be conducted into their reliability. For example, there is no indication of how many shares were presumed to be outstanding for purposes of making the NAV calculation. Nor is there any way to know the accuracy of the manner in which total Fund assets were valued for purposes of this calculation. We are aware that Mr. Tanaka has estimated the value of the non-publicly held securities to be up to $5 million, and there is no way to know how -- or even if -- this figure was dealt with in the NAV computation.

Mr. Marcus and Dr. Salvitti respectfully submit that they should not be required to accept the determinations of the total number of outstanding shares or the total value of Fund assets made by Mr. Vilar and Mr. Tanaka. Rather, the issues of the number of outstanding shares and the value of total assets -- whether at May 2005 or at any other time -- should be determined by the Magistrate Judge or the Receiver who will administer the process of distributing the ATGF and GFRDA assets.

**Fifth,** Mr. Vilar makes some unspecified claim that "defendants' management companies may be owed fees by the hedge funds." (Vilar Submission, p. 25.) We have no idea the basis for this claim, and we think it should be rejected out of hand.

Respectfully submitted,

Julian W. Friedman

JWF:cn

---

[2] Net Asset Value is the total value of Fund assets divided by the number of outstanding shares.

Law Offices
**STILLMAN & FRIEDMAN, P.C.**

cc: Mr. Alfred Heitkonig (alfredo@ahfs.biz)
     Sharon Levin, Esq. (Sharon.levin@usdoj.gov)
     Benjamin Naftalis, Esq. (Benjamin.naftalis@usdoj.gov)
     Mark D. Salzberg, Esq. (salzbergm@sec.gov)
     Neal Jacobson, Esq. (jacobsonn@sec.gov)
     Vivian Shevitz, Esq. (Vivian@shevitzlaw.com)
     Jane Simkin Smith, Esq. (jssmith1@optonline.net)
     Victoria B. Eiger, Esq. (veiger@lawdea.com)
     David C. Burger, Esq. (dcb@robinsonbrog.com)
     Patrick W. Begos, Esq. (pwb@begoshorgan.com)
     Thomas J. Hall, Esq. (hallt@hallandhalllaw.com)
     Mr. Gary Tanaka (*by regular mail*)