UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>-v-<br><br>ALBERTO WILLIAM VILAR and<br>GARY ALAN TANAKA,<br><br>                    Defendants.<br>-----------------------------------------------------------------------<br>SECURITIES AND EXCHANGE COMMISSION,<br><br>                    Plaintiff,<br><br>-v-<br><br>AMERINDO INVESTMENTS ADVISORS, INC., *et al.*,<br><br>                    Defendants. | No. 05 Cr. 621 (RJS)<br><br><br><br><br><br><br><br><br><br>No.  05 Civ. 5231 (LTS) |

SECURITIES AND EXCHANGE COMMISSION'S
RESPONSE TO THE COURTS' FEBRUARY 7, 2012 ORDER

The staff of the Securities and Exchange Commission ("SEC") respectfully submits this response to the Courts' February 7, 2012 Order (the "Order") directing the Office of the United States Attorney ("USAO") and the SEC (together, the "Government Entities") to furnish certain information to the Courts and the parties.  The SEC staff will address the information requests in order.

1. **A list of known entities and individuals who are likely to have claims against each of the accounts and assets identified in the Substitute Assets Order.**

The SEC staff previously consulted with the USAO to identify all potential Amerindo

investors and that information was included in the USAO's January 20, 2012 submission to the Courts in response to the Courts' January 12, 2012 Order.  To the best of the SEC staff's knowledge, no individual investor owns any of the accounts or other assets identified in the Substitute Asset Order, nor do any of them possess any right to any specific account or other asset identified in the Substitute Assets Order (including, without limitation, the private securities).  The defendants have repeatedly acknowledged that monies obtained from GFRDA and ATGF investors were commingled and that all investors should be paid *pro rata* (regardless of the original form of the investment).  The SEC staff agrees with this view and believes that it is the most equitable way to deal with a complicated and aged fraud involving extensive, but unreliable, records.

2. **The current value of each of the Substitute Assets and the basis for the valuation.**

All of the Substitute Assets are subject to restraint in the criminal case.  The SEC has no independent knowledge of the value of the Substitute Assets and respectfully refers the Courts to the USAO's submission on this issue.

3. **The most recent account balance for each potential investor-claimant, specifying the date of the account statement and setting out the types of investments held by each such person and the separate balances for each type of investment.**

The SEC staff respectfully submits that the information that the Courts have requested will not prove to be helpful as the final Amerindo account statements are incomplete and do not accurately reflect the amount of money that each investor is owed.  Accordingly, the staff believes that the institution of a formal claims process – rather than solely an analysis of investor account statements - is likely to provide more meaningful information.

The SEC staff has never seen the full universe of Amerindo's corporate records.  In

particular, the SEC staff understands that the USAO obtained substantially all of the corporate records concerning the ATGF and GFRDA investment vehicles from Amerindo's former London office -- including investor files containing ATGF and GFRDA account statements (to the extent they exist) -- after the SEC's civil action was stayed.  To the extent that a limited sub-set of individual investors have contacted the SEC staff over the years and provided account statements, the SEC staff has forwarded this information to the USAO for inclusion in their submission.  The SEC staff notes, however, that it is unable to verify whether any such account statement is, in fact, the last known statement for such investor as each investor merely produced documents in his or her possession.

     Moreover, the SEC staff understands that the USAO analyzed GRFDA investor files from Amerindo's London office in connection with the criminal trial but did not do so with respect to ATGF investors as the ATGF investment vehicle was not part of the USAO's case-in-chief.  The staff notes, however, that it appears that Amerindo's files were incomplete with respect to the GFRDA investors as the date of the last statement varies greatly among GFRDA investors so that it is impossible to know whether the last dated statement in any given GFRDA investor's file is, in fact, the last statement for that investor.  Thus, even if the files from Amerindo's London office contain additional investor statements for ATGF investors, it is not clear that the Government Entities could identify with any degree of certainty the final balance for each such ATGF investor.

     In addition, even if the Government Entities were able to identify the last statement for each ATGF investor, there would be no way to verify the accuracy of the account statement.  This is because, as the USAO explained in footnote 6 to their February 3, 2010 submission, former Amerindo London employees stated that Mr. Tanaka (a) calculated ATGF's net asset

3

value by hand, with reference to certain stock market indices (rather than based on the fund's actual assets and liabilities, as would typically be the case); and (b) likely did not maintain a share register for ATGF (and the SEC staff is not aware of a share register for either of the ATGF or GFRDA investment vehicles).

Due to the inherent unreliability of Amerindo's account statements, the SEC staff respectfully suggests that the account statements alone cannot form a sufficiently reliable basis for determining investor claims. This is particularly true as the defendants offered at least two distinct types of investments to investors – the GFRDAs (purportedly comprised of debt and debt-like instruments) and the ATGF hedge fund (purportedly comprised of equities) – and then comingled investor money. Rather, as the Courts suggested in the January 13, 2012 Order, the SEC staff respectfully believes that a claims process administered by a third party (frequently utilized in SEC proceedings involving complex frauds where account statements and other records are unreliable) would be the preferred method for determining investor losses in this case. In such a process, Amerindo investors would submit potential claims with pertinent supporting information, including a sworn affidavit as well as cancelled checks, bank statements, other evidence of the amount of their investment or any other evidence that they have to support their claims. Moreover, to the extent that the administrator needed any additional records obtained from Amerindo's London office, the SEC staff expects that such records could, of course, be made available to the administrator. The SEC staff thus respectfully believes that such a process would be the most reliable method to untangle the comingled assets, value investor claims and expeditiously return investor assets.

Dated: New York, New York
       February 21, 2012

                                        Respectfully submitted,

                                        /s/ Mark D. Salzberg
                                        By: Mark D. Salzberg

                                        Securities and Exchange Commission
                                        New York Regional Office
                                        3 World Financial Center, Suite 400
                                        New York, New York  10281
                                        Telephone: (212) 336-0159
                                        Facsimile:  (212) 336-1324
                                        Email: Salzbergm@sec.gov