C54USECC

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------------x
   SECURITIES AND EXCHANGE COMMISSION,
3
                   Plaintiff,
4
            v.                            05 CV 5231(RJS)
5
   AMERINDO INVESTMENT ADVISORS, INC.,
6  et al.,
7                   Defendants.
   ------------------------------------x
8                                     New York, N.Y.
                                      May 4, 2012
9                                     10:05 a.m.

10 Before:

11              HON. RICHARD J. SULLIVAN

12                                     District Judge

13                     APPEARANCES

14 SECURITIES AND EXCHANGE COMMISSION
        Attorneys for Plaintiff
15 BY:  MARK D. SALZBERG
        NEAL R.JACOBSON
16
   ROBINSON BROG LEINWAND GREENE GENOVESE & GLUCK PC
17      Attorneys for Defendant Alberto William Vilar
   BY:  DAVID CLIFFORD BURGER
18
   VIVIAN SHEVITZ
19      Attorney for Defendant Gary Alan Tanaka
20 STILLMAN & FRIEDMAN, P.C.
        Attorney for Claimants Paul Marcus, Ronald Salvittii
21 BY:  JULIAN W. FRIEDMAN
22 BEGOS HORGAN & BROWN LLP
        Attorneys for Claimants Lisa Mayer, Debra Mayer
23 BY:  PATRICK W. BEGOS
24 BIRD BIRD & HESTRES, P.S.C.
        Attorneys for Claimant Heitkonig
25 BY:  EUGENE F. HESTRES

C54USECC

1                (Case called)

2                THE DEPUTY CLERK:  05 Civil 5231, Securities and

3       Exchange Commission v. Amerindo Investment Advisors,

4       Incorporated.

5                For the plaintiff.

6                MR. JACOBSON:  Your Honor, Neal Jacobson on behalf of

7       the Securities and Exchange Commission, and with me is my

8       colleague Mark Salzberg.

9                THE COURT:  Mr. Jacobson, Mr. Salzberg, good morning.

10               For the defendants.

11               Amerindo Investment Advisors, Inc. is not represented,

12      correct?

13               MS. SHEVITZ:  Correct.

14               THE COURT:  For Mr. Vilar.

15               MR. BURGER:  David Burger, your Honor.

16               THE COURT:  Mr. Burger, good morning to you.

17               For Mr. Tanaka.

18               MS. SHEVITZ:  Vivian Shevitz for Mr. Gary Tanaka.

19               THE COURT:  Ms. Shevitz, good morning to you.

20               MS. SHEVITZ:  Good morning.

21               THE COURT:  We have a number of corporate defendants.

22      None of them are represented at this point, certainly not by

23      either of you?

24               MS. SHEVITZ:  Correct.

25               THE COURT:  We have also present, if you could state

C54USECC

1   your names for record.

2          MR. FRIEDMAN:  Julian Friedman, representing Paul

3   Marcus and Ronald Salvitti who are claimants, ATGF claimants.

4          THE COURT:  Good morning to you.

5          MR. FRIEDMAN:  Good morning.

6          MR. BEGOS:  Good morning, your Honor.

7          Patrick Begos, representing Lisa and Debra Mayer, who

8   are also plaintiffs in bankruptcy.

9          THE COURT:  We all know each other and that is really

10  just for the record.

11         This case is now all mine.  Judge Swain has passed it

12  over to me because I had the criminal case.

13         We are here really extensively in connection with two

14  and a half motions that are being contemplated.  I say two and

15  a half because the SEC is contemplating a motion for summary

16  judgment and, also, maybe, kind of, at some point, a motion to

17  amend.

18         Do I have that right, Mr. Jacobson?

19         MR. JACOBSON:  Essentially correct.  I can --

20         THE COURT:  You will elaborate in a minute.

21         And the defendants are each contemplating motions to

22  dismiss this complaint.

23         It seems to me it probably makes the most sense to

24  have you amend the complaint first and then we have cross

25  motions, the motion for summary judgment and the motion to

C54USECC

1    dismiss at the same time.

2                Let me just ask you quickly, do you agree or disagree

3    with that, Mr. Jacobson?

4                MR. JACOBSON:  I don't disagree with the concept,

5    although I am not sure that is the best way to go in the

6    particular instance.

7                THE COURT:  I will come back to you and you can

8    explain to me why it is not the best way to go or what is the

9    best way to go.

10               Ms. Shevitz, Mr. Burger, what are your thoughts on

11   that, what I just proposed?  Do you think that is the most

12   efficient way to go or not the most efficient way to go?

13               MS. SHEVITZ:  I would kind of like to know what the

14   alternatives are.

15               THE COURT:  The way I see it is sort of the

16   alternative is what Mr. Jacobson had proposed in his letter

17   which is that we do summary judgment first and then, depending

18   on how that shakes out, then they get to amend and then at that

19   point do a motion to dismiss on the amended complaint, unless

20   the defendants are doing two motions to dismiss complaints, the

21   original and then later the amended.

22               MS. SHEVITZ:  No.  I certainly prefer less work.

23               THE COURT:  That's what I figured.

24               And you agree?

25               MR. BURGER:  I agree, your Honor.

C54USECC

1          THE COURT:  Tell me, Mr. Jacobson, why that's not the

2     way to go?  I read your letter, but tell me again.

3          MR. JACOBSON:  Your Honor, the first part of the SEC's

4     amended complaint alleges essentially the exact same facts that

5     were decided in the criminal trial with respect to Lily Cates

6     and her investments in the SBIC and the advisor fraud that was

7     committed against her.

8          THE COURT:  That's clear we have the investment

9     advisor fraud, and that is not affected by Morrison at all,

10    correct?

11         MR. JACOBSON:  Correct.

12         THE COURT:  You agree with that or no, that the

13    investment advisor fraud that is alleged as counts of this

14    complaint and was a count of conviction in the criminal case

15    are not affected by Morrison?

16         MS. SHEVITZ:  No.  I believe that they are affected by

17    Morrison.  I believe Morrison affects everything.

18         THE COURT:  Let me hear what you have to say.  And I

19    think it probably makes more sense to have you respond in toto,

20    Ms. Shevitz, rather than asking you to keep jumping up and

21    responding piecemeal.

22         MR. JACOBSON:  Then with respect to certain GFRDA

23    investors, the fraud against whom was proven in a criminal

24    trial, specifically, Ms. Tara Colburn and Robert Cox, Graciela

25    Lecube-Chavez and the Mayers, they were all proven at the

C54USECC

1    criminal trial.  Again, the first part of our complaint alleges

2    the fraud with respect to GFRDA, including those victims -- the

3    complaint alleged specific victims but not an exclusive list of

4    victims, so we contemplated there may be other victims, other

5    than those referenced in the complaint --

6             MS. SHEVITZ:  I can't hear you.  I'm sorry.

7             THE COURT:  This is such a big courtroom and the mikes

8    are not -- mine is so hot but yours are really not great.  Just

9    speak nice and loud.

10            MS. SHEVITZ:  Stand at the lectern, so it is coming

11   from this way.

12            MR. JACOBSON:  Is this better?

13            THE COURT:  Much better.

14            MR. JACOBSON:  We believe that the fraud with respect

15   to the victims that we identified in our letter has already

16   been proven at the criminal trial.

17            The only issue for collateral estoppel that might have

18   not been proven at the trial is whether or not the underlying

19   securities transactions for which the defendants were convicted

20   occurred in the United States.  And that is the Morrison issue

21   that Ms. Shevitz has raised.

22            We believe, however, that a clear reading of the

23   record shows that there is actually no dispute whatsoever of

24   material fact with respect -- that the investors in fact were

25   in the United States when they committed the securities

C54USECC

```
 1   purchases.  And we think that the record is very clear on that

 2   point.

 3             So we believe that we could do -- we believe the most

 4   efficient thing to do would be to file a motion for summary

 5   judgment based on collateral estoppel with respect to liability

 6   and then supplement the Morrison argument by references to the

 7   record that clearly show that the transactions occurred in the

 8   United States.

 9             And then if there is some evidence that Ms. Shevitz

10   believes contradicts that and raises a genuine issue of

11   material fact, the Court can look at it and determine whether

12   in fact there really is any genuine issue of material fact.  We

13   don't believe there is any.

14             THE COURT:  I know what you think, and I think there

15   are some strong arguments -- some stronger for some causes of

16   actions than others -- but I am still not sure why it is not

17   more efficient just to have you amend the complaint in light of

18   the fact that five years have gone by or more -- more -- and

19   then we are just shooting at one charging instrument and I can

20   have motions going both ways, summary judgment and the motion

21   to dismiss.

22             MR. JACOBSON:  When we would file summary judgment

23   motion, then it would still be the same summary judgment

24   motion, it would not include the entire complaint.

25             THE COURT:  I don't know whether that is true or not.
```

C54USECC

1    If you amend it -- I don't know what your amendments exactly

2    are going to look like.  You have not attached an amended

3    complaint.

4            MR. JACOBSON:  The amendment would allege additional

5    facts with respect to the ATGF fraud, the advisor fraud on the

6    ATGF fund, however, there has been no discovery in this case.

7            THE COURT:  What you are saying, there is nothing from

8    the trial record that would support those claims?

9            MR. JACOBSON:  Correct.  So those claims would have to

10   be subject -- we have evidence that we could probably produce

11   somehow and maybe create a summary judgment record, but as a

12   practical matter, there has been no discovery on those issues

13   so I am not sure that would be a legitimate way to go.

14           THE COURT:  Let me ask you this.  This is just a

15   hypothetical.  Assume we do it the way you have asked and

16   assume then that I grant summary judgment on the investment

17   advisor fraud and the other cause of action that turn on the

18   evidence introduced at trial.  We still would then need to go

19   forward with respect to damages and loss or no?  You are saying

20   that that is all developed by the trial record?

21           MR. JACOBSON:  We believe that is developed by the

22   trial record.

23           THE COURT:  So if you got summary judgment on those,

24   that portion of the complaint, you are saying then you wouldn't

25   even proceed on the rest of the complaint?

C54USECC

1              MR. JACOBSON:  I think that would depend on what

2     happens after summary judgment is either granted or denied.  If

3     it is denied, clearly, we would proceed to litigation on all

4     the counts of the complaint.  If the Court grants summary

5     judgment and then grants equitable relief in the form of

6     disgorgement and award of penalties, we may be in a situation

7     where, as a practical matter, it is not going to be in the

8     commission's interest to continue to litigate the matter just

9     for the purpose of proving an additional fraud after we have

10    already proven securities fraud and advisor fraud because,

11    assuming we got the relief we would want, we would have

12    injunctions, disgorgement and penalties with respect to that

13    fraud.  And if the moneys that are now subject to substitute

14    assets orders and the other in the criminal case were to be

15    distributed back to investors, the commission would not have an

16    interest in pursuing the other claims.

17             So that's where we are.  We are not sure if proof of

18    the other claims is going to be necessary at the end of the day

19    if your Honor grants summary judgment.

20             THE COURT:  That may be true.  Assuming that is true,

21    but asking you to amend now wouldn't make you prove anything,

22    it would just make you amend which wouldn't be, I imagine, that

23    onerous a task.

24             MR. JACOBSON:  No.  As Ms. Shevitz said, that is a

25    much easier task than filing a summary judgment, an amended

C54USECC

1   complaint that we file --

2           THE COURT:  Sorry to interrupt you, but what you would

3   be talking about then is amending and then moving for a partial

4   summary judgment on the amended complaint and then the

5   defendants moving at the same time, I gather, for a motion to

6   dismiss the amended complaint, right?

7           That's a question to defendants.

8           MS. SHEVITZ:  If I understand what you are saying, you

9   are saying that we would move to dismiss the amended complaint?

10          THE COURT:  Right.

11          MS. SHEVITZ:  Correct.

12          THE COURT:  I would have it all happening at the same

13  time.

14          MS. SHEVITZ:  I would much rather have it all

15  happening at the same time.

16          THE COURT:  I am inclined to agree.  I think it is a

17  more efficient use of my time, and I think it is probably a

18  more efficient use of your time.  Certainly the defendants

19  would view that as more efficient.  And I think there is going

20  to be a fair amount of overlap in some ways as to the motions,

21  the opposition for summary judgment and the moving papers on

22  the motion to dismiss, right?

23          MS. SHEVITZ:  Yes.

24          THE COURT:  There will be a lot of the same legal

25  issues, a lot of the same factual issues.

C54USECC

1            MS. SHEVITZ:  I would like to say, I know that there

2    are two cases, but I would like to put the SEC lawyers on

3    notice that in the supplemental appendix of the reply brief

4    filed for defendant Vilar on Monday, there are numerous

5    documents and discussion of documents that we discovered in the

6    documents now in the record by way of disks containing TIF

7    documents, but they absolutely belie any claim that this were

8    anything but offshore transactions by anything.

9            I would say, before you file a new document, that

10   somebody should take the initiative and look at those because

11   we just were forced to.  And what is in there is absolutely

12   amazing.

13           MR. JACOBSON:  For what it is worth, your Honor, I

14   have reviewed the supplement that Ms. Shevitz filed and I

15   disagree with her characterization.

16           THE COURT:  You are not as amazed?

17           MR. JACOBSON:  I am not quite amazed.

18           THE COURT:  Well, I don't need to pass on the

19   amazement factor.

20           How long would it take you to amend your complaint?  I

21   assume that you have a pretty good idea of where you would want

22   to go with it.

23           MR. JACOBSON:  Three to four weeks.

24           THE COURT:  And then how long to file your motion for

25   summary judgment?

C54USECC

1          MR. JACOBSON:  Three weeks after that -- unless we are

2     going to have enough time to review the amended complaint.

3          THE COURT:  Well, they are going to have time to

4     review the amended complaint, but I am just trying to figure

5     out how long it is going to take you to pull the trigger on

6     each of these events.  You are saying three weeks, maybe

7     four --

8          MR. JACOBSON:  Maybe four for each.

9          MS. SHEVITZ:  I have no problem with the time.  I have

10    to say that anything I review now, I have to review with my

11    client who is incarcerated in California.  And right now my

12    communication with him is in 15-minute chunks before they cut

13    off the phone, if he has that time to call me.  So unless we

14    have something that remedies that, I am going to need time to

15    review everything with him.

16         THE COURT:  I assume that you will also want to take a

17    look at what the amended complaint looks like before you can

18    give me a full estimate.

19         MS. SHEVITZ:  I do.  And I will want to amend my

20    motion to dismiss to add some other grounds that we just

21    discovered last week.

22         THE COURT:  I don't think I want to do another round

23    of premotion letters.  I think, clearly, we are going to have

24    the motions.

25         What I am going to do is this.  I am going to give the

C54USECC

1   SEC three weeks to amend.  So three weeks from today is May

2   25th.  May 25th, the amended complaint will be filed.

3           Then what I would like is, if I give defendants two

4   weeks, do you think two weeks is enough time to review the

5   complaint before I start the clock running on the motions --

6   what were you going to say?

7           MS. SHEVITZ:  Two weeks is a very short turnaround

8   time to talk to everybody.

9           THE COURT:  Let me finish.

10          What I was going to say, two weeks, I was going to ask

11  the parties to send me a joint letter with what you propose as

12  a briefing schedule.

13          That way, two weeks until the pleading, and then you

14  talk to the SEC and say, OK, let's do our cross briefs, our

15  opening briefs on X date, responses on Y, reply on Z.  If you

16  all agree on that, I am likely to defer to you in terms of

17  timing.  But what I want is really cross motions, summary

18  judgment and motions to dismiss at the same time on a schedule

19  that is, reasonably, basically 30 days apart.  30 days after

20  the motion, then the response and then probably two weeks after

21  that to reply, OK?

22          MS. SHEVITZ:  If this is in the summer, can we have a

23  little time off there?

24          THE COURT:  You can build that in it.

25          So May 25th I am going to have the amended complaint

C54USECC

 1    filed.

 2             And two weeks after that, June 8th, the parties are

 3    going to send me a proposed briefing schedule.

 4             If you think you need more space than the normal 25,

 5    you can articulate that in that letter.

 6             MS. SHEVITZ:  Normal --

 7             THE COURT:  In the joint letters that you are going to

 8    send me, if you think you are going to need more than 25 pages,

 9    you can take that up in the letter.

10             Propose a briefing schedule in that letter.  I will

11    look at it.  I will likely defer to you on it.  If I disagree,

12    I will let you know.  And then I will set a date also for oral

13    argument.  So we will have our schedule on the motions at that

14    point.  OK?

15             MR. JACOBSON:  Yes, your Honor.

16             THE COURT:  Anything anybody else want to say on the

17    motions?

18             MS. SHEVITZ:  No.

19             THE COURT:  So I think the goal is to get that going,

20    and until that is going, I just think that we are going to be

21    in limbo even longer.

22             Folks at this end of the table are obviously

23    interested in trying to revive the settlement discussions that

24    Judge Swain in particular but I with her was very anxious in

25    getting going with respect to the investor money.  I am still

C54USECC

         1    hopeful that that can happen, but I can tell you, candidly, I

         2    cannot make that happen unless the parties here and the

         3    government in the criminal case agree that that should happen.

         4    There has to be some consensus among the different players

         5    before that can happen.  Otherwise, until I rule on the

         6    motions, and maybe the way I will rule on them will make it

         7    easier for them to get a special master or magistrate in to fix

         8    this, but until I rule on the motions, there is not much I can

         9    do unless you folks consent.

        10         MS. SHEVITZ:  We are still very interested in getting

        11    things moving.

        12         With all due respect, it seems to me that at least the

        13    claims process that everybody seemed to think had to be done --

        14    I mean the government had wanted it done through the DOJ,

        15    through the commission.  But some way or other, they have to

        16    have a document saying, here is our claim, here is our

        17    whatever.  We had suggested, Mr. Friedman and I both, using a

        18    magistrate for that.

        19         THE COURT:  The magistrate judge in this case is

        20    Magistrate Judge Fox, and I don't mind referring anything to

        21    him, but I don't want him to get sort of stuck in a mire of

        22    nobody agreeing on anything.

        23         MS. SHEVITZ:  No, I think -- and tell me if you think

        24    it is a good idea -- that if we start that process and say OK,

        25    these investors should present their documents.  Let's see what

C54USECC

1    the claims are, in their view, and that's it for now anyway at

2    this stage.  And we can look and see what their claim are and

3    move forward.

4              THE COURT:  Mr. Begos.

5              MR. BEGOS:  Your Honor, I think that is putting the

6    cart before the horse.  It would be a simple matter for the

7    defendants, Vilar and Tanaka, to agree to a distribution and

8    then claims can be determined.

9              From my clients' standing and point of view, they have

10   judgments in the state court action for 20-something million

11   dollars against Vilar, Tanaka and Amerindo.  So the claim

12   process for the Mayers is very easy.  They have already proved

13   their claims and there is also a restitution order by your

14   Honor.

15             I don't see why it is necessary for the victims and

16   investors to establish what they are owed before the defendants

17   agree that there should be a distribution to those victims.  It

18   seems like the plan is to see if perhaps there might be some

19   money left over for the defendants before they agree to a

20   distribution for the victims.  And I think that is unwarranted

21   and inappropriate.  I understand your Honor cannot do

22   anything --

23             THE COURT:  I can't.  Yes.  Look, if the government

24   wanted to do some things, they could.  If all of you could

25   agree on some things, than that would make certain things

C54USECC

 1    possible that right now I cannot compel you to do.  So I

 2    understand your point of view.  I guess your real issue is what

 3    is the benefit of sending this to a magistrate judge if all he

 4    is going to hear is pretty much what Judge Swain and I already

 5    heard.

 6              MR. FRIEDMAN:  Your Honor, may I address that?

 7              THE COURT:  You may, Mr. Friedman.

 8              MR. FRIEDMAN:  I am sad that your Honor feels there is

 9    nothing you could do.

10              THE COURT:  Do you disagree with that?

11              MR. FRIEDMAN:  I think that action needs to be taken

12    to avoid a possible jeopardy of some of the assets, and let me

13    tell you what I mean by that.

14              Within the last 10 days approximately, JP Morgan

15    Chase, in response to a subpoena issued by Ms. Shevitz has now

16    produced at least current and recent account statements for

17    eight different Amerindo related accounts.  Three of those

18    eight accounts are marked by the bank -- and I don't know

19    exactly what this means -- but are marked by the bank on the

20    account statements themselves as abandoned property.  That's my

21    concern.  My concern is that, while we are all having

22    conferences and talking about possibilities, assets may be

23    being dissipated by operation of law or by some other way.

24              The second related point is that the JP Morgan

25    statement for what I call the big ATGF account, an account with

18

C54USECC

1    a stated value as of March 1, 2012 of $25 million and, in

2    addition, approximately 75 to 100 unpriced securities so that

3    the real value, I think, is substantially in excess of 25

4    million -- there are unpriced securities listed on that

5    statement, and this is something I always suspected but now I

6    see because I have finally seen the statement.

7             David Ross, your Honor may remember --

8             THE COURT:  Yes.

9             MR. FRIEDMAN:  -- is basically working, consulting

10   with us.

11            There are several unpriced securities listed in the

12   statement which, according to Mr. Ross, have been the subject

13   of mergers and acquisition.  Among the acquiring companies are

14   Amgen and IBM and Intel and Microsoft, so we are talking about

15   very significant assets.

16            And my concern, and I don't know because we have not

17   done any of this yet, is that there may have been tender

18   offers.  The time to respond to those tender offers may have

19   expired, may be expiring and somebody has to take action to

20   protect these assets.

21            THE COURT:  I think that is a great point.  Those are

22   very interesting facts.  I guess the next thing to consider

23   then is what are you asking me to do and what is the authority

24   I have to do it?

25            MR. FRIEDMAN:  I think that I am asking you to refer

C54USECC

1     the matter to a magistrate.

2              THE COURT:  Well, that is easy but what are you asking

3     the magistrate judge to do and what is his authority?

4              MR. FRIEDMAN:  I can tell you what I would be asking

5     him to do.  I cannot yet tell you what his authority would be

6     because I need to do some more looking, but I believe that at

7     the very least, the magistrate judge would have the ability to

8     issue an order either notifying or authorizing the parties, the

9     claimants to notify all the entities, including JP Morgan

10    Chase, that no property is being abandoned, no rights are being

11    forfeited, no rights are being waived.

12             THE COURT:  There is nothing that the magistrate can

13    do that I can't do -- in fact, there are some things that I can

14    do that he can't do.

15             So what are you asking the Court to do, I think is

16    really the issue and what is the authority that the Court would

17    have?

18             So if you are asking for a receiver or are you asking

19    for a special master?

20             Are you asking for some other intervenor who is going

21    to take charge of this thing, then I think that is worth

22    considering, but who is going to pay for it and out of what

23    funds?

24             MR. FRIEDMAN:  Let me just think about those questions

25    and try to respond in order.

C54USECC

1          First of all, I am asking your Honor or a magistrate

2     judge --

3          THE COURT:  Right.

4          MR. FRIEDMAN:  -- to issue an order -- and I think

5     that you have the inherent power to do it in preservation of

6     the assets -- notifying various interested third parties such

7     as banks, portfolio companies and acquirers of portfolio

8     companies that there are judicial proceedings and that until

9     those judicial proceedings are resolved, no rights are being

10    forfeited.

11         In essence, as I listen to myself, I guess it is

12    asking for injunctive relief just directing -- I guess it would

13    have to be the third parties on whom service is made just to

14    freeze everything.  It is a freeze order of a kind.  I don't

15    know the right terminology because I have not looked at it from

16    this point of view but in essence that's what it would do.

17         Secondly, I would endorse Ms. Shevitz's claim that

18    there be a reference to the magistrate judge for the purpose of

19    considering claims because, ultimately, those claims are going

20    to have to be considered.

21         And even if your Honor were to say, as you did, that

22    even at the end of the claim process you don't have the right

23    and the magistrate judge would not have the right to order a

24    distribution, at least we would have gone through the claim

25    process so that, in the event there comes a day when the Court

C54USECC

1   does have the authority to order the distribution, we would not

2   first have to begin a process.  We would be using the time to

3   make the claims process.

4          And I think the claims process is valuable for another

5   reason.  There are certain claims that I anticipate that my

6   clients will object to.  Just as the other parties would have

7   the right to object to my parties' claims.  That, by

8   definition, would be an adversary situation and would take some

9   time to litigate.  So, again, that can be done now rather than

10  waiting until the end of the process.

11         THE COURT:  I think these are all good points, some of

12  which I have heard before, of course.  But the claims process

13  would look like what?  You would be ordering who to notify

14  whom?

15         MR. FRIEDMAN:  Well, there are certain names that are

16  already in the record, claimants' names by virtue of letters

17  that the government has written to the Court, so there is a set

18  of claimants.

19         I guess then, ultimately, there would have to be

20  notice by publication as to anybody else.

21         THE COURT:  So who is making that notice and who is

22  paying for that publication, Magistrate Judge Fox out of his

23  own pocket, the Court, you, Ms. Shevitz, the government, the

24  SEC?

25         I don't mean to be difficult.  I don't mean to throw

C54USECC

| | |
|---|---|
| 1 | up roadblocks, but these are, obviously, the things that should |
| 2 | be thought about.  And it is not fair to ask you to give me an |
| 3 | answer today, but I want you to think about that and then you |
| 4 | can make a proposal with respect to the injunctive relief which |
| 5 | you are seeking.  I think you can think about what that should |
| 6 | look like and also the authority for it. |
| 7 | I am not against doing this on two tracks.  I think we |
| 8 | have to get the substantive motions going because we may not be |
| 9 | anyplace close to resolving the rest of this in six months' |
| 10 | time and we have to resolve substantive issues.  But I don't |
| 11 | mind pursuing two tracks and one that is allowing the investors |
| 12 | to get their ducks in a row for when the substantive issues are |
| 13 | resolved.  I am fine with that, but I need details as to what |
| 14 | the heck this thing is going to look like, who is going to pay |
| 15 | for the costs involved, who is going to be responsible for |
| 16 | identifying the claims -- all of that stuff. |
| 17 | MR. FRIEDMAN:  Could I have a relatively brief period |
| 18 | of time to make a proposal? |
| 19 | THE COURT:  Sure.  I am not really in a position to |
| 20 | order you to do something by a particular time, but if you want |
| 21 | to get me something in a couple of weeks, that is fine. |
| 22 | MR. FRIEDMAN:  Should I do that by letter? |
| 23 | THE COURT:  You should do that by letter and CC -- |
| 24 | MR. FRIEDMAN:  -- a couple of weeks with copies to |
| 25 | everybody? |

C54USECC

1          THE COURT:  CC everybody, yes.

2          MS. SHEVITZ:  I want to say that my client, Gary

3     Tanaka -- both clients -- they are both very interested in

4     finishing this with the investors that they know that they owe

5     money to by contract.  We want their claims --

6          THE COURT:  I have heard that at sentencing and I have

7     heard that a number of times since, but whenever it sounds like

8     it is anybody who testified against them at a trial, it sounds

9     like the tone changes --

10         MS. SHEVITZ:  No, Judge.  The problem is that the SEC

11    has taken the position that we can't distribute unless we agree

12    to the forfeiture.  The forfeiture includes Amerindo U.S.,

13    Amerindo this, Amerindo that -- every single thing on the

14    substitute asset sheet.  I am not agreeing to that.

15         THE COURT:  I am not sure that that is an accurate

16    statement of the SEC's positions.

17         MS. SHEVITZ:  I think it is and it has been, and it is

18    in letters that we have sent and in the documents.  That is not

19    acceptable.  We are never going to do that.  We are never going

20    to do that.  To that extent, then they know.  But we do want to

21    agree to numbers which can be done.  As long as the SEC says no

22    distribution in our case unless you agree to give up everything

23    on the substitute asset forfeiture list, no.  That is not

24    happening.  So that is the sticking point, your Honor.

25         THE COURT:  Mr. Jacobson.

C54USECC

1          MR. JACOBSON:  For what it is worth, originally when

2     this whole thing came about after the criminal convictions

3     occurred, we approached Ms. Shevitz to try to talk about a

4     settlement of the case that would involve our staff's

5     proposition to get injunctions.

6          MS. SHEVITZ:  I can't hear you.

7          THE COURT:  Yes, use the other mic.

8          We have to get these mics fixed in here.

9          MR. JACOBSON:  Your Honor, we had approached -- and

10    Ms. Shevitz, I guess, put my emails and all kinds of things

11    before your Honor and Judge Swain -- the defendants with a

12    proposition to recommend a settlement whereby their clients

13    would agree to injunctions under the Securities Exchange

14    Investment Advisors Act, and they would agree to let the funds

15    that belong to investors -- and we believe pretty much most of

16    the funds that are in the accounts are investor funds.  There

17    is an issue perhaps with respect to the pension fund, which I

18    don't know if anybody knows very much about, exactly how that

19    was funded.  At least with respect to the Amerindo corporate

20    accounts, hat they would have to release their claims to those

21    accounts because we didn't see any circumstance under which

22    they were entitled to any of the money.  And given the severe

23    punishment in the criminal case and the forfeiture orders and

24    restitution, we could possibly be in a position to recommend to

25    the commission not to seek any additional monetary relief

C54USECC

```
 1   against defendants under those circumstances.  So that is
 2   probably what --
 3            THE COURT:  Here is the deal.  If it turns out that
 4   there is $60 million or $70 million worth of assets there, then
 5   it seems to me that you and Ms. Shevitz and everybody
 6   representing the individuals in the criminal and civil cases
 7   you can preserve your fight over what is left, but if there is
 8   agreement that the investors are entitled to at least this
 9   much, I don't see why that is something that couldn't be
10   resolved before the criminal and civil cases work their way
11   through the Supreme Court.
12            MR. JACOBSON:  We completely agree.  We have no
13   problem with money being released to investors.
14            THE COURT:  The first step then is figuring out what
15   is the asset value and what the different claimants are
16   asserting they are entitled to.  So we think that we do have to
17   do that.  And I don't think that a condition or a precondition
18   of doing that is the defendants sort of consenting to the
19   forfeiture.  That is just not going to happen.
20            MR. JACOBSON:  That's not what we said.  That was part
21   of the settlement where we end the case.
22            MS. SHEVITZ:  My understanding --
23            THE COURT:  Go ahead.
24            MR. JACOBSON:  We don't object to the funds being
25   released to pay the investors at any point without a
```

C54USECC

1   settlement.  My understanding, however, is that they want a

2   release from any further liability --

3            THE COURT:  I think everybody, in fairness, was

4   offering suggestions or structures that would work and some of

5   them, obviously, were objectionable in some part or other to

6   the others and we didn't get very far.  So I do think it is

7   probably worth taking a fresh look, but not at the expense of

8   the substantive motions because we are not waiting for that.

9            MR. JACOBSON:  We agree.

10            THE COURT:  I think that the government, the United

11   States Government in a criminal case is going to have to get

12   involved at some point.  But I do think Mr. Friedman is on

13   something when he says, let's just focus right now on getting

14   ducks in a row, and once ducks are lined up, my hunch is that

15   people are going to be much more willing and able to work out a

16   compromise because they know the issues there.

17            Ms. Shevitz.

18            MS. SHEVITZ:  I do need assistance to get this process

19   done.  As I said in one of the letters, getting documents from

20   the bank, from anybody has been next to impossible.  I talked

21   about, let's say, it took me a subpoena and then more subpoenas

22   to get the bank records for the Amerindo Panama accounts which

23   he is talking about which I gave to him and that's how he has

24   them now.

25            But this is a constant, huge fight just to get these

C54USECC

1   documents.  The SEC could call them up in an instance and say,

2   give them to me, because that's what happened.  They could call

3   and get the numbers.  But when I issued a subpoena, I got a

4   call from a paralegal there saying, who is the name on this

5   account.  We don't even have anybody by that name.

6           THE COURT:  What I think we ought to do is have Mr.

7   Friedman -- he promised me he is going to think about what

8   authority and what specific things are going to be requested

9   and who is going to pay and who is going to ask and if there

10  are certain things that court orders work for or if we want the

11  SEC to ask for certain things and they are willing to or

12  somebody wants me to order the SEC to make certain requests, I

13  am willing to consider that.  But I think right now I still

14  have just the vaguest idea of what you are even talking about.

15  So Mr. Friedman is going to put skin on these bones and get

16  back to me.

17          MR. FRIEDMAN:  I will try my best.

18          THE COURT:  Well, don't fail Friedman, we are counting

19  on you to do this.

20          MS. SHEVITZ:  We have been in total agreement with Mr.

21  Friedman for all the way along here.

22          THE COURT:  Well, I would watch my wallet then, Mr.

23  Friedman -- I am joking, Ms. Shevitz.  I am joking.

24          MS. SHEVITZ:  May I have the transcript, please?

25          MR. FRIEDMAN:  I was just going to say that it is

C54USECC

1    great that everybody agrees with me, but no money has been

2    distributed yet.

3              THE COURT:  But you have not given us all of the

4    details, so I have no doubt once you start putting some details

5    down, everybody is going to find something to disagree with.

6              Mr. Begos.

7              MR. BEGOS:  If I could just point out a couple of

8    things, your Honor, that maybe would inform Mr. Friedman's

9    letter or your Honor's thinking on this.

10             The Mayers are totally in support of anything that

11   would value the assets that JP Morgan is holding or make sure

12   that they are not dissipated, but there would be an issue with

13   respect to any order from this Court that might interfere with

14   efforts by -- the Mayers have state court judgments against the

15   defendants here, and so we would think that your Honor would

16   not want to issue an order against JP Morgan or anyone else

17   that might be interpreted as preventing the Mayers from

18   enforcing their rights to those assets, whatever they may be,

19   under the auspices of their state court judgments.

20             THE COURT:  You will get a look at whatever is being

21   proposed.  I am not really sure what I am being asked to do, if

22   anything.  It is just asking for information and asking

23   claimants to make specific claims.  And the basis for those

24   claims, that is easy enough.  I assume you would have no

25   objection to that.

C54USECC

1        MR. BEGOS:  No objection.

2        Again, with respect to the claims, we would want to

3   make sure that whatever got decided under this procedure didn't

4   prejudice whatever claims have been established by investors

5   elsewhere.  So if Magistrate Judge Fox or your Honor decided

6   that the Mayers were entitled to X dollars here, that wouldn't

7   affect the fact that they were entitled to more by another

8   court.

9        THE COURT:  We are a long way from that.

10        MR. BEGOS:  I understand.  Those are just concerns

11   that I wanted to voice now.

12        THE COURT:  I think that is fine, and you will have an

13   opportunity to weigh in.

14        MR. FRIEDMAN:  Could I just ask one question?

15        THE COURT:  Sure.

16        MR. FRIEDMAN:  I am a little unclear about this

17   because I have seen somewhat contradictory statements going

18   back and forth between the SEC and Ms. Shevitz.

19        Are the funds currently at JP Morgan Chase subject to

20   a restraint of any kind other than what Ms. Shevitz has

21   described, I think, as an informal one?

22        MS. SHEVITZ:  Yes.

23        THE COURT:  That appears a debated issue.

24        MS. SHEVITZ:  Yes.  There are all sorts of levels of

25   restraints.

30

C54USECC

1        MR. JACOBSON:  Your Honor, one last response.

2        Ms. Shevitz has made accusation after accusation about

3    the SEC controlling the funds and doing all kinds of things

4    with the funds.  The funds in those accounts are not subject to

5    this particular action.

6        THE COURT:  I think that is true.  I don't think there

7    is nothing to suggest that the SEC has control over these

8    assets.  Now, I think the SEC might be able to get information

9    by requesting it in a way that would be easier than Ms. Shevitz

10   asking or Mr. Burger asking.

11       MR. JACOBSON:  They don't just give us documents.  We

12   actually serve our subpoenas.  We informed Ms. Shevitz of a

13   subpoena we issued a while back and invited her to come look at

14   the documents.  In the meantime, she has issued subpoenas and

15   got documents.  As far as I know --

16       THE COURT:  I don't want to get mired into the details

17   of this now.  I want Mr. Friedman to think about what he is

18   asking a court to do.

19       MR. FRIEDMAN:  Toward that end, can I just ask one

20   question, with your Honor's permission, directly to counsel in

21   the room?

22       Wouldn't everybody agree that the first step is that

23   the funds, all assets of Amerindo should be restrained?

24       I should be asking the Court to issue an order

25   restraining those assets pending further development?

C54USECC

1          MS. SHEVITZ:  Believe me, they are restrained.

2          THE COURT:  I believe that they are effectively

3    restrained.  I don't think it is by the SEC.  I think that the

4    U.S. Attorney's office was dealing with those folks.  They are

5    not here, so I don't want to speak for them.  I am not sure

6    that I could do it even close to accurately.  But I think that

7    is a hurdle that would have to be overcome as to who exactly we

8    are ordering to do what or who I am ordering or who Judge Fox

9    is ordering to do what.

10          But I think what you ought to be focused on is, what

11   you want a court to do?  What is the authority for that, and

12   who is going to pay for the costs that are going to be incurred

13   as a result of it?

14          I think if everybody agrees that the costs, even

15   though minor, should be borne by the res, if that's what we are

16   talking about --

17          MS. SHEVITZ:  By who?

18          THE COURT:  The property itself, the accounts, the

19   res.

20          MS. SHEVITZ:  There has been a big chunk taken out

21   already by mismanagement.

22          THE COURT:  These are the concerns that have to be

23   addressed.

24          Sir, did you wish to be heard?

25          MR. HESTRES:  Yes, your Honor.

32

C54USECC

1          If it please the Court, may I be briefly heard?

2          THE COURT:  What is your name?

3          MR. HESTRES:  My name is Eugene Hestres Velez.

4          THE COURT:  Could you spell your name for the record.

5          MR. HESTRES:  H-E-S-T-R-E-S  V-E-L-E-z.

6          And I was extended courtesy by your Honor to attend

7    today's hearing on behalf of Mr. Heitkonig who is present here

8    and his family.  He is one of the claimants in the civil case.

9          We have been hearing and we would just like to set

10   forth the position of our client at this point.  I think that

11   the solution that has been proposed by the Court is a perfectly

12   good one.

13         And we would like to request the Court for

14   authorization, also.  First, to join in and working together

15   with Mr. Friedman, hopefully, in submitting a joint proposed

16   solution to your Honor.  But should the situation arise that

17   there is some discrepancy, may we also be allowed to submit a

18   separate proposal to your Honor?

19         THE COURT:  Sure.

20         MR. HESTRES:  I think that the first order of business

21   that your Honor stated, there would be the authority.  I don't

22   think that it has to go all the way -- I think that your Honor

23   has the authority to issue the order to the accountholders, in

24   this case the institutions for them to restrain.

25         If they restrain as Ms. Shevitz is indicating, it is

C54USECC

1    an informal one, it is not a formal order from anyone, the

2    institutions saw that the assets as Mr. Friedman has

3    indicated --

4              THE COURT:  Don't just tell me what you think my

5    authority is.  I want to know where that authority derives

6    from, statutes or case law.  That's what I want to know.

7              MR. HESTRES:  Absolutely, your Honor.

8              THE COURT:  I am fine with trying to work out a

9    practical and a speedy resolution of this, but that is going to

10   require, I think, some heavy thought on your part.

11             MR. HESTRES:  Would there be a turnaround to submit

12   this proposal?

13             THE COURT:  If you want, I can give you a date but if

14   you don't do it, I am not going to hold you in contempt.

15             Two weeks, is that enough time?  Anytime.  I don't

16   care when you do it.

17             MS. SHEVITZ:  Why don't we have the investors do it

18   when Mr. Friedman does it?

19             THE COURT:  I think they are asking should I tell Mr.

20   Friedman and the other investors to submit something by a date

21   certain.  I don't think it necessarily matters.

22             MR. FRIEDMAN:  Your Honor, we certainly have the

23   motive -- and Mr. Marcus who is here will confirm that -- to do

24   it as quickly as possible, but I don't see any reason for a

25   deadline because, believe me, I don't need a deadline to take

34

C54USECC

1    this action.

2              MR. HESTRES:  I was not trying to indicate that there

3    was a deadline, but after which the Court says that this matter

4    disappear.

5              THE COURT:  No deadline.  If you submit something I

6    will respond to it.

7              But you folks do have deadlines, so I will issue an

8    order that just memorializes what we have already talked about

9    in terms of the amended complaint and the letter setting forth

10   a proposed briefing schedule.

11             Anything else that we should be covering today?

12             MR. HESTRES:  Thank you, your Honor, for allowing us

13   the courtesy.

14             THE COURT:  Anything else from the parties?

15             The SEC?

16             MR. JACOBSON:  No, your Honor.

17             THE COURT:  Defendants?

18             MS. SHEVITZ:  No.

19             THE COURT:  What are we doing with the other entities?

20   Is the SEC moving for a default?  Is there something that is

21   going to go on with that?

22             MR. JACOBSON:  At this point it is not clear.  I am

23   not sure that we are able to issue a default under your Honor's

24   individual rules.  It requires serving somebody with some type

25   of notice of a default.  I don't think anyone is left --

C54USECC

1          THE COURT:  At least some of them have appeared

2    previously, right?

3          MS. SHEVITZ:  I am going to object to your Honor

4    telling the SEC which motions to make.  I object strongly to

5    this.

6          THE COURT:  You objected, but don't interrupt me.

7          What I am asking is, I have parties that are in this

8    action that I have not heard from and I want to know what the

9    plaintiffs are planning to do with those parties.  If they

10   don't matter, then they should be just dismissed.  If they do

11   matter, then they should be served.  If they have already been

12   served, then you should move for a default because this is a

13   six-year-old case, even longer.  And I don't have to sit here

14   and wait for things to happen out of thin air.  OK.

15         MR. JACOBSON:  We agree.  The case was stayed for many

16   years.

17         THE COURT:  I know that, but I am trying to figure

18   out, I have a docket sheet that is blank with respect to a

19   majority of the defendants.

20         MS. SHEVITZ:  One problem is that there is nobody to

21   take any action to represent them.  There is hardly any

22   entities.  And it would be extremely unfair to have a judgment

23   against them that may be resurrected after this whole mess is

24   over, but there is no money to hire lawyers for anything.

25         THE COURT:  That may be.  That may not be.  They are

C54USECC

```
 1    corporations.  If they have been properly served, then they
 2    have to be like any other defendant.
 3            MS. SHEVITZ:  Except that there are unusual
 4    circumstances here which we brought up in the papers, and they
 5    may be served but, A) I don't know how you serve somebody who
 6    is in jail who purports to possibly be a member of that
 7    corporation, and then what are they going to do without any
 8    money?
 9            Mr. Tanaka in this action in 2010 asked for assignment
10    of counsel and Judge Swain issued an order deeming him pro se.
11            THE COURT:  I understand that, but corporations are
12    defendants in cases all the time.
13            MS. SHEVITZ:  Yes.
14            THE COURT:  And they are responsible to defend
15    themselves in actions and if they don't, then there is a
16    procedure for that.  It is called a default.
17            I am not telling the plaintiffs what to do.  I am
18    asking what they are contemplating because there is a big gap
19    right now.  We have motions contemplated with the two
20    individual defendants, but there are a lot of other defendants
21    here and if I have resolved the individual defendants and then,
22    lo and behold, corporate defendants start asserting defenses,
23    making motions, I guess I want to stay that or stem that from
24    happening now.
25            This thing is no longer stayed   This thing is live,
```

37

C54USECC

1    so let's get it going.

2              MR. JACOBSON:  Yes, your Honor.

3              We may need some clarification on your Honor's

4    individual rules of practice with respect to serving entities

5    for default under the situation.  We have thought a lot about a

6    default.

7              THE COURT:  I am not sure what you are referring to,

8    but if you need clarification then you can make that request.

9              Anything else we need today?

10             One thing I did want to say.  Premotion letters are

11   not brief but I do expect that the authority cited in them is

12   going to be accurate and not reversed and not superseded by

13   controlling Second Circuit authority.

14             Ms. Shevitz, there were a couple of references to

15   authority in your letter that are just not correct.

16             MS. SHEVITZ:  I think we were responding to your

17   Honor's suggestion in one of the orders about collateral

18   estoppel and we pointed out that that case was --

19             THE COURT:  You pointed out Gelb which doesn't stand

20   for the proposition you cited it for and in fact there is

21   controlling Second Circuit authority that stands for exactly

22   the opposite proposition of what you were citing Gelb for.

23             You also cited Gabelli, which was reversed by the

24   Second Circuit.  So you can't be doing that.  No harm done and

25   I am not sanctioning anybody, but I am just saying that should

C54USECC

1    not be happening.

2              So I will hear from you in a month's time, I guess,

3    and then we will get this puppy going.

4              And, Mr. Friedman, I am going to say a prayer for you

5    every night.

6              MR. FRIEDMAN:  Judge, I will need it.

7              THE COURT:  Let me thank the court reporter.

8              If anyone needs a copy of the transcript, you can take

9    it up now with the court reporter or later through the web

10   site.

11             Thanks.

12

13                            o   0   o

14

15

16

17

18

19

20

21

22

23

24

25