D&F

LAW OFFICES
# STILLMAN & FRIEDMAN, P.C.

425 PARK AVENUE
NEW YORK, NY 10022
www.stillmanfriedman.com

CHARLES A. STILLMAN
JULIAN W. FRIEDMAN
SCOTT M. HIMES
MARJORIE J. PEERCE
JOHN B. HARRIS
JAMES A. MITCHELL
MICHAEL J. GRUDBERG
NATHANIEL Z. MARMUR

MARY MARGULIS-OHNUMA

NATHANIEL I. KOLODNY
ELIZABETH S. WEINSTEIN
ERIK M. ZISSU
LAURA P. WEXLER

TELEPHONE
(212) 223-0200

FACSIMILE
(212) 223-1942

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/3/2012

**VIA HAND DELIVERY**

July 25, 2012

RECEIVED
JUL 2 8 2012

The Honorable Richard J. Sullivan
United States District Judge
United States Courthouse
500 Pearl Street
New York, NY 10007-1312

Re:  SEC v. Amerindo, 05-cv-5231 (RJS)

Dear Judge Sullivan:

I am submitting this letter pursuant to Your Honor's Order of July 17, 2012 stating that the Court is prepared to appoint a Receiver in this matter, and giving the parties and investors the opportunity to propose a particular individual to serve in that capacity. I am writing this letter to propose that David Ross be appointed as Receiver.

Mr. Ross holds an MBA in Finance and Accounting from Columbia University, and a BA from Duke University. He has worked with and for financial services companies since 1984, and has held professional positions with the Federal Reserve Bank of New York, Bankers Trust Company (now Deutsche Bank), and Citigroup. Mr. Ross can best be described as a "forensic banker." Significantly, his responsibilities on behalf of his former employers have included valuing and reporting on publicly-traded and private securities, both client-owned and bank-owned. He has also been responsible for designing, managing, and assisting in the implementation of investment reporting systems.

It is important to note at the outset -- and is beneficial to both the investors and the victims -- that Mr. Ross is no stranger to the assets held in the name of various Amerindo entities. In fact, he has previously written letters to Your Honor, dated January 27, 2010, valuing the assets held in Amerindo's name on behalf of investors and clients as of 2005 and 2009. Mr. Ross performed those analyses almost two years ago at the request of Gary Tanaka, who paid him for that work. Moreover, subsequent to Mr. Ross' work on behalf of Mr. Tanaka, he was engaged by my firm to update the valuations, including not only the cash and cash equivalents

held in the relevant bank and securities accounts, but also the publicly-traded and private securities.

It is respectfully submitted that the work that Mr. Ross has already done is directly relevant to the first purpose for which Your Honor's July 17 Order contemplated the appointment of a Receiver -- valuing the assets held in the names of various Amerindo-affiliated persons and entities. In the event that Mr. Ross is appointed as Receiver by Your Honor, he would be able to continue the process he has already begun. He would not have to "reinvent the wheel," as would an appointee who has no prior knowledge of this matter.

Moreover, the work previously done by Mr. Ross is also directly relevant to the second purpose for which this Court intends to appoint a Receiver -- preserving the assets in question. In fact, this issue was specifically addressed by Mr. Ross in a third January 27, 2010 letter that he wrote to Your Honor. That letter pointed out certain respects in which the absence of any active oversight subsequent to July 2005 resulted in harm to the investors in the Amerindo entities. That harm involved charging custodial fees without any chance of account value increases attributable to interest and/or asset growth.

Mr. Ross is prepared to serve as a Receiver in this matter at a rate of $175 per hour. I am confident that Your Honor has probably never appointed a Receiver willing to accept payment at such a reasonable rate. Obviously, that rate would be very much in the interests of all of the investors and victims. By simple math, at Mr. Ross' hourly rate, the $50,000 maximum fee approved in Your Honor's July 17 Order would allow him to devote up to 285 hours of his time to this matter. This stands in contrast to the substantially maximum lower time commitment that would be covered if the Court were to report a Receiver charging a more typical hourly rate.

With regard to the first two purposes of the Receivership contemplated in the July 17 Order -- that the Receiver "value and preserve the seized assets" -- the services that Mr. Ross would perform would include the following.

- Valuation of Assets

  - Update prior valuations

    - Obtain additional documents from portfolio companies in which Amerindo invested as needed to support updated valuations

    - Create library of relevant documents supporting valuations

  - Prepare updated valuation reports

  - Obtain direction from Court on whether portfolio company positions that were not valued in 2010 should be valued now, and if so, according to what priority

2

LAW OFFICES
STILLMAN & FRIEDMAN, P.C.

- Collection of Assets

  - Identify current custodians of cash and securities

    - Research, document, and provide listing of asset custodians

    - Prioritize allegedly abandoned property, if any

  - Investigate the sources of the assets held in various custody accounts for the benefit of all parties

  - Select and open new asset custody accounts to receive cash and/or securities

    - Must be interest-bearing accounts

    - Ensure that only Court-approved custodian fees can be charged for such accounts

  - Instruct current asset custodians to transfer assets to selected new custody accounts

    - Provide existing custodians with legal authority for such instructions

    - Aggressively pursue any allegedly abandoned property

  - Monitor and report on collection of assets

    - Provide monthly reports to Court and all designated parties

  - Report to the Court his views on the best way to monetize the non-cash assets (including marketable securities) now held by the Amerindo entities

    - Liquidate securities designated for sale

    - Instruct current custodians to transfer proceeds from liquidations to selected new custody accounts

    With regard to the third purpose of the Receivership contemplated in Your Honor's July 17 Order -- "beginning the process of determining how much is owed to victims and investors" -- we anticipate that Mr. Ross would perform the following services:

  - Identify known claimants

    - Prepare list of known past investors and GFRDA note holders, noting those who previously redeemed their investments and/or notes

3

LAW OFFICES
**STILLMAN & FRIEDMAN, P.C.**

- Obtain guidance from Court as to what persons in addition to known claimants will be notified of the opportunity to submit claims

- Prepare notice to known and potential claimants

  - Such notice to describe the documents to be submitted in support of claims

- Seek guidance from the Court regarding the review of the Amerindo records seized by the Government in execution of search warrants, and report to the Court on how those records impact on claims. Such guidance would be required because this effort to find relevant documents among the 440 boxes of documents seized by the Government may be time-consuming.

- Report to Court and parties on claims made, and supporting documentation submitted

- Provide all claimants with opportunity to object to claims made by others.

- Gather and report to Court and parties on all such objections

It is my understanding from conversations with other counsel that they will object to the appointment of Mr. Ross on the ground that he previously performed services for Mr. Tanaka (and, perhaps, because he previously performed services for my firm). It is respectfully submitted that such work should not disqualify Mr. Ross from appointment as Receiver for the limited purposes set forth in Your Honor's Order.

Not surprisingly, Mr. Ross was paid for his prior services. Mr. Tanaka paid him $50,000 for the services he performed in valuing the assets belonging to the Amerindo investors,[1] and my client Paul Marcus paid him $13,000 for updating those valuations. Despite these payments, however, it is my belief from working closely with Mr. Ross that he would scrupulously perform his obligation to act independently if he is appointed, and that he is fully capable of acting in the required fashion. To the degree that any question exists regarding Mr. Ross' intention and ability, I believe that the best way to remove any doubts would be for Your Honor to hear from him directly at a hearing of which all parties would be given notice.

Moreover, the limited nature of Mr. Ross' mandate as a Receiver in this matter should also ease any theoretical concern about a possible conflict on his part arising from his prior retentions. As noted above, Your Honor's Order contemplates only that Mr. Ross is to "begin the process" of determining claims. It does not make him a decision-maker regarding whose claims will be allowed, and to what extent. As such, it is respectfully submitted that Mr.

---

[1]      In addition, Mr. Ross has informed me that family members of Mr. Tanaka paid him an additional $50,000 for consulting services in connection with the development of a possible proposal for liquidation of the Amerindo entities, and distribution to investors of the assets held by them, that would have been submitted to this Court for approval if such a plan had been successfully developed. However, no such plan was ever admitted for approval because the process of developing it was not completed.

4

LAW OFFICES
**STILLMAN & FRIEDMAN, P.C.**

Ross' prior work on behalf of any party is not likely to interfere with the fulfillment of his responsibilities as Receiver.

      Finally, it is respectfully submitted that regardless of whom Your Honor decides to appoint as Receiver, there are certain issues that should be considered before that appointment is made. Those issues are as follows:

- What specific powers will the Receiver be given? In that connection, we respectfully refer the Court to paragraph 13 of the October 31, 2005 Order appointing a Receiver entered by Judge Koeltl in *SEC v. Wood River Capital Management, LLC*, 05 Civ. 8713. A copy of that Order is annexed to this letter as Exhibit A.

- What protections will the Receiver be given so that he will be able to fulfill his responsibilities in good faith without the fear of baseless litigation? Two issues arise in that connection: the standard of liability; and indemnification. With respect to the standard of liability, we respectfully refer the Court to paragraph X1.B of the March 3, 2009 Order appointing a Receiver entered by Judge Berman in *SEC v. Nicholson, et al.*, 09 Civ. 1748 (a copy of which is annexed as Exhibit B), and to paragraph 19 of the *Wood River* Order. On the issue of indemnification, we respectfully refer the Court to paragraph II of the September 10, 2007 Amended Order Appointing Receiver entered by Judge Lynch in *SEC v. Universal Express, Inc.* (a copy of which is annexed as Exhibit C).

- Will the Receiver be authorized to hire counsel for the limited purpose of obtaining advice concerning any additional protections required?

- Will the Receiver be given access to the documents seized by the Government in execution of search warrants, and if so, will the fees incurred in reviewing these documents be in addition to the $50,000 limit placed on the Receiver's fees by the Court's July 17 Order?

- Will the Receiver have the ability to contract for normal administrative expenses of the Receivership, such as document storage and clerical help, and will such expenses be in addition to the fee of up to $50,000 referred to in the July 17 Order?

      Will the Receiver be authorized to create a website as the most efficient way to report to persons with an interest in these proceedings, and will the expense of doing so be added to the $50,000 limit?

LAW OFFICES
**STILLMAN & FRIEDMAN, P.C.**

Respectfully submitted,

Julian W. Friedman

JWF:cn
Enclosures

cc:     Sharon Levin, Esq. (sharon.levin@usdoj.gov)
        Benjamin Naftalis, Esq. (Benjamin.naftalis@usdoj.gov)
        Mark D. Salzberg, Esq. (salzbergm@sec.gov)
        Neal Jacobson, Esq. (jacobsonn@sec.gov)
        Vivian Shevitz, Esq. (Vivian@shevitzlaw.com)
        Jane Simkin Smith, Esq. (jssmith1@optonline.net)
        Victoria B. Eiger, Esq. (veiger@lawdea.com)
        David C. Burger, Esq. (dcb@robinsonbrog.com)
        Patrick W. Begos, Esq. (pwb@begoshorgan.com)
        Thomas J. Hall, Esq. (hallt@hallandhalllaw.com)
        Eugene F. Hestres-Velez, Esq. (ehestres@bbh-law.com)
        Mr. Alfred Heitkonig (alfredo@ahfs.biz)
        Mr. Gary Tanaka (*by regular mail*)

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10 31 05
```

*KUBOTE, J.*
*PART I*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------x

SECURITIES AND EXCHANGE COMMISSION          :

        Plaintiff,          :

     -against-          :

WOOD RIVER CAPITAL MANAGEMENT, LLC,          :
WOOD RIVER ASSOCIATES, LLC,
JOHN HUNTING WHITTIER,          :
WOOD RIVER PARTNERS, L.P., and
WOOD RIVER PARTNERS OFFSHORE, LTD.,          :

        Defendants.          :

------------------------------------------------x

**05 CV.__ 8713**

05 Civ. __

### STIPULATION AND [PROPOSED] ORDER GRANTING
### PRELIMINARY INJUNCTION,
### FREEZING ASSETS AND APPOINTING RECEIVER

    WHEREAS, Plaintiff Securities and Exchange Commission ("Commission") and

the defendants have agreed and stipulated to a preliminary injunction against defendants,

enjoining them from violating the federal securities laws; preserving evidence; freezing

assets; ordering an accounting; and appointing a receiver for certain defendants;

    WHEREAS, counsel for the Defendant Whittier has reviewed the complaint and

this Order and has consented to the immediate entry of this Order; without an

adjudication of the merits on any issue of fact or law;

    WHEREAS, this Order is designed to effectuate dual goals: first, locating,

preserving and protecting investor money, and second maximizing returns available to

investors;

1

**EXHIBIT A**

WHEREAS, the Commission has submitted the credentials of a candidate to be appointed Receiver of all of the assets, properties, and books and records of defendants Wood River Asset Management, LLC, Wood River Associates, LLC, Wood River Partners, L.P., and Wood River Partners Offshore, Ltd. (the "Wood River Entity Defendants"), and assets traceable to the Wood River Entity Defendants, and the Commission has advised the Court that this candidate is prepared to assume this responsibility if so ordered by the Court;

WHEREAS, the Court having considered the Commission's Application for Entry of an Order Granting Preliminary Injunction, Freezing Assets, and Appointing a Receiver;

WHEREAS, the Court finds that the relief set forth in the Order is necessary and appropriate for the benefit of investors who may have been injured as a result of the conduct alleged in this lawsuit;

WHEREAS, the Court is authorized to grant the relief set forth in the Order pursuant to the Federal Rules of Civil Procedure, its general equitable authority and also pursuant to Section 21(d)(5) of the Securities Exchange Act of 1934 [15 U.S.C. § 78u(d)(5)].

**NOW, THEREFORE, IT IS ORDERED, ADJUDGED, AND DECREED** as follows:

### I.

### Preliminary Injunction Precluding<br>Violations Of The Federal Securities Laws

1.      Defendants, their officers, agents, servants, employees, attorneys, successors-in-interest, and those persons in active concert or participation with them who

receive actual notice of this Order by personal service or otherwise, and each of them, shall be and hereby are preliminarily restrained and enjoined, pending entry of a Final Judgment in this action, from violating, directly or indirectly, Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 promulgated thereunder [17 C.F.R. § 240.10b-5], by using any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange, in connection with the purchase or sale of any security: (a) to employ any device, scheme, or artifice to defraud; (b) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or (c) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

2.     Defendants, their officers, agents, servants, employees, attorneys, successors-in-interest, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, and each of them, shall be and hereby are preliminarily restrained and enjoined, pending entry of a Final Judgment in this action, from violating, directly or indirectly, Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)], by, in the offer or sale of any security using any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly:  (a) to employ any device, scheme, or artifice to defraud; (b) to obtain money or property by means of any untrue statement of a material fact or any omission of a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (c) to engage

3

in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

3.     Defendants Wood River Asset Management, LLC, Wood River Associates, LLC, John Hunting Whittier, their officers, agents, servants, employees, attorneys, successors-in-interest, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, and each of them, shall be and hereby are preliminarily restrained and enjoined, pending entry of a Final Judgment in this action, from, by use of the mails or any means or instrumentality of interstate commerce, : (1) employing any device, scheme, or artifice to defraud; and/or (2) engaging in any act, practice or course of business which would operate as a fraud or deceit upon any client or prospective client, in violation of Section 206(1) and (2) of the Investment Advisers Act of 1940 [15 U.S.C. § 80b-6(1) and (2)].

4.     Defendants, their officers, agents, servants, employees, attorneys, successors-in-interest, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, and each of them, shall be and hereby are preliminarily restrained and enjoined, pending entry of a Final Judgment in this action, from violating, directly or indirectly, Section 13(d) of the Exchange Act [15 U.S.C. § 78m(d)] and Rules 13d-1 and 13d-2 thereunder [17 C.F.R. §§ 240.13d-1 and 240.13d-2] by failing to: (a) within ten days of acquiring beneficial ownership of more than five percent of any equity security registered pursuant to Section 12 of the Exchange Act: (i) file a complete and accurate Schedule 13D with the Commission; and (ii) send to the issuer of such security, and each exchange where such security is traded, a statement describing the purchases and other information; or (b)

4

amend a Schedule 13D if there is any material change in the beneficial ownership position in the security noted therein, or any other facts set forth in a previously filed Schedule 13D.

5.     Defendants, their officers, agents, servants, employees, attorneys, successors-in-interest, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, and each of them, shall be and hereby are preliminarily restrained and enjoined, pending entry of a Final Judgment in this action, from violating, directly or indirectly, Section 16(a) of the Exchange Act [15 U.S.C. § 78p(a)], and Rules 16a-2 and 16a-3 thereunder [17 C.F.R. § 240.16a-2 and 240.16a-3], by failing to file timely with the Commission (and, if such security is registered on a national securities exchange, also with the exchange), as a direct or indirect beneficial owner of more than 10 percent of any class of any equity security (other than an exempted security) which is registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78*l*], or as a director or an officer of the issuer of such security:  (a) at the time of the registration of such security on a national securities exchange or by the effective date of a registration statement filed pursuant to Section 12(g) of the Exchange Act [15 U.S.C. § 78*l*(g)], or within ten days after becoming such a beneficial owner, director, or officer, a statement on Form 3 [17 C.F.R. § 249.103], Initial Statement of Beneficial Ownership of Securities, of the amount of all equity securities of such issuer of which he is the beneficial owner; (b) within ten days after the close of each calendar month thereafter, if there has been a change in such ownership during such month, a statement on Form 4 [17 C.F.R. § 249.104], Statement of Changes in Beneficial Ownership of Securities, indicating ownership at the close of the calendar month and

5

such changes in ownership as have occurred during such calendar month; and (c) within

forty-five days of the issuer's year-end, a statement on Form 5 [17 C.F.R. § 249.105],

Annual Statement of Beneficial Ownership of Securities, disclosing, among other things,

all holdings and transactions that should have been, but were not, reported on Forms 3, 4,

or 5 during the most recent fiscal year.

## II.

### Full Accounting Of Assets

6.      Defendant Whittier shall, subject to, and without waiver of, any applicable

privilege, within ten (10) days of receipt of this Order, serve upon the Commission a

sworn accounting of all funds and other assets that he owns, possesses, or controls, or has

a beneficial interest in, or has a right to own, possess, or control, in whatever form, and

wherever located. The accounting provided in this paragraph shall include, but is not

limited to: (1) providing a detailed description of such funds and assets; (2) reporting on

the disposition and current location of the funds and assets; and (3) disclosing all bank

and brokerage account numbers where these funds and assets have been deposited.

Defendant Whittier shall also provide an accounting of all monies received from and paid

to the Wood River Entity Defendants since January 1, 2004.

## III.

### Wood River Entities Asset Freeze

7.      The Wood River Entity Defendants, their officers, agents, servants,

employees, attorneys, successors-in-interest, and those persons in active concert or

participation with them who receive actual notice of this Order by personal service or

otherwise, and each of them, shall hold and retain within their control, and otherwise

prevent any disposition, transfer, pledge, encumbrance, assignment, dissipation, concealment or other disposal whatsoever, by themselves or any person or entity under their direct or indirect control, of any funds or assets, in their name, for their benefit or under their control.

        8.      Any institution or person or entity holding any funds, accounts or other assets in the name, for the benefit or under the control of the Wood River Entity Defendants, or where the Wood River Entity defendants are signatories or have signing authority, and which receives actual notice of this Order by personal service or otherwise, shall hold and retain within its control and prohibit the withdrawal, removal, transfer or other disposal of any funds or other assets in the name, for the benefit or under the control of any of the Wood River Entity Defendants.

## IV.

### The Whittier Partial Asset Freeze

        9.      Defendant Whittier shall provide plaintiff with at least three business day's advance written notice of any proposed transfer, disposition, sale, or encumbrance of any asset in which Whittier has an interest (the "Transaction") if the amount or value of the Transaction exceeds $10,000. Plaintiff shall then have three business days in which to provide Whittier's counsel with a written objection to the proposed Transaction including a specific basis for the objection. If Defendant Whittier wishes to pursue the Transaction despite plaintiff's written objection, he shall do so only after seeking (and obtaining) the Court's approval, with notice to plaintiff. Notice and objections shall be sent by fax and electronic mail to counsel of record, respectively, for plaintiff and Defendant Whittier. This procedure for approving or objecting to transactions shall be

called the "Approval Mechanism." If seeking Court approval for a Transaction to which plaintiff has objected, Whittier may do so in an expedited fashion via letter to the Court.

10.    Defendant Whittier's expenditures in any calendar month shall not exceed $15,000, exclusive of attorneys' fees (the "Expenditure Cap"). If Whittier wishes to exceed the Expenditure Cap, he shall seek and obtain approval pursuant to the Approval Mechanism.

11.    Three business day after the end of each calendar month, Defendant Whittier shall provide a report to counsel of record for plaintiff of all expenditures in excess of $1,000 that he made that month, including attorneys' fees.

V.

Restraint From Destruction Of Evidence

Defendants, their officers, agents, servants, employees, attorneys, successors-in-interest, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, and each of them, are hereby restrained from destroying, mutilating, concealing, altering or disposing of any document or other record or data referring or relating in any manner to (1) the acts, practices and transactions described in the complaint in this action, (2) communications between or among the defendants and their agents; and (3) funds or other assets that any of the defendants have received from investors.

VI.

Appointment Of Receiver

8

12.  *Arthur Steinberg* is hereby appointed the Receiver for the Wood River Entities, and their subsidiaries, successors and assigns during the pendancy of this litigation, or until further direction of the Court.

13.    The Receiver is authorized, empowered and directed to perform the following duties and responsibilities, at all times with a view towards, first, locating, preserving and protecting all of Wood River Entity defendants' assets, and second, maximizing returns to investors:

a.   Preservation of Assets.  Locate and take immediate possession and control of all assets of every kind whatsoever and wherever located owned by, controlled by, belonging to, or traceable to Wood River Entities, whether tangible, intangible, real, equitable, personal, realized, unrealized, or otherwise (the "Assets"), and to hold, manage, and administer such Assets as is required to comply with and effectuate the directives of this Order;

b.   Identification of Assets and Liabilities.  Prepare a full accounting of all Assets.  Present to the Court and the Commission within 60 days of the date of this Order a report reflecting the existence and value of the Assets, including all liabilities.

c.   Identification of Assets Subject to Freeze.  Investigate the past and current operations and transactions of the defendants, and within 60 days of the date of this Order, submit a report to the Court identifying those persons and entities who have received, or are in possession, of any Assets.  The report shall include an analysis of all returns and redemptions that investors in the Wood River Entities received from February 2003 to the present, including any interest or earnings on investments.

    d.  <u>Assume Control Over the Defendants' Accounts.</u>  Assume control of, and be named as authorized signatory for, all accounts at any bank, brokerage firm, or financial institution which has possession, custody or control of any Assets (the "Accounts").  Manage, retain, sell and/or liquidate the Accounts as necessary and appropriate to comply with and effectuate the directives of this Order.

    e.  <u>Secure, Manage and Discontinue On-Going Business Operations.</u> Secure the business premises, and all business equipment, data and documents, of the Wood River Entity defendants.  Take control of all means of communication with investors, vendors, agents, and others doing business with these defendants.  Take all reasonable and necessary actions to manage, maintain, and wind-down business operations of the Wood River Entity defendants, including making legally required payments to creditors, employees and agents of these defendants.  Communicate with vendors, investors, and others, as required to comply with and effectuate the purposes of this Order.

    f.  <u>Institute, defend, compromise or settle legal actions.</u>  Institute, prosecute, defend and settle any legal actions on behalf of the Receivership to comply with and effectuate the purposes of this Order;

    g.  <u>Authorize Payments.</u>  Make or authorize such payments and disbursements from the Assets, and incur, or authorize the incurrence of such expenses and make, or authorize the making of such agreements as the Receiver deems reasonable and necessary in discharging the Receiver's duties.

h.  <u>Access to Corporate Documents and Computers</u>.  Have complete and unfettered access to all documents, books and records of the Wood River Entity defendants, wherever located, and in whatever form or format they exist.

i.  <u>Disposition Plan</u>.  Develop a plan with respect to the retention, liquidation, and/or distribution of all remaining Assets to investors.

j.  <u>Bankruptcy</u>.  If appropriate, file for bankruptcy or liquidation, on behalf of the Wood River Entities, after notice to all parties in this action.

k.  <u>Investor Communications</u>.  Use best efforts to consult with the Wood River Partners L.P. limited partners and the Wood River Partners Offshore Ltd. shareholders and their representatives and to consider their reasonable requests or suggestions.

15.  The Receiver is entitled to payment for all reasonable costs, fees and other expenses incurred in the performance of his duties, and to engage and retain attorneys, accountants, securities professionals, and other persons or entities to assist in carrying out this Order.  The Receiver shall not retain such persons or entities without the prior consent of the staff of the Commission.  The Receiver shall disclose to the Commission's counsel of record all financial arrangements with such persons or entities.

16.  The Receiver shall, at such times as he deems appropriate, submit fee applications for his services and the services of persons he retains, plus expenses, to the Court for approval before payment.  Payment of all such fees and expenses shall be made from the Assets.

17.  The Receiver shall give the Commission counsel of record at least ten (10) days notice of all of his applications to the Court under this Order, including all

11

applications for disbursements from the Assets. The Commission shall be permitted to submit to the Court for consideration its position on the reasonableness of the Receiver's application. All of the Receiver's requests for payments of fees or expenses must be approved by the Court before payment of such fees or expenses are made, and the Court will review the reasonableness of such fees and expenses in determining whether, in its equitable discretion, such payment will be approved. The Receiver is not required to seek prior Court approval of payments made for any federal, state or local taxes that may be applicable.

18.     Applications for disbursement shall include the appropriate supporting documentation to justify the expense or service rendered. Charges for services shall include (a) the date of the service; (b) the name or initials of the individual rendering the service; (c) a description of the service; (d) the hourly rate; (e) the time charged; and (f) the amount (rate x time). The description of the service or activity should be brief and informative. Expenses shall be supported by invoices.

19.     The Receiver, along with any persons or firms retained by the Receiver pursuant to this Order, shall be entitled to rely on all outstanding rules of law and court orders and shall not be liable to anyone for his or their own good faith compliance with any order, rule, law, judgment or decree, including those issued or enacted in foreign jurisdictions. In no event shall the Receiver or any person or firm retained by the Receiver in this action be liable to anyone for his, her, its or their good faith compliance with the duties and responsibilities as Receiver or as counsel for or consultant to the Receiver. Nor shall the Receiver or any person or firm retained by the Receiver in this matter be liable to anyone for any actions taken or omitted by them except on a finding

by this Court that he, she, it or they acted or failed to act as a result of misfeasance, bad faith or gross negligence or in reckless disregard of his, her, its or their duties.

20.    The Receiver is excused from all legal requirements to post a bond or to give an undertaking of any type in connection with his fiduciary duties.

21.    The Receiver may be removed at any time by the Court and replaced with a successor. In the event the Receiver decides to resign, the Receiver shall first give written notice to the parties and the Court of his intention, and his resignation shall not be effective until the Court appoints a successor. The Receiver shall then follow such instructions as his successor or the Court may provide.

22.    All persons who receive actual notice of this Order by personal service or otherwise are enjoined from in any way disturbing the Assets; from appointing a receiver, liquidator or administrator; and from filing or prosecuting any judicial action or proceeding of any kind, civil or criminal (including any bankruptcy proceeding with respect to the Wood River Entities) which involves the Receiver or which affects the Assets, except on leave having been granted by this Court.. The Receiver shall not be required to respond to any subpoena or other court process (for documents or testimony) relating to the Receiver's duties except on order of this Court.

23.    On the request of the Commission, the Receiver shall provide the Commission with any documentation that the Commission deems necessary to meet its reporting requirements, that is mandated by statute or Congress, or that is otherwise necessary to further the Commission's mission.

*  *  *  *  *  *  *  *  *

13

24.   This Stipulation and Order is entered into without prejudice to defendants'

rights to file a motion to transfer venue of this case to the U.S. District Court for the

Northern District of California following the entry of this Order.

SO AGREED:

_____
JOHN HUNTING WHITTIER
By
Dated:   10 / 12 / 05

_____
WOOD RIVER ASSET
MANAGEMENT, LLC
By
Dated:   10 / 12 / 05

_____
WOOD RIVER ASSOCIATES, LLC
By
Dated:   10 / 12 / 0 5

_____
WOOD RIVER PARTNERS, L.P.
By   Wood the Associates, LLC
Dated:   10 / 12 / 05

_____
WOOD RIVER PARTNERS
OFFSHORE, LTD.
By
Dated:   10 / 12 / 05

_____
ELLIOT R. PETERS
Keker & Van Nest LLP
710 Sansome Street
San Francisco, CA 94111
(415) 676-2273
Counsel for John Hunting Whittier
Dated:

_____
KEVIN P. O'ROURKE
100 F. Street, N.E.
Washington, D.C. 20549
(202) 551-4442
Counsel for the Securities and Exchange
Commission
Dated:   10 / 12 / 05

SO ORDERED

_____
United States District Judge
PART I

10 / 13 / 05

14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SECURITIES AND EXCHANGE COMMISSION,                    :

               Plaintiff,                          :              **ECF CASE**

                        :

        v.                                    :    Case No.  09-civ-1748 (RMB)

JAMES M. NICHOLSON and                                 :
WESTGATE CAPITAL MANAGEMENT, LLC,                       :

            Defendants,                        :

     and                                            :

WESTGATE ABSOLUTE RETURN FUND, LP,                     :
WESTGATE ALPHA FUND, LP,                               :
WESTGATE EQUITY FUND, LP,                              :
WESTGATE FOCUS FUND, LP,                               :
WESTGATE GROWTH FUND, LP                               :
WESTGATE OPPORTUNITY FUND, LP,                         :
WESTGATE OPPORTUNITY MASTER FUND, LTD.,                :
WESTGATE PREMIER GROWTH FUND, LP,                      :
WESTGATE SELECT FUND, LP,                              :
WESTGATE STRATEGIC GROWTH  FUND, LP, and               :
WESTGATE SUMMIT FUND, LP,                              :

         Relief Defendants.                    :

---

## ~~PROPOSED~~ ORDER APPOINTING RECEIVER

      WHEREAS this matter has come before this Court upon motion of the Plaintiff

Securities and Exchange Commission ("Commission") to appoint a receiver for the purpose of

marshalling and preserving assets and other responsibilities delineated in this Order, in the

above-captioned action; and,

      WHEREAS the Court finds that, based on the record in these proceedings, the

appointment of a receiver in this action is necessary and appropriate; and,

- 1 -

EXHIBIT B

**WHEREAS** this Court has subject matter jurisdiction over this action and personal jurisdiction over the Defendants, and venue properly lies in this district.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

Pending the determination of the Commission's action on the merits, or such other time as the Court may order, *Lee S. Richards* is hereby appointed to serve without bond as receiver ("Receiver") for the estates of the following Defendants and Relief Defendants: James M. Nicholson ("Nicholson"), Westgate Capital Management, LLC ("Westgate") and Relief Defendants Westgate Absolute Return Fund, LP; Westgate Alpha Fund, LP; Westgate Equity Fund, LP; Westgate Focus Fund, LP; Westgate Growth Fund, LP; Westgate Opportunity Fund, LP; Westgate Opportunity Master Fund, Ltd.; Westgate Premier Growth Fund, LP; Westgate Select Fund, LP; Westgate Strategic Growth Fund, LP; and Westgate Summit Fund, LP (collectively "Receivership Defendants").

I.

## General Powers and Duties of Receiver

A.     The Receiver shall have all powers, authorities, rights and privileges heretofore possessed by the officers, directors, managers and general and limited partners of the entity Receivership Defendants under applicable state and federal law, by the governing charters, by-laws, articles and/or agreements in addition to all powers and authority of a receiver at equity, and all powers conferred upon a receiver by the provisions of 28 U.S.C. §§ 754, 959 and 1692; Fed. R. Civ. P. 66; and New York Civil Practice Law and Rules, Article 64 et seq.

B.     Unless otherwise directed by the Receiver, the trustees, directors, officers, managers, employees, investment advisors, accountants, attorneys and other agents of the Receivership Defendants are hereby dismissed and the powers of any general partners, directors

- 2 -

and/or managers are hereby suspended. Such persons and entities shall have no authority with respect to the Receivership Defendants' operations or assets, except to the extent as may hereafter be expressly granted by the Receiver. The Receiver shall assume control of the operations of the Receivership Defendants and shall pursue and preserve all of their claims.

      C.     No person holding or claiming any position of any sort with any of the Receivership Defendants shall possess any authority to act by or on behalf of any of the Receivership Defendants.

      D.     Subject to the specific provisions in Sections II through XIII, below, the Receiver shall have the following general powers and duties:

      1.     To use reasonable efforts to determine the nature, location and value of all property interests of the Receivership Defendants, including, but not limited to, monies, funds, securities, credits, effects, goods, chattels, lands, premises, leases, claims, rights and other assets, together with all rents, profits, dividends, interest or other income attributable thereto, of whatever kind, which the Receivership Defendants own, possess, have a beneficial interest in, or control directly or indirectly ("Receivership Property" or, collectively, the "Receivership Estates");

      2.     To take custody, control and possession of all Receivership Property and records relevant thereto from the Receivership Defendants; to sue for and collect, recover, receive and take into possession from third parties all Receivership Property and records relevant thereto;

      3.     To manage, control, operate and maintain the Receivership Estates and hold in his/her possession, custody and control all Receivership Property, pending further Order of this Court;

      4.     To use Receivership Property for the benefit of the Receivership Estates, making payments and disbursements and incurring expenses as may be necessary or advisable in the ordinary course of business in discharging his/her duties as Receiver;

      5.     To take any action which, prior to the entry of this Order, could have been taken by the officers, directors, partners, managers, trustees and agents of the Receivership Defendants;

      6.     To engage and employ persons in his/her discretion to assist him in carrying out his/her duties and responsibilities hereunder, including, but not limited to, accountants, attorneys, securities traders, registered

- 3 -

representatives, financial or business advisers, liquidating agents, real estate agents, forensic experts, brokers, traders or auctioneers;

7.     To take such action as necessary and appropriate for the preservation of Receivership Property or to prevent the dissipation or concealment of Receivership Property;

8.     To issue subpoenas to compel testimony of persons or production of records, consistent with the Federal Rules of Civil Procedure and applicable Local Rules concerning any subject matter relating to the identification, preservation, collection and/or liquidation of Receivership Property;

9.     To bring such legal actions based on law or equity in any state, federal, or foreign court as the Receiver deems necessary or appropriate in discharging his/her duties as Receiver;

10.    To pursue, resist and defend all suits, actions, claims and demands which may now be pending or which may be brought by or asserted against the Receivership Estates; and,

11.    To take such other action as may be approved by this Court.

## II.

### Access to Information

A.     The past and/or present officers, directors, agents, managers, general and limited partners, trustees, attorneys, accountants and employees of the Receivership Defendants, as well as those acting in their place, are hereby ordered and directed to turn over to the Receiver forthwith all paper and electronic information of, and/or relating to, the Receivership Defendants and/or all Receivership Property; such information shall include but not be limited to books, records, documents, accounts and all other instruments and papers.

B.     Within seven (7) days of the entry of this Order, the Receivership Defendants shall file with the Court and serve upon the Receiver and the Commission a sworn statement, listing: (a) the identity, location and estimated value of all Receivership Property; (b) all employees (and job titles thereof), other personnel, attorneys, accountants and any other agents

- 4 -

or contractors of the Receivership Defendants; and, (c) the names, addresses and amounts of claims of all known creditors of the Receivership Defendants.

      C.    Within thirty (30) days of the entry of this Order, the Receivership Defendants shall file with the Court and serve upon the Receiver and the Commission a sworn statement and accounting, with complete documentation, covering the period from August 16, 1999 to the present:

      1.    Of all Receivership Property, wherever located, held by or in the name of the Receivership Defendants, or in which any of them, directly or indirectly, has or had any beneficial interest, or over which any of them maintained or maintains and/or exercised or exercises control, including, but not limited to: (a) all securities, investments, funds, real estate, automobiles, jewelry and other assets, stating the location of each; and (b) any and all accounts, including all funds held in such accounts, with any bank, brokerage or other financial institution held by, in the name of, or for the benefit of any of them, directly or indirectly, or over which any of them maintained or maintains and/or exercised or exercises any direct or indirect control, or in which any of them had or has a direct or indirect beneficial interest, including the account statements from each bank, brokerage or other financial institution;

      2.    Identifying every account at every bank, brokerage or other financial institution: (a) over which Receivership Defendants have signatory authority; and (b) opened by, in the name of, or for the benefit of, or used by, the Receivership Defendants;

      3.    Identifying all credit, bank, charge, debit or other deferred payment card issued to or used by each Receivership Defendant, including but not limited to the issuing institution, the card or account number(s), all persons or entities to which a card was issued and/or with authority to use a card, the balance of each account and/or card as of the most recent billing statement, and all statements for the last twelve months;

      4.    Of all assets received by any of them from any person or entity, including the value, location, and disposition of any assets so received;

      5.    Of all funds received by the Receivership Defendants, and each of them, in any way related, directly or indirectly, to the sale of securities. The submission must clearly identify, among other things, all investors, the securities they purchased, the date and amount of their investments, and the current location of such funds;

      6.    Of all expenditures exceeding $1,000 made by any of them, including those made on their behalf by any person or entity; and

7.      Of all transfers of assets made by any of them.

D.      Within seven (7) days of the entry of this Order, the Receivership Defendants shall provide to the Receiver and the Commission copies of the Receivership Defendants' federal income tax returns for the years 1999 to 2008 with all relevant and necessary underlying documentation.

E.      The Receivership Defendants' past and/or present officers, directors, agents, attorneys, managers, shareholders, employees, accountants, debtors, creditors, managers and general and limited partners, and other appropriate persons or entities shall answer under oath to the Receiver all questions which the Receiver may put to them and produce all documents as required by the Receiver regarding the business of the Receivership Defendants, or any other matter relevant to the operation or administration of the receivership or the collection of funds due to the Receivership Defendants. In the event that the Receiver deems it necessary to require the appearance of the aforementioned persons or entities, the Receiver shall make its discovery requests in accordance with the Federal Rules of Civil Procedure.

F.      The Receiver is authorized to issue subpoenas for documents and testimony consistent with the Federal Rules of Civil Procedure.

G.      The Receivership Defendants are required to assist the Receiver in fulfilling his/her duties and obligations. As such, they must respond promptly and truthfully to all requests for information and documents from the Receiver. However, this requirement does not impinge on the Receivership Defendants' rights to assert any applicable privilege.

- 6 -

## III.

## Access to Books, Records and Accounts

A.     The Receiver is authorized to take immediate possession of all assets, bank

accounts or other financial accounts, books and records and all other documents or instruments

relating to the Receivership Defendants.  All persons and entities having control, custody or

possession of any Receivership Property are hereby directed to turn such property over to the

Receiver.

B.     The Receivership Defendants, as well as their agents, servants, employees,

attorneys, any persons acting for or on behalf of the Receivership Defendants, and any persons

receiving notice of this Order by personal service, facsimile transmission or otherwise, having

possession of the property, business, books, records, accounts or assets of the Receivership

Defendants are hereby directed to deliver the same to the Receiver, his agents and/or employees.

Nothing in this paragraph shall impinge on a person's rights to assert any applicable privilege.

C.     All banks, brokerage firms, financial institutions, and other persons or entities

which have possession, custody or control of any assets or funds held by, in the name of, or for

the benefit of, directly or indirectly, and of the Receivership Defendants that receive actual

notice of this Order by personal service, facsimile transmission or otherwise shall:

1.     Not liquidate, transfer, sell, convey or otherwise transfer any assets,
securities, funds, or accounts in the name of or for the benefit of the
Receivership Defendants except upon instructions from the Receiver;

2.     Not exercise any form of set-off, alleged set-off, lien, or any form of self-
help whatsoever, or refuse to transfer any funds or assets to the Receiver's
control without the permission of this Court;

3.     Within three (3) business days of receipt of that notice, file with the Court
and serve on the Receiver and counsel for the Commission a certified
statement setting forth, with respect to each such account or other asset,
the balance in the account or description of the assets as of the close of
business on the date of receipt of the notice; and,

4.    Cooperate expeditiously in the transfer of funds, other assets and accounts to the Receiver or at the direction of the Receiver.

## IV.

### Access to Real and Personal Property

A.    The Receiver is authorized to take immediate possession of all personal property of the Receivership Defendants, wherever located, including but not limited to computers, laptops, hard drives, external storage drives, digital information and data, and any other such memory, media or electronic storage devices, books, papers, data processing records, evidence of indebtedness, bank records and accounts, savings records and accounts, brokerage records and accounts, certificates of deposit, stocks, bonds, debentures, and other securities and investments, contracts, mortgages, furniture, office supplies and equipment.

B.    The Receiver is authorized to take immediate possession of all real property of the Receivership Defendants, wherever located, including but not limited to all ownership and leasehold interests and fixtures. Upon receiving actual notice of this Order by personal service, facsimile transmission or otherwise, all persons other than law enforcement officials acting within the course and scope of their official duties, are (without the express written permission of the Receiver) prohibited from: (a) entering such premises; (b) removing anything from such premises; or, (c) destroying, concealing or erasing anything on such premises.

C.    In order to execute the express and implied terms of this Order, the Receiver is authorized to change door locks to the premises described above. The Receiver shall have exclusive control of the keys. The Receivership Defendants, or any other person acting or purporting to act on their behalf, are ordered not to change the locks in any manner, nor to have duplicate keys made, nor shall they have keys in their possession during the term of the receivership. Entry onto the premises, or possession of said keys, by anyone other than the

Receiver, without the express written consent of the Receiver, shall constitute a trespass enforceable by the appropriate police department at the direction of the Receiver.

      D.      The Receiver is authorized to open all mail directed to or received by or at the offices or post office boxes of the Receivership Defendants, and to inspect all mail opened prior to the entry of this Order, to determine whether items or information therein fall within the mandates of this Order.

**V.**

**Notice to Third Parties**

      A.      The Receiver shall promptly give notice of his/her appointment to all known officers, directors, agents, employees, shareholders, creditors, debtors, managers and general and limited partners of the Receivership Defendants, as the Receiver deems necessary or advisable to effectuate the operation of the receivership.

      B.      All persons and entities owing any obligation, debt, or distribution with respect to an ownership interest to any Receivership Defendant shall, until further ordered by this Court, pay all such obligations in accordance with the terms thereof to the Receiver and its receipt for such payments shall have the same force and effect as if the Receivership Defendant had received such payment.

      C.      In furtherance of his/her responsibilities in this matter, the Receiver is authorized to communicate with, and/or serve this Order upon, any person, entity or government office that he/she deems appropriate to inform them of the status of this matter and/or the financial condition of the Receivership Estates.  All government offices which maintain public files of security interests in real and personal property shall record this Order upon the request of the Receiver or the Commission.

D.      The Receiver is authorized to instruct the United States Postmaster to hold and/or reroute mail which is related, directly or indirectly, to the business, operations or activities of any of the Receivership Defendants (the "Receiver's Mail"), including all mail addressed to, or for the benefit of, the Receivership Defendants. The Postmaster shall not comply with, and shall immediately report to the Receiver, any change of address or other instruction given by anyone other than the Receiver concerning the Receiver's Mail. The Receivership Defendants shall not open any of the Receiver's Mail and shall immediately turn over such mail, regardless of when received, to the Receiver. All personal mail of any individual Receivership Defendants, and/or any mail appearing to contain privileged information, and/or any mail not falling within the mandate of the Receiver, shall be released to the named addressee by the Receiver. The foregoing instructions shall apply to any proprietor, whether individual or entity, of any private mail box, depository, business or service, or mail courier or delivery service, hired, rented or used by the Receivership Defendants. The Receivership Defendants shall not open a new mailbox, or take any steps or make any arrangements to receive mail in contravention of this Order, whether through the U.S. mail, a private mail depository or courier service.

E.      Any entity furnishing water, electric, telephone, sewage, garbage or trash removal services to the Receivership Defendants shall maintain such service and transfer any such accounts to the Receiver unless instructed to the contrary by the Receiver.

F.      The Receiver is authorized to assert, prosecute and/or negotiate any claim under any insurance policy held by or issued on behalf of the Receivership Defendants, or their officers, directors, agents, employees or trustees, and to take any and all appropriate steps in connection with such policies.

## VI.

### Injunction Against Interference with Receiver

A.     The Receivership Defendants and all persons receiving notice of this Order by

personal service, facsimile or otherwise, are hereby restrained and enjoined from directly or

indirectly taking any action or causing any action to be taken, without the express written

agreement of the Receiver, which would:

1. Interfere with the Receiver's efforts to take control, possession, or management of any Receivership Property; such prohibited actions include but are not limited to, using self-help or executing or issuing or causing the execution or issuance of any court attachment, subpoena, replevin, execution, or other process for the purpose of impounding or taking possession of or interfering with or creating or enforcing a lien upon any Receivership Property;

2. Hinder, obstruct or otherwise interfere with the Receiver in the performance of his/her duties; such prohibited actions include but are not limited to, concealing, destroying or altering records or information;

3. Dissipate or otherwise diminish the value of any Receivership Property; such prohibited actions include but are not limited to, releasing claims or disposing, transferring, exchanging, assigning or in any way conveying any Receivership Property, enforcing judgments, assessments or claims against any Receivership Property or any Receivership Defendant, attempting to modify, cancel, terminate, call, extinguish, revoke or accelerate (the due date), of any lease, loan, mortgage, indebtedness, security agreement or other agreement executed by any Receivership Defendant or which otherwise affects any Receivership Property; or,

4. Interfere with or harass the Receiver, or interfere in any manner with the exclusive jurisdiction of this Court over the Receivership Estates.

B.     The Receivership Defendants shall cooperate with and assist the Receiver in the

performance of his/her duties.

C.     The Receiver shall promptly notify the Court and Commission counsel of any

failure or apparent failure of any person or entity to comply in any way with the terms of this

Order.

D.      Until further Order of this Court, the Receiver, in his/her capacity as Receiver,

shall not be required to respond to any subpoena or other court process (for documents or

testimony).

## VIII.

### Stay of Litigation

A.      As set forth in detail below, the following proceedings (hereinafter referred to as

"Ancillary Proceedings"), excluding the instant proceeding and all actions of the Commission

related to the above-captioned enforcement action, are stayed until further Order of this Court:

> All civil legal proceedings of any nature, including, but not limited to, bankruptcy
> proceedings, arbitration proceedings, foreclosure actions, default proceedings, or other
> actions of any nature involving: (a) the Receiver, in his capacity as Receiver; (b) any
> Receivership Property, wherever located; (c) any of the Receivership Defendants,
> including subsidiaries and partnerships; or, (d) any of the Receivership Defendants' past
> or present officers, directors, managers, agents, or general or limited partners sued for, or
> in connection with, any action taken by them while acting in such capacity of any nature,
> whether as plaintiff, defendant, third-party plaintiff, third-party defendant, or otherwise.

B.      The parties to any and all Ancillary Proceedings are enjoined from commencing

or continuing any such legal proceeding, or from taking any action, in connection with any such

proceeding, including, but not limited to, the issuance or employment of process.

C.      All Ancillary Proceedings are stayed in their entirety, and all Courts having any

jurisdiction thereof are enjoined from taking or permitting any action until further Order of this

Court.  Further, as to a cause of action accrued or accruing in favor of one or more of the

Receivership Defendants against a third person or party, any applicable statute of limitation is

tolled during the period in which this injunction against commencement of legal proceedings is

in effect as to that cause of action.

## VIII.

### Managing Assets

A.      For each of the Receivership Estates, the Receiver shall establish one or more

custodial accounts at a federally insured bank to receive and hold all cash equivalent

Receivership Property (the "Receivership Funds"). The Receiver shall invest any and all money

or proceeds in his/her possession and control in United States Treasury instruments or in a

money market account that invests solely in United States Treasury instruments.

B.      The Receiver's deposit account shall be entitled "Receiver's Account, Estate of

[Name of Receivership Defendant]" together with the name of the action.

C.      The Receiver is authorized to borrow on behalf of any of the Receivership Estates

and is authorized to cause any of the Receivership Estates to issue Receiver's Certificates of

Indebtedness in the principal amounts of the sums borrowed. Said Receiver's Certificates of

Indebtedness shall have priority over all other debts and obligations of the borrowing

Receivership Estate, excluding administrative expenses of the Receivership, whether currently

existing or hereinafter incurred.

D.      The Receiver may, without further Order of this Court, transfer, compromise, or

otherwise dispose of any Receivership Property, other than real estate, in the ordinary course of

business, on terms and in the manner the Receiver deems most beneficial to the Receivership

Estate, and with due regard to the realization of the true and proper value of such Receivership

Property.

E.      Subject to Paragraph F, immediately below, the Receiver is authorized to locate,

list for sale or lease, engage a broker for sale or lease, cause the sale or lease, and take all

necessary and reasonable actions to cause the sale or lease of all real property in the Receivership

Estates, either at public or private sale, on terms and in the manner the Receiver deems most

- 13 -

beneficial to the Receivership Estate, and with due regard to the realization of the true and proper value of such real property.

      F.     Upon further Order of this Court, pursuant to such procedures as may be required by this Court and additional authority such as 28 U.S.C. §§ 2001 and 2004, the Receiver will be authorized to sell, and transfer clear title to, all real property in the Receivership Estates.

      G.     The Receiver is authorized to take all actions to manage, maintain, and/or wind-down business operations of the Receivership Estates, including making legally required payments to creditors, employees, and agents of the Receivership Estates and communicating with vendors, investors, governmental and regulatory authorities, and others, as appropriate.

      H.     The Receiver shall take all necessary steps to enable the Receivership Funds to obtain and maintain the status of a taxable "Settlement Fund," within the meaning of Section 468B of the Internal Revenue Code and of the regulations, whether proposed, temporary or final, or pronouncements thereunder, including the filing of the elections and statements contemplated by those provisions. The Receiver shall be designated the administrator of the Settlement Fund, pursuant to Treas. Reg. § 1.468B-2(k)(3)(i), and shall satisfy the administrative requirements imposed by Treas. Reg. § 1.468B-2, including but not limited to (a) obtaining a taxpayer identification number, (b) timely filing applicable federal, state, and local tax returns and paying taxes reported thereon, and (c) satisfying any information, reporting or withholding requirements imposed on distributions from the Settlement Fund. The Receiver shall cause the Settlement Fund to pay taxes in a manner consistent with treatment of the Settlement Fund as a "Qualified Settlement Fund." The Receivership Defendants shall cooperate with the Receiver in fulfilling the Settlement Funds' obligations under Treas. Reg. § 1.468B-2.

## IX.

### <u>Investigate and Prosecute Claims</u>

A.     Subject to the requirement that leave of this Court is required to resume or

commence certain litigation, the Receiver is authorized, empowered and directed to investigate,

prosecute, defend, intervene in or otherwise participate in, compromise, and/or adjust actions in

any state, federal or foreign court or proceeding of any kind as may in his/her sole discretion be

advisable or proper to recover and/or conserve Receivership Property.

B.     The Receiver is authorized, empowered and directed to:

1.     Investigate the manner in which the financial and business affairs of the
Receivership Defendants were conducted and (after obtaining leave of this
Court) to institute such actions and legal proceedings, for the benefit and
on behalf of the Receivership Estate, as the Receiver deems necessary and
appropriate; the Receiver may seek, among other legal and equitable
relief, the imposition of constructive trusts, disgorgement of profits, asset
turnover, avoidance of fraudulent transfers, rescission and restitution,
collection of debts, and such other relief from this Court as may be
necessary to enforce this Order; and,

2      Defend, compromise or settle legal actions in which the Receivership
Defendants or the Receiver are a party, having been resumed or
commenced with leave of this Court; except, however, in actions where
the Receivership Defendants are nominal parties, as in certain foreclosure
actions where the action does not affect a claim against or adversely affect
the value of any Receivership Property, the Receiver may file appropriate
pleadings in the Receiver's discretion.

C.     The Receiver hereby holds, and is therefore empowered to waive, all privileges,

including the attorney-client privilege, held by all entity Receivership Defendants.

## X.

### <u>Bankruptcy Filing</u>

A.     The Receiver may seek authorization of this Court to file voluntary petitions for

relief under Title 11 of the United States Code (the "Bankruptcy Code") for the Receivership

Defendants.  If a Receivership Defendant is placed in bankruptcy proceedings, the Receiver shall

become, and shall be empowered to operate each of the Receivership Estates as, a debtor in possession. The Receiver shall have all of the powers and duties as provided a debtor in possession under the Bankruptcy Code to the exclusion of any other person or entity.

B.      Following authorization by this Court to place a Receivership Defendant in bankruptcy proceedings, the Receiver will be authorized to take any action which he/she deems to be necessary and appropriate in order to cause such a filing under the Bankruptcy Code, including the execution of all necessary corporate resolutions or directions.

C.      Should the Receiver elect to file petitions under the Bankruptcy Code for any of the Receivership Defendants, he/she shall have 15 days from the date of such filing to file with the Bankruptcy Court any lists or schedules required to be filed with such petitions, this Court recognizing that the Receiver will require time to assemble such data for filing.

D.      Any person or entity, other than the Receiver, is barred from placing any of the Receivership Defendants in bankruptcy proceedings. If a bankruptcy petition is filed on behalf of a Receivership Defendant by anyone other than the Receiver, the bankruptcy reference shall be withdrawn and jurisdiction over Receivership Property and the Receivership Estate shall remain with this Court.

## XI.

### Liability of Receiver

A.      Until further Order of this Court, the Receiver shall not be required to post bond or give an undertaking of any type in connection with his/her fiduciary obligations in this matter.

B.      The Receiver and his/her agents, acting within scope of such agency ("Retained Personnel") are entitled to rely on all outstanding rules of law and Orders of this Court and shall not be liable to anyone for their own good faith compliance with any order, rule, law, judgment, or decree. In no event shall the Receiver or Retained Personnel be liable to anyone for their

good faith compliance with their duties and responsibilities as Receiver or Retained Personnel,

nor shall the Receiver or Retained Personnel be liable to anyone for any actions taken or omitted

by them except upon a finding by this Court that they acted or failed to act as a result of

malfeasance, bad faith, gross negligence, or in reckless disregard of their duties.

      C.    This Court shall retain jurisdiction over any action filed against the Receiver or

Retained Personnel based upon acts or omissions committed in their representative capacities.

Such actions shall comply with the provisions of 28 U.S.C. § 959.

      D.    The Receiver may be removed at any time by the Court and replaced with a

successor, sua sponte, upon request of the Commission, or otherwise.  In the event the Receiver

decides to resign, the Receiver shall first give written notice to the Commission's counsel of

record and the Court of its intention, and the resignation shall not be effective until the Court

appoints a successor.  The Receiver shall then follow such instructions as the Court may provide.

## XII.

### Recommendations and Reports

      A.    The Receiver is authorized, empowered and directed to develop procedures: (a) to

administer, hear, and evaluate claims of creditors, as reasonably necessary and appropriate, who

assert an entitlement to any Receivership Property (the "Creditor Claims Proceedings" or

"Claims Bar Date Process"); and, (b) for the fair, reasonable, and efficient recovery, liquidation,

and distribution of all remaining, recovered, and recoverable Receivership Property to investors,

and/or to the U.S. Treasury, as applicable (the "Liquidation Plan").

      B.    The Receiver shall initiate the Claims Bar Date Process only after the Receiver

has made significant progress in identifying and marshalling the assets and claims held by the

Receivership Estate.  Any cross-claims or rights of set-off that might be available to the Receiver

should be identified and developed prior to the initiation of the Claims Bar Date Process.

C.      Creditor Claims Proceedings should include, at a minimum, procedures for: (i) providing notice to known and unknown claimants; (ii) receipt and review of claims; (iii) making recommendations to the Court for payment or denial of claims; and (iv) final disposition of claims.

D.      Within ninety (90) days of the entry date of this Order, the Receiver shall file the Liquidation Plan in the above-captioned action, with service copies to counsel of record.

E.      Within thirty (30) days after the end of each calendar quarter, the Receiver shall file and serve a full report and accounting of each Receivership Estate (the "Quarterly Status Report"), reflecting (to the best of the Receiver's knowledge as of the period covered by the report) the existence, value, and location of all Receivership Property, and of the extent of liabilities, both those claimed to exist by others and those the Receiver believes to be legal obligations of the Receivership Estates.

F.      The Quarterly Status Report shall contain, at a minimum, the following:

1.      A summary of the operations of the Receiver;

2.      The amount of cash on hand, the amount and nature of accrued administrative expenses, and the amount of unencumbered funds in the estate;

3.      A schedule of all the Receiver's receipts and disbursements (attached as Exhibit A to the Quarterly Status Report), with one column for the quarterly period covered and a second column for the entire duration of the receivership;

4.      A description of all known Receivership Property, including approximate or actual valuations, anticipated or proposed dispositions, and reasons for retaining assets where no disposition is intended;

5.      A description of liquidated and unliquidated claims held by the Receivership Estate, including the need for forensic and/or investigatory resources; approximate valuations of claims; and anticipated or proposed methods of enforcing such claims (including likelihood of success in: (i) reducing the claims to judgment; and, (ii) collecting such judgments);

6.   A list of all known creditors with their addresses and the amounts of their claims;

7.   The status of Creditor Claims Proceedings, after such proceedings have been commenced; and,

8.   The Receiver's recommendations for a continuation or discontinuation of the receivership and the reasons for the recommendations.

G.   On the request of the Commission, the Receiver shall provide the Commission with any documentation that the Commission deems necessary to meet its reporting requirements, that is mandated by statute or Congress, or that is otherwise necessary to further the Commission's mission.

H.   The Receiver shall give all interested parties and creditors advance prior written notice of the time and place of hearings of:

1.   All reports described in Paragraphs E – F above;

2.   All petitions for approval of distributions;

3.   All petitions to pay or deny claims of creditors;

4.   All petitions for confirmation of sales of real or personal property;

5.   All Quarterly Fee Applications;

6.   Any application for the discharge of the Receiver;

7.   All petitions for authority to sell property at private sale; and,

8.   The petition to approve the Final Accounting and the Receiver's final application for compensation and expense reimbursement from the Receivership Estates.

## XIII.

### Fees, Expenses and Accountings

A.   Subject to Paragraphs B – H immediately below, the Receiver need not obtain Court approval prior to the disbursement of Receivership Funds for expenses that the Receiver deems advantageous to the orderly administration and operation of the receivership.  Further, prior Court approval is not required for payments of applicable federal, state or local taxes.

- 19 -

B.    Subject to Paragraph C immediately below, the Receiver is authorized to solicit persons and entities ("Retained Personnel") to assist him in carrying out the duties and responsibilities described in this Order. The Receiver shall not engage any Retained Personnel without first obtaining an Order of the Court authorizing such engagement.

D.    The Receiver and Retained Personnel are entitled to reasonable compensation and expense reimbursement from the Receivership Estates. Such compensation shall be in amounts commensurate with the services performed by the Receiver and Retained Personnel and shall require the prior approval of the Court.

E.    Within thirty (30) days after the end of each calendar quarter, the Receiver and Retained Personnel shall apply to the Court for compensation and expense reimbursement from the Receivership Estates (the "Quarterly Fee Applications"). At least fifteen (15) days prior to filing each Quarterly Fee Application with the Court, the Receiver will serve upon counsel for the Commission a complete copy of the proposed Application, together with all exhibits and relevant billing information in a format to be provided by Commission staff.

F.    All Quarterly Fee Applications will be interim and will be subject to cost benefit and final reviews at the close of the receivership. At the close of the receivership, the Receiver will file a final fee application, describing in detail the costs and benefits associated with all litigation and other actions pursued by the Receiver during the course of the receivership.

G.    Quarterly Fee Applications may be subject to a holdback in the amount of 20% of the amount of fees and expenses for each application filed with the Court. The total amounts held back during the course of the receivership will be paid out at the discretion of the Court as part of the final fee application submitted at the close of the receivership.

H.   Each Quarterly Fee Application shall:

1.   Comply with the terms of the "Billing Instructions for Receivers in Civil Actions Commenced by the U.S. Securities and Exchange Commission" (the "Billing Instructions") agreed to by the Receiver; and,

2.   Contain representations (in addition to the Certification required by the Billing Instructions) that: (i) the fees and expenses included therein were incurred in the best interests of the Receivership Estate; and, (ii) with the exception of the Billing Instructions, the Receiver has not entered into any agreement, written or oral, express or implied, with any person or entity concerning the amount of compensation paid or to be paid from the Receivership Estate, or any sharing thereof.

I.   At the close of the Receivership, the Receiver shall submit a Final Accounting, in a format to be provided by Commission staff, as well as the Receiver's final application for compensation and expense reimbursement.

**IT IS SO ORDERED, this 3rd day of March, 2009.**

RICHARD M. BERMAN
UNITED STATES DISTRICT JUDGE

- 21 -

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

U.S. SECURITIES AND EXCHANGE COMMISSION, :

        Plaintiff :

                     : 1:04-cv-2322 (GEL)

        v. :

UNIVERSAL EXPRESS, INC., et al., :

        Defendants. :

---

## AMENDED ORDER APPOINTING RECEIVER

        This matter came before the Court upon the Motion of the Plaintiff Securities and Exchange Commission ("SEC") for an order appointing a receiver over defendant Universal Express, Inc. ("Universal Express"). On August 31, 2007, the Court granted the SEC's motion and appointed Jane Moscowitz, Esq. as Receiver.

        **NOW THEREFORE,** the order of August 31, 2007 is amended nunc pro tunc as follows:

### I.

        **IT IS ORDERED** that Ms. Moscowitz is appointed Receiver to take custody, control and possession of the following property, hereinafter referred to as "the Receivership assets": all money, property (real or personal) and other assets of Universal Express and any of its subsidiaries., including but not limited to: UniversalPost Private Postal Network/Postal Nation; UniversalPost International Courier Service; Universal Express Logistics, Inc.; Virtual Bellhop; Luggage Express; LEAP (Luggage Express Associate Program); Madpackers, Inc.; Universal Express Capital Corp.; Universal Cash Express; and Universal Express Properties. The Receiver shall take exclusive custody, possession, and control of the Receivership assets wherever situated. The Receiver is hereby authorized, empowered, and directed:

            a.     to marshal, conserve, hold, and manage the Receivership assets with full

AMENDED ORDER APPOINTING RECEIVER -- PAGE 1

EXHIBIT C

Case 1:05-cv-05231-RJS   Document 237   Filed 08/03/12   Page 43 of 46

Case 1:04-cv-02322-RJH   Document 205   Filed 09/10/07   Page 2 of 5
Case 1:04-cv-02322-GEL   Document 204-2   Filed 09/06/2007   Page 2 of 5

power to take such steps as she deems necessary to secure such assets including, but not limited to, obtaining an accounting of the assets, insuring the assets, and preventing transfer, withdrawal, concealment, dissipation, or misapplication of assets;

b.    to take exclusive control of, and to close, transfer or otherwise take possession of all accounts that contain Receivership assets at any bank, brokerage firm or financial institution, wherever situated;

c.    to investigate, institute, prosecute, defend, compromise and adjust actions in state or federal court as may, in her sole discretion, be advisable or proper to recover and protect Receivership assets improperly or unlawfully held or demanded by any person, including but not limited to the defendants herein;

d.    to make or authorize payments and disbursements from the Receivership assets, to incur, or authorize the incurrence of, such expenses, and to make, or authorize the making of, such agreements as may be reasonable, necessary and advisable in discharging her duties as Receiver;

e.    to issue or cause to be issued subpoenas and other discovery requests to obtain documents and records pertaining to the Receivership or any other matter relevant to this action on behalf of the Receivership assets;

f.    to liquidate any or all securities, commodities, or other assets as the Receiver deems to be advisable or necessary;

g.    to open one or more bank accounts as designated depositories for the Receivership assets, and to deposit funds into such accounts and make payments from such accounts;

h.    to maintain accurate records of all receipts and expenditures made by the Receiver;

i.    to engage and employ attorneys, accountants and other persons in her

AMENDED ORDER APPOINTING RECEIVER -- PAGE 2

Case 1:05-cv-05231-RJS   Document 237   Filed 08/03/12   Page 44 of 46

Case 1:04-cv-02322-RJH   Document 205   Filed 09/10/07   Page 3 of 5
Case 1:04-cv-02322-GEL   Document 204-2   Filed 09/06/2007   Page 3 of 5

discretion to assist her in carrying out her duties and responsibilities hereunder.

**II.**

**IT IS FURTHER ORDERED** that the Receiver is hereby indemnified and held harmless for any judgments, costs, or expenses suffered or incurred by her or any of her agents or attorneys as a result of actions instituted against her or them in relation to the discharge of their duties aforesaid or in carrying out or furtherance of this Order, unless this Court determines that such indemnity shall be inequitable.

**III.**

**IT IS FURTHER ORDERED** that:

      a.      Universal Express, and all its officers, agents, servants, employees, attorneys-in-fact, attorneys at law, shareholders, and other persons, who are in custody, possession, or control of any assets, books, records, or other property that constitute Receivership assets shall forthwith give access to and control of such property to the Receiver, and shall forthwith grant to the Receiver authorization to be a signatory as to all accounts at banks, brokerage firms or financial institutions which have possession, custody or control of any Receivership assets;

      b.      All banks, brokerage firms, financial institutions, and other business entities which have possession, custody or control of any Receivership assets shall cooperate expeditiously in the transfer of funds, accounts, and other assets to the Receiver;

      c.      Universal Express, its officers, agents, servants, employees, attorneys-in-fact, attorneys at law and shareholders shall cooperate with and assist the Receiver, and shall take no action, directly or indirectly, to hinder, obstruct, or otherwise interfere with the Receiver in the conduct of her duties or to interfere in any manner, directly or indirectly, with the custody, possession, management, or control by the Receiver of the Receivership assets;

      d.      The costs, fees and expenses of the Receiver incurred in connection with the

AMENDED ORDER APPOINTING RECEIVER -- PAGE 3

Case 1:05-cv-05231-RJS  Document 237  Filed 08/03/12  Page 45 of 46

Case 1:04-cv-02322-RJH  Document 205  Filed 09/10/07  Page 4 of 5
Case 1:04-cv-02322-GEL  Document 204-2  Filed 09/06/2007  Page 4 of 5

performance of her duties described herein, including the costs and expenses of those persons who may be engaged or employed by the Receiver to assist her in carrying out her duties and obligations hereunder, shall be paid out of the Receivership assets. All applications for costs, fees and expenses for services rendered in connection with the Receiver shall be made by written application setting forth in reasonable detail the nature of the services and shall be considered by the Court; and

e.      No bond shall be required in connection with the appointment of the Receiver pursuant to 28 U.S.C. § 754.

## IV.

**IT IS FURTHER ORDERED** that the Receiver is entitled to rely on all outstanding rules of law and court orders, and shall not be liable to anyone for her good faith compliance with any order, rule, law, judgment, or decree, nor shall she be liable for complying with orders of this Court. In no event shall she be liable to the defendants for her good faith compliance with her duties and responsibilities under this order, nor shall she be liable to anyone for any action taken or omitted by her except upon a finding by this Court that she acted or failed to act as a result of misfeasance, bad faith, gross negligence, or in reckless disregard of her duties.

## V.

**IT IS FURTHER ORDERED** that the Receiver may be removed at any time by the Court, and replaced with a successor. In the event the Receiver decides to resign, she shall first give written notice to the parties and the Court of her intentions, and her resignation shall not be effective until the Court has appointed a successor. The Receiver shall then follow such instructions as her successor or the Court gives her in turning over custody and control of the Receivership assets.

## VI.

**IT IS FURTHER ORDERED** that this Order shall remain in effect until further order of the Court.

AMENDED ORDER APPOINTING RECEIVER -- PAGE 4

## VII.

**IT IS FURTHER ORDERED** that the Court shall retain jurisdiction of this matter for all purposes.

Dated this _10th_ day of _Sept_, 2007

Gerard E. Lynch
United States District Judge

AMENDED ORDER APPOINTING RECEIVER -- PAGE 5