

# LAW OFFICES
# STILLMAN & FRIEDMAN, P.C.

425 PARK AVENUE
NEW YORK, NY 10022
www.stillmanfriedman.com

CHARLES A. STILLMAN
JULIAN W. FRIEDMAN
SCOTT M. HIMES
MARJORIE J. PEERCE
JOHN B. HARRIS
JAMES A. MITCHELL
MICHAEL J. GRUDBERG
NATHANIEL Z. MARMUR

MARY MARGULIS-OHNUMA

NATHANIEL I. KOLODNY
ELIZABETH S. WEINSTEIN
ERIK M. ZISSU
LAURA P. WEXLER

TELEPHONE
(212) 223-0200
FACSIMILE
(212) 223-1942

DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/3/2012

**VIA HAND DELIVERY**

August 3, 2012



The Honorable Richard J. Sullivan
United States District Judge
United States Courthouse
500 Pearl Street
New York, NY 10007-1312

    Re:    SEC v. Amerindo, 05-cv-5231 (RJS)

Dear Judge Sullivan:

    I am writing this letter, pursuant to the Court's Order of July 17, in order to respond to Ms. Shevitz's letter of July 27.

    Ms. Shevitz's letter attempts to use the threat of further litigation and delay in order to intimidate the investors and the victims into agreeing with her proposal. Even more importantly, the substance of her letter: fails to take account of the true nature of the GFRDA and ATGF investments; places unwarranted control in the hands of Messrs. Vilar and Tanaka and their former employees at Amerindo; and leaves too many questions unanswered.

    First, Ms. Shevitz's letter seeks to accord the same treatment to all claimants -- whether they invested in ATGF, GFRDA, or some other business relationship with Messrs. Vilar and Tanaka -- and to make pro rata distributions to all three categories of claimants. But since all of the investments were not the same, such a pro rata distribution would be inappropriate.

    GFRDA was a fixed income security that entitled the investors to the return of their capital with specified interest. By contrast, ATGF was an equity mutual fund that entitled each share owner to a proportionate interest in whatever the Fund's assets were worth at any given time. This difference is illustrated by the fact that the Offering Circular for GFRDA indicated that the indebtedness represented that the investment was personally guaranteed by Messrs. Vilar and Tanaka. That no similar guaranty existed with respect to ATGF is consistent with the fact that ATGF was an equity investment whereas GFRDA was a debt instrument.

Law Offices
**Stillman & Friedman, p.c.**

Ignoring these differences in the types of investments is the fundamental defect in Ms. Shevitz's proposal. There is no basis for her claim that the recovery by the ATGF shareholders should be capped at the per share value of $19.5988 that Ms Shevitz claims to have existed as of April 2005. First, we believe that there is no support for the $19.5988 figure itself because we believe that it was calculated on the basis of a number of shares in excess of those that were actually outstanding. Second, if the value of the assets went up after the day as of which Ms. Shevitz's calculation was made, it is the ATGF shareholders who are entitled to that appreciation. While Ms. Shevitz's letter talks a lot about when interest accruals should be cut off, this discussion has no applicability to the ATGF shareholders because they each have an interest in specific cash assets and specific securities -- whatever those assets are worth at any given time.

Ms. Shevitz's letter is similarly opaque with respect to the undifferentiated "other" category to which she refers. She fails to describe the nature of those investments, with what entities they were made, and whether the investments were personally guaranteed by Messrs. Vilar and Tanaka. Without this information, it cannot be determined exactly what relief these investors are entitled to, and against whom.

Ms. Shevitz's letter simply asks the Court to accept the decision of Mr. Vilar and Mr. Tanaka about how much money is owed to each claimant. It provides no mechanism for claimants to challenge the Vilar and Tanaka assertions about who is owed how much -- a particularly significant omission since Mr. Vilar and Mr. Tanaka have not had access to the investment records for over seven years. Therefore, their assertions about the number of shares owned by various ATGF shareholders, and the debts owed to various GFRDA investors, can only be based on their memories.[1] A mechanism has to be provided to challenge those calculations.

Ms. Shevitz's proposal leaves far too many questions unanswered. The key ones are:

-- Who is to benefit from any post-2005 appreciation in the ATGF assets?

-- How can it be guaranteed that Messrs. Vilar and Tanaka will not share in assets that they have repeatedly acknowledged were held in trust by them and in which they had no beneficial interest? No result reached by the Court of Appeals in the pending appeal of the criminal case can give Mr. Vilar or Mr. Tanaka any control over those funds, but that is exactly what Ms. Shevitz's letter seeks.

-- For example, if the Court were to accept Ms. Shevitz's proposal that the assets be managed by former associates of her clients, such as Mr. Stableford, would there be a risk that Messrs. Vilar and Tanaka would exercise undue influence? Similarly, does the fact that the claims that Ms. Shevitz seeks to recognize include people whom we believe had close relationships with Mr. Vilar raise another risk of abuse?

---

[1] If Ms. Shevitz or her clients are in possession of records on which these figures are based, it is respectfully submitted that she should be directed to produce those records to all parties so that the playing field is level.

Law Offices<br>**Stillman & Friedman, p.c.**

-- Apart from the identity of the claimants, does Ms. Shevitz's calculation of the amounts due to each claimant recognize all of the prior payments made to certain claimants (including the Mayers and Ms. Cates), and has she properly distinguished between prior interest payments and previous returns of capital?

-- With respect to the so-called retirement accounts that Ms. Shevitz is apparently claiming as the personal property of Messrs. Vilar and Tanaka: what monies went into those accounts; what was the source of these funds; how were these accounts managed between 2005 and 2012; and were these accounts given preferential treatment over the accounts belonging to the ATGF and GFRDA investors?

-- How should the personal guarantees of the GFRDA investments by Mr. Vilar and Mr. Tanaka affect the distribution of assets here?

-- Are the claims in the "other" category in Ms. Shevitz's letter really claims against Mr. Vilar and Mr. Tanaka in their individual capacities that should be enforceable only against their personal assets, and not assets belonging to ATGF and GFRDA investors?

-- What if there are other as yet undiscovered accounts (for example, offshore accounts) that contain funds belonging to the ATGF and GFRDA investors?

-- Does the "release" language at the bottom of page 5 and in point 9 on page 6 of Ms. Shevitz's letter mean that the retirement assets and any newly-discovered funds will revert to Messrs. Vilar and Tanaka, and block any further claims by investors and victims against those assets, even if the investors are not fully compensated from other sources for the full amounts to which they are entitled?

Finally, contrary to what Ms. Shevitz claims, a Receiver appointed in this case would not have to "learn this business from the beginning" because that Receiver would not be managing a mutual fund. As the Court's July 17 Order made clear, the Receiver's task at this point is to value and preserve assets, and there is simply no one as qualified to do that as efficiently and inexpensively as David Ross -- both because of his prior experience and because of his reasonable rates.

In fact, Ms. Shevitz's letter makes no real objection to the appointment of Mr. Ross for the limited purposes set forth in the Order. It certainly provides no satisfactory alternative method to achieve the purposes underlying that Order. What Ms. Shevitz attempts is to have Mr. Ross do less so that her own clients can do more. By placing so much control in the hands of Mr. Vilar and Mr. Tanaka, it is respectfully submitted that Ms. Shevitz is trying to allow the proverbial fox into the henhouse -- a danger this Court has already cautioned against.

LAW OFFICES
**STILLMAN & FRIEDMAN, P.C.**

Respectfully submitted,

*Julian W. Friedman/cn*

Julian W. Friedman

JWF:cn

cc: Sharon Levin, Esq. (Sharon.levin@usdoj.gov
 Benjamin Naftalis, Esq. (Benjamin.naftalis@usdoj.gov)
 Mark D. Salzberg, Esq. (salzbergm@sec.gov)
 Neal Jacobson, Esq. (jacobsonn@sec.gov)
 Vivian Shevitz, Esq. (Vivian@shevitzlaw.com)
 Jane Simkin Smith, Esq. (jssmith1@optonline.net)
 Victoria B. Eiger, Esq. (veiger@lawdea.com)
 David C. Burger, Esq. (dcb@robinsonbrog.com)
 Patrick W. Begos, Esq. (pwb@begoshorgan.com)
 Thomas J. Hall, Esq. (hallt@hallandhalllaw.com)
 Eugene F. Hestres-Velez, Esq. (ehestres@bbh-law.com)
 Mr. Alfred Heitkonig (alfredo@ahfs.biz)
 Mr. Gary Tanaka (*by regular mail*)