D &F

Vivian Shevitz
Attorney at Law
401 Cumberland Ave. – Apt. 609
Portland, Maine 04101
207-899-2502
914-763-2122 (cell)
888-859-0158 (fax)
Vivian@shevitzlaw.com

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/3/2012

July 27, 2012

Hon. Richard J. Sullivan
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007
   By email

                    Re:  SEC v. Amerindo – 05 cv 5231 (RJS)

Dear Judge Sullivan:

By Order dated July 17, 2012, the Court proposed appointing a Receiver "to value and preserve the seized assets" and "begin[] the process of determining how much is owed to victims and investors" – but not to distribute any assets at this time. The Court further proposed that the Receiver would be paid up to $50,000 out of those "seized assets" to do this work.

On behalf of defendants Tanaka and Vilar, we object. A Receiver would have to learn this business from the beginning, and with a limit of $50,000 could do nothing. It would be a waste of time and money. Even the list of considerations presented by Mr. Friedman suggests that there would be more issues presented by a Receiver than one would solve.

However, we offer a counter-proposal that involves immediate management of the money, updating the privates' evaluation to sell

them, and an immediate payout and settlement. We make this proposal not only cognizant of the policy inherent in Fed. R. Civ. Proc. 26(f)'s requirement that parties attempt to resolve the dispute, but also in the light of two recent Court orders – the Order dated July 17, 2012, proposing to appoint a Receiver for limited purposes but indicating that the Court "is not prepared to authorize distributions at this time"; and the Order of July 25, 2012, declining Mr. Tanaka's request to defer motions in the SEC action pending resolution of the criminal case "since there is no indication that the Court of Appeals will issue its ruling immediately." Combined, these Orders implicitly recognize that the pending criminal case proceedings – in particular the concededly invalid and excessive forfeiture orders that are now on appeal – are an obstacle to any distribution of seized funds to the investors, and that there is no end in sight. Even after the Court of Appeals rules, there is no assurance that a distribution to the investors could be quickly could be accomplished; rather, there are likely to be complex and protracted proceedings involving all sorts of claimed interests in accounts held in and by offshore entities.

Whoever is to blame for the impasse, nobody is happy that the money has been tied up and unmanaged for over seven years. In making this proposal, the defendants are giving up their right to have the forfeiture issues ruled on by court of appeals, and to any counterclaims or defenses they might have to claims by investors (such as a statute of limitations defense with respect to any claim by Paul Marcus or any other investor who has not filed a civil claim). The investors can get paid a significant amount of money now, and the SEC can move on to other pressing matters.

We note, before setting forth the details we've had time to consider, the difficulty of dealing with not only parties, but also with investor "participants" in the joint (or consolidated) civil/criminal case, who seem to drive the litigation which, with all due respect to them, involves many issues that the defendants must consider apart from paying the clients. Unlike the DOJ, which intervened in this case in 2005, none of these interested persons have intervened. Nonetheless, we recognize their interests, and make this proposal to all of them.

The Proposal

With very limited access to documents, we have prepared a proposed payout (Attachment A hereto) that includes all investors we believe are owed moneys. These amounts are somewhat tentative – because defendants do not have the documents in jail – to be confirmed by each investor providing verification by way of Amerindo account statements or correspondence. Defendants will assume the risk that there are investors who are not on the list who may assert claims at a later time, and note that in any event, the statute of limitations would bar new claims.

As to amounts, investors will see that, as would happen in a case of "remission of forfeiture", "Amerindo" cannot pay interest. Nor should it because it had no use of the money, nor could invest it or manage it since 2005. (Indeed, as the Ross report said back in 2010, the failure to manage the money has resulted in losses of interest, losses of opportunity, and loss of opportunity to "work" the private securities to be positioned properly). As in the CFR remission law, what will be made available are amounts due as of the "date of the loss" (See 28 CFR 9).[1]

---

[1] 28 CFR 9.8 "Provisions applicable to victims", provides:

The provisions of this section apply to victims of an offense underlying the forfeiture of property, or of a related offense, who do not have a present ownership interest in the forfeited property (or, in the case of multiple victims of an offense, who do not have a present ownership interest in the forfeited property that is clearly superior to that of other petitioner victims). ...

(a) Qualification to file. A victim, as defined in § 9.2(v), of an offense that was the underlying basis for the criminal, civil, or administrative forfeiture of specific property, or a victim of a related offense, may be granted remission of the forfeiture of that property, if in addition to complying with the other applicable provisions of § 9.8, the victim satisfactorily demonstrates that:

Specifically, we offer an immediate payout on a pro rata basis of all the cash in specified accounts (almost $29 million), followed by payouts on a pro rata basis of all proceeds of sale of the securities in the said accounts. The redemption to ATGF investors will be calculated on the basis of their verified share holdings multiplied by the last net asset value of April 2005, $19.5988. The redemption for GFRD investors will be that of their last statement, to be adjusted later to include further interest at 4% (or the lowest prevailing fixed deposit client rate in effect at April 2005), through April 2005.

The proposal we make now is, in essence, this:

1. First, if, and only if, all investor/ claimants and the parties' consent and with the Court's approval, defendants will withdraw their appeals from the forfeiture and restraining orders and restitution orders, and the Court will vacate both forfeiture orders (the initial order of April 7, 2010 as well as the Substitute Asset order of November 9, 2010) and the restraining and restitution orders.

---

(1) A pecuniary loss of a specific amount has been directly caused by the criminal offense, or related offense, that was the underlying basis for the forfeiture, and that the loss is supported by documentary evidence including invoices and receipts;

(2) The pecuniary loss is the direct result of the illegal acts and is not the result of otherwise lawful acts that were committed in the course of a criminal offense;

(b) Pecuniary loss. The amount of the pecuniary loss suffered by a victim for which remission may be granted is limited to the fair market value of the property of which the victim was deprived as of the date of the occurrence of the loss. No allowance shall be made for interest foregone or for collateral expenses incurred to recover lost property or to seek other recompense.

2. The assets held in the specific accounts listed below (currently among the "substitute assets") as well as two accounts identified by AUSA Levin in her submission of February 21, 2012) – which total about $29 million in cash plus an as yet undetermined amount of securities (previously estimated by David Ross at approximately $20 million) will be distributed to investors as part of "global" settlement of the civil SEC case and the separate civil cases brought by the Mayers and Lily Cates; and will satisfy restitution in the criminal case. Specifically, the accounts that will be used for redemptions are these:

- Bear Stearns & Co., Inc.

    102-01485  Amerindo Management Sub-Account M26
    102-01490 Amerindo Technology Growth Fund
    102-01495 Amerindo Technology Growth Fund II
    102-17995 Techno Raquia

- SG Americas Securities

    64524357  Amerindo Technologies Growth Fund

- Ventures Management, funds held for Amerindo Technology Growth Fund II, Inc.

- U.S. Bank, funds on deposit for Amerindo Technology Growth Fund II, Inc.

- The Citi account specified by Ms. Levin

- The Amerindo U.K. account specified by Ms. Levin

- approximately $250,000 wired to the SDNY U.S. Attorney's Office in or after 2005 from a private security cash-out.

(All other accounts will be released.)

3. While the money is being held for distribution, it will be managed by Open Fields Management, a New York / London investment management firm whose principals are James Stableford, a former Amerindo senior portfolio manager (14 years) and Marc Weiss, former Amerindo director of research.

4. The parties and investors will agree that David Ross will be paid $175/hour out of the "seized assets" to update his evaluation of the private securities in the accounts, up to $15,000 – subject to increase if Mr. Ross shows that more is needed to finish the evaluation.

5. The sales of the public and private securities will be overseen by the trading desk of Open Fields Management to participate in the best and most efficient markets to insure maximum sales proceeds.

6. An initial pro-rata distribution of the cash portion of the assets will be made to investors upon verification of their claims with Amerindo documentation and/or correspondence, which will total approximately 65-70% of the proposed payout (which is 65-70% of the amounts due as of the "date of the loss").

7. The remaining amounts will be paid pro rata when the securities in the accounts are sold.

8. The defendants will agree to settle the SEC case with no admission of liability if all parties agree to this process and if the Mayers and Cates agree to this payout in full satisfaction of their claims and withdraw their civil lawsuits. The defendants have already been stripped of their licenses and registration.

9. The pension fund and all other assets restrained by way of the Substitute Asset forfeiture order, the forfeiture order, and any restraining order, other than those specifically listed in paragraph number 2, will immediately be released with no conditions. The Parties will ask the Court to order the banks holding those funds to release them.

The parties and the investors should know that, if this is not a satisfactory resolution and the Court appoints a Receiver, there will be further delay because defendants will appeal the order appointing a Receiver, pursuant 28 U.S.C. 1292(a)(2), which provides a right to an immediate interlocutory appeal.

Our appeal will be premised on the ground that a Receiver is not warranted, and that the continuation of this case, and the appointment of a Receiver, violates the defendants' constitutional rights under principles of Double Jeopardy, Eighth Amendment Excessive Punishment, Sixth Amendment Deprivation of Counsel by forcing "forfeiture" litigation in this civil case while funds are being (and have been) held since 2005 in the criminal case, and Due Process. We have already notified the Court of Appeals of this contemplated step, in a motion to supplement the record, which the Court of Appeals granted on July 24, 2012.

As to Mr. Friedman's suggestion for Ross becoming a Receiver, we object not to David Ross, but to his function as "Receiver." We object to *any* "Receiver" tasked with broad powers such as Mr. Friedman suggests, and note that in 2005, the Monitor appointed by Judge Swain resigned when he determined that there were no losses and any further inquiry would be a waste of funds. Specifically we object to Mr. Friedman's proposal that a Receiver's tasks include: "Investigate the sources of the assets held in various custody accounts for the benefit of all parties." The government already stated it could not trace funds, and we object because this would be a total waste of time, and would not accomplish a distribution of funds.

Again, we *do* endorse David Ross to continue his valuation of the private and public securities in the accounts to be used for client payouts. We are pleased he agrees to work at $175/hour but suggest that there be a cap of $15,000 because the contemplated work is updating the work previously paid for by Mr. Tanaka.

We hope that this will prompt serious consideration. Investors have not received payment since 2005, and it threatens to be a much longer time

if we do not resolve things now, the only apparent way to put money quickly into investors' hands.

Finally, we ask to have this letter-response to the Court's order to respond to the Receiver proposal filed.

Very truly yours,

**Vivian Shevitz**
/s/
Vivian Shevitz

Digitally signed by Vivian Shevitz
DN: cn=Vivian Shevitz, o=Vivian Shevitz, Attorney at Law, ou, email=vivian@shevitzlaw.com, c=US
Date: 2012.07.27 15:28:42 -04'00'

Cc: All parties and "participants":
    Mark Salzberg
    Neal Jacobson
    David Burger
    Sharon Levin
    Benjamin Naftalis
    Nat Dershowitz
    Vicky Eiger
    Julian Friedman
    Patrick Begos
    Eugene Hestres
    Hall & Hall
    Peter Lusk
    Huw Davies
    John Preetzman-Aggerholm
    Alfred Heitkonig
    Jane Simkin Smith

Attachment A

Note:
This proposed payout list is established largely from:

- Documents submitted by the Government in February 21, 2012 (Doc. 514, consolidated cases);

- Conversations with certain investors together with Amerindo documentation they provided counsel

- Evidence in the record from the criminal trial.

This is subject to change for new information. Before a payout is made, any amount must be verified by Amerindo account statements and/or correspondence establishing the account balances maintained in Amerindo accounts.

( * denotes a probable exact number, e for estimated)

| ATGF | (TOTAL $ 9,959,240.47e) | |
|---|---|---|
| | (n.a.v. $19.5988 – April 2005) | |
| Acevedo | $ 150,240.87* | 7,665.82 shares |
| Acevedo-Gaztambide | $ 43,232.99* | 2,205.9 shares |
| Dichov, Maria | $ 943,980.90* | 48,165.24 shares |
| Gibbs | $ 350,230.55e | 17,870e shares |
| Arkley Assoc./ Mutual Finance Ltd. | $ 44,920.49e | 2,292e shares |
| Salvitti | $ 1,975,657* | 100,805 shares |
| Heitkoenig | $ 1,763,892* | 90,000 shares |
| Charles | 0 (no verification) | |
| Walsh | $ 144,495.48* | 7,372.67 shares |
| NIG Ameritech Ltd. | $ 142,032.50e | 7247e shares |
| Kabara | $ 56,072.17e | 2861e shares |
| Marcus Family | $ 4,176,857* | 213,118 shares |
| Hannon | 0 (no verification) | |
| Republic Nominees | $ 61,795e | 3153e shares |
| Sayko | $ 105,833.52* | 5400 shares |
| Sweetland Trust | 0 (no verification) | |

| | | |
|---|---|---|
| GFRDA | | (TOTAL $ 7,732,977) |
| Acevedo | $ 692,209 | statement 6-30-03 |
| Sanchez-Weir | $ 2,039,313 | statement 3-3-03 |
| Heitkoenig | $ 3,164,889 | statement 5-3-04 |
| Dichov, Anna | $ 20,000 e | ($10,000 redemption 8/01) |
| Dichov, Maria | $500,000e | |
| Walsh | $ 77,401 | statement 4-30-05 |
| Kabara | $ 112,411 | statement 3-31-04 |
| Sayko | $ 152,411 | statement 5-31-04 |
| Zanzuri | $ 492,313 | after $600,000 redemption 5-05 |
| Fyffe | $8,000 | statement 8-25-03 |
| Hrytsyk-Prvlovsky | $15,000e | |
| Preetzman-Agerholm | $309,000e | statement 8-16-03  ($20,000 redemption '03) |
| Harris | $50,000e | |
| Kaye | $100,000e | |
| | | |
| OTHERS | | (TOTAL $ 23,939,042) |
| Cates | $ 9,770,133e | |
| Mayers | $ 11,066,713e | |
| Cox | $ 105,825 | |
| Coburn | $ 936,371 | |
| Lecube-Chavez | $ 20,000e | |
| Jordan | $ 2,000,000e | |
| Knope | $ 40,000e | |