**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

SECURITIES AND EXCHANGE COMMISSION,

                    **Plaintiff,**

              **v.**

AMERINDO INVESTMENT ADVISORS INC.,
AMERINDO INVESTMENT ADVISORS, INC.,
AMERINDO ADVISORS UK LIMITED,
AMERINDO MANAGEMENT INC.,
AMERINDO TECHNOLOGY GROWTH FUND, INC.,
AMERINDO TECHNOLOGY GROWTH  FUND II, INC.,
TECHNO RAQUIA, S.A.,
ALBERTO W. VILAR, and
GARY ALAN TANAKA,

                    **Defendants.**

**05 Civ. 5231 (RJS)**

**ECF CASE**

**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S**
**MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR**
**PARTIAL SUMMARY JUDGMENT AGAINST DEFENDANTS**
**<u>ALBERTO W. VILAR AND GARY ALAN TANAKA</u>**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ................................................................................ iii

PRELIMINARY STATEMENT ........................................................................... 1

STATEMENT OF UNDISPUTED MATERIAL FACTS .......................................... 4

ARGUMENT ................................................................................................... 4

    A.   Standard for Summary Judgment................................................................ 4

    B.   The Individual Defendants' Convictions Bar Them From Relitigating Their
         Liability for Securities Fraud and Aiding and Abetting Investment Adviser
         Fraud ....................................................................................................... 5

         1.   The Individual Defendants' Convictions Collaterally Estop Them From
              Contesting Liability as to the Commission's Fraud Charges ............................ 5
         2.   The Offenses Alleged in the Second Amended Complaint ................................ 7
         3.   The Court's Jury Charge in the Criminal Case .................................................. 8
         4.   The Securities Transactions Occurred in the United States ............................. 10

    C.   The Individual Defendants' Violations of the Federal Securities Laws
         Warrant the Relief Requested ................................................................... 12

         1.  Disgorgement and Prejudgment Interest.......................................................... 12
         2.  Injunctive Relief.............................................................................................. 13
         3.  Civil Penalties ................................................................................................. 16

CONCLUSION ................................................................................................ 19

## **TABLE OF AUTHORITIES**

**Page**

**Cases**

*Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60 (2d Cir. 2012) ........................10

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) ............................................................11

*Burgos v. Hopkins*, 14 F.3d 787 (2d Cir. 1994)...............................................................................6

*Gelb v. Royal Globe Ins. Co.,* 798 F.2d 38 (2d Cir. 1986) .............................................................6

*Kraft Gen'l Foods v. Cattell*, 18 F. Supp. 2d 280 (S.D.N.Y. 1998) ............................................11

*Matsushita Elec. Indus. Co., v. Zenith Radio Corp*., 475 U.S. 574 (1986)...................................4

*Morrison v. National Australia Bank Ltd.,* 130 S. Ct. 2869 (2010).............................................10

*St. Louis Baptist Temple, Inc. v. FDIC,* 605 F.2d 1169 (10th Cir. 1979) .....................................11

*SEC v. Calvo*, 378 F.3d 1211 (11th Cir. 2004) ............................................................................13

*SEC v. Cavanagh*, 155 F.3d 129 (2d Cir. 1998)  .........................................................................14

*SEC v. Cedric Kushner Promotions, Inc.,* 417 F. Supp. 2d 326 (S.D.N.Y. 2006) ........................10

*SEC v. Coates*, 137 F. Supp. 2d 413 (S.D.N.Y. 2001).................................................................16

*SEC v. First Jersey Secs., Inc.*, 101 F.3d 1450 (2d Cir. 1996) .................................................7, 8, 13

*SEC v. Freeman,* 290 F. Supp. 2d 401 (S.D.N.Y. 2003) ...............................................................6

*SEC v. Gabelli*, 653 F.3d 49 (2d Cir. 2011).................................................................................14

*SEC v. Gruss*, 2012 WL 1659142 (S.D.N.Y., May 9, 2012)  ......................................................10

*SEC v. Haligiannis*, 470 F. Supp. 2d 373 (S.D.N.Y 2007)......................................................8, 16

*SEC v. ICP Asset Mgt, LLC,* 2012 WL 2359830 (S.D.N.Y., June 21, 2012) ...............................10

*SEC v. K.W. Brown & Co.*, 555 F. Supp. 2d 1275 (S.D. Fla. 2008).............................................8

*SEC v. Monarch Funding Corp.,* 192 F.3d 295 (2d Cir. 1999) .....................................................7

*SEC v. Moran*, 944 F. Supp. 286 (S.D.N.Y. 1996).....................................................................13

*SEC v. Palmisano*, 135 F.3d 860 (2d Cir. 1998)........................................................................18

*SEC v. Patel*, 61 F.3d 137 (2d Cir. 1995) ..................................................................................12

*SEC v. Rajaratnam*, 822 F. Supp. 2d 432 (S.D.N.Y. 2011).......................................................18

*SEC v. Shehyn*, 2010 WL 3290977 (S.D.N.Y., Aug. 9, 2010) ...................................7

*SEC v. Tome,* 833 F.2d 1086 (2d Cir. 1987) ...............................................12

*SEC v. Trabulse,* 526 F. Supp. 2d 1008 (N.D. Cal. 2007) ..............................8

*SEC v. Tzolov*, 2011 WL 308274 (S.D.N.Y., Jan. 26, 2011) .....................6, 7, 8, 15, 16

*United States v. Int'l Brotherhood of Teamstears, Chauffers, Warehousemen and Helpers of Am.,* 905 F.2d 610 (2d Cir. 1990) ...........................6

*United States v. Podell,* 572 F.2d 31 (2d Cir. 1978) ................................6

**Statutes**

15 U.S.C. § 77q(a) .........................................................2, 7, 8, 11, 13

15 U.S.C. § 77t(b) .................................................................13

15 U.S.C. § 77t(d) .................................................................16

15 U.S.C. § 78j(b) ..........................................2, 5, 7, 8, 10, 11, 13

15 U.S.C. § 78u(d) .................................................................16

15 U.S.C. § 80b-6 ...............................2, 5, 7, 8, 9, 10, 11, 13

15 U.S.C. § 80b-9 .............................................................13, 16

**Code of Federal Regulations**

17 C.F.R. § 240.10b-5 ...................................................2, 5, 7, 11

17 C.F.R. § 275.206(4)-2(a) ...........................................................2

**Federal Rules of Civil Procedure**

Fed. R. Civ. P. 56 .................................................................1, 4

Local Civil Rule 56.1 ...................................................................1

Plaintiff Securities and Exchange Commission (the "Commission") respectfully submits this memorandum, together with its Statement of Undisputed Material Facts Pursuant to Local Civil Rule 56.1, in support of its motion for partial summary judgment pursuant to Rule 56(a) of the Federal Rules of Civil Procedure against defendants Alberto W. Vilar ("Vilar") and Gary Alan Tanaka ("Tanaka" and, together with Vilar, the "Individual Defendants").[1]

## PRELIMINARY STATEMENT

On May 25, 2012, the Commission filed the Second Amended Complaint in this action against the Individual Defendants, Amerindo Investment Advisors Inc. ("Amerindo US"), Amerindo Investment Advisors, Inc. ("Amerindo Panama"), Amerindo Advisors UK Limited ("Amerindo UK," and, together with Amerindo US and Amerindo Panama, "Amerindo"), Amerindo Management Inc. ("AMI"), Amerindo Technology Growth Fund, Inc. ("ATGF"), Amerindo Technology Growth Fund II, Inc. ("ATGF II"), and Techno Raquia, S.A. ("Techno Raquia," and, together with AMI, ATGF and ATGF II, the "Amerindo Investment Vehicles"), alleging that, *inter alia*, the Individual Defendants defrauded Lily Cates, investors in so-called Guaranteed Fixed Rate Deposit Accounts ("GFRDAs"), and investors in the offshore hedge funds ATGF and ATGFII.  (SMF ¶ 1; Ex. A)

Specifically, the Commission alleged that the Individual Defendants defrauded Lily Cates by inducing her to invest $5 million in a Small Business Investment Company ("SBIC") fund

---

[1]     Factual citations are made to the relevant numbered paragraphs of the accompanying Statement of Undisputed Material Facts ("SMF").  Each numbered paragraph in the SMF sets forth material facts not in dispute in accordance with Local Civil Rule 56.1, and, in turn, each paragraph of the SMF cites to the exhibits attached to the accompanying Declaration of Neal Jacobson, dated August 3, 2012 ("Jacobson Decl."), or the Declaration of Jim Meixner, dated April 25, 2012 ("Meixner Decl.").  Where appropriate, direct citations are made to the exhibits attached to the Jacobson Declaration.

that they were creating and that they represented would receive matching funds from the Small Business Administration ("SBA"). In fact, the Individual Defendants never obtained an SBA license for the SBIC fund, nor did they invest Lily Cates' money in the fund. Instead, they caused the $5 million investment to be transferred to other Amerindo entities and to and for the benefit of Vilar and Amerindo. (SMF ¶¶ 11-14) The Commission also alleged that Vilar and Tanaka misappropriated another $250,000 from Lily Cates by forging her signature on a letter of authorization and transferring the funds from her managed account with Amerindo into an ATGF account. (SMF ¶ 15)

In addition, the Commission alleged that Vilar and Tanaka defrauded investors in the GFRDA securities by misrepresenting the types of investments that would be made with the GFRDA investors' funds and by commingling the funds raised from GFRDA investors with funds of other Amerindo Investment Vehicles. (SMF ¶¶ 16-19)

The Commission's Second Amended Complaint charged that Vilar's and Tanaka's conduct violated Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C.§ 77q(a)], Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)], and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]; and aided and abetted violations of Sections 206(1), 206(2) and 206(4) of the Investment Advisers Act of 1940 ("Advisers Act") [15 U.S.C. §§ 80b-6(1), 80b-6(2), and 80b-6(4)]; and Rule 206(4)-2(a) thereunder [17 C.F.R. §275.206(4)-2(a)]. (SMF ¶ 4)

In a parallel criminal case, *United States v. Alberto William Vilar and Gary Alan Tanaka*, 05 CR 621 (RJS) (the "Criminal Case"), the United States Attorney's Office for the Southern District of New York ("SDNY") charged the Individual Defendants in its Third Superseding Indictment with substantially the same violations alleged in the Commission's Second Amended

Complaint -- securities fraud on Lily Cates, securities fraud on certain GFRDA investors, and investment adviser fraud on Lily Cates -- as well as conspiracy to commit securities fraud, investment adviser fraud, mail fraud, wire fraud, and money laundering.  (SMF ¶¶ 3-5)[2]  On November 19, 2008, after a seven-week jury trial, Vilar was convicted on all counts of the Third Superseding Indictment, and Tanaka was convicted on counts one (conspiracy to commit securities fraud, investment adviser fraud, mail fraud, wire fraud, and money laundering), three (securities fraud on certain GFRDA investors), and four (investment adviser fraud on Lily Cates) of the Third Superseding Indictment.  (SMF ¶ 10)

The Commission now moves for partial summary judgment based on the preclusive effect of the Individual Defendants' criminal convictions for their fraud on Lily Cates and on the GFRDA investors who testified (or whose representatives testified) at the trial in the Criminal Case – namely, Tara Colburn, the Mayers, Graciela Lecube-Chavez, and Gary Cox (collectively, the "Testifying GFRDA Investors").[3]  In light of the fact that the Individual Defendants had a full and fair opportunity to litigate these claims at the trial in the Criminal Case, they are now collaterally estopped from relitigating the claims' factual underpinnings.  Accordingly, there is no genuine issue of material fact remaining as to the Commission's claims relating to Lily Cates and the Testifying GFRDA Investors.

---

[2]     The Third Superseding Indictment also charged the Individual Defendants with one count of mail fraud, two counts of wire fraud, four counts of money laundering, and one count of making false statements to the Commission.  (SMF ¶ 5)

[3]     The Commission is not now moving for summary judgment with respect to the fraud alleged in the Second Amended Complaint on GFRDA investors who did not testify at the trial in the Criminal Case or on investors in ATGF and ATGFII, which were not the subject of the Criminal Case.

The Commission seeks an order granting partial summary judgment against Vilar and Tanaka, permanently enjoining them from future violations of the federal securities laws, and ordering Vilar and Tanaka jointly and severally to pay disgorgement of $12,361,500 and prejudgment interest of $8,094,174 for a total of $20,455,674, and imposing the maximum civil penalty against each of them in the amount of $12,361,500, equal to the amount of their gross pecuniary gain from their fraud pursuant to Section 20(d) of the Securities Act, Section 21(d) of the Exchange Act, and Section 209(e) of the Advisers Act.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

The Commission respectfully refers the Court to the accompanying SMF for a complete recitation of all relevant, undisputed facts that warrant the entry of partial summary judgment against the Individual Defendants.  Undisputed facts pertinent to the analysis are referenced in the Commission's Argument.

## ARGUMENT

A.     **Standard for Summary Judgment**

Rule 56(a) of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed R. Civ. P. 56(a).  To defeat summary judgment, the disputed fact must be material to the outcome of the litigation and must be backed by evidence that would allow a rational trier of fact to find for the non-moving party. *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue' for trial.").  No genuine issue of material fact is in dispute with respect to the

Individual Defendants' fraud on Lily Cates and the Testifying GFRDA Investors.  As to those

claims, the Commission is entitled to summary judgment.

**B.**   **The Individual Defendants' Convictions Bar Them From Relitigating Their Liability for Securities Fraud and Aiding and Abetting Investment Adviser Fraud**

The Second Amended Complaint alleges that Vilar and Tanaka violated Section 17(a) of

the Securities Act, Section 10(b) of the Exchange Act and Rule 10b-5, and aided and abetted

violations of Sections 206(1) and (2) of the Advisers Act in connection with their fraud on Lily

Cates and the Testifying GFRDA Investors, among others.  (SMF ¶ 4)

The Third Superseding Indictment charged the Individual Defendants with violations of

Section 10(b) of the Exchange Act and Rule 10b-5 in connection with the fraud on Lily Cates

(count 2) and the fraud on the Testifying GFRDA Investors (count 3); and violations of Section

206 of the Advisers Act in connection with the fraud on Lily Cates (count four).  (SMF ¶ 4)  The

Third Superseding Indictment also charged the Individual Defendants with conspiracy to commit

securities fraud, investment adviser fraud, mail fraud, wire fraud, and money laundering (count

one).  (SMF ¶ 5)  The Commission's claims are based on substantially the same set of facts

alleged in the Third Superseding Indictment.  (SMF ¶¶ 3-4; 11-19)

On November 19, 2008, Vilar was convicted on all twelve counts of the Third

Superseding Indictment, and Tanaka was convicted on counts one (conspiracy), three (securities

fraud on the Testifying GFRDA Investors) and four (investment adviser fraud on Lily Cates).

1.   The Individual Defendants' Convictions Collaterally
Estop Them from Contesting Liability as to the Commission's Fraud Charges

The doctrine of collateral estoppel precludes the Individual Defendants from disputing

the facts that formed the basis for their criminal convictions.  It is settled law that once an issue

of law or fact necessary to a judgment has been decided, the doctrine of collateral estoppel

precludes "relitigation of [that same issue] in a suit on a different cause of action involving a party to the first case." *Burgos v. Hopkins*, 14 F.3d 787, 789 (2d Cir. 1994) (internal citations and quotations omitted).

Collateral estoppel is appropriate when (1) the issues in both proceedings are identical; (2) the issue in the prior proceeding was actually litigated and actually decided; (3) there was a full and fair opportunity for litigation in the prior proceeding; and (4) the issue previously litigated was necessary to the judgment. *Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 44 (2d Cir. 1986). "It is well-settled that a criminal conviction, whether by a jury verdict or guilty plea, constitutes estoppel in favor of the United States in a subsequent civil proceeding as to those matters determined by the judgment in the criminal case." *United States v. Podell*, 572 F.2d 31, 35 (2d Cir. 1978). Where, as here, a motion for partial summary judgment is based on a defendant's prior criminal conviction, the facts underlying the conviction may be given preclusive effect. *SEC v. Freeman*, 290 F. Supp. 2d 401, 404-405 (S.D.N.Y. 2003).

The fact that Vilar's and Tanaka's convictions are on appeal does not preclude the application of collateral estoppel here. *United States v. Int'l Brotherhood of Teamsters, Chauffers, Warehousemen and Helpers of Am.,* 905 F.2d 610, 621 (2d Cir 1990) ("the pendency of a criminal appeal generally does not deprive a judgment of its preclusive effect"). *See also SEC v. Tzolov*, 2011 WL 308274 at *4 n. 26 (S.D.N.Y., Jan. 26, 2011) (same).

As set forth below, Vilar's conviction on all counts and Tanaka's conviction on counts one, three and four -- and the elements of each such count, as to which the jury found the Individual Defendants guilty beyond a reasonable doubt -- along with the undisputed evidence regarding the location of the underlying securities transactions, are sufficient to establish the requisite elements of the same securities laws violations alleged against the Individual

6

Defendants.  Accordingly, the Individual Defendants are estopped from challenging their liability for such violations.

      2.      <u>The Offenses Alleged in the Second Amended Complaint</u>

The Second Amended Complaint alleges that*, inter alia*, Vilar and Tanaka violated Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act and Rule 10b-5, and aided and abetted violations of Sections 206(1) and (2) of the Advisers Act in connection with the fraud on Lily Cates and on the Testifying GFRDA Investors.

Section 10(b) of the Exchange Act and Rule 10b-5 prohibit fraudulent conduct in connection with the purchase or sale of a security.  15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5.  In order to establish a violation of Section 10(b) and Rule 10b-5, the Commission must show that the defendant, (1) acting with the requisite scienter, (2) made material misrepresentations or omissions or engaged in a manipulative practice, such as a scheme to defraud, (3) in connection with the purchase or sale of a security, (4) by use of an instrumentality of interstate commerce, such as the mails or wires.  *SEC v. Monarch Funding Corp.*, 192 F.3d 295, 308 (2d Cir. 1999) (citing *SEC v. First Jersey Secs., Inc.*, 101 F.3d 1450, 1467 (2d Cir. 1996)).  *See also SEC v. Shehyn*, 2010 WL 3290977 at *3 (S.D.N.Y., Aug. 9, 2010) ("The elements of a Section 10(b) and Rule10b-5 violation are well established.  Plaintiff must show: (1) there was an untrue statement of fact or an omission of fact; (2) the exclusion or misrepresentation is material; (3) the exclusion or misrepresentation is made with scienter; (4) the exclusion or misrepresentation is made with relation to interstate commerce or the mail system; and (5) the exclusion or misrepresentation is made in relation to the purchase or sale of securities."); *Tzolov*, 2011 WL 308274 at *2 (same).

Section 17(a) of the Securities Act prohibits fraud in connection with the offer or sale of a security.  15 U.S.C. § 77q.  The elements of a violation of Section 17(a) of the Securities Act in

connection with the offer or sale of a security are identical to the elements of a Section 10(b)

violation with respect to a purchase or sale of a security.  *First Jersey Secs.,* 101 F.3d at 1466

("With respect to § 17(a)(1), essentially the same elements must be established in connection

with the offer or sale of a security."); *Tzolov,* 2011 WL 308274 at *2  ("the elements necessary to

establish civil liability under Section 17(a) and 10(b) are identical to those necessary to establish

criminal liability under Section 10(b)"); *SEC v. Haligiannis*, 470 F. Supp. 2d 373, 381 (S.D.N.Y

2007) (same).

     The elements of investment adviser fraud under Advisers Act Sections 206(1) and (2) are

similar to the elements of securities fraud under Section 10(b) of the Exchange Act and Section

17(a) of the Securities Act, with two variations.  First, investment adviser fraud need not be in

connection with the offer, sale or purchase of a security.  *SEC v. K.W. Brown & Co.*, 555 F.

Supp. 2d 1275, 1308 (S.D. Fla. 2008).  Second, investment adviser fraud requires proof that the

illicit conduct be carried out by an investment adviser towards a client or prospective client.

*SEC v. Trabulse*, 526 F. Supp. 2d 1008, 1014 n.6 (N.D. Cal. 2007).

          3.     The Court's Jury Charge in the Criminal Case

     The Court's jury instructions on the Exchange Act Section 10(b), Rule 10b-5, and

Advisers Act Section 206 counts in the Third Superseding Indictment are identical to the

elements required to be established for liability in this case.  The Court instructed the jury on the

Section 10(b) and Rule 10b-5 claims as follows:

          First, that in connection with the purchase or sale of the limited
     partnership interest in the Amerindo SBIC Venture Fund L.P., that's for count
     two, and then in connection with the purchase and sale of notes in the form of the
     Amerindo Guaranteed Fixed Rate Deposit account, that's count three, the
     defendant you are considering did any one or more of the following:  one,
     employed a device, scheme or artifice to defraud; or two, made an untrue
     statement of material fact or omitted to state a material fact which made what was
     said under the circumstances misleading; or three, engaged in an act, practice or

8

course of business that operated or would operate as a fraud or deceit upon a purchaser or seller.. . .   The second element is that the defendant being considered acted knowingly, willfully and with the intent to defraud.  And the third element is that the defendant you are considering knowingly used or caused to be used any means or instruments of transportation or communication in interstate commerce or the use of the mails in furtherance of the fraudulent conduct.

(SMF ¶ 9, Ex. C at pp. 5573-5588, 5611-15)

The Court then instructed the jury on the Section 206 Adviser Act claim as follows:

First, that the defendant you are considering was an investment adviser; second, that the defendant you are considering either, A, employed a device, scheme or artifice to defraud client [sic], prospective clients in Amerindo Investment Advisors and its affiliated entities; B, engaged in a transaction, practice or course of business which operated as a fraud and deceit upon those clients and prospective clients; or C, engaged in an act practice and course of business that was fraudulent, deceptive and manipulative; third, the third element is that the defendant you are considering devised or participated in such alleged device, scheme or artifice to defraud, or engaged in such alleged transaction, practice or course of business knowingly, willfully and with the intent to defraud.
And fourth, the fourth essential element, is that the defendant you are considering employed such alleged device, scheme or artifice to defraud or engaged in such alleged transaction, practice or course of business by use of the mails or other instrumentality of interstate commerce."

 (SMF ¶ 9, Ex. C at 5581-88, 5611-15)

On November 19, 2008, the jury in the Criminal Case found Vilar guilty on all counts of

the Third Superseding Indictment and found Tanaka guilty on counts one (conspiracy to commit

securities fraud, investment adviser fraud, mail fraud, wire fraud and money laundering); three

(securities fraud on the Testifying GFRDA Investors); and four (investment adviser fraud on Lily

Cates).  Vilar and Tanaka were sentenced and criminal judgments of conviction were entered

against them on February 5, 2010.  (SMF ¶ 10)[4]

---

[4]      The Second Amended Complaint charges the Individual Defendants with aiding and abetting violations of Sections 206(1) and (2) of the Advisers Act and not with "direct" violations of these provisions.  Based on the jury charge in the Criminal Case, it is clear that the
(Cont.)

4.      The Securities Transactions Occurred in the United States

In 2012, after the Individual Defendants were convicted, the Supreme Court decided

*Morrison v. National Australia Bank Ltd.,* 130 S. Ct. 2869 (2010).  In *Morrison*, the Supreme

Court held that, in civil cases, Section 10(b) of the Exchange Act applies only to securities

purchased or sold in the United States or securities listed on a national exchange.  *Id.* at 2886.

 In *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60 (2d Cir. 2012), the Second

Circuit held "that transactions involving securities that are not traded on a domestic exchange are

domestic if irrevocable liability is incurred or title passes within the United States."  *Id.* at 66.

The Second Circuit elaborated that "in order to adequately allege the existence of a domestic

transaction, it is sufficient for a plaintiff to allege facts leading to the plausible inference that . . .

the purchaser incurred irrevocable liability within the United States to take and pay for a

security, or that the seller incurred irrevocable liability within the United States to deliver a

security."  *Id.* at 68.   *See also SEC v. Gruss*, 2012 WL 1659142 at *11-13 (S.D.N.Y., May 9,

2012) (holding that *Morrison* did not apply to claims under Section 206 of the Advisers Act, but,

that even if it did, fact that all "exchanges of money" occurred in the United States was a factor

indicating that securities transactions were domestic).[5]

---

jury found that the Individual Defendants engaged in the securities fraud and the investment
adviser fraud "knowingly, willfully, and with the intent to defraud."  (Ex. C at 5562-63, 5577-80,
5587)  This finding supports the application of collateral estoppel on the Commission's aiding
and abetting charges under Sections 206(1) and (2) of the Advisers Act.  *See, e.g.*, *SEC v. Cedric
Kushner Promotions, Inc.*, 417 F. Supp. 2d 326, 334-35 (S.D.N.Y.  2006) (stating that aiding and
abetting liability may require showing of actual knowledge of the primary violation rather than a
showing of recklessness).

[5]      Because the Advisers Act focuses on the adviser and not on the underlying securities
transactions or the location of the client, *Morrison* does not apply to Adviser Act fraud.  *SEC v.
ICP Asset Mgt, LLC,* 2012 WL 2359830 at *3 (S.D.N.Y., June 21, 2012); *Gruss*, 2012 WL
1659142 at *8-11.

Although principles of collateral estoppel do not preclude the Individual Defendants from contesting the location of the underlying securities transactions for purposes of the Section 10(b) and Rule 10b-5 charges because that issue was not decided in the Criminal Case, the sworn testimony and evidentiary record from the trial in the Criminal Case, as well as the Meixner Declaration, confirm that the securities transactions underlying the fraud on Lily Cates and the Testifying GFRDA Investors were domestic transactions.  As discussed fully in the SMF, each of the investors made their investment decision while in the United States and executed the documents necessary to consummate the investment in the United States.  (SMF ¶¶ 20-25)[6] There is no evidence in the trial record that would lead a rational trier of fact to reach any contrary conclusion.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-51 (1986) (party opposing motion for summary judgment must present evidence that is "significantly probative" to defeat summary judgment).   Accordingly, based on Vilar's and Tanaka's criminal convictions and the overwhelming evidence that the underlying securities transactions were domestic transactions, the SEC is entitled to summary judgment on the issue of Vilar's and Tanaka's liability for violating Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act and Rule 10b-5, and aiding and abetting violations of Sections 206(1) and (2) of the Advisers Act.

---

[6]     The Court may take judicial notice of the prior sworn testimony and exhibits introduced in the Criminal Case for purposes of this motion for partial summary judgment.  *St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1171-72 (10th Cir. 1979) ("[A] district court may utilize the doctrines underlying judicial notice in hearing a motion for summary judgment substantially as they would be utilized at trial.  Thus, a court may: consider stipulations, concessions of counsel,  transcripts, exhibits and other papers; take judicial notice, whether requested or not of its own records and files, and facts which are part of its public records.  Judicial notice is particularly applicable to the court's own records of prior litigation closely related to the case before it.") (internal citations and quotations omitted).  *See also Kraft Gen'l Foods v. Cattell*, 18 F. Supp. 2d 280, 284 (S.D.N.Y. 1998) ("Sworn testimony from another trial is admissible on a motion for summary judgment").

C.    **The Individual Defendants' Violations of the Securities Laws Warrant the Relief Requested**

      1.    Disgorgement and Prejudgment Interest

Disgorgement is an equitable remedy for violations of the federal securities laws that, unlike damages, is aimed at "'forcing a defendant to give up the amount by which he was unjustly enriched.'"  *SEC v. Tome*, 833 F.2d 1086, 1096 (2d Cir. 1987).

The appropriate amount of disgorgement here is $12,361,500.  (SMF ¶ 29)   The disgorgement amount is equal to the proceeds raised by the Individual Defendants from Lily Cates and the Testifying GFRDA Investors.  Joint and several disgorgement equal to the proceeds of the fraud obtained by the Individual Defendants from Lily Cates and the Testifying GFRDA Investors is appropriate under the theory that the Individual Defendants' ill gotten gain is roughly equal to the amount of money taken from the named investors and controlled by the Individual Defendants.  *See, e.g.*, *SEC v. Patel*, 61 F.3d 137, 139 (2d Cir. 1995) ("Disgorgement need only be a reasonable approximation of profits causally connected to the violation.").  Moreover, "any risk of uncertainty in calculating disgorgement should fall on the wrongdoer whose illegal conduct created that uncertainty."  *Id.* at 140 (internal quotations and citations omitted).[7]

Although Tanaka was acquitted of one count of securities fraud on Lily Cates, he was convicted of securities fraud on the Testifying GFRDA Investors and investment adviser fraud on Lily Cates, which were both objects of the single 19-year conspiracy for which he was also convicted.  There can thus be no dispute that Tanaka was an active participant in the overall scheme to defraud.  Accordingly, Tanaka is liable jointly and severally with Vilar for

---

[7]    For example, Tanaka admitted at his sentencing that Amerindo's documentation was "lax."  (SMF ¶ 37; Ex. G at 139-140)

disgorgement of the full $12,361,500 stolen from Lily Cates and the Testifying GFRDA

Investors.  *See SEC v. Calvo*, 378 F.3d 1211, 1215-16 (11th Cir. 2004) ("[J]oint and several

liability is appropriate in securities laws cases where two or more individuals or entities have

close relationships in engaging in illegal conduct.  This holds true even where one defendant is

more culpable than the other.") (internal citations omitted).

   The Commission also seeks the imposition of prejudgment interest in this case.

Requiring a defendant to pay prejudgment interest serves to "prevent[] a defendant from

obtaining the benefit of what amounts to an interest free loan procured as a result of illegal

activity."  *SEC v. Moran*, 944 F. Supp. 286, 295 (S.D.N.Y. 1996).  The Commission seeks

prejudgment interest in the amount of $8,094,174, calculated using the Internal Revenue Service

rate of interest on tax underpayments and refunds from the date the Individual Defendants'

fraudulently obtained the investments from Lily Cates and the Testifying GFRDA Investors

through the date on which the Court imposed a post-conviction restraining order on the

Individual Defendants' assets (October 26, 2009).  *First Jersey Secs.*, 101 F.3d at 1476.

(SMF ¶ 30)

      2.   <u>Injunctive Relief</u>

   Because of their violations of the antifraud provisions of the federal securities laws, the

Court should permanently enjoin Vilar and Tanaka from future violations of Section 17(a) of the

Securities Act, Section 10(b) of the Exchange Act, and Sections 206(1) and (2) of the Advisers

Act.  Section 20(b) of the Securities Act [15 U.S.C. § 77t(b)], Section 21(d)(1) of the Exchange

Act [15 U.S.C. § 78u(d)(1)], and Section 209 of the Advisers Act [15 U.S.C. § 80b-9] entitle the

Commission to obtain permanent injunctive relief upon a showing that the defendant has violated

the securities laws and there is a reasonable likelihood that the defendant will violate the

securities laws in the future.  *SEC v. Gabelli*, 653 F.3d 49, 61 (2d Cir. 2011).  In considering

whether there is a reasonable likelihood that a defendant will commit future violations, courts in

the Second Circuit weigh various factors, including: (1) the fact that the defendant has been

found liable for illegal conduct; (2) the degree of scienter involved; (3) the isolated or repeated

nature of the violations; and (4) the sincerity of the defendant's assurances against future

violations.  *SEC v. Cavanagh*, 155 F.3d 129, 135 (2d Cir. 1998).

   Application of these factors to the present action establish that the Individual Defendants

should be enjoined.  The serious nature and flagrancy of their conduct is demonstrated by their

criminal convictions.  Vilar and Tanaka were each convicted of knowingly and willfully

violating the federal securities law, crimes which showed a high degree of scienter.  Moreover,

their conspiracy to defraud spanned approximately 19 years.  The Court acknowledged the

seriousness of the crimes both at the sentencing hearing and when entering forfeiture orders

against the Individual Defendants.  (SMF ¶ 28; Ex. G at 64 (Court noted at sentencing that

investors whose trust was abused were people "who were more vulnerable," "who didn't have

the ability to push back," "and who were pushed around and taken advantage of."); SMF ¶ 31;

Ex. F18-F21 (Court found in its April 7, 2010 Memorandum regarding forfeiture that "the

'essence of the crime' supports a substantial forfeiture award" in light of the fact that "the crimes

at issue had actual, identifiable victims"; that "[the] Defendants were found guilty of plotting the

entire scheme"; and "[t]he conduct for which Defendants were convicted was exceedingly

serious" as the "Defendants violated the trust that was placed in them")).

   Moreover, neither defendant has accepted any personal responsibility or shown any

remorse for his misconduct.  Both were convicted following trial in the Criminal Case and

continue to litigate and contest the same charges in this action even though it is based on

substantially the same facts for which they were found guilty under a much higher standard of proof.[8]  Both denied criminal responsibility for their actions at sentencing.  (SMF ¶¶ 36-37, Ex. G at 58-60; 136-140 (Vilar blamed Tanaka and a "major blow up" in the equity market for the investor losses and Tanaka blamed the "laxness in our documentation" as the primary reason the firm got into trouble and indicated that Amerindo's "private clients" were victimized because their funds were "tied up" for the five years pending the trial.))

Incredibly, to this day, both Vilar and Tanaka continue to deny criminal responsibility for their actions.  Although having been previously convicted of all twelve counts in the Third Superseding Indictment, Vilar answered the Commission's First Amended Complaint by denying, or effectively denying, all of the allegations therein.  (SMF ¶ 38; Ex. I)

In a January 5, 2012 letter to the Court, Tanaka reiterated his belief that his and Vilar's actions were not "fraudulent," that Amerindo's private clients suffered no losses, and that he was confident that most of Amerindo's private clients would "attest to [his and Vilar's] professional integrity" and would not hold him or Vilar accountable for the delay in their payment.  (SMF ¶¶ 39-40)  Tanaka also appears to have attempted to pit one set of investors against another by sharing with a journalist and another investor an email expressing his contempt for the Mayers, the largest GFRDA investor.  (SMF ¶ 48; Ex. N)

The Individual Defendants' convictions for fraudulent conduct perpetrated over many years, as well as their failure to appreciate the seriousness of their conduct or show any remorse for their actions, suggests that they very well may repeat their violations in the future.  Accordingly, there is ample justification for the Court to enjoin the Individual Defendants from

---

[8]     *Tzolov* 2011 WL 308274 at *5 (Court found that defendant lacked remorse "as evidenced by his conduct in this litigation including his almost frivolous opposition to the instant motion").

future violations of the federal securities laws.  *See Haligiannis*, 470 F. Supp. 2d at 384; *Tzolov*, 2011 WL 308274 at *5.

        3.    <u>Civil Penalties</u>

Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)], Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)], and Section 209 of the Advisers Act [15 U.S.C. § 80b-9] authorize the district courts to assess civil penalties against persons who violate the Securities Act, the Exchange Act, or the Advisers Act, respectively.  The statutes state that the amount of the penalty shall be determined by the Court "in light of the facts and circumstances."

The relevant statutes provide that the third tier of penalties for a natural person for each violation shall not exceed the greater of $120,000 *or* the gross amount of pecuniary gain to that person.  A third tier penalty requires that the violation "involve[] fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement" and that "such violation directly or indirectly result[] in substantial losses or create[] a significant risk of substantial losses to other persons." 15 U.S.C. §§ 77t(d), 78u(d), and 80b-9.

The purpose of civil penalties is "to punish the individual violator and deter future violations of the securities laws." *Haligiannis*, 470 F. Supp. 2d at 386 (imposing $15 million penalty equal to amount of defendant's ill-gotten gain).  The factors a court looks to in order to determine whether a penalty should be imposed and the amount of the penalty include: (1) the egregiousness of the defendant's conduct; (2) the degree of defendant's scienter; (3) whether the defendant's conduct created substantial losses or the risk of substantial losses to other persons; (4) whether the defendant's conduct was isolated or recurrent; and (5) the defendant's financial condition.  *Id.  See also SEC v. Coates*, 137 F. Supp. 2d 413, 429 (S.D.N.Y. 2001).

Here, the Court has already imposed forfeiture judgments against Vilar and Tanaka in the amount of $54,351,159 (SMF ¶ 32; Ex. F22-F35).  However, the Court also determined that it had entered the forfeiture judgments in error and it had intended only to enter forfeiture judgments in a much lower amount.  (SMF ¶ 33; Ex. F36-F37)  In the event the Court modifies the forfeiture judgments to the lower amount, the Commission respectfully requests that the Court order each of Vilar and Tanaka to pay a civil penalty equal to the amount of ill-gotten gain they shared as a result of their fraudulent conduct, or $12,361,500.  As discussed in the prior section regarding the appropriateness of injunctive relief, factors one through four compel the conclusion that a substantial civil penalty is appropriate in this case.[9]

Finally, the Individual Defendants have the financial ability to pay a civil penalty in this case.  Although, in the SEC staff's view, all of the assets held in accounts in the name of Amerindo clients belong to the clients and not to Vilar or Tanaka, Vilar and Tanaka have asserted an interest in those accounts, whose cash assets have been valued by the SDNY at approximately $26,128,309,

---

[9]     The victims in this case continue to suffer a loss by the Individual Defendants' post-conviction conduct.  Despite Vilar's and Tanaka's apparent representations to the Court at their sentencings that they would agree to the forfeiture of the assets identified by the Government for the benefit of all of their investors, they have steadfastly refused to allow a distribution to investors pending resolution of their criminal appeals, except on condition that the distribution be limited to certain assets and involve a global release of liability.  (SMF ¶¶ 42, 45; Exs. F39; J19-J28;  L)  In his appellate brief, Vilar admitted that the investors were the beneficiaries of a constructive trust with an interest superior to his in the substitute assets forfeited in the Criminal Case.  (SMF ¶ 43; Ex. K at 205)  Ms. Shevitz, counsel to Vilar in the Criminal Case and counsel to Tanaka in this case, admitted that the Amerindo client accounts subject to forfeiture are commingled accounts containing both GFRDA and ATGF funds.  (SMF ¶ 44; Ex. J12)  Nonetheless, Tanaka, through his counsel, is now seeking to limit GFRDA, ATGF and ATGFII investor claims by advancing the absurd position that he is entitled to some inchoate management fees and performance fees from the assets held in the name of ATGF and ATGFII even though he filed a sworn statement in New York Supreme Court in mid-2002 stating that "[s]ince at least 1990, ATGF has not charged its shareholders an 'incentive' or 'performance' fee."  (SMF ¶ 47; Ex. M)  Vilar and Tanaka will apparently say anything to advance their agenda without any regard to their victims.

not including unpriced securities.  They have also asserted an interest in an account in the name of the Trustees of the Amerindo Investment Advisors (UK) Ltd. Retirement Benefits Scheme, which the SDNY has valued at roughly $14 million.  In the event the Court modifies the amount of the forfeiture judgments and determines that Vilar and Tanaka have a personal interest in the various accounts subject to the post-conviction restraining order, then they would certainly have ample funds available to pay any civil penalty assessed in this case.

There is also no bar to the imposition of disgorgement and a substantial civil penalty on the Individual Defendants in addition to the criminal fine, restitution and forfeiture imposed on them in the Criminal Case.  *See SEC v. Palmisano*, 135 F.3d 860, 866-67 (2d Cir. 1998) (no violation of Double Jeopardy where court imposed disgorgement and civil money penalty on defendant who was sentenced to prison term and ordered to pay restitution and forfeiture in prior criminal action so long as defendant's disgorgement judgment was credited by amount of restitution payments in criminal action).  *See also SEC v. Rajaratnam*, 822 F. Supp. 2d 432, 435 (S.D.N.Y.  2011) (court imposed civil money penalty of approximately $93 million that could not be offset against $53.8 million forfeiture judgment or $10 million fine imposed on defendant in prior criminal action).

## <u>CONCLUSION</u>

For the reasons set forth above, the Commission's motion for partial summary judgment should be granted in its entirety.

Dated: New York, New York
        August 3, 2012

                                        Respectfully submitted,


                                        /s/ Neal Jacobson
                                        By:  Neal Jacobson
                                             Mark D. Salzberg
                                        Securities and Exchange Commission
                                        New York Regional Office
                                        3 World Financial Center, Suite 400
                                        New York, New York  10281
                                        Telephone: (212) 336-0095
                                        Facsimile:  (212) 336-1324
                                        Email: Jacobsonn@sec.gov

Of Counsel:
Alistaire Bambach