UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SECURITIES AND EXCHANGE COMMISSION,

            Plaintiff,

            v.

AMERINDO INVESTMENT ADVISORS INC.,
AMERINDO INVESTMENT ADVISORS, INC.,
AMERINDO ADVISORS UK LIMITED,
AMERINDO MANAGEMENT INC.,
AMERINDO TECHNOLOGY GROWTH FUND, INC.,
AMERINDO TECHNOLOGY GROWTH FUND II, INC.,
TECHNO RAQUIA, S.A.,
ALBERTO W. VILAR, and
GARY ALAN TANAKA,
            Defendants.

05 Civ. 5231 (RJS)

ECF CASE

---

**MEMORANDUM OF PLAINTIFF SECURITIES AND EXCHANGE COMMISSION
IN OPPOSITION TO MOTION BY DEFENDANTS ALBERTO W. VILAR AND GARY
ALAN TANAKA TO DISMISS THE SECOND AMENDED COMPLAINT**

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................... iii

PRELIMINARY STATEMENT ..............................................................................................1

THERE IS NO BASIS TO DISMISS THE SECOND AMENDED COMPLAINT .......................2

    1.   The Court Properly Permitted the Filing of the Second Amended Complaint ......................2
    2.   The Second Amended Complaint Relates Back to the Amended Complaint .......................3
    3.   The Second Amended Complaint Sufficiently Alleges Fraud With Respect to the
         ATGF and ATGF II Offerings ..........................................................................................5
    4.   The Second Amended Complaint Alleges Domestic Securities Transactions ......................6
    5.   The Commission's Action Does Not Violate the Individual Defendants'
         Constitutional Rights and the Remedies the Commission Seeks are Appropriate ...............7
    6.   The Individual Defendants' Other Arguments are Frivolous................................................8

CONCLUSION....................................................................................................................... 10

# **TABLE OF AUTHORITIES**

**Page**

**Cases**

*Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60 (2d Cir. 2012) ........................... 6

*AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699 (2d Cir. 2010) .......... 2, 3

*Ansam Assocs., Inc. v. Cola Petroleum, Ltd.*, 760 F.2d 442 (2d Cir. 1985) .................................... 3

*Forest Park Pictures v. Universal Television Network, Inc.*, 683 F.3d 424 (2d Cir. 2012) ............................................................................................................................................. 6

*Goldstein v. SEC*, 451 F.3d 873 (D.C. Cir. 2006) ..................................................................... 9, 10

*Morrison v. National Australia Bank Ltd.*, 130 S. Ct. 2869 (2010) ........................................... 2, 6

*Official Committee of Unsecured Creditors of WorldCom, Inc. v. SEC*, 467 F.3d 73 (2d Cir. 2005) ..................................................................................................................................... 8

*SEC v. Gabelli*, 653 F.3d 49 (2d Cir. 2011) .................................................................................... 5

*SEC v. Smart*, 678 F.3d 850 (10th Cir. 2012) ................................................................................. 5

*SEC v. Levine,* 671 F. Supp. 2d 14 (D.D.C. 2009) ......................................................................... 6

*SEC v. Williams*, 884 F. Supp. 28 (D. Mass. 1995) ....................................................................... 5

*SEC v. Gruss*, 2012 WL 1659142 (S.D.N.Y., May 9, 2012) ........................................................ 10

*Slayton v. American Express Co.*, 460 F. 3d 215 (2d Cir. 2006) .................................................... 4

**Federal Statutes**

15 U.S.C. § 77q(a) .......................................................................................................................... 5

15 U.S.C. § 78j(b) ........................................................................................................................... 5

15 U.S.C. § 80b-6 ........................................................................................................................... 9

**Code of Federal Regulations**

17 C.F.R. § 275.206(4)-2(a) ........................................................................................................ 8, 9

**Federal Rules of Civil Procedure**

Fed. R. Civ. P. 15 ........................................................................................................................ 2, 3

Plaintiff Securities and Exchange Commission (the "Commission") respectfully submits this memorandum in opposition to the joint motion filed by defendants Alberto W. Vilar ("Vilar") and Gary Alan Tanaka ("Tanaka" and, together with Vilar, the "Individual Defendants") to dismiss the Commission's Second Amended Complaint.

## PRELIMINARY STATEMENT

In her Memorandum in Support of Motion to Dismiss the Second Amended Complaint ("Dismissal Memorandum"), Ms. Shevitz, counsel to Tanaka in this case and to Vilar in the Criminal Action[1], angrily attacks the Commission and the "Government" but fails to demonstrate any legally cognizable basis for dismissal of the Second Amended Complaint. Ms. Shevitz utterly ignores the fact that the Individual Defendants have already been convicted by a jury of most of the conduct alleged in the Amended Complaint and the Second Amended Complaint – namely, defrauding Lily Cates and the Testifying GFRDA Investors. Although it is difficult to clearly discern Ms. Shevitz's arguments, it appears that she asserts the following unsupported bases for dismissal of the Second Amended Complaint: that (1) the Court abused its discretion by permitting the filing of the Second Amended Complaint (Dismissal Mem. at 11-13); (2) the Second Amended Complaint contains "new" claims that do not state a claim for fraud with respect to the ATGF and ATGF II investors, do not relate back to the Amended Complaint, and are barred by the statute of limitations (Dismissal Mem. at 8-10; 13-18; 30-31); (3) the Second Amended Complaint fails to allege domestic securities transactions and should be

---

[1] Capitalized terms not otherwise defined herein have the meanings ascribed to them in Plaintiff Securities and Exchange Commission's Memorandum of Law in Support of its Motion for Partial Summary Judgment Against Defendants Alberto W. Vilar and Gary Alan Tanaka (the "Summary Judgment Memorandum").

dismissed under the rationale of the Supreme Court's decision in *Morrison v. National Australia Bank Ltd.*, 130 S. Ct 2869 (2010) (Dismissal Mem. at 2-7); (4) the Commission is violating the Individual Defendants' Fifth and Eighth Amendment rights by prosecuting this case (Dismissal Mem. at 18-23); and (5) the Commission is not entitled to penalties, disgorgement or injunctive relief in this case (Dismissal Mem. at 23-31).  The Commission staff will address each of these arguments below.

## THERE IS NO BASIS TO DISMISS THE SECOND AMENDED COMPLAINT

1. <u>The Court Properly Permitted the Filing of the Second Amended Complaint.</u>

Federal Rule of Civil Procedure 15(a)(2) provides that "the Court should freely give leave [to amend a complaint] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  The Rule in the Second Circuit "has been to allow a party to amend its pleadings in the absence of a *showing by the nonmovant* of prejudice or bad faith."  *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 725 (2d Cir. 2010) (emphasis added).  Here, there can be no reasonable claim of bad faith on the part of the Commission staff or prejudice to the Individual Defendants by allowing the Commission to file the Second Amended Complaint.  Discovery was stayed in this case on December 13, 2005, shortly after the Commission filed its Amended Complaint, and the stay was not lifted fully until July 15, 2010.  After the stay was lifted, the parties conducted minimal discovery from financial institutions and engaged in settlement discussions.  No depositions have been taken and no trial date has been set.  In fact, despite being ordered to do so by Judge Swain, Tanaka never even answered the Amended Complaint [Docket # 146].  Moreover, as discussed further below, the Second Amended Complaint does not raise any new claims.  It merely provides additional factual detail to claims previously asserted in the Amended Complaint that the Individual Defendants have had notice of since November 17, 2005.  [Docket

#44]  Vilar and Tanaka have not articulated how they would be prejudiced by allowing the Commission to amend its prior pleading under these circumstances beyond complaining that there are too many new words in the Second Amended Complaint.[2]  The cases cited by Ms. Shevitz at pages 11 and 12 of the Dismissal Memorandum are wholly distinguishable from this case.  *See  AEP Energy Servs.*, 626 F.3d at 726-27 (no leave to amend to add new claim after discovery had been completed and cross-motions for summary judgment consisting of thousands of pages had been filed); *Ansam Assocs., Inc. v. Cola Petroleum, Ltd.*, 760 F.2d 442, 446 (2d Cir. 1985) (no leave to amend to add new claim "alleg[ing] an entirely new set of operative facts" after discovery had been completed and summary judgment motion had been filed).

   2.  <u>The Second Amended Complaint Relates Back to the Amended Complaint.</u>

Under Fed. R. Civ. P. 15(c)(1)(B), an amended pleading relates back to the original pleading when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading."  Fed. R. Civ. P. 15(c)(1)(B).  "Under Rule 15, the central inquiry is whether adequate notice of the matters raised in the amended pleading has been given to the opposing party within the statute of limitations by the general fact situation alleged in the original pleading.  Where the amended complaint does not allege a new claim but renders prior allegations more definite and precise, relation back occurs."  *Slayton v. American Express Co.*, 460 F. 3d 215, 228 (2d Cir. 2006) (internal citations and quotations omitted).

---

[2]  At pages 12-13 of the Dismissal Memorandum, Ms. Shevitz states that the Individual Defendants are "not going into the many new words inserted in this new version of an Amended Complaint" and that "ALL the supposedly 'new claims' are untimely" without ever identifying the "new claims."  As discussed further below, there are no new claims in the Second Amended Complaint.  In addition, the Second Amended Complaint actually contains approximately 4,000 fewer words than the Amended Complaint.

Notwithstanding Ms. Shevitz's unsupported assertions, the allegations in the Second Amended Complaint are not new.  Rather, the Second Amended Complaint merely provides additional detail concerning the allegations set forth in the Commission's Amended Complaint.  For example, the Commission's Amended Complaint [Docket # 44] alleged that Vilar and Tanaka defrauded investors in ATGF and ATGF II by commingling and misusing the funds raised contrary to the representations in the ATGF and ATGF II offering circulars regarding the use of investor funds.  (Amended Complaint at ¶ 4)  The Amended Complaint also set forth detailed instances in which Vilar, Tanaka and others diverted ATGF and ATGF II investor funds to benefit Vilar and Amerindo US, and to pay GFRDA investors (Amended Complaint at ¶¶ 168-186) and it alleged that Vilar and Tanaka used Amerindo US, Amerindo UK, and Amerindo Panama as a "common enterprise" to further their fraud and confuse investors.  (Amended Complaint at ¶¶ 23-26)  The Second Amended Complaint does not allege any new violations by Vilar or Tanaka.  It merely adds factual detail to the existing allegations by identifying specific ATGF and ATGF II victims who were harmed by Vilar's and Tanaka's conduct and by providing additional detail regarding the extent and temporal scope of Vilar's and Tanaka's commingling and diversion of investor funds.  (Jacobson Decl., Ex. A at  ¶¶ 78-84; 88-92; 130-152)[3]

---

[3]  The allegations in the Second Amended Complaint regarding the Lily Cates and GFRDA frauds are also nearly identical to the allegations in the Amended Complaint.

Because the allegations in the Second Amended Complaint relate back to the filing of the Amended Complaint, the statute of limitations does not bar the Commission's claims for penalties in this case.[4]

3. The Second Amended Complaint Sufficiently Alleges Fraud in Connection With the ATGF and ATGF II Offerings.

The Individual Defendants argue that that the Second Amended Complaint "newly alleges" that investors in ATGF and ATGF II were defrauded, but that "commingling" of investor funds is not a fraud. Dismissal Mem. at 8-10. As discussed above, the allegations in the Second Amended Complaint are not new. Moreover, the Second Amended Complaint states clearly that the commingling of ATGF, ATGF II, AMI and GFRDA funds and diversion of the investor funds for purposes not disclosed in the underlying offering documents began as early as 1988 and continued through 2005. (Jacobson Decl., Ex. A at ¶¶ 78; 90-92; 130-152) The fact that Vilar and Tanaka offered ATGF and ATGF II securities without disclosing that they had already commingled and diverted investor funds and continued to do so clearly states a claim for securities fraud under Section 10(b) of the Exchange Act and Section 17(a) of the Securities Act. *See, e.g., SEC v. Smart*, 678 F.3d 850, 857 (10th Cir. 2012) (Commission entitled to summary judgment on fraud counts where, among other things, defendant "told investors their money would be placed in secure investment vehicles like mutual funds, but he then pooled the money into one account and used it to engage in risky financial ventures, make partial payments to other

---

[4] In any event, there is no statute of limitations for the Commission's claims for disgorgement and injunctive relief. *SEC v. Williams*, 884 F. Supp. 28, 30-31 (D. Mass. 1995) (statute of limitations not applicable to Commission's claims for disgorgement or injunctive relief). Moreover, the five-year statute of limitations on the Commission's claim for penalties "does not accrue until th[e] claim is discovered, or could have been discovered with reasonable diligence, by the [Commission]." *SEC v. Gabelli*, 653 F. 3d 49, 59 (2d Cir. 2011). Here, the Commission's Amended Complaint was filed in November 2005, well within any applicable statute of limitations.

investors, and cover his and his wife's personal expenses."); *SEC v. Levine*, 671 F. Supp. 2d 14, 30 (D.D.C. 2009) (defendants "violated § 17(a) and § 10(b) by omitting to disclose that the funds investors sent them would be commingled with funds from investors in other companies, and with general operating funds."). Accepting the Commission's allegations as true for purposes of the motion to dismiss, the Second Amended Complaint clearly sets forth more than a facially plausible claim that the offerings of ATGF and ATGF II securities were fraudulent. *See Forest Park Pictures v. Universal Television Network, Inc.*, 683 F.3d 424, 429 (2d Cir. 2012) (on motion to dismiss pursuant to Rule 12(b)(6), court must accept all factual allegations as true and complaint must allege sufficient facts to state a claim to relief that is plausible on its face).

4. The Second Amended Complaint Alleges Domestic Securities Transactions.

Citing *Morrison v. National Australia Bank Ltd.*, 130 S. Ct 2869 (2010), the Individual Defendants contend that the federal securities laws do not reach the frauds alleged by the Commission because the underlying securities transactions occurred outside of the United States. To support this argument, the Individual Defendants argue that the purported seller of ATGF and GFRDA securities was a Panamanian entity and that the GFRDA investors "described in the SEC complaint purchased purposefully offshore or through entities designed and organized offshore in order to make the purchases." Dismissal Mem. at 2-7. However, as set forth in the Summary Judgment Memorandum, a securities transaction is a domestic transaction if "the purchaser incurred irrevocable liability within the United States to take and pay for a security, *or* . . . the seller incurred irrevocable liability within the United States to deliver a security." (Summary Judgment Mem. at 10, citing *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 68 (2d Cir. 2012) (emphasis added)). The Second Amended Complaint describes in detail how Lily Cates, the Testifying GFRDA Investors, and certain ATGF and ATGF II

6

investors incurred irrevocable liability to purchase the securities in question in the United States. (Ex. A to Jacobson Declaration at ¶¶ 30-32; 98-129; 132-152). The SMF also sets forth in detail the domestic securities transactions underlying the Lily Cates and GFRDA frauds. (SMF at ¶¶ 20-25) The Individual Defendants have offered no competent or relevant evidence to rebut the Commission's proof that the securities transactions underlying the frauds alleged in detail in the Second Amended Complaint were domestic securities transaction.[5]

5. **The Commission's Action Does Not Violate the Individual Defendants' Constitutional Rights and the Remedies the Commission Seeks are Appropriate.**

The Individual Defendants argue that the Commission is violating their Fifth and Eighth Amendment rights by prosecuting this case and that there is no basis for the Court to award disgorgement, prejudgment interest, penalties or injunctive relief. Dismissal Mem. at 18-30. They claim, without any support, that the Commission and the Government "engineered" the case to get a shot at all of the defendants' assets and to make it impossible for them to defend themselves. This is a wholly unsupported assertion. In the Dismissal Memorandum, Ms. Shevitz continues her clients' campaign of denying responsibility for their serious fraud crimes and instead frivolously mischaracterizes the fraud as having "resulted from stalling and not redeeming investments when [Vilar and Tanaka] were strapped for cash and when they asked

---

[5] The Dismissal Memorandum cites to various documents from the criminal trial that purport to show that the Mayers purchased GFRDA securities through offshore entities. Dismissal Mem. at 4. However, even if that were true, the domicile of the purchaser is irrelevant to the determination of whether a transaction is a domestic transaction. *Absolute Activist*, 677 F.3d at 69. The Individual Defendants also cite to an unsigned declaration by Renata Tanaka, Tanaka's wife, that was neither authenticated nor admitted into evidence for the proposition that Tara Colburn purchased her GFRDA security in London. Dismissal Mem. at 5. Finally, they cite to another unauthenticated and unadmitted document to suggest that Robert Cox and Graciela Lecube-Chavez (an 83 year old retiree who entrusted her $74,000 retirement savings to Vilar and who testified at the trial) "were operating offshore." Dismissal Mem. at 5. None of the other investors mentioned at pages 4-5 of the Dismissal Memorandum form the basis for any of the allegations in the Second Amended Complaint.

their longtime friend investors to wait." Dismissal Mem. at 20. Ms. Shevitz also completely ignores the fact that the vast majority of assets that were restrained in this case belong to Amerindo's clients, not to Vilar or Tanaka. (Jacobson Decl., Ex. H (vast majority of accounts subject to post-conviction restraining order are held in accounts in names of Amerindo clients)). Moreover, as set forth at pages 12 to 18 of the Commission's Summary Judgment Memorandum, there is no constitutional bar to the Commission seeking disgorgement, prejudgment interest, penalties and injunctive relief against the Individual Defendants and such remedies are appropriate in this case in light of the factors discussed in detail in the Summary Judgment Memorandum. In any event, the Court has ample discretion to fashion an appropriate civil remedy that can take into account the criminal sanctions imposed on Vilar and Tanaka.[6]

6. <u>The Individual Defendants' Other Arguments are Frivolous.</u>

In addition to the arguments addressed above, the Individual Defendants also contend that the Commission's allegation that Amerindo US violated custody rules is "completely false and is sanctionable." Dismissal Mem. at 17. However, as set forth in the Second Amended Complaint, Amerindo US, a registered investment adviser, managed Lily Cates' investment in the SBIC fund. (Jacobson Decl, Ex. A at ¶ 30) As proved at the criminal trial, Lily Cates' $5 million SBIC investment was diverted almost immediately to benefit Vilar and Amerindo US, and to pay a GFRDA investor, clearly in violation of Rule 206(4)-2(a) under the Advisers Act.[7]

---

[6] The Individual Defendants also argue that it is somehow improper for the Commission to seek to distribute any disgorgement it obtains to defrauded investors. Dismissal Mem. at 26. Although the primary purpose of disgorgement is to deprive wrongdoers of ill-gotten gain, disgorgement serves a secondary goal of compensating victims. *Official Committee of Unsecured Creditors of WorldCom, Inc. v. SEC*, 467 F.3d 73, 81 (2d Cir. 2005).

[7] The Second Amended Complaint also alleges that Vilar and Tanaka managed the Amerindo investment advisory entities interchangeably. It is thus at least an issue of fact
(Cont.)

8

Moreover, the Individual Defendants' contention that "the Monitor's report in this case in 2005 that everything about the U.S. operation was 'right'" is similarly unsupported.  At page 2 of the report [Docket # 48], the Monitor states specifically that he did not even attempt "to investigate and make a factual determination as to whether various individuals who transacted business with certain 'Amerindo' entities should also be considered 'clients' of Amerindo US."  As proved at the criminal trial, Vilar and Tanaka made a habit of defrauding innocent *individual* investors who could not fend for themselves.

The Individual Defendants also cite to *Goldstein v. SEC*, 451 F.3d 873 (D.C. Cir. 2006), apparently for the proposition that the Commission has no authority to investigate and prosecute fraudulent commingling and diversion of client funds by non-registered investment advisers. Dismissal Mem. at 8-9, 14.  The *Goldstein* decision merely held that, for purposes of the Advisers Act, a hedge fund adviser's client is the hedge fund itself, and not the limited partner investors in the fund, and, therefore, a hedge fund adviser with fewer than fifteen hedge fund clients is not required to register as an investment adviser with the Commission. The Second Amended Complaint, however, alleges numerous instances of undisclosed fraudulent commingling and diversion of monies by Amerindo from Lily Cates and GFRDA clients (who were individual clients of Amerindo), as well as diversion of monies from the ATGF and ATGF II funds themselves, to benefit Vilar and Amerindo US and to pay GFRDA investors in violation of Sections 206(1) and 206(2) of the Advisers Act.  (Jacobson Decl., Ex. A at  ¶¶ 45-58; 78-84; 88-92; 98-129)   Nothing in the *Goldstein* decision affects the Commission's ability to prosecute violations of Sections 206(1) and 206(2) of the Advisers Act by unregistered investment

---

whether diversion of $250,000 from Lily Cates' managed account and diversion of GFRDA investor monies also violated Rule 206(4)-2(a) of the Advisers Act.

advisers.  *See, e.g., SEC v. Gruss*, 2012 WL 1659142 at *10 (S.D.N.Y., May 9, 2012) (Section 206 of the Advisers Act "applies to all investment advisers, whether or not such advisers were required to register under . . . the Act.") (citations and internal quotations omitted).

## CONCLUSION

For the reasons set forth above, the Court should deny the Individual Defendants' Motion to Dismiss the Commission's Second Amended Complaint and grant the Commission's motion for partial summary judgment.

Dated: New York, New York
September 14, 2012

                                Respectfully submitted,

                                /s/ Neal Jacobson
                                By:  Neal Jacobson
                                      Mark D. Salzberg
                                Securities and Exchange Commission
                                New York Regional Office
                                3 World Financial Center, Suite 400
                                New York, New York  10281
                                Telephone: (212) 336-0095
                                Facsimile:  (212) 336-1324
                                Email: Jacobsonn@sec.gov

Of Counsel:
Alistaire Bambach