

# LAW OFFICES
# STILLMAN & FRIEDMAN, P.C.

425 PARK AVENUE
NEW YORK, NY 10022
www.stillmanfriedman.com

CHARLES A. STILLMAN
JULIAN W. FRIEDMAN
SCOTT M. HIMES
MARJORIE J. PEERCE
JOHN B. HARRIS
JAMES A. MITCHELL
MICHAEL J. GRUDBERG
NATHANIEL Z. MARMUR
BRIAN COAD

MARY MARGULIS-OHNUMA

NATHANIEL I. KOLODNY
ERIK M. ZISSU
LAURA P. WEXLER

TELEPHONE
(212) 223-0200

FACSIMILE
(212) 223-1942

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/10/2012

VIA HAND DELIVERY

October 5, 2012

Hon. Richard J. Sullivan
United States District Judge
United States Courthouse
500 Pearl Street
New York, NY 10007-1312

Re:  SEC v. Amerindo, 05-cv-5231 (RJS)
     United States v. Vilar and Tanaka, 05-cr 621 (RJS)

Dear Judge Sullivan:

As Your Honor will recall from the extensive prior correspondence in these matters, I represent Paul Marcus, a major investor in Amerindo Technology Growth Fund ("ATGF"), and have also represented other investors in ATGF and Guaranteed Fixed Rate Deposit accounts (collectively, the "Investors").

Although the Investors are obviously not parties in the criminal matter pending before Your Honor, the October 3, 2012 letter to the Court from Vivian Shevitz contains certain statements that are of such great concern to the Investors that I hope Your Honor will consider this letter -- not only in connection with the pending bail request, but also on the much broader issue of the proper disposition of the millions of dollars belonging to the Investors to which they have been deprived of access for more than seven years.

As Your Honor knows, there are millions of dollars of cash and securities now on deposit in various accounts at JPMorgan Chase. The funds in those accounts have been the subject of extensive correspondence to the Court from counsel for various interested parties, including, most recently, letters that I wrote to Your Honor on May 22, May 23, June 4, July 25, and August 3.

My letter of June 4 (a copy of which is enclosed) is of the most relevance here. In that letter, I stated as follows (referring to the letter written to the Court by Ms. Shevitz on May 31):

LAW OFFICES
**STILLMAN & FRIEDMAN, P.C.**

Ms. Shevitz's letter is truly remarkable, both in the scope of what she claims, and in her disregard of everything that has gone on thus far in the above-captioned cases. At the bottom of the fourth page of her letter, Ms. Shevitz claims that "the investors' ownership of the assets in the [JPMorgan Chase] accounts was never conceded by the defendants nor did the [defendants][1] concede that all of the assets in particular accounts were being held in trust for investors, and especially not ATGF investors who had nothing to do with the criminal trial."

Ms. Shevitz has never previously made such a claim, and in fact, Defendants have repeatedly acknowledged the opposite.

My June 4 letter then went on to cite numerous sections of the Appellate briefs filed by Messrs. Vilar and Tanaka stating that the Investors were the beneficial owners of the funds and securities in the JPMorgan Chase accounts, that Messrs. Vilar and Tanaka had no interest in those assets, and that they should be returned to the beneficial owners.

Now, however, Ms. Shevitz has not only contradicted her prior statements, but has gone even further. Thus, in her October 3 letter to Your Honor on the bail issue, she refers to a "$54-million-plus 'bail package'" that "the defendant would lose if they flee...." She goes on to state that this "bail package" includes "$36.7 million to which the government concededly has no valid claim." At a later point, her letter refers to "defendants' assets" being "fully on the line" in the event they flee.

I am not a mind-reader, and I do not know for certain what "$54-million-plus" Ms. Shevitz is referring to. However, it is not difficult to figure this riddle out. As pointed out in my May 22 letter to Your Honor, the assets on deposit in the name of ATGF and affiliated entities at JPMorgan Chase and with other identified custodians were in excess of $30 million plus numerous "unpriced" securities. These assets clearly belong to the Investors in ATGF and the affiliated entities in the names of which the accounts are held.

My May 22 letter also referred to an additional amount of over $17 million held at JPMorgan Chase in the name of the "Amerindo Advisors (UK) Ltd. Retirement Benefits Scheme" and the "Amerindo Investment Advisors Inc. Money Purchase Plan and Trust." My letter went on to state as follows with regard to these assets:

> Because the beneficial owners of the ... accounts cannot be identified with certainty at this point, we believe they should not be included in any interim distribution, and that all claims to the funds and securities in these accounts should be preserved and determined at a later date....

---

[1] The June 4 letter originally used the word "investors" at this point. This was a mistake on my part.

Law Offices<br>
**Stillman & Friedman, p.c.**

The conclusion seems overwhelming that the reference in Ms. Shevitz's October 3 letter to a "'$54-million-plus' 'bail package'" is to the JPMorgan Chase accounts referred to above. In other words, Ms. Shevitz appears to be claiming "credit" for bail purposes to more than $30 million that admittedly does not belong to her clients, and another amount in excess of $17 million as to which the ownership is unclear. While I have no standing -- and no desire -- to become involved in the bail application, I think that it is important to point out the nature and scope of Ms. Shevitz's incorrect statements, since they impact directly on the Investors.

Ms. Shevitz's October 3 letter is simply the latest illustration of how the defendants have continued to disregard the rights of the Investors who are the beneficial owners of the assets in question. I respectfully submit that Ms. Shevitz's indirect claim to these assets makes it even more important than ever for this Court to implement its July 17, 2012 Order stating:

> The Court is prepared at this time to appoint a receiver for the limited purposes of taking steps to value and preserve the seized assets and beginning the process of determining how much is owed to victims and investors.

It is respectfully submitted that there is no reason to allow the assets in question to languish without active management, and to remain vulnerable to possible claims by the defendants (such as Ms. Shevitz's October 3 letter hints at). Rather, I think that a receiver should be appointed and authorized to gather and preserve assets, and to implement a claims process, all as set forth at length in my letter to Your Honor dated May 22, 2012.

Respectfully submitted,

Julian W. Friedman

JWF:cn
Enclosure

cc:  Sharon Levin, Esq. (Sharon.levin@usdoj.gov)
  Benjamin Naftalis, Esq. (Benjamin.naftalis@usdoj.gov)
  Mark D. Salzberg, Esq. (salzbergm@sec.gov)
  Neal Jacobson, Esq. (jacobsonn@sec.gov)
  Vivian Shevitz, Esq. (Vivian@shevitzlaw.com)
  Jane Simkin Smith, Esq. (jssmith1@optonline.net)
  Victoria B. Eiger, Esq. (veiger@lawdea.com)
  David C. Burger, Esq. (dcb@robinsonbrog.com)
  Patrick W. Begos, Esq. (pwb@begoshorgan.com)
  Thomas J. Hall, Esq. (hallt@hallandhalllaw.com)
  Eugene F. Hestres-Velez, Esq. (ehestres@bbh-law.com)
  Mr. Alfred Heitkonig (alfredo@ahfs.biz)
  Mr. Gary Tanaka (*by regular mail*)