UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>        Plaintiff,<br><br>      v.<br><br>AMERINDO INVESTMENT ADVISORS INC.,<br>AMERINDO INVESTMENT ADVISORS, INC.,<br>AMERINDO ADVISORS UK LIMITED,<br>AMERINDO MANAGEMENT INC.,<br>AMERINDO TECHNOLOGY GROWTH FUND, INC.,<br>AMERINDO TECHNOLOGY GROWTH FUND II, INC.,<br>TECHNO RAQUIA, S.A.,<br>ALBERTO W. VILAR, and<br>GARY ALAN TANAKA,<br>        Defendants. | 05 Civ. 5231 (RJS)<br><br>ECF CASE |

**REPLY MEMORANDUM OF PLAINTIFF SECURITIES
AND EXCHANGE COMMISSION IN FURTHER SUPPORT
<u>OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................... iii

    1. The Commission has met the Standard for Partial Summary Judgment ............................... 1
    2. The Securities Transactions Underlying the Convictions Occurred in the United
        States ........................................................................................................................ 2
    3. The Commission is Entitled to the Remedies Requested ...................................................... 4

CONCLUSION ................................................................................................................ 6

## **TABLE OF AUTHORITIES**

**Page**

**Cases**

*Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60 (2d Cir. 2012) .................2, 4

*CFTC v. The Am. Board of Trade, Inc.,* 803 F.2d 1242, 1252 (2d Cir. 1986)................................6

*SEC v. Berger*, 244 F. Supp. 2d 180, 184-85 (S.D.N.Y. 2001) ......................................................3

*SEC v. Black,* 2008 WL 4394891 (N.D. Ill., Sep. 24, 2008) ...........................................................3

*SEC v. Cavanagh*, 445 F.3d 105, 116-120 (2d Cir. 2006)..............................................................5

*SEC v. Goble,* 682 F.3d 934, 942 (11th Cir. 2012)..........................................................................6

*SEC v. Hilsenrath*, 2008 WL 2225709 (N.D. Cal., May 29, 2008) ............................................2, 3

*SEC v. Patel*, 61 F.3d 137, 140 (2d Cir. 1995) ...............................................................................5

*Morrison v. National Australia Bank Ltd.*, 130 S. Ct. 2869 (2010).............................................2, 4

Plaintiff Securities and Exchange Commission (the "Commission") respectfully submits this reply memorandum in further support of its motion for partial summary judgment against defendants Alberto W. Vilar ("Vilar") and Gary Alan Tanaka ("Tanaka" and, together with Vilar, the "Individual Defendants").[1]

### 1. The Commission has met the Standard for Partial Summary Judgment.

The Commission showed in its Summary Judgment Memorandum that Vilar and Tanaka were convicted in the criminal case of the same conduct that forms the basis for certain claims in the Commission's Second Amended Complaint.[2] Notwithstanding the convictions, Tanaka argues without citing to any relevant legal authority in his Memorandum in Opposition to SEC's Motion for Partial Summary Judgment ("Tanaka Opposition") that the Commission is not entitled to summary judgment because it is not seeking judgment on a "claim," but rather only a preclusion order with respect to certain facts related to Lily Cates and the Testifying GFRDA Investors. Tanaka Opposition at 2-3. Although not entirely clear, the argument apparently rests on Tanaka's assertion that the Commission's claims against the Individual Defendants based on their fraud on non-Testifying GFRDA investors and ATGF and ATGF II investors will remain in this case even if the Court grants the Commission's motion. *Id.* However, the Commission is entitled to summary judgment even if additional claims against the Individual Defendants based

---

[1] Capitalized terms not otherwise defined herein have the meanings ascribed to them in Plaintiff Securities and Exchange Commission's Memorandum of Law in Support of its Motion for Partial Summary Judgment Against Defendants Alberto W. Vilar and Gary Alan Tanaka (the "Summary Judgment Memorandum").

[2] The Commission is aware that the United States Court of Appeals for the Second Circuit recently directed that Vilar and Tanaka be released on bail pending disposition of their respective appeals. As discussed in the Summary Judgment Memorandum, collateral estoppel still applies while a criminal appeal is pending. Summary Judgment Memorandum at 6.

on similar conduct remain in the case. *See, e.g.*, *SEC v. Hilsenrath*, 2008 WL 2225709 at *9 (N.D. Cal., May 29, 2008) (Court granted partial summary judgment for securities fraud and other violations against defendant in connection with certain transfers but not others and stated that the other "claims remain in the case"), *aff'd*, 2010 WL 5135340 (9th Cir., Dec. 17, 2010).[3] Vilar and Tanaka were convicted of the same frauds against Lily Cates and the Testifying GFRDA Investors set forth in the Second Amended Complaint, and, based on the convictions and the undisputed evidence presented by the Commission that the securities transactions occurred in the United States, the Commission is entitled to summary judgment on those claims.

    2. **The Securities Transactions Underlying the Convictions Occurred in the United States.**

Tanaka contends that the Commission cannot show that the relevant securities transactions occurred in the United States because that issue was not decided in the criminal case. Tanaka Opposition at 9-11. He also argues that the Commission's evidence on the location of the securities transactions concerns the "conduct" or "effects" of the transaction test, which was rejected by the Supreme Court in *Morrison v. Nat'l Australia Bank Ltd.*. 130 S. Ct. 2869 (2010).

In *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60 (2d Cir. 2012), the Second Circuit held "that transactions involving securities that are not traded on a domestic exchange are domestic if irrevocable liability is incurred or title passes within the United States." *Id*. at 66. The Second Circuit elaborated that "in order to adequately allege the existence of a domestic transaction, it is sufficient for a plaintiff to allege facts leading to the plausible

---

[3] As a practical matter, if the Court grants the Commission's requested relief the primary remedies that the Commission would be seeking against the Individual Defendants are additional disgorgement and penalties attributable to the fraud on the remaining victims.

2

inference that . . . the purchaser incurred irrevocable liability within the United States to take and pay for a security, *or* that the seller incurred irrevocable liability within the United States to deliver a security." *Id*. at 68 (emphasis added). The test is stated in the disjunctive, so that the transaction is domestic if irrevocable liability is incurred in the United States by the seller to sell the security **or** by the purchaser to purchase the security. As set forth in the Commission's prior pleadings (Summary Judgment Mem. at 10; Second Amended Complaint at ¶¶ 30-32; 98-129; 132-152; SMF at ¶¶ 20-25), each of the purchasers incurred irrevocable liability to take and pay for his or her securities in the United States. Contrary to Tanaka's contention, the Commission is not advancing the "conduct" or "effect" test to determine the location of the securities transactions (Tanaka Opposition at 11). The Commission's evidence is based on trial testimony at the criminal trial, exhibits introduced at the criminal trial, and the declaration of James Meixner. Based on that evidence, it is clear that each of the investors covered by the Commission's motion for partial summary judgment executed the documents and committed funds to purchase the securities in question within the United States, thereby incurring irrevocable liability to take and pay for their securities within the United States for purposes of determining the location of the underlying securities transaction.

     The fact that the criminal convictions did not depend on proving the location of the securities transactions does not prevent the Commission from proving that fact by introducing supporting evidence, including affidavits, in the context of a summary judgment motion. *E.g., SEC v. Black*, 2008 WL 4394891 at *8 (N.D. Ill., Sep. 24, 2008) (court considered Commission's motion for summary judgment based on defendant's conviction and additional evidence provided by the Commission); *Hilsenrath*, 2008 WL 2225709 at *4 -*5 (Where plea agreement covered only conduct between 1997-98, but Commission provided evidence of

conduct between 1997-2000 on motion for summary judgment, court entered summary judgment for conduct during entire period); *SEC v. Berger*, 244 F. Supp. 2d 180, 184-85 (S.D.N.Y. 2001) (summary judgment entered in Commission's favor based on plea allocation and additional evidence introduced by Commission on summary judgment motion).

Tanaka has pointed to no affidavits or any other competent evidence to rebut the Commission's showing that Lily Cates and the Testifying GFRDA Investors incurred irrevocable liability to take and pay for their securities within the United States. At most, Tanaka has referred to certain documents that purport to show that the Mayers may have invested in GFRDA securities through non-US entities and that Amerindo Panama may have issued confirmations of securities transactions and account statements from London that were then mailed to the United States. However, the test for whether or not a securities transaction occurred in the United States does not depend upon the domicile of the seller or the purchaser. *Absolute Activist*, 677 F.3d at 69. Accordingly, Tanaka has failed to rebut the substantial probative evidence introduced by the Commission that Lily Cates and the Testifying GFRDA Investors incurred irrevocable liability to purchase their respective securities in the United States.[4] *See Berger*, 244 F. Supp. 2d. at 187 (the party opposing summary judgment "must set forth specific facts showing that there is a genuine issue for trial."). Tanaka has failed to point to any competent evidence to rebut the Commission's proof on this issue.

---

[4] By Tanaka's logic, a fraudster could avoid being sued for securities fraud in the United States by taking executed subscription agreements and cash for private securities from persons within the United States but structuring the fraud so that purchase confirmations and account statements were printed outside of the United States. The Supreme Court could not have contemplated such an absurd result in *Morrison*, which involved foreign nationals suing a foreign issuer in connection with a security listed on a foreign stock exchange. Such a result is also inconsistent with the disjunctive test set forth in *Absolute Activist*.

### 3. The Commission is Entitled to the Remedies Requested.

Tanaka argues that the Commission is not entitled to the remedies of injunctions, disgorgement and penalties. Tanaka Opposition at 13-22. The Commission previously showed that its requested remedies are amply supported by existing law. Summary Judgment Mem. at 12-18. Tanaka also contends specifically that the Commission cannot support its disgorgement figure based on the "proceeds raised" from the defrauded investors. *Id.* at 20. Regardless of the exact characterization of the forfeiture amount, it is clear that the forfeiture orders were entered based upon evidence introduced at the criminal trial reflecting the proceeds of the frauds on Lily Cates and the Testifying GFRDA Investors that flowed to the Individual Defendants or entities owned and controlled by them. In the Government's October 2, 2009 Sentencing Memorandum (Docket #s 354 and 355 in the criminal case, 05-cr.-621), the Government established the amount of the proceeds raised by the Individual Defendants from Lily Cates and the Testifying GFRDA Investors. Sentencing Mem. at 92. The Sentencing Memorandum refers both to trial testimony and documentary evidence introduced at the criminal trial to support the forfeiture figures.[5] If the Court grants the Commission's motion for summary judgment on the issue of liability, the Commission would base its request for disgorgement on the same evidentiary record that was sufficient to establish the forfeiture judgments in the criminal case. *See*, *SEC v. Cavanagh*, 445 F.3d 105, 116-20 (2d Cir. 2006) (district court has equitable power to order

---

[5]   Page 92 of the Sentencing Memorandum refers to admitted trial exhibit GX-8202-B, a spreadsheet reflecting funds deposited by certain GFRDA investors into Bear Stearns Accounts controlled by the Individual Defendants, to support the forfeiture amounts for the Mayers and Tara Colburn; admitted trial exhibit GX 3308-20, a letter from Amerindo to Graciela Lecube-Chavez, as well as page 300 of the criminal trial transcript, to support the forfeiture amount for Graciela Lecube-Chavez; page 123 of the criminal trial transcript to support the forfeiture amount for Robert Cox; and generally to the criminal record to support the forfeiture amount for Lily Cates.

disgorgement remedy in federal securities enforcement actions). Moreover, once the Commission presents evidence to support the disgorgement remedy, "any risk of uncertainty in calculating disgorgement should fall on the wrongdoer whose illegal conduct created that uncertainty." *SEC v. Patel*, 61 F.3d 137, 140 (2d Cir. 1995). Because Vilar and Tanaka hopelessly commingled the funds raised from investors, the risk of uncertainty of the calculation should fall on them. In light of the commingling of funds, it would also be appropriate for the Court to order disgorgement even if the proceeds raised from investors reflected in the evidentiary record cannot be shown to equal the exact amount of illicit profits realized by Vilar and Tanaka from their fraud. *E.g., CFTC v. The Am. Board of Trade, Inc.*, 803 F.2d 1242, 1252 (2d Cir. 1986) ("Where the defendant's own recalcitrance and system of record-keeping have so obscured matters that the lawful gains cannot be distinguished from the unlawful without incurring inordinate expense, it is well within the discretion of the court to rule that the measure of disgorgement will be the more readily measurable amount of losses incurred by the defendants' customers in the unlawful transactions.").[6]

---

[6] Tanaka also contends that the Commission must prove the element of reliance. Tanaka Opposition at 22-27. However, it is well-established law that reliance is not a necessary element of Section 10(b) fraud in the context of a Commission civil enforcement action. *See, e.g., SEC v. Goble*, 682 F.3d 934, 942 (11th Cir. 2012) (reliance not an element of Section 10(b) fraud in Commission enforcement action).

## CONCLUSION

For the reasons set forth above and in the Commission's prior pleadings, the Court should deny the Individual Defendants' Motion to Dismiss the Commission's Second Amended Complaint and grant the Commission's Motion for Partial Summary Judgment.

Dated: New York, New York
October 12, 2012

Respectfully submitted,

/s/ Neal Jacobson
By: Neal Jacobson
    Mark D. Salzberg
Securities and Exchange Commission
New York Regional Office
3 World Financial Center, Suite 400
New York, New York  10281
Telephone: (212) 336-0095
Facsimile:  (212) 336-1324
Email: Jacobsonn@sec.gov

Of Counsel:
Alistaire Bambach