**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**SECURITIES AND EXCHANGE COMMISSION,**

**Plaintiff,**

**v.**

**AMERINDO INVESTMENT ADVISORS INC.,**
**AMERINDO INVESTMENT ADVISORS, INC.,**
**AMERINDO ADVISORS UK LIMITED,**
**AMERINDO MANAGEMENT INC.,**
**AMERINDO TECHNOLOGY GROWTH FUND, INC.,**
**AMERINDO TECHNOLOGY GROWTH  FUND II, INC.,**
**TECHNO RAQUIA, S.A.,**
**ALBERTO W. VILAR, and**
**GARY ALAN TANAKA,**

**Defendants.**

**05 Civ. 5231 (RJS)**

**ECF CASE**

**MEMORANDUM OF LAW OF SECURITIES AND
EXCHANGE COMMISION IN OPPOSITION TO MOTION
BY DEFENDANTS FOR RECONSIDERATION AND A STAY**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ...................................................................................... iii

PRELIMINARY STATEMENT ................................................................................... 1

I.     THE COURT CORRECLTY APPLIED APPLICABLE PRECEDENT IN
FINDING THAT THE TRANSACTIONS WERE DOMESTIC ................................ 1

    A.   The Fraud on Lily Cates ............................................................................. 2
    B.   The Fraud on Graciela Lecube-Chavez, Gary Cox and Tara Colburn ....................... 3
    C.   The Statute of Limitations .......................................................................... 6
    D.   The SEC Staff Will Agree to a Short Stay Pending the Receiver's Report ............... 7

CONCLUSION ...................................................................................................... 8

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60 (2d Cir. 2012) .....................2, 5

*Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36 (2d Cir. 2012). .............................1

*Gabelli v. SEC*, 133 S. Ct. 1216 (2013) ........................................................................................6

*Griggs v. Pace American Group, Inc.*, 170 F.3d 877 (9th Cir. 1999) ...........................................4

*Morrison v. National Australia Bank Ltd.,* 130 S. Ct. 2869 (2010)..........................................2, 5

*Riordan v. SEC*, 627 F.3d 1230 (D.C. Cir. 2010) .........................................................................7

*SEC v. Goldman Sachs & Co.*, 790 F. Supp. 2d 147 (S.D.N.Y. 2011)......................................3, 6

*SEC v. Gruss*, 859  F. Supp. 2d 653 (S.D.N.Y. 2012) ...................................................................2

*SEC v. ICP Asset Mgt., LLC,* 2012 WL 2359830 (S.D.N.Y., June 21, 2012) ...............................2

*SEC v. Williams,* 884 F. Supp. 28 (D. Mass. 1995)......................................................................7

*Yoder v. Orthomolecular Nutrition Institute, Inc.*, 751 F.2d 555 (2d Cir. 1985)..........................4

**Statutes**

15 U.S.C. § 77q(a) .............................................................................................................2, 3, 4, 6

15 U.S.C. § 78j(b) ....................................................................................................... 2, 3, 4, 5, 6

15 U.S.C. § 80b-6 ...............................................................................................................2, 7

**Federal Rules**

Fed. R. Civ. P. 59................................................................................................................1

Plaintiff, Securities and Exchange Commission ("SEC"), respectfully submits this memorandum of law in opposition to Defendants' Alberto W. Vilar ("Vilar") and Gary Alan Tanaka ("Tanaka") (together, the "Individual Defendants") motion for reconsideration ("Motion") of this Court's March 11, 2013 memorandum and order granting in part and denying in part the SEC's motion for partial summary judgment (the "Memorandum and Order"), and request for a stay of this action.

## PRELIMINARY STATEMENT

The Individual Defendants argue that reconsideration should be granted because (i) the Court erroneously failed to consider their evidence of the "offshore" nature of the securities transactions in violation of applicable precedent, and (ii) the SEC's claims are barred by an intervening change in the law regarding the applicable statute of limitations.  The Court made clear in its Memorandum and Order that it had considered the Individual Defendants' Local Civil Rule 56.1 Statement and the referenced exhibits.  There can thus be no argument that the Court did not consider the evidence proffered by the Individual Defendants.  Because the Court properly applied the law and considered the evidence submitted by the Individual Defendants, the Motion should be denied.

## I.     THE COURT CORRECLTY APPLIED APPLICABLE PRECEDENT IN FINDING THAT THE TRANSACTIONS WERE DOMESTIC

"[T]he standard for granting a Rule 59 motion for reconsideration is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked."  *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012).   "It is well-settled that Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or

otherwise taking a 'second bit at the apple.'"  *Id.*  Here, the Individual Defendants are merely attempting to take a second bite at the apple and their Motion should be denied.

### A.  The Fraud on Lily Cates

The Court found Vilar liable for securities fraud under Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Section 17(a) of the Securities Act of 1933 ("Securities Act"), and found Vilar and Tanaka each liable for aiding and abetting investment adviser fraud under Sections 206(1) and 206(2) of the Investment Advisers Act of 1940 (the "Advisers Act") for their fraud on Lily Cates.  Memorandum and Order at 10 & 11.  Consistent with the holdings of other courts, this Court held that the transactional test for a securities purchase or sale under Section 10(b) of the Exchange Act enunciated by the Supreme Court in *Morrison v. National Australia Bank Ltd.,* 130 S. Ct. 2869 (2010), does not extend to the Advisers Act.  Memorandum and Order at 11, n.10, citing *SEC v. Gruss*, 859 F. Supp. 2d 653 (S.D.N.Y. 2012) and *SEC v. ICP Asset Mgmt., LLC,* No. 10 Civ. 4791 (LAK), 2012 WL 2359830 (S.D.N.Y., June 21, 2012).  Thus, as a preliminary matter, the Individual Defendants have presented no basis for the Court to reconsider its finding that Vilar and Tanaka aided and abetted violations of Sections 206(1) and 206(2) of the Advisers Act with respect to their fraud on Lily Cates.

The Individual Defendants' argue that the Court failed to consider evidence that the SBIC security was of a "foreign" or "offshore" nature when it found Vilar liable for violations of Section 10(b) and 17(a) for his fraud on Lily Cates.  Motion at 3, 7, 13.  This is incorrect. Because the test under *Morrison* and *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60 (2d Cir. 2012), is whether the securities transaction was domestic, the Court appropriately reviewed the evidence demonstrating that Lily Cates had incurred irrevocable

liability to purchase the SBIC security in the United States, rather than whether the security itself was "foreign" or whether Lily Cates was sent *post hoc* account statements from a foreign country.  The Court found that all of the actions leading to Lily Cates' irrevocable liability to take and pay for the SBIC investment occurred in New York City.  Memorandum and Order at 9.

The private placement memorandum for Cates' SBIC investment provided by Vilar and introduced at the criminal trial (UGX-265, the relevant pages of which are attached hereto as Appendix A), confirms that (i) Cates' investment was in the Amerindo SBIC Venture Fund LP, a Delaware Limited Partnership (Appendix A, LC-00147); (ii) the managing partner to whom subscriptions were sent was located on Park Avenue in New York City (Appendix A, LC-00214 & 00268); (iii) the subscription agreement was governed by New York law (Appendix A, LC-00276); and (iv) the investment adviser to the fund was Amerindo US based in California, not Amerindo Panama (Appendix A, LC-00226).  There is thus no credible evidence that the securities transaction underlying the finding of Vilar's violations of Sections 10(b) and 17(a) for his fraud on Lily Cates was anything but a domestic transaction.[1]

### B.  The Fraud on Graciela Lecube-Chavez, Gary Cox and Tara Colburn

Similar to their arguments regarding Lily Cates, the Individual Defendants contend that the Court overlooked the evidence they submitted regarding the location of the GFRDA securities transactions of Graciela Lecube-Chavez, Gary Cox and Tara Colburn.  Motion at 2. The Court held specifically that the "Individual Defendants fail[ed] to offer any specific facts that could lead a rational trier of fact to find that irrevocable liability was incurred at any other

---

[1]     Notably, the location of a transaction outside of the United States is irrelevant to a Section 17(a) violation.  *SEC v. Goldman Sachs & Co.*, 790 F. Supp. 2d 147, 163-165 (S.D.N.Y. 2011) (offers of securities made in the United States, even if not resulting in a completed sale within the United States, are actionable under Section 17(a) of the Securities Act).

time or in any other place" other than the United States. Memorandum and Order at 8. Thus, the Court should deny the Motion on this basis alone.

The Individual Defendants cite to paragraph 20 of their Rule 56.1 Statement for the proposition that there was no security in existence for these investors until it was issued or recorded in Amerindo's books in Panama or London. Motion at 2. The only purported evidence they cite for that proposition is that GFRDA account statements emanated from London or Panama and that, at the criminal trial, the SEC examiner who testified regarding Amerindo's raises from GFRDA investors created a chart that matched deposits by GFRDA investors into a New York bank account with paper confirmation statements that were purportedly mailed from London. However, the fact that an account statement prepared *after* a securities transaction is printed overseas has no relevance to the location of the underlying securities transaction. Moreover, the SEC examiner's testimony regarding a chart she created years after the fraud to show amounts raised by Amerindo from specific investors similarly sheds no light on where the underlying securities transactions took place. The Individual Defendants also ignore the fact that Vilar's and Tanaka's liability under Sections 10(b) and 17(a) does not require a showing that any security was ever issued. *Yoder v. Orthomolecular Nutrition Institute, Inc.,* 751 F.2d 555, 559 (2d Cir. 1985) (Friendly, J.) (The term "sale" under the Securities Act and the Exchange Act include any contract to sell or otherwise dispose of; "[A] contract for the issuance or transfer of a security may qualify as a sale under the securities laws even if the contract is never fully performed."). *See also Griggs v. Pace American Group, Inc.*, 170 F.3d 877, 880 (9th Cir. 1999) ('[T]here is no reason for us to create a new exception to the general rule that contractual rights *(contingent or otherwise)* are within the coverage of the Securities Exchange Act.") (emphasis added).

4

To substantiate the claim that Tara Colburn was in London when she purchased her GFRDA, the Individual Defendants cite to an unauthenticated, unsigned and undated affidavit by Renata Tanaka.  Motion at 7 & 16, citing to UGX-3388, attached as Appendix B.  This affidavit is not credible evidence that raises a genuine issue of material act with respect to Colburn's whereabouts when she purchased the GFRDA.  In paragraph 15 of the affidavit, Renata Tanaka purportedly states that Colburn's "deposit was provided to me in London, England."  (*See* Appendix B).  However, the Meixner declaration and exhibits attached thereto leave no doubt that Colburn's investment was purchased by check mailed from Illinois to an account in New York City.  Thus, even if the affidavit could be attributed to Renata Tanaka, it is clearly unreliable as it contains at least one verifiably incorrect statement of a material fact.  In the face of the overwhelming evidence that Graciela Lecube-Chavez, Gary Cox and Tara Colburn incurred irrevocable liability to purchase their securities in the United States, the Individual Defendants have pointed to no evidence that the GFRDA security was "foreign," or that a book entry in London was necessary to bind them to their investment.[2]

The Individual Defendants argue that there was no securities transaction "until Amerindo's London office put the GFRDA (acceptance of 'the contract') into the client's account."  Motion at 9.  They ignore that the location of the sales or the purchases are determinative under *Morrison* and *Absolute Activist*.  *See Morriso*n 130 S. Ct. at 2885 (Supreme Court held that Section 10(b)'s "exclusive focus [is] on domestic purchases *and* sales."); *Absolute Activist*, 677 F.3d at 67 ("the act of purchasing *or* selling securities is the act of entering

---

[2]      This is not a situation where a United States investor places a buy order for a foreign security that can *only* be purchased on a foreign exchange so that the purchase and sale necessarily occur outside of the United States.

into a binding contract to purchase *or* sell securities.") (emphasis added).  They also ignore the

fact, discussed above, that violations of Sections 10(b) and 17(a) do not require a showing that

any security was actually issued.

In any event, the Individual Defendants had ample opportunity to present their own

affidavits and additional evidence to support their contention that the GFRDA purchasers did not

incur irrevocable liability until Amerindo "accepted" the investments and noted such acceptance

in its books.  *See* Memorandum and Order at 7-8 (Court noted that the Individual Defendants

could have relied on declarations and affidavits from outside the criminal trial to prove the

location of the securities transactions).[3]

### C.  The Statute of Limitations

The Court specifically reserved decision on the appropriate penalty amounts pending the

Receiver's report.  Therefore, the Court did not overlook the statute of limitations, as the

Individual Defendants argue.  Motion at 4, 5 & 8.  When it comes time for the Court to impose

penalties, the SEC agrees that, in light of the Supreme Court's decision in *Gabelli v. SEC*, 133 S.

Ct. 1216 (2013), the SEC may not seek penalties for fraudulent purchases, sales or offers of

securities that occurred more than five years before the SEC's Complaint or Amended Complaint

was filed, as applicable.  The only investors who were the subject of the motion for summary

judgment for whom the SEC is precluded from seeking penalties for Sections 10b and 17(a)

---

[3]       Pages 4, 5, 7, 9 and 10 of Exhibit D to the Jacobson Declaration show that Vilar solicited Graciela Lecube-Chavez's and Gary Cox's investments on Amerindo US letterhead and provided them with his telephone numbers in California and Vail to discuss their investments. Accordingly, the evidence supports a finding that Vilar violated Section 17(a) of the Securities Act regardless of where the underlying GFRDA transactions were located.  *Goldman Sachs*, 790 F. Supp. 2d at 163-165.

securities fraud are Cox, Coburn and Lecube-Chavez.[4]  Although the SEC has not proven that

the Mayers' January 2001 securities transaction was domestic, it believes that there is substantial

evidence that Vilar and/or Tanaka aided and abetted violations of Sections 206(1) and 206(2) of

the Advisers Act with respect to Amerindo Panama's dealings with the Mayers.  Violations of

Sections 206(1) and 206(2) of the Advisers Act do not require a showing of a domestic

transaction.  Thus, if the SEC proves the violation by dispositive motion or at trial, then it would

similarly seek a penalty with respect to the fraud on the Mayers.[5]

In any event, five-year statute of limitations does not apply to the SEC's equitable claims

for disgorgement and injunctive relief.  *Riordan v. SEC*, 627 F.3d 1230, 1234  (D.C. Cir. 2010)

(claim for disgorgement not subject to five-year statute of limitations); *SEC v. Williams,* 884 F.

Supp. 28, 31 (D. Mass. 1995) (claim for injunctive relief not subject to five-year statute of

limitations).

### D.  The SEC Staff Will Agree to a Short Stay Pending the Receiver's Report

The Individual Defendants request that the Court stay further litigation in this case so that

Ms. Shevitz can work with the Receiver to achieve a fair distribution to investors.  Motion at 24.

The SEC does not believe that a lengthy stay of discovery and of further litigation is necessary

under these circumstances.  The SEC staff, along with the Department of Justice and various

---

[4]      Vilar's and Tanaka's continuing fraudulent conduct with respect to these investors may give rise to additional aiding and abetting fraud claims under the Advisers Act, which very well may be within the five year statute of limitations period.

[5]      The Individual Defendants point to an obvious typographical error in the Second Amended Complaint to argue that the Mayers' last securities transaction occurred in January 2000, beyond the five-year statute of limitations for penalties.  Motion at 4 & 8.  The records in this case and in the criminal action are clear that the transaction occurred in January 2001 and not in January 2000.

investors, already engaged in a Court-supervised process to try and reach an agreement on a distribution to investors.  As the Court is aware, the parties were unable to agree on the terms of a distribution.  However, the Receiver has advised the SEC staff that he recently had a productive meeting with the Individual Defendants and their counsel.  In light of this apparent progress, the SEC would agree to stay discovery and litigation at least pending the filing of the Receiver's Report.

<div align="center">

**CONCLUSION**

</div>

For all of the foregoing reasons, the SEC respectfully requests that the Court deny the Individual Defendants' motion for reconsideration, and grant the SEC such other and further relief as is just.

Dated:  New York, New York
        April 5, 2013

<div style="margin-left: 40%;">

Respectfully submitted,


/s/ Neal Jacobson
By:  Neal Jacobson
     Mark D. Salzberg
Securities and Exchange Commission
New York Regional Office
3 World Financial Center, Suite 400
New York, New York  10281
Telephone: (212) 336-0095
Facsimile:  (212) 336-1324
Email: Jacobsonn@sec.gov

</div>

Of Counsel:
Alistaire Bambach