UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
_____

| | |
|---|---|
| SEC | ECF Case |
| | |
| | **05 cv 5231 (RJS)** |
| v. | related to |
| | 05 cr 621(RJS) |
| Amerindo Investment Advisors, Inc., | |
| Alberto Vilar, and Gary Tanaka | |
| | |
| Defendants. | |

_____


MEMORANDUM IN REPLY ON DEFENDANTS' MOTION
MOTION FOR RECONSIDERATION AND A STAY

Vivian Shevitz
Attorney for Defendants
  VILAR and TANAKA
401 Cumberland Ave. – Apt. 609
Portland, Maine 04101
207-899-2502 /   Cell 914 762-2122
Vivian@shevitzlaw.com


Jane Simkin Smith
 Of Counsel.

MEMORANDUM IN REPLY ON MOTION FOR RECONSIDERATION AND A STAY

1. The motion for reconsideration discusses at length the fact that, disputed or not, the materials cited by the SEC ( Pl's 56.1 ¶¶ 23-25, Ex. C at p. 309, Ex. D7-D8; Meixner Dec., Ex.A, B; Ex.D9-D11)) *do not* support the SEC's factual assertions that Lecube, Cox, and Colburn were in the United States when they took whatever action supposedly made them "irrevocably liable" to purchase (or Amerindo Panama "irrevocably liable" to sell any of them) a GFRDA (*i.e.,* an investment product offered in their account at Amerindo Panama). The SEC's response does not address this point, nor deals with the evidentiary insufficiency discussed in our moving papers except to ignore the real import of its "evidence." The glaring deficiency warrants reconsideration and rejection of the SEC's position.

Further, as to the SEC's position that, because the SBIC investment being discussed by Amerindo and Lily Cates was itself to be a "domestic" investment vehicle, in fact Lily Cates purchased a *private* equity participation in Amerindo Panama, not "the SBIC" venture directly. Investors often purchase investment vehicles that in turn purchase U.S. securities. That is not determinative. *Morrison* itself, 130 S. Ct. 2869 (2010), deals with purchases of a foreign bank's securities, with a purchase in turn by the bank of a U.S. business. As *Morrison* makes clear, the fact that there are U.S. securities "involved" at some point does not change the basic "nature of the security" to a domestic transaction. Likewise, the purchase of Amerindo Panama's private equity participation by Cates was (as she contemplated and excepted, having been the recipient of payment of her expenses through her Panama account) offshore, regardless of the fact that it contemplated further investment in an SBIC vehicle (which in any event never happened).

2. The SEC also does not address the undisputed fact that the "securities" – all private securities purchased by Amerindo Panama customers – were *created* by the Panamanian entity

and hence did not come into existence until after a payment (if there was one) "hit" the books in the offshore back office. There was nothing "irrevocable" until after Amerindo Panama decided to issue the GFRDA or any other of the private securities. The assumption of "irrevocable liability" from a 'decision" to invest, or even a decision to send money to Panama, was not a *response* to a contract offer, but itself constituted an offer to purchase such a security. It could not have led to "irrevocable" liability, in this private security context, before the security was created and issued. Neither side could have sued the other to enforce any such liability.

The "irrevocable liability" cases – to the extent they deal with a purchase or sale of a security on a date other than the date of transfer of title -- represent conclusions of courts concerning securities traded on exchanges or in other formal markets where there is a trade date, and then a "settlement" date at a specific time in the future. In such a case, where both buyer and seller "sign up" to do the transaction with a later closing date, a purchaser or seller does indeed incur *irrevocable* liability at a time earlier than the "settlement" date of the transaction.

The same principle, however, does not apply to a private transaction such as those at issue here. The "trade", and the "irrevocable liability", coincide. Until then there is nothing to sell – just talk about investment possibilities. The SEC's statement that any purchaser incurred *irrevocable* liability to purchase a specific security at the time he or she *decided* to purchase, is an assumption without a basis in *fact*. "The contract" was never identified, except through supposition of the SEC. Summary judgment is improper.

Further, the SEC seems to agree that when a security is sold "necessarily" in a foreign market, it is not domestic. It argues (p.5 n.2): "This is not a situation where a United States investor places a buy order for a foreign security that can only be purchased on a foreign exchange so that the purchase and sale necessarily occur outside of the United States."

But it *is* this situation. The securities at issue could not be purchased (or traded or transferred) in a domestic market. They could only revert to the offshore entity.

GFRDA was created for and could be purchased *only* on and in, a foreign market (even if a private marketplace operating within the laws of an offshore jurisdiction). The Mayers, Cox, Lecube, and Colburn *could not* have purchased any such security domestically, because the defendants could not (and did not) sell that type of vehicle in the United States to its domestic investors. A share in a private equity portfolio, managed as Amerindo did for its private individual investors, could be purchased *only* out of the Panama operation creating that "security" vehicle – and that is exactly what was contemplated by all parties to the transaction.

3. The SEC agrees that it cannot seek a monetary penalty that occurred more than five years before the SEC's complaint was filed. (SEC memo 6.) It argues, however, that it can seek disgorgement and injunctive relief without reference to the statute of limitations upheld as fully applicable to the SEC just recently in *Gabelli v. SEC*, ___ U.S. ___ (2013).

Disgorgement, however – and *all* SEC remedies – cannot be granted where "the transaction" that supposedly "enriched" defendants was not a domestic transaction. *Morrison* makes that point clear.

The SEC has made no showing that *any* of the GFRDA transactions that yielded "enrichment," such as would entitle it to a remedy of disgorgement, was a domestic transaction. As to Cox, Lecube, and Colburn, it set forth supposed "evidence" *solely* as to where it thinks these investors were physically situated when they made their *initial* investments in Amerindo Panama. (We discussed the fact that the SEC's evidence did not in fact show what the SEC posits). However, all of that original principal was effectively returned and re-invested when a

client determined to "roll over" the investment into the next maturity-- according to the government's theories.

Neither the government nor the SEC identified evidence establishing sufficiency to show that any investor was located domestically when entering into that "rollover" investment. Therefore, in that the SEC failed to prove any domestic transaction as to which defendants might be subject to disgorgement, it is not entitled to disgorgement as to any of those named investors (or any others).

Wherever the investor may have been when first investing is irrelevant: he/she got the money back, so there was nothing to disgorge based on that (theoretically, to the SEC) "domestic transaction."  Where the investor may have been when making a rollover investment was not the subject of proof at the criminal trial or in the SEC's summary judgment papers.

## CONCLUSION

Reconsideration should be granted, the SEC's motion for summary judgment should be denied, and summary judgment should be granted to defendants.

Dated:  May 3, 2013                          _____/s/_____
                                                                Vivian Shevitz


Jane Simkin Smith**,**
Of Counsel.