UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SECURITIES AND EXCHANGE COMMISSION,

                              Plaintiff,


                    v.

AMERINDO INVESTMENT ADVISORS INC.,
AMERINDO INVESTMENT ADVISORS, INC.,
AMERINDO ADVISORS UK LIMITED,
AMERINDO MANAGEMENT INC.,
AMERINDO TECHNOLOGY GROWTH FUND, INC.,
AMERINDO TECHNOLOGY GROWTH  FUND II, INC.,
TECHNO RAQUIA, S.A.,
ALBERTO W. VILAR, and
GARY ALAN TANAKA,

                              Defendants.

05 Civ. 5231 (RJS)

ECF CASE

---

## RECEIVER'S INTIAL REPORT AND RECOMMENDATIONS

Ian J. Gazes, the Court appointed receiver (the "Receiver") in the above-captioned cases,

hereby submits his initial report and recommendations and respectfully states as follows.

## I.  INTRODUCTION

1.       On October 17, 2012, the Court entered an order appointing (the "Appointment

Order") the Receiver and empowered him "to investigate and determine the value of investor

assets that have been seized or frozen pursuant to the forfeiture order in the [related] criminal

case, to consider what actions can and should be taken to avoid dissipation of those assets, and to

submit a report to the Court regarding his findings and recommendations. Upon receiving his

report, the Court will determine whether Mr. Gazes should be empowered to take broader action,

such as managing the assets and beginning a claims process for investors."

2.      On March 14, 2013, the Court entered an order in the related criminal case,

*United States of America v. Alberto William Vilar and Gary Tanaka*, S3 05 Cr. 621 (RJS) (the

"Criminal Case"), modifying its previously entered Post-Conviction Restraining Order (the

"Restraining Order") to authorize the withdrawal of $50,000.00 from a restrained account to

provide for the Receiver's compensation (the "Compensation Fund").

3.      Upon modification of the Restraining Order, the Receiver: (a) commenced his

investigation into the value of the assets forfeited (the "Forfeited Assets") under the Court's

previously entered Order of Forfeiture of Substitute Assets (the "Forfeiture Order"); (b)

identified the necessary steps to be taken in order to preserve the value of the Forfeited Assets;

and (c) attempted to gain an understanding of the extent and nature of potential claims against

the Forfeited Assets.  The Receiver undertook these actions with the goal of determining the

feasibility of a claims and interim distribution process that would provide a measure of

immediate relief to investor claimants.

4.      Based on his efforts, the Receiver has determined that while there remain

significant issues as to the total value of the Forfeited Assets  as well as the extent, nature and

priority of potential claims, it is nonetheless both practical and desirable to: (a) liquidate the

public securities held in certain brokerage accounts; (b) transfer the liquidation proceeds along

with available cash to interest bearing accounts; (c) establish procedures for the submission of

investor claims; and (d) provide for an interim distribution on account of allowed claims for

amounts owing as of May 25, 2005.[1]

---

[1] As discussed below, in consulting with various parties in interest, it is believed that the amount of individual investor claims as of May 25, 2005, the last date on which the various investor accounts were actively managed, can be fixed with certainty and that there should be sufficient cash and public securities in the investor accounts to pay these claims.

2

## II. <u>PROCEDURE</u>

5.      As an initial matter, the Receiver notes that his investigation was necessarily limited by (a) the availability of relevant financial records and (b) the scope of his duties under the Appointment Order.  Still, The Receiver reviewed and analyzed all immediately available financial records, pleadings and other documents related to this matter including without limitation, various account statements, and the January 27, 2010 report of D.M. Ross & Associates, Inc. which was previously submitted to the Court at the behest of co-defendant, Gary Tanaka.  The Receiver does not have historical account information to determine the source and movement of funds held in the various accounts included in the Forfeited Assets.  Nor does the Receiver have complete information regarding the identity of all potential investor claimants or information regarding the amount or nature of these claims.

6.      The Receiver expended considerable time and effort in consulting with various parties in interest and potential investor claimants and/or their counsel including, but not limited to, Alberto Vilar and Gary Tanaka, (the "Defendants"), investors Lisa Mayer and Debra Mayer (the "Mayers"), investor Paul Marcus, stakeholder J.P. Morgan Securities LLC ("JP Morgan"), the Securities and Exchange Commission ("SEC"), and the Office of the United States Attorney ("OUSA").  These communications not only provided the Receiver with additional information regarding the Forfeited Assets but also served to identify potential obstacles with respect to a claims and interim distribution process.  Based on these discussions, the Receiver attempted to negotiate a consensual agreement among these parties which agreement would have formed the basis for a claims and interim distribution process.  While the Receiver was ultimately unable to reach an agreement, the process nonetheless highlighted broad areas of consensus among the

various parties in interest as well as areas of disagreement will need to be resolved on a going forward basis.[2]

### III.  ASSETS

7.      As set forth in the Forfeiture Order, the Forfeited Assets consist of all of the Defendants' right, title and interest in the following assets:

Companies

Amerindo Investment Advisors Inc.

Amerindo Investment Advisors II, Inc.

Amerindo Investment Advisors (UK) Ltd.

Techno Raquia, S.A.

Amerindo Management Inc.

Amerindo Technology Growth Fund Inc.

Amerindo Technology Growth Fund II, lnc.

Olafson, Inc.

The Trustees of the Amerindo Advisors (UK) Ltd. Ret. Benefits Scheme.

Amerindo Master Venture Fund LLC

Amerindo Investment: Advisors Inc. Money Purchase Plan and Trust

JP Morgan Accounts

Account No. 102-17995, held in the name of Techno Raquia, S.A.

Account No. 102-01485 held in the name of Amerindo Management Inc., sub-Account M26

Account No. 102-01490, held in the name of Amerindo Technology Growth Fund Inc.

---

[2] The Defendants' letter to the Court dated May 29, 2013 is illustrative of the consensus among all parties concerned that some form of a claims and interim distribution should be implemented as well as the disagreement among those same parties as to how that process should be implemented.

Account No. 102 01495, held in the name of Amerindo Technology Growth Fund II, Inc.

Account No. 102-15833, held in the name of Olafson Inc.

Account No. 102-05012, held the name of The Trustees of the Amerindo Advisors (UK) Ltd. Ret. Benefits Scheme.

Account No. 102-25590, held in the name of Amerindo Master Venture Fund LLC.

Account No. 102-25612, held in the name of Amerindo Investment Advisors Inc. Money Purchase Plan and Trust.

Miscellaneous Accounts

SG Americas Securities, LLC Account No. 64524357, held in the name of Amerindo Technologies Growth Fund

Approximately $273,611.89 in funds formerly held by @Ventures Management, LLC for the benefit of Amerindo Technology Growth Fund II, Inc.

Approximately $1.6 million in funds on deposit at U.S. Bank for the benefit of Amerindo Technology Growth Fund II, Inc.

Other Assets

Mr. Tanaka's interest in one or more apartment units located at 860 United Nations Plaza, New York, New York.

Mr. Vilar's interest in that certain real property located as 7 High Coombe Place, Warren Cutting, Kingston Upon Thames, Surrey, England.

Mr. Tanaka's interest in approximately thirty-two (32) race horses.

8.      The Receiver has also been alerted to the existence of additional accounts not explicitly identified in but which may nevertheless be subject to the Forfeiture Order (the "Additional Accounts").  The Additional Accounts include accounts held at Morgan Stanley, Citibank, and Bank of America as well an account, consisting of $4,000,000 allegedly attributable to the Amerindo Technology Growth Fund II, being held by the Bahamian Liquidator for the Amerindo Internet Growth Fund in the Cayman Islands.

9.      Among the Forfeited Assets are seven accounts containing investor funds (the "Investor Accounts"): JP Morgan Account Nos. (a) 102-17995, held in the name of Techno Raquia, S.A.; (b) 102-01485 held in the name of Amerindo Management Inc., sub-Account M26; (c) 102-01490, held in the name of Amerindo Technology Growth Fund Inc.; and (d) 102-01495 held in the name of Amerindo Technology Growth Fund II, Inc., as well as the Miscellaneous Accounts.

10.      The Investor Accounts are comprised of (a) cash ("Cash"), (b) publicly traded securities (the "Public Securities"), and (c) un-priced private securities (the "Private Securities").

11.      The aggregate Cash balance in the Investor Accounts as of December 31, 2012 was approximately $25,999,708.89 and the aggregate market value of the Public Securities was approximately $6,750,678.00.  Although previous efforts had been made to value the Private Securities, their value remains unknown at this time.

12.      Upon information and belief, none of the Investor Accounts has been managed since approximately May 25, 2005 and the Cash is not earning interest.  It is unknown whether the funds held in the various Investor Accounts have been segregated according to investment type or whether there has been comingling of different investor funds or comingling with non-investor funds.

13.      Given the liquidity of the Cash and Public Securities held in the Investor Accounts, the Receiver believes, as set forth in greater detail in section "V" below, that the Cash and Public Securities should be immediately liquidated with the liquidation proceeds then placed into interest bearing accounts and made available for the purposes of an interim distribution.

## IV.  <u>INVESTOR AND OTHER CLAIMS</u>

14.     To date, the Receiver has been unable, based on the records presently in his possession, to gain an accurate picture of the total number and identity of investor claimants, the specific funds in which investors claimants had invested, the amount of the individual investor claims, and the aggregate amount of all investor claims.

<u>The Mayer Claim</u>

15.     The Mayers previously obtained a state court judgment against the Defendants and various Amerindo entities in an amount upwards of $20 million.  As stated in their petition for payment, which was subsequently removed to this Court, the Mayers assert that they are entitled to satisfy these judgments from various JP Morgan Accounts notwithstanding the Restraining and Forfeiture Orders or other potential investor claims in these same funds.

<u>Other Investor Claimants</u>

16.     As set forth in JP Morgan's answer to the Mayer Petition and in its third party complaint, there are several identified investors which have asserted or may assert claims in the Funds and/or who oppose the Mayer Petition including without limitation: Paul Marcus, Ronald Salvetti, Maurice Kassimir, John Preetzmann Aggerholm, Elna Charlotte Olga a/k/a Elna Heitkonig, Alfred C. Heitkonig, Maaike Olga Maria Hickok a/k/a Maaike Heitkonig, Robin Sayko, Peter Lusk, the Gerhard Jordan Family, Lily Cates, Los Angeles Opera, the estate of Robert M. Cox, and Graciela Lecube Chavez. The Receiver is not currently in possession of a complete list of Amerindo investors.

<u>The Defendant Claims</u>

17.     In addition to the investor claimants, the Defendants themselves may assert claims in the Forfeited Assets based on but not necessarily limited to (a) the outcome of pending

appeals, (b) management fees, and (c) any surplus remaining after the payment of all investor claims.[3]

## V.     RECEIVER'S PROPOSALS

### A.     Initial Proposals

18.     Based on the foregoing, the Receiver proposes that the following provisions be incorporated into an Order of the Court authorizing and implementing a claims and interim distribution process (the "Claims Process").

Establishment of Distribution Fund

19.     The Receiver is empowered and authorized to establish a Distribution Fund consisting of the Cash and the liquidation proceeds of the Public Securities (the "Liquidation Proceeds") held in the Investor Accounts for the purposes of making an interim distribution (the ("Interim Distribution") to holders of Allowed Claims (as herein defined).

20.     The Distribution Fund shall be held in accounts to be maintained at JP Morgan at interest under a master account in the name "*SEC v. Amerindo Investor Advisors Inc. et al. Ian J. Gazes as Receiver*" with five (5) sub-accounts corresponding to the existing J.P. Morgan Accounts (the "Distribution Accounts").[4]

21.     The entities holding on deposit the Miscellaneous Accounts shall, at the Receiver's written direction, immediately turn over all Cash held on deposit in the Miscellaneous Accounts for deposit into the appropriate Distribution Accounts and shall provide the Receiver final account statements.

---

[3] The Defendants have advised the Receiver that they assert a claim against all funds remaining in the investor accounts  after payment in full of investor claims as of May 25, 2005.   In addition Tanaka advised the Receiver that he asserts a claim against Amerindo Panama for not less than $11,000,000 as of 2002 and $100,000 for the expenses of David Ross. The Receiver has not reviewed the validity of these claims and does not take a position as concerns those claims at this time.

[4] The Receiver has investigated the desirability of maintaining the Distribution Fund at a financial institution other than JP Morgan and has determined that doing so would entail substantial costs and delays.

22.     J.P. Morgan is directed to liquidate the Public Securities and deposit the proceeds, less the amount of J.P. Morgan's reasonable fees and expenses, into the appropriate Distribution Accounts.

23.     In his discretion, the Receiver may direct that all Cash and other assets held in the Additional Accounts be turned over for deposit into the appropriate Distribution Accounts.

24.     The Receiver shall be the sole authorized signatory on the Distribution Accounts.

25.     The Private Securities and the remaining JP Morgan Accounts not designated for liquidation shall remain as they presently exist and further liquidation or other disposition thereof shall be subject to further order of this Court.

Claims and Interim Distribution Procedure

26.     In order to be eligible for an Interim Distribution, all parties asserting claims ("Claims") must complete and submit a claim form ("Claim Form"), substantially in the form annexed hereto as Exhibit "A", so as to be received in hand by the Receiver by a date to be fixed by the Court's order implementing the Claims Process (the "Bar Date").[5]

27.     Notice of the Bar Date, substantially in the form attached hereto as Exhibit "B", shall be given by (a) first class mail to all known Amerindo investors and (b) publication Financial Times for circulation in the United States (including Puerto Rico) and Europe[6].

28.     Within seven (7) days of the Bar Date, the Receiver shall file a Claims Register reflecting (a) the number and amount of Claims timely filed and (b) the name and address of each claimant, and (c) the amount of each Claim.

---

[5] The Claim Form requires claimants to bifurcate their claims between amounts attributable to the periods before and after May 25, 2005 respectively.

[6] The Financial Times has advised the Receiver that the cost for publication would be approximately $19,000.

30.     The Receiver, each of the Defendants, the SEC, the OUSA, any claimant or other party in interest, shall have fourteen (14) days from the docketing of the Claims Register to file written objections to any filed Claim (the "Objection Date").

31.     Any filed Claim to which no objection has been timely filed shall be deemed an Allowed Claim.

32.      Any filed Claim to which an objection has been timely filed shall be deemed a Disputed Claim as to any amount disputed and shall be deemed an Allowed Claim to the extent of the amount of the Claim, if any, that is not disputed.

33.     Within fourteen (14) days of the Objection Date, the Receiver shall file a revised Claims Register reflecting all Allowed and Disputed Claims.  Thereafter, the Receiver shall be authorized to make an Interim Distribution from the Distribution Funds to holders of Allowed Claims.  Holders of Allowed Claims shall be entitled to receive an amount equal to fifty percent (50%) of their *pro rata* share of the Distribution Fund based on all Claims filed.[7]

34.     For purposes of the Interim Distribution, the Receiver shall be authorized to draw on any and all Distribution Accounts in his sole discretion which, for the purposes of the Interim Distribution, shall be treated as a single fund.

Fees and Expenses of the Receiver

35.     The Receiver's fees and expenses, other than the costs attendant to noticing the Bar Date, incurred in connection with the claims and interim distribution process shall be paid from the Compensation Fund.[8]  In the event that the balance of the Compensation Fund is

---

[7] By way of simple example, if the Distribution Fund were to consist of $1M and there were two Allowed Claims each in the amount of $500K and a single Disputed Claim of $500K, each holder of an Allowed Claim would receive an Interim Distribution of approximately $166,666.70 with balance of the Distribution Fund being retained on account of the Disputed Claim in the event that the Disputed Claim becomes and Allowed Claim.

[8] To date, the Receiver's fees total approximately $30,000.00.

insufficient to satisfy the Receiver's fees, the Receiver shall seek an order of the Court further

modifying the Restraining Order to provide for the releases of additional funds.

36.     The Receiver's expenses incurred in connection with the claims and interim

distribution process including but not limited to the costs associated with the mailing and

publication of the Notice of Bar Date, shall be payable from the Distribution Accounts.

Additional Professionals

37.     Should the Receiver determine that it is necessary to employ additional

professionals in order to implement the Claims Process, the Receiver shall seek a further order of

the Court authorizing such employment and the terms and source of compensation.[9]

Tax Considerations

38.     To the extent that any action undertaken by the Receiver in connection with the

Claims Process gives rise to tax liabilities which would otherwise be attributable to the

Amerindo entities, the Receiver is authorized to pay such taxes from the Distribution Accounts.

Limitation of Liability and Exoneration[10]

39.     Neither the Receiver nor any professionals retained or employed by the Receiver

shall have or incur any liability to any entity/person for any action taken or omitted to be taken in

connection with or related to the preparation, implementation, or administration of the Claims

Process except for willful misconduct or gross negligence.

---

[9] If the Court implements the Claims Process, the Receiver anticipates that he will require the assistance of tax professionals.

[10] Notwithstanding Defendants' attorneys representations to the contrary, neither the SEC nor the OUSA requested a full release but rather requested that the agreement state that Defendants' not be capable of recovering monies paid to the investors under the Interim Distribution and that they release the SEC and OUSA only from liability for any such Interim Distribution under the stipulation.  Defendant's counsel was never privy to the Receiver's conversations with the SEC or the OUSA and therefore the allegations set forth in the letter to this court dated May 29, 2013 are not accurate or premised upon speculation only.

40.     In the event that any order or decision of the Court on which the Claims Process is any way predicted, including but not limited to, the Defendants' criminal convictions, the Forfeiture Order, the Restraining Order, the Appointment Order, or an order approving the claims and interim distribution process, is reversed, modified or vacated by subsequent order of any court, such reversal, modification or vacatur shall not affect the validity of the acts or obligations incurred or undertaken under or by the Receiver in connection with claims and interim distribution process or any other action authorized by this Court.

The Mayer Claim

41.     As the Mayers have asserted a secured claim and therefore an immediate right to payment from the Distribution Accounts priming all other investor claims on account of their state court judgments, given the amount of those judgments, the viability of the proposed claims and interim distribution process is contingent on (a) the Mayers' consent or (b) a final resolution of the Mayers' petition.

 The Defendants' Claims

42.     Independent of the outcome of their pending appeals, the Defendants have asserted various claims in the Forfeited Assets including the Investor Accounts.   The implementation of the Claims Process is without prejudice to the Defendants' claims in any of the Forfeited Assets.

 B.     **Additional Proposals**

Resolution of Disputed Claims

43.     The proposed Claims Process only provides for an Interim Distribution to holders of Allowed Claims and reserves payment on account of Disputed Claims pending resolution.  If

authorized by the Court, the Receiver, following the initial Interim Distribution, will formulate a proposed dispute resolution process with respect to the Disputed Claims.[11]

Liquidation of Remaining Forfeited Assets and Additional Distributions

44.     The Claims Process contemplates the liquidation of only certain Forfeited Assets in order to fund an initial Interim Distribution.  If authorized by the Court, the Receiver, following the initial Interim Distribution, will liquidate some or all of the remaining Forfeited Assets to the extent necessary to make additional and/or final distributions on account of Allowed Claims.[12]

## **CONCLUSION**

45.     The Receiver respectfully requests that this Court find the this Initial Report complies with the Court's directives under Appointment Order and entertain the proposals set forth herein.  Given the procedural status of this case, the related criminal case, and the Mayer petition, the Receiver submits that the proposed Claims Process is the only viable means of providing some measure of to the Amerindo investors

Dated:  New York, New York
         May 30, 2013                            _/s/ Ian J. Gazes_____
                                                 Ian J. Gazes, Receiver
                                                 Gazes LLC
                                                 151 Hudson Street
                                                 New York, New York 10013
                                                 (212) 765-9000

---

[11] The provisions of the dispute resolution process will depend on the number of Disputed Claims and the nature of the objections.

[12] The need to liquidate additional assets such as the private equities will depend on the amount of the Allowed Claims and the resolution of the Disputed Claims.