

**Begos Brown & Green LLP**
ATTORNEYS AT LAW

2425 Post Road, Suite 205
Southport, CT 06890
(203) 254-1900 Office
(203) 222-4833 Fax
www.bbgllp.com

Patrick W. Begos
Christopher G. Brown
Daniel Green

June 7, 2013

**By Email**

Hon. Richard J. Sullivan
United States District Court
500 Pearl Street
New York, NY 10007

```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6-18-13
```

Re:   In re Mayer v. JP Morgan Securities, LLC (1:12-cv-05240-RJS)
      SEC v. Amerindo (1:05-cv-05231-RJS)

Dear Judge Sullivan:

This firm represents Lisa Mayer and Debra Mayer, petitioners in *In re Mayer v. JP Morgan Securities, LLC* ("Turnover Proceeding"). I write to follow up on the Receiver's May 30, 2013 Initial Report and Recommendations filed by Ian J. Gazes in *SEC v. Amerindo* ("Gazes Report"), and in response to the May 29, 2013 letter to Your Honor from Vivian Shevitz. More particularly, I write to request that the Court begin to address the merits of the Turnover Proceeding, because the Gazes report makes clear this is a necessary step.

**The Gazes Report**

The Gazes Report demonstrates that a procedure for distributing available funds to claimants cannot be implemented unless and until the Turnover Proceeding is resolved (Gazes Report, ¶ 41). This is because the Mayers have executed against assets in the JP Morgan accounts, and assert their resulting judgment lien is senior to the rights of any other claimant. Therefore, I believe that the most expeditious way to distribute money to any investor is to first address and satisfy the Mayers' claims in the Turnover Proceeding, and then allow Mr. Gazes to proceed with determining claims that have not been judicially settled.

Regarding the interplay between the Turnover Proceeding and the distribution proposal in the Gazes Report, I believe that a couple of points merit clarification and/or amplification.

First, the Mayers do not object to Mr. Gazes liquidating public securities in the JP Morgan accounts and placing proceeds in appropriate interest-bearing accounts. The critical proviso is that any and all liens, restraining orders, and/or security interests that currently exist against any of the money or assets in any of the accounts must remain in full force and effect notwithstanding the liquidation and/or any transfer to Mr. Gazes' control. I do not believe that this is a controversial point, but it is important for it to be explicit.

Begos Brown
& Green LLP
ATTORNEYS AT LAW

Hon. Richard J. Sullivan
June 7, 2013
Page | 2

Second, the Mayers do object to the suggestion by Mr. Gazes should pay taxes on behalf of the putative owners of the JP Morgan accounts (Gazes Report, ¶ 38). Mr. Gazes' authority is limited to the specific accounts at issue; he is not a receiver or administrator of any of the relevant entities who purportedly own these accounts. Whatever tax liabilities any of those entities incur as a result of the liquidation and distribution of assets should remain between those entities and the appropriate taxing authorities. Mr. Gazes' proposal to pay taxes off the top would in effect give taxing authorities the equivalent of a "super-priority" claim without any grounds for it. Additionally, given what has been described by most parties as a lack of records regarding the various Amerindo entities, combined with the demonstrated commingling of funds between the various Amerindo entities, it is not clear how Mr. Gazes could hope to arrive at a tax calculation. The Mayers do agree, however, that Mr. Gazes must be insulated against liability to any taxing authority for claims arising out of his management of the funds.

Third, the Mayers believe that the best (indeed only) way to resolve any dispute over the priority of their judgment lien is through the Turnover Proceeding. I note that, to date, no party (or putative third-party) in the Turnover Proceeding has asserted any legal basis to invalidate or subordinate the Mayers' judgment lien.

Prior to filing his report, Mr. Gazes suggested that the Mayers should agree to submit their claim to some unspecified, *ad hoc* procedure in the SEC Action for determination. That was, and is, objectionable. The Mayers' claim that already is pending in the Turnover Proceeding, the necessary parties are before the Court (indeed many unnecessary parties are present as well due to JP Morgan's purported third-party complaint); Most importantly, there is a specific Petition and clear procedural and substantive law by which their Petition should be determined.

Trying to resolve the Mayers' lien claim as part of Mr. Gazes' distribution of funds would raise numerous problems. Among the more notable problems are: requiring the Mayers to prove a claim that is already reduced to judgment (Gazes Report, ¶ 26); requiring that the Mayers attempt to segregate their judgments into arbitrary periods before and after May 25, 2005 (*id.*, Ex. A); and allowing the Receiver, Vilar, Tanaka and the SEC to object to the Mayers' claim, even though non-parties have no basis to attack the judgment, and the time for parties to appeal has expired (*id.* ¶ 30).[1]

Now that Mr. Gazes has filed his report, and has proposed a plan that would appear to provide for a fair mechanism to distribute funds to investors *without a lien*, the resolution of the Turnover Proceeding and satisfaction of the Mayers' judgments will permit the Court and Mr. Gazes to implement his plan.

It is for these reasons that the Mayers request that the Court either: (a) establish a deadline for any respondent or putative third-party defendant in the Turnover Proceeding to submit briefing on why they contend their rights to the funds at issue are equal to the Mayer's judgment lien; or

---

[1] Alberto Vilar has appealed the smaller two of the three judgments. That appeal has not yet been perfected. No judgment debtor has appealed the judgment concerning the Mayers' GFRDA investment (which judgment accounts for almost $20,000,000 of the total principal judgment debt of approximately $23,000,000 [excluding interest]), and the time to appeal has long expired.

Begos Brown
& Green LLP
ATTORNEYS AT LAW

Hon. Richard J. Sullivan
June 7, 2013
Page | 3

(b) schedule a conference so that a definite plan and schedule for the resolution of the Turnover Proceeding can be determined. I note that the Mayers made similar request in my March 4, 2013 letter to the Court.

**The Shevitz Letter**

I do not intend to address most of what Ms. Shevitz says in her letter, as it is either transparently inaccurate (such as the contention that there are no investor losses), or not relevant to the Mayers' claim. But I do wish to address several assertions she makes against the Mayers and me.

Ms. Shevitz continues to advance the false notion that the Mayers brought their state court action in some effort to "jump the line" of other victims and/or investors. Nothing could be further from the truth. The Mayers' state court action originated when *Alberto Vilar sued the Mayers for defamation* in 2004, before he was indicted. The Mayers' judgments are on claims that originated as counterclaims in Vilar's action. At that time, various other "victims" who are seeking distributions today lined up to support Vilar, Tanaka and Amerindo against the Mayers. Ms. Shevitz's clients have no one but themselves to blame for the pendency of the lawsuit that led to the Mayers' judgments.

Ms. Shevitz contends that Vilar and Tanaka desire "to go to state court (if necessary) to move to vacate the Mayers' judgment, premised on a failure of Due Process[.]" (Letter, p. 8). Even if Vilar or Tanaka had a valid ground to challenge any of the judgments (which they certainly do not), their time to do so has lapsed. And, I note, Vilar still has counsel in the state court action (who has been representing Vilar in that action for years and also represents him in the SEC action), and that attorney has not raised any of the arguments that Ms. Shevitz claims her clients desire to assert.

Ms. Shevitz also contends that the United States Attorney's office "negotiated behind the scene in the State civil case to let [the Mayers] continue litigating while Mr. Vilar and Mr. Tanaka could not afford counsel." (*Id.*). This is exactly the opposite of reality. As noted above, the state court action was filed (by Vilar and Amerindo), before he was indicted. After Vilar and Tanaka were indicted, the Government asked counsel for the Mayers *and counsel for Vilar and Amerindo* (Tanaka had not yet appeared) to stipulate to stay the state action until the criminal case was resolved. Ultimately, all parties in the state court action (and Supreme Court Justice Kornreich) agreed to stay it until the criminal case was "terminated by plea, verdict, dismissal or otherwise. Vilar expressly agreed to those terms. After verdicts were handed down in the criminal action, the stay was lifted by terms of the stipulation. Thus, to the extent the Government intervened in the prosecution of the state court action, it was to *delay* that action.

Moreover, the notion that Vilar and Tanaka "could not afford counsel" in the state court action is untrue. As noted above, Vilar has had counsel in the state court action from its inception through today. Tanaka retained counsel to represent him in the state court action after the verdict was handed down in the criminal trial. When Tanaka's attorney moved to withdraw in 2010, the reasons she cited were difficulty communicating with Tanaka, and the fact that "although Mr. Tanaka has retained counsel in his criminal case, ... [he] does not want to spend the money or resources to pay counsel to continue to litigate this civil case[.]" Thus, Tanaka *chose* to proceed

Begos Brown
& Green LLP
ATTORNEYS AT LAW

Hon. Richard J. Sullivan
June 7, 2013
Page | 4

*pro se*. I also note that Vilar and Tanaka did not have a problem finding people to post bonds for them after they were released on bail pending appeal. In any event, given that the Mayers have been virtually penniless for years as a direct result of Vilar's and Tanaka's actions, it is offensive that Ms. Shevitz would seek to garner sympathy for her allegedly destitute clients.

Ms. Shevitz offensively asserts that "[t]he Mayers would *not have* the claim on which they obtained judgment if they had been honest [emphasis in the original]." (*Id.*, p. 8). I do not understand precisely what Ms. Shevitz is contending, but any suggestion of the Mayers' lack of honesty in connection with any aspect of this matter is patently false. Every claim the Mayers made in the state court action was supported by evidence and accepted by Supreme Court Justice Kornreich, after giving Vilar and Tanaka a full opportunity to be heard.

Finally, Ms. Shevitz asserts that "the Mayers' transactions are offshore." (*Id.*). Any question of the territorial scope of the federal securities laws has no bearing whatever on the Mayers' state court judgments, which were founded on contracts and state law. Whatever this Court might have ruled about the locus of any transaction, Justice Kornreich ruled in August 2009: "This court finds, as a matter of law, that consumers were deceived in New York[]" by the defendants.

**Conclusion**

The Mayers respectfully request that the Court allow them to take appropriate steps to prosecute the Turnover Proceeding to a conclusion, which will, in turn, permit Mr. Gazes to begin the process of distributing money to other investors.

Respectfully submitted,

S/ Patrick W. Begos

cc:   (by email)
      Andrea L. Weiss, Esq.
      Sharon C. Levin, Esq.
      David Mainzer, Esq.
      Julian W. Friedman, Esq.
      Thomas J. Hall, Esq.
      Robert Fryd, Esq.
      Andrew E. Goldsmith, Esq.
      Neal R. Jacobson, Esq.
      Tomoko Onozawa, Esq.
      James Webster, Esq.
      Vivian Shevitz, Esq.
      Ian Gazes, Esq.
      David C. Burger, Esq.