Vivian Shevitz
Attorney at Law
401 Cumberland Avenue – Apt. 609
Portland Maine 04101
(207) 899 2502
Cell: (914) 763 2122
Vivian@shevitzlaw.com

```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6-18-13
```

June 17, 2013

Richard J. Sullivan (email: REQUEST TO FILE THIS DOCUMENT)
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

>   Re: US v Vilar and Tanaka, 05 cr 621(RJS); SEC v.
>   Amerindo, 05 cv 5231 (RJS); Mayer v JP Morgan, 12
>   cv 5240 (RJS)

Dear Judge Sullivan and others:

Now the SEC has weighed in on what to do with the assets it has held since 2005. With its June 10 2013 letter to Judge Sullivan (once again litigation is conducted through "off the books" letters not filed on the docket. I ask that they all be filed), the SEC wants to accommodate the receiver and allow the expenditure of *more* funds to accomplish the payout that defendants proposed long ago.

Neither the SEC nor anyone else has addressed footnote1) that there appears enough to pay Panama investors as of the "take-down" in 2005. So now, taken with Knuts' report in December 2005, we know that there was no "missing money" (much less mega millions) in *any* Amerindo businesses though "missing millions" was the publicly-stated basis of the SEC's and US Attorney's "take down" in 2005.

What then about the entire basis of the criminal case with public pronouncements of "missing money" in the millions? What about releasing some so we can litigate with *our* funds?

1

We appreciate the fact that the SEC does not want to recognize a Mayer priority claim (SEC letter of June 10, 2013, which we ask to have docketed). However, while SEC states it does not dispute the *validity* of the Mayer judgments, *we do*. But my clients are still left with no financial means to litigate this, or anything else, because the SEC perpetuated this grab of all funds of Mr. Vilar and Mr. Tanaka, though it did not take even a single step to determine the value of the assets or investor claims for 9 years.

In fact, however, the SEC's assertion that it *does* dispute the priority of the Mayer turnover claim -- because, it says, the judgment was obtained in violation of the Restraining Order – demonstrates a reason for disputing the validity of the judgment in the first place. I have gone back over the Mayer civil case to find out what happened that allowed Patrick Begos and the Mayers to hijack these proceedings.

Here's what happened: In an August 4, 2011 judgment and Order the State court ordered a judgment but *stayed execution of it "until the distribution of the moneys held as a restitution fund by the federal government in the case of United States v. Vilar .... is concluded."* (Judgment, p.11, emphasis added). (This judgment awarded damages for a contract claim against both Alberto Vilar and Gary Tanaka, as well as against Amerindo US and Amerindo Panama – in the sum of their account statement "together with interest at ... 9% per annum ....")

Begos didn't miss a beat getting that stay lifted **without notice to anyone and in violation of the Restraining Order in the criminal case.** *While everyone else was obediently litigating forfeiture/ SEC matters in the federal court then-combined cases as this Court required,* Begos sought and obtained a supplemental judgment and on an *ex* parte, unnoticed motion, got the stay of the State court judgment lifted.

The State court record shows that there was an "inquest" on November 28, 2011 – <u>but no one was there for the defense</u>. Vilar's counsel did not attend and Gary Tanaka did not receive any notice and there was no arrangement for him to participate by phone. He was at Terminal Island, California, his lawyer had withdrawn, and he was *pro se* and, as Begos knew, participating by phone in SEC case conferences.

Begos later wrote that it was at that inquest that the State Court judge agreed with him that the stay of execution of the State court judgment should be lifted. As the record shows, he made that argument to lift the stay for the first time orally at that hearing *without having provided notice to anyone* that he would seeking that relief. The inquest, in fact, was "about" alleged consequential damages as to Vilar and not Tanaka, but Begos did not differentiate in any event. Pursuant to an Order with a provision lifting the stay, which Begos provided to the Court in "proposed order" form, the stay of execution of the judgment as to Vilar, Tanaka, and two Amerindo entities was lifted.

No one was at the hearing to say that there was a Restraining Order that binds everyone with actual notice (Doc. 364, 05 cr 621 (RSJ), filed 10/26/2009). No one was there to explain the adverse effect that Begos' move would have on the other Amerindo clients (about which Vilar's caretaker counsel Mr. Burger did not know in any event as he was not a lawyer in the criminal case, a circumstance that Begos exploited.) Begos got a Supplemental Order and Judgment awarding an additional $2,336,403.89 as against Vilar plus per diem interest of $153.05 from April 16, 2008 to July 6, 2009, and statutory interest, and judgment against Amerindo US and Amerindo Panama.

Begos then executed all judgments – against Vilar and Tanaka, and purportedly Amerindo US and Amerindo Panama (never served properly – indeed they cannot be served given the circumstances), and secretly sought an order that JP Morgan must turn over restrained funds to him, Begos. Begos did not provide "notice" of this turnover action to me, though I was "in the case" and litigating actively, as he knew, or to the defendants.

Begos' purpose and intent was indeed to compromise the "substitute assets" as to which the Restraining Order barred him from acting. Begos made that abundantly clear, writing in support of his turnover action in State court: "As noted in the Petition, there is a dispute between the United States and Vilar and Tanaka regarding the amount of the forfeiture that is warranted by their crimes" (Petition, ¶ 22). The "dispute," as Begos knew, runs deeper than a mere technicality or small issue. "As a result of the dispute" Begos continued

in his memo in support of a turnover as against JP Morgan funds, "the United States has not yet obtained a Final Order of forfeiture, and it has consented to the vacatur of the Forfeiture Order so that the court can determine the proper amount of the forfeiture. "

Begos made clear he intended to grab the funds: *"The prospective vacatur of the Forfeiture Order, makes the Mayers' lien on the money and property in the Accounts superior to the United States' rights."* [emphasis added]

Begos *specifically* served Sharon Levin in his "Petition for turnover" as the Chief of Asset Forfeiture, as he told the State judge by *ex parte* affidavit. In that *ex parte* submission he got the Court to allow him to serve his motion for default judgments on someone who has no responsibility to Amerindo Panama or the defendants (NYSCEF Doc. No. 3, June 25, 2012, Index No. 652201/2012). He argued – with no one arguing any contrary position because he acted *ex parte* -- that he should be able to serve David Mainzer, who hadn't worked for Amerindo since 2005 (or maybe early 2006) and at that had worked for Amerindo US, not Amerindo Panama. He has had no involvement with Amerindo and had and has no interest or responsibility to be involved (especially after the government besmirched his business credentials to this day).

Begos claimed the right to serve Mainzer on the basis of account documents that Begos said (in that *ex parte* document) he had gotten from JP Morgan's counsel Andrea Weiss. From those documents Begos argued that Mainzer was "irrevocably" an agent of Amerindo Panama, seemingly forever, even on matters having nothing to do with the account itself – though the sole "role" of Mainzer was that he was named on account documents as the designated point-person for Bear Stearns/ JP Morgan to deal with on those particular accounts.

When Mr. Mainzer expressly told Begos he was not an agent, <u>and wrote to the Court</u> to object to this attempt to insinuate him into the Mayers' case, Begos continued to involve him and "deemed" him an irrevocably appointed agent. I will provide the email exchanges between Mr. Mainzer and Begos. Once again Begos' *ex parte* dishonesty is stunning and this Court's failure or inability to deal with this

4

deception and the harassment of David Mainzer requires something more than a judicial shrug.

As to Sharon Levin, instead of objecting to this "grab" as a violation of the restraining order or as an improper move to out-do other investors who have been waiting since 2005 for money, Levin removed the turnover case to this Court, related it to the criminal case (but not the SEC case), did *not* give defendants (or me) notice, and wrote to the Court on November 5, 2012 (according to her later statement in her non-objection to Mr. Marcus' intervention):

> "Due to the Mayers' critical financial situation as evidenced by their submissions to this Court, that their financial loss as a result of the fraud in *United States v. Alberto Vilar, et. al.,* 05 Cr. 621 (RJS) is in excess of $11 million, *United States v. Vilar* is still pending on appeal and restitution and remission will not be available for a substantial period of time, the Government has no opposition to a modification of the Restraining Order entered in *United States v. Vilar* to allow for the turn over of funds or a hardship distribution to the Mayers or any other victims and/or investors the Court deems appropriate."

When I later wrote by letter to this Court responding to Begos' letter in the criminal case, objecting to my (still-pending) motion for CJA fees for the interpleader case, that Gary Tanaka had not been given notice by Begos either of his motion to lift the stay in State court, *or* his motion for a turnover of assets, or his motion for summary judgment earlier, Begos' answer was this: "... neither the Mayers nor their counsel was obligated to give Tanaka special notice; he had all proper notice and was obligated to monitor the court's scheduling of appearances like any other party." (Begos March 4, 2013 letter emailed to Judge Sullivan under the criminal case docket).

Even if Mr. Tanaka had "monitored", he would have found *no* notice to any party that Begos was seeking to lift the stay of execution of the judgment or that he secretly requested judicial approval to serve and harass a former employee of Amerindo US who has had nothing to do with Amerindo for almost a decade, thanks to the government's

5

precipitous action. Begos, like Sharon Levin, favors and employs stealth litigation.

Now Begos and the Mayers, in violation of the Restraining Order, have used their judgment(s), unfairly litigated, as a device tantamount to an extortion of the defendants and of other Amerindo clients. Begos should be turned over to the Grievance Committee for his brash violation of the restraining order and his obliteration of defendants' due process rights to notice. *E.g.*, EC 7-19 ("Duty of the lawyer to the Adversary System of Justice"); 7-20 ("there must be competent, adverse presentation of evidence and issues ...."). The government should be sanctioned for allowing this to happen. (The prosecutors and SEC lawyers should also take a look at EC 7-13, 7-14: "A government lawyer who has discretionary power relative to litigation should refrain from instituting or continuing litigation that is obviously unfair.")

Begos and the Mayers should be told to move to vacate their own wrongly-obtained judgments or face prosecution for contempt of the Court order. They should not be favored any longer.

One other aspect of his over-the-top violation of the restraining order should be examined. While writing the Vilar reply brief in this important criminal appeal (filed 4/30/12, Appeal 10-521), I did try to respond, quickly but informally (so I would not have to "appear", for free, in yet another aspect of the case), to Begos' wrongful litigation in State court. I found out in April 2012 that Begos was trying to impose default judgments so I wrote a letter to the State Court Justice Kornreich, as an officer of the court, explaining that the criminal appeal was ongoing and complicated, that the government had been holding Amerindo funds frozen since 2005 and Amerindo could not have defended, and that Begos was using the action as and "end run" around "orderly proceedings" in the federal court that "aim to get *all* investors paid on an orderly and equal basis." (Shevitz letter to Justice Kornreich, Index No. 603234/2004, April 18, 2012).

Begos wrote a response falsely justifying his prior conduct, for the first time disclosing that he had moved orally to lift the stay of execution of his State court judgments. In this letter he demonstrates that he lied to the Court, telling the State court that, because this Court

6

could not compel distribution because there was no plan for *consensual* distribution, this meant that the proceedings for distribution had been terminated. Begos' April 18, 2012 response to my letter reads:

> Ms. Shevitz asserts that I am endeavoring to use this action to conduct an "end run" around "orderly proceedings" in federal court that "aim to get *all* investors paid on an orderly and equal basis." The assertion is false for multiple reasons. First, my clients and I are doing nothing more than attempting to enforce rights set forth in the orders and judgments of this Court. [This, of course, in violation of the restraining order.] Second, the judges presiding over the federal actions have made clear that any proceedings aimed at a distribution have ended [emphasis added], because Vilar and Tanaka have refused to agree (and their consent is required for a distribution at this stage. *(See* March 19, 2012 Order; copy enclosed). That order made clear that Vilar and Tanaka "are welcome to [consent to a distribution] at anytime." (Order at 3). It continued: "However, absent an agreement between the parties, the Court cannot, at this time, *compel*, the distribution of funds ..." *(id.)*.
>
> [Begos continues in that letter:] "It was because of the lack of progress in the federal proceedings that Your Honor dissolved, on November 28, 2011, the stay of execution that had been part of the October 28, 2011 judgment. [emphasis added] The Mayers intend to vigorously execute on the judgments entered in this action, by all means available to them." [He added: Every victim or investor whom Vilar and Tanaka defrauded has the same rights as the Mayers to pursue civil remedies. ....]

Of course the proceedings are not terminated. The case has been on appeal and we *are* seeking an "orderly distribution" of restitution out of assets available for such use. That is the point.

The restraining order in the criminal case was willfully violated. It applied equally to Patrick Begos and the Mayer girls, and, I submit, to the government officials who took assets. (See Doc. 364 05 cr 621 (RJS), filed 10/26/2009: "IT IS HEREBY FURTHER ORDERED that .... all persons and entities having actual knowledge of this order, shall not ...."; "IT IS HEREBY FURTHER ORDERED that this Restraining Order shall be binding upon .... any other person having actual knowledge of this Order ....")

7

The Mayers have been aided and abetted all along by the government's unique devotion to their case (and to its own). AUSA Litt adopted the Mayers and their offshore cause, first getting them to stay their lawsuit in State court so that, while Litt was pressing forward, the defendants would not have an opportunity to examine the Mayers or others under oath -- while waiting years for their trial (because of Litt's continued "need" to force litigation over "privilege" issues that would not have arisen had he been proceeding by subpoena instead of "all assets" search warrant). The government has done the same thing with Lily Cates' civil suit – asking for and promoting "stays" (of a civil case and, apparently, an arbitration against Bear Stearns, still pending).

The government need not have worried about defendants' getting the "upper hand" (*i.e.,* being allowed to defend), because it had already succeeded in getting JP Morgan to withhold defendants' funds so as to disable them from defending. (GX 3482-16, Petercsak letter stating in July 2005 that it had "agreed" with the SEC and DOJ to not release any Amerindo funds to the defendants unless the SEC or DOJ approved). Without funds to litigate the civil Mayer case, which heated up with Begos' litigation-fervor after sentencing, a 'caretaker' lawyer for Vilar did nothing affirmative because he wasn't getting paid and had little incentive to work with anyway. Lawyers for Mr. Tanaka withdrew, as they were doing in the SEC case after it became obvious it would require extensive litigation.

Prosecutor Litt was, at the same time, delaying the sentencing endlessly. While the defendants waited – with Mr. Tanaka receiving no "credit" against his sentence for all this "time" he had to spend in NY alone under electronic monitoring constraints awaiting sentencing – Litt embraced the Mayers' "desperate condition"- card and induced Mr.

Ms. Bachrach therewith withdrew from the Mayer case (Mr. Tanaka could no longer pay her) and Glenn Colton (who had initially agreed to represent Mr. Tanaka on the SEC case but withdrew from that too) did not step in though he had participated in Litt's scheme to give the Mayers' $150,000. Presumably, defense counsel's rationale for agreeing to this no-win payment ploy of favoritism to the Mayers was to curry favor with the prosecutor (as if it might help) by acceding to what Mr. Litt wanted. In any event, Begos got this Court to Order that the defendants must "immediate[ly] instruct JP Morgan Chase to wire transfer $150,000 from the Techno Raquia Account to an account designated by Patrick W. Begos, Esq., counsel to the Mayer Family." A Stipulation dated November 19, 2009 was concurrently filed in the Mayer State case at the same time; by its terms the stipulation permitted Begos to "hold this stipulation in escrow pending the so-ordering of the Stipulation and Order in the criminal case."

Begos and the Mayer sisters have continued to "drive" this litigation from the beginning, and the prosecutors and SEC lawyers have all but suborned perjury and tax delinquencies to facilitate their case – a case involving offshore transactions not worthy of a US prosecutor's attention given the Supreme Court's ruling in *Morrison*.

If the prosecutor and the SEC lawyers had read the material in government's files they would have seen that the Mayers' claims of desperate conditions was a common theme pervading their correspondence with Amerindo throughout their almost 20-year history during which they were Amerindo's offshore clients, when they failed to survive (they said) on $96,000 / month. This was 'tax-free', too.

Though this fact ('tax-free' money) "came out" at trial, the prosecutor not only ignored the tax cheating with a wink about how to evade penalties and interest (by classifying all prior Amerindo payments disguised as payments of principal), but camouflaged it by allowing them to "blame" Alberto Vilar for showing them how to establish complicated offshore tax vehicles, even so stating on chronically late-filed tax returns for long-lapsed years. They say in these apparently-filed returns (turned over at the criminal trial) that they *ex-post* treated their money as a return of capital "as a result of the

9

massive fraud alleged to have been undertaken by Vilar with respect to the Amerindo Companies, of which the taxpayer is one of the victims ..." (Gov. Exhibit 9201). (But don't worry: they now swear that they will classify any "excess over the remaining investment amount" in subsequent years, as ordinary income ....)

Worse, at the criminal trial, in response to a defense summation briefly mentioning Lisa Mayer's tax cheating, the prosecutor defended Lisa Mayer by suggesting that her tax advice may have allowed this and in any event the IRS allowed this ploy. The prosecutor argued in rebuttal summation, in essence, "So what ..." ? (T.5491):

> "But, in any event, the point is that Mr. Colton started to show Lisa Mayer her tax returns. And you saw her, she was a little confused. And she kept saying, I did what my tax advisors told me. He only showed her her tax returns. He didn't show her the tax returns for her family. And the Amerindo investment was not just hers, it was hers and her family's. And then on redirect I showed her the tax returns that went to her sister and her father.
>
> And you saw that they didn't just report $20,000 or $60,000. They reported millions of dollars. And then Mr. Colton focused on the year 2003, and collectively the tax returns only showed $250,000, and the Amerindo documents showed $600,000. Well, we didn't hear from tax advisors. We don't know exactly what happened. We know that the Mayers reported millions and millions of dollars in taxes. We know that *this whole thing was done out in the open with the IRS's blessing*. And we know that the Mayers didn't get some of their interest payments at the end of 2002. Remember they were getting $96,000 a month, and then Lisa Mayer testified that she didn't get the interest payments for one month, then she didn't get the next month, and there were different things coming, going on."

In the State civil case, including in motions for default judgments against Amerindo entities that could not defend, Lisa Mayer repeated the untrue justification that Alberto Vilar had been the cause of the Mayers' offshore structuring to receive payments from Amerindo. Paragraph 12 of the Mayer amended complaint in State court alleges

10

that "defendants [Vilar and Tanaka] insisted that the Mayers restructure the ownership of the funds that Amerindo was managing" to "establish a trust ... based in the Bahamas – and to organize two Bahamian corporations to be owned by the trust." Paragraph 13 alleged that the Mayers "complied with defendants' instructions" and "allowed" the assets to be structured through their offshore firms, DABA and ABA.)

The suggestion that the Mayer cheated because of the "insistence" of "defendants" would be laughable if it were not so serious and carried such grave consequences. In response to recent events I have looked (again) at Government Exhibits from the criminal case (not used at trial) to demonstrate what was known, and what was "overlooked." The documents show a *history of studied tax cheating* by the Mayers that pre-dated any connection between them and Amerindo/ Vilar/ Tanaka.

In 1991 – according to the Mayers' own documents (so Bates' stamped) which the government had in its possession – the Mayers already they had a primer on how to avoid using Puerto Rico bank accounts. Offshore routes as of 1991 were also documented. For example, the documents show them receiving *travelers' checks* from offshore sources in 1991. They already had offshore accounts and were well-versed in structured investment vehicles, including a Swiss account. The Mayers changed offshore identities so often that apparently the government could not even trace these identities when they had all these documents before them! (Or else, the government didn't care. But it has led to *this fiasco*.) (I will supply copies of these documents in an emailed copy of this letter, wherein I can add attachments. I ask for formal permission to file these documents on the record as well. )

Delving into this mess further (with no remuneration because this Court has refused to allow fees for me and has shifted all litigation to this civil case (having first denied the application to add Jane Simkin Smith as CJA counsel, Doc. 513 05 cr 621 (RJS) filed 2/9/2012, on the ground that "it is by no means clear ... that there will be a need for an additional lawyer ...."), I see further that, according to the Sentencing Transcript in the criminal case, the *request for compound interest on restitution awards came from:* PATRICK BEGOS (*See* Sentencing Tr.

11

47-78). Not only did the Mayer girls "speak" at Mr. Vilar's sentencing, but so did Begos himself. When he demanded compound interest, Mr. Litt said he had "[c]ertainly no objection to compounding" (Tr.49); defense counsel for Mr. Vilar (Mr. Marks) said only that "it doesn't have to be compounded in order to render fair restitution." Mr. Tanaka's counsel, who was present at the Vilar sentencing though he had told Mr. Tanaka to *not* be there, said nothing.

No one spoke in favor of other investors who had not insinuated themselves in the criminal case to the extent the Mayers did. (Mr. Begos kept on talking until he decided to "end" at Tr. p.55).

At Gary Tanaka's sentencing which occurred right after Vilar's sentencing, Marc Litt laid into Mr. Tanaka not only because he advanced the notion that there were *no losses,* but also because Mr. Tanaka had not caved in to the Mayers. Litt thus stated that he was "not aware of Mr. Tanaka accepting any responsibility for the crimes of which he was convicted." (Sentencing Tr. 117). "To date in sentencing submissions," this public official derided, "Mr. Tanaka takes the view that there was no loss." (*Id.*) [emphasis added] Litt's only observation at sentencing as to any mitigating conduct of Mr. Tanaka was that "[h]e did agree, as Mr. Vilar did, to allow the $150,000 to go to the Mayers, and that is something certainly to his credit."

Now, Sharon Levin has taken up the Mayers' cause(s) and the result is that payouts are stalled by joint action of Patrick Begos and the government, with the SEC demanding maximum penalties. *No one has gotten money* because the government wants to punish the defendants as if there were millions of dollars in losses. And Begos ties things up with his defective judgments that the government should have *stopped* until everything is resolved, not just what the government wanted after which defense lawyers bailed out.

Before the government intruded here, the Mayers and Amerindo were negotiating for full payment on a slower schedule, at a lower interest rate. In 2003 the Mayer received $50,000 regular monthly payments with an additional $271,373.21 paid in January 2004. They received two further payments in 2004, both sent from Bear Stearns or Smith Barney. While negotiations were under way for a full repayment,

12

the Mayers were receiving interest at 5 % (the double-digit interest rates of the previous decade were falling to present levels) per annum on a bi-annual basis. A principal payment of $0.5 million was agreed to and slated for the end of June 2005. This case put a stop to the repayment schedule. If everything had gone as agreed to, the Mayers would have had all their money long ago.

Where was the government in championing others' claims? For instance (as I brought up when I first entered the case and was trying to get a handle on things ), Graciela Lecube Chavez (an over-85 year old retiree with a balance of less than $50,000) at least twice asked the Postal agent to get her money released for her. No one did anything to help her although she nobly testified for Mr. Litt's cause at the trial, alongside the Mayers. Instead, Graciela is named as a defendant by JP Morgan in the Interpleader action, and supposedly must answer a complaint and continue to fight for her account which the defendants have agreed should be paid to her.

As to JP Morgan, we have come to the point (with its letter to Judge Sullivan of June 10, 2013) where JP Morgan has the *chutzpah* to insist that *it* is entitled to fees in connection with the Interpleader, 12 cv 5240, and seeks to discharge itself from all liability for its conduct in connection with the Amerindo funds it has held. Presumably it asks for fees from my clients, though it has stolen interest off the Amerindo accounts since 2005 and confiscated supposedly "abandoned" account assets for its own benefit. It has refused to give us asset statements for the accounts on which my clients are signatories (all the while sending statement to some unauthorized person or entity in the Bahamas).

The bank also supports its demand that someone else must pay for its dereliction by clinging to the assistance of Ian Gazes. Its letter refers to Mr. Gazes having "shared [his] report" with counsel for JP Morgan "since it concerns funds and securities held at JP Morgan that have been restrained .... and is relevant to JP Morgan's Interpleader claims ...."

Wow! What gives? Not only did the Receiver attempt to allow JP Morgan to set its own fees and expenses to liquidate securities it has held without due regard for its owners' rights and without *any* prior

13

disclosure of fees and expense debits, but he also "shared" his report in an attempt to allow JP Morgan to *escape* due counterclaims in the Interpleader case it started. *And*, it still wants to "hold the Funds pending resolution of the claims" – and (presumably) *not* be held to account even for interest sums that should have beene paid, to Amerindo or to the investors seeking their funds from these accounts.

The tragicomedy of this case is, all the while the government and the Court (and some opportunistic clients) want to *hold* Amerindo liable for interest it was *not* receiving while it was *not* allowed to manage these funds *or* to assert its rights to *receive* interest.  And the Mayers have been allowed to take the lead on this.

In any event, the SEC has finally woken up to a need to evaluate investor claims.  Better late than never.  But spending more money to do this – the defendants' money – is not the answer.  Endorsing Mr. Gazes' insistence on hiring other professionals is also not the answer, as Mr. Gazes did not even complete the jobs he was tasked with.  Mr. Gazes, as Receiver, showed himself bent on acting in favor of the big banks in his prior bankruptcy experience, instead of maximizing 'live' assets, those assets of living entities with property rights.  He had no plan to manage funds, or maximize them:  just to haul them away.

Before approving a plan to hire more people to pay out largely undisputed claims, someone should answer this:  What's wrong with our suggestions to replace him with Mr. Knuts, who would monitor a payout made by the defendants?   No one has given a reason why this would not be a cheaper and faster approach. No one has given a reason why the last Amerindo account statement, which everyone has accepted previously, should not constitute the basis of investor claims, adjusted to May 25, 2005 – the last date on which Amerindo was able to make any investment decision whatsoever.

Even still, the SEC makes no plan to have the funds *managed*, or for any public securities to be sold, or for the privates to be evaluated.  Instead they want the money (how much of it? All accounts?  Just the so-called "investor accounts"?) dumped into the Court registry for further stagnation, and vulnerable to more administrative 'expense' assessments.  Evidently, all in the service of

sustaining its case, though it has now been concluded by the Receiver that all along there has been enough to pay back investors as of the date the SEC/DOJ shut the defendants' legitimate business down.

The SEC tells the Court that a claims and distribution process is a "standard function" for an SEC receivership in an SEC civil injunctive action. This is hardly a "standard" case. The SEC found liability first, and is asking questions only 9 years later. It has disabled the defendants from defending themselves by refusing to release funds-- including their Pension Plan domiciled and regulated in the U.K.--for the defendants and refusing to "allow" the defendants to manage their own moneys. All this is *before* any final judgment. As noted we have a motion for reconsideration of the summary judgment ruling pending – and that is the *only* basis on which any receivership could be sustained. Meanwhile, for the first time the Receiver states that a date certain for liability can be set – which is the date Amerindo closed – and the money was there.

Further, though the SEC seems to recognize the fact that defendants assert property rights in the funds held, there is no provision for releasing funds to them so they can properly assert and litigate their rights. The SEC and the Court have taken the "convenient" route of shifting all litigation from the forfeiture case, where defendants are entitled to CJA lawyers, to this SEC case, where they can force litigation without a full and fair opportunity to defend. This is a violation of (at least) the Fifth (Due Process) and Sixth (counsel), as well as Eighth (excessive fine and punishment) amendments to the US Constitution.

WHY CAN'T THERE BE AN AGREED-UPON RESOLUTION ALONG THE LINES OF OUR PROPOSAL AND END THE CASE? Let's hear ONE GOOD REASON. *If* the SEC had done its job, this payout would have been accomplished in 2005!

*Despite* the lack of funds available to the defendants, if this forced plan goes through, without allowing management or the distribution of defendants funds *to them* (under *Monsanto* or any other device), we will have to appeal the Receivership and injunction against a fair defense. There is something uniquely unconstitutional going on here,

especially now that *someone official (*the Receiver) concludes that there was/is enough to pay investors their contract sums and always has been – but everyone keeps proceeding on the basis that the defendants should be punished as if they had stolen those sums.  Are not years of jail time and the ruination of their ongoing legitimate business enough?  Shall we perpetuate this mistaken melodrama of "losses in the millions", "fraud" and "victims" just as some monument to a prosecutor who is no longer on the scene and made the wrong calls?

Litt made it sound like there was a huge international Ponzi scheme to support *his* need to vindicate his public statements in 2005, and those of his supervisor David Esseks, to the bail judge on June 3, 2005, and to the world, that there would be losses in the millions caused by Amerindo Investment Advisers, and these defendants specifically. Not even Mr. Tanaka's own lawyer dared to stand up to this bully and think for himself, and the sad part is that he swayed the other professionals in the case into the government's agenda with him. Appease the prosecutor: that's the only way, because of the paranoia of huge losses out there, presumably at the ready in a sealed superseding indictment, and presumably something that the defendants can get their hands on if they "flee".  And no matter what – the defense seemed to accept – don't bother looking in the SEC's San Francisco files. As Litt also told the bail court, the SEC was "on the job" as to the California part of the operation.  It should have told the prosecutor, and the grand jury, that the SEC knew of and approved the Amerindo Panama operation of the Amerindo since 1993 and signed off on an 'examination" in early 2005, just weeks before shutting Amerindo down, when without contradiction from its own files, it labeled Amerindo one vast international criminal "enterprise" so it could grab all assets.

Mr. Colton, with his cozy relationship to the prosecutor, came close to accusing the prosecutor of the unfair tactics when, in response to Judge Sullivan's questioning at sentencing as to why nothing had been done to get funds managed and investors paid earlier, Colton first assured "we should have done something." But he protected Mr. Litt's stubborn refusal to value the assets, because he would then have to acknowledge he had been wrong about Amerindo losses, with the assurance (" I'm not accusing anyone of anything" ) that "nobody even wildly imagined it would take that period of time."

16

He further assured that "there were certain actions that were taken to avoid serious loss. There were Google options in the account that were in the money that might have expired [actually, they were deep in profit, trading on parity with the stock with no 'premium', so it was unlikely any disturbance was necessary], and action was taken to ensure that those funds would be secured, the gains secured and left in place." (Sen. Tr. 114). But a lot more was *not* done.

Instead of reporting that JP Morgan had not paid the interest and confiscated abandoned accounts at will, Mr. Colton did Mr. Litt's work in expressing "confiden[ce] that the SEC wouldn't have allowed these two people to do this work. And we never thought it would take this long." (Sen. Tr. 114-15). "We?" It's time to act now.

### Attorney's Lien, and Objection To Using Civil Litigation Rules To Preclude A Fair And Open Defense

Finally, two things: (1) the parties and the Court should be advised that Vivian Shevitz and Jane Simkin Smith hereby assert an attorneys' charging lien, pursuant to NY Judiciary Law 475 and 475-a, as to all sums released as a result of their representation of Gary A. Tanaka in appeal 10-521, and in SDNY 05-cv-5231, 05 cr 621, and 12 cv 5240(RJS) – and in any related case in which they or either of them are required to appear to protect defendants' property rights in connection with the "forfeiture" in 05 cr 621(RJS). I have a consent to charging lien signed by Gary Tanaka and will provide it.

And (2) I ask the Court to order the docketing of all the letter-filings in this case. They are substantive. The defendants' voices cannot be heard otherwise. Our letter anticipating the Receiver's report sent to the Court and to all "parties" on May 29, 2013, and letters of Mr. Begos, JP Morgan, the SEC, and Julian Friedman should be docketed so that we have a full record for appellate review as to the Receivership.

I register a strong objection to the unconstitutional approach of shifting all forfeiture/monetary penalty litigation to this "civil" case. The CJA applies to criminal cases, and this is no less a "forfeiture" litigation than the "straight" forfeiture litigation in the criminal case. It seeks to strip my clients of their assets as an incident of "forfeiture" in the criminal case.

17

At the same time I have been prevented from fairly presenting my clients' positions by court rules that require litigation by letter, unfiled as a matter of course in the dockets because of an SDNY "rule", and as to which I do not always receive notice. Mr Begos loves nothing better than to *not* give me notice, and Sharon Levin has done the same thing. The SEC, for its part, doesn't want to tell us about assets it helped to "hold" such as the Cayman liquidation proceeds, which Sharon Levin accomplished by *ex parte* proceeding ending up in Document 473, dated 3/8/11 in the criminal case [Levin and the Cayman liquidators agreed to transfer restrained funds without anyone's participation or knowledge – funds as to which the government does not have title.] This Court then signed the Order alienating defendants' moneys without giving notice either. Orders have come down in the "interpleader" case without notice to us, including a lecture by the Court of how Mr. Begos should proceed in a turnover action, and Sharon Levin's agreement to lift restraints for the Mayers. (See Order 11/15/2012: "Under Rule 69(a) of the Federal Rules ... "[t]he procedure for execution ... must accord with procedure of the state ...."])

Then, when I do receive notice, local rules and rules of the individual judges limit my responses to a certain number of (unfiled) pages. Nowhere are we allowed to speak, publicly, about the outrageous conduct here. I object on Constitutional grounds. This misconduct and the imposition of unfair rules in "civil" cases have prevented and continue to prevent Gary Tanaka, Alberto Vilar, and Amerindo, from asserting defenses in a public forum. *Cf. Chambers v. Mississippi*, 410 U.S. 284 (1973).

I know, for instance, that this letter is "too long" for a civil case before Judge Sullivan. But there has been no device to file objections to proceedings openly, and my letters have expressed objections to the *manner* of proceedings. I have had to write "informal" letters to the Courts to object to procedure, or face "appearing" in a case so I'm compelled to litigate endlessly without access to fees, to assert objections to the violations of defendants' Due Process and substantive rights. This letter is another in my series of objections.

I ask for permission to file this letter now, and to file it publicly, with attachments I will provide (and provide by separately-sent email)

18

that demonstrate the points I'm making – such as the Mayer documents that the government had in its possession but "suppressed" by studied ignorance, to make it seem like the Mayers had been forced to structure transactions offshore and were "induced" to violate US tax laws. Sunlight is the best antiseptic.

The SEC and DOJ should release funds and let the defendants pay off their investors on the basis of their last 2005 statements adjusted for post-last-statement payments. This is the payout proposal we have urged for a year and a half now, with no real substantive objection and no better plan. If the government insists on having someone watch, it should be someone independent like Mr. Knuts. No one should compel the defendants to use directed brokers such as JP Morgan to liquidate its securities, after Amerindo (unlike other investment managers) had long preserved clients' principal in an offshore capacity, a game they all sought and played.

> Very truly yours,
> /s/
>
> Vivian Shevitz

To: Andrea Weiss (JP Morgan)
S.E.C. – Mark Salzberg and Neal Jacobson
DOJ – Benjamin Naftalis, Justin Anderson, Sharon Cohen Levin
Nathan Dershowitz
Glenn Colton
John Koski (John.Koski@dentons.com)
David Mainzer
Eugene Licker
Rick Cohen
Patrick Begos – for Lisa Mayer, Debra Mayer, ABA, DABA, and all their offshore entities
Julian Friedman (for Paul Marcus and other investors)
Huw Davies (Amerindo UK Pension Fund)
Ian Gazes
David Burger
The Press