
**GAZES LLC**
ATTORNEYS AT LAW

MAIN TEL: (212) 765-9000
FACSIMILE: (212) 765-9675
WRITER'S EMAIL:
ian@gazesllc.com

# MEMO ENDORSED

July 30, 2013

**By E-mail**

Honorable Richard J. Sullivan
United States District Judge United States District Court
Southern District of New York
500 Pearl Street New York, NY 10007

| USDS SDNY |
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #: _____ |
| DATE FILED: 8-1-13 |

**Re: *Securities and Exchange Commission v. Amerindo Investment Advisors
Inc. et al.; Case No. 05-cv-05231-RJS***

Dear Judge Sullivan:

Yesterday afternoon, the SEC alerted the Receiver to a letter, a copy of which is attached as Exhibit "A", from defendants Gary Tanaka and Alberto Vilar as well as their counsel, Vivian Shevitz, that has recently been mailed to at least one and possibly several Amerindo investors regarding, *inter alia*, the status of Amerindo investor funds and the prospects for the return of these funds. The letter further advises Amerindo investors that the defendants have set up a special email address and have asked investors to send them updated personal contact information and to let other investors know about the letter. Counsel to an Amerindo investor forwarded the letter to the U.S. Attorney's office, which, in turn, forwarded it to the SEC.

The Court has entered various orders adopting the Receiver's recommendations and the Receiver will soon serve notice to investors to file claims in connection with the recommended claims and interim distribution process approved by the Court. In order to avoid any confusion that may be caused by the Tanaka/Vilar letter, the Receiver, with the support of the SEC, respectfully requests that the Court authorize the Receiver to send a letter, in the form attached hereto as Exhibit "B", to the Amerindo investors.

Respectfully submitted,

_____/s/ Ian J. Gazes_____
Ian J. Gazes
Receiver

CC

Patrick Begos, Esq. (pwb@begoshorgan.com)
AUSA Sharon Cohen Levin (Sharon.Levin@usdoj.gov)
Andrea L. Weiss, Esq. (aweiss@llf-law.com)
Mark D. Salzberg, Esq. (salzbergm@sec.gov)
Neal Jacobson, Esq. (jacobsonn@sec.gov)

SO ORDERED_____
Dated:
7/31/13

RICHARD J. SULLIVAN
U.S.D.J.

Vivian Shevitz, Esq. (vivian@shevitzlaw.com)
Jane Simkin Smith, Esq. (jssmithl@optonline.net)
David C. Burger, Esq. (dcb@robinsonbrog.com)
Paula K. Colbath, Esq. (pcolbath@loeb.com)
Nathan Dershowitz (ndershowitz@lawdea.com)
Andrew E. Goldsmith, Esq. (agoldsmith@khhte.com)
Thomas J. Hall, Esq. (hallt@hallandhalllaw.com)
Eugene F. Hestres Velez, Esq. (ehestres@bbh-law.com)
Timothy Wright (twright@entecworks.com)
Robert Fryd (Rfryd@wbcsk.com)
Julian Friedman, Esq. Ufriedman@stillmanfriedman.com)
David Mainzer, Esq. (mainzer@sposilco.com)
James Webster, Esq. Uwebster@khhte.com)
Ian Gazes, Esq. (ian@gazesllc.com)

# EXHIBIT A

# AMERINDO INVESTMENT ADVISORS (PANAMA)

## LETTER TO OUR INVESTORS - JULY 2013

To Our Investors:

*What is the current status of our investment capital ?*   Nearly $50 million has been on deposit, sitting unmanaged and without earning interest after our forced closure in May 2005 by the United States Attorney in the Southern District of New York (DOJ, for "Department of Justice") and the Securities and Exchange Commission (SEC) (together, "The Feds").

*Will we ever receive full recovery for our investments ?*   Throughout our ordeal we have always declared our intention to pay our clients their full redemptions: that is, the balance on our books at May 2005. This includes any catch-up interest due on all fixed-rate deposits up until that cut-off date. The Feds have made this straight-forward task impossible so far. Fortunately, the vast majority of our private clients have already received more, if not vastly more, than their original balances invested with us.

*Why am I ineligible for any further returns on my investment past May 2005 ?*   Because of the illegal *de facto* freeze on your funds by The Feds, Amerindo was constrained from managing your capital for further appreciation after that cutoff. An in-depth investigation in early 2010 highlighted the *indifference* on the part of The Feds (no investment manager was in place while we were constrained from rendering our expertise), if not *neglect*, in that some of the assets were even astoundingly permitted to be declared "abandoned," then seized, by the custodian J.P. Morgan Chase. In addition, it was determined balances over $20 million did not accrue any interest at all – though we have brought this to the attention of The Feds repeatedly). As a direct consequence, it was calculated on a full evaluation, including private securities, this portfolio *decreased*, in fact, by about $1 ½ million between 2005 and 2010 because of the government's refusal to let us, or anyone else, manage these investments).

*Why didn't we receive our redemption proceeds earlier, if these assets were always intact, as you indicated ?*   Amazingly, it is because the existence of these assets were deemed "not relevant" by the lead DOJ prosecutor (who apparently was concerned if this pot of money were indeed "relevant" it would show that his haste and zeal to convict us was based on patently false assumptions). Without doubt, the prosecutor and the SEC knew about these assets in 2005 when they shut us down. No one seemed to care enough to allow us to pay our investors.

We prepared a precise valuation of these assets for the court's attention in early 2010 (following a nine-month research and analysis--instigated and funded by us despite the fact the Feds had decimated our defense funds). Sadly, no one told the jury about this pot of assets during our criminal trial, which did not commence until late 2008. This fact would have indicated to the jury that, contrary to the Feds' claims, the Amerindo clients referred to by the Feds as "victims" had not lost a penny of their investment (and never had). The very existence of this money continues to be an embarrassment to The Feds, because of their sensational initial public accusation of a Madoff-like "huge Ponzi scheme" on our part, which was a complete fabrication. By hammering on this falsehood they even enticed some of our investors to testify for the prosecution in the "fraud" trial about our contractual relationships.

Since then, the Feds have acted under a "cover-up" mode. Finally, in May 2013, a court-appointed Receiver proclaimed officially that it "appeared" there were "sufficient assets" to pay all our offshore clients all along (even though no one would have imagined a "run on the bank" at the time). Though the Feds have claimed to have been always acting in the interest of our clients, most shockingly they did not have the decency to keep you informed during these over eight past years--or at least to relieve your anxiety-- in revealing the certainty of receiving your still-pending 100% investment proceeds after all this time. Meanwhile, you are still waiting.

*What is the projected payout timetable ?*   Our best guess is that initial payouts will be in your hands early in 2014. An appeal of our conviction was argued in August 2012 after written briefs were submitted. We are still awaiting the decision of the Second United States Court of Appeals (New York). We anticipate a successful outcome, probably by the end of this summer, because this same court released both of us on bail pending appeal, that is, prior to the final decision. This is a concession which is highly unusual. We hope to have wrested official "control" over the funds at that time. We will first need to ascertain and validate the correct amount of our obligations to our clients -- some of whom might have become 'lost' over the intervening years because the Feds, as yet, have not deemed it necessary to even begin the process to evaluate their client claims.

*What is the outlook for the appeal of the criminal convictions and the SEC case against you and Amerindo ?*   We are hopeful of full exoneration along with the return of our 'frozen' funds. At that point we will be

able to start rebuilding our lives after years of incarceration, the loss of our long-established international company and the besmirching of our professional reputations. We will then finally be able to devote our total energies to finish the important task of returning the full investment balances to you.

In closing, it should be obvious to all we did not perpetrate a "fraud," to leave hapless "victims" in our wake. We have included a copy of a recent submission in our legal proceedings. This will give you an overview of recent progress in key legal happenings. We have always tried our best to maximize your investment returns. We only wish we could have avoided this colossal waste of time, and the stagnancy of your investment capital. But we have been caught in the cross-hairs of an unrelenting federal campaign to whitewash an unjustifiable act of the wanton destruction of our business and lives, initiated on false accusations.

Once again, we will return your account balances as of the date we last had control over them, and assure you of our intention and best efforts to accomplish remitting the funds to you as soon as possible.

With best regards,

*Alberto Vilar  /  Gary Tanaka*

\*\*\* Since our release from prison we have been supported by Social Security benefits and the generosity of our friends and family and two of our appellate lawyers. Our legal struggle is maintained by court-appointed counsel and deferred legal compensation. Alberto has lost his remaining New York residence. Gary has not been allowed to go back to his home in London since 2005, not having seen his family, including son Alex, who is now nearly age 17.

*This is anticipated to be the first of a series of informative updates to our investors. We have not contacted you before now because of a combination of Fed intimidation and advice to the contrary from our previous lawyers. Whereas we have attempted to locate all of our clients from our outdated files we apologize for any omissions and oversights. Please assist us by 1) notifying us of any of your recent contact changes (address, phone number, email), and by 2) passing this letter on to any clients you might suspect have slipped out of touch. You can contact us at our specially designated email address, Amerindo.clients@gmail.com. We look forward to any and all of your comments. Please allow for some delays in our responses back to you because of our shortage in staff and resources.*

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## APPENDIX: 30 MAY 2013 LETTER FROM VIVIAN SHEVITZ

I am a federal appeals lawyer, former Chief of Appeals of the US Attorney's office, Eastern District of New York (1978-82), representing Alberto Vilar and Gary Tanaka, the founders of Amerindo Investment Advisers Inc., a US Advisory Company of sterling reputation for 25 years. It was shuttered precipitously in May 2005 after 19 armed federal agents executed a secretly-obtained search warrant at Amerindo's New York offices, publicly announced they expected losses in the millions, and arrested my clients, its founders, and trader, on the most tenuous of charges after only 5 weeks' "investigation" on wild allegations – publicly proclaimed – that there would be mega-millions of dollars of client losses (because Amerindo was such a successful company). United States v. Vilar and Tanaka, 05 cr 621 (RJS) (SDNY); appeal 10-521 (US Court of Appeals).

Though Mr. Tanaka and Mr. Vilar never lost a dime of any client's money through fraud (though there were of course normal trading losses in the accounts, fully disclosed and accounted for) and in fact *no client* had claimed "fraud," just delayed redemptions, the damage was done. And it is still being done. The SEC and US made sure these men would not be able to defend themselves properly after bankrupting their highly-regarded $1.25 billion US company, Amerindo Investment Advisors, by "simply" asking their big investment bank, then Bear Stearns, now JP Morgan, to just 'hold onto' the Amerindo funds custodied there until and unless the SEC and US Attorney authorized its release. This, it refused to do even now, and I have been "forced" to defend these men without fee because 9 years later, the same prosecutors and SEC lawyers are trying to take all of their assets (without ever proving the "loss" they proclaimed 9 years ago and still proclaim), and force them to execute a release of the government and JP Morgan despite their malfeasance. I am doing this without for no current fees because, although *criminal defendants* are entitled to appointed counsel (and I represent Mr. Vilar on an appointed basis in the Second Circuit), *civil defendants*, in an SEC case, are not entitled to counsel. The government – with the complicity of the trial judge who has done the prosecutors' work – has just shifted all the financial/"forfeiture" litigation to the parallel sister *civil case* and has refused to release money for them to pay fees to anyone, to take care of their own needs, or for any purpose.

A year into the litigation a different federal judge held that that search was unconstitutional and that the government's theory that "Amerindo" was fraudulent was unsustainable. An SEC Monitor responsibly concluded that all money of the US Advisory clients, institutions and pension funds, was "there", and all US company investors got their money back. There was no need for a Monitor.

Nevertheless, the same prosecutors who drafted the defective and unconstitutional search warrant, and the same SEC lawyer who was *present* at Amerindo's offices when the unconstitutional search was occurring, have continued to claim these defendants are responsible for millions of dollars of client losses. They *intimidated* everyone around the defendants, including defendants' own lawyers, into "not looking". They intimidated and bullied defendants themselves -- and got defense counsel to "buy into" -- the threat of yet greater punishment for what they intimated was yet unindicted offshore "fraud."

When, before sentencing in 2010, it came to light (through a defendant-retained expert's analysis of private tech securities held since 2005) that in fact there had been assets in the Amerindo accounts (frozen at JP Morgan) sufficient to have paid out all investors as of 2005, but depreciating since that time because the government never required or arranged for the assets to be managed and refused to allow the defendants to continue managing their own funds -- the prosecutor told the judge that it was "irrelevant" and defendants should be sentenced *as if* there was a fraud and there were losses. Worse, without ever ascertaining the amount of Amerindo customer claims or the amount of assets held frozen, they secured a "restraining order" as to *all* defendants' assets, including UK pensions, pushing through (before I was on the case) a "forfeiture order" that now (on appeal) the government admits is wrong and must be vacated. (Appeal 10-521, US v Vilar, argued at the Second Circuit Court of Appeals August 21, 2012).

Still to this day, the government is trying to bully defendants into giving up their claims against the government. They threaten to hold up an investor claim process – one we've sought for *years* now – unless we sign a provision *releasing* from liability the DOJ, the SEC, and JP Morgan. That process, and evaluation of frozen assets, was and is a necessary step for Mr. Vilar and Mr. Tanaka, because, as we've told the government repeatedly, it would *demonstrate* that client funds were not "lost" or missing. The SEC and DOJ are pouring millions of dollars into this prosecution to hide their wrongdoing, and immunize themselves and JP Morgan, while Amerindo investors whose money has been tied up for years, while their client's funds, and they, are left hanging.

The Second Circuit took the unusual step of granting bail on October 2, 2012. But the trial judge, who worked with the prosecutor in the Southern District of New York's US Attorney's office with him -- as unfortunately, Mr. Tanaka's defense counsel also did-- continues to give the prosecutors *carte blanche*.

The latest move -- to which I responded yesterday -- prompted me to reach out for you. To try to pry the accounts loose and grab far more than "investor money" for JP Morgan to do with what it wants, the government got the Court to appoint a receiver. Instead of trying to hold JP Morgan accountable to maximize the assets, he has worked *with* JP Morgan and was set to recommend it continue to hold the assets, continue to run the show, and to set its own fees and expenses. The SEC's and DOJ's position? 'Sure, go ahead, do it'. And if defendants want to have their clients paid, and first have their clients' claims evaluated (for the first time in 8 years), the defendants should have to pay more, *and sign* a complete and total release. We said no. Someone should be watching this. The attached letter was sent to the Court yesterday, concerning the receiver's plan to push the SEC's agenda, with little regard for the defendants' constitutional rights, or for those of defendants' investors.

***UPDATE MAY 30, 2013.*** Today the receiver filed the expected report. Stunningly, he still "recommends" employing JP Morgan without its even setting forth its fee structure. More stunning is this: As an obvious afterthought to a report prepared before our anticipatory objection, the receiver inserted, as a footnote, the following, which is the receiver's most important conclusion: *"It is believed that the amount of individual investor claims as of May 25, 2005, the last date on which the various investor accounts were actively managed, can be fixed with certainty, and that there should be sufficient cash and public securities in the investor accounts to pay these claims."*

If this is the case, the government's whole case should fail. The prosecutor and SEC have supported its "fraud" case with the allegation that there would be millions of dollars "missing" and lost. They are wrong. There was no fraud. The government suppressed this evidence and convicted defendants on false accusations. It should report the Receiver's conclusion that assets were there all along to have paid investors as of May 25, 2005 to the Court of Appeals and state it to the press.

These men were prosecuted as if their accounts had been "stolen" when the government knew and knows that there was no loss and no theft. As the Supreme Court wrote in a 1956 opinion, "the dignity of the United States Government will not permit the conviction of any person on tainted testimony; this conviction is tainted, and justice requires that petitioners be accorded a new trial." *Mesarosh v. United States*, 352 U.S. 1, 4-9 (1956) (granting motion of Solicitor General to remand the case to the trial court for further proceedings because it learned of untruthful testimony given before other tribunals by a Government witness.)

This case may be worse than the Ted Stevens prosecution with prosecutors gone wild but with defendants completely cut off from their funds to defend this. This cohort of prosecutors in the SDNY around 2005, have done this before, with the notorious *United States v. Stein*, 541 F.3d 130, 136 (2d Cir. 2008) where the SDNY prosecuted KPMG employees after induced KPMG to stop paying the employees' defense costs, through bullying and intimidation of KPMG. The Second Circuit dismissed the indictment for the government wrongdoing. The same thing ought to be done here. And it should be done by prosecutorial action.

I too am seeking to hold the government and JP Morgan accountable for criminal wrongs. No one will listen. They should. Is anyone watching? I hope someone will look at this.

Please confirm any changes or additions
for your address and e-Mail ID to:

Amerindo.clients@gmail.com

# EXHIBIT B



GAZES LLC
ATTORNEYS AT LAW

MAIN TEL: (212) 765-9000
FACSIMILE: (212) 765-9675
WRITER'S EMAIL:
Ian@gazesllc.com

July 30, 2013

**By E-mail**

[Investor Name and Address]

   **Re: *Securities and Exchange Commission v. Amerindo Investment Advisors
Inc. et al.; Case No. 05-cv-05231-RJS***

Dear Amerindo Investor:

   On October 17, 2012, the Honorable Richard J. Sullivan, United States District Judge for the Southern District of New York entered an order appointing Ian J. Gazes receiver (the "Receiver") in the above-referenced case and empowered him to investigate and determine the value of Amerindo investor assets that have been seized or frozen pursuant to the Court's forfeiture order in the related criminal case, United States of America v. Alberto William Vilar and Gary Tanaka, S3 05 Cr. 621 (RJS). Thereafter, the Court entered additional orders adopting the Receiver's report and recommendations and implementing a claims and interim distribution process for the benefit of Amerindo investors. Copies of these Court orders are annexed to this letter.

   Please be advised that only the Receiver is empowered to liquidate the Amerindo assets and distribute such assets to the investors. All communications from Mr. Vilar and Mr. Tanaka including any attorneys representing them have not been authorized by the Receiver or the Court. Notwithstanding any representations to the contrary neither Mr. Vilar nor Mr. Tanaka have any authority or control over the Amerindo assets and the claims process.

   It has recently come to the Receiver's attention that Mr. Vilar and Mr. Tanaka have circulated a letter to Amerindo investors regarding the status of investor funds including an estimated payout to investors in August 2014. Please be advised that this letter was not sent by the Receiver and has no bearing or relation to the Court approved claims and interim distribution process being implemented by the Court. Formal Notice of Bar Date and form proof of claim will be sent from the Receiver to you under separate cover.

   If you have any questions please do not hesitate to contact the undersigned or David Dinoso of the Receivers office.

        Very truly yours,

          /s/ Ian J. Gazes
        Ian J. Gazes
        Receiver

Enclosures

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────────┐
│ USDS SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY FILED             │
│ DOC #: _____           │
│ DATE FILED: 10|17|2012           │
└─────────────────────────────────┘
```

SECURITIES AND EXCHANGE
COMMISSION,

                          Plaintiff,

        -v-                                      No. 05 Civ. 5231 (RJS)
                                                 ORDER
AMERINDO INVESTMENT ADVISORS
INC., *et al.*,

                          Defendants.

RICHARD J. SULLIVAN, District Judge:

        By Order dated July 17, 2012, the Court directed the parties and interested investors to

make submissions regarding the appointment of a receiver for the limited purposes of taking

steps to value and preserve the assets that have been seized by the government in the related

criminal case and beginning the process of determining how much is owed to victims and

investors.  The Court is now in receipt of several letters and responses from the parties, setting

forth various objections to the Court's proposed course of action, proposals for potential

receivers, and counter-proposals.  However, there appears to be broad agreement that some

action is necessary to value the assets that are currently being held and to determine what actions

must be taken to avoid their dissipation.  Although Defendants and some investors urge that

David Ross be appointed, the Court finds that his past work on behalf of Defendant Gary

Tanaka, as well as some investors, creates the potential for a conflict of interest.

        The Court is therefore prepared to appoint Ian Gazes as a receiver in this case, based on

his experience in managing and liquidating large estates as a bankruptcy trustee.  At this time,

Mr. Gazes will be empowered only to investigate and determine the value of investor assets that

have been seized or frozen pursuant to the forfeiture order in the criminal case, to consider what actions can and should be taken to avoid dissipation of those assets, and to submit a report to the Court regarding his findings and recommendations. Upon receiving his report, the Court will determine whether Mr. Gazes should be empowered to take broader action, such as managing the assets and beginning a claims process for investors.

Additionally, although the Court is prepared to approve compensation of Mr. Gazes at the offered rate of $250 per hour, it notes that it would be necessary for the government to release funds for that purpose. Accordingly, IT IS HEREBY ORDERED THAT the government shall submit a letter to the Court no later than October 23, 2012, setting forth its proposal for the process for compensating Mr. Gazes.

SO ORDERED.

Dated:      October 16, 2012
            New York, New York

RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE

2

A copy of this Order has been sent to:

Sharon Levin, Esq.
sharon.levin@usdoj.gov

Benjamin Naftalis, Esq.
benjamin.naftalis@usdoj.gov

Mark D. Salzberg, Esq.
salzbergm@sec.gov

Neal Jacobson, Esq.
jacobsonn@sec.gov

Vivian Shevitz, Esq.
Vivian@shevitzlaw.com

Jane Simkin Smith
jssmith1@optonline.net

David C. Burger, Esq.
dcb@robinsonbrog.com

Nathan Dershowitz, Esq.
ndershowitz@lawdea.com

Patrick W. Begos, Esq.
pwb@begoshorgan.com

Julian W. Friedman, Esq.
jfriedman@stillmanfriedman.com

Thomas J. Hall, Esq.
hallt@hallandhalllaw.com

Eugene F. Hestres-Velez, Esq.
ehestres@bbh-law.com

Mr. Alfred Heitkonig
alfredo@ahfs.biz

Mr. John P. Aggerholm
jpaggerholm@hotmail.com

Mr. Timothy Wright
twright@entecworks.com

E. Ronald Salvitti, M.D.
ersalvittimd@swpaeyecenter.com

4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌──────────────────────────────┐
│ USDS SDNY                     │
│ DOCUMENT                      │
│ ELECTRONICALLY FILED          │
│ DOC #: ____                   │
│ DATE FILED: 6-20-13           │
└──────────────────────────────┘
```

SECURITIES AND EXCHANGE
COMMISSION,

                              Plaintiff,

        -v-                                    No. 05 Civ. 5231 (RJS)
                                                      ORDER
AMERINDO INVESTMENT ADVISORS
INC., *et al.*,

                              Defendants.

RICHARD J. SULLIVAN, District Judge:

On May 30, 2013, Receiver Ian Gazes submitted a Report and Recommendation ("R&R") regarding his investigation into the assets forfeited in the related case, *United States v. Vilar, et al.*, No. 06 Cr. 621 (RJS). The Court is now in receipt of responses to the R&R from (1) Lisa and Debra Mayer (the "Mayers"), petitioners in another related action, *In re Mayer v. JP Morgan Secs., LLC*, No. 12 Civ. 5240 (RJS) (the "Turnover Proceeding"); (2) J.P Morgan Securities LLC, Respondent and Third-Party Plaintiff in the Turnover Proceeding; (3) Paul Marcus and Dr. Ronald Salvitti, Third-Party Defendants in the Turnover Proceeding; (4) the Securities and Exchange Commission ("SEC"); (5) Defendants[1]; and (6) Alfred C. Heitkonig, John Preetzmann Aggerholm, Elna Heitkoenig, and Maaike Hickok, also Third-Party Defendants in the Turnover Proceeding.

Defendants, unfortunately, continue to take the untenable position that Defendant Tanaka – who was convicted on multiple counts of securities fraud – should be permitted to manage the

---

[1] In addition, Defendants have submitted sixteen 'exhibits' to their letter, although the exhibits are neither ordered nor, in many cases, clearly referenced in the letter. It is not the Court's job to transform Defendant's document dump into an orderly submission, and it will not do so. Accordingly, if Defendants wish to make the exhibits part of the record, they may submit a revised letter that clearly cross-references and orders the exhibits. Finally, the Court notes its receipt of two letters that are not responsive to the R&R: (1) a letter from Defendants, dated May 29, 2013, in essence objecting preemptively to the Receiver's proposals, and (2) a letter from the Mayers, dated June 19, 2013,

forfeited assets for the benefit of both himself and his former investors. Absurd on its face, that position is particularly outrageous given that much of the delay in restoring the forfeited assets to their rightful owners is attributable to Defendants' conduct in this matter. Defendants' response to the R&R – a 19-page, single-spaced, at times incoherent hodge-podge of *ad hominem* accusation and conspiracy theory – sadly continues the trend of opposing all reasonable efforts to manage the forfeited assets and resolve this matter.

Except for Defendants, the responses to the R&R generally favor moving forward with the Receiver's recommendations. Because the Court agrees that the R&R proposes a prudent, expeditious course to resolving this litigation and restoring the forfeited assets to their rightful owners, the Court hereby adopts in their entirety the proposals set forth in the R&R and in the accompanying Order dated June 19, 2013. Accordingly, IT IS HEREBY ORDERED THAT the Receiver shall begin the process of establishing a distribution fund and a claims and interim distribution procedure. IT IS FURTHER ORDERED THAT the Receiver shall update the Court by July 19, 2013 regarding the status of these activities. No distributions, however, shall be made without further order of the Court. While the Receiver is working to establish the distribution mechanisms, the Court will work in parallel to resolve the Turnover Proceeding.

SO ORDERED.

Dated:      June 19, 2013
            New York, New York

                                        RICHARD J. SULLIVAN
                                        UNITED STATES DISTRICT JUDGE

---

addressing only disputes with Defendants over the Turnover Proceeding.

2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDS SDNY
DOCU...
ELE...
DE...
DATE...  6-26-13

SECURITIES AND EXCHANGE
COMMISSION,

                                    Plaintiff,

          -v-

AMERINDO INVESTMENT ADVISORS
INC., *et al.*,

                                    Defendants.

No. 05 Civ. 5231 (RJS)
ORDER

RICHARD J. SULLIVAN, District Judge:

For the reasons set forth in the accompanying Order dated June 19, 2013, the Receiver is authorized to implement a claims and interim distribution process (the "Claims Process") as set forth herein.

IT IS HEREBY ORDERED THAT the Receiver is empowered and authorized to establish a Distribution Fund consisting of the Cash and the liquidation proceeds of the Public Securities (the "Liquidation Proceeds") held in the Investor Accounts for the purposes of making an interim distribution (the "Interim Distribution") to holders of Allowed Claims (as herein defined).

IT IS FURTHER ORDERED THAT the Distribution Fund shall be held in accounts to be maintained at JP Morgan at interest under a master account in the name "SEC v. Amerindo Investor Advisors Inc. et al. Ian J. Gazes as Receiver" with five (5) sub-accounts corresponding to the existing J.P. Morgan Accounts (the "Distribution Accounts")

IT IS FURTHER ORDERED THAT the entities holding on deposit the Miscellaneous Accounts shall, at the Receiver's written direction, immediately turn over all Cash held on

deposit in the Miscellaneous Accounts[1] for deposit into the appropriate Distribution Accounts and shall provide the Receiver final account statements.

IT IS FURTHER ORDERED THAT J.P. Morgan is directed to liquidate the Public Securities and deposit the proceeds, less the amount of J.P. Morgan's reasonable fees and expenses, into the appropriate Distribution Accounts.

IT IS FURTHER ORDERED THAT, in his discretion, the Receiver may direct that all Cash and other assets held in any additional accounts not explicitly identified in but nevertheless subject to the Order of Forfeiture of Substitute Assets (the "Additional Accounts") be turned over for deposit into the appropriate Distribution Accounts.

IT IS FURTHER ORDERED THAT the Receiver shall be the sole authorized signatory on the Distribution Accounts.

IT IS FURTHER ORDERED THAT the Private Securities and the remaining JP Morgan Accounts not designated for liquidation shall remain as they presently exist and further liquidation or other disposition thereof shall be subject to further order of this Court.

IT IS FURTHER ORDERED THAT in order to be eligible for an Interim Distribution, all parties asserting claims ("Claims") must complete and submit a claim form ("Claim Form"), substantially in the form annexed hereto as Attachment "A", so as to be received in hand by the Receiver by a date to be fixed by the Court's order implementing the Claims Process (the "Bar Date").

IT IS FURTHER ORDERED THAT notice of the Bar Date, substantially in the form attached hereto as Attachment "B", shall be given by (a) first class mail to all known Amerindo

---

[1] The Miscellaneous Accounts comprise: (1) SG Americas Securities, LLC Account No. 64524357, held in the name of Amerindo Technologies Growth Fund; (2) Approximately $273,611.89 in funds formerly held by @Ventures Management, LLC for the benefit of Amerindo Technology Growth Fund II, Inc.; and (3) Approximately $1.6 million in funds on deposit at U.S. Bank for the benefit of Amerindo Technology Growth Fund II, Inc.

investors and (b) publication in the Financial Times for circulation in the United States (including Puerto Rico) and Europe.

IT IS FURTHER ORDERED THAT within seven (7) days of the Bar Date, the Receiver shall file a Claims Register reflecting (a) the number and amount of Claims timely filed and (b) the name and address of each claimant, and (c) the amount of each Claim.

IT IS FURTHER ORDERED THAT the Receiver, each of the Defendants, the SEC, the OUSA, any claimant or other party in interest, shall have fourteen (14) days from the docketing of the Claims Register to file written objections to any filed Claim (the "Objection Date").

IT IS FURTHER ORDERED THAT any filed Claim to which no objection has been timely filed shall be deemed an Allowed Claim.

IT IS FURTHER ORDERED THAT any filed Claim to which an objection has been timely filed shall be deemed a Disputed Claim as to any amount disputed and shall be deemed an Allowed Claim to the extent of the amount of the Claim, if any, that is not disputed.

IT IS FURTHER ORDERED THAT within fourteen (14) days of the Objection Date, the Receiver shall file a revised Claims Register reflecting all Allowed and Disputed Claims. Thereafter, the Receiver may petition the Court to authorize him to make an Interim Distribution from the Distribution Funds to holders of Allowed Claims. In the event the Court grants the petition, holders of Allowed Claims shall be entitled to receive an amount equal to fifty percent (50%) of their pro rata share of the Distribution Fund based on all Claims filed.

IT IS FURTHER ORDERED THAT for purposes of any Interim Distribution, the Receiver shall be authorized to draw on any and all Distribution Accounts in his sole discretion which, for the purposes of the Interim Distribution, shall be treated as a single fund.

IT IS FURTHER ORDERED THAT the Receiver's fees and expenses, other than the costs attendant to noticing the Bar Date, incurred in connection with the claims and interim distribution process shall be paid from the $50,000 in funds withdrawn from a restrained account

to provide for the Receiver's compensation (the "Compensation Fund"). In the event that the balance of the Compensation Fund is insufficient to satisfy the Receiver's fees, the Receiver shall seek an order of the Court further modifying the Restraining Order to provide for the releases of additional funds.

IT IS FURTHER ORDERED THAT the Receiver's expenses incurred in connection with the claims and interim distribution process including but not limited to the costs associated with the mailing and publication of the Notice of Bar Date, shall be payable from the Distribution Accounts.

IT IS FURTHER ORDERED THAT should the Receiver determine that it is necessary to employ additional professionals in order to implement the Claims Process, the Receiver shall seek a further order of the Court authorizing such employment and the terms and source of compensation.

IT IS FURTHER ORDERED THAT to the extent that any action undertaken by the Receiver in connection with the Claims Process gives rise to tax liabilities which would otherwise be attributable to the Amerindo entities, the Receiver is authorized to pay such taxes from the Distribution Accounts.

IT IS FURTHER ORDERED THAT neither the Receiver nor any professionals retained or employed by the Receiver shall have or incur any liability to any entity/person for any action taken or omitted to be taken in connection with or related to the preparation, implementation, or administration of the Claims Process except for willful misconduct or gross negligence.

IT IS FURTHER ORDERED THAT in the event that any order or decision of the Court on which the Claims Process is any way predicated, including but not limited to, the Defendants' criminal convictions, the Order of Forfeiture of Substitute Assets ("Forfeiture Order"), the Restraining Order, the Appointment Order, or an order approving the claims and interim distribution process, is reversed, modified or vacated by subsequent order of any court, such

4

reversal, modification or vacatur shall not affect the validity of the acts or obligations incurred or undertaken under or by the Receiver in connection with claims and interim distribution process or any other action authorized by this Court.

IT IS FURTHER ORDERED THAT independent of the outcome of their pending appeals, the Defendants have asserted various claims in the assets forfeited pursuant to the Forfeiture Order, including the Investor Accounts.[2] The implementation of the Claims Process is without prejudice to the Defendants' claims in any of the forfeited assets.

IT IS FURTHER ORDERED THAT the proposed Claims Process only provides for an Interim Distribution to holders of Allowed Claims and reserves payment on account of Disputed Claims pending resolution. If authorized by the Court, the Receiver, following the initial Interim Distribution, will formulate a proposed dispute resolution process with respect to the Disputed Claims.

IT IS FURTHER ORDERED THAT The Claims Process contemplates the liquidation of only certain forfeited assets in order to fund an initial Interim Distribution. If authorized by the Court, the Receiver, following the initial Interim Distribution, will liquidate some or all of the remaining forfeited assets to the extent necessary to make additional and/or final distributions on account of Allowed Claims.

SO ORDERED.

Dated:     June 19, 2013
           New York, New York

                                                    _____
                                                    RICHARD J. SULLIVAN
                                                    UNITED STATES DISTRICT JUDGE

---

[2] The Investor Accounts comprise the three Miscellaneous Accounts plus: (1) JP Morgan Account No. 102-17995, held in the name of Techno Raquia, S.A.; (2) JP Morgan Account No. 102-01485 held in the name of Amerindo Management Inc., sub-Account M26; (3) JP Morgan Account No. 102-01490, held in the name of Amerindo Technology Growth Fund Inc.; and (4) JP Morgan Account No. 102-01495, held in the name of Amerindo Technology Growth Fund II, Inc..

A copy of this Order has been sent to:

Sharon Levin, Esq.
sharon.levin@usdoj.gov

Benjamin Naftalis, Esq.
benjamin.naftalis@usdoj.gov

Mark D. Salzberg, Esq.
salzbergm@sec.gov

Neal Jacobson, Esq.
jacobsonn@sec.gov

Vivian Shevitz, Esq.
Vivian@shevitzlaw.com

Jane Simkin Smith
jssmith1@optonline.net

David C. Burger, Esq.
dcb@robinsonbrog.com

Nathan Dershowitz, Esq.
ndershowitz@lawdea.com

Patrick W. Begos, Esq.
pwb@begoshorgan.com

Julian W. Friedman, Esq.
jfriedman@stillmanfriedman.com

Thomas J. Hall, Esq.
hallt@hallandhalllaw.com

Eugene F. Hestres-Velez, Esq.
ehestres@bbh-law.com

Mr. Alfred Heitkonig
alfredo@ahfs.biz

Mr. John P. Aggerholm
jpaggerholm@hotmail.com

Mr. Timothy Wright
twright@entecworks.com

E. Ronald Salvitti, M.D.
ersalvittimd@swpaeyecenter.com

7

# Attachment A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | |
| Plaintiff, | |
| v. | 05 Civ. 5231 (RJS) |
| | ECF CASE |
| AMERINDO INVESTMENT ADVISORS INC., AMERINDO INVESTMENT ADVISORS, INC., AMERINDO ADVISORS UK LIMITED, AMERINDO MANAGEMENT INC., AMERINDO TECHNOLOGY GROWTH FUND, INC., AMERINDO TECHNOLOGY GROWTH FUND II, INC., TECHNO RAQUIA, S.A., ALBERTO W. VILAR, and GARY ALAN TANAKA, | |
| Defendants. | |

## PROOF OF CLAIM FORM

Please fill in the information below and supply the supporting documents requested as an attachment to this proof of claim form. This should be received by the Court appointed Receiver for Amerindo Investment Advisors (Panama) *et al.*, whose name and address is below, so as to be received in hand on or before 4:00 p.m. May ___, 2013 by (a) certified mail return receipt requested or (b) overnight courier:

Ian J. Gazes, Esq.
Gazes LLC
151 Hudson Street
New York, New York 10013

Debtor means one or more of the Amerindo entities in which you gave Principal Funds.

Principal Funds means all funds given to the Debtor(s) and NOT returned to you.

Profits means the appreciated value of the Principal Funds prior to May 25, 2005 such as by way of example interest if you held promissory notes and NOT paid to you.

**If you are not sure of a fact, please so state, and provide the best documentation you have.**

---

## PART A

Please answer the questions below and submit together with this completed form any written agreements between you and the Debtor(s) as concerns the establishment and/or opening of an account with the Debtor(s) and Profits prior to May 25, 2005.

### THIS PROOF OF CLAIM ONLY COVERS PRINCIPAL FUNDS AND PROFITS AS OF MAY 25, 2005

1. Your name and address, including the name of any entity through which you provided Principal Funds with the Debtor(s).  If your name or address had changed, please specify.

2. Name and address of Debtor(s) (Amerindo entity) in which you gave the Principal Funds.

   Please specify and provide documents reflecting the transmittal of Principal Funds to the Debtor(s).

3. Details including the amount and supporting documentation related to Principal Funds you claim as of May 25, 2005:

4. Details including the amount and supporting documentation related to any Profits you claim as of May 25, 2005:

5. Did you receive any distributions from the Debtor on account of your Principal Funds you claim as of May 25, 2005?

If yes please specify any and all distributions and include any payments to third parties by the Debtor(s) on your behalf.

Please attach the last statement you received from the Debtor(s).

**Please provide copies of all documents that support your claim as of May 25, 2005.**  Documents could include but are limited to promissory notes, itemized statements of your accounts, cancelled checks, wire transfer confirmations, letters, contracts, judgments, and security agreements. If the claim is secured please attached all document supporting same.

Please answer the questions below and submit together with this completed form any written agreements between you and the Debtor(s) as concerns the establishment and/or opening of an account with the Debtor and appreciated value after May 25, 2005.

## PART B

## THIS PROOF OF CLAIM ONLY COVERS PRINCIPAL FUNDS AND PROFITS AFTER MAY 25, 2005

1. Your name and address, including the name of any entity through which you provided Principal Funds with the Debtor(s). If your name or address had changed, please specify.

2. Name and address of Debtor(s) (Amerindo entity) in which you gave the Principal Funds.

   Please specify and provide documents reflecting the transmittal of Principal Funds to the Debtor(s).

3. Details including the amount and supporting documentation related to Principal Funds you claim after May 25, 2005:

4. Details including the amount and supporting documentation related to any Profits you claim after May 25, 2005:

5. Did you receive any distributions from the Debtor on account of your Principal Funds you claim after May 25, 2005?

If yes please specify any and all distributions and include any payments to third parties by the Debtor(s) on your behalf.

Please attach the last statement you received from the Debtor(s).

**Please provide copies of all documents that support your claim after May 25, 2005.** Documents could include but are limited to promissory notes, itemized statements of your accounts, cancelled checks, wire transfer confirmations, letters, contracts, judgments, and security agreements. If the claim is secured please attached all document supporting same.

**Please redact all account numbers other than the last 4 digits on the statement including personal identification numbers such as social security numbers and business EIN numbers.**

**DO NOT SEND ORIGINAL DOCUMENTS.**

**Signature:**

___ I am the account owner        ___ I am the account owner's authorized agent

Please note that, although you may make a claim through an agent, you DO NOT NEED TO HAVE AN AGENT to make this claim, and pay or offer to pay an agent merely to make this claim or obtain payment on your account. Your claim will not be reduced if you do not have an agent.

**Print Name:** _____
**Title:** _____
**Company:** _____
**Email:** _____
**Telephone Number:** _____

_____        _____
**Signature**                                  **Date**

If claim has been assigned please provide the following information:

**Name of Assignee:** _____
**Address of Assignee:** _____
**Email of Assignee:** _____
**Tel No. Of Assignee:** _____
**Date of Assignment:** _____

# Attachment B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>AMERINDO INVESTMENT ADVISORS INC.,<br>AMERINDO INVESTMENT ADVISORS, INC.,<br>AMERINDO ADVISORS UK LIMITED,<br>AMERINDO MANAGEMENT INC.,<br>AMERINDO TECHNOLOGY GROWTH FUND, INC.,<br>AMERINDO TECHNOLOGY GROWTH FUND II, INC.,<br>TECHNO RAQUIA, S.A.,<br>ALBERTO W. VILAR, and<br>GARY ALAN TANAKA,<br><br>Defendants. | 05 Civ. 5231 (RJS)<br><br>ECF CASE |

### NOTICE OF PROOF OF CLAIM DEADLINE WITH RESPECT TO AMERINDO INVESTOR ADVISORS INC. *ET AL.*

On May __, 2013 the United States District Court for the Southern District of New York

entered an Order establishing procedures for the filing of proofs of claim on account of funds given to

or through the following entities (collectively, "Amerindo"):

Amerindo Investment Advisors Inc.
Amerindo Investment Advisors, Inc. (Panama)
Amerindo Advisors UK Limited
Amerindo Management Inc.
Amerindo Technology Growth Fund, Inc.
Amerindo Technology Growth Fund II, Inc.
Techno Raquia, S.A.
Amerindo Investment Advisors, Inc.

Please read this notice carefully as it sets forth certain requirements and deadlines established

by the Court with respect to the filing of claims against Amerindo. Failure to comply with the

requirements and deadlines set forth herein may affect your right receive to a distribution on account

of your claim.

Please be further advised that this notice is being sent to numerous persons and entities. The fact that you have received this Notice does not mean that you have a valid claim against Amerindo or that the Receiver or the Court believes that you have a valid claim against Amerindo. You may consult with an attorney regarding any possible claim against Amerindo but are not required to do so in order to file a proof of claim.

1.   **WHO MUST FILE A PROOF OF CLAIM**

If you assert that you are owed a debt by Amerindo, you **MUST** file a proof of claim. A proof of claim must be filed even if the claim is not now fixed, liquidated or certain.

2.   **WHAT TO FILE**

All proof of claim forms must be **signed** by the claimant or, if the claimant is not an individual, by an authorized agent of the claimant. It must be written in English and be denominated in United States currency. You should attach to your completed proof of claim any documents on which the claim is based (if voluminous, attach a summary) or an explanation as to why the documents are not available.

3.   **WHEN AND WHERE TO FILE**

Except as provided for herein, the form proofs of claim (two) are enclosed herewith. One proof of claim form concerns all transactions prior to May 25, 2005 and the other proof of claim concerns transactions after May 25, 2005. The completed proofs of claim must be sent to Ian J. Gazes, the Court appointed Receiver, so as to be received in hand **on or before May ___, 2013.** All proofs of claim must be mailed or delivered to:

> Gazes LLC
> Attn: Ian J. Gazes
> 151 Hudson Street
> New York, New York 10013

Proofs of claim will be deemed filed only when received by Ian J. Gazes, the Receiver, so

as to be received in hand on or before the Bar Date. The completed proofs of claim must be

mailed and may **NOT** be delivered by facsimile, telecopy or electronic mail transmission.

Dated: New York, New York
_____, 2013

_____
Ian J. Gazes, Esq.
Gazes LLC
151 Hudson Street
New York, New York 10013
(212) 765-9000

3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SECURITIES AND EXCHANGE COMMISSION,

                                    Plaintiff,

                                                          05 Civ. 5231 (RJS)

                        v.                                ECF CASE

AMERINDO INVESTMENT ADVISORS INC.,
AMERINDO INVESTMENT ADVISORS, INC.,
AMERINDO ADVISORS UK LIMITED,
AMERINDO MANAGEMENT INC.,
AMERINDO TECHNOLOGY GROWTH FUND, INC.,
AMERINDO TECHNOLOGY GROWTH FUND II, INC.,
TECHNO RAQUIA, S.A.,
ALBERTO W. VILAR, and
GARY ALAN TANAKA,
                                    Defendants.

---

## NOTICE OF PROOF OF CLAIM DEADLINE WITH RESPECT TO AMERINDO INVESTOR FUNDS

On May __, 2013 the United States District Court for the Southern District of New York

entered an Order establishing procedures for the filing of proofs of claim on account of funds invested

with or through the following entities (collectively, "Amerindo"):

Amerindo Investment Advisors Inc.
Amerindo Investment Advisors, Inc. (Panama)
Amerindo Advisors UK Limited
Amerindo Management Inc.
Amerindo Technology Growth Fund, Inc.
Amerindo Technology Growth Fund II, Inc.
Techno Raquia, S.A.
Amerindo Investment Advisors, Inc.

Please read this notice carefully as it sets forth certain requirements and deadlines established

by the Court with respect to investor claims against Amerindo. Failure to comply with the

requirements and deadlines set forth herein may affect your right receive to a distribution on account

4

of your claim.

Please be further advised that this notice is being sent to numerous persons and entities. The fact that you have received this Notice does not mean that you have a valid claim against Amerindo or that the Court believes that you have a valid claim against Amerindo. You may consult with an attorney regarding any possible claim against Amerindo but are not required to do so in order to file a proof of claim. _____

**1.    WHO MUST FILE A PROOF OF CLAIM**

If you assert that you are owed a debt by Amerindo, you **MUST** file a proof of claim. A proof of claim must be filed even if the claim is not now fixed, liquidated or certain.

**2.    WHAT TO FILE**

A proof of claim form is available by contacting the Receiver at:

> Gazes LLC
> Attn: Ian J. Gazes
> 151 Hudson Street
> New York, New York 10013
> Tel. (212) 765-9000
> Fax (212) 765-9675
> office@gazesllc.com

All proof of claim forms must be **signed** by the claimant or, if the claimant is not an individual, by an authorized agent of the claimant. It must be written in English and be denominated in United States currency. You should attach to your completed proof of claim any documents on which the claim is based (if voluminous, attach a summary) or an explanation as to why the documents are not available.

**3.    WHEN AND WHERE TO FILE**

Except as provided for herein, all proofs of claim must be sent to Ian J. Gazes, the Court appointed Receiver, so as to be received in hand by the Receiver **on or before May ____, 2013.** All proofs of claim must be mailed or delivered to:

5

Gazes LLC
Attn: Ian J. Gazes
151 Hudson Street
New York, New York 10013

Proofs of claim will be deemed filed only when <u>received</u> by Ian J. Gazes, the Receiver so

as to be received in hand on or before the Bar Date. Proofs of claim may NOT be delivered by

facsimile, telecopy or electronic mail transmission.

Dated: New York, New York
              _____, 2013

_____
Ian J. Gazes, Esq.
Gazes LLC
151 Hudson Street
New York, New York 10013
(212) 765-9000

6

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7-30-13
```

SECURITIES AND EXCHANGE COMMISSION,

**Plaintiff,**

v.

AMERINDO INVESTMENT ADVISORS INC., *et al.*,

**Defendants.**

05 Civ. 5231 (RJS)

ECF CASE

### RECEIVER'S FIRST STATUS REPORT

Ian J. Gazes, the Court appointed receiver (the "Receiver") in the above-captioned cases, hereby submits this First Status Report and request that the Court so-order this Report adopting certain modifications to the Court's Claims and Distribution Orders (herein defined) as more fully set forth below.

### I. SUMMARY BACKGROUND

1.      On October 17, 2012, the Court entered an order appointing (the "Appointment Order") the Receiver and empowered him "to investigate and determine the value of investor assets that have been seized or frozen pursuant to the forfeiture order in the [related] criminal case, to consider what actions can and should be taken to avoid dissipation of those assets, and to submit a report to the Court regarding his findings and recommendations. Upon receiving his report, the Court will determine whether Mr. Gazes should be empowered to take broader action, such as managing the assets and beginning a claims process for investors."

2.      On March 14, 2013, the Court entered an order in the related criminal case, *United States of America v. Alberto William Vilar and Gary Tanaka*, S3 05 Cr. 621 (RJS) (the

"Criminal Case"), modifying its previously entered Post-Conviction Restraining Order (the "Restraining Order") to authorize the withdrawal of $50,000.00 from a restrained account to provide for the Receiver's compensation.

      3.     On May 30, 2013, the Receiver filed his Initial Report and Recommendations ("R&R").

      4.     On June 20, 2013, the Court signed two orders (together, the "Claims and Distribution Orders") adopting the R&R and directing the Receiver to "begin the process of establishing a distribution fund and a claims and interim distribution procedure" as set forth in the R&R.

## II. STATUS

Establishment of Distribution Fund

      5.     Pursuant to the Claims and Distribution Orders, the Receiver is empowered and authorized to establish a Distribution Fund consisting of the cash and the liquidation proceeds of the public securities held in four (4) accounts maintained at J.P. Morgan Chase (the "J.P. Morgan Accounts") and three additional accounts held at other financial institutions (the "Miscellaneous Accounts" and with the Chase Accounts, the "Investor Accounts").[1,2,3]  Under the R&R, it was initially contemplated and the Receiver proposed, *inter alia*, the establishment of an interest bearing master Distribution Account at JP Morgan with four (4) sub-accounts corresponding to the existing J.P. Morgan Accounts.  Subsequent to the filing of the R&R and after consultation with the Receiver's proposed tax and accounting professionals the Receiver determined that

---

[1] Capitalized terms not defined herein shall have the meanings accorded such terms in the R&R.

[2] The R&R provides that there are five accounts but further consultation with JP Morgan and examination of the bank statements reveal there are four accounts with cash and/or public securities that are presently being liquidated for the interim distribution

[3] The Receiver has also identified other accounts including without limitation accounts held by the receiver in the Cayman Islands as set forth in the R&R, which will also be included as part of the interim distribution..

there could be negative tax consequences if the Receiver was to open an independent master account versus selling and distributing the liquid funds to investors under the existing accounts. The Receiver in his business judgment has determined to adopt the foregoing as his protocol in this matter subject to this Court's approval.[4,5]

Claims and Interim Distribution Procedure

      6.     Under the Claims and Distribution Orders, any party seeking an Interim Distribution must complete and submit a Claim Form by the Bar Date.

      7.     The Receiver submits that the Bar Date subject to this Court's approval should be forty-five (45) days commencing July 30, 2013, which is one day after the Receiver (a) will cause the publication of the Notice of Bar Date in the Financial Times, and (b) one day after the mailing of the Notice of Bar Date and form proofs of claim to known investors and parties in interest.

Additional Professionals

      8.     The Receiver has determined that it is necessary to employ tax/accounting professionals in order properly implement the claims and distribution processes. Pursuant to the Claims and Distribution Orders, the Receiver will shortly seek entry of an order of this Court authorizing such employment.

---

[4] In order to open a master distribution account the Receiver must obtain or utilize an existing defendant TIN tax number.

[5] The proceeds from the Miscellaneous Accounts and other sources identified in the R&R will deposited in to the appropriate J.P. Morgan Accounts.

## CONCLUSION

9.      The Receiver requests that the Court so-order this First Status Report (a)

authorizing the Receiver to hold at interest all the liquidated funds[6] in the J.P. Morgan Accounts[7]

as directed by the Receiver with the Receiver being the sole signatory on those accounts and

directing J.P. Morgan to comply herewith, (b) authorizing and directing J.P. Morgan[8] to comply

with the Receiver's instructions/directions as concerns all steps the Receiver determines is

necessary to implement the liquidation of the assets, set up the accounts and interim distribution

of the assets without further order of this Court, and (c) set the bar date for the filing of proofs of

claim for forty-five (45) days commencing July 30, 2013 or September 13, 2013.

Dated: New York, New York
      July 18, 2013                          /s/ Ian J. Gazes
                                         Ian J. Gazes, Receiver
                                         Gazes LLC
                                         151 Hudson Street
                                         New York, New York 10013
                                         (212) 765-9000

So-Ordered
Dated: July 29, 2013

                                         ```
The Court hereby adopts all of the proposed
modifications to its orders of June 20, 2013.
However, to give the Receiver adequate time to act
on this Order, IT IS HEREBY ORDERED THAT the
Receiver may publish the Notice of the Bar Date in
Financial Times before August 6, 2013, and the Bar
Date shall be forty-five days thereafter, or
September 20, 2013.
```

Hon. Richard Sullivan
U.S. District Court Judge

---

[6] This would include all cash and securities designated by the Receiver as well as funds/securities turned over from third parties and the Miscellaneous Accounts.

[7] These accounts may be converted to money market accounts or similar accounts in order to convert such accounts to interest bearing accounts.

[8] The direction is without prejudice to and with full reservation of J.P. Morgan's right to object to any instructions/directions of the Receiver.

4