UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SECURITIES AND EXCHANGE COMMISSION,

                Plaintiff,

                v.

AMERINDO INVESTMENT ADVISORS INC.,
AMERINDO INVESTMENT ADVISORS, INC.,
AMERINDO ADVISORS UK LIMITED,
AMERINDO MANAGEMENT INC.,
AMERINDO TECHNOLOGY GROWTH FUND, INC.,
AMERINDO TECHNOLOGY GROWTH FUND II, INC.,
TECHNO RAQUIA, S.A.,
ALBERTO W. VILAR, and
GARY ALAN TANAKA,

                Defendants.

05 Civ. 5231 (RJS)

ECF CASE

---

**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S
MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION
UNDER FED. R. CIV. P. 60(b)(6) FOR RECONSIDERATION, IN PART, OF
THE COURT'S MARCH 11, 2013 MEMORANDUM AND ORDER,
GRANTING IN PART AND DENYING IN PART PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................................ ii

BACKGROUND FACTS .................................................................................................................... 1

ARGUMENT ........................................................................................................................................ 4

CONCLUSION .................................................................................................................................... 6

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60 (2d Cir. 2012) ........................2, 4

*Devin v. Duncan*, 215 F. Supp. 2d 414 (S.D.N.Y. 2002)................................................................4

*Morrison v. National Australia Bank Ltd.,* 130 S. Ct. 2869 (2010)................................................2

*Rodriguez v. Mitchell*, 252 F.3d 191 (2d Cir. 2001) .....................................................................4

*Sargent v. Columbia Prods.*, 75 F. 3d 86 (2d Cir. 1996) ................................................................4

*SEC v. Amerindo Investment Advisors, Inc., et al.*, 2013 WL 1385013 (S.D.N.Y., March 11, 2013) ..................................................................................................................2

*United States v. Alberto Vilar and Gary Tanaka*, 2013 WL 4608948 (2d Cir., Aug. 30, 2013)............................................................................................................................3

*United States v. Alberto William Vilar and Gary Alan Tanaka, 05 CR 621 (S.D.N.Y.)* ..................1

**Statutes**

15 U.S.C. § 77q(a) ...............................................................................................................1, 2, 4

15 U.S.C. § 78j(b) ...............................................................................................................1, 2, 4

**Code of Federal Regulations**

17 C.F.R. § 240.10b-5.........................................................................................................1, 2, 4

**Federal Rules of Civil Procedure**

Fed. R. Civ. P. 60 ....................................................................................................................1, 4

Plaintiff Securities and Exchange Commission (the "Commission") respectfully submits this memorandum in support of its motion under Fed. R. Civ. P. 60(b)(6) for reconsideration, in part, of the Court's March 11, 2013 Memorandum and Order, granting in part and denying in part the Commission's motion for partial summary judgment. As discussed below, the Commission respectfully requests that the Court reconsider its denial of summary judgment with respect to Alberto Vilar and Gary Tanaka's fraud on the Mayer family in light of the August 30, 2013 affirmance of Alberto Vilar and Gary Tanaka's convictions for securities fraud by the United States Court of Appeals for the Second Circuit.

## BACKGROUND FACTS

On August 9, 2012, the Commission filed a motion for partial summary judgment against Alberto Vilar and Gary Tanaka for violations of, among other statutes, Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)], and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]. The Commission's motion for partial summary judgment sought judgment against Vilar and Tanaka based primarily on the preclusive effect of their criminal convictions for their fraud on Lily Cates and on the Guaranteed Fixed Rate Deposit Account ("GFRDA") investors who testified (or whose representatives testified) at the trial in the parallel criminal case, *United States v. Alberto William Vilar and Gary Alan Tanaka*, 05 CR 621 (S.D.N.Y.) (RJS) (the "Criminal Case") – namely, Tara Colburn, the Mayer family, Graciela Lecube-Chavez, and Gary Cox (collectively, the "Testifying GFRDA Investors").

The only issue that was not specifically addressed in the Criminal Case and therefore could not be established based upon the preclusive effect of the criminal convictions was the location of the underlying securities transactions in light of the intervening Supreme Court

decision in *Morrison v. National Australia Bank Ltd.,* 130 S. Ct. 2869 (2010), which held that Section 10(b) of the Exchange Act applies only to securities purchased or sold in the United States or securities listed on a national exchange. *Id.* at 2886.

The GFRDA securities were not listed on a national exchange and, therefore, to establish the location of Lily Cates' and the Testifying GFRDA Investors' underlying securities transactions, the Commission introduced testimony and documentary evidence from the Criminal Case that showed that they incurred irrevocable liability to purchase their respective securities in the United States. The Commission argued that the evidence satisfied the legal standard for domestic securities transactions set forth in the Second Circuit's decision in *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 68 (2d Cir. 2012), which interpreted *Morrison* and held that "in order to adequately allege the existence of a domestic transaction, it is sufficient for a plaintiff to allege facts leading to the plausible inference that . . . the purchaser incurred irrevocable liability within the United States to take and pay for a security, or that the seller incurred irrevocable liability within the United States to deliver a security."

In its March 11, 2013 Memorandum and Order, the Court, among other things, granted the Commission's motion for partial summary judgment finding that Vilar and Tanaka violated Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder with respect to their fraud on Graciela Lecube-Chavez, Tara Colburn, and Robert Cox, and that Vilar violated those statutes with respect to the fraud on Lily Cates, but the Court held that there was a genuine issue of material fact whether the Mayers incurred irrevocable liability to purchase their GFRDA security in the United States and therefore denied summary judgment with respect to Vilar and Tanaka's fraud on the Mayers. *SEC v. Amerindo Investment Advisors, Inc., et al.*, 2013 WL 1385013 at *8 (S.D.N.Y., March 11, 2013). The Court reasoned

2

that Puerto Rico law, where the Mayers were located when they renewed their GFRDA investment, appears to presume a contract to have been executed at the place where the offer was made, and there was insufficient evidence in the record to determine the location of Amerindo's offer to renew the Mayers' GFRDA security. *Id.* at *7.

On August 30, 2013, the Second Circuit affirmed Vilar and Tanaka's criminal convictions in *United States v. Alberto Vilar and Gary Tanaka*, 2013 WL 4608948 (2d Cir., Aug. 30, 2013). In that decision, the Second Circuit determined that the Mayers incurred irrevocable liability to purchase their GFRDA security in the United States. *Id.* at *10. The Second Circuit held that, "based on the record evidence, a jury would have found [beyond a reasonable doubt] that Vilar and Tanaka engaged in fraud in connection with a *domestic* purchase or sale of securities pursuant to Section 10(b) and Rule 10b-5." *Id.* at *9 (emphasis in original). In footnote 11 of the decision, the Second Circuit elaborated on its prior holding in *Absolute Activist* and held that, "territoriality under *Morrison* concerns where, physically, the purchaser or seller committed him or herself, not where, as a matter of law, a contract is said to have been executed." *Id.* *10 n.11.[1]

---

[1] Although the jury in the Criminal Case rendered a general verdict covering all of the testifying victims of the GFRDA scheme and did not respond to a special verdict form addressing each victim separately, the Second Circuit held that "[n]onetheless, upon a review of the record, we have no doubt that the jury would have found Vilar and Tanaka guilty of violating Section 10(b) and Rule 10b-5 with respect to the Mayers and Lecube-Chavez specifically." *Id.* at *10.

In light of the Second Circuit's holding, the Commission respectfully requests that the Court reconsider its prior decision, and grant summary judgment to the Commission with respect to Vilar and Tanaka's fraud on the Mayers.[2]

## ARGUMENT

Fed. R. Civ. P. 60(b)(6) provides that: "(b) On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: . . . (6) any other reason that justifies relief."

In *Sargent v. Columbia Prods.*, 75 F. 3d 86, 90 (2d Cir. 1996), the Second Circuit, analogizing its power to recall a mandate to the power conferred on district courts by Fed. R. Civ. P. 60(b), held that "[o]ne circumstance that may justify recall of a mandate is a supervening change in governing law that calls into serious question the correctness of the court's judgment." In determining whether an intervening change in law warrants reconsideration under Rule 60(b)(6), the court looks to four factors: "(1) whether the new law is 'beyond any question inconsistent' with the earlier decision; (2) whether the moving party notified the court of a pending case or motion that may alter the decisional law; (3) whether 'substantial' time had elapsed between the earlier decision and the pending motion; and (4) whether the equities strongly favor the moving party." *Devin v. Duncan*, 215 F. Supp. 2d 414, 418 (S.D.N.Y. 2002), *citing Sargent*, 75 F.3d at 90. A district court's ruling on a Rule 60(b) motion is subject to the court's sound discretion. *Duncan*, 215 F. Supp. 2d at 416. *See also Rodriguez v. Mitchell*, 252

---

[2] A determination that Vilar and Tanaka defrauded the Mayers will impact the amount of disgorgement and civil money penalties that the Commission is entitled to as a result of their violations, but will not have any effect on the injunctive relief sought by the Commission as the Court has already enjoined Vilar and Tanaka from violations of Section 17(a) of the Securities act and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.

F.3d 191, 200 (2d Cir. 2001) ("We review district court rulings on Rule 60(b) motions for abuse of discretion.").

      Here, each of the factors weighs in favor of granting the Commission's motion for reconsideration and entering summary judgment with respect to Vilar and Tanaka's fraud on the Mayers. First, there can be no question that the Second Circuit's holdings that the physical location of a purchaser or seller of securities at the time he or she committed to the securities transaction governs the location of the transaction, and specifically that the Mayers' GFRDA securities transaction was a domestic transaction, are inconsistent with the Court's prior interpretation of *Absolute Activist* and would change the outcome of this case. Second, although the Commission did not notify the Court of the pendency of the appeal of the Criminal Action, its existence was known to the Court and to all parties to this case from inception and Vilar and Tanaka's counsel frequently invoked its existence to the Court. Third, substantial time has not elapsed since the Court's March 11, 2013 Memorandum and Order and this motion. Moreover, Vilar and Tanaka's own motion for reconsideration of the Court's Memorandum and Order is still pending, so there can be no prejudice to them. Finally, the equities strongly favor the Commission here and vindicate the Commission's public interest in enforcing the federal securities laws.

## CONCLUSION

For all of the foregoing reasons, the Commission respectfully requests that the Court (i) grant the Commission's motion for reconsideration; (ii) enter summary judgment against Vilar and Tanaka with respect to their fraud on the Mayers; and (iii) grant the Commission such other relief as is just and proper.

Dated: New York, New York
September 5, 2013

Respectfully submitted,

/s/ Neal Jacobson
By: Neal Jacobson
    Mark D. Salzberg
Securities and Exchange Commission
New York Regional Office
3 World Financial Center, Suite 400
New York, New York 10281
Telephone: (212) 336-0095
Facsimile: (212) 336-1324
Email: Jacobsonn@sec.gov

Of Counsel:
Alistaire Bambach