**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

SECURITIES AND EXCHANGE COMMISSION,

                          Plaintiff,


                    v.                                            05 Civ. 5231 (RJS)

                                                                  ECF CASE
AMERINDO INVESTMENT ADVISORS INC.,
AMERINDO INVESTMENT ADVISORS, INC.,
AMERINDO ADVISORS UK LIMITED,
AMERINDO MANAGEMENT INC.,
AMERINDO TECHNOLOGY GROWTH FUND, INC.,
AMERINDO TECHNOLOGY GROWTH  FUND II, INC.,
TECHNO RAQUIA, S.A.,
ALBERTO W. VILAR, and
GARY ALAN TANAKA,
                          Defendants.

## DECLARATION OF NEAL JACOBSON IN SUPPORT OF PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S  MOTION TO SET DISGORGEMENT AND CIVIL MONEY PENALTIES AGAINST DEFENDANTS ALBERTO W. VILAR AND GARY ALAN TANAKA

Neal Jacobson declares under penalty of perjury as follows:

        1.    I am an attorney employed by the Securities and Exchange Commission (the

"Commission") and am assigned to the Commission's New York Regional Office in New York,

New York.  I submit this declaration in support of the Commission's Motion to set Disgorgement

and Civil Money Penalties Against Defendants Alberto W. Vilar ("Vilar") and Gary Alan

Tanaka ("Tanaka," and, together with Vilar, the "Individual Defendants").

        2.    This declaration is based on the record of this case, the record of the Commission

staff's investigation of this case, and the record of the parallel criminal case, *U.S. v. Vilar and*

*Tanaka,* 05 cr. 621 (S.D.N.Y.) (RJS) (the "Criminal Case") and related appeal, *U.S. v. Vilar,* 10-521 (2d Cir.).

3.   This declaration sets forth the evidentiary basis for the Commission's request for an order setting disgorgement, prejudgment interest, and civil money penalties against the Individual Defendants.

**Disgorgement**

   **A**. **Lily Cates.**

4.   On June 20, 2002, Lily Cates invested $5,000,000, purportedly in a Small Business Investment Company ("SBIC"), an investment promoted by Vilar and Amerindo Investment Advisors Inc. and its affiliated entities (collectively, "Amerindo").  Vilar and Tanaka immediately diverted most of the $5,000,000 invested by Lily Cates in the SBIC to pay personal and corporate Amerindo obligations.  Attached hereto as Exhibit A are (i) a copy of the relevant page of Lily Cates' Bear, Stearns & Co., Inc. ("Bear Stearns") statement for account number 220-99111 reflecting a journal debit of $5,000,000 on June 21, 2002 to account number 102-01485; (ii) a copy of the relevant page of Amerindo Management Inc.'s Bear Stearns account statement for account number 102-01485 reflecting a journal credit of $5,000,000 from Lily Cates' account number 220-1195; and (iii) a copy of Government Exhibit 8203 introduced in the Criminal Case reflecting the transfer of Lily Cates' funds to pay various personal and corporate obligations of Vila, Tanaka and Amerindo.  According to Government Exhibit 8203, $1 million of Lily Cates' investment was diverted to Vilar and the remainder was used for Amerindo-related obligations, including the payment of another GFRDA investor.

5.   On September 25, 2003, Tanaka forged Lily Cates' signature on a Letter of Authorization and caused the transfer of $250,000 from Lily Cates' account to an Amerindo-

affiliated account. The entire $250,000 was diverted the next day to Vilar's personal bank account.  Attached hereto as Exhibit B are (i) the September 25, 2003 forged letter of authorization directing a transfer of $250,000 from Lily Cates' Bear Stearns account number 102-13935 to an Amerindo-affiliated Bear Stearns account number 102-01490; (ii) a copy of a page from Lily Cates' September 2003 Bear Stearns account statement reflecting a transfer of $250,000 on September 25, 2003 to the Amerindo-affiliated account; and (iii) the September 26, 2003 letter directing the transfer of $250,000 from the Amerindo-affiliated account to Vilar's personal account.

6.   On June 25, 2002, Amerindo paid Lily Cates $500,000.  Attached hereto as Exhibit C is the Letter of Authorization transferring the $500,000 to Lily Cates.  Vilar and Tanaka's total ill-gotten gain from their fraud on Lily Cates thus totals $4,750,000 ($5,250,000 stolen from Cates minus the $500,000 payment).

**B.    The Mayer Family.**

7.   On December 26, 2000, Amerindo sent a letter to the Mayer family in Puerto Rico, acknowledging that they had $11,066,713.44 on deposit in an expiring GFRDA security with Amerindo, and offering them the option of either (i) investing the entire amount in a new GFRDA security with a different interest rate and new term, or (ii) "wir[ing] your full principal to the bank of your choice on January 2, 2001."  On January 4, 2001, the Mayers accepted Amerindo's solicitation and invested the entire amount into a new GFRDA security with the terms offered by Amerindo.  Attached hereto as Exhibit D are (i) Amerindo's December 26, 2000 solicitation of the Mayer's reinvestment, and (ii) the Mayers' January 4, 2001 acceptance of Amerindo's offer to invest in a new GFRDA.

8.   At the time Amerindo gave the Mayers the option to invest in a new GFRDA security, Amerindo's various client accounts had $296,696,444 of net equity, excluding unpriced, private securities, so that it had ample funds with which to redeem the Mayers' expiring GFRDA security.  Attached hereto as Exhibit E are relevant account statement pages for the various Amerindo entities for the month of January 2001 that reflect the substantial net equity in the accounts.

9.   Between January 2004 through January 2005, Amerindo paid the Mayers a total of $1,310,728.74 in nine separate payments, and, by Stipulation and Order dated November 23, 2009, this Court authorized a payment to the Mayers in the amount of $150,000 from the Amerindo accounts (Docket No. 369 in *United States v. Vilar et al.*, 05-cr-621).  Attached hereto as Exhibit F are transmittal letters reflecting Amerindo's payments to the Mayer family.  Vilar and Tanaka's ill-gotten gain from their fraud on the Mayer family thus totals $9,605,985 (rounded up from $9,605,984.70) ($11,066,713.44 minus $1,460,728.74).

**C.     Tara Colburn.**

10.   On February 9, 2000, Tara Colburn invested $1 million with Amerindo.  Attached hereto as Exhibit G are (i) the April 25, 2012 Declaration of James Meixner, previously filed in connection with the Commission's motion for partial summary judgment (Docket No. 249) reflecting the direction to transfer $1 million to Amerindo and the cover letter signed by Mr. Meixner attaching the $1 million investment; and (ii) a copy of a page from Techno Raquia S.A.'s Bear Stearns account statement reflecting the $1 million investment (previously filed as Exhibit E to the August 2, 2012 Declaration of Neal Jacobson in support of the Commission's motion for partial summary judgment, Docket No. 248-8).

11. On November 8, 2004, Amerindo paid Tara Colburn's estate $100,000, and on January 21, 2005, Amerindo paid Tara Colburn's estate $450,000.  Attached hereto as Exhibit H are a page from a statement of account and a transmittal letter reflecting these payments.  Vilar and Tanaka's ill-gotten gain from their fraud on Tara Colburn thus totals $450,000 ($1 million minus $550,000).

12.  Total disgorgement thus equals $14,805,985 ($4,750,000 plus $9,605,985 plus $450,000)

**Prejudgment Interest**

13.   Total prejudgment interest calculated on the Individual Defendants' ill-gotten gain through June 1, 2005, the date the Commission filed its Complaint, for the Mayers and Tara Colburn, equals $3,112,709 (rounded to the nearest dollar).  Prejudgment interest on the Individual Defendants' ill-gotten gain from Lily Cates through the present equals $3,384,757, for total prejudgment interest of $6,497,467.  Attached hereto as Exhibit I is a printout of the prejudgment interest calculations on the Individual Defendants' ill-gotten gain.  These prejudgment interest calculations take into account the fact that Amerindo made payments back to the investors subsequent to their investments and the timing of those payments.

14. For Lily Cates, the $500,000 payment back to her occurred just days after she invested the $5 million in the SBIC, so the staff treated that payment as having been made contemporaneously with Lily Cates' investment and calculated total prejudgment interest on the ill-gotten gain from her at $3,112,709 (prejudgment interest on $4,500,000 from July 2002 through the present and prejudgment interest on $250,000 from October 2003 through the present).

15. In order to simplify the calculation for the Mayers, the staff treated the nine separate payments to them between January 2004 to January 2005 and the Court ordered payment in 2009 totaling $1,460,728.74 to have occurred in January 2004.  Thus, prejudgment interest on the ill-gotten gain from the Mayers totals $2,759,611 (prejudgment interest on $11,066,713.44 from February 2001 through December 2003 and prejudgment interest on $9,605,984.70 from February 2004 through May 2005).

16. Tara Colburn invested $1 million in February 2000, and Amerindo paid her estate $100,000 in November 2004 and $450,000 in January 2005.  The prejudgment interest on the ill-gotten gain from Tara Colburn totals $353,099 (prejudgment interest on $1 million from March 1, 2000 through October 2004; prejudgment interest on $900,000 from December 1, 2004 through December 31, 2004; and prejudgment interest on $450,000 from January 2005 through May 2005).

17. Accordingly, the total disgorgement plus prejudgment interest owed by the Individual Defendants to the Commission equals $21,303,452 ($14,805,985 plus $6,497,467), which should be offset by any restitution paid by the Individual Defendants in the Criminal Case.

**Penalty**

18.  The Commission requests that the Court impose a third tier penalty equal to the amount of ill-gotten gain plus prejudgment interest obtained by the Individual Defendants within the five year statute of limitations from November 17, 2005, the date the Commission filed its Amended Complaint detailing the Individual Defendants' fraud on Lily Cates, the Mayers and Tara Colburn.  Because the ill-gotten gain from Tara Colburn was obtained outside of the statute of limitations, the amount raised from her plus prejudgment interest ($803,099) should be excluded from the penalty.

19.   Because Vilar and Tanaka each obtained the benefit of Amerindo's fraudulent raising of the funds from investors and they commingled the funds among accounts they controlled, it is impossible to separate out the gain to each of them individually.   Accordingly, the Commission respectfully requests that the Court treat each of them as having benefitted by the entire amount of disgorgement and prejudgment interest and impose a civil money penalty in the amount of $20,500,353 against each of them ($21,303,452 minus $803,099).

**Individual Defendants' Financial Condition**

20.   In addition to any purported claim that the Individual Defendants may have to any "remainder" of the Amerindo client assets, they each claim to be participants in the Amerindo Advisors (UK) Ltd. Retirement Benefits Scheme.   According to the JPMorgan Securities LLC account statement provided to the staff by the Receiver (attached hereto as Exhibit J), the retirement account had net equity of $20,363,933 as of October 31, 2013.   Accordingly, the Individual Defendants have the ability to pay a civil money penalty in this case.

Dated:  New York, New York
       November 22, 2013

/s/ Neal Jacobson
Securities and Exchange Commission
New York Regional Office
3 World Financial Center, Suite 400
New York, New York  10281
Telephone: (212) 336-0095
Facsimile:  (212) 336-1324
Email: Jacobsonn@sec.gov