UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SECURITIES AND EXCHANGE COMMISSION,

                Plaintiff,

                v.

AMERINDO INVESTMENT ADVISORS INC.,
AMERINDO INVESTMENT ADVISORS, INC.,
AMERINDO ADVISORS UK LIMITED,
AMERINDO MANAGEMENT INC.,
AMERINDO TECHNOLOGY GROWTH FUND, INC.,
AMERINDO TECHNOLOGY GROWTH FUND II, INC.,
TECHNO RAQUIA, S.A.,
ALBERTO W. VILAR, and
GARY ALAN TANAKA,
                Defendants.

05 Civ. 5231 (RJS)

ECF CASE

**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S
MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO SET
DISGORGEMENT AND CIVIL MONEY PENALTIES AGAINST
<u>DEFENDANTS ALBERTO W. VILAR AND GARY ALAN TANAKA</u>**

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................... iii

PRELIMINARY STATEMENT .............................................................................................. 1

    1.  Disgorgement and Prejudgment Interest.................................................................... 3
    2.  Civil Money Penalties................................................................................................ 7

CONCLUSION ......................................................................................................................... 9

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Morrison v. National Australia Bank Ltd.,* 130 S. Ct. 2869 (2010) ................................................. 2

*SEC v. Calvo*, 378 F.3d 1211 (11th Cir. 2004) .................................................................................. 5

*SEC v. Amerindo Investment Advisors, Inc., et al.*, 2013 WL 1385013 (S.D.N.Y., Mar. 11, 2013) ........................................................................................................................... 1, 2, 3, 8

*SEC v. Coates*, 137 F. Supp. 2d 413 (S.D.N.Y. 2001) ...................................................................... 7

*SEC v. Haligiannis*, 470 F. Supp. 2d 373 .......................................................................................... 7

*SEC v. Kern*, 425 F.3d 143 (2d Cir. 2005) ......................................................................................... 9

*SEC v. Koenig*, 557 F.3d 736 (7th Cir. 2009) .................................................................................... 8

*SEC v. Moran*, 944 F. Supp. 286 (S.D.N.Y. 1996) ........................................................................... 6

*SEC v. Palmisano,* 135 F.3d 860 (2d Cir. 1998) ............................................................................... 9

*SEC v. Patel*, 61 F.3d 137 (2d Cir. 1995) ......................................................................................... 5

*SEC v. Rajaratnam*, 822 F. Supp. 2d 432 (S.D.N.Y. 2011) ............................................................. 9

*SEC v. Tome,* 833 F.2d 1086 (2d Cir. 1987) ..................................................................................... 3

*United States v. Vilar,* 729 F.3d 62 (2d Cir. 2013) .................................................................... 2, 3, 4

**Statutes**

15 U.S.C. § 77q(a) ......................................................................................................................... 1, 2

15 U.S.C. § 77t(d) ............................................................................................................................. 7

15 U.S.C. § 78j(b) .......................................................................................................................... 1, 2

15 U.S.C. § 78u(d) ............................................................................................................................ 7

15 U.S.C. § 80b-6 ............................................................................................................................. 2

15 U.S.C. § 80b-9 ............................................................................................................................. 7

**Code of Federal Regulations**

17 C.F.R. § 240.10b-5 .................................................................................................................... 1, 2

Plaintiff Securities and Exchange Commission (the "Commission") respectfully submits this memorandum of law in support of its motion to set disgorgement and civil money penalties against defendants Alberto W. Vilar ("Vilar") and Gary Alan Tanaka ("Tanaka," and, together with Vilar, the "Individual Defendants").

## PRELIMINARY STATEMENT

On May 25, 2012, the Commission filed the second amended complaint in this action (the "Second Amended Complaint") against the Individual Defendants and various entities directly or indirectly controlled by the Individual Defendants (collectively, "Amerindo").

On March 11, 2013, the Court granted, in part, the Commission's motion for partial summary judgment on its Second Amended Complaint against the Individual Defendants in connection with their fraud on (i) Lily Cates, and (ii) certain investors in so-called Guaranteed Fixed Rate Deposit Accounts ("GFRDAs") who testified (or whose representatives testified) at the parallel criminal trial (the "Testifying GFRDA Investors"). *SEC v. Amerindo Investment Advisors Inc., et al.*, 2013 WL 1385013 (S.D.N.Y., Mar. 11, 2013).

Based primarily on principles of collateral estoppel, the Court held that (i) the Individual Defendants violated Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C.§ 77q(a)], Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)], and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5], in connection with their securities fraud on Graciela Lecube-Chavez, Tara Colburn, and Gary Cox; (ii) Vilar violated Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act, and Rule 10b-5 thereunder, in connection with his securities fraud on Lily Cates; and (iii) the Individual Defendants aided and abetted violations of Sections 206(1) and 206(2) of the Investment Advisers Act of 1940

("Advisers Act") [15 U.S.C. §§ 80b-6(1) & 80b-6(2)], in connection with their investment adviser fraud on Lily Cates. *Amerindo*, 2013 WL 1385013 at *8 and *9.

The Court, however, denied the Commission's motion insofar as it sought to hold the Individual Defendants liable for violations of Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act based on their securities fraud on the Mayer family, who had purchased a GFRDA security in Puerto Rico. The Court reasoned that there was insufficient evidence in the record to determine whether the Mayers' GFRDA purchase was a domestic securities transaction as required by the Supreme Court's intervening decision in *Morrison v. National Australia Bank Ltd.,* 130 S. Ct. 2869 (2010). On August 30, 2013, the United States Court of Appeals for the Second Circuit affirmed Vilar and Tanaka's criminal convictions and specifically held that the jury in the criminal trial would have found that the Mayers' GFRDA purchase was a domestic transaction. *U.S. v. Vilar,* 729 F.3d 62, 77 (2d Cir. 2013).[1]

In light of the Court's finding of liability, it permanently enjoined Vilar and Tanaka from violations of Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, and Sections 206(1) and 206(2) of the Advisers Act. The Court also determined that "disgorgement and civil penalties are appropriate forms of relief for the Individual Defendants' violations," but left open the amount of disgorgement and civil money penalties pending a determination of the value of the Individual Defendants' claims, if any, to the client assets subject to restraint in the criminal case. *Amerindo*, 2013 WL 1985013 at *13. The

---

[1] On September 5, 2013, the Commission moved for reconsideration of the Court's denial of summary judgment against the Individual Defendants for their fraud on the Mayers based upon the Second Circuit's decision in *Vilar*. The Court has not yet ruled on the Commission's motion for reconsideration.

2

Commission now moves for an order setting the appropriate amount of disgorgement, prejudgment interest, and civil money penalties against the Individual Defendants.

## 1. Disgorgement and Prejudgment Interest.

Disgorgement is an equitable remedy for violations of the federal securities laws that, unlike damages, is aimed at "forcing a defendant to give up the amount by which he was unjustly enriched." *SEC v. Tome*, 833 F.2d 1086, 1096 (2d Cir. 1987).

The Commission submits that the appropriate measure of disgorgement against the Individual Defendants here is $14,805,985.[2] This disgorgement amount constitutes the proceeds raised by the Individual Defendants from Lily Cates, the Mayers, and Tara Colburn, less amounts Amerindo paid to them subsequent to their investments. As discussed below, these amounts total $4,750,000 for Lily Cates; $9,605,985 for the Mayers; and $450,000 for Tara Colburn.[3]

Specifically, Lily Cates invested $5 million with Vilar and Tanaka on June 20, 2002 and the Individual Defendants misappropriated $250,000 from her managed account on September 25, 2003. *See* November 22, 2013 Declaration of Neal Jacobson at ¶¶ 4-5 ("Jacobson Decl."). *See also Vilar,* 729 F.3d at 69 (Second Circuit noted that Lily Cates had invested $5 million in the SBIC investment on June 20, 2002, and that Vilar and Tanaka quickly withdrew such amounts to meet personal and corporate Amerindo obligations, and that in 2003, Tanaka forged Lily Cates' signature to cause a transfer of $250,000 from her managed account to Vilar's

---

[2] If the Court does not grant the Commission's motion for reconsideration and enter summary judgment against the Individual Defendants for their fraud on the Mayers, then the disgorgement figure would be reduced by $9,605,985, the amount of disgorgement attributable to the fraud on the Mayers, for total disgorgement of $ 5,200,000.

[3] The Commission is not seeking disgorgement for investments made by Graciela Lecube-Chavez or Robert Cox.

personal account).  Subsequent to her $5 million investment, Amerindo paid $500,000 to Lily Cates, resulting in a net unjust enrichment to Vilar and Tanaka in the amount of $4,750.000.  Jacobson Decl. at ¶ 6.

On December 26, 2000, Amerindo sent a letter to the Mayers in Puerto Rico, acknowledging that the Mayers had $11,066,713.44 on deposit in an expiring GFRDA security with Amerindo, and offering them the option of either (i) investing the entire amount in a new GFRDA security with a different interest rate and new term, or (ii) "wir[ing] your full principal to the bank of your choice on January 2, 2001."  Jacobson Decl. at ¶ 7.  On January 4, 2001, the Mayers accepted Amerindo's solicitation and invested the entire amount into a new GFRDA security on the terms offered by Amerindo.  Jacobson Decl. at ¶ 7.  *See also Vilar,* 729 F.3d at 78 ("The evidence similarly shows that Lisa Mayer was in Puerto Rico when she re-invested her family's money in the GFRDA program.").  In January 2001, there was net equity of $296,696,444 in Amerindo's various client accounts, excluding unpriced, private securities, so that Amerindo had ample funds with which to redeem the Mayers' expiring GFRDA security.  Jacobson Decl. at ¶ 8.  Thus, in January 2001, the Mayers' could have redeemed their expiring GFRDA investment in full, but instead opted to accept Amerindo's fraudulent offer to invest the approximately $11 million on new terms, thereby unjustly enriching Vilar and Tanaka by the entire amount of the Mayers' investment, or $11,066,713.44.

Subsequent to January, 2001, Amerindo paid the Mayers a total of $1,310,728.74 between January 2004 through January 2005 (Jacobson Decl. at ¶ 9), and, by Stipulation and Order dated November 23, 2009, this Court authorized a payment to the Mayers in the amount of $150,000 from the Amerindo accounts (Docket No. 369 in *United States v. Vilar et al.*, 05-cr-

4

621).  Thus, Vilar and Tanaka's net ill-gotten gain from their fraud on the Mayers totals $9,605,985 (rounded up from $9,605,984.70).

Tara Colburn invested $1 million with Amerindo on February 9, 2000.  Jacobson Decl. at ¶ 10.  Subsequent to that investment, Amerindo paid her estate $550,000 (Jacobson Decl. at  ¶ 11), resulting in net ill-gotten gain to Vilar and Tanaka in the amount of $450,000.

Accordingly, the Commission respectfully submits that $14,805,985 is the appropriate amount of disgorgement for the Individual Defendants' fraud on Lily Cates, the Mayers and Tara Colburn, as it reflects the actual ill-gotten gain flowing to Vilar and Tanaka.  Jacobson Decl. at ¶ 12.  *See, e.g.*, *SEC v. Patel*, 61 F.3d 137, 139 (2d Cir. 1995) ("Disgorgement need only be a reasonable approximation of profits causally connected to the violation.").  Moreover, "any risk of uncertainty in calculating disgorgement should fall on the wrongdoer whose illegal conduct created that uncertainty."  *Id.* at 140.

Tanaka was convicted of securities fraud on the Testifying GFRDA Investors and investment adviser fraud on Lily Cates, which were both objects of the single 19-year conspiracy for which he was also convicted.  There can thus be no dispute that Tanaka was an active participant in the overall scheme to defraud Amerindo investors.  Accordingly, Tanaka and Vilar are jointly and severally liable for disgorgement of the full $14,805,985 of ill-gotten gain.  *See SEC v. Calvo*, 378 F.3d 1211, 1215-16 (11th Cir. 2004) ("[J]oint and several liability is appropriate in securities laws cases where two or more individuals or entities have close relationships in engaging in illegal conduct.  This holds true even where one defendant is more culpable than the other.").

The Commission also seeks the imposition of prejudgment interest.  Requiring a defendant to pay prejudgment interest serves to "prevent[] a defendant from obtaining the benefit

5

of what amounts to an interest free loan procured as a result of illegal activity." *SEC v. Moran*, 944 F. Supp. 286, 295 (S.D.N.Y. 1996).  The Commission seeks prejudgment interest in the amount of $6,497,467, calculated using the Internal Revenue Service rate of interest on tax underpayments and refunds from (i) the respective dates the Individual Defendants fraudulently obtained investments from the Mayers and Tara Colburn, through June 1, 2005, the date of the filing of the Commission's Complaint; and (ii) the respective dates the Individual Defendants fraudulently obtained the purported SBIC investment and misappropriated $250,000 from Lily Cates to the present.  Jacobson Decl. at ¶¶ 13-16.

The Commission submits that prejudgment interest should run on the ill-gotten gain obtained from Lily Cates to the present because the evidence in the criminal trial established that, with respect to the purported SBIC investment, Ms. Cates invested money into the AMI Account and the Individual Defendants almost immediately diverted all funds in the account for personal and Amerindo corporate expenses and, significantly, never returned those funds.. Similarly, evidence in the criminal trial established that Tanaka misappropriated $250,000 from Lily Cates' managed account that was transferred to Vilar and that the Individual Defendants never returned those funds either.  By contrast, the Mayers' and Tara Colburn's investments were, at least theoretically, contained in commingled Amerindo client accounts and thus *may* have remained in the comingled Amerindo client accounts through the filing of the Commission's Complaint.  Although the funds in those commingled accounts were not frozen until the Court imposed a post-conviction restraining order on October 26, 2009, there is no evidence that the Individual Defendants accessed the funds in those accounts after the Commission filed its Complaint.

Accordingly, the Commission respectfully requests that the Court order Vilar and Tanaka to pay, jointly and severally, disgorgement plus prejudgment interest in the amount of

$21,303,451, which amount should be offset by any restitution payments made by them in the parallel criminal action.[4]

  **2.** **Civil Money Penalties.**

Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)], Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)], and Section 209 of the Advisers Act [15 U.S.C. § 80b-9] authorize the district courts to assess civil penalties against persons who violate the Securities Act, the Exchange Act, or the Advisers Act, respectively. The statutes state that the amount of the penalty shall be determined by the Court "in light of the facts and circumstances."

The relevant statutes provide that the third tier of penalties for a natural person for each violation shall not exceed the greater of $120,000 *or* the gross amount of pecuniary gain to that person. A third tier penalty requires that the violation "involve[] fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement" and that "such violation directly or indirectly result[] in substantial losses or create[] a significant risk of substantial losses to other persons." 15 U.S.C. §§ 77t(d), 78u(d), and 80b-9.

The purpose of civil penalties is "to punish the individual violator and deter future violations of the securities laws." *SEC v. Haligiannis*, 470 F. Supp. 2d 373, 386 (imposing $15 million penalty equal to amount of defendant's ill-gotten gain). The factors a court looks to in order to determine whether a penalty should be imposed and the amount of the penalty include: (1) the egregiousness of the defendant's conduct; (2) the degree of defendant's scienter; (3) whether the defendant's conduct created substantial losses or the risk of substantial losses to other persons; (4) whether the defendant's conduct was isolated or recurrent; and (5) the

---

[4] If the Court does not enter summary judgment with respect to the Individual Defendants' fraud on the Mayers, then the amount of prejudgment interest should be reduced by $2,759,611, for total prejudgment interest of $3,737,856.

7

defendant's financial condition.  *Id.  See also SEC v. Coates*, 137 F. Supp. 2d 413, 429 (S.D.N.Y. 2001).  Here, the Court already determined that all of the factors concerning the egregiousness of the Individual Defendants' conduct weighed in favor of imposing civil money penalties, but the Court did not set a specific penalty amount because it did not know the Individual Defendants' financial condition.  *Amerindo*, 2013 WL 1985013 at *12.

The Commission respectfully requests that the Court order each of Vilar and Tanaka to pay a civil money penalty equal to the amount of ill-gotten gain they shared as a result of their fraudulent conduct, plus prejudgment interest.  *SEC v. Koenig*, 557 F.3d 736, 745 (7th Cir. 2009) (affirming imposition of third tier penalty equal to disgorgement plus prejudgment interest; "Koening's 'pecuniary gain' is the amount he obtained by his fraudulent accounting, plus the economic return he made (or could have made) by investing that sum between 1992 and the date of disgorgement.  And prejudgment interest is the right way to estimate the second component.").  The appropriate amount of the third tier penalty here is $20,500,353.  This amount is comprised of the total ill-gotten gain with prejudgment interest obtained by the Individual Defendants excluding the gain on the amounts raised from Tara Colburn outside of the five-year statute of limitations applicable to civil money penalties.  Jacobson Decl. at ¶¶ 18-19.[5]

Based on the positions that the Individual Defendants have taken, they have the financial ability to pay a civil penalty in this case.  Although, in the SEC staff's view, all of the assets held in the commingled accounts in the name of Amerindo clients belong to the clients -- and not to Vilar or Tanaka -- Vilar and Tanaka have repeatedly asserted an interest in those accounts, and the

---

[5] If the Court does not enter summary judgment with respect to the fraud on the Mayers, then the Commission would request that the Court impose a penalty in the amount of $8,134,757 for each of Vilar and Tanaka ($20,500,352 minus $12,365,595).

Receiver has valued such accounts, excluding unpriced private securities, at $32,082,432. The Individual Defendants have also asserted an interest in an account in the name of the Trustees of the Amerindo Investment Advisors (UK) Ltd. Retirement Benefits Scheme, which, as of October 2013, was valued at approximately $20,363,933. Jacobson Decl. at ¶ 20. In the event the Court determines that Vilar and Tanaka have a personal interest in the various accounts subject to the post-conviction restraining order, then, that amount, plus their interests in the $20 million retirement account, would provide them with adequate funds to pay a penalty.[6]

Finally, the staff submits that there is also no bar to the imposition of disgorgement and a substantial civil money penalty on the Individual Defendants in addition to the criminal fine, restitution and forfeiture imposed on them in the parallel criminal case. *See SEC v. Palmisano*, 135 F.3d 860, 866-67 (2d Cir. 1998) (no violation of Double Jeopardy where court imposed disgorgement and civil money penalty on defendant who was sentenced to prison term and ordered to pay restitution and forfeiture in prior criminal action so long as defendant's disgorgement judgment was credited by amount of restitution payments in criminal action). *See also SEC v. Rajaratnam*, 822 F. Supp. 2d 432, 435 (S.D.N.Y. 2011) (court imposed civil money penalty of approximately $93 million that could not be offset against $53.8 million forfeiture judgment or $10 million fine imposed on defendant in prior criminal action).

---

[6]  The Court, of course, has discretion to impose a lesser penalty. *SEC v. Kern*, 425 F.3d 143, 153 (2d Cir. 2005) ("The tier determines the maximum penalty, with the actual amount of the penalty left up to the discretion of the district court.").

## CONCLUSION

For all of the foregoing reasons, the Commission respectfully requests that the Court order the Individual Defendants to pay disgorgement, prejudgment interest, and civil money penalties in the amounts set forth above, and grant the Commission such other and further relief as is just and proper.

Dated: New York, New York
November 22, 2013

Respectfully submitted,

/s/ Neal Jacobson
By:  Neal Jacobson
     Mark D. Salzberg
Securities and Exchange Commission
New York Regional Office
3 World Financial Center, Suite 400
New York, New York  10281
Telephone: (212) 336-0095
Facsimile:  (212) 336-1324
Email: Jacobsonn@sec.gov

Of Counsel:
Alistaire Bambach