Vivian Shevitz
Attorney at Law
46 Truesdale Lake Drive
South Salem, New York 10590
(914) 763-2122
Vivian@shevitzlaw.com

January 28, 2013

Richard J. Sullivan, USDJ (by email and ECF)
40 Centre Street
New York, New York 10007

Re:  SEC v. Amerindo 05 cr 5231 (RJS)
OBJECTION to Receiver Plan to Pay JP Morgan
And Pay Himself Out of Substitute Assets

Dear Judge Sullivan:

In two letter submissions of January 27, 2014 (DOCS 343 and 344), the Receiver, Ian Gazes, asks to make two payments out of "substitute assets":   a distribution to JP Morgan for its "custodian fees" never vetted before, and a distribution to himself, though Your Honor ruled that he would have to complete his assigned work before he can get any more fees (capped in Orders at $50,000).

By ECF bounced received just a minute ago, Your Honor apparently just granted Mr. Gazes' request.  We had no opportunity to respond and ask that Your Honor vacate the grant of Mr. Gazes letter-motion.

In the beginning of this receivership defendants  (in an attempt to show good faith and in the hope of a settlement) agreed to a $50,000 payment to Mr. Gazes.  We did not agree to receivership activities beyond that amount, and there is no basis to pay him otherwise.

As Your Honor is aware, in the mandamus ruling (Doc. 38, August 21, 2013, 13-2527), Judge Cabranes and Judge Leval stayed the distribution of substitute assets. Nine days later (in an opinion by Judge Cabranes), the Court vacated the forfeiture entirely (Doc. 527, August 30, 2013, 10-521).  With these rulings, we submit, the Court has no jurisdiction over the restrained assets or power to distribute the assets that Mr. Gazes is in fact dissipating.

We say the assets are dissipating because we still have not seen evidence that JP Morgan has activated accounts it let escheat or has credited interest for use of AMI's money for the last almost 9 years. Mr. Gazes does not address this failure to

maximize assets he is supposedly receiving.  It is a slap in the face to *award* JP Morgan more "custodial fees" under these circumstances.   This only exacerbates the situation as Mr. Gazes found it: we were told by David Ross in 2010 that the assets had already depreciated by $ 1 1/2 million through neglect.

Mr. Gazes states that he *will* pay JP Morgan "custodial fees" by the end of the month and the first notice of this is by his letter of January 27.  There should be at least a fair opportunity to respond to his plan, and Notice that he intends to use substitute assets to compensate JP Morgan by the end of this week (if not earlier) is insufficient.

JP Morgan has already taken fees or expenses when it sold out positions in the Amerindo Panama accounts over our objection, and without prior disclosure of the amount of the fees or the manner in which the fee award was set.

This is a misuse of substitute assets.  At least Mr. Gazes' claims and plans should be vetted in this public forum before he takes more action.

To the extent that potential remedies in the civil case are perceived as a justification for the receiver's actions, we are preparing a more formal response to the SEC's motion for disgorgement and penalties, which will bear on these issues including the legitimate scope of any receivership.  *See, e.g., SEC v. Manor Nursing Centers Inc.*, 458 F.2d 1082 (2d Cir. 1972) (freeze order and trusteeship tied and limited to disgorgeable proceeds as to proven "defrauded" investors).

Your Honor set the date to respond as February 7.  Mr. Gazes should not act on his own plan before these issues are considered.

Related to the Receiver's activities is the recent request of the Mayers' for a hardship distribution.  I want to advise the Court that on January 27, 2014, Gary Tanaka filed a pro se motion to vacate the Mayers' judgment in New York State Supreme Court.  A copy of the Affidavit filed with Justice Kornreich is attached.  Copies were mailed on behalf of Mr. Tanaka to Mr. Begos and Mr. Burger (who we understand will be filing a motion to vacate on Mr. Vilar's behalf as well).   With respect to Mr. Begos' constant request for special distributions to his clients, Mr. Tanaka's motion to vacate is our response:   the Mayer judgment is itself the reason it is impossible to achieve a resolution of distribution of assets.  The only way defendants will consider relief for his clients is in connection with a payout not only as an advance for the Mayers, but as a payout to all who have legitimate claims in accordance with the 2005 account amounts, and pursuant to a plan in which defendants are participants.

                                                Very truly yours,
                                                /s/

                                            Vivian Shevitz

Attached:  Gary Tanaka pro se Application to Vacate
              Exhibits to Tanaka application

Cc:    Counsel for parties
       "Interested" persons