UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————

No. 05 Civ. 5231 (RJS)

———————————

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

VERSUS

AMERINDO INVESTMENT ADVISORS, INC., *et al.*,

Defendants.

———————————

MEMORANDUM AND ORDER
January 31, 2014

———————————

RICHARD J. SULLIVAN, District Judge:

On March 11, 2013, the Court granted in part and denied in part the motion by Plaintiff, the Securities and Exchange Commission (the "SEC"), for summary judgment against Defendants Alberto Vilar and Gary Tanaka (the "Individual Defendants"). (Doc. No. 272 (the "March 11 Order").) Now before the Court are the Individual Defendants' motion for reconsideration and a stay (Doc. No. 275) and the SEC's motion for reconsideration (Doc. No. 299). For the reasons set forth below, the Court denies the Individual Defendants' motion and grants the SEC's motion. As a result, the Court grants the SEC summary judgment on its claims that the Individual Defendants, with respect to the Mayer family, violated Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act, and Rule 10b-5 of the Exchange Act Rules and Regulations.

I. BACKGROUND[1]

The Individual Defendants are defendants in two separate federal cases, one

___

[1] In deciding these motions, the Court has considered the parties' briefs in support and opposition (Doc. Nos. 276 ("Defs. Mem."), 300 ("SEC Mem."), 324 ("Defs. Opp."), 325 ("SEC Reply")) and the parties' briefs from the original summary judgment motion (Doc. Nos. 246, 253, 258, 260, 264, 265), as well as the parties' declarations, exhibits, and Rule 56.1 statements (Doc. Nos. 250 ("SEC 56.1"), 262 ("Defs. 56.1")). For a more detailed background of this case, the reader should review the March 11 Order.

criminal and one civil. In the criminal case, both of the Individual Defendants were convicted in 2008 of numerous crimes, including securities fraud and investment advisor fraud. *See United States v. Vilar*, 729 F.3d 62, 69 (2d Cir. 2013). This case is the parallel, civil proceeding brought by the SEC and focused on the same schemes as the criminal case. *See SEC v. Amerindo Inv. Advs., Inc.*, No. 05 Civ. 5231 (RJS), 2013 WL 1385013, at *3 (S.D.N.Y. Mar. 11, 2013).

After the Individual Defendants had been convicted and sentenced in their criminal case, but while that case was still on appeal, this case moved forward. In the March 11 Order, the Court granted summary judgment to the SEC on most of its claims relating to five victims identified at the Individual Defendants' criminal trial – the Mayer Family, Lily Cates, Graciela Lecube-Chavez, Tara Colburn, and Robert Cox (collectively, the "Trial Victims"). *Id.* at *1, *14. Specifically, the Court found that, with respect to each of the Trial Victims, the Individual Defendants' criminal convictions conclusively established three out of the four necessary elements for securities fraud under Section 17(a) of the Securities Act, 15 U.S.C. 77q(a); Section 10(b) of the Exchange Act, 15 U.S.C. 78j(b); and Rule 10b-5 of the Exchange Act Rules and Regulations, 17 C.F.R. § 240.10b-5. *Id.* at *3–4. As a result, pursuant to the doctrine of issue preclusion, also known as collateral estoppel, the Court barred the Individual Defendants from disputing those elements in this case. *Id.*; *see also Roe v. City of Waterbury*, 542 F.3d 31, 41 (2d Cir. 2008) ("The doctrine of offensive collateral estoppel permits a plaintiff to bar a defendant from relitigating an issue that was decided in a prior case against the defendant."). As for the fourth required securities fraud element – that the fraud was in connection with a transaction in a security listed on domestic exchanges or a domestic transaction in any security – the Court held that the criminal convictions had not conclusively decided the issue.[2] *Amerindo*, 2013 WL 1385013, at *5. Nevertheless, the Court applied the traditional standard for summary judgment and determined that this element was established by undisputed facts for all Trial Victims except the Mayer Family. *Id.* at *6–8. Thus, the Court denied summary judgment on the securities fraud claims respecting the Mayer Family and granted summary judgment on the securities fraud claims respecting all of the other Trial Victims.

Fourteen days later, the Individual Defendants submitted a motion for reconsideration. The Court set a briefing schedule on the motion (Doc. No. 277), which was adjourned at the Individual Defendants' request (Doc. No. 279). The motion was fully briefed on May 6, 2013. (Doc. No. 281.)

On August 30, 2013, almost six months after the March 11 Order in this case, the Second Circuit issued its judgment and opinion for the appeal in the Individual Defendants' criminal case. *See Vilar*, 729 F.3d 62. In that opinion, the Court of Appeals clarified the standard for when a transaction is a "domestic transaction" and, in a footnote, expressly disagreed with the Court's interpretation of that term in the March 11 Order as it related to the Mayer Family. *Id.* at 77 n.11. On September 5, 2013, the SEC moved for reconsideration of the Court's denial of summary judgment on the securities fraud claims respecting the Mayer Family, arguing that under the

---

[2] The criminal trial had not reached that element because that element did not exist until *Morrison v. National Australia Bank Ltd.*, 130 S. Ct. 2869 (2010), which was decided two years after the trial ended. *See Amerindo*, 2013 WL 1385013, at *5.

2

Second Circuit's clarified standard, undisputed evidence established that the Mayer Family transaction was domestic. (Doc. Nos. 299, 300.) The Court ordered Defendants to respond (Doc. No. 321), and the motion was fully briefed on November 7, 2013 (Doc. No. 325).

## II. LEGAL STANDARD

### A. Summary Judgment

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment should be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In other words, a court should grant summary judgment to a party if and only if trial is unnecessary, either because (1) a reasonable fact-finder could never accept the nonmoving party's version of the facts (that is, there are no genuinely disputed facts); or (2) even on the nonmoving party's version of the facts, the moving party would win as a matter of law (that is, none of the factual disputes are material). *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) ("The inquiry performed [for a summary judgment motion] is the threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.").

In determining whether a fact is disputed, the Court must focus on whether a reasonable fact-finder *could* find for the nonmoving party. As such, the court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996). Nevertheless, disputes must be "genuine." To show a genuine dispute, the nonmoving party must provide "hard evidence," *D'Amico v. City of N.Y.*, 132 F.3d 145, 149 (2d Cir. 1998), "from which a reasonable inference in [its] favor may be drawn," *Binder & Binder PC v. Barnhart*, 481 F.3d 141, 148 (2d Cir. 2007) (internal quotation marks omitted). "Conclusory allegations, conjecture, and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998).

### B. Reconsideration

The Federal Rules of Civil Procedure provide different standards for reconsideration of different types of orders and judgments. For "final judgments, orders, and proceedings," for instance, Rule 60 allows reconsideration in limited circumstances only. *See* Fed. R. Civ. P. 60(b). For non-final orders, on the other hand, Rule 54(b) allows for reconsideration in the district court's equitable discretion.[3] *See* Fed. R. Civ. P. 54(b) (stating that non-final judgments "may be revised at any time before the entry of a [final judgment]");

---

[3] Although the Second Circuit has sometimes stated that reconsideration of non-final orders is limited by the law of the case doctrine, *see Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003) ("We have limited district courts' reconsideration of earlier decisions under Rule 54(b) by treating those decisions as law of the case . . . ."), it has also made clear that this limitation is more of a suggestion than a binding rule, *see Maraschiello v. City of Buffalo Police Dep't*, 709 F.3d 87, 97 (2d Cir. 2013) ("The doctrine of law of the case is [itself] discretionary and does not limit a court's power to reconsider its own decisions prior to final judgment."); *see also Arizona v. California*, 460 U.S. 605, 618 (1983) ("Law of the case directs a court's discretion, it does not limit the tribunal's power.").

*United States v. LoRusso*, 695 F.2d 45, 53 (2d Cir. 1982) ("'So long as the district court has jurisdiction over the case, it possesses inherent power over interlocutory orders, and can reconsider them when it is consonant with justice to do so.'" (quoting *United States v. Jerry*, 487 F.2d 600, 6005 (3d Cir. 1973))).

Here, because the March 11 Order was a non-final order, *see LaTrieste Rest. & Cabaret, Inc. v. Vill. of Port Chester*, 96 F.3d 598, 599 (2d Cir. 1996) ("In general, an order denying summary judgment or granting partial summary judgment . . . is nonfinal."), Rule 54(b) and its equitable standard applies. Under that standard, a court must be mindful that "'where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again.'" *Official Comm.*, 322 F.3d at 167 (quoting *Zdanok v. Glidden Co.*, 327 F.2d 944, 953 (2d Cir. 1964)). As such, a motion for reconsideration should be denied unless there is a strong likelihood that the district court's decision would ultimately be reversed on appeal. In that situation, reconsideration saves the parties' (and the Circuit's) time by avoiding a second, unnecessary battle in the Court of Appeals. A strong likelihood of reversal exists, and thus reconsideration should be granted, where there is "an intervening change of controlling law, . . . new evidence, or [a] need to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartkov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 108 (2d Cir. 2013) (internal quotation marks omitted). A party can generally establish clear error or manifest injustice by "point[ing] to controlling decisions or data that the court overlooked." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).

### III. DISCUSSION

The Individual Defendants seek reconsideration on the grounds that (1) the Court overlooked controlling law or relevant facts in holding that the Cates, Lecube-Chavez, Cox, and Colburn transactions were domestic (Defs. Mem. at 1); (2) the Court overlooked the statute of limitations, which the Individual Defendants argue precludes liability (*id.* at 4); (3) the Court overlooked the requirement that misstatements be material (Defs. Opp. ¶ 3); and (4) the Court overlooked double jeopardy and Eighth Amendment restrictions on civil liability (*id.* ¶¶ 8–10). The SEC seeks reconsideration of the Court's denial of summary judgment with respect to the Mayer Family claims, on the grounds that the Second Circuit's intervening decision in *Vilar* requires a different outcome. (SEC Mem. at 3–5.) As a result, between the two motions, the Court must reexamine its holdings for each of the Trial Victims.

The Court will address the arguments regarding the five Trial Victims, the statute of limitations, materiality, and double jeopardy and the Eighth Amendment in turn. Before reaching those issues, however, the Court must address a preliminary issue: whether the Second Circuit's decision in *Vilar* is controlling, intervening law that binds the Court.

### A. The Effect of *Vilar*

Applying the standard established in *Vilar* would undoubtedly lead to a different outcome than the Court reached in the March 11 Order. In fact, although *Vilar* was an appeal in the criminal case and not in this case, the *Vilar* opinion went out of its way to note the conflict between its decision and the March 11 Order in connection with the Mayer Family transaction. *See Vilar*, 729 F.3d at 77 n.11 (stating that the Second

Circuit panel was "not persuaded" by the reasoning in the March 11 Order with respect to whether the Mayer transactions were domestic). Nevertheless, the Individual Defendants argue that the Court should disregard *Vilar* because the Circuit had not yet issued its mandate in *Vilar* and the law is therefore "not settled." (Defs. Opp. ¶ 2.) They cite no authority to support this position, which the court finds to be meritless.

The issuance of the mandate is relevant only to the transfer of jurisdiction from the Circuit to this Court for the criminal case – it has nothing to do with an opinion's precedential authority and it has nothing to do with this Court's jurisdiction in *this* case. As the Eleventh Circuit has explained, "[t]he stay of [a] mandate in [a circuit case] merely delays return of jurisidiction to the district court to carry out [the circuit's] judgment in that case. The stay in no way affects the duty of [all courts] to apply now the precedent established by [the circuit case] as binding authority." *Martin v. Singletary*, 965 F.2d 944, 945 n.1 (11th Cir. 1992). Indeed, as of this writing, *Vilar* has been cited as controlling precedent at least seven times by other district court judges. *See Butler v. United States*, No. 13 Civ. 4639 (JBW), 2014 WL 216476, at *8–9 (E.D.N.Y. Jan. 17, 2014); *United States v. Weaver*, No. 13 Cr. 120 (SJF), 2014 WL 259504, at *2 (E.D.N.Y. Jan. 10, 2014); *United States v. Martoma*, No. 12 Cr. 973 (PGG), 2013 WL 6632676, at *3 (S.D.N.Y. Dec. 17, 2013); *United States v. Abakporo*, No. 12 Cr. 340 (SAS), 2013 WL 6188260, at *2 (S.D.N.Y. Nov. 25, 2013); *United States v. Viertel*, No. 08 Civ. 7512 (JGK), 2013 WL 5526242, at *5 (S.D.N.Y. Oct. 7, 2013); *United States v. Mostafa*, No. 04 Cr. 356 (KBF), 2013 WL 4714158, at *13–17 (S.D.N.Y. Oct. 22, 2013). More importantly, *Vilar* has been cited twice by the Second Circuit itself as binding law. *See United States v. Stitsky*, 536 F. App'x 98, 108 (2d Cir. 2013); *United States v. Jimenez*, Nos. 12-1363 (L), 12-2652 (CON), 2014 WL 211398, at *3 (2d Cir. Jan. 21, 2014). It follows that if this Court ignored *Vilar* and its decision were appealed today, the Second Circuit would likely apply *Vilar* and reverse. That is precisely the result that reconsideration is designed to avoid.

The Individual Defendants are correct that *Vilar* might be overruled by the Supreme Court.[4] But it would be equally correct to say that *any* binding precedent could be overruled by the Circuit en banc or the Supreme Court. If the mere possibility of reversal were enough to make authority non-binding, no precedent would ever control. For that reason, lower courts are well advised to avoid attempts at judicial forecasting. *Cf. Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989) ("[A lower court] should follow the case which directly controls, leaving to [reviewing courts] the prerogative of overruling [their] own decisions."). The Court takes the law as it finds it. *Vilar* is controlling Second Circuit law and must be applied in this case.

### B. The Trial Victims and Domestic Transactions

To establish a securities fraud claim under Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act, or Rule 10b-5 of the Exchange Act Rules and Regulations, a plaintiff must show that the fraud was connected to either (1) a transaction involving a security listed on an American exchange; or (2) a domestic transaction in any security. *Morrison*, 130

---

[4] The Circuit has already denied petitions for rehearing by the panel and for rehearing en banc. *United States v. Vilar*, No. 10-521-cr (2d Cir.), Doc. Nos. 609, 623–625.

S. Ct. at 2884 (2010). Because no one argues that the Individual Defendants' frauds involved securities listed on an American exchange, the case turns on the second prong, whether the transaction was domestic. As discussed above, the Second Circuit has rejected the Court's previous interpretation of this prong and stated that "[the domestic nature of a transaction] concerns where, physically, the purchaser or seller committed him or herself [to buy or sell the security]." *Vilar*, 729 F.3d at 77 n.11. Thus, the Court must now reconsider its holding for each Trial Victim to determine whether undisputed facts show that he or she was inside the United States when he or she agreed to purchase the securities at issue.[5]

### 1. The Mayer Family Claims

The SEC has provided evidence that Lisa Mayer, who transacted on behalf of her family, lived in Puerto Rico at all relevant times, that she received information about the fraudulent securities by mail in Puerto Rico, and that her agreement to purchase the securities was faxed from a Puerto Rican phone number. (SEC 56.1 ¶ 22; *see* Decl. of Neal Jacobson, dated Aug. 3, 2012, Doc. No. 248 ("Jacobson Decl."), Ex. C at 651:1–5 (testimony from Lisa Mayer that she lived in Puerto Rico until 2002 or 2003); *id.* Ex. D at 1 (letter from Amerindo Investment Advisors, Inc. to the Mayer Family, at a Puerto Rican address); *id.* at 2–3 (fax sent by Lisa Mayer, using a 787-area-code phone number, agreeing to reinvest in the securities at issue)); *see also Area Code Map*, North American Number Plan Administration, http://www.nanpa.com/pdf/NANP_Member_Country_Maps.pdf (last visited Jan. 31, 2014) (listing 787 as a Puerto Rican area code). The Individual Defendants do not dispute any of these facts. (Defs. 56.1 ¶ 22.)

These undisputed facts establish that Lisa Mayer was physically present in the United States when she engaged in the securities transaction. *See Vilar*, 729 F.3d at 78 (holding that similar evidence "shows [beyond a reasonable doubt] that Lisa Mayer was in Puerto Rico when she re-invested her family's money in the [securities at issue]"). The Individual Defendants' only argument against this conclusion is that Lisa Mayer "may not have been" in Puerto Rico. (Defs. Opp. ¶ 2.) Absent any evidence to support that possibility, however, this argument is mere speculation and is insufficient to defeat summary judgment. *See Kerzer*, 156 F.3d at 400.

The Court therefore determines that undisputed facts show that the Mayer Family transaction was domestic. The Court reverses its previous decision and holds that the SEC is entitled to summary judgment on these claims.

### 2. The Lily Cates Claims

The SEC has provided evidence that Lily Cates signed the transaction agreements in her apartment in New York City. (SEC 56.1 ¶ 21; *see* Jacobson Decl. Ex. C at 2098–2104 (testimony that Cates signed the agreement in her apartment soon after meeting with Vilar in New York).) The Individual Defendants do not dispute that fact. (Defs. 56.1 ¶ 21.) This evidence establishes that Lily Cates was in the United States when she engaged in the securities transaction. *See Vilar*, 729 F.3d at 78 (holding that this same evidence would establish beyond a reasonable doubt "that Cates incurred irrevocable liability to purchase [the securities] while in the United States").

---

[5] For all of the transactions at issue, the sellers were foreign corporations. (*See* Defs. 56.1 ¶¶ 20–22.)

The Court therefore determines that undisputed facts show that the Cates transaction was domestic. The Court declines to reconsider its previous decision that the SEC is entitled to summary judgment on these claims.

3. The Graciela Lecube-Chavez Claims

The SEC has provided evidence that Graciela Lecube-Chavez corresponded with Vilar from a New York address before and after her transaction. (SEC 56.1 ¶ 23; Jacobson Decl. Ex. D at 4–8 (correspondence from Vilar to Lecube-Chavez, sent to a New York address).) The Individual Defendants do not dispute that fact. (Defs. 56.1 ¶ 23.) As the Circuit found in the criminal case, this evidence establishes that Graciela Lecube-Chavez was in the United States when she engaged in the securities transaction. *See Vilar*, 729 F.3d at 78 (holding that this same evidence would establish beyond a reasonable doubt "that Lecube-Chavez irrevocably committed herself to [the transaction] while in New York").

The Court therefore determines that undisputed facts show that the Lecube-Chavez transaction was domestic. Consequently, the Court declines to reconsider its previous decision that the SEC is entitled to summary judgment on these claims.

4. The Tara Colburn Claims

The SEC has provided evidence that Tara Colburn lived in California. (SEC 56.1 ¶ 24 ("Tara Colburn was a resident of Los Angeles, California."); Jacobson Decl. Ex. C at 509:20–25 (testimony that Tara Colburn, who died before the criminal trial, "was a music lover in Los Angeles" and was "on the board of the Los Angeles chamber orchestra").) The Individual Defendants do not dispute that fact. (Defs. 56.1 ¶ 24.) Although the Individual Defendants claim to have evidence that Colburn was in England on the day she entered into her transaction with Amerindo (Defs. Mem. at 16), their evidence is an unsigned, unverified document purporting to be an affidavit by Defendant Tanaka's wife (Doc. No. 278 at 5; *id.* Ex. B) – which is not evidence at all, *see Grant v. Cornell Univ.*, 87 F. Supp. 2d 153, 159 n.6 (S.D.N.Y. 2000) (holding that an unsigned, unsworn affidavit has "no evidentiary value").

This presents the question of whether, as a matter of law, evidence that a person lived in the United States can be, on its own, sufficient to prove by a preponderance of the evidence that the person was in the United States on a particular day. The Court holds that it can.

Evidence of domestic residency satisfies the SEC's burden if living in America makes it more likely that a person is inside America than outside of America on a given day. *See United States v. Rizzo*, 349 F.3d 94, 98 (2d Cir. 2003) (holding that proving a fact by a "preponderance of the evidence" is synonymous with showing that the fact is "more likely than not"). In this case, merely stating the issue appears to answer the question. From common sense and experience, the Court and reasonable fact-finders know that people can usually be found within their home country. Sometimes people leave, *see Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 69 (2d Cir. 2012) (noting that "a United States resident can make a purchase outside the United States" (internal quotation marks omitted)), but usually they do not. Admittedly, this conclusion relies on an assumption that has not been empirically verified. But that is likely true for many conclusions drawn from circumstantial evidence. The Second

Circuit, for instance, found that Lisa Mayer's use of a Puerto Rican phone number and address made it likely enough that she was in Puerto Rico to dispel any reasonable doubt, *Vilar*, 729 F.3d at 77–78, but surely the Circuit did not base this conclusion on rigorous studies considering phone spoofing and mail forwarding. The same can be said for the Circuit's conclusion that Lecube-Chavez was in New York on the day she signed the agreement because she received mail in New York. *See id.* at 78. Sometimes, common sense and experience are all fact-finders can rely on. *Cf.* Fed. R. Evid. 201(b)(1) (allowing a court to take judicial notice of a fact that is "generally known"); *United States v. Huezo*, 546 F.3d 174, 182 (2d Cir. 2008) ("[J]urors are entitled, and routinely encouraged, to rely on their common sense and experience in drawing inferences."). Accordingly, the Court holds that proof of American residency can be sufficient to prove by a preponderance of the evidence that a person was in America on a given day.

Importantly, the Court is not holding that a transaction is domestic merely because one party was a United States resident. *Cf. Absolute Activist*, 677 F.3d at 69 (rejecting such a rule). Nor is the Court holding that a plaintiff does not bear the burden of establishing that the transaction occurred inside the country or that a defendant bears a burden of proving that a transaction occurred outside the country. Instead, the Court is recognizing that the fact of residency may be highly probative of physical location and can adequately prove physical location by a preponderance when there is no contrary evidence.[6]

This case would be different if the Individual Defendants had provided some – any – evidence to support a contrary conclusion. The only hard evidence available, however, supports a conclusion that Colburn was inside the United States when she entered into the transaction. A finding that Colburn was outside of the country could only be based on impermissible speculation. *See Kerzer*, 156 F.3d at 400. The Court thus determines that undisputed facts show that Colburn was in the country and that the transaction was domestic. The Court therefore declines to reconsider its previous decision that the SEC is entitled to summary judgment on these claims.

### 5. The Robert Cox Claims

The SEC has provided evidence that Robert Cox lived in California and received a letter from Vilar about the transaction at a California address.[7] (SEC 56.1 ¶ 25; Jacobson Decl. Ex. C at 75:3–18; *id.* Ex. D at 9–10 (correspondence from Vilar to Cox, sent to a California address).) The Individual Defendants do not dispute these facts. (Defs. 56.1 ¶ 25.) Further, in the letter from Vilar, Vilar offers to meet with Cox in California to discuss the transaction. (Jacobson Decl. Ex. D at 9.) This evidence,

---

[6] This holding can be contrasted with *Absolute Activist*, which held that an allegation that two of the defendants resided in America was inadequate to state a securities fraud claim after *Morrison*. *Absolute Activist*, 677 F.3d at 70. In that case neither

of those defendants was alleged to have been a party to the security transactions at issue – they had merely arranged for the transactions and the financing and had participated in the fraud. *Id.* at 63–64. Therefore, their residency had no logical bearing on the location of the purchase or sale of the securities.

[7] Throughout the March 11, 2013 Order, the Court erroneously referred to Robert Cox as Gary Cox. The Court made this error because Gary Cox, Robert Cox's nephew, was the witness who testified at the criminal trial about the fraud against Robert Cox. (Jacobson Decl. Ex. C at 74:9–75:4.) Robert Cox was unavailable to testify because he was incapacitated by Alzheimer's disease. (*Id.* at 75:7–18.)

8

which is similar to the evidence for Lecube-Chavez and Colburn, establishes that Robert Cox was in the United States when he engaged in the securities transaction. Although the Individual Defendants argue that Cox may have invested in London, they offer no evidence for this claim. (Defs. Mem. at 15.) As such, the argument is merely speculation and cannot prevent summary judgment. *See Kerzer*, 156 F.3d at 400. The Court therefore determines that undisputed facts show that the Cox transaction was domestic. The Court declines to reconsider its previous decision that the SEC is entitled to summary judgment on these claims.

6. The Individual Defendants' Arguments Regarding all Trial Victims

The Individual Defendants also argue that summary judgment is inappropriate with respect to *all* of the Trial Victims, because (1) there has been no opportunity to cross-examine witnesses on the domestic-transaction element (Defs. Mem. at 15; Defs. Opp. ¶ 2); and (2) the securities purchased were foreign securities and thus were not part of domestic transactions (Defs. Mem. at 2). The first argument was addressed and rejected by the Court in the March 11 Order. *Amerindo*, 2013 WL 1385013, at *5 & n.6. The opportunity to cross-examine witnesses is required to establish issue preclusion, but the Court's decision on the domestic-transaction element is not based on issue preclusion. Instead, the Court is applying the traditional summary judgment approach. Here, the SEC has come forward with evidence to support their version of facts and the Individual Defendants have not provided any evidence to challenge the SEC's version. Thus, the facts are undisputed, whether or not there was cross-examination. The second argument – that the securities purchased were in fact foreign securities – was addressed and rejected by the Second Circuit in *Vilar*. *See Vilar*, 729 F.3d at 78 n.12 ("When a securities transaction takes place in the United States, it is subject to regulation under Section 10(b), and when a securities transaction takes place abroad, it is not. The parties' intention to engage in foreign transactions is entirely irrelevant."); *see also Absolute Activist*, 677 F.3d at 69–70 ("The second prong of [*Morrison*] refers to 'domestic transactions in other securities,' not 'transactions in domestic securities' or 'transactions in securities that are registered with the SEC.' Thus, we cannot conclude that the identity of the security necessarily has any bearing on whether a purchase or sale is domestic within the meaning of *Morrison*." (citation omitted)). As the Individual Defendants have not pointed to any intervening or overlooked law to alter these holdings, the Court rejects these arguments.

C. Remaining Issues

All the remaining arguments raised by the Individual Defendants can be addressed and rejected in short order.

1. Statute of Limitations

The Individual Defendants claim that the Court overlooked the statute of limitations on civil penalties. (Defs. Mem. at 4; Defs. Opp. ¶ 7); *see* 28 U.S.C. § 2462 (establishing a five year statute of limitations for civil fines, penalties, and forfeiture). They specifically point to *Gabelli v. SEC*, which held that the SEC cannot seek civil penalties for a claim that accrued more than five years before the filing of the action. 133 S. Ct. 1216 (2013). This argument, however, misses two essential facts. First, and most importantly, the statute of limitations at issue in *Gabelli* applies only to civil penalties, and does not prevent a finding of liability or an awarding

of other kinds of remedies. *Gabelli*, 133 S. Ct. at 1220 n.1; *see also SEC v. Pentagon Capital Mgmt. PLC*, 725 F.3d 279, 288 & n.8 (2d Cir. 2013) (noting that disgorgement is not a penalty and allowing disgorgement even where civil penalties were barred by the statute of limitations). Therefore, because the March 11 Order and this decision are focused solely on the issue of liability for the violations, and not the appropriateness of civil penalties, *Gabelli* has no bearing. Second, even if *Gabelli* did apply here, the defrauding of the Mayer Family in 2001 (Jacobson Decl. Ex. D at 2–3) could be enough to bring all of the fraudulent activity within the statute of limitations. *Cf. Shomo v. City of N.Y.*, 579 F.3d 176, 181 (2d Cir. 2009) (describing the continuing violation doctrine). That issue has not yet been briefed and will not be addressed until the Court turns to the SEC's separate, pending motion for civil penalties and disgorgement. (*See* Doc. No. 332.) As such, the Court determines that the Individual Defendants' statute of limitations arguments are not grounds for reconsideration.

### 2. Materiality

The Individual Defendants argue that summary judgment should have been denied because no jury found that any of Individual Defendants' statements were materially misleading. (Defs. Opp. ¶¶ 3–5.) This argument has no merit. In reviewing the Individual Defendants' criminal convictions, the Second Circuit held that materiality had been proven to the jury for all the frauds at issue. *Vilar*, 729 F.3d at 92–94. As such, the Court determines that the Individual Defendants' materiality argument is not grounds for reconsideration.

### 3. Double Jeopardy and the Eighth Amendment

Finally, the Individual Defendants argue that summary judgment should have been denied because liability in this case would violate the Eighth Amendment and the Double Jeopardy Clause of the Fifth Amendment. (Defs. Opp. ¶¶ 8–10.) The Individual Defendants do not cite any authority for the proposition that SEC civil penalties implicate either of these restrictions, likely because no such authority exists. In fact, the Second Circuit has previously rejected similar arguments by other defendants. *SEC v. Palmisano*, 135 F.3d 860, 864–67 (2d Cir. 1998) (holding that civil penalties and disgorgement are not criminal punishments subject to the Double Jeopardy Clause). As such, the Court determines that the Individual Defendants' double jeopardy and Eighth Amendment arguments are not grounds for reconsideration.

### D. The Individual Defendants' Stay Application

The Individual Defendants have also requested a stay of this case pending their appeal in the criminal case. (Defs. Mem. at 24.) They do not, however, provide any justification for further delaying these proceedings. Moreover, the Second Circuit has previously rejected their motion for a stay. (Doc. No. 319.) As such, the Court denies the Individual Defendants' request for a stay.

## IV. CONCLUSION

For the foregoing reasons, the Court has reconsidered its denial of summary judgment with regard to the Mayer claims. Accordingly, IT IS HEREBY ORDERED THAT the SEC's motion for reconsideration is granted. The Court grants the SEC

10

summary judgment on its claims that the Individual Defendants violated, with respect to the Mayer Family, Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act, and Rule 10b-5 of the Exchange Act Rules and Regulations.

IT IS FURTHER ORDERED THAT the Individual Defendants' motion for reconsideration and a stay is denied. No other holdings of the March 11 Order are modified. The clerk of the court is respectfully directed to terminate the motions pending at docket numbers 275 and 299.

The SEC's motion for disgorgement and civil penalties is scheduled to be fully briefed on February 14, 2014. (Doc. No. 342.) Once all briefing has been submitted, the Court will turn to that issue.

SO ORDERED.

RICHARD J. SULLIVAN
United States District Judge

Dated: January 31, 2014
      New York, New York

\*  \*  \*

The SEC is represented by Neal Jacobsen and Mark D. Salzberg of the Securities and Exchange Commission, New York Regional Office, 3 World Financial Center, Suite 400, New York, New York 10281.

The Individual Defendants are represented by Vivian Shevitz, 46 Truesdale Lake Drive, South Salem, New York 10590.

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2-3-14