UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - -X

|  |  |
|---|---|
| SEC v. Amerindo, et al. | 05 cv 5231 (RJS)<br>ECF Case<br>Declaration In Opposition |

- - - - - - - - - - - - - - - - - - - - - - - - - - -X To SEC's Motion for Disgorgement/Penalties

   Vivian Shevitz, under penalty of perjury, hereby declares:

   1.  I am counsel to Gary Tanaka and Alberto Vilar (with David Burger) in this case. I make this declaration in opposition to the SEC's motion for disgorgement and civil penalties.

   2.  While defendants have been eager to get their Panama clients paid, they object to the SEC's role in holding and distributing their assets to their investors and to the SEC's role in excluding them from the inquiry.  The SEC invoked *SEC v. Byers*, 609 F.3d 87 (2d Cir. 2010), for its authority to liquidate and exclude defendants.  *Byers* deals with a Ponzi case, and as the SEC's brief in *Byers* recognized, this type of relief is permissible only in Ponzi cases where the estate is necessarily insolvent.

   3.  While the SEC had jurisdiction to regulate Amerindo US, it destroyed that company though its Monitor concluded six months later that Amerindo US had committed no securities law violations.  (DOC 48, 05cv 5231).   At no time does it account for this ultimate disgorgement, nor the fact that it has no authority to regulate Amerindo Panama or defendants' other foreign entities.

   4.  In its motion for disgorgement and penalties the SEC seeks to get a pot of funds to "return" to all Panama investors, per a liquidation enforced by the SEC through its receiver.  It does so based on the affirmance as to three Panama investors' transactions that the Court of Appeals has concluded satisfy the "domestic transaction" test.

   5.  In the accompanying memorandum we argue that the SEC has no authority to

obtain disgorgement as to those three investors as to whose transactions it retains enforcement authority.  It cannot legally obtain the frozen Panamanian funds, and has authority to compensate *victims* of fraud, but not to compensate non-victims, who do not have claims that satisfy *Morrison* or *Gabelli.*   We also argue that it is improper for the SEC to assume the role of Receiver for Amerindo Panama in any event as (a) Receivers with such broad powers including liquidation are reserved for cases involving Ponzi schemes (as the SEC recognized in its Second Circuit brief in *United States v. Byers*,  609 F.3d 87 (2d Cir. 2010), and we know of no case authorizing such a drastic remedy *not* involving a Ponzi scheme with a solvent entity "in receivership"; it is also improper because at bottom, the SEC and its receivers purport to stand in the shoes of Amerindo Panama, and there is no personal jurisdiction over the Panamanian entities.  Enforcement of remedies over non-domestic-victims' claims and in connection with a foreign securities business that is not subject to regulation by the SEC --see section 30(b) of the Exchange Act, quoted and discussed in *Morrison v. National Australia Bank Ltd.,* 130 S.Ct. 2869 (2010) -- is beyond the SEC's power.

6.      At a proceeding on June 1 and 2, 2005, in which neither Mr. Tanaka nor Mr. Vilar were represented or present, the SEC de-capacitated them from management decisions and stripped them of their assets and their ability to continue to achieve their phenomenal returns (historic 21% rate) for their clients and themselves.  It destroyed the ongoing good will of the company, and the value of that asset as a means to lawfully pay business expenses pursuant to intercompany transfers, duly vetted by the SEC Monitor and the SEC itself previously.

7.       Six months after this happened, the SEC's own Monitor issued a report concluding that everything was "clean" at Amerindo US.    (DOC 48).

8.      To the extent that the SEC sought to punish the defendants for "conducting" their

Amerindo entities as an "enterprise" that could be considered one (US) concern, the "enterprise" notion is belied by the SEC's San Francisco file concerning the regulated entity, which (as documented since 1992) has recognized that Amerindo Panama (which predated the US Advisory) was a separate – and *unregulated* -- entity.

9.       Attached as Exhibit A hereto is an excerpt from a 1992 letter written to the SEC's San Francisco office by the attorney for Amerindo U.S.   In it Attorney Cohen explains that Amerindo Panama was and is an unregulated offshore entity and that its "requirements" were set by its (long time) investors.

10.       Attached as Exhibit B is a copy of the first three pages of the January 21 1993 letter from the SEC to Amerindo US, seeking Panama records and explanations and resting on the "conduct and effects" test, in the SEC's File No. 801-24922.   Also part of Exhibit B is a letter *to* the SEC, from Amerindo Panama, adopting a one-client pool, and notifying the SEC.

11.       Attached as Exhibit C is an excerpt of a document request of the principals of Amerindo US, seeking documents and information of Amerindo Panama in connection with the then ongoing audit.   By letter of January 14,  2005, the SEC, satisfied with the disclosure, "passed" Amerindo US once again.

12.       Given that the SEC well knew about Amerindo Panama and its relationship with the regulated entity it oversaw, it is inequitable to take the position now, years after the facts, that it is entitled to a remedy against this separate Panamanian entity.  If *Gabelli* does not apply, certainly there are issues of *laches*.

13.       To the extent the SEC seeks authority over Amerindo Panama by virtue of "service" on Mr. Vilar or Mr. Tanaka of the 2005 complaint, the SEC itself decapacitated the defendants from acting as officers or representatives of all the Amerindo entities.  At the June 1,

and June 2, 2005 hearings on the requests for a receiver or monitor and preliminary relief,

defendants were not represented and were not present.  The only attorneys present were SEC

counsel and Eugene Licker, who appeared for Amerindo US.

14.     Despite the lack of representation on June 1, 2005, SEC counsel Lackey told the

Court that she and Eugene Licker had agreed to *replace* Gary Tanaka as decision-maker for the

Amerindo businesses (and also in connection with the  Amerindo US- owned and managed

public-listed mutual fund, the Amerindo  Technology Fund).  At the instigation of SEC counsel

Lackey, that fund was given away by directors who excluded Mr. Tanaka from the directors'

meeting, and the fund was handed over to Munder Capital for no consideration.  A year later

Munder not only "took" the Fund, but charged Amerindo for the 'expenses' of the transaction –

all of this without the input of Gary Tanaka or Alberto Vilar and without giving them notice of

what was going on.[1]   The Court should consider the June 1 and June 2, 2005 transcripts in this

SEC case.  (As they are lengthy I do not attach them as Exhibits, but will provide them if the

Court requests. )   These circumstances require equitable consideration.

15.     The Court should also consider the fact that the existence and breadth of the State

court Mayer judgment (and its constantly increasing interest) has in effect driven the inquiry in

this case.  It is *the* biggest factor that has made it impossible for defendants to agree to a payout,

because the receiver and all the parties have had to consider the enlarged "restitution" request

embodied in that judgment.

16.     When the SEC filed its papers in connection with this disgorgement and penalty

request, Mr. Jacobson attached as Exhibit F to his moving Declaration documents showing

---

[1] (See Market Watch, May 31, 2005, http://articles.marketwatch.com/2005-05-
31/finance/30683963_1_vilar-and-tanaka-morningstar-annual-expense-ratio ("Vilar and Tanaka
were removed as managers of the Amerindo Technology D Fund, according to a Securities and
Exchange Commission filing Tuesday.)   This occurred while defendants were still awaiting their
detention hearing and had no representation.

transfers from various banks as payments to the foreign entities used by the Mayers for their investments.  (These documents demonstrate that the universe of Amerindo assets went beyond the accounts at Bear Stearns/ JP Morgan).

17.     We also reviewed the Mayer State case (in which present counsel had not been involved previously), and saw that the Mayers had concealed for the state court judge the fact or amount of those interest-or-principal payments.

18.     Both Mr. Tanaka (pro se) and Mr. Vilar (through counsel Burger) have moved before the State court to vacate the Mayers' judgment, not only because of their misrepresentations, but also because the State court judge had not been aware (nor was Mr. Burger) of the fact that defendants have been unable to use assets and so should not be charged with pre- or post-judgment interest (under New York State precedent)

19.     I attach Mr. Burger's Declaration and Memo in support of Vacatur, which is pending, as Exhibit D.   Mr. Vilar's motion for vacatur is noticed to be heard before Justice Kornreich in New York State Supreme Court for February 20, 2014.

20.     I attach Mr. Tanaka's Declaration in support of Vacatur as Exhibit E.  Mr. Tanaka also raises the issue of the Mayer settlement, which the Jacobson Exhibit F documents support. Notwithstanding their later litigating position, the Mayers had accepted a settlement in 2004, and it was on that settlement that Amerindo Panama was making (timely) payments.  Mr. Tanaka's motion is noticed for February 18, 2014.

21.     If the Mayer judgment is vacated then discussions over payouts can proceed on a new basis.

22.     I note further that it was the Mayers' attorney, Patrick Begos, who originally spoke at Sentencing (2/5/10 Tr. 47) and asked for the 9% compounded interest rate for restitution

that this Court imposed at his request, which was vacated.

23.    *PUNITIVE* SANCTIONS ASIDE FROM THE "DISGORGEMENT" OF
AMERINDO US WERE ALREADY OBTAINED BY THE SEC:   In 2009, after the jury
verdicts but before sentencing, Mr. Salzberg took up Administrative sanctions against Mr. Vilar
and Mr. Tanaka.   Both were disbarred for lifetime, as the criminal convictions created the
ground for disbarment.    (See Exhibit H).

24.    Further a broad injunction, doing more than remedying past harm, was entered.

25.    These sanctions are punitive sanctions within the meaning of the law,  *Johnson v.
SEC*, 87 F.3d 484 (D.C. Cir. 1996) because a lifetime ban and an unlimited injunction is not
remedial, but punitive.

26.    Especially after the "erroneous" destruction of Amerindo US, which committed
no securities law violation, imposition of further penalties and sanction thus raise Double
Jeopardy and Eighth Amendment concerns.

27.    The Receiver Claims To Stand In The Shoes Of Amerindo Panama When He Was
Never So Appointed And There Is No Jurisdiction To Do So: The SEC has been told by the
*Morrison* Court that it has no authority over offshore businesses.  Unless there is a domestic
transaction, there is no enforcement right on the part of the SEC.

28.    While this Court appointed the Receiver over assets, with a mandate to determine
client claims and determine how assets could be preserved and maximized, defendants consented
to the payment of $50,000.  The receiver has not done this, and without litigation, transparent or
otherwise, has taken over as "Receiver" of Amerindo Panama: he says so in his Proof of Claim
form, DOC 283-1, 5/3/13) (attached as Exhibit  F).

29.    There has never been an order appointing the receiver as receiver for that foreign

corporation (or the other foreign corporations owned by Defendants but residing in Panama or

the UK).  He has no authority to hold the assets of Amerindo Panama or other Amerindo Panama

entities.  Neither committed securities law violations (and so there is no collateral estoppel basis

to hold these entities responsible in the SEC case), and (as discussed in the accompanying

memorandum) they were never properly served with process and are not amenable to personal

jurisdiction in the United States.

30.     In seeking remedies on this basis and excluding the defendants, the SEC has

exceeded its authority and imposed remedies for offshore "non-violations" against an entity it

has no right to regulate.

31.     Moreover there is no authority, other than the *Scholes* case cited in the SEC's its

brief (Exhibit G hereto) in *SEC v. Byers,* that supports a liquidating receivership and exclusion of

defendants in an SEC case.  *Scholes* makes clear the basis on which this can be approved is that

the case involves a Ponzi scheme where by reason of such scheme the receivership entity is

necessarily insolvent.

32.     The SEC misrelies on its *Byers* case to *exclude* defendants from participation in

the claims and distribution process here.  By email to me 9/27/13, SEC counsel Jacobson used

*Byers* to justify such exclusion.  He wrote:

> **From:** Jacobson, Neal [mailto:JacobsonN@SEC.GOV]
> **Sent:** Friday, September 27, 2013 9:44 AM
> **To:** Vivian Shevitz; Ian Gazes
> **Cc:** David Dinoso; Salzberg, Mark D.; 'Naftalis, Benjamin (USANYS)'; justin.anderson@usdoj.gov;
> Sharon.Levin@usdoj.gov; jdratel@joshuadratel.com; andrew@asf-lawfirm.com
> **Subject:** RE: please send me the claims you have so far …
>
> Dear Vivian:
>
>          While I cannot speak for the Receiver, I will note that nothing in
> the Court's June 20, 2013 Order establishing the claims process requires that
> he provide you with a claims register.   Moreover, in light of the Second
> Circuit's affirmance of Mr. Vilar and Mr. Tanaka's convictions for securities

fraud and investment adviser fraud, we will urge the Receiver to seek to modify the claims process (or we will do so on our own motion, if necessary) to bar them from having any say in the claims resolution process and from participating in any distribution of funds held in client accounts. *See, e.g., SEC v. Byers*, 637 F. Supp. 2d 166, 184 (S.D.N.Y. 2009) ("The Receiver's proposal to treat differently those involved in the fraudulent scheme when distributions are being made is eminently reasonable and is supported by caselaw."), *aff'd*, 2010 U.S. App. LEXIS 22080 (2d Cir., Oct. 25, 2010).

We also see no need to seek a conference at this time.

Sincerely,
Neal Jacobson

33.     Since this email and even before, the receiver and the SEC have precluded us from even getting information, much less participating. But this is not a Ponzi scheme, by which *Byers* (relying on *Scholes*) deemed it permissible to treat the receivership entity as insolvent and to treat defendants as if they should have no say. The fact that defendants were convicted of securities fraud does not justify treating defendants as if they have no interest in their Amerindo Panama (and other property), or as if their offense was a Ponzi scheme. *Byers* does not support the broad relief and exclusion of defendants in this case.

34.     To the extent "disgorgement" is justified it is justified solely as to the three "victims" of securities fraud. We object to using the receivership to pay all non-victim investors. Defendants *do* want to pay them, as defendants have constantly maintained. But because of continual restraints (and the Mayers' extravagant judgment) it has been impossible to effectuate this.

35.     The SEC receivership, at least to the extent it reaches beyond ascertainment of claims and suggestions for management of property, should be terminated. The receiver should present his claims, and then the SEC should allow the defendants (who committed no violation in 98% of their business, as the SEC Monitor had concluded in December 2005) to manage the

accounts of their Panamanian corporation for liquidation.    If the Court imposes disgorgement as to the three disgorgeable victims, we will agree to use funds to pay *those* victims the disgorgement amounts if this will resolve this civil case.    All other property, including the UK Pension Fund, should be released.   There is no basis to restrain it.   We have asked for a role in achieving a settlement.  Hopefully we can act cooperatively now, but that requires *information and inclusion.*

      Dated:  February 7, 2014        _____/s_____
                                            Vivian Shevitz