**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

SECURITIES AND EXCHANGE COMMISSION,

                        Plaintiff,


                v.

AMERINDO INVESTMENT ADVISORS INC., *et al.*,

                        Defendants.

05 Civ. 5231 (RJS)

ECF CASE

## RECEIVER'S MOTION FOR AN ORDER
## (A) FIXING INVESTOR CLAIMS AND (B) AUTHORIZING INTERIM DISTRIBUTION

Ian J. Gazes, the Court appointed receiver (the "Receiver") in the above-captioned case,

submits this motion (the "Motion") for an order of the Court (a) fixing investor claims and (b)

authorizing the Receiver to make an interim distribution on account of allowed claims, and

respectfully states as follows:

## I. <u>PRELIMINARY STATEMENT</u>

1.      In reviewing the Investor Claims (herein defined) submitted by former Amerindo

investors, the Receiver encountered numerous issues bearing on claim valuation.  Most notably,

there is a paucity of supporting documentation submitted in support of the individual Investor

Claims.  Many if not most investors report receiving account statements from Amerindo

sporadically if at all.  In fact, certain investors report not receiving any statements following their

initial investments.  As a result, many investors have not even attempted to value their own

claims but have only submitted evidence of their initial investments.  In essence, the dearth of

available documentation, as well as questions as to the reliability of the information that is

available, have left the Receiver with snapshots of investor accounts taken at random points in time.   Aside from documentation issues, there are two additional questions as concerns Investor Claim valuation.  First, should the Investor Claims be valued with or without reference to the underlying investment vehicle?  While investors chose specific investments based on anticipated returns and/or risk factors, it is clear the investment funds were not necessarily segregated by investment vehicle or invested in accordance with investors' expectations.   Second, as management of investor funds ceased on or about May 25, 2005, should the Investor Claims be valued as of that date or some other date?

2.      Having reviewed the Investor Claims and considered various methods for valuing those claims in light of the aforementioned issues, the Receiver respectfully submits that the Court should adopt the following method for fixing the Investor Claim amounts for the purposes of an interim distribution to holders of allowed Investor Claims.  First, the representations and supporting documents submitted in connection with the Investor Claims shall be sufficient to establish a *prima facie* entitlement to an allowed Investor Claim unless there is a compelling basis to challenge the reliability of such representations and documents.  By way of example, an investor who has submitted a single Amerindo account statement from 1999 and has represented that no subsequent redemptions or withdrawals were made shall have an allowed Investor Claim. Second, the allowed amount of an Investor Claim will be fixed with reference to the underlying investment vehicle.  Investor Claims based on investments in the Amerindo Technology Growth Fund ("ATGF") will be based on the total number of shares held by an investor, as set forth in the proof claim, multiplied by a uniform net asset value.  Guaranteed Fixed Rate Despot Accounts ("GFRDA") based Investor Claims will be fixed based on investor contributions, less any subsequent withdrawals or distributions, plus interest at the rate set forth in the most recent

supporting documentation.  Lastly, for purposes of the anticipated first interim distribution, the Investor Claims will be valued as of May 25, 2005.[1]

## II. PROCEDURAL BACKGROUND

3.   On October 17, 2012, the Court entered an order appointing the Receiver and empowered him "to investigate and determine the value of investor assets that have been seized or frozen pursuant to the forfeiture order in the [related] criminal case, to consider what actions can and should be taken to avoid dissipation of those assets, and to submit a report to the Court regarding his findings and recommendations. Upon receiving his report, the Court will determine whether Mr. Gazes should be empowered to take broader action, such as managing the assets and beginning a claims process for investors."

4.   On June 20, 2013, the Court signed two orders adopting the Receiver's Initial Report and Recommendations dated May 30, 2013 (the "R&R") and directing the Receiver to "begin the process of establishing a distribution fund and a claims and interim distribution procedure" as set forth in the R&R.

5.   On July 19, 2013, the Receiver filed his First Status Report which report was "so ordered" by the Court on July 30, 2013.  Among other things, the First Status Report established (a) August 6, 2013 as the deadline for the Receiver to publish notice of the proof of claims bar date (the "Bar Date") in the Financial Times and (b) September 20, 2013 as the Bar Date for Amerindo investors to file proofs of claim.

6.   At a hearing held on October 25, 2013, the Court established February 8, 2014 as the deadline to object to any filed proofs of claim with a hearing on any such objections to be held on March 8, 2014.[2]

---

[1] By separate application, the Receiver shall make additional proposals for the valuation and distribution on account of any additional claim amounts attributable to the period following May 25, 2005.

### III.  <u>SUMMARY OF INVESTOR CLAIMS</u>

7.      Pursuant to the so-ordered First Status Report, the Receiver caused the Financial Times to publish a Notice of Bar Date on August 5, 2013.

8.      Commencing on August 5, 2013 and continuing on August 16, 2013, the Receiver mailed the Notice of Bar Date along with a proof of claim form to all known natural persons and entities believed to hold potential claims against the Amerindo entities.

9.      The Receiver has received a total of thirty-three (32) completed proofs of claim from Amerindo investors (the "Investor Claims").[3]

10.      In addition to the aforementioned Investor Claims, the Receiver takes note of two (2) investors identified in the Court's restitution order of April 7, 2010[4], which was entered in the related criminal case, for which no proofs of claims have been received: (a) the Los Angeles Opera and (b) Graciela Lecube Chavez.  The Receiver believes that both of these entities may not have received notice of the Bar Date by mailing.  The Receiver is presently attempting to contact the Los Angeles Opera and asserts that it should be given an opportunity to file a proof of claim.  As to Ms. Chavez, the Receiver has calculated an allowed Investor Claim amount based on the most recent available Amerindo account statement.

11**.**      The vast majority of Investor Claims are based on investments in ATGF and GFRDA; however, there are Investor Claims based on investment vehicles other than ATGF and GFRDA.  A summary listing of all Investor Claims is attached hereto as Exhibit "A".

### IV.  <u>VALUATION METHOD</u>

---

[2] The claim objection date and objection hearing date were initially set for November 8, 2013 and January 8, 2014 respectively.
[3] Due to their voluminous nature and the prevalence of personally identifiable information in the proofs of claim, true and correct electronic copies of all proofs of claims are being submitted directly to Judge Sullivan's chambers. The Receiver will immediately provide an electronic copy of the proofs of claim to any party who so requests.
[4] Although the Restitution Order has been vacated the Receiver has utilized same for claim analysis purposes as hereinafter indicated.

Claim Documentation

      12.     As noted earlier, there is a paucity of information available to the Receiver to reconstruct investor account histories.  Most notably, the Receiver is not in possession of Amerindo's books and records.  Ideally, the Receiver would have preferred to rely on the investor account statements including account statements reflecting account value on or about Valuation Date (herein defined) of May 25, 2005.  However, as set forth in many if not most of the filed claims, most investors report only receiving sporadic account statements with more than one investor reporting that no account statements were received following initial investment.  To the extent that documentary support for investor claims is lacking, the Receiver believes this is attributable not to the individual investors but to Amerindo itself.   Therefore, unless specific questions as to the accuracy of factual assertions made in the investor claims are raised, the Receiver has and will continue to rely on the representations and documents submitted in connection with the Investor Claims for the first interim distribution.  Thus, to establish an investor's general entitlement to an allowed Investor Claim, the Receiver has relied on the latest available statement along with any investor representations as to withdrawals, distributions, and redemptions.  By way of illustration, an investor who submitted a proof claim supported by an account statement dated January 2000 showing ATGF investments of 2,000 shares and who further represented that he or she did not subsequently redeem any shares would be entitled to an allowed Investor Claim in an amount determined in accordance with the valuation method set forth below.

Basic Methodology for Investor Claim Valuation

13.     In attempting to formulate an accurate, feasible, and fair methodology for valuing Investor Claims, the Receiver considered two approaches: the Pooling Method of Net Contribution Amounts ("NCA") and Separation by Individual  Investment Type ("IIT").

14.     The basic premise behind the NCA method is that although investment type varied among individual Amerindo investors – primarily between ATGF (equity fund) and GFRDA (interest bearing) – Amerindo did not necessarily invest the principal funds as directed. Most notably, to the best of the Receiver's knowledge, Amerindo did not maintain a separate account for investments into the GFRDA fund.  While Amerindo investors held certain expectations as to how principal funds were to be invested, Amerindo itself appears to have treated those funds as fungible in many instances.  Based on the foregoing, the NCA method eschews distinctions among investment types and simply calculates individual claim amounts as the sum of funds invested less any distributions, withdrawals or redemptions made.

15.     By contrast, the IIT method does draw distinctions among investment types for the simple reason that doing so best matches investors' initial expectations as to risks and returns.  With respect to ATGF investors, claims are simply calculated as the product of net asset value and the investor's total ATGF shares as set forth in the latest available account statement. For all ATGF based claims, the Receiver has employed a uniform net asset value of $20.71 ("UNAV") which value was asserted by claimant QGCI as being the net asset value as of May 25, 2005.  The UNAV appears to be generally consistent with the net asset value reported by Amerindo in the months immediately preceeding May 2005.[5]  As to GFRDA, claims are valued by considering the total amount on deposit and the prevailing yearly interest rate, as set forth on the latest available account statement provided, and carrying the investment forward to the

---

[5] The Receiver is aware that at least one investor has expressed suspicion that Amerindo understated the NAV for ATGF.

Valuation Date.   By way of illustration, if a GFRDA based investor claim included a statement dated May 31, 2002 with a total value of $100,000.00 and an annual interest rate of 6%, the allowed claim amount would be $100,000.00 plus 6% annual interest calculated from June 1, 2002 to May 25, 2005 less distributions.  As to other investment vehicles, the Receiver has attempted to calculate an allowed claim amount, if possible, based on the documentation and representations in the underlying proofs of claim.

16.     Between these two methods, the Receiver believes the IIT method is more appropriate as a matter of fairness.  While all Amerindo investors have been equally deprived of the benefit and use of their investor funds for close to a decade, treating all investment types the same would be inequitable and inconsistent with initial investor expectations.

Valuation Date

17.     The Court approved proof of claim form consists of two parts.  Part A asked investors to calculate their total claims as of May 25, 2005 while Part B asked investors to calculate any additional claim amounts accruing after May 25, 2005.  For purposes of fixing allowed claim amounts for the anticipated initial distribution, only the Part A amount has been considered.  There are two reasons for this.  First, any management of investor funds ceased on or about May 25, 2005.  As to GFRDA, there could be no reasonable expectation that GFRDA funds would realize the necessary returns to generate a guaranteed fixed rate of interest.  As to ATGF, investors in that fund had no ability to liquidate their holdings during the pendency of this case and the related criminal case.  Second, as the Receiver is still in the process of liquidating Amerindo assets, it is not yet known whether there will be sufficient funds to pay all investor claims.

## V.  RECEIVER'S VALUATION OF INVESTOR CLAIMS[6]

---

[6] In determining the value of the ATGF shares as of May 25, 2005 the Receiver used the UNAV of $20.71.

**FOR FIRST INTERIM DISTRIBUTION**

E. Ronald Salvitti, M.D., Claim No. 1

| | |
|---|---|
| ATGF Allowed Claim: | $1,905,192.22 |
| GFRDA Allowed Claim: | N/A |
| Other Investment Types: | N/A |
| Total Allowed Claim: | $1,905,192.22 |

18.     The Salvitti Claim is based on principal investments of $5,000,000.00 and $1,000,000.00 made on or about July 26, 1999 and November 15, 1999 respectively.   As stated in his proof of claim, Dr. Salvitti did not receive any distributions from Amerindo following his initial investment.  As set forth in Amerindo correspondence dated November 22, 1999 and April 15, 2004, Dr. Salvitti's principal funds were converted to 91,993.83 ATGF shares.

19.     Based on the proof of claim, the Receiver is satisfied that Dr. Salvitti made total principal investments of $6,000,000.00 representing 91,993.83 ATGF shares and that Dr. Salvitti has neither sold any of these shares nor received any distribution on account of his investment. However, the Slavitti Claim does not accurately reflect the decline in net asset value from the date of initial investment to May 25, 2005.  Based on the UNAV of $20.71, the Salvitti Claim should be reduced and allowed in the amount of $1,905,192.00

John Preetzman-Aggerholm, Claim No. 2

| | |
|---|---|
| ATGF Allowed Claim: | N/A |
| GFRDA Allowed Claim: | $381,771.21 |
| Other Investment Types: | N/A |
| Total Allowed Claim: | $381,771.21 |

20.     The Aggerholm Claim is based on a GRFDA statement balance of $279,745.76 as of August 16, 2000, less subsequent distributions totaling $45,000.00, plus interest calculated at a rate of 10% per annum.[7]

21.     The Receiver accepts Mr. Aggerholm's documentation regarding the principal funds invested and subsequent distributions as well as the 10% interest rate.  However, the Receiver's calculation yields an allowed claim amount of $381,771.21.

QGCI Nominees Limited, Claim No. 3

ATGF Allowed Claim:            $34,015.35
GFRDA Allowed Claim:           N/A
Other Investment Types:        N/A
Total Allowed Claim:           $34,015.35

22.     Based on the documentation provided by the claimant, QGCI Nominees Limited, the Receiver has no objection to Investor Claim No. 3 in the amount of $34,015.35.

Lisa and Debra Mayer, Claim No. 4

ATGF Allowed Claim:            $306,180.99
GFRDA Allowed Claim:           $11,564,333.89
Other Investment Types:        Intouch, Restitution Claim
Total Allowed Claim:           $11,870,514.88

23.     The claim of Lisa and Debra Mayer (the "Mayers") is based on investments in ATGF, GFRDA, and shares of Intouch Group.   Pursuant to a series of judgments entered by the Supreme Court, New York County in the action entitled *Mayer v. Vilar*, the Mayers assert that they are entitled to payment from Amerindo of $26,920,054.14 as of September 20, 2013. Subsequent to the entry of the judgments, the Mayers commenced a petition for payment in the Supreme Court which proceeding was removed to this Court where it remains pending.  The

---

[7] Mr. Aggerholm initially filed a proof of claim seeking principal amounts plus interest of 15% per annum for a total claim of $1,470,389.59.  On January 27, 2014, Mr. Aggerholm submitted  an amended proof of claim based on a 10% interest rate.

Mayers assert that the aggregate judgment amount establishes their right to payment and may not be altered by the Court ordered claims process.

24.     Notwithstanding the forgoing, based on statements for the period closing June 30, 2004, the Receiver has valued the ATGF and GFRDA based claims at $306,180.99 and $11,564,334.00 respectively but has unable to value the Intouch shares.  Subject to a final determination of the Mayers' rights with respect to the aforementioned judgments and a valuation of the Intouch shares, the Receiver submits that Mayers have an allowed Investor Claim in the amount of $11,870,514.88

Elizabeth Knope, Claim No. 6

| | |
|---|---|
| ATGF Allowed Claim: | N/A |
| GFRDA Allowed Claim: | N/A |
| Other Investment Types: | Rhodes Capital Group Ltd. |
| Total Allowed Claim: | $0.00 |

25.     Based on her claim, in 1989, Elizabeth Knope purchased $25,000.00 worth of shares of Rhodes Capital Group Ltd. through Amerindo.  The last available statement values Ms. Knope's investment at $84,774.05 as of August 5, 1995.  Upon information and belief, Rhodes Capital may have been subsequently liquidated with the proceeds allegedly rolled-over into other Amerindo investments vehicles.  Moreover, given the absence of more recent statements, the Receiver is without any reasonable means of even estimating an allowed claim amount.  Based on the forgoing, the Receiver is unable at this time to specify an allowed amount for Ms. Knope's claim.

Michael Walsh, Claim No. 7

| | |
|---|---|
| ATGF Allowed Claim: | $158,132.45 |
| GFRDA Allowed Claim: | $168,673.40 |
| Other Investment Types: | N/A |
| Total Allowed Claim: | $326,805.85 |

26.     Mr. Walsh is one of four investor claimants – Robin Sayko (Claim No. 12), Donald and Marilyn Walsh (Claim No. 13), and Patricia A. Kabara (Claim No. 23) being the other three – who inherited their Amerindo accounts upon the passing of Cecilia Kohl in 1995. Ms. Kohl's account, which consisted of 24,228.90 shares of ATGF and .2 shares of Rhodes Capital Group Ltd., was divided equally among the four claimants at some point in 1996. An Amerindo statement for the period closing December 31, 1996 shows that Mr. Walsh received 6,057.22 ATGF shares valued at $170,531.94 and .05 shares in Rhodes Capital plus dividends valued at $81,280.52. Thereafter, Rhodes Capital was allegedly liquidated with Mr. Walsh's share of the proceeds reinvested by Amerindo in GFRDA. An Amerindo statement for the period closing on February 28, 2003 shows that as of that date, Mr. Walsh's account consisted of (a) $143,784.00 invested in GFRDA with an annual interest rate of 6% and (b) 7,635.56 ATGF shares valued at $99,511.19.

27     Based on the foregoing, the Receiver has valued Mr. Walsh's ATGF shares at $158,132.45 as of May 25, 2005 and his GRFDA investment at $168,673.40 for a total allowed claim of $326,805.85.

Surinder Rametra, Claim No. 8

| | |
|---|---|
| ATGF Allowed Claim: | $40,550.00 |
| GFRDA Allowed Claim: | N/A |
| Other Investment Types: | N/A |
| Total Allowed Claim: | $40,549.77 |

28.     The Rametra Claim is based on principal funds of $250,000.00 that were initially invested in 1,957.98 ATGF shares. Mr. Rametra indicates in his proof of claim that he did not receive any distributions on account of his shares after his initial investment. Based on the UNAV, the Receiver submits that Mr. Rametra have an allowed claim in the amount of $40,549.77.

Sheridan Securities, Claim No. 9

| | |
|---|---|
| ATGF Allowed Claim: | $350,362.87 |
| GFRDA Allowed Claim: | N/A |
| Other Investment Types: | N/A |
| Total Allowed Claim: | $350,362.87 |

29.     The Receiver does not dispute Sheridan's assertion of a $500,000.00 initial investment representing 16,917.57 ATGF shares.  However, based on the UNAV, the Receiver submits that Sheridan is entitled to allowed claim of $350,362.87

James Charles, Claim No. 10

| | |
|---|---|
| ATGF Allowed Claim: | $463,904.00 |
| GFRDA Allowed Claim: | N/A |
| Other Investment Types: | N/A |
| Total Allowed Claim: | $463,904.00 |

30.     Mr. Charles initially invested the sum of $175,726.14 in GFRDA in late 1990 or early 1991.  Mr. Charles further states that on some unspecified date thereafter, his GFRDA account was converted to 22,400 shares of ATGF.  It does not appear that Amerindo made any distributions on account of Mr. Charles ATGF shares.  Other than confirmation of his initial investment, Mr. Charles did not or was unable to submit any documentation concerning his Amerindo investments.  However, Mr. Charles did submit a copy of a previously made declaration dated April 4, 2006 wherein Mr. Charles states that his ownership of 22,400.00 ATGF shares.  Using the UNAV of $20.71, the Receiver submits that Mr. Charles in entitled to an allowed claim of $463,904.00.

Ariadna Sanchez, Claim No. 11

| | |
|---|---|
| ATGF Allowed Claim: | N/A |
| GFRDA Allowed Claim: | $2,417,463.79 |
| Other Investment Types: | N/A |
| Total Allowed Claim: | $2,417,463.79 |

31.     The claim of Ariadna Sanchez consist of investments in GFRDA which, as of

March 31, 2003, consisted of $812,654.31  with an annual interest rate of 7% and $1,266,59.40

at 6%.  Based on the foregoing, the Receiver submits that Ms. Sanchez have an allowed claim in

the amount of $2,417,463.79

Robin Sayko, Claim No. 12

| | |
|---|---|
| ATGF Allowed Claim: | $111,834.00 |
| GFRDA Allowed Claim: | $164,531.75 |
| Other Investment Types: | N/A |
| Total Allowed Claim: | $276,365.75 |

32.     As of May 31, 2004, the date of the last statement submitted by Robin Sayko, Ms.

Sayko held GFRDA deposits of $152,411.00 at 4.5% interest and 5,400 ATFG shares.  Based on

the foregoing, the Receiver submits that Ms. Sayko have total allowed claim of $276,365.75.

Donald and Marilyn Walsh, Claim No. 13

| | |
|---|---|
| ATGF Allowed Claim: | $152,688.00 |
| GFRDA Allowed Claim: | $81,535.91 |
| Other Investment Types: | N/A |
| Total Allowed Claim: | $234,223.91 |

33.     Based on an account statement dated April 30, 2005, the Walsh's held GFRDA

deposits of $77,411.04 at 1.5% interest and 7,372.67 ATFG shares.  Based on the foregoing, the

Receiver submits that Walsh's have total allowed claim of $234,223.91

Frank Harris, Claim No. 14

| | |
|---|---|
| ATGF Allowed Claim: | N/A |
| GFRDA Allowed Claim: | $0.00 |
| Other Investment Types: | N/A |
| Total Allowed Claim: | $0.00 |

34.     Mr. Harris states that he made a £30,000 investment in GFRDA in 2000.

Although he submitted bank statements showing two debits totaling this amount along with a

GFRDA Offering Circular, the Receiver submits that additional documentation is needed to

13

substantiate Mr. Harris' initial investment amount and the GFRDA interest rate.   Accordingly,

the Receiver submits that Mr. Harris is not entitled to an allowed Investor Claim at this time.

Charles Kaye, Claim No. 15

| | |
|---|---|
| ATGF Allowed Claim: | $33,761.03 |
| GFRDA Allowed Claim: | N/A |
| Other Investment Types: | N/A |
| Total Allowed Claim: | $33,761.03 |

35.     On December 15, 1999, Mr. Kaye invested 1,630.18 ATFG shares for the sum of

$174,988.00.  Per the only statement received by Mr. Kaye, the total value of his shares was

$208,145.62 based on a net asset value of $127.6826 as of March 31, 2000.  Based on the

UNAV, the Receiver submits that the Mr. Kaye is entitled to an allowed claim of $33,761.03.

Alfred Heitkonig, *et* al.,Investor Claim No. 16

| | |
|---|---|
| ATGF Allowed Claim: | $1,863,900.00 |
| GFRDA Allowed Claim: | $3,458,330.92 |
| Other Investment Types: | N/A |
| Total Allowed Claim: | $5,322,230.92 |

36.     Alfred Heitkonig submitted Claim No. 16 on behalf of himself and on behalf of

Elna Charlotte Olga a/k/a Elna Heitkoenig and Maaike Maria Hickok a/k/a Heitkoenig.  In his

well-documented proof of claim, Mr. Heitkonig provides a thoughtful narrative highlighting

several issues relating to the proper valuation of Investor Claims: the reliability of Amerindo's

self-reported net asset values, the mismanagement of investor funds in contravention of investor

expectations, and the pooling of investor assets for distribution purposes.  Despite Mr.

Heitkonig's belief that the ATGF net asset value should likely be higher and that Amerindo

improperly and unilaterally reduced the GFRDA interest rate from 15%, the Receiver has

determined that for interim distribution purposes, Mr. Heitkonig is entitled to an allowed

Investor Claim in the amount of $5,322,230.92.  This figure is based on a May 31, 2004

14

statement showing GRFDA deposits of $3,164,889.13 at 5% interest and 90,000.00 ATGF shares.

The Winsford Corporation, Claim No. 17

| | |
|---|---|
| ATGF Allowed Claim: | $1,064,423.95 |
| GFRDA Allowed Claim: | N/A |
| Other Investment Types: | N/A |
| Total Allowed Claim: | $1,064,423.95 |

     37.    The Winsford claim is based on a $1,500,000.00 investment in ATGF on June 16, 1997.  Although Winsford submitted documentation of its initial transfer, this documentation does not include the total shares purchases or the net asset value of ATGF as of the purchase date.  However, based on account statements submitted with other investor proofs of claim, the Receiver has determined that Amerindo reported the net asset value of ATGF as of June 30, 1997 was $29.1848. Using this NAV, the Receiver has determined that Winsford purchased 51,396.62 ATGF shares which amount yields an allowed Investor Claim of $1,064,423.95.

Peter Sweetland, Claim No. 18

| | |
|---|---|
| ATGF Allowed Claim: | $24,734.37 |
| GFRDA Allowed Claim: | N/A |
| Other Investment Types: | N/A |
| Total Allowed Claim: | $24,734.37 |

     38.    On March 16, 1998, Peter Sweetland received 1,194.32 ATGF shares previously owned by his father and valued at $41,670.47.  Based on the UNAV, the Receiver submits that Peter Sweetland is entitled to an allowed claim of $24,734.37.

John W. Sweetland, Sr., Claim No. 19

| | |
|---|---|
| ATGF Allowed Claim: | $2,358,037.29 |
| GFRDA Allowed Claim: | N/A |
| Other Investment Types: | N/A |
| Total Allowed Claim: | $2,358,037.29 |

39.     Mr. Sweetland's proof of claim asserts ownership of 113,859.84 shares but did provide any supporting documentation, other than an excerpt of a tax return reporting a $2,846,496.00 theft loss.  Mr. Sweetland, through counsel, recently submitted additional documentation of Mr. Sweetman's purchase of 322,811.88 ATGF shares between 1990 and 1991.  Given the age of the supporting documentation, the Receiver has requested that Mr. Sweetman provide a more recent statement or an affidavit representing that the claimed 113,859.84 ATGF shares accurately reflects all purchases, redemptions or transfers of ATGF shares to date.  Assuming the requested additional substantiation is received, the Receiver submits that Mr. Sweetman should have an allowed Investor Claim of $2,358,037.29.

Timothy Sweetman, Claim No. 20

| | |
|---|---|
| ATGF Allowed Claim: | $58,475.51 |
| GFRDA Allowed Claim: | N/A |
| Other Investment Types: | N/A |
| Total Allowed Claim: | $58,475.51 |

40.     On March 16, 1998, Timothy Sweetland received 1,194.32 ATGF shares previously owned by his father and valued at $41,670.47.  Mr. Sweetland also independently purchased an additional 1,629.22 ATGF shares bringing his total ATGF shares to 2,823.54.  Based on the total number of ATGF shares and the UNAV, the Receiver submits that Timothy Sweetland should have an allowed claim of $58.475.51.

John W. Sweetland, Jr., Claim No. 21

| | |
|---|---|
| ATGF Allowed Claim: | $24,734.37 |
| GFRDA Allowed Claim: | N/A |
| Other Investment Types: | N/A |
| Total Allowed Claim: | $24,734.37 |

41.     On March 16, 1998, John W. Sweetland received 1,194.32 ATGF shares previously owned by his father and valued at $41,670.47.  Based on the UNAV, the Receive3r submits that John W. Sweetland is entitled to an allowed claim of $24,734.37.

Anthony W. Gibbs, Claim No. 22

| | |
|---|---|
| ATGF Allowed Claim: | $367,524.84 |
| GFRDA Allowed Claim: | N/A |
| Other Investment Types: | N/A |
| Total Allowed Claim: | $367,524.84 |

42.     Along with his proof of claim, Mr. Gibbs submitted several Amerindo statements dated between 1991 and 1999.  The last of these statements show that Mr. Gibbs held 17,746.25 ATGF shares.  Based on the total share amount and the UNAV, the Receiver submits that Mr. Gibbs is entitled to an allowed claim of $367,524.84

Patricia A. Kabara, Claim No. 23

| | |
|---|---|
| ATGF Allowed Claim: | $58,202.97 |
| GFRDA Allowed Claim: | $78,102.73 |
| Other Investment Types: | N/A |
| Total Allowed Claim: | $136,305.70 |

43.     Based on an account statement dated March 31, 2004, the Ms. Kabara held GFRDA deposits and accrued interest of $115,971.41 at 4.5% interest and 2,810.38 ATFG shares.  Ms. Kabara also notes she received a subsequent distribution of $41,670.00 on September 7, 2004.   Based on the foregoing, the Receiver submits that Ms. Kabara should a have total allowed claim of $136,305.70.

National Investor Group Holdings, Ltd., Claim No. 24

| | |
|---|---|
| ATGF Allowed Claim: | $161,529.92 |
| GFRDA Allowed Claim: | N/A |
| Other Investment Types: | N/A |
| Total Allowed Claim: | $161,529.92 |

44.    As set forth in the addendum to its proof of claim, National Investor Group

Holding, Ltd. ("NIGH") is the successor in interest to NIG-Amertech Ltd. ("NIG-A").  In 2004,

NIG-A purchased 7,799.61 ATGF shares for the sum of $1,000,000.00.  Based on the total

number of shares claimed and the UNAV, the Receiver submits that NIGH should have an

allowed claim in the amount of $165,529.92.

Angelica Jordan, Claim No. 25

| | |
|---|---|
| ATGF Allowed Claim: | N/A |
| GFRDA Allowed Claim: | N/A |
| Other Investment Types: | Amerindo International Venture Fund I, individual equity portfolio |
| Total Allowed Claim: | $828,766.10 |

45.    As set forth the proof of claim including an Amerindo account statement for the

period ending March 31, 2002, Angelica Jordan asserts a claim based on (a) an investment

vehicle named Amerindo International Investment Fund I ("AIIF") and (b) an individual

portfolio of equities managed by Amerindo.  Per the March 31st account statement, the AIIF

account consisted of $665,259.19 in deposits held at 8% interest while the equities portfolio was

valued at $2,637,071.45.  While the Receiver is unable to value claimant's portfolio of equities,

based on the AIIF deposit and interest rate set forth on the March 31, 2002 statement, the

Receiver submits that MS. Jordan is entitled to an allowed Investor Claim of $828,766.10.

Paul Marcus, Claim No. 29-a

| | |
|---|---|
| ATGF Allowed Claim: | $3,025,835.38 |
| GFRDA Allowed Claim: | N/A |
| Other Investment Types: | N/A |
| Total Allowed Claim: | $3,025,835.38 |

46.    The claim of Mr. Marcus is based on a series of purchases, transfers, redemptions

and sales commencing in 1995 and continuing through 1999.  Based on Mr. Marcus's proof of

claim, he held a total of 182,105.04 ATGF shares as of December 31, 1999.  These transactions

include a January 29, 1999 redemption, as set forth on an Amerindo confirmation statement, of

60,000.00 valued at $3,102,996.00.  However, Mr. Marcus does not recall receiving the

redemption amount and has not located any records aside from the confirmation statement

reflecting the redemption.  Further, Mr. Marcus claims a right to an additional 30,000 shares that

were to be issued to him in consideration of services and other non-cash consideration.  Finally,

Mr. Marcus states he transferred 12,000 shares to each of The Deane J. Marcus Trust, The

Steven E. Marcus Trust, and The Cheryl Marcus-Podhaizer Trust.

47.     In evaluating Mr. Marcus's claim, the Receiver, in the absence of documentation

to the contrary, views the redemption of January 29, 1999 as having occurred.  Similarly, the

Receiver has no documentation to support Mr. Marcus' claim to an additional 30,000 ATGF

shares for non-cash consideration.  Thus, the total number of shares presently held by Mr.

Marcus is determined to be 146,105.04.  Based on the UNAV, the Receiver submits that Mr.

Marcus should have an allowed claim of $3,025,835.38.

The Deane J. Marcus Trust, Claim No. 29-b

| | |
|---|---|
| ATGF Allowed Claim: | $425,776.89 |
| GFRDA Allowed Claim: | N/A |
| Other Investment Types: | N/A |
| Total Allowed Claim: | $425,776.89 |

48.     Claim No. 29-b is based on total ATGF shares of 20,559.  Based on the UNAV,

the Receiver submits that Claim No. 29-b should be allowed in the amount of $425,776.89.

The Steven E. Marcus Trust, Claim No. 29-c

| | |
|---|---|
| ATGF Allowed Claim: | $425,776.89 |
| GFRDA Allowed Claim: | N/A |
| Other Investment Types: | N/A |
| Total Allowed Claim: | $425,776.89 |

49.     Claim No. 29-c is based on total ATGF shares of 20,559.  Based on the UNAV,

the Receiver submits that Claim No. 29-c should be allowed in the amount of $425,776.89

The Cheryl Marcus-Podhaizer Trust, Claim No. 29-d

| | |
|---|---|
| ATGF Allowed Claim: | $516,322.05 |
| GFRDA Allowed Claim: | N/A |
| Other Investment Types: | N/A |
| Total Allowed Claim: | $516,322.05 |

50.     Claim No. 29-d is based on total ATGF shares of 24,931.05.  Based on the

UNAV, the Receiver submits that Claim No. 29-d should be allowed in the amount of

$516,322.05.

The Eve S. Marcus Children's Trust, Claim No. 29-e

| | |
|---|---|
| ATGF Allowed Claim: | $19,599.94 |
| GFRDA Allowed Claim: | N/A |
| Other Investment Types: | N/A |
| Total Allowed Claim: | $19,599.94 |

51.     Claim No. 29-d is based on total of ATGF shares of 946.40.  Based on the

UNAV, the Receiver submits that Claim No. 29-c should be allowed in the amount of

$19,599.94.

Imagineers Profit Sharing Plan, Claim No. 30

| | |
|---|---|
| ATGF Allowed Claim: | $143,751.42 |
| GFRDA Allowed Claim: | N/A |
| Other Investment Types: | N/A |
| Total Allowed Claim: | $143,751.42 |

52.     The claim of Imagineers Profit Sharing Plan is based on total ATGF shares of

6,941.16 as of December 31, 2004.  Using the UNAV and total shares held, the Receiver submits

that Claim No. 30 should be allowed in the amount of $143,751.42.

Lily Cates, Claim No. 30

| | |
|---|---|
| ATGF Allowed Claim: | N/A |

GFRDA Allowed Claim:     N/A
Other Investment Types:    Rhodes Capital, SBIC
Total Allowed Claim:     $9,198,189.51

  53.  Along with her proof of claim, Ms. Cates submitted an Amerindo statement for

the period closing March 31, 2004 showing an account balance of $11,505,750.51 consisting of

(a) $5,000,000.00 on deposit with SBIC, (b) $2,307,561.00 held in a Bear Stearns account, (c)

$1,000,000.00 representing two shares of Rhodes Capital, and (d) total interest of $3,198,189.51.

The proof of claim further indicates that the amount held in the Bear Stearns account was

subsequently transferred to an account over which Amerindo held no control.  Although the

Receiver is without information to reliably value the Cate's holdings as of May 25, 2005, the

Receiver submits that the 2004 account statement is sufficiently proximate to the Valuation Date

to estimate an allowed amount for the Cates claim.  Based on the foregoing, the Receiver submits

that Ms. Cates have an allowed Investor Claim in the amount of $9,198,189.51 which amount

represents the total balance of all accounts as of March 31, 2004 less the subsequent transfer

from the Bear Stearns account.

Robert Cox, Claim No. 31

ATGF Allowed Claim:     N/A
GFRDA Allowed Claim:    $104,638.60
Other Investment Types:    N/A
Total Allowed Claim:     $104,638.60
.

  54.  An Amerindo statement for the period ending February 28, 2002, shows that Mr.

Cox held GFRDA deposits of $85,126.90 at 6.5% interest.  Based on the foregoing, the

Receiver's submits that Mr. Cox has an allowed Investor Claim of $104,638.60.

Graciela Lecube Chavez

ATGF Allowed Claim:     N/A
GFRDA Allowed Claim:    $134,220.11

Other Investment Types:          N/A
Total Allowed Claim:             $134.220.11

55.    The most recent statement available for Ms. Chavez shows that the period closing

September 30, 2001, she held $90,807.09 in GFRDA deposits at 11% interest.  Based on the

foregoing.  Based on the foregoing, the Receiver submits that Ms. Chacez is entitled an allowed

Investor Claim of $134,220.11.

## VI.  INTERIM DISTRIBUTION

56.    The total of allowed Investor Claims, as proposed by the Receiver, is

$42,675,804.44.  As of the most recent bank statements received from JP Morgan, the

Distribution Fund has some $23,158,299.00 in cash on deposit.  Based on the foregoing, the

Receiver proposes an interim distribution of $17,368,723.95 which amount represents 75% of

the total cash held in the Distribution Fund to be distributed *pro rata* on account of allowed

Investor Claims.  The proposed distribution would result in a roughly 40.70 %[8] initial

distribution on account of allowed Investor Claims. A spreadsheet setting forth the proposed

distribution is attached as Exhibit "B".  The Receiver is not proposing a distribution to non-

investor claims at this time. The proposed interim distribution is predicated upon a court finding

that the Mayers do not have a lien on the assets and therefore does not prime the investors'

claims.

**WHEREFORE**, the Receiver respectfully requests that the Court enter an Order

(a) fixing the Investor Claims in the amounts set forth on Exhibit "A" to the Motion for purposes

of this interim distribution, (b) authorizing the Receiver to make an interim distribution as set

forth on Exhibit "B" to the Motion without prejudice to seek further authority to remit additional

distributions, and (c) upon receipt of documentation permit the Receiver to supplement the

---

[8] This is without prejudice to seek a further order authorizing the Receiver to distribute the liquidation value of the remaining assets in excess of the Allowed Claim amounts.

interim distribution upon approval by the Court, and for such other and further relief as to the

Court deems just and proper.

Dated: New York, New York
       February 7, 2014

                                    _/s/ Ian J. Gazes_____
                                    Ian J. Gazes, Receiver
                                    Gazes LLC
                                    151 Hudson Street
                                    New York, New York 10013
                                    (212) 765-9000