UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SECURITIES AND EXCHANGE COMMISSION,

        Plaintiff,

v.

AMERINDO INVESTMENT ADVISORS INC.,
AMERINDO INVESTMENT ADVISORS, INC.,
AMERINDO ADVISORS UK LIMITED,
AMERINDO MANAGEMENT INC.,
AMERINDO TECHNOLOGY GROWTH FUND, INC.,
AMERINDO TECHNOLOGY GROWTH FUND II, INC.,
TECHNO RAQUIA, S.A.,
ALBERTO W. VILAR, and
GARY ALAN TANAKA,

        Defendants.

05 Civ. 5231 (RJS)

ECF CASE

---

**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S
REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO
SET DISGORGEMENT AND CIVIL MONEY PENALTIES AGAINST
<u>DEFENDANTS ALBERTO W. VILAR AND GARY ALAN TANAKA</u>**

Plaintiff Securities and Exchange Commission (the "Commission") respectfully submits this reply memorandum of law in further support of its motion ("Motion") to set disgorgement and civil money penalties against defendants Alberto W. Vilar ("Vilar") and Gary Alan Tanaka ("Tanaka," and, together with Vilar, the "Individual Defendants"), in response to the February 7, 2014 opposition by the Individual Defendants to the Commission's Motion ("Objection").

The Court held in its original decisions on summary judgment and on reconsideration that Vilar and Tanaka had violated the anti-fraud provisions of the federal securities laws with respect to Lily Cates, the Mayer family, Tara Colburn, Graciela Lecube-Chavez, and Robert Cox, and that the only issue to be decided by this Motion is the amount of disgorgement and civil penalties to assess against them. *SEC v. Amerindo Investment Advisors Inc., et al.*, 2013 WL 1385013 at *13 (RJS) (S.D.N.Y., Mar. 11, 2013) ("[T]he Court finds, in principal, that disgorgement and civil penalties are appropriate forms of relief for the individual Defendants' violations. The Court, however, is not prepared to determine the size of the disgorgement order and penalties at this time."); *SEC v. Amerindo Investment Advisors Inc., et al.*, 2014 WL 405339 at *5-*6 (RJS) (S.D.N.Y., Feb. 3, 2014) (finding the Individual Defendants liable for fraud on the Mayer family). Nonetheless, the Objection largely constitutes a frivolous attempt to relitigate the merits of the Individual Defendants' liability and introduce irrelevant and often incomprehensible and unsupportable arguments. Accordingly, this reply memorandum focuses only on those matters raised by the Objection that relate to the assessment of disgorgement and civil money penalties against the Individual Defendants.

1. There Is No Requirement That The Commission Trace The Proceeds Of The Fraud In Order To Establish The Individual Defendants' Liability For Disgorgement Of Their <u>Ill-Gotten Gains</u>

The Individual Defendants contend that because the Commission has not traced the proceeds of their fraudulent raises from Lily Cates and the testifying GFRDA investors to a specific pot of money, its claim is merely for "legal disgorgement" which is not supported by statute, and that the Commission cannot obtain relief in the form of "equitable disgorgement." Objection at 4-5. This is a frivolous argument. The Second Circuit has long established that the remedy of equitable disgorgement is available to the Commission in order to deprive the defendant of his or her ill-gotten gains for violations of the federal securities laws. *See, e.g.*, *SEC v. Tex. Gulf Sulphur Co.*, 446 F.2d 1301, 1307 (2d Cir. 1971) (holding that the Commission may seek to deprive wrongdoers of their ill-gotten profits in order to effectuate the purposes of the Exchange Act); *SEC v. Cavanagh*, 445 F. 3d 105, 116 (2d Cir. 2006) ("[D]isgorgement is a well-established remedy in the Second circuit, particularly in securities enforcement actions.").

Moreover, the Individual Defendants exact argument – that absent a traceable *res* equitable disgorgement is unavailable to the Commission – was explicitly rejected by the United States Court of Appeals for the Second Circuit in a controlling case that the Individual Defendants failed to cite: *FTC v. Bronson Partners, LLC*, 654 F. 3d 359, 373 (2d Cir. 2011). In *Bronson Partners*, the Second Circuit, relying on precedent developed in Commission civil enforcement actions - like the present action - rejected the argument that the Federal Trade Commission ("FTC") could not obtain an award of equitable disgorgement because it was unable to trace specific funds in the defendant's possession that were subject to return. The Court explicitly rejected the notion that a public agency was required to identify a specific *res* in order to seek disgorgement, and held that "when a public entity [such as the Commission or the FTC]

3

seeks disgorgement it does not claim any entitlement to particular property; it seeks only to 'deter violations of the [] laws by depriving violators of their ill-gotten gains.'" *Bronson Partners*, 654 F. 3d at 373 (*citing SEC v. Fishbach Corp.*, 133 F. 3d 170, 175 (2d Cir. 1997), which addressed the remedy of equitable disgorgement available to the Commission under the federal securities laws). The Second Circuit went on to state that "it is by now so uncontroversial that tracing is not required in disgorgement cases that we recently rejected an argument to the contrary via summary order [in a Commission civil action]."[1] *Id.* at 374; *see also SEC v. Banner Fund Int'l*, 211 F.3d 602, 617 (D.C. Cir. 2000) ("[D]isgorgement is an equitable obligation to return a sum certain equal to the amount wrongfully obtained, rather than a requirement to replevy a specific asset.").

> 2. The Commission Relies on Documentary Evidence And Findings Affirmed By The Second Circuit In Support Of Its Disgorgement Calculation

The Individual Defendants contend that the only evidentiary basis for the Commission's calculation of disgorgement is its Rule 56 Statement submitted in support of its original motion for summary judgment on liability. Objection at 6-7. This is patently false. The Commission submitted substantial documentary evidence attached as exhibits to the Jacobson Declaration (Dkt. # 333) showing the amounts of money raised by the Individual Defendants from Lily Cates, Tara Colburn and the Mayer family, as well as the amounts returned to them subsequent to their investments. Moreover, the Individual Defendants' contention that the Commission has not distinguished between "legally and illegally derived profits" is simply wrong. Objection at 7-9.

---

[1] Notably, the Second Circuit in *Bronson Partners* analyzed the Supreme Court's decision in *Great-West Life & Annuity Ins. Co. v. Knudson,* 534 U.S. 204 (2002), upon which the Individual Defendants rely for their argument. Objection at 5. *See Bronson Partners*, 654 F. 3d at 371.

As discussed above, the Court has already found that the Individual Defendants defrauded Lily Cates, the Mayers and Tara Colburn. In addition, the Second Circuit specifically affirmed the findings that the Individual Defendants diverted $5 million of Lily Cates' investment in the SBIC and misappropriated $250,000 from her managed account by forging her signature on a letter of authorization. *U.S. v. Vilar*, 729 F. 3d 62, 69 (2d Cir. 2013). The Second Circuit also affirmed the Individual Defendants' convictions based, in part, upon Lisa Mayer's investment of $11,066,713.44 in a GFRDA in January 2001. *Id.* at 78. The documentary evidenced attached to the Jacobson Declaration buttresses the findings that Lily Cates and the Mayers invested the amounts set forth in the Motion.

The Individual Defendants also take issue with the Commission's calculation of the disgorgement attributable to the fraud on the Mayers, arguing that the $11,066,713.44 is different than the amount sought by the Government in the criminal case for forfeiture. Objection at 10-12. However, the Commission explained in its memorandum in support of its Motion (the "Memorandum") that at the time of the Mayers' investment in January 2001, Amerindo had given them the option of receiving all of their existing investment (principal and interest) or investing it in a new GFRDA on new terms. Memorandum at 4. At the time the Mayers' made their investment decision, accounts under the Individual Defendants' control had net equity of almost $300 million, so that the Mayers could have redeemed their entire investment. Instead, they opted to accept the Individual Defendants' fraudulent offer to invest in a new GFRDA, thus unjustly enriching Vilar and Tanaka in the entire amount of the Mayers' property that they were able to retain as a result of their fraud. Memorandum at 4.[2]

---

[2] The Individual Defendants' assertion that there is no evidence that they diverted Lily Cates $5 million investment in the SBIC is frivolous, (Objection at 12-15), and is belied by the
(Cont.)

Finally, the Individual Defendants dispute the calculation of prejudgment interest for the $5 million diverted from Lily Cates' SBIC investment and the misappropriation of $250,000 from her managed account, arguing that interest should not accrue subsequent to their arrests in June 2005 because their funds were "frozen." Objection at 11-12. As discussed in the Memorandum, no funds were frozen until the Court entered the post-conviction restraining order in the parallel criminal case on October 26, 2009. Memorandum at 6. Nonetheless, recognizing that there was no evidence that the Individual Defendants accessed the funds held at Bear Stearns at any time after their arrests, the Commission staff limited its request for prejudgment interest to the date of the arrests for funds raised by the Individual Defendants from the Mayers and Tara Colburn, that arguably were deposited into those accounts and could not be traced out of the accounts. *Id.* However, there is no dispute that the Individual Defendants misappropriated $5 million from Lily Cates' – under the guise of an SBIC investment - and $250,000 from her managed account, and the Individual Defendants spent or otherwise disbursed the money. Accordingly, the Court should grant the Commission prejudgment interest on the disgorgement amount attributable to Lily Cates up to the present.

    3.   <u>The Court Should Grant The Commission Maximum Civil Penalties</u>

The Individual Defendants contend that no civil penalties should be assessed against them because they were already penalized by virtue of their criminal sentences, their administrative bars from association with an investment adviser, and their loss of their Amerindo US business after a monitor was appointed. Objection at 15-18. As set forth in the Memorandum, the criminal sentences are no impediment to the Court from assessing

---

trial record and by the Second Circuit's specific affirmance of their convictions for the fraud on Lily Cates.

disgorgement, prejudgment interest, and civil money penalties against the Individual Defendants in this civil action. Memorandum at 9, *citing SEC v. Palmisano,* 135 F.3d 860 (2d Cir. 1998) and *SEC v. Rajaratnam*, 822 F. Supp. 2d 432 (S.D.N.Y. 2011). *See also Collins v. SEC,* 736 F.3d 521 (D.C. Cir. 2013) (upholding penalty equal to over 100 times disgorgement amount where conduct was egregious and respondent failed to deal fairly with elderly, unsophisticated clients); *VanCook v. SEC*, 653 F. 3d 130 (2d Cir. 2011) (Second Circuit upheld Commission's order barring respondent from the securities industry, issuing a cease-and-desist order against him, and ordering him to pay disgorgement and a civil money penalty)*, cert. denied*, 132 S. Ct. 1582 (2012) As for the Individual Defendants' purported loss of Amerindo US, the preliminary injunction order entered in this case, which also appointed the monitor over Amerindo US in June 2005, was entered *on consent*. *See* Dkt. Entry 06/02/2005 ("MEMORANDUM TO THE DOCKET CLERK: Hearing begun before Judge Laura Taylor Swain. Consent PI order signed."). The Court should give no credence to the Individual Defendants' belated attack on this Order.[3]

Finally, the Individual Defendants argue that the receivership is improper because it seeks to use the Commission's disgorgement and penalty judgments to compensate investors who are not the subject of the Commission's request for disgorgement in addition to those that are. Objection at 20-23. This argument has no relevance to the issue before the Court: whether the Individual Defendants should be ordered to pay disgorgement, prejudgment interest and civil money penalties. In any event, the Court has broad equitable powers in the face of the Individual

---

[3] The Individual Defendants' assertion that their conduct was not egregious and that there is no basis to find that their convictions were based on "fraud, deceit, manipulation, or deliberate disregard" is similarly an additional transparent attempt to relitigate their guilt. Objection at 18-20.

Defendants' serious violations of the anti-fraud provisions of the federal securities laws to return the funds held in the receivership estate to their rightful owners regardless of any Commission judgment. Indeed, the Individual Defendants have maintained throughout this case that *all* investors including GFRDA, ATGF, ATGF II and other investors should be paid out of the assets now held at JPMorgan Chase. The fact that some investors were not the subject of the Commission's disgorgement request does not alter the conclusion that they are all the rightful owners of the funds entitled to recovery. *Cf. SEC v. Byers*, 637 F. Supp. 2d 166 (S.D.N.Y. 2009) (court approved receiver's distribution plan that provided a *pro-rata* distribution to defrauded investors *and* unsecured creditors, such as vendors, who held unsecured claims against the estate; distribution was not limited to defrauded investors who were the subject of the Commission's enforcement action; assets distributed in the absence of any Commission judgment for disgorgement or civil money penalties), *aff'd, SEC v. Malek*, 2010 WL 4188029 (2d Cir. 2010).

**CONCLUSION**

For all of the foregoing reasons, the Commission respectfully requests that the Court overrule the Objection, order the Individual Defendants to pay disgorgement, prejudgment interest, and civil money penalties in the amounts set forth in the Motion, and grant the Commission such other and further relief as is just and proper.

Dated: New York, New York
       February 13, 2014

                                                Respectfully submitted,

/s/ Neal Jacobson
By: Neal Jacobson
     Mark D. Salzberg
Securities and Exchange Commission
New York Regional Office
3 World Financial Center, Suite 400
New York, New York 10281
Telephone: (212) 336-0095
Facsimile: (212) 336-1324
Email: Jacobsonn@sec.gov

Of Counsel:
Alistaire Bambach