**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,**<br><br>**Plaintiff,**<br><br>v.<br><br>**AMERINDO INVESTMENT ADVISORS INC.,** *et al.***,**<br><br>**Defendants.** | **05 Civ. 5231 (RJS)**<br><br>**ECF CASE** |

**RECEIVER'S AMENDED MOTION FOR AN ORDER**
**(A) FIXING INVESTOR CLAIMS AND (B) AUTHORIZING INTERIM DISTRIBUTION**

Ian J. Gazes, the Court appointed receiver (the "Receiver") in the above-captioned case,

submits this amended motion (the "Amended Motion") for an order of the Court (a) fixing

investor claims and (b) authorizing the Receiver to make an interim distribution on account of

allowed claims, and respectfully states as follows:

## I.  PRELIMINARY STATEMENT

1.       On February 8, 2014, the Receiver filed his motion for an order of the Court

fixing Investor Claims and authorizing the Receiver to make an interim distribution on account

of allowed claims (the "Motion").  Among other things, the Motion (a) set forth alternative

methods for valuing Investor Claims, the Pooling Method of Net Contribution Amounts

("NCA") and Separation by Individual Investment Type ("IIT"), (b) proposed the IIT as the

more equitable of the two alternatives, (c) and set forth a proposed distribution based on his

analysis of Investor Claims based on the IIT method.

2.      Following its review of the Motion, the SEC staff together with the Receiver

determined that the proposed valuation method and resulting distribution set forth in the Motion

could be improved.  Given the substantial evidence of comingling of investor funds regardless of

underlying investment type, the Receiver and the SEC agreed that it is more equitable to utilize a

valuation method more akin to the NCA method.  Based on the foregoing and after consultation

with the SEC staff, the Receiver has recalculated his proposed distribution by employing a

modified version of the NCA method as hereinafter described more fully below.

3.      It should be noted that, with the exception of the claim of John Sweetland, Sr.,

described below, this revised methodology is based on all of the same documentation previously

filed with the Court and attached to the February 17, 2014 Declaration of Ian Gazes, Receiver, in

support of the Receiver's motion to fix investor claims (Docket # 363).  Thus, the only

modification is in the method of calculating the claims based upon the previously filed

documentation.

## II. <u>REVISED VALUATION METHOD ("REVISED NCA METHOD")</u>

**Investor Claim based on Investments in Guaranteed Fixed Rate Deposit Accounts ("GFRDA")**

4.      Previously, the Receiver proposed valuing GRFDA claims "by considering the

total amount on deposit and the prevailing yearly interest rate, as set forth on the latest available

account statement provided, and carrying the investment forward to the Valuation Date [*i.e.*,

May 25, 2005] utilizing the interest rate set forth in the most recent Amerindo statement.  By

way of illustration, if a GFRDA based investor claim included a statement dated May 31, 2002

with a total value of $100,000.00 and an annual interest rate of 6%, the allowed claim amount

would be $100,000.00 plus 6% annual interest calculated from June 1, 2002 to May 25, 2005 less

distributions."

5.    Under the Receiver's Revised NCA Method, the allowed amount of a GRFDA based Investor Claim would consider the account balance as of the last available account statement but with no interest component subsequent to the statement date.  Thus, in the foregoing example the allowed amount of the Investor Claim would be $100,000.00.  This methodology gives GFRDA investors, who believed they were investing in relatively secure investments, the benefit of accrued interest through the date of their last statement, but it does not account for any additional interest beyond that point because GFRDA investments were typically of limited duration and because it would be unfair to other similarly situated investors.

Investor Claim based on Investments in Amerindo Technology Growth Fund ("ATGF")  and Amerindo Technology Growth Fund II ("ATGF II")

6.    With respect to ATGF and ATGF II investors, the Receiver previously proposed that the allowed amount of an ATGF or ATGF IIbased Investor Claim be calculated as the product of a uniform net asset value of $20.71 times the investor's total ATGF or ATGF II shares as set forth in the latest available account statement.   As an example, a claimant whose last available statement showed ownership of 10,000 ATGF shares would have an allowed Investor Claim of $207,100.00 (10,000 x $20.71).

7.    Under the proposed and recommended Revised NCA Method, ATGF based claims are valued by either (a) the amount of an investor's contributions to the ATGF fund less any subsequent redemptions/distributions, or (b) if the amount of an investor's initial contributions could not be verified, the ATGF statement balance reflected on the last available statement less any subsequent redemptions/distributions.  The proposed methodology recognizes that in some instances, claimants were unable to supply documentation establishing their initial ATGF investments but only account statements from some later date.  This methodology also recognizes that ATGF and ATGF II investors believed they were investing in more risky

3

technology stocks, and therefore attempts to limit their claims to actual amounts contributed less

distributions without any accrued interest.

**Other Investment Types**

8.      Aside from GFRDA and ATGF and ATGF IIbased claims, a number of other

Investor Claims are based on other investment vehicles, most notably investments in Rhodes

Capital Group.  As with GFRDA,  ATGF and ATGF II, the Receiver's proposed distribution

valued these claims as the sum of contributions less any subsequent distributions and/or

redemptions and using the initial contribution amount as a starting point or the last available

statement when initial contribution amounts could not be verified.

### III.  REVISED PROPOSED FIRST INTERIM DISTRIBUTION

9.      A summary listing of all Investor Claims including revised allowed amounts for

Investor Claims is attached hereto as Exhibit "A".  Under the Receiver's Revised NCA Method,

the aggregate of allowed Investor Claims is increased by $3,600,615.13 from $42,675,804.44 to

$46,276,419.57.

10.     The revised first interim distribution under the Revised NCA Method is still based

on an initial aggregate distribution amount of $17,368,723.95 is attached as Exhibit "B".

11.     The Receiver notes that the allowed Investor Claim of John Sweetland Sr. (Claim

No. 19) and resulting proposed distribution on account of that claim is based on additional

documentation which evidences a $2,000,000.00 investment in ATGF.  This documentation,

which was not available to the Receiver prior to filing the Motion, is attached as Exhibit "C".

### IV.  ARGUMENT

12.     It is well settled that the Court has broad authority to approve a federal receiver's

plan of distribution provided such plan is fair and reasonable. *SEC v. Wang*, 944 F.2d 80, 81 (2d

Cir. 1991). Given that two different plans of distribution incorporating the modified version of one in this Amended Motion have now been proposed, the question has become which of these plans is fairest and most reasonable? After extensive consultation with the SEC staff , the Receiver submits that the Revised NCA Method as set forth in this Amended Motion is the equitable distribution scheme.

13. In initially advocating for the IIT method, the Receiver was guided by the differing anticipated returns and risk factors across the different investment types. While this methodology gives some effect to investor expectations associated with different investment types, the preference to GFRDA investors is limited. It is clear that all investor claimants are for the most part similarly situated in that all have been deprived of their investments as a result of Amerindo's mismanagement of those funds. Moreover, there is substantial evidence that Amerindo commingled investor funds regardless of the underlying investment. Most notably, there were no accounts specifically designated for GFRDA funds. In fact, the majority of Amerindo assets remain concentrated in the ATGF II account at J.P. Morgan. Given these facts, the Revised NCA Method is not simply fair and equitable but the favored approach. *See SEC v. Loewenson*, 290 F.3d 80, 88-89 (2d Cir.2002) ("Courts have favored *pro rata* distribution of assets where, as here, the funds of the defrauded victims were commingled and where victims were similarly situated with respect to their relationship to the defrauders"); *see also, SEC v. Malek*, 397 Fed. Appx. 711, 715 (2d Cir. 2010) (affirming district court's holding that *pro rata* distribution of commingled investor funds "was the most equitable remedy for the fraud at issue").

14. Finally, the Receiver again notes that he is still marshaling Amerindo assets and is optimistic that there will be substantially more funds for the allowed Investor Claims. If there

remains a surplus fund following payment of all allowed Investor Claims, the Receiver will make further recommendations to pay additional amounts and/or interest to the extent permissible, on account of the pre- and post-May 25, 2005 period at potentially the Internal Revenue Service underpayment interest rate as well as the claims of non-investors.

**WHEREFORE**, the Receiver respectfully requests that the Court enter an Order (a) fixing the Investor Claims in the amounts set forth on Exhibit "A" to the Amended Motion for purposes of this interim distribution, (b) authorizing the Receiver to make an interim distribution as set forth on Exhibit "B" to the Amended Motion without prejudice to seek further authority to remit additional distributions, and (c) upon receipt of documentation permit the Receiver to supplement the interim distribution upon approval by the Court, and for such other and further relief as to the Court deems just and proper.

Dated: New York, New York
     February 24, 2014                      _/s/ Ian J. Gazes_____
                                         Ian J. Gazes, Receiver
                                         Gazes LLC
                                         151 Hudson Street
                                         New York, New York 10013
                                         (212) 765-9000