**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
_____

|   |   |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| AMERINDO INVESTMENT ADVISORS INC., | : |
| AMERINDO INVESTMENT ADVISORS, INC., | : |
| AMERINDO ADVISORS UK LIMITED, | : |
| AMERINDO MANAGEMENT INC., | : |
| AMERINDO TECHNOLOGY GROWTH FUND, INC., | : |
| AMERINDO TECHNOLOGY GROWTH FUND II, INC., | : |
| TECHNO RAQUIA, S.A., | : |
| ALBERTO W. VILAR, and | : |
| GARY ALAN TANAKA, | : |
| | : |
| Defendants. | : |

05 Civ. 5231 (RJS)

ECF Case

_____

**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR A DEFAULT JUDGMENT AGAINST DEFENDANTS AMERINDO INVESTMENT ADVISERS INC., AMERINDO INVESTMENT ADVISORS, INC., AMERINDO ADVISORS UK LIMITED, AMERINDO MANAGEMENT INC., AMERINDO TECHNOLOGY GROWTH FUND, INC., AMERINDO TECHNOLOGY GROWTH FUND II, INC., AND TECHNO RAQUIA, S.A.,**

Neal Jacobson
Mark D. Salzberg
Securities and Exchange Commission
New York Regional Office
Brookfield Place
200 Vesey St., Suite 400
New York, NY  10281
(212) 336-1100
Attorneys for Securities
and Exchange Commission

<u>**TABLE OF CONTENTS**</u>

<u>**Page**</u>

TABLE OF AUTHORITIES .................................................................................. iii

I. PRELIMINARY STATEMENT ....................................................................... 1

II. THE SECOND AMENDED COMPLAINT'S FACTUAL ALLEGATIONS
    CONCERNING THE AMERINDO ENTITY DEFENDANTS ........................................ 4

    A. Vilar and Tanaka Controlled the Amerindo Entity Defendants .................... 4
    B. The Fraud on Lily Cates ...................................................................... 4
    C. The Fraud on the Testifying GFRDA Investors ........................................ 5
    D. The Fraud on ATGF and ATGF II Investors ........................................... 6

III. DEFAULT JUDGMENT STANDARD ............................................................ 9

IV. ARGUMENT ............................................................................................... 10

    A. The Second Amended Complaint's Factual Allegations Support a Finding that
        Amerindo US, Amerindo UK, and Amerindo Panama Violated Sections 17(a) of the
        Securities Act, Section 10(b) of the Exchange Act, and Rule 10b-5 Thereunder ....10
    B. The Second Amended Complaint's Factual Allegations Support a Finding that AMI,
        ATGF, ATGF II,   and Techno Raquia Aided and Abetted Violations of Section
        10(b) of the Exchange Act and Rule 10b-5 Thereunder ........................... 11
    C. The Second Amended Complaint's Factual Allegations Support a Finding that
        Amerindo US, Amerindo UK, and Amerindo Panama Violated Sections 206(1) and
        206(2) of the Advisers Acts ...................................................................... 12
    D. The Second Amended Complaint's Factual Allegations Support a Finding that
        AMI, ATGF, ATGF II and Techno Raquia Aided and Abetted Violations of
        Sections 206(1) and 206(2) of the Advisers Act ....................................... 14
    E. The Second Amended Complaint's Factual Allegations Support a Finding that
        Amerindo US Violated Section 206(4) of the Advisers Act and Rule 206(4)-2(a)
        Thereunder ....................................................................................... 14
    F. The Second Amended Complaint's Factual  Allegations Support a Finding that the
        ATGF and ATGF II Investors Named in the Second Amended Complaint Engaged
        in Domestic Purchases of Securities ........................................................ 15
    G. The Amerindo Entity Defendants' Violations of the Federal Securities Laws
        Warrant the Relief Requested ................................................................ 15

        1. Disgorgement and Pre-judgment Interest ......................................... 15
        2. Injunctive Relief........................................................................... 17
        3. Civil Money Penalties ................................................................... 18

V. CONCLUSION............................................................................................. 20

## TABLE OF AUTHORITIES

Page

**Cases**

*Au Bon Pain Corp. v. Artect, Inc.,* 653 F.2d 61 (2d Cir. 1981) ....................................9

*Bermudez v. Reid*, 733 F.2d 18 (2d Cir. 1984) ...............................................9

*City of Roseville Employees' Retirement Sys. V. EnergySolutions, Inc.*, 814 F. Supp. 2d 395 (S.D.N.Y. 2011) .............................................................10

*Flaks v. Koegel*, 504 F.2d 702 (2d Cir. 1974)...................................................9

*Goldstein v. SEC*, 451 F.3d 873 (D.C. Cir. 2005).............................................14

*In re Pfizer Inc. Sec. Litig.*, 936 F. Supp. 2d 252 (S.D.N.Y. 2013) ............................10

*Morrison v. National Australia Bank Ltd.,* 130 S. Ct. 2869 (2010)...........................15

*Parise v. Riccelli Haulers, Inc.*, 672 F. Supp. 72 (N.D.N.Y. 1987) ............................9

*SEC v. Amerindo Investment Advisors Inc., et al.*, 2013 WL 1385013 (RJS) (S.D.N.Y.), Mar. 11, 2013.........................................................2, 5. 13, 14

*SEC v. Amerindo Investment Advisors Inc., et al.*, 2014 WL 405339 (RJS) (S.D.N.Y., Feb. 3, 2014)...........................................................................2, 5, 15

*SEC v. Anticevic*, 2009 WL 4250508 at *2 (S.D.N.Y. 2009) ...................................9

*SEC v. Calvo*, 378 F.3d 1211 (11th Cir. 2004) ...............................................16

*SEC v. Coates*, 137 F. Supp. 2d 413, 429 (S.D.N.Y. 2001).....................................19

*SEC v. Cavanagh*, 155 F.3d 129 (2d Cir. 1998) ...............................................18

*SEC v. Haligiannis*, 470 F. Supp. 2d 373 (S.D.N.Y 2007).....................................19

*SEC v. K.W. Brown & Co.*, 555 F. Supp. 2d 1275 (S.D. Fla. 2008)............................13

*SEC v. Kern*, 425 F.3d 143, 153 (2d Cir. 2005)................................................19

*SEC v. Levine*, 671 F. Supp. 2d 14 (D.D.C. 2009) ............................................11

*SEC v. Manor Nursing Centers, Inc.*, 458 F.2d 1082 (2d Cir. 1972) ...........................10

*SEC v. Moran*, 944 F. Supp. 286 (S.D.N.Y. 1996).............................................16

*SEC v. Smart*, 678 F.3d 850 (10th Cir. 2012) ................................................11

*SEC v. Tome*, 833 F.2d 1086, 1096 (2d Cir. 1987)....................................................15

*SEC v. Trabulse*, 526 F. Supp. 2d 1008 (N.D. Cal. 2007) ............................................13

*SEC v. Wyly*, 950 F. Supp.2d 547 (S.D.N.Y. 2013)......................................................12

*Shah v. NY State Dep't of Civil Service*, 168 F.3d 610 (2d Cir. 1998) ...........................9

*Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105 (2d Cir. 1997)....................................................................................................................9

*U.S. v. Vilar*, 729 F.3d 62 (2d Cir. 2013).....................................................2, 4, 5, 15

**Statutes**

15 U.S.C. § 77q(a) ....................................................................................2, 3, 11

15 U.S.C. § 77t(b) ...........................................................................................17

15 U.S.C. § 77t(d) ......................................................................................18, 19

15 U.S.C. § 78j(b) .....................................................................................2, 3. 11

15 U.S.C. § 78u(d) ................................................................................17, 18, 19

15 U.S.C. § 80b-6 ...........................................................................2, 4, 12, 13, 14

15 U.S.C. § 80b-9 ..................................................................................17, 18, 19

**Code of Federal Regulations**

17 C.F.R. § 240.10b-5...................................................................................2, 3, 11

17 C.F.R. § 275.206(4)-2(a)....................................................................2, 3, 14, 15

**Federal Rules of Civil Procedure**

Fed. R. Civ. P. 4(h)(1)(B) ....................................................................................10

Fed. R. Civ. P. 55 ..................................................................................................1

Local Civil Rule 55.................................................................................................1

# I.

## PRELIMINARY STATEMENT

Plaintiff Securities and Exchange Commission ("Commission") respectfully submits this memorandum of law in support of its motion ("Motion") pursuant to Federal Rule of Civil Procedure 55(b)(2) and Local Civil Rule 55.2(b), for a default judgment against defendants Amerindo Investment Advisors Inc. ("Amerindo US"), Amerindo Investment Advisors, Inc. ("Amerindo Panama"), Amerindo Advisors UK Limited ("Amerindo UK," and, together with Amerindo Panama and Amerindo US, the "Amerindo Advisory Entities"), Amerindo Management Inc. ("AMI"), Amerindo Technology Growth Fund, Inc. ("ATGF"), Amerindo Technology Growth Fund II, Inc. ("ATGF II"), and Techno Raquia, S.A. ("Techno Raquia," and, together with AMI, ATGF and ATGF II, the "Amerindo Investment Vehicles," and, together with the Amerindo Advisory Entities, the "Amerindo Entity Defendants"). The Commission seeks a default judgment based on the Amerindo Entity Defendants' failure to answer or otherwise defend the Commission's second amended complaint (the "Second Amended Complaint").

This Court previously found on summary judgment, based primarily on principles of collateral estoppel arising from their criminal convictions, that Alberto W. Vilar ("Vilar") and Gary Alan Tanaka ("Tanaka," and together with Vilar, the "Individual Defendants"), violated the anti-fraud provisions of the federal securities laws with respect to Lily Cates and certain investors in so-called Guaranteed Fixed Rate Deposit Accounts ("GFRDAs") who testified, or whose representatives testified, in the parallel criminal proceeding (collectively, the "Testifying GFRDA Investors").

Specifically, the Court found that the Individual Defendants each violated Section 17(a)

of the Securities Act of 1933 ("Securities Act") [15 U.S.C.§ 77q(a)], Section 10(b) of the

Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)], and Rule 10b-5

thereunder [17 C.F.R. § 240.10b-5], with respect to their fraud on the Testifying GFRDA

Investors; the Individual Defendants each aided and abetted violations of Sections 206(1) and

206(2) of the Investment Advisers Act of 1940 ("Advisers Act") [15 U.S.C. §§ 80b-6(1) & 80b-

6(2)] with respect to their fraud on Lily Cates; and Vilar violated Section 17(a) of the Securities

Act, Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, with respect to his fraud on

Lily Cates.  *See SEC v. Amerindo Investment Advisors Inc., et al.*, 2013 WL 1385013 (RJS)

(S.D.N.Y., Mar. 11, 2013); *SEC v. Amerindo Investment Advisors Inc., et al.*, 2014 WL 405339

(RJS) (S.D.N.Y., Feb. 3, 2014).[1]  The Second Circuit affirmed the Individual Defendants'

criminal convictions on appeal.  *U.S. v. Vilar*, 729 F.3d 62 (2d Cir. 2013).   As set forth below in

detail in Section IV of this memorandum, the Commission's Second Amended Complaint alleges

specific facts to show that the Individual Defendants owned and controlled the Amerindo Entity

Defendants, used the Amerindo Entity Defendants to further the criminal scheme for which they

were ultimately convicted, and that the Entity Defendants are therefore liable for the violations

of the federal securities laws as detailed in the Second Amended Complaint.

In addition to the fraud on Lily Cates and the Testifying GFRDA Investors, the

Commission's Second Amended Complaint also alleges that the Individual Defendants and the

Amerindo Entity Defendants defrauded certain investors that were not the subject of the parallel

---

[1]     The Court denied the Commission's motion for summary judgment on its claim that the
Individual Defendants aided and abetted violations of Section 206(4) of the Advisers Act [15
U.S.C. § 80b-6(4)]; and Rule 206(4)-2(a) thereunder [17 C.F.R. §275.206(4)-2(a)] because the
criminal convictions did not support collateral estoppel on the Commission's allegation that the
Individual Defendants commingled Lily Cates' funds.  *Amerindo*, 2013 WL 1385013 at *10.

criminal action or the Commission's motion for partial summary judgment – namely, investors in the so-called Panamanian hedge funds ATGF and ATGF II.  The Commission's Second Amended Complaint alleges, generally, that the Individual Defendants and the Amerindo Entity Defendants solicited investors in ATGF and ATGF II without disclosing that they were diverting investor funds to themselves, transferring funds to pay GFRDA investors, and commingling funds between and among the Amerindo Entity Defendants.[2]

Accordingly, the Commission respectfully requests that the Court enter a default judgment against:

A) Amerindo US (1) permanently enjoining it from future violations of Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, Sections 206(1), (2) and (4) of the Advisers Act and Rule 206(4)-2(a) thereunder; and (2) ordering it to pay disgorgement, prejudgment interest, and a civil money penalty;

B) Amerindo Panama and Amerindo UK (1) permanently enjoining them from future violations of Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, and Sections 206(1) and (2) of the Advisers Act; and (2) ordering them to pay  disgorgement,  prejudgment interest, and civil money penalties; and

C) AMI, ATGF, ATGF II, and Techno Raquia (1) permanently enjoining them from aiding and abetting violations of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder,

---

[2]      Although the Court has broad equitable powers to return the assets subject to the Receiver's control to their rightful owners including to investors in ATGF and ATGF II (whose funds were commingled with those of GFRDA investors) even without a specific finding of fraud with respect to the ATGF and ATGF II offerings, entry of judgment against the Entity Defendants for the ATGF and ATGF II fraud will provide an additional basis for distribution of the assets to those investors.  The Commission staff notes that the Mayer family has objected to equal treatment of ATGF and ATGF II investors in part on the ground that they were not yet found to be fraud victims.  (Dkt. # 376)  If the Court grants this Motion, that issue will be resolved.

and Sections 206(1) and (2) of the Advisers Act; and (2) ordering them to pay

disgorgement, prejudgment interest, and civil money penalties.

## II.

### THE SECOND AMENDED COMPLAINT'S FACTUAL ALLEGATIONS CONCERNING THE AMERINDO ENTITY DEFENDANTS

**A. Vilar and Tanaka Controlled the Amerindo Entity Defendants.**

The Second Amended Complaint alleges that Vilar and Tanaka owned and/or controlled

each of the Entity Defendants. (2d Am. Compl. at ¶¶ 12-20)  The Second Amended Complaint

further alleges that Vilar and Tanaka managed the Amerindo Advisory Entities as a common

enterprise by, among other things, using nearly identical names for Amerindo US and Amerindo

Panama (with only one comma differentiating their names), and conducting part of their

fraudulent scheme through Amerindo US, including using Amerindo US letterhead to

communicate with Lily Cates, GFRDA and ATGF and ATGF II investors.  (2d Am. Compl. at

¶¶ 21-24)

**B. The Fraud on Lily Cates.**

As discussed in the Preliminary Statement, Vilar was convicted of securities fraud on

Lily Cates, the Individual Defendants were convicted of investment adviser fraud on Lily Cates,

and this Court entered summary judgment against the Individual Defendants in this case for the

fraud on Lily Cates.  Specifically, in June 2002, Vilar solicited a $5 million investment in a

Small Business Investment Company ("SBIC") investment that the Individual Defendants

subsequently diverted for Vilar's personal use, to pay back a GFRDA investor, and for Amerindo

US' business expenses.  (2d Am. Compl. at ¶¶ 45-54); *Vilar*, 729 F.3d at 68-69 & 92-93.  In

September 2003, Tanaka also forged Lily Cates' signature on a letter of authorization bearing

Amerindo US letterhead to transfer $250,000 from her account managed by Amerindo US to an

ATGF account.  (2d Am. Compl. at ¶¶ 55-58); *Vilar*, 729 F.3d at 69.

Amerindo US, AMI, and ATGF each played key roles in the fraud on Lily Cates.

Amerindo US, a registered investment adviser, was the manager of the SBIC investment (2d Am.

Compl. at ¶ 30) and AMI, a Panamanian corporation controlled by Vilar and Tanaka, owned the

account at Bears Stearns & Co., Inc. ("Bear Stearns") into which Lily Cates' investment was

deposited and from which the Individual Defendants diverted Lily Cates' funds.  (2d Am.

Compl. at ¶¶ 32, 45-54); *Vilar*, 729 F.3d at 69 (Lily Cates' funds were deposited into account in

the name of AMI).  Amerindo US had custody of Lily Cates' funds, but failed to segregate her

funds and to properly maintain her funds in an account in the name of Amerindo US as agent or

trustee for Lily Cates.  (2d Am. Compl. at ¶ 47)  Subsequent to Lily Cates' investment, Vilar,

using Amerindo US letterhead, sent Lily Cates' representatives fraudulent and misleading letters

regarding the status of her SBIC investment.  (2d Am. Compl. at ¶¶ 35-44)  In addition, the

$250,000 diverted from Lily Cates' managed account was transferred to ATGF.

In response to Lily Cates' attorney's unsuccessful attempts to redeem her investment,

Vilar responded to him in February 2005 by stating that Lily Cates' investment was managed by

Amerindo Panama, and not Amerindo US.  (2d Am. Compl. at ¶¶ 59-63)

## C.  The Fraud on the Testifying GFRDA Investors.

The Individual Defendants were convicted of securities fraud for their fraud on the

Testifying GFRDA Investors, *Vilar*, 729 F.3d 62, and this Court entered summary judgment in

the Commission's favor finding them liable for securities fraud on the Testifying GFRDA

Investors.  *Amerindo*, 2013 WL 1385013; *Amerindo,* 2014 WL 405339.  Each of the Amerindo

Entity Defendants was instrumental in carrying out the fraudulent scheme.

Specifically, numerous versions of the GFRDA offering circulars distributed to potential investors indicated that Amerindo US, Amerindo UK, and Amerindo Panama each had a role in offering the GFRDA products to clients and other investors, (2d Am. Compl. at ¶¶ 64-71), and they typically required purchasers to deposit their funds at a Bear Stearns account in New York in the name of Techno Raquia.  (2d Am. Compl. at ¶ 68)

Beginning from at least 1988 and continuing through at least May 2005, the Amerindo Entity Defendants commingled funds raised from GFRDA, ATGF and ATGF II investors, even though these investments purportedly had different investment strategies, and also misappropriated investor funds without disclosing such commingling and misappropriation to investors and potential investors in the GFRDAs.  (2d Am. Compl. at ¶¶ 76-92 & 94-97)  In addition, the Amerindo Advisory Entities failed to purchase short-term debt instruments as set forth in the GFRDA offering circulars.  (2d Am. Compl. at ¶ 93)[3]

### D.  The Fraud on ATGF and ATGF II Investors.

ATGF and ATGF II were open-ended investment companies incorporated in Panama, whose principal investment objective was "growth of capital, primarily in U.S. publicly traded emerging growth companies that are principally in the fields of electronics and healthcare."  (2d Am. Compl. at ¶¶ 18-19 & 75)  Amerindo Panama, through Vilar and Tanaka, sold shares of ATGF and ATGF II to investors, including U.S.-based individuals.  (2d Am. Compl. at ¶ 72)  According to the offering circulars for ATGF and ATGF II, Amerindo Panama was the investment manager for the funds.  (2d Am. Compl. at ¶ 73)

---

[3]     The Second Amended Complaint discusses, in detail, the fraud on the specific Testifying GFRDA Investors (2d Am. Compl. at ¶¶ 98-129), which is the subject of the Court's summary judgment decisions and the Commission's pending motion for disgorgement and civil money penalties against the Individual Defendants.

As discussed above, beginning from at least 1988 and continuing through at least May 2005, the Amerindo Entity Defendants commingled funds raised from GFRDA, ATGF and ATGF II investors even though each purportedly had different investment strategies, and also misappropriated investor funds without disclosing such commingling and misappropriation to investors and potential investors in ATGF and ATGF II.   (2d Am. Compl. at ¶¶ 76-92 & 94-97)

The Second Amended Complaint alleges that neither the Individual Defendants, nor the Amerindo Entity Defendants, advised potential investors in ATGF or ATGF II that their funds would be commingled with funds from different Amerindo Investment Vehicles or that their funds would be used for Vilar's, Tanaka's or Amerindo US's benefit.  (2d Am. Compl. at ¶ 130)

Specifically, the Second Amended Complaint alleges that the following ATGF and ATGF II investors were defrauded by the Amerindo Entity Defendants:

**Paul Marcus**.  Paul Marcus, a New Jersey resident, opened a managed account with Amerindo in the late 1980s.  In or about 1995, he sold a business and sought to invest the proceeds.  Mr. Marcus discussed with Vilar a potential investment in GFRDAs, and Vilar provided Mr. Marcus with a GFRDA offering circular both in person and by mail.  While in New Jersey, Mr. Marcus invested approximately $5 million on behalf of himself and his children in a GFRDA.  In or about 1998, Mr. Marcus redeemed substantially all of his GFRDA investment, and invested $4.6 million of his and his family's money in shares of ATGF.  Since 2001, Mr. Marcus made several requests to redeem ATGF shares that were unfulfilled.  (2d Am. Compl. at ¶¶ 132-140)

**John Sweetland**.  John Sweetland, a California resident, invested in ATGF on behalf of family trusts and corporations.  Mr. Sweetland initially invested $1 million on or about January 23, 1990.  Mr. Sweetland executed the application form in California and wired his purchase

funds to the ATGF II account at Bear Stearns in New York.  Mr. Sweetland's assistant sent the application to Amerindo US's offices in California and forwarded a copy to Panama.  On or about June 29, 1990, Mr. Sweetland executed another application form in California and wired $500,000 from Bank of America to the ATGF II account at Bear Stearns.  In addition, on or about February 26, 1991, Mr. Sweetland executed another application form in California and wired $500,000 in purchase funds from Bank of America to the ATGF account at Bear Stearns. Although some of Mr. Sweetland's funds were wired into the ATGF II account at Bear Stearns, he received confirmations and correspondence reflecting investments only in the ATGF account. Subsequent to the Individual Defendants' arrests, Mr. Sweetland attempted unsuccessfully to redeem his family entities' ATGF investments.  (2d Am. Compl. at ¶¶ 141-146)

**Dr. Ronald Salvitti**.  Dr. Ronald Salvitti, a resident of Pennsylvania, met Vilar through their involvement with Washington & Jefferson College.  At a meeting at Vilar's residence in New York, New York, Dr. Salvitti and Vilar discussed potential investments in an Amerindo investment vehicle.  Dr. Salvitti executed an ATGF II application form in Pennsylvania and agreed to an initial subscription of $5 million.  The application form, however, directed prospective investors to wire funds to the ATGF II account at Bear Stearns.  In total, Dr. Salvitti wired $6 million to the ATGF II account from domestic bank accounts in three transactions between approximately July 29, 1999 through November 12, 1999.  Although Dr. Salvitti's funds were wired into an ATGF II account, in each instance, he received a confirmation from ATGF, rather than ATGF II.  Following the Individual Defendants' arrests, Dr. Salvitti attempted unsuccessfully to redeem his investments.  (2d Am. Compl. at ¶¶ 147-152)

8

# III.

## DEFAULT JUDGMENT STANDARD

The entry of a default judgment is left to the "sound discretion" of the court. *Shah v. NY State Dep't of Civil Service*, 168 F.3d 610, 615 (2d Cir. 1998) (internal citations omitted). Where, as here, a "party fails to respond [to an action] … the court is ordinarily justified in entering a judgment against the defaulting party." *Bermudez v. Reid*, 733 F.2d 18, 21 (2d Cir. 1984).  In determining whether to enter a default judgment, the Court should accept as true all of the factual allegations in the complaint, except those relating to damages.  *See Au Bon Pain Corp. v. Artect, Inc.,* 653 F.2d 61, 65 (2d Cir. 1981).[4]

The "quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation." *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974).  However, the Court need not hold a hearing to determine damages. *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997) ("[U]nder Rule 55(b)(2), it is not necessary for the District Court to hold a hearing, as long as it ensured that there was a basis for the damages specified in the default judgment.") (internal citations omitted).  The Commission is "also entitled to all reasonable inferences from the evidence offered*." Au Bon Pain Corp.*, 653 F.2d at 65.[5]

---

[4]    Although Amerindo US answered the original complaint in this matter, it failed to answer the amended complaint and the Second Amended Complaint.  Accordingly, it is appropriate to find Amerindo US in default.  *SEC v. Anticevic*, 2009 WL 4250508 at *2 (S.D.N.Y. 2009) (Wood, D.J.) ("Default is proper where a defendant fails to answer an amended complaint, even where the defendant has answered the original complaint."), *citing Parise v. Riccelli Haulers, Inc.*, 672 F. Supp. 72, 74 (N.D.N.Y. 1987).

[5]    As set forth in the Attorney Declaration of Neal Jacobson in support of the Motion (the "Jacobson Decl."), counsel to Amerindo US accepted service of the original complaint and amended complaint, and the Commission staff properly served the amended complaint and Second Amended Complaint on Vilar and Tanaka, officers of each of the Entity Defendants.

# IV.

## ARGUMENT

**A.  The Second Amended Complaint's Factual Allegations Support a Finding that Amerindo US, Amerindo UK, and Amerindo Panama Violated Sections 17(a) of the Securities Act, Section 10(b) of the Exchange Act, and Rule 10b-5 thereunder**

The Court has already determined that the Individual Defendants committed securities fraud with respect to the Testifying GFRDA Investors and that Vilar committed securities fraud with respect to Lily Cates.  The Second Amended Complaint alleges facts sufficient to find that the Amerindo Advisory Entities are also primarily liable for the fraud on the GFRDA Investors and Lily Cates.  Vilar and Tanaka owned and controlled each of the Amerindo Advisory Entities and had ultimate authority over them.  (2d Am. Compl. at ¶¶ 12-20; 21-24)  Accordingly, their established fraudulent intent can be imputed to the Amerindo Advisory Entities.  *See SEC v. Manor Nursing Centers, Inc.*, 458 F.2d 1082, 1089 n. 3 (2d Cir. 1972) (scienter of individual who controls business entity may be imputed to the entity).  *See also In re Pfizer Inc. Sec. Litig.*, 936 F. Supp. 2d 252, 268-69 (S.D.N.Y. 2013) (company and senior executives who had "ultimate authority" over company's statements could be held primarily liable for violations of Section 10(b) and Rule 10b-5 thereunder); *City of Roseville Employees' Retirement Sys. V. EnergySolutions, Inc.*, 814 F. Supp. 2d 395, 416-17 (S.D.N.Y. 2011) (same).

The Second Amended Complaint alleges that Amerindo US managed Lily Cates' purported SBIC investment.  (2d Am. Compl. at ¶ 30)  Accordingly, Amerindo US, along with Vilar, is primarily liable for securities fraud on Lily Cates.  The Second Amended Complaint also alleges that each of the Amerindo Advisory Entities was named in the GFRDA offering circulars as having a role in offering the fraudulent GFRDA securities to investors.  (2d Am.

---

Jacobson Decl. at ¶¶ 5-11.  *See also* Fed. R. Civ. P. 4(h)(1)(B) (service of process on officer of domestic or foreign corporation is proper method of service on corporation).

Compl. at ¶¶ 64-71)  Vilar and Tanaka were each convicted of securities fraud with respect to

these offerings, and their fraud is imputed to the entities.  Accordingly, each of the Amerindo

Advisory Entities is liable for securities fraud with respect to the Testifying GFRDA Investors.

Amerindo Panama was the investment manager for the ATGF and ATGF II securities

offerings.  (2d Am. Compl. at ¶ 73)  As discussed above, beginning from at least 1988 and

continuing through May 2005, the Individual Defendants, acting through Amerindo Panama,

failed to disclose to potential investors in ATGF and ATGF II that their funds would be

commingled with funds of GFRDA investors and be used to pay personal expenses of Vilar,

business expenses of Amerindo US, and to pay GFRDA investors.  (2d Am. Compl. at ¶¶ 76-92,

94-97, & 130)  Such undisclosed commingling and misuse of investor funds is a violation of

Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act, and Rule 10b-5

thereunder.  See, e.g., *SEC v. Smart*, 678 F.3d 850, 857 (10th Cir. 2012) (Commission entitled to

summary judgment on fraud counts where, among other things, defendant "told investors that

their money would be placed in secure investment vehicles like mutual funds, but he then pooled

the money into one account and used it to engage in risky financial ventures, make partial

payments to other investors, and cover his and his wife's personal expenses."); *SEC v. Levine*,

671 F. Supp. 2d 14, 30 (D.D.C. 2009) (defendants "violated § 17(a) and § 10(b) by omitting to

disclose that the funds investors sent them would be commingled with funds from investors in

other companies, and with general operating funds.").

**B.  The Second Amended Complaint's Factual Allegations Support a Finding that AMI, ATGF, ATGF II, and Techno Raquia Aided and Abetted Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder**

In order to establish aiding and abetting liability, the Commission must show (i) the

existence of a securities law violation, (ii) knowledge of the violation by the aider and abettor,

and (iii) substantial assistance by the aider and abettor in the achievement of the primary

violation.  *SEC v. Wyly*, 950 F. Supp.2d 547, 562-63 (S.D.N.Y. 2013).  Here, there is no doubt

that AMI, ATGF, ATGF II, and Techno Raquia, all of which were controlled by Vilar and

Tanaka, knew that the Individual Defendants and the Amerindo Advisory Entities were

committing securities fraud against the GFRDA investors and that Amerindo Panama was

committing fraud in connection with the ATGF and ATGF II investments.  Each of these

Amerindo Investment Vehicle Entities also provided substantial assistance in undisclosed

commingling and misuse of investor funds.

For example, the GFRDA circulars typically directed GFRDA investors to wire their

funds to a Techno Raquia account at Bear Stearns in New York, New York.  (2d Am. Compl. at

¶ 68)  In addition, in 1988, ATGF transferred funds to Techno Raquia (2d Am. Compl. at ¶ 78)

and in 1991 ATGF II transferred funds to ATGF and ATGF transferred funds to AMI.  (2d Am.

Compl. at ¶ 78)

Thereafter, the Amerindo Investment Vehicle Defendants engaged in numerous transfers

of funds between accounts, including transferring ATGF and ATGF II funds to pay GFRDA

investors  (2d Am. Compl. at  ¶¶ 79-83), and transferring funds for Vilar's personal benefit.  (2d

Am. Compl. at ¶¶ 85-92)  Accordingly, the Amerindo Investment Vehicles are liable for aiding

and abetting the Individual Defendants' and the Amerindo Advisory Entities' violations of

Section 10(b) and Rule 10b-5 thereunder.

**C.  The Second Amended Complaint's Factual Allegations Support a Finding that Amerindo US, Amerindo UK, and Amerindo PanamaViolated Sections 206(1) and 206(2) of the Advisers Act**

The Second Amended Complaint's allegations are sufficient to find the Amerindo

Advisory Entities liable for investment adviser fraud as well.  The elements of investment

adviser fraud under Advisers Act Sections 206(1) and (2) are similar to the elements of securities fraud under Section 10(b) of the Exchange Act and Section 17(a) of the Securities Act, with two variations.  First, investment adviser fraud need not be in connection with the offer, sale or purchase of a security.  *SEC v. K.W. Brown & Co.*, 555 F. Supp. 2d 1275, 1308 (S.D. Fla. 2008).  Second, investment adviser fraud requires proof that the illicit conduct be carried out by an investment adviser towards a client or prospective client.  *SEC v. Trabulse*, 526 F. Supp. 2d 1008, 1014 n.6 (N.D. Cal. 2007).

The Individual Defendants were convicted of investment adviser fraud for their fraud on Lily Cates.  *Amerindo*, 2013 WL 1385013 at *1.  As discussed above, Amerindo US was the adviser that managed Lily Cates' account, and the Individual Defendants committed their fraud on Lily Cates, in part, through Amerindo US.  (2d Am. Compl. at ¶¶ 21-24 & 30)  Because the Individual Defendants owned, controlled, and had ultimate authority over Amerindo US, their *scienter* can be imputed to Amerindo US, a registered investment adviser.  Accordingly, taking the allegations in the Second Amended Complaint as true, Amerindo US is liable for adviser fraud with respect to Lily Cates.

Second, the Individual Defendants were found liable for Section 10(b) and Section 17(a) fraud on the Testifying GFRDA Investors.  As discussed above, the GFRDA offering circulars identified the investment advisers controlled by the Individual Defendants – namely Amerindo US, Amerindo UK, and Amerindo Panama -- as having played a role in offering securities to the GFRDA investors.  (2d Am. Compl. at ¶¶ 15-16, 64-71)  Accordingly, taking the allegations of the Second Amended Complaint as true, the Amerindo Advisory Entities are liable for investment adviser fraud on the GFRDA investors.

Finally, Amerindo Panama is identified as the investment manager for the fraudulent ATGF and ATGF II securities offerings in which ATGF and ATGF II funds were diverted for the benefit of Vilar, Amerindo US, and to pay GFRDA investors.  (2d Am. Compl. at ¶ 72) Accordingly, Amerindo Panama is liable for adviser fraud for defrauding the ATGF and ATGF II funds.  *See Goldstein v. SEC*, 451 F.3d 873 (D.C. Cir. 2005) (client of an investment adviser to a hedge fund is the hedge fund itself and not the investors in the hedge fund).

### D.   The Second Amended Complaint's Factual Allegations Support a Finding that AMI, ATGF, ATGF II and Techno Raquia Aided and Abetted Violations of Sections 206(1) and 206(2) of the Advisers Act

As discussed above, Amerindo US, Amerindo UK, and Amerindo Panama violated Sections 206(1) and 206(2) of the Advisers Act.  The Amerindo Investment Vehicle Defendants, which facilitated the fraud by acting as custodians of the funds and permitting their commingling and misuse, substantially assisted the Amerindo Advisory Defendant's fraud and are liable for aiding and abetting their fraud.

### E.   The Second Amended Complaint's Factual Allegations Support a Finding that Amerindo US Violated Section 206(4) of the Advisers Act and Rule 206(4)-2(a)

Section 206(4) of the Advisers Act makes it unlawful for an investment adviser "to engage in any act, practice, or course of business which is fraudulent, deceptive or manipulative."  *Amerindo*, 2013 WL 1385013 at *9.  Rule 206(4)-2(a) promulgated under the Advisers Act prohibits an investment adviser from having custody of client funds or securities unless the adviser maintains the property in a separate account for each client or in accounts that contain only the adviser's clients' funds and securities under the adviser's name as agent or trustee for the client.  *Id.*  Here, the Second Amended Complaint alleges that Amerindo US failed to segregate Lily Cates' funds, and in fact commingled her funds and diverted them for improper and undisclosed uses. (2d Am. Compl. at ¶¶ 45-54)  Taking the allegations of the Second

Amended Complaint as true, the Commission is entitled to a default judgment against Amerindo US for violating Section 206(4) of the Advisers Act and Rule 206(4)-2(a) thereunder.

**F.   The Second Amended Complaint's Factual Allegations Support a Finding that the ATGF and ATGF II Investors Named in the Second Amended Complaint Engaged in Domestic Purchases of Securities**

Under the Supreme Court's decision in *Morrison v. National Australia Bank Ltd.,* 130 S. Ct. 2869 (2010), in order to prove a Section 10(b) securities law violation, a litigant must show that the underlying securities transaction was a domestic transaction.  This Court, quoting from *Vilar*, held that "the domestic nature of a [securities] transaction concerns where, physically, the purchaser or seller committed him or her self to buy or sell the security."  *Amerindo*, 2014 WL 405339 at *5, *citing Vilar*, 729 F.3d at 77 n. 11.  The criminal convictions and the Court's prior grant of summary judgment established that the securities transactions of Lily Cates and the Testifying GFRDA investors were all domestic.  In addition, the Second Amended Complaint alleges sufficient facts for the Court to find that the purchase of ATGF and ATGF II securities by Paul Marcus, John Sweetland, and Ronald Salvitti were all domestic transactions.  Each of the purchasers resided in the United States, executed purchase agreements in the United States, and wired funds from domestic financial institutions.  (2d Am. Compl. at ¶¶ 132-152)  Accordingly, each of the securities transactions underlying the Commission's allegations of fraud on ATGF and ATGF II investors in the Second Amended Complaint were domestic transactions.

**G.  The Amerindo Entity Defendants' Violations of the Federal Securities Laws Warrant the Relief Requested**

**1.  Disgorgement and Prejudgment Interest**

Disgorgement is an equitable remedy for violations of the federal securities laws that, unlike damages, is aimed at "forcing a defendant to give up the amount by which he was unjustly enriched."  *SEC v. Tome*, 833 F.2d 1086, 1096 (2d Cir. 1987) (internal citations omitted).

The appropriate amount of disgorgement here, which should be assessed against the Entity Defendants jointly and severally, is $26,143,370, which consists of the proceeds of the fraud raised from Lily Cates, certain of the Testifying GFRDA Investors, and the ATGF and ATGF II investors named in the Second Amended Complaint.[6]  *See SEC v. Calvo*, 378 F.3d 1211, 1215-16 (11th Cir. 2004) ("[J]oint and several liability is appropriate in securities laws cases where two or more individuals or entities have close relationships in engaging in illegal conduct.  This holds true even where one defendant is more culpable than another.") (internal citations omitted).

The Commission also seeks the imposition of prejudgment interest in this case. Requiring a defendant to pay prejudgment interest serves to "prevent[] a defendant from obtaining the benefit of what amounts to an interest free loan procured as a result of illegal activity."  *SEC v. Moran*, 944 F. Supp. 286, 295 (S.D.N.Y. 1996).  The Commission seeks prejudgment interest in the amount of $13,928,242, calculated using the Internal Revenue Service rate of interest on tax underpayments and refunds from the date the Individual and Entity Defendants fraudulently obtained the respective investments through June 2005, for the raises from the GFRDA, ATGF and ATGF II investors and through the present for the raises from Lily Cates.[7]

---

[6]    Of this amount, $14,805,985 consists of the proceeds of the fraud on Lily Cates and certain of the Testifying GFRDA investors.  The calculation of this amount is set forth in the Commission's November 22, 2013 motion to set disgorgement and penalties against the Individual Defendants (the "Disgorgement and Penalties Motion," Dkt. ## 332-334).  The remainder is attributable to the proceeds of the fraud on the ATGF and ATGF II investors named in the Second Amended Complaint.  Jacobson Decl. at ¶¶ 19-23.

[7]    Of this amount, $6,497,467 is attributable to the proceeds of the fraud on Lily Cates and certain of the Testifying GFRDA Investors.  The calculation of this amount is set forth in the Commission's Disgorgement and Penalties Motion.  The remainder is attributable to the proceeds of the fraud on the ATGF and ATGF II investors named in the Second Amended Complaint.  Jacobson Decl. at ¶¶ 19-23.

The Commission respectfully submits that prejudgment interest should run on the ill-gotten gain obtained from Lily Cates to the present because the evidence in the criminal trial established that, with respect to the purported SBIC investment, Ms. Cates invested money into the AMI Account and the Individual Defendants almost immediately diverted all funds in the account for personal and Amerindo corporate expenses and, significantly, never returned those funds. Similarly, evidence in the criminal trial established that Tanaka misappropriated $250,000 from Lily Cates' managed account that was transferred to Vilar and that the Individual Defendants never returned those funds either. By contrast, the GFRDA, ATGF and ATGF II investments were, at least theoretically, contained in commingled Amerindo Investment Vehicle accounts and the Commission has not traced those funds as coming out of the accounts. Although the funds in those commingled accounts were not frozen until the Court imposed a post-conviction restraining order on October 26, 2009, there is no evidence that any of the Defendants accessed the funds in those accounts after the Commission filed its initial complaint.

Accordingly, the Commission requests that the Court enter judgment against the Amerindo Entity Defendants, (i) jointly and severally with Vilar and Tanaka for disgorgement in the amount of $14,805,985, plus pre-judgment interest thereon in the amount of $6,497,467, for the fraud on Lily Cates and certain of the Testifying GFRDA Investors; and (ii) jointly and severally among themselves for disgorgement in the amount of $11,337,385, plus pre-judgment interest thereon in the amount of $7,430,775, for their fraud on the ATGF and ATGF II investors named in the Second Amended Complaint. Jacobson Decl. at ¶¶ 17-23.

## 2.    Injunctive Relief

The Commission respectfully submits that the Court should permanently enjoin the Entity Defendants from violations of the federal securities laws. Section 20(b) of the Securities

Act [15 U.S.C. § 77t(b)], Section 21(d)(1) of the Exchange Act [15 U.S.C. § 78u(d)(1)], and

Section 209 of the Advisers Act [15 U.S.C. § 80b-9] entitle the Commission to obtain permanent

injunctive relief upon a showing that the defendant has violated the securities laws and there is a

reasonable likelihood that the defendant will violate the securities laws in the future.  *SEC v.*

*Cavanagh, 155 F.3d 129, 135 (2d Cir. 1998).*   In considering whether there is a reasonable

likelihood that a defendant will commit future violations, courts in the Second Circuit weigh

various factors, including: (1) the fact that the defendant has been found liable for illegal

conduct; (2) the degree of scienter involved; (3) the isolated or repeated nature of the violations;

and (4) the sincerity of the defendant's assurances against future violations.  *Id.*

Application of these factors to the present action establish that the Amerindo Entity

Defendants should be enjoined.  The serious nature and flagrancy of their conduct is

demonstrated by the criminal convictions of Vilar and Tanaka, whose criminal intent is imputed

to them.  The Court has already found that Vilar and Tanaka's conduct warranted enjoining them

from violations of the federal securities laws.  Although the Entity Defendants apparently have

not operated for many years, to the best of the Commission staff's knowledge they still have a

legal existence and it is therefore appropriate to enjoin them from future violations.  Moreover,

enjoining the Entity Defendants will provide further notice to the public concerning the gravity

of the frauds perpetrated by these defendants acting in concert.

### 3.    Civil Money Penalties

Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)], Section 21(d) of the Exchange

Act [15 U.S.C. § 78u(d)], and Section 209 of the Advisers Act [15 U.S.C. § 80b-9] authorize the

district courts to assess civil penalties against persons who violate the Securities Act, the

Exchange Act, or the Advisers Act, respectively.  The statutes state that the amount of the penalty shall be determined by the Court "in light of the facts and circumstances."

The relevant statutes provide that the third tier of penalties for an entity for each violation shall not exceed the greater of $550,000 *or* the gross amount of pecuniary gain to that entity.[8]  A third tier penalty requires that the violation "involve[] fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement" and that "such violation directly or indirectly result[] in substantial losses or create[] a significant risk of substantial losses to other persons." 15 U.S.C. §§ 77t(d), 78u(d), and 80b-9.

The purpose of civil penalties is "to punish the individual violator and deter future violations of the securities laws."  *SEC v. Haligiannis*, 470 F. Supp. 2d 373, 386 (S.D.N.Y. 2007)(imposing $15 million penalty equal to amount of defendant's ill-gotten gain).  The factors a court looks to in order to determine whether a penalty should be imposed and the amount of the penalty include: (1) the egregiousness of the defendant's conduct; (2) the degree of defendant's scienter; (3) whether the defendant's conduct created substantial losses or the risk of substantial losses to other persons; (4) whether the defendant's conduct was isolated or recurrent; and (5) the defendant's financial condition.  *Id.; see also SEC v. Coates*, 137 F. Supp. 2d 413, 429 (S.D.N.Y. 2001).

Here, the Commission seeks third tier penalties form the Entity Defendants in an amount to be determined in the Court's discretion.  *SEC v. Kern*, 425 F.3d 143, 153 (2d Cir. 2005) ("The tier determines the maximum penalty, with the actual amount of the penalty left up to the

---

[8]      The amount of pecuniary gain that the Entity Defendants shared with Vilar and Tanaka for their fraud on Lily Cates and the Testifying GFRDA Investors is $20,500,353.  Jacobson Decl. at ¶ 17.  The Commission is not seeking a penalty for the Amerindo Entities' fraud on the ATGF and ATGF II investors, who invested outside of the five-year statute of limitations applicable to penalties.

discretion of the district court.").   The only factor for the imposition of a civil money penalty that has not been conclusively established is the ability of the Entity Defendants to pay a civil money penalty.  Due to the uncertainty of the amount of funds that will be available to pay a penalty after distributions are made to defrauded investors, the Commission submits that determination of the amount of penalty, if any, could properly be put off until after the Receiver's distribution is concluded.

## **CONCLUSION**

For the foregoing reasons, the Commission respectfully requests that the Court grant its motion for a default judgment against Amerindo Entity Defendants as set forth above, and grant the Commission such other and further relief as is just.

Dated: New York, NY
       February 28, 2014

                                      Respectfully submitted,

                                       /s/ Neal Jacobson_____
                                      NEAL JACOBSON
                                      MARK D. SALZBERG
                                      Attorneys for Plaintiff
                                      Securities and Exchange Commission
                                      Brookfield Place, 200 Vesey Street
                                      Room 400
                                      New York, NY  10281-1022

Of Counsel:
Alistaire Bambach