UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3-13-14

SECURITIES AND EXCHANGE
COMMISSION,

                Plaintiff,

-v-

AMERINDO INVESTMENT ADVISORS, *et al.*,

                Defendants.

No. 05 Civ. 5231 (RJS)
ORDER

RICHARD J. SULLIVAN, District Judge:

The Court is in receipt of the attached correspondences regarding the Receiver's Initial Distribution Motions. The Court reminds all parties that communication with the Court should generally be docketed and made part of the public record.

SO ORDERED.

Dated:      March 12, 2014
              New York, New York

RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE



"Vivian Shevitz"

03/12/2014 08:38 AM

To <sullivannysdchambers@nysd.uscourts.gov>

cc

bcc

Subject Lily Cates' "claim"

Dear Judge Sullivan:

I have asked a student who has been helping me post-surgery to type this brief note to respond to the claim of Lily Cates. Not only is this inexcusably beyond the bar date (Lily Cates has been represented throughout), but the claim is short of documentation and is belied by Cates' own 3500 statement.

Cates' latest effort states that this is her mother's claim and that she is the representative of her mother's estate. She presents no papers to show any such authorization. Nor is Edward Swanson authorized to represent the mother's estate.

More to the point, as stated in Cates' 3500 material dated May 10, 2005 Cates he told the government (Mr. Salzberg, Mr. Litt, Ms. Lackey, and Inspector Fratterigo, with Ed Swanson present), that an investment made originally for her mother was "later transferred to Cates." GX 3212-2, page 2 (in the Vilar Supplemental Appendix on Appeal, VSA-I-page 127):

"In August 2000, CATES also invested approximately $300,000 in AMERINDO, Tech D. She obtained this money from the sale of her mother's residence in Madeira, California. The investment was initially in her mother name and later transferred to CATES. She signed as a proxy for the Tech D investment. ...."

Additionally this second claim refers to the B2B fund, a defunct fund which was merged into the U.S. mutual fund, Amerindo Technology Fund. That fund was an Amerindo US-owned and managed mutual fund, given away upon defendants' arrests to Munder Capital. If Cates had a claim it would be against Munder, not Amerindo . As to funds

"accepted" by "Heather," this is curious, as Heather was a substitute receptionist in the US office, was not Joanna Olsher's secretary (on whose stationery Cates' "receipt" is purportedly printed), did not accept moneys for investments, and would not have known what to do with any monies invested. This says more about Cates' unique access to Amerindo offices than about any legitimate investment claim Cates may retain.

Cates did not mention either of these "claims" at trial.

I ask for a hearing.

Vivian Shevitz
Attorney at Law *
46 Truesdale Lake Drive
South Salem, New York 10590
914-763-2122 (office and cell)
Fax: 888-859-0158
Vivian@shevitzlaw.com

*Admitted in New York; United States Supreme Court; United States Courts Of Appeals for the First, Second, Third, Ninth, and Eleventh Circuits; United States District Courts for the Southern District Of New York and the Eastern District of New York.

Michael C. Walsh
1715 Grandview Ave.
Westfield, NJ   07090
908-654-3144

March 2, 2014

Hon. Richard J. Sullivan
U.S. District Judge Southern District - New York
500 Pearl St.
New York, New York   10007

Case: # 05 Civ: 5231   (RJS)

Dear Judge Sullivan,

I am aware that the Receiver's proposal has been changed with respect to the interim payment proposed by Mr. Gazes. I understand that my holdings in GRFDA will not be recognized in the interim payment. This is of great concern to me as I had considerable holdings of $147,784 in Fixed Rate deposits as of 02/28/03, the date of my last statement from Amerindo.

That said, I am very pleased that interim payments are being considered and my hope is that a full restitution of our funds to include Fixed Rate deposits will follow in the near future.

Respectfully,

*[signature: Michael C. Walsh]*

Michael C. Walsh



# SOUTHWESTERN PENNSYLVANIA
## EYE CENTER
*"committed to excellence in eye care"*

February 26, 2014

Judge Richard Sullivan
Thurgood Marshall
United States Courthouse
40 Foley Square
New York, NY 10007

Dear Judge Sullivan:

I received a revised order for fixing the investors claims and authorizing interim distributions of funds. I am pleased that the receiver and the SEC together came to the conclusion of what was most fair and reasonable considering the mixed assets that need be re-divided and then distributed.

I appreciate all that you have done and your special effort to move this forward. Based on the information that I have read, every effort seems to have been made to provide a fair and equitable distribution plan.

                        Sincerely,

                        E. Ronald Salvitti, M.D.

ERS:mlo

Southwestern Pennsylvania Eye Center and Surgery Center

750 East Beau Street • Washington, PA 15301 • (724) 228-2982 • (800) 336-2020

Donald P. Walsh
66 Uplands Drive
West Hartford, CT 06107
*860.250.3843*

February 27, 2014

Hon. Richard J. Sullivan
U.S. District Judge
Southern District – New York
500 Pearl St.
New York, New York 10007

Re: Case # 05-Civ.5231 (RJS)

Dear Judge Sullivan,

Yesterday, I became aware that the Receiver's motion for fixing investor claims and authorizing an interim distribution has recently been amended. The effect of that amendment on my wife and me will be that our holdings in the Amerindo "GRFDA" will not be recognized in the calculation of the interim payment. This revelation concerns us greatly, because we had over $77,000 in that account on April 30, 2005.

While we appreciate your willingness to begin the return of the investors' money at this time, we hope that, if funds are recovered to allow further payouts, our full Amerindo investment will be returned to us. Our GRFDA funds had been in the Rhodes investment when we first invested in Amerindo. The balance of our funds were in ATGF the entire time. I followed their status closely between 1995 to the point of Alberto Vilar's arrest. The "Rhodes-to-GRFDA" portion of our investment was acknowledged on every one of the 25+ statements of account that we received from Amerindo from 1995-2005.

Thank you for your consideration.

*[signature]*

cc: Ian Gazes

# Alfred Heitkonig
## PO Box 9024038   San Juan, PR 00902
### ⬛⬛⬛⬛⬛@⬛⬛⬛.⬛⬛

March 11, 2014

Honorable Richard J. Sullivan
United States District Court Judge
Southern District of New York
500 Pearl Street
NY, NY 10007



RE:   Objection to Amerindo Receiver's
      Amended Motion
      05 Civ. 5231 (RJS)

Dear Judge Sullivan,

Since your Honor has graciously allowed me to communicate directly with the Court during the course of this Amerindo case, I would like to take this opportunity to respectfully comment on the important subject of the Receiver's Amended Motion dated February 24, 2014, with the proposed initial distribution on account of allowed investor claims. This communication sets forth my position regarding the proposed distribution. The objections to the claims themselves will be set forth in a separate document.

At the outset I would like to state that although I am not in full agreement with the original Receiver's report, we found it to be generally acceptable insofar as it took into consideration the valid points and concerns set forth by the various claimants in their individual submissions. The logic applied in the first report was solid and the methodology acceptable for such purposes (i.e., an initial distribution). To that extent, and for the purposes of a much-needed initial distribution, and in order to avoid further delays, we were prepared to agree with the Report and Recommendations, without prejudice of raising our specific objections to be considered by the court at the time of the final ultimate distribution.

<u>The Amended Motion, issued shortly after the original one, adopted the SEC's position, and in so doing, the Receiver essentially abdicated his duties.</u> Notwithstanding the detailed submissions by the various parties in interest, the undersigned included, the Receiver chose to adopt the recommendations of the SEC and its staff, that is, the recommendations of a non-investor, non account holder, a party without proprietary interest in the funds to be distributed. If approved by the Court, the Amended Motion will completely alter the course of a fair and equitable distribution to the universe of Amerindo investor claimants (AIC).

The Receiver's Amended Motion also says that following the SEC's review of his first submission/motion, "after consultation with the SEC staff...", and "after extensive consultation with the SEC staff", the Receiver decided to submit his amended motion, giving the impression that the SEC did not approve of his first motion. As can be evidenced by the flurry of objections, counter objections, responses and replies to the counter objections in the last few days alone, it is obvious that the involvement of the SEC in the Receiver's affairs threatens to return to the eight year logjam the AIC have suffered.

Prior to you Honor's appointment of the Receiver last year, the AIC languished for eight long years while the Government, which includes the SEC, ignored, fumbled and bumbled all issues related to AIC investments and the return of our monies. To the Government's credit, the Defendants did delay the proceedings, yet the lack of awareness, concern, understanding and management by the Government with regard to AIC funds is undeniable. Your Honor removed the task from the Government's incapable hands and for the first time in over eight years, AIC were presented to Mr. Ian Gazes, who listened to us, showed compassion, competence and initiative and seemed on the right path. Now enter the SEC and Mr. Gazes' course was inexplicably reversed to our detriment. I note that the SEC recommended Mr. Gazes to your Honor for the Receiver position, and he was their top candidate. This position requires full impartiality but perhaps if Mr. Gazes does not consider the SEC's recommendations, any future appointments would be in jeopardy.

Mr. Gazes' background is one of bankruptcy matters and perhaps this may explain how the SEC was able to induce him to submit the amended motion. <u>However there is no bankruptcy here. There is no ponzi scheme here.</u> The GFRDA and ATGF products were bonafide investment vehicles that operated successfully to the benefit of the AIC for approximately 15 years. Additionally and admittedly, there is plenty of money to distribute to and repay the AIC. Bankruptcy type methodology does not apply and must not be allowed to proceed. There are several references to the commingling of monies within the ATGF accounts but this alone cannot justify the proposed methodology as discussed below.

<u>The amended motion promotes the option and methodology of using the ATGF AIC's original contribution to the ATGF fund to value their claims.</u> The amended motion goes on to contradict itself by saying "This methodology also recognizes that ATGF and ATGF II investors believed they were investing in more risky technology stocks, and therefore attempts to limit their claims to actual amounts contributed less distributions..". First of all, any investor, sophisticated or not, is fully aware that a stock or stock fund valuation has nothing to do with yesterday's price, last week's price and much less the price or amounts contributed 5, 10 or 15 years ago. Furthermore, the ATGF investors knew they were getting into a risky investment vehicle that would be volatile, and did so willingly. Therefore, a methodology that limits the investors' claims is a direct contradiction of the intended investment vehicle and that in itself will be harmful to the ATGF's AIC. Let's assume there are 20 ATGF claimants, this proposed methodology will result in numerous different ATGF share prices (NAV) to the 20 different claimants all for exactly the same ATGF stock fund. There exists a major disconnect here. This methodology might apply assuming the ATGF vehicle had been a complete fraud, if the

investors were unaware of the inherent risks and possible volatility in the tech and biotech markets, ATGF had not operated successfully or if there had existed a bankruptcy, etc., but clearly this was not the case and the Receiver is fully aware of this.

The amended motion also offers the option to use the ATGF price shown on the ATGF claimants' last statement. This is equally flawed. My last statement showed an ATGF share price of $21.80 as of 5/31/04. However, if I had "lost" my last few statements and presented my 6/30/2000 statement as my last Amerindo statement, my ATGF claim and share price would be $114.20 instead and the value my ATGF investment at $10.3M as opposed to only $1.96M. Clearly this method leaves the door open to blatant inequality and dishonesty. The only fair and equitable ATGF valuation method is to agree on one ATGF share price and for that ATGF share price to be applied equally to each and every bonafide ATGF AIC.

The SEC has stated on repeated occasions that the Defendants made numerous unauthorized fund transfers from ATGF custodial accounts to various sources including Defendants' personal accounts and for their personal expenses. At no time, to the best of my knowledge, has the Government ever bothered to investigate the custodian of the ATGF funds, Bear, Stearns & Co., nor has any evidence been offered resulting from any such investigation. It would seem obvious that the custodian of ATGF funds must bear significant responsibility in the ATGF matter and possibly be liable to the ATGF AIC. The SEC Amended Complaint, filed 11/17/2005, Pg 9 Pt. 20 says: "ATGF is an open-end investment company incorporated in Panama. ATGF is the owner of accounts at the Broker-Dealer and another broker-dealer, both in New York". The Broker-Dealer also happened to be the ATGF Custodian as outlined in the ATGF Offering Circular. The investigation of the ATGF Custodian, Bear, Stearns & Co is long overdue. This could fall under the scope the SEC's role in this matter. By investigating the Custodian, the SEC would be doing a great service to the ATGF AIC, which we would welcome.

It is also very important to highlight that the SEC clearly states "ATGF is the owner of accounts at the Broker-Dealer". The Heitkoenig account owns 90,000 shares of ATGF. Therefore as defined by the SEC in their Amended Complaint to the Court, the Heitkoenig ATGF account logically owns a defined percentage of the ATGF accounts identified and certified by the SEC to the Court. This absolute fact stated by the SEC and preserved in the Court records cannot be altered as a result of any legal posturing and "extensive consultation".

It is likely that monies were commingled by the Defendants in our ATGF Custodial account(s). This is precisely why an investigation is needed and that should logically begin with the ATGF Custodian, Bear, Stearns & Co A.K.A. J.P. Morgan. Should an investigation satisfy the Court that other AIC monies are indeed commingled in the ATGF custodial accounts, then said funds must be subtracted from ATGF AIC monies and returned to, for example, GFRDA AIC as applicable and the balance distributed to ATGF's AIC. This is simple, straightforward logic and common sense. We are looking at the possible commingling of only two investment products, ATGF and GFRDA for approximately only 20 bonafide and well documented AIC claims; surely this can be investigated, categorized and quantified with minimal effort and

resources. To date, and to the best of my knowledge, no serious attempt has been undertaken in this regard, and it is thus long overdue. I offer that it is much more logical to adopt this method of reasoning than to use "commingling" (and uninvestigated accounts) as a conclusion to adopt the methodology proposed in the Receiver's Amended Motion. No individual or organization should be allowed to simply imagine, theorize and impose restrictions on ATGF values and especially so when even the most basic and rudimentary investigation of the accounts and investment vehicle in question has yet to be undertaken.

While the objections to the claims will be dealt with by separate cover, I would like to address briefly certain issues related to this matter. The Receiver's July 30, 2013 letter to Amerindo Investors NOTICE OF PROOF OF CLAIM WITH RESPCT TO AMERINDO INVESTOR ADVISORS INC. *ET AL.* Under Pt. 2, WHAT TO FILE states "You should attach to your completed proof of claim any documents including the last statement(s) on which the claim is based (if voluminous, attach a summary) or an explanation as to why the documents are not available." The NOTICE PROOF OF CLAIM also states in bold lettering: PLEASE READ THIS NOTICE CAREFULLY AS IT SETS FORTH CERTAIN REQUIREMENTS AND DEADLINES ESTABLISHED BY THE COURT WITH RESPECT TO THE FILING OF A PROOF OF CLAIM AGAINST AMERINDO. FAILURE TO COMPLY WITH THE REQUIREMENTS AND DEADLINES SET FORTH HEREIN MAY AFFECT YOUR RIGHT TO RECEIVE A DISTRIBUTION ON ACCOUNT OF YOUR CLAIM.

Herein lies the problem and the solution. The problem is that there are way too many claims that have been accepted by the Receiver with questionable, incomplete or virtually no supporting documentation. It strains credibility to believe that any investor would allow Amerindo to get away with not sending them statements for two, three, four, five even ten or fifteen years without a really good reason or have presentable evidence of attempts and pleas to Amerindo begging and demanding statements, confirmations and etc. Most everyone I know, myself included, would have chained themselves to Amerindo's front door, had they not received said information. No reasonable investor would have allowed more than two years to elapse without receiving statements of account unless they had a very plausible explanation or reason. The Receiver was very clear in his instructions, yet many claimants ignored these clear, logical and simple instructions and submitted official claims with no Amerindo statements or outdated, questionable and incomplete to no documentation (without the required explanation as to why).

Inexplicably, these claims were nevertheless accepted by the Receiver and these claims are in line for distribution. Had all AIC taken the claim process seriously and diligently prepared their claims, claim verification and distribution of monies would be a straightforward and efficient procedure. But obviously that did not happen. Instead of disallowing questionable, incomplete and even fraudulent claims for further review and investigation or rejection, all claims are accepted by the Receiver forcing the adoption of complex and ill suited methodology for claim valuation to the detriment of the AIC who submitted well documented and legitimate claims. Therefore, the solution is simple: the Receiver shall only proceed with properly documented claims. Of the improperly documented claims, many can be eliminated

outright and the rest should be designated for further investigation with a strict time limit or also be disallowed.

This may sound severe but in reality it is quite realistic and logical. Almost nine years have elapsed since we had access to our funds (actually much longer because for years prior to 2005 Amerindo seems to have stalled almost all AIC repeatedly) and I submit that if after all that time any investor who remains ill prepared to follow the Receiver's clear and simple instruction, he or she should not see their claim allowed. For the few that may have a valid reason or still may be able to come up with adequate and acceptable documentation, a strict time limit should be set. In this manner, the deserving AIC who properly completed and submitted their valid claims will be able to finally enjoy simplified and correct methodology for their claim valuation as well as timely distribution of their monies.

The SEC Amended Complaint, filed 11/17/2005, Pg 3 states: "Amerindo was often unable to pay GFRDA investors their promised returns, or to return investors' principal at maturity. Consequently, when investors sought to redeem their GFRDAs, Amerindo generally either refused to honor redemption requests". This is indeed true and happened to the Heitkoenig account. Amerindo claimed that due to market conditions, interest rates were falling and thus unilaterally reduced our GFRDA interest rate beginning in early 2000 or late 1999. I never accepted or agreed to this interest rate reduction. I requested and subsequently demanded the return of our GFRDA investment. Amerindo refused to return our monies and therefore they had no basis or right to also reduce our GFRDA interest rate and they therefore continue to be bound by the original promised rate of return. Our GFRDA account is due a 15% rate return since late 1999 or early 2000. Our GFRDA account is thus understated in our Amerindo statements of account.

The SEC Amended Complaint, filed 11/17/2005, Pg 6, Pt.18 says: "Vilar and Tanaka failed to redeem certain investors' investments upon their request, discouraged investors from redeeming their investments...". This also occurred with the Heitkoenig GFRDA account, and is discussed above. The SEC Amended Complaint, filed 11/17/2005, Pg 24, Pt. 93 says: "Additionally, Vilar, Tanaka and Amerindo either failed to make promised interest and/or principal payments to certain GFRDA investors,..". Again, this also occurred with the Heitkoenig GFRDA account, and is discussed above.

In closing I would like to mention that in the flurry of objections, counter objections, responses and replies to objections that I refer to above, I read that Mr. Friedman, in presenting a Reply to Objections on behalf of the Markus claimants, calls into question the validity of the Heitkoenig account's right to 90,000 ATGF shares. For the record, I am happy to meet with the Court and/or the Receiver to validate our ownership of 90,000 ATGF shares, should it even be necessary that I be asked to respond to such a spurious and unfounded allegation.

No opinion in this matter would be complete without mention of the Mayer account. While it is my sincere desire that Dr. Mayer have the satisfaction to be in receipt of a distribution from the Court, we must remain cognizant of the fact that the Mayer account wants their hands in the front, back and

side pockets of the AIG custodial funds. This account has received a payout from the Government, begs for hardship distributions, has initiated actions that a) forced JP Morgan to file an interpleader which was then served on the AIC requiring us to seek legal consultation and b) obtained judgments in State Court against the Defendants which they now seek to extract from AIG custodial funds. (I hope I covered it all).

If I am not mistaken, the appointment of the Receiver by the Court and the subsequent invitation by the Receiver to the AIC to submit a Proof of Claim was directed solely to and only for the benefit of the AIC. The legality of their State Court judgment is a matter for your Honor to decide upon and does not belong in the POC. I therefore submit that the Mayers have submitted an improper POC which must be rejected. I further offer that the Mayers be sent to the end of the line with the rest of the improper POC and given a strict time limit to submit a proper POC or face rejection of their claim and not participate in the Receiver's distribution process.

I hope and pray that your Honor will see fit to reject the Receiver's amended motion, agree that improperly documented and/or incomplete claims must be required to strictly comply with the requirements set by the Receiver within a specified time limit or face rejection and remind the SEC that the Receiver is empowered by the Court to make his own decisions and recommendations so that Mr. Gazes' can return to his original methodology and thinking to the benefit of all AIC.

Respectfully submitted,

*Alfred Heitkonig*

cc: (via email)

Eugene F. Hestres Velez, Esq.
Sharon Levin, Esq.
Neal Jacobsen, Esq.
David C. Burger, Esq.
Vivian Shevitz, Esq.
Patrick W. Begos, Esq.
Julian Friedman, Esq.
Tomas J. Hall, Esq.
Jane Simkin Smith
Ronald Salvitti
Andrea Likwornik Weiss, Esq.
Ian Gazes, Esq.