UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____
SECURITIES AND EXCHANGE COMMISSION

        **Plaintiff**

        v.                          Civ. 05-5231 (RJS)
                                      ECF CASE

AMERINDO INVESTMENT ADVISORS INC., *et al.*,

        **Defendants.**
_____

**HEITKOENIGS' POST-HEARING OBJECTIONS TO CLAIMS** (Docket #363)

Alfred Heitkonig, Elna Charlotte Olga a/k/a Elna Heitkoenig and Maaike Olga Maria Hickok a/k/a Maaike Heitkoenig (the "Heitkoenigs"), by their attorneys, Loeb & Loeb LLP, hereby submit the following post-hearing objections to the claims filed with the court appointed Receiver, Ian J. Gazes, Esq. (the "Receiver").

**I.**      **RELEVANT PROCEDURAL BACKGROUND**

On February 8, 2014, the Receiver filed his motion for an order of the Court fixing Investor Claims and authorizing the Receiver to make an interim distribution on account of allowed claims (the "Motion").

Following a review of the Motion by the SEC staff and after "extensive consultation" with the SEC staff, on February 24, 2014, the Receiver filed an Amended Motion (the "Amended Motion") with a significantly different methodology as to the valuation and resulting distribution but based on the same original claim documentation submitted by investors, which had been filed with the Court and attached to the Receiver's Motion to fix investors' claims (Docket #363), *i.e.*, the Proofs of Claims filed by the various claimants (the "POC").

Significantly, the Receiver's July 30, 2013 letter to Amerindo Investors - NOTICE OF PROOF OF CLAIM WITH RESPECT TO AMERINDO INVESTOR ADVISORS INC. *ET AL.* – expressly stated that "[Y]ou should attach to your completed proof of claim any documents including the <u>last statement(s) on which the claim is based</u> (if voluminous, attach a summary) <u>or an explanation as to why the documents are not available</u>" (emphasis added).  The NOTICE PROOF OF CLAIM also expressly stated in bold lettering:

> **PLEASE READ THIS NOTICE CAREFULLY AS IT SETS FORTH CERTAIN REQUIREMENTS AND DEADLINES ESTABLISHED BY THE COURT WITH RESPECT TO THE FILING OF A PROOF OF CLAIM AGAINST AMERINDO.  FAILURE TO COMPLY WITH THE REQUIREMENTS AND DEADLINES SET FORTH HEREIN MAY AFFECT YOUR RIGHT TO RECEIVE A DISTRIBUTION ON ACCOUNT OF YOUR CLAIM.**

The Heitkoenigs hereby submit their objections to some of the claims filed with the Receiver on the general grounds that the allowance of some of the claims, as filed, violate the instructions of the POC and have been submitted with virtually no supporting evidence.  If these apparently dubious claims are paid, payment will surely adversely affect the proper claims and the rights of the proper Amerindo investor claimants.  Obviously, if fraudulent claims are paid as part of the interim distribution, there may be no way to recoup those monies later.

## II.     <u>OMNIBUS OBJECTION.</u>

Gary Tanaka and Alberto Vilar, through the Amerindo entities, managed funds for their investors.  The investments were made in various types of securities and under different terms and conditions for their respective investors.  Tanaka and Vilar were criminally charged with engaging in fraudulent actions in connection with the handling of the funds entrusted to them by the investors.  In connection with those charges they were found guilty and convicted. The SEC initiated a civil action against Tanaka, Vilar and Amerindo claiming that by reason of their violation of the SEC laws and regulations, they should be enjoined from continuing to operate

and manage the funds under the theory that if they were allowed to continue to do so, the funds and/or monies of the investors would continue to suffer.

Several bank accounts have been identified in the course of this litigation. The funds in those accounts belong to the investors/account holders. These bank accounts, and the custodial funds in them, have been the subject of extensive discussions with the Receiver, as well as in motions, letters, and communications with the Court. These bank accounts are believed to relate to two Amerindo investment vehicles/products, namely the Amerindo Guaranteed Fixed Rate Deposit Account ("GFRDA") and Amerindo Technology Growth Fund ("ATGF"). The investors in those vehicles/products have the superior claims against the funds in those bank accounts.

The Court deemed it appropriate to appoint a Receiver, here Ian J. Gazes, and the Receiver was given specific instructions and authorizations to undertake certain work and to submit a report to the Court with recommendations as to how the funds should be distributed to the various investors. After receiving the input from the various interested parties, the Receiver concluded that it would be appropriate to make a partial initial distribution under certain parameters whereby no one would be prejudiced since everyone would receive a proportionate share of what they would ultimately be entitled to receive. Only the investors should be entitled to participate in the interim distribution. Thus, the Heitkoenigs object to any interim distribution requested to be made to non-investor claimants, including non-ATGF and non-GFRDA investors, on the grounds that such parties have no legitimate claim or entitlement to the funds that are the subject of the Receiver's motion. Any claims made by non-investor claimants must be made against the personal funds and assets of Tanaka and Vilar. Accordingly, any "proof of claims" or any other claims submitted by non-investor claimants should be disallowed and not considered, now, as well as at the time of the final distribution.

Additionally, many claimants ignored the requirements of the POC form and submitted claims to the Receiver with no Amerindo statements of account or outdated, dubious and/or incomplete documentation (without the required explanation as to why they were not submitting Amerindo statements of account). Inexplicably, these claims were nevertheless accepted by the Receiver and included in the proposed interim distribution.  Instead of disallowing or setting aside dubious, incomplete and perhaps fraudulent claims for further review and investigation or disallowance, all claims were accepted by the Receiver which has created an inequitable and unfair situation.  As the Receiver offered at the March 14, 2014 hearing, no distribution should be made to anyone until each claimant submits a sworn declaration as to the bona fides of their respective claim.[1]

## III. SPECIFIC OBJECTIONS

### A. Amerindo Advisors UK Retirement Benefit Scheme ("ARBS") (Gazes #26)

This claim is made against JPM account # 102-05012 and is valued at approximately $10.7M as of October 30, 2009. This claim shows financial statements of the ARBS signed (as authentication) by Vilar/Tanaka/Renata Tanaka. Presumably, ARBS are monies diverted/commingled from Amerindo investors for the benefit of Vilar and the Tanakas and thus this claim is invalid and should not be included in any distribution.

### B. National Investor Group Holdings KUWAIT ("NIGH") (Gazes #24)

This "claim" purports to show an investment thru a Kuwait Bank to a Cayman Island Co, NIG-Ameritech in 2000 for $1M for 7799.61ATGF shares.  The public record shows that in 2009, NIG-Ameritech was struck from the Register in the Cayman Islands (*i.e.*, dissolved) and there is no evidence presented in the Proof of Claim that the alleged successor organization

---

[1] These objections are not meant to be a criticism of Receiver Ian Gazes' work.  The Heitkoenigs recognize that Mr. Gazes has not been given a sufficient budget to conduct the necessary due diligence for each of the claims, thus making the objections submitted by various parties all the more important for the Court's consideration.

4

NIGH has any legitimate right or claim to the assets of the dissolved NIG-Ameritech. Nor is there any proof submitted that NIGH is in fact the legal successor to NIG-Ameritech. Indeed, the claim documentation does not contain even one piece of paper or Amerindo document dated after February 2000. This claim may be fraudulent and should be disallowed until adequate supporting documentation is provided to the Receiver.

Furthermore, the ATGF Net Asset Value ("NAV") (ATGF per share price) assigned to this claim by the Receiver (in error) is $128.21, to which the Heitkoenigs object. There should only be one ATGF NAV to be applied to all Amerindo ATGF investor claimants, not a different ATGF NAV for each ATGF investor or different groups of ATGF investors; all ATGF account holders invested in the exact same ATGF investment product under the same ATGF Offering Circular and their respective ATGF investment's value was to be valued by one ATGF NAV, not different ATGF NAV for different ATGF investors. These were the terms that the ATGF operated under, successfully for over 15 years (indeed, going back close to 25 years). The Heitkoenigs object to the Receiver's proposal which assigns different ATGF NAV values to different ATGF investor claimants.

  C. <u>**Travelers Bond & Financial Products (Gazes #5)**</u>

This claim is for monies paid by Travelers for Amerindo and Vilar's legal defense. The basis for the reimbursement request is (apparently) since fraud was involved in the underlying claim, Amerindo and Vilar had no right to advancement of defense costs, so the insurance carrier seeks reimbursement of monies it advanced in the amounts of $1,000,000 and $529,000. This claim is clearly not an investor claim and therefore should be disallowed and not considered for purposes of any distribution of the investors' monies and custodial funds at issue.

D.     **Latchezar Christov ("Christov") (Gazes #27)**

This is a claim for alleged finder fees due Christov from Amerindo for finding Amerindo clients including the Sweetland & Litton accounts.  Mr. Christov went to arbitration in 2002 and the arbitrator concluded that the evidence did not support Christov's claims on the Litton account (which was the bulk of his claim).  The Heitkoenigs also understand that Christov was found to have violated the Investment Advisor rules. The Arbitrator concluded Christov was due approximately $44,000 for the Sweetland account.  Significantly, however, Christov is not an investor, thus he cannot have a claim against investor custodial funds. Therefore, this claim should be disallowed and should not be considered for purposes of any distribution of the investors' monies.

E.     **J.P. Morgan (Gazes #28)**

This claim is for legal fees incurred in connection with an interpleader action JP Morgan asserts it was forced to file because of the Mayer claim. JPM is not an "Investor" and has no entitlement to the funds at issue.

F.     **Mayers (Gazes #4)**

The Mayers appear to be bona fide Amerindo investor claimants but their claims should be reduced by the inflated claim amounts they seek for interest, damages awarded by the Court's Restitution Order, and the judgment(s) obtained in the state court.  Furthermore, it also appears from the record that the Mayers entered into an agreement with Amerindo for repayment of their account at less than the face value reflected on their Amerindo statements.[2]

---

[2] The Heitkoenigs also adopt and incorporate by reference the arguments set forth at pages 17 thru 21 of the Response and Objections of the Marcus' to the Receiver's Motion for and Order (A) Fixing Investor Claims and (B) Authorizing Interim Distribution dated February 27, 2014 (Docket No. 377). As correctly stated in the Marcus Objection, the JP Morgan custodial accounts are not in the name(s) of any person(s) or entity(ies) against which the Mayers have a judgment and therefore the Mayers have no lien or entitlement to the assets at issue.

6

### G.     <u>Angelica Jordan (Gazes #25)</u>

The Heitkoenigs understand that Ms. Jordan is the mother of Defendant Vilar's girlfriend. The claim is presented by Michael Sotomayor, who has represented to Mr. Heitkonig that he was employed by Bear, Stearns & Co. The last statement shown as part of this claim is dated March 31, 2002 for $3,321,427.73. Mr. Sotomayor calculates appreciation in the account from 2002 thru May 25, 2005 based on Amerindo's theory of "let winners run." The calculations are unreasonable and unsupported. In his first Motion, the Receiver set an allowable claim for Ms. Jordan of $828,766.10. Astoundingly, in his Amended Motion, the Receiver's allowable claim is increased to $3,344,967.13, which the Heitkoenigs object to in its entirety.

Mr. Sotomayor says that "there are two funds: 1) Amerindo Guaranteed Fixed Income Fund (AGFIF) at 8% per annum, and 2) Ms. Jordan's separate individual Equity Portfolio (which was never commingled with any other individual or pooled vehicle)." If in fact, Ms. Jordan's assets were not commingled with the ATGF and GFRDA assets (as stated in her POC), then she should have no claim against the commingled custodial funds, which to the best of the Heitkoenigs' knowledge, as well as based on information contained in court documents and other records, include only GFRDA and ATGF assets. Furthermore, Ms. Jordan's last Amerindo statement of account is dated March 31, 2002 and shows an investment in Amerindo International Venture Fund of $688,799.13, which goes unclaimed in her POC. It thus appears that these monies were returned to Ms. Jordan after March 31, 2002. If it is true that Ms. Jordan is the mother of Mr. Vilar's girlfriend and Mr. Sotomayor was an ex-Bear, Stearns & Co. (the ATGF Custodian) employee, the Heitkoenigs request that this claim be given heightened scrutiny and be disallowed for purposes of an interim distribution. Notably, there is no supporting evidence that an Amerindo Guaranteed Fixed Income Fund ("AGFIF"), which Ms. Jordan claims in her POC, ever existed. Thus, if any monies are paid out to Ms. Jordan as part of

7

an interim distribution and her claim is found to be invalid, there will be no way to recover the amounts paid to her.  Finally, for the reasons stated above, Ms. Jordan has no legitimate claim against the ATGF and GFRDA custodial funds, and must be left to pursue her claim against monies and assets belonging personally to Vilar and Tanaka.

      **H.**      **Lily Cates (Gazes # 32)**

This claim, prepared by Mr. Swanson states " Hi Ian! Attached is a Proof of Claim, completed by me as Lily's attorney, as best I could. As indicated, thousands of pages of documents were provided by Lily years ago to both the DOJ and SEC. If the attached Proof requires any additional information, please advise me."  The claim ignores the written claim requirements, is incomplete, and fails to even set forth a dollar value.  Mr. Swanson's submission is totally inadequate and consideration of it should be deferred until a proper claim and supporting documentation is submitted to the Receiver.  Almost all Amerindo investor claimants submitted numerous documents to the SEC and DOJ, including the Heitkoenigs.  Such document submissions do not relieve Ms. Cates (or anyone else) from submitting adequate proofs of claim here.  Incredibly, the Receiver not only accepts Ms. Cates "claim" as submitted, but also provides an allowable claim value for distribution of $9,198,189.51.  This is not even an amount submitted by claimant Cates.[3]  The Receiver completed the Cates claim on her behalf, which the Heitkoenigs object to.

Furthermore, the Cates claim includes an Amerindo statement of account dated September 30, 2004. This statement lists $5,000,000 on deposit with the SBIC, $2,872,058 External Custody Accounts in Bear, Stearns account # 899-00236, and a balance of $4,345,228.85 as Rhodes Capital plus accumulated dividends and interest on the SBIC deposit.

---

[3] Also unexplained is why the Cates' amount remained unchanged between the Receiver's Motion and his Amended Motion.

8

The underlying litigation clearly identified the Lily Cates $5,000,000 SBIC matter as a primary example of the Defendants' fraud, as these monies were used to pay Defendants' personal expenses.  Therefore, this $5,000,000 must be claimed against the Defendants' personal assets (rather than against custodial account funds).  Under no circumstances should these monies be paid from Amerindo investor custodial accounts.

Furthermore, Mr. Swanson states "In 2005, Lily Cates directed Bear, Stearns, which then held approximately $3 million of the Funds deposited by the Debtor(s) to transfer such Funds to another Bear, Stearns account of Lily Cates over which debtor(s) had no control."  It is assumed that their $3 million amount to which Mr. Swanson refers are the monies deposited in Bear, Stearns account #899-00236 and these funds were indeed transferred out, as per Lily Cates' directive to Bear, Stearns.  Accordingly, it would be improper for this amount to now be asserted against accounts from which they were successfully transferred out at the investor's direction. Finally, the $4,345,228.85 Rhodes Capital amount with accumulated dividends, plus interest on the SBIC deposit, should be investigated prior to being taken at face value as an allowable claim for distribution from Amerindo investor claimants' custodial funds. The Heitkoenigs object to this claim in its entirety and question how the Receiver calculated an allowable claim of $9,198,189.51 based on the information submitted.  No interim distribution should be made on this claim without further investigation.

## IV.   CLAIMS WITH INADEQUATE AND/OR NON-EXISTENT SUPPORTING DOCUMENTATION.

### Introduction.

The claim of <u>Imagineers Profit Sharing Plan</u> (Gazes #30) is highlighted to illustrate the need to reject improperly documented claims and to request that, as noted above, each claimant be required to submit their claims under oaths as offered at the hearing by the Receiver.

According to the filed Proof of Claim, as of June 30, 2004, this investor had 8096.52ATGF shares worth $187,000. However, in August 2004, this investor redeemed 1155.36ATGF shares. As of December 31, 2004, this account held 6941.16ATGF shares worth $169,500. Thus, this investor redeemed ATGF shares worth approximately $25,000 in late 2004.

The statements submitted in support of the claim show two (2) withdrawals in 2004. Numerous claims show little to no Amerindo documentation or evidence of a bona fide Amerindo account in existence as of May 25, 2005. Had Imagineers Profit Sharing Plan chosen not to present Amerindo statements of account in 2003 or 2004, their claim would have been grossly overstated. There are many investor claimants who do not present relevant statements of account or other evidence and thus there exist the possibility of many overstated claims.

No reasonable person who Amerindo owed large sums of money to would allow long periods of time to pass with no Amerindo statements or other documentation being received showing their investments prior to May 25, 2005. Had any investor not received appropriate account statements or other documentation from Amerindo, they would have contemporaneously corresponded with Amerindo demanding statements and/or other documentation showing their investments.

Investor claimants who failed to submit proper documentation, be it Amerindo statements of account or other documentation as required by the POC instructions, for a time period greater than two and a half years prior to Amerindo shutting its operations in May 2005, without an acceptable and/or verifiable reason, should not receive an interim distribution until a thorough investigation can be done to verify such investor's claims.

### A.   The Sweetland Claims (5 claims in total)

We understand additional documentation was submitted to the Receiver in connection with the Sweetland claims which has not been reviewed by the Heitkoenigs. Therefore, the

Heitkoenigs reserve the right to assert an objection to the Sweetland claims after review of the new documentation.

### B.   Sheridan Securities (A Bermuda Corporation) (Gazes #9)

According to the documents submitted in connection with this claim, this claimant sent $500,000 to Amerindo in January 1997. The claim includes a letter of confirmation for 16,917.57 ATGF shares and its claim is allowed at an ATGF NAV of $29.56 per share. The Heitkoenigs reject this arbitrary NAV valuation for these ATGF shares due to the fact that the only equitable valuation method is to treat all Amerindo ATGF claimants the same, namely, all valid ATGF claims must be valued at the same ATGF NAV. Furthermore, this particular claim submitted virtually no evidence dated after January 1997; all the claim includes is a letter from Amerindo in March 1998 (seven (7) years before Amerindo's business was suspended) promising to send ATGF NAV's (but no mention of any ATGF shares) and two NAV valuations dated February 28, 2005 and March 31, 2005. None of these documents show any reference to an Amerindo account or ATGF shares. This claim should not be included in the interim distribution and should be further investigated before it is allowed.

### C.   Elizabeth Knope (Gazes #6)

Ms. Knope made a Rhodes investment in 1995 and then subsequently reinvested $85,000 with Amerindo. However, no further verifiable documentation is offered as part of this claim. (Ms. Knope does show many attempts to reach Amerindo both in New York and London beginning in late 2005 thru mid-2005 with no acknowledgement of her claim.) The Heitkoenigs do not believe this POC shows sufficient documentation to support a bona fide claim and until it is investigated, it should not be included in the interim distribution.

### D.     Surinder Rametra (Gazes #8)

According to the POC, $250,000 was sent to Amerindo on March 31, 2000 as per Mr. Rametra's Merrill Lynch statement of account. This claim does include a confirmation document from Amerindo of even date for the purchase of 1957.98 ATGF shares. The Receiver values this claim at an ATGF NAV of $127.68 per share. The Heitkoenigs object to this arbitrary ATGF NAV. **As noted above, a uniform ATGF NAV should be applied to all ATGF investors.** In addition, this account shows no evidence of an investment beyond March 31, 2000, more than five years prior to the closing of Amerindo's operations. Obviously, if the investment was still held by Rametra, he must have some documentation showing same. Furthermore, this account references Mr. James Charles. The Defendants have claimed that Mr. Charles' claim is fraudulent. Based on Defendants' claim, the Heitkoenigs believe this claim merits further scrutiny before any interim distribution is made regarding it.

### E.     Charles Kaye, London, England (Gazes #15)

Mr. Kaye submitted a May 17, 2004 letter from Vilar acknowledging consulting fees owed. He also produced a December 22, 1999 letter from Renata Tanaka showing that 1630.18 ATGF shares were purchased for $174,988 in 1999. This is the totality of the documentation offered by Kaye to substantiate his claim. There is a span of fifteen and a half years from the date of his claim documentation until the end of Amerindo operations in May 2005. Without more evidence that this claim is valid and Kaye held investments with Amerindo in 2005 when Amerindo ceased operations, this claim should be disallowed. Furthermore, the Receiver values this claim at an ATGF NAV of $107.34 per share. For the reasons explained above, the Heitkoenigs reject this arbitrary valuation for these ATGF shares. All ATGF shares should be valued with a consistent ATGF NAV.

F.  **Anthony W. Gibbs (Gazes #22)**

Mr. Gibbs includes documentation from mid-1991 thru late 1999 in support of his claim. This claim is objectionable and must be disallowed due to incomplete and questionable documentation. Mr. Gibbs' documentation is unreliable, since it is dated more than a decade before Amerindo's operations ceased in May 2005. At a minimum, Mr. Gibbs should be required to submit a declaration concerning why he has no other documentation supporting his claim.

The Gibbs' claim is also important because it demonstrates the inequities that arise out of the Receiver's proposed ATGF claim valuation method as proposed in his Amended Motion and supported by the SEC.

First, under the initial Motion filed by the Receiver, the Gibbs allowable claim for the initial distribution was $367,524.84, which represented the number of ATGF shares, 17,746.25, multiplied by the ATGF NAV that was applied to all ATGF investor claimants in the Receiver's first proposal, $21.70 per share. The initial calculation was an equitable initial distribution; namely, that all ATGF investor claimants receive an equal ATGF NAV per share valuation and that ATGF NAV ($21.70) be multiplied by the verified number of outstanding shares of each Amerindo ATGF investor claimant.[4]

Under the valuation in the initial Motion, as shown above, the allowable claim would have been $367,524.84. However, under the valuation method utilized in the Receiver's Amended Motion (initiated and/or endorsed by the SEC), Mr. Gibbs is set to receive $1,287,619.98 (assuming he is required to properly document his claim) – an increase of 350%.

---

[4] The Heitkoenigs assert that the ATGF NAV is understated at $21.70, and that this issue merits further investigation and study, which has yet to be done after nine years. Indeed, to the best of the Heitkoenigs knowledge, there has been no study or investigation of the ATGF investment vehicle, the ATGF investor claimants, or the ATGF Custodian, Bear, Stearns & Co. It is believed that if such an investigation was completed, the investigation would establish that the ATGF NAV is a multiple of $21.70. The Heitkoenigs' support an award of fees to the Receiver to enable him to thoroughly investigate these ATGF issues.

Under the Receiver's revised proposed method of valuation (set forth in his Amended Motion), an ATGF investor's claim is (inconceivably) valued at either 1) the original amount contributed (in some instances, amounts dating back approximately 20 years), or 2) the last statement presented by the Amerindo ATGF investor claimant. A further review of Mr. Gibbs' claim shows the unfairness of this approach:

In his claim, Mr. Gibbs includes an August 7, 1991 fax from Defendant Vilar, which states " The Net Asset Value as of July 31, 1991 of the Amerindo Technology Growth Fund is $8.3539. The value of 19,213 shares is thus $160,510.00. Since the inception date of June 16, 1985, the Fund has increased 60.5%." This demonstrates that Mr. Gibbs purchased his shares somewhere between June 16, 1985 and July 31, 1991 at a price somewhere between $5.00 (60.5% of $8.35) and the NAV of July 31, 1991 of $8.3539.

Mr. Gibbs' POC states " I do not have a recollection or records as to when and how much was invested. The records, which I do have, incorporated herewith, reflect the value of my account as of November 16, 1999 was $1,287,618.98."[5]  Assuming for purposes of this illustration, Mr. Gibbs had documentation showing he purchased his shares sometime in 1991 at an NAV of $8 per ATGF share, his stated POC would be for 17,426.25 ATGF shares and thus at $8 per share.  His claim amount would be $139,410, but the Receiver now values Mr. Gibbs' claim at $1,287,619.98. Some claims are valued by the Receiver at the amount originally invested by certain ATGF investor claimants and other ATGF investors' claims are valued by the Receiver using their last statement submitted, which is inequitable.  Again, using the example of Mr. Gibbs' account, this shows a variation in value between the two (2) valuation methodologies of 924%.

---

[5] The Heitkoenigs disagree with any valuation of the Gibbs' claim based on purported investments during the period from 1985-1991.

In the Heitkoenigs' ATGF POC claim, they submitted their last five Amerindo statements of account (as directed by the Receiver's clear instructions in the POC). These Amerindo statements were dated June 30, 2000, June 30, 2001, December 31, 2002, May 31, 2002 and May 31, 2004. The ATGF NAV in the latest Amerindo statement received by the Heitkoenigs is $21.8052 and their 90,000 ATGF shares are valued by the Receiver at $1,962,468.

However, had the Heitkoenigs ignored the Receiver's instructions and included only Amerindo statements from the 1990's and included their June 30, 2000 Amerindo statement as their "last" Amerindo statement received, their 90,000 ATGF shares would be valued by the Receiver at an ATGF NAV of $114.1954 for a Heitkoenig ATGF claim of $10,277,586 – an increase of 524%. Given the wide variations in the nature and type of documentation supporting the various claims and the susceptibility of fraudulent claims, a uniform methodology should be used in valuing ATGF investments.

The Heitkoenigs respectfully submit that the only equitable valuation method is to use one ATGF NAV for all ATGF investor claimants.

      G.      **<u>Frank Harris Manchester or Essex, England (Gazes #14)</u>**

The only evidence submitted by this claimant is Cooperative Bank (UK) statements in support of a $50,000 claim. There was no Amerindo documentation provided whatsoever as evidence and this claim should be disallowed unless and until appropriate documentation is submitted.

      H.      **<u>James Charles (Gazes #10)</u>**

Claimant submitted only a January 25, 1992 letter from Defendant Vilar showing that $175,726.14 was received by Amerindo on December 20 (presumably 1991), more than a decade before Amerindo closed in May 2005. Clearly, this is insufficient documentation to validate a

bona fide claim. Mr. Charles should be required to submit a declaration or further documentation before he receives any interim distribution.

Indeed, the Defendants have claimed that Mr. Charles' claim is fraudulent and should be disallowed in its entirety. Based on Defendants' claim, Mr. Charles' claim merits further scrutiny. In addition, careful scrutiny should be given to the statements in, and phraseology of, Mr. Charles' "sworn" statement.

**WHEREFORE**, ALFRED C. HEITKONIG, ELNA HEITKOENIG, and MAAIKE HEITKOENIG respectfully submit that:

1. A uniform ATGF NAV should be used in valuing ATGF allowable claims;

2. All claimants should be required to submit a sworn declaration supporting their respective claims before any interim distribution is made to them;

3. The claims identified in Paragraph III hereof be disallowed for the reasons stated therein; and

4. The claims identified in Paragraph IV hereof be disallowed until such time as adequate documentation has been submitted to support the claim or a sworn explanation given as to why no such documentation exists.

Dated: New York, New York
March 25, 2014

    Respectfully Submitted.

    **LOEB & LOEB LLP**

    s/ Paula K. Colbath
    Paula K. Colbath
    345 Park Avenue
    New York, NY 10154
    Tel. 212.407.4905
    Fax: 212.937.3189
    E-mail: pcolbath@loeb.com

NY1258255.5