# EDWARD T. SWANSON
Attorney At Law
2071 N. Altadena Drive
Altadena, California 91001
Phone: (310) 283-1035     Fax: (866) 397-0114
etswanson@att.net

April 4, 2014

*Via Electronic Filing*

Honorable Richard J. Sullivan
Thurgood Marshall United States Courthouse
40 Foley Square
New York NY 10007

Ian J. Gazes, Receiver
Gazes LLC
151 Hudson Street
New York, New York 10013

      Re:    SEC v. Amerindo Investment Advisors Inc., et al.
               05 Civ. 5231 (RJS) ECF CASE:

               Statement Supporting Proof of Claim Submitted With Respect to Anna Gladkoff

Judge Sullivan and Mr. Gazes:

      The undersigned, on behalf of Lily Cates, hereby submits this statement in support of the modified proof of claim submitted with respect to Lily's deceased mother, Anna Gladkoff. This statement will set forth why the modified proof of claim should be approved, and respond to certain questions and accusations raised by Vivian Shevitz, the attorney for defendants Alberto Vilar and Gary Tanaka.

      Ms. Cates, on behalf of her deceased mother, has filed a modified claim for a total of $550,000, based on two investments made by Mrs. Gladkoff with Amerindo Investments. Mrs. Gladkoff had sold her home in late October of 2000. As a result of the sale, $364,695.12, representing the net proceeds of the sale, was wired to the Wells Fargo account of Anna Gladkoff on October 25, 2000. A copy of the Estimated Closing Statement dated October 24, 2000 is attached hereto as Attachment A, and a copy of the Wells Fargo wire transfer confirmation dated October 25, 2000 is attached hereto as Attachment B.

      On November 27, 2000, $300,000 of the net proceeds was delivered to Amerindo Investments by means of a check from the Wells Fargo account. A copy of the check previously was submitted with the proof of claim, and also is attached hereto for convenience as Attachment C. The check was made payable to Amerindo Investments, and in the memo section has written "Amerindo B2B Mutual Fund." The back of the check substantiates that the check was received and deposited, and in fact states: "FOR DEPOSIT ONLY TO THE ACCOUNT OF WITHIN

The Honorable Richard J. Sullivan
Ian J. Gazes, Receiver
April 4, 2014
Page 2 of 5

NAMED PAYEE IN ABSENCE OF ENDORSEMENT GUARANTEED." The back also has printed on it the date "11-29-00." This canceled check proves beyond any reasonable doubt that Anna Gladkoff invested $300,000 with Amerindo Investments no later than November 29, 2000.

There also is evidence that a second investment was made on behalf of Anna Gladkoff in late December of 2000 or early January of 2001 in the amount of $250,000. It is the belief of Ms. Cates that, after all expenses relating to her mother had been provided for, the savings of Anna Gladkoff was combined with the remaining proceeds from the sale of Mrs. Gladkoff's home to make this second investment. Ms. Cates has been unable to locate any canceled check or wire transfer confirmation with respect to this second investment. However, she was able to locate a handwritten note from Amerindo that states in hand-printed letters:

> "MRS. CATES, WE HAVE RECEIVED $250,000 TO INVEST IN THE NAME OF; MRS. ANNA P. GLADKOFF C/O LILY CATES (TRUSTEE) 135 WEST 70 STREET NEW YORK, NEW YORK. COPIES OF STATEMENTS WILL BE SENT TO HER ACCOUNTANTS BILL SHINE AND BOB CARILLO ON A QUATERLY BASIS. HEATHER."

The note is on Amerindo Investment Advisors Inc. note stationery, and in the upper right hand corner is printed "JOHANNA OLSHER" and then "Office of Alberto Vilar." A copy of the note is provided again for convenience as Attachment D.

Although this note is not as conclusive as the canceled check for the $300,000 first investment by Anna Gladkoff, we believe that it nevertheless provides a strong presumption that the second investment in the amount of $250,000 was made. As will be discussed below, the objections of Vivan Shevitz regarding the note are unpersuasive. Unless someone can provide factual evidence contradicting the second investment, we believe the Receiver and the Court should accept this note as sufficient evidence that the second investment was made.

Lily Cates previously sent a letter to the Receiver and the Court dated March 11, 2014 explaining the background to the investments. It is now more than thirteen years since these events, and Lily has limited memories of them. However, Lily is adamant that (1) the funds were not deposited into her Amerindo account, (2) the funds were not returned to her mother, and (3) the funds were not transferred to her Amerindo account. I will be submitting to the Receiver and the Court next week a declaration from Lily Cates, under penalty of perjury, with respect to these matters, and agreeing to return any funds received with respect to this claim to the extent it is subsequently demonstrated that Lily should not have received such funds.

Lily and I have attempted to locate any Amerindo statements relating to Anna Gladkoff without success. I have contacted Bill Shine, the accountant for Anna Gladkoff mentioned in the Amerindo note. Unfortunately, he has not been able to locate any documents relating to Anna, who died in 2002. Similarly, Maurice Kassimir, principal of Kassimir and Associates, who was an accountant for Lily Cates and her mother and who employed Bob Carrillo (the other person mentioned in the Amerindo note) at the time in question, also has been unable to locate any

The Honorable Richard J. Sullivan
Ian J. Gazes, Receiver
April 4, 2014
Page 3 of 5

documents relating to Anna Gladkoff. Maurice told me that his firm generally does not maintain documents more than seven years.

In addition, I have contacted Wells Fargo to obtain a copy of any checks or wire transfers into or out of Anna Gladkoff's Wells Fargo account during the period in question. I have been advised by Wells Fargo that it (like Mr. Kassimir) does not maintain files more than seven years. Consequently, Lily has no means to further substantiate her claims. However, the canceled check proves that Amerindo Investments received $300,000 from Anna Gladkoff in November 2000, and the Amerindo note provides presumptive proof of an additional $250,000 investment.

I have reviewed the Amerindo statements for Lily Cates for 2000, 2001 and 2002, and the Bear Stearns statements for that period in my possession relating to the Lily Cates account maintained by Amerindo at that time with Bear Stearns, and cannot find any evidence of a transfer to Lily's account during that period of $300,000, $250,000, or $550,000. In contrast, I did find a confirmation on an Amerindo statement in 2002 when Amerindo received $5 million from Lily for a purported SBIC investment.

With respect to the questions and accusations made by Vivian Shevitz, the attorney for Alberto Vilar and Gary Tanaka, with respect to the claim relating to the Anna Gladkoff claim, I have the following responses:

1. Authority of Lily Cates to Make This Claim

Ms. Shevitz objected in an email dated March 12, 2014 to the Court that Lily presented no papers to show her authorization to represent her mother's estate. Attached hereto as Attachment E is the First Codicil and Last Will and Testament of Anna Gladkoff. As indicated in the will, Lily Cates was her sole heir. Consequently, Lily has the authority to make this claim. I also am attaching, as Attachment F, a copy of a General Power of Attorney dated August 17, 2000 pursuant to which Anna Gladkoff granted a power of attorney to Lily.

2. Whether the Funds Later Were Transferred to Lily Cates

Ms. Shevitz quotes from government notes of a May 10, 2005 meeting with Ms. Cates that an investment made originally for Anna Gladkoff were "later transferred to Cates." I was present at that meeting and took my own extensive notes during the meeting of what was said. As I pointed out to the Court on March 14, 2014, my notes of the meeting are more detailed regarding what Lily said regarding her mother. My notes on this point are as follows:

> "only other investment was Tech D. That was her mom's $300K. <Tech D is the mutual fund>
> [Amerindo stood for America Indonesia A told her]
> 1st in mom's name then into L's name at suggestion of Kassimir
> comes separately every Q; not part of L's acct"

The Honorable Richard J. Sullivan
Ian J. Gazes, Receiver
April 4, 2014
Page 4 of 5

A copy of the first four pages of my notes of this meeting, which include all of my notes relating to Lily's mother, are attached as Attachment G.

The last "sentence" of my notes on this discussion is important: Lily told the government that the statements relating to the account came separately every quarter and <u>were not part of Lily's account</u>. This is substantiated by the fact that the Amerindo account statements to Lily do not reflect any addition of $300,000, $250,000 or $550,000 during the period in question, despite the fact that the $5 million addition by Lily in 2002 is reflected in the Amerindo statements. Although Lily stated that the accounts first were in the name of her mother and later in Lily's name, this could well be a reference to accounts becoming "Anna Gladkoff c/o Lily Cates" or "Anna Gladkoff and Lily Cates." Regardless, the important fact is that Lily testified at that time that the statements relating to her mother's investments came separately, and were not part of Lily's account.

3. The B2B Fund Was Given Away After Defendants' Arrest to Munder Capital.

This claim by Ms. Shevitz relates to the $300,000 that was proven to be invested with Amerindo Investments by virtue of a check on which the memo stated "B2B Mutual Fund." It is important to note that Ms. Shevitz does not deny the investment. Ms. Shevitz merely claims that the fund was merged into Amerindo Technology Fund, which fund was given away upon defendants' arrest to Munder Capital. Whether the B2B Fund was merged into Amerindo Technology Fund or given away to Munder Capital should be irrelevant. The funds were invested with Amerindo Technology, and no funds have been returned. Consequently, Lily Cates, as the sole heir of Anna Gladkoff, should be entitled to these funds. If Munder Capital has any assets that equitably should be returned to Amerindo, the Receiver is the appropriate person to seek such return.

4. The Amerindo Note From "Heather" Suggests a "Fraud Upon the Court" by Lily Cates

Ms. Shevitz, in support of her suggestion of fraud by Lily Cates (the person who first reported Alberto Vilar and Gary Tanaka to the government), provides a letter from Johannah Olsher and a declaration from Heather Tardif relating to the Amerindo note. Johannah Olsher, whose Amerindo note paper was used to acknowledge receipt of the second investment of $250,000, states in pertinent part that "No person ever 'worked under me' named Heather," "I do not remember anyone named 'Heather' who worked at Amerindo," and "It is unlikely a person working for Amerindo named Heather would acknowledge receipt of personal investment funds destined for Amerindo on my personal notepad sheet instead of on official company stationery which was accessible to administrative staff." Heather Tardif declares in pertinent part that she worked for Amerindo in New York from approximately October 1999 through August 2004, that to her knowledge there were no other employees named Heather working there at any time, that she was Senior Client Service/Marketing Associate, and that she never received $250,000 from Lily Cates while employed at Amerindo and did not writ the handwritten note.

The Honorable Richard J. Sullivan
Ian J. Gazes, Receiver
April 4, 2014
Page 5 of 5

It is interesting that Johannah Olsher does not remember anyone named Heather who worked at Amerindo, when Heather Tardif states that she worked there from October 1999 through August 2004 as Senior Client Service/Marketing Associate. I do not doubt Johannah's sincerity, but this shows what happens to memories regarding events that occurred more than 13 years ago. It also should be noted that Ms. Shevitz volunteered in her email to the Court on March 12, 2014 that "Heather was a substitute receptionist in the US office…." So, we have Johannah not remembering any Heather who worked at Amerindo, Heather Tardif stating that she worked there for over three years, including the time in question, and one person saying there was a substitute receptionist named Heather at Amerindo. Perhaps there WAS another Heather in addition to Heather Tardif – possibly a substitute receptionist - who was told to write a quick note to Lily acknowledging receipt by Amerindo (not by the writer of the note) of $250,000, and that person happened to use the notepad of Johanna Olsher to write the note. This is just speculation, but it certainly sounds more reasonable than Ms. Shevitz's suggestion that Lily took an Amerindo notepad and then created a bogus note confirming the receipt of $250,000. What we know is that there is a note from a "Heather" on an Amerindo notepad acknowledging $250,000 in the name of Anna P. Gladkoff c/o Lily Cates (Trustee). The contradictory statements by Johannah Olsher, Heather Tardif, and Vivian Shevitz regarding whether a "Heather" worked at Amerindo at the time, whether full-time or part-time, do not provide any persuasive contradiction to the acknowledgement. We therefore urge the Receiver and the Court to approve this second investment by Anna Gladkoff in the amount of $250,000.

In conclusion, we respectfully submit that Lily Cates, on behalf of her deceased mother, (1) has proven beyond any reasonable doubt that an investment was made with Amerindo by Anna Gladkoff in the amount of $300,000 in November 2000, and (2) has provided persuasive evidence of a second investment of $250,000. Consequently, we urge the approval of a claim relating to Anna Gladkoff. We believe the amount of the approved claim should be $550,000 plus profits or interest from the date of investment. If, however, the Receiver and the Court are not sufficiently persuaded regarding the second investment, the claim relating to Anna Gladkoff nevertheless should be approved for $300,000, plus profits or interest from the date of investment. As previously noted, we will provide the Receiver and the Court with a statement from Lily Cates, under penalty of perjury, with respect to this modified claim and agreeing to return any amount received by Lily with respect to such claim should it ever be demonstrated that she was not entitled to such amount.

Very truly yours,

Edward T. Swanson

Enclosures
cc: Ms. Lily Cates