Vivian Shevitz
Attorney at Law
46 Truesdale Lake Drive
South Salem, New York 10590
914-763-2122
FAX 888 859 0158
Vivian@shevitzlaw.com

April 5, 2014

Hon. Richard J. Sullivan
United States District Judge
Southern District of New York
40 Centre Street
New York, New York 10007

      Re:  SEC v. Amerindo   05 cv 5231 (RJS)
          United States v. Vilar  05cr621 (RJS)
          -Lily Cates' claim for $250,000 – Reply to Swanson letter (DOC 419)

Dear Judge Sullivan:

     I write in response to the April 4, 2014 letter of Edward Swanson (DOC 419, 05 cv 5231) responding to my letter of March 31, 2014 concerning the fraudulent claim interposed by Lily Cates.  Though the only "Heather" at Amerindo did not write that note "accepting" an otherwise-undocumented "deposit" of a quarter of a million dollars in an unidentified Amerindo account, and though Johannah Olsher asserts that her notepad was not available to anyone at Amerindo (except Ms. Cates, who enjoyed unlimited access to Amerindo's offices with a security pass) and would not have been used to document such a deposit, Mr. Swanson speculates: "Perhaps there WAS another Heather in addition to Heather Tardif- possibly a substitute receptionist- who was told to write a quick note to Lily acknowledging receipt by Arnerindo (not by the writer of the note) of $250,000,and that person happened to use the notepad of Johanna Olsher to write the note."

     Mr. Swanson acknowledges that "This is just speculation."  But, he says, "it certainly sounds more reasonable than Ms. Shevitz's suggestion that Lily took an Amerindo notepad and then created a bogus note confirming the receipt of $250,000."

     Since there is no *other* documentation evidencing this transaction, the suggestion that Lily Cates created a forged document is, we suggest, the "more reasonable" explanation.  It is more than questionable that "Heather" would have signed her name to an important receipt of a quarter million dollar investment using only her first name and in block letters.  There is a serious issue of fact that requires a hearing and, we submit, an Order requiring Ms. Cates to submit exemplars of her block printing.   (We have many examples of Ms. Cates' cursive writing in the record, which suggest the formation of letters consistent with a conclusion that she wrote the "Heather" note in hand-printing

as well.  There are, however, few examples of Ms. Cates' *printing*, and we suggest that there may have been a conscious effort to disguise "the note.")

A hearing is especially justified because Mr. Swanson's letter raises other issues as well.  Specifically, Mr. Swanson's own handwritten notes of the May 10 2005 interview of Ms. Cates by the US Attorney and the SEC, show that there was discussion of a $300,000 investment by her mother, but there is nothing to suggest this additional $250,000 investment as well.

Mr. Swanson admits that there is no other documentation for this late claim, never raised previously. For instance, he does not submit any Estate tax return that (if it existed) would support the existence of a $250,000 investment in some Amerindo account. Rather, Mr. Swanson states that "Lily and I" "attempted to locate any Amerindo statements" and that the accountant for Anna Gladkoff could not locate any such statements.  "Similarly," Mr. Swanson write, "Maurice Kassimir, principal of Kassimir and Associates, the accountant "for Lily Cates and her mother and who employed Bob Carrillo (the other person mentioned in the Amerindo note) at the time in question, also has been unable to locate any documents relating to Anna Gladkoff."

Mr. Swanson is, in fact, a witness to the fact that Lily Cates did *not* invest this $250,000 as she now claims.  He writes in his newest letter that according to his notes of the May 10, 2005 interview, the "only other investment was Tech D.  That was her mom's $300K ... Tech D is the mutual fund ....1st in mom's name then into L's name at suggestion of Kassimir."

Maurice Kassimir, who testified at trial about his dealings on Cates' behalf with Alberto Vilar, is also a fact witness concerning the alleged investments Cates' claim on behalf of her mother's estate.  This is a disturbing development for a number of reasons.

First, when the receiver, Ian Gazes, hired other professionals, specifically a firm called CBIZ,[1] he informed us (after the fact) that Maurice Kassimir works with CBIZ.  Though I objected to this apparent conflict, Mr. Gazes, and CBIZ, dismissed the objection without any further input, that because they had not known that Kassimir had been a trial witness, the objection should be disregarded.   Now, Mr. Kassimir is a fact witness.  An undated letter from CBIZ is attached.

Second, in 1995, according to an unoffered government exhibit, UGX 200,  Lily Cates wrote to Amerindo in Panama, causing a $971,000.00 redemption to be wired to "Spielman & Kassimir p.c."  This was a third party transfer and may have gone unreported to the Internal Revenue Service.  UGX 200 is attached.

---

[1] According to the receiver's second report:  "On October 2, 2013, the Court entered an order authorizing and empowering the Receiver to retain CBIZ Accounting Tax and Advisory of New York, LLC and CBIZ Accounting Tax and Advisory of San Diego, LLC as financial advisor to the Receiver."

Third, this letter from Cates (not offered by the government at trial but among its exhibits) belies her testimony (and the government's theory) that she was "misled" about the fact that her account was with Amerindo Panama. Cates was led to testify at trial that she was not told anything about Panama. (Tr.2075-76) and the government made an accusation that she did not know that her account was with the offshore corporation.[2] UGX 200, by which she accomplished a transfer of $971,000 to Maurice Kassimir's firm (see Amerindo Panama client confirm, VSA-87 Appeal 10-521, attached), shows that she knew that her account was with the Panama corporation.

The showing that Lily Cates submitted a fraudulent claim to this Court for a $250,000 "investment" that is not only undocumented, but appears to have been fabricated, calls for a hearing in light not only of her late claim for over a half million dollars, but also the SEC's and DOJ's reliance on Lily Cates to start, and prosecute, these cases. For these reasons, the Court should hold a hearing on Lily Cates' apparently-fraudulent claim. It should require her to provide exemplars of her hand-printing, so that it can be compared to the "Heather note." Mr. Swanson's speculation is one thing. The truth is another.

                                    Very truly yours,

                                    /s/
                                  Vivian Shevitz

Attached:  CBIZ letter disclaiming Kassimir conflict
          UGX 200, a letter from Cates to Amerindo in Panama, directing
            a $971,000 wire transfer to Kassimir's firm.
          Client confirm showing $971,000 was redeemed by Lily Cates from Panama Corp.

---

[2] The original SEC case complaint was asserted against Amerindo U.S. and the individual defendants, not against any of the offshore corporations. It alleged that Amerindo U.S. was the investment advisor to Ms. Cates. Only after the SEC Monitor found that Amerindo U.S. was "clean" and that Lily Cates was *not* a client of the U.S. firm (as all U.S. clients had gotten their money back), did the SEC file an amended complaint purporting to name the offshore corporations on the asserted ground that, even if Lily Cates *was not* a client of the U.S. entity, she "believed" she was. Transcript, December 9, 2005, SEC v. Amerindo, 05 cv 5231, p.17-18 (Ms. Lackey: There is clearly one category of clients where there seems to be some agreement about who they are in terms of institutional clients. ...[T]here is another class of clients, such as LC, and if you look at our amended complaint you will see allegations about other ambiguities about who may or may not be clients of Amerindo U.S. ... I think that issue by no means has been resolved by the monitor's report. ... there is still a class of people out there who believe that they are clients of Amerindo U.S., reasonably believe that. It is still uncertain.")  Notably, neither of the individual defendants was present at this SEC case conference – only lawyers.



CBIZ MHM, LLC
1065 Avenue of the Americas
New York, NY 10018 ▪ www.cbiz.com
Ph: 212.790.5700 ▪ F: 212.398.0267

Ian J. Gazes, Esq.
Receiver for Amerindo Investment Advisors Inc. *et. al.*
Gazes LLC
151 Hudson Street
New York, New York 10013

Re: SEC v. Amerindo Investment Advisors Inc. et al.

Dear Mr. Gazes:

In response to Ms. Shevitz letter dated October 3, 2013, I affirmatively state that in the immediate matter referenced above, CBIZ had and has no relationship with Mr. Kassimir and has never had any substantive discussions regarding Amerindo. I am now told, and never up to this point did I know, that Mr. Kassimir did testify at the trial in 2008 in his capacity as a representative of his client, Lily Cates, and frankly there would have been no reason for Mr. Kassimir to reveal that information to me. Mr. Kassimir now advises that he did testify at the trial regarding a dinner conversation he had with the defendant and the defendant's state of mind at that dinner. As stated in my previous disclosure …

> "Maurice Kassimir has an arrangement with CBIZ where he receives an annual salary of $15,000 in connection with the tax compliance for client's gifts and estates. Further, Mr. Kassimir is the owner and President of Maurice Kassimir & Associates, P.C. ("MKA"). MKA entered into a formal sublease arrangement with CBIZ effective January 1, 2009[1]. Neither Mr. Kassimir nor his firm has any connection with the Receiver in the Amerindo case or any case in which Ian Gazes has engaged CBIZ.
>
> Mr. Kassimir and his staff will not be involved in the CBIZ engagement related to Amerindo in any capacity and CBIZ will not be discussing or sharing any information with Mr. Kassimir or his law firm. Further, CBIZ and Mr. Kassimir have never discussed the Amerindo cases or related claims with CBIZ or the Receiver except in regard to this disclosure."

The services provided by Mr. Kassimir to Ms. Cates are totally unrelated and have nothing to do with Mr. Kassimir's arrangement with CBIZ. Further, CBIZ is not privy to Mr. Kassimir's client list and his services unrelated to estate related matters we refer to him.

---

[1] CBIZ acquired Mahoney Cohen & Company, CPA, P.C. as of January 1, 2009. Upon information and belief, Mahoney Cohen & Company, CPA, P.C. had the same arrangement with Mr. Kassimir.



CBIZ stands by its initial disclosure that the prior relationship between Mr. Kassimir and Ms. Cates including the testimony and the Amerindo entities is not a conflict. The case was never discussed prior to the Receiver proposing to engage CBIZ and will not be discussed between the professionals servicing the Receiver and Mr. Kassimir. Until receipt of Ms. Shevitz letter we had no knowledge of Mr. Kassimir's testimony.

Regards,
CBIZ MHM, LLC

Esther DuVal

November 1, 1995

Amerindo Investment Advisors, Inc.
Sucre Building
Calle 48 Este Bella Vista
P.O.Box 5168 Panama 5,
Panama

Dear Renata,

Following our telephone conversation, I confirm that I wish to redeem some of my holdings in Amerindo International Venture Fund I to the value of $971,000.

Please wire the funds to:

>           Republic National Bank of New York
>           415 Madison Avenue
>           New York, NY 10017

ABA:             021004823

A/C Name:        Spielman & Kassimir p.c.

Escrow A/C:      03910008290B

Amount:          $971,000.00

Please ensure that the funds are at the above bank account not later than Monday mid-day, November 27, 1995.

Yours sincerely,


Lily Cates



GOVERNMENT EXHIBIT
200
05 Cr. 621 (RJS)   (ID)

# AMERINDO INVESTMENT ADVISORS, INC.

SUCRE BUILDING, CALLE 48 ESTE
BELLA VISTA, P.O. BOX 5168, PANAMA 5, PANAMA
TEL: (507) 264-9673 FAX: (507) 264-9667

## CLIENT CONFIRMATION

We have today made entry to your Account as indicated below.
See below explanations of symbols in 'Type of Entry' column.

| BOT/SOLD | DATE | DESCRIPTION | CLASS | TYPE OF ENTRY | AMOUNT | ACCOUNT |
|---|---|---|---|---|---|---|
| SLD | 11.15.95 | REDEMPTION OF 789.18 SHARES OF AMERINDO INTERNATIONAL VENTURE FUND I @ $1,230.39 PER SHARE | D | RED | $971,000.00 | D487-D1C-166 |

MS. LILY CATES
135 WEST 70TH STREET, APT. 10E
NEW YORK, NY 10023

MAT Maturity         RED Redemption
CK  Check            CJE Correcting Entry
DIV Dividend         JE  Journal Entry
TAX Taxes Withheld   INT Interest
EXI Security Exchange TFD Funds Transfer
SUB Subscription    FRS Fractional Shares

LC-00466