

2425 Post Road, Suite 205
Southport, CT 06890
(203) 254-1900 Office
(203) 222-4833 Fax
www.bbgllp.com

Patrick W. Begos
Christopher G. Brown
Daniel Green

June 9, 2014

**By ECF and Email**
Hon. Richard J. Sullivan
United States District Court
500 Pearl Street
New York, NY 10007

**Re: SEC v. Amerindo (1:05-cv-05231-RJS)**

Dear Judge Sullivan:

This firm represents Lisa and Debra Mayer. I write to request the Court to certify for interlocutory appeal, pursuant to 28 U.S.C. § 1292(b), the portion of the May 6, 2014 Memorandum and Order ("Order") that ruled on the investors' objections to the receiver's amended motion to fix investors' claims and approve an interim distribution.

For reasons which I will discuss further below, it may be most appropriate to delay consideration of this motion until after it is determined whether any of the defendants, against whom final judgments have been entered, file an appeal of the Order (they have until July 5, 2014 to do so). However, because there is case law suggesting that a delay of two months in requesting certification can support denial of the request, I consider it prudent to make this request now. *See Martens v. Smith Barney, Inc.*, 238 F. Supp. 2d 596, 600 (S.D.N.Y. 2002) ("the plaintiffs' motion for an interlocutory appeal should be denied on the basis of untimeliness alone").

**The Mayers Have Standing to Appeal**

The appealability of the Order is somewhat complicated. First, I note that the Mayers have standing to appeal as a non-party. *Official Committee of Unsecured Creditors of Worldcom, Inc. v. SEC*, 467 F.3d 73, 77 (2d Cir. 2006) ("Because the Committee is composed of creditors who suffered economic injuries that are fairly traceable to WorldCom's violations of the securities laws, and because it seeks financial compensation to redress those losses, the Committee meets the requirements for Article III standing [to appeal]").

**The Appealability of the Order**

It appears clear that Vilar, Tanaka and the Entity Defendants can appeal the Order as of right. The Court entered final judgments against them following issuance of the Order, which presumably would give them the right to appeal under Fed. R. Civ. P. 54, even though all of the issues in this action have not been resolved. Alternately, the Entity Defendants, against whom


the Court issued a permanent injunction in the Order, presumably can appeal under 28 U.S.C. § 1292(a)(1).

Regarding the Mayers, two routes for appealing an interlocutory order appear, on the surface, to be potentially applicable. But further evaluation shows that they likely are not.

The Mayers might be able to appeal as of right under 28 U.S.C. § 1292(a)(2), to the extent the Order is an interlocutory order "appointing receivers, or refusing orders to wind up receiverships or to take steps to accomplish the purposes thereof, such as directing sales or other disposals of property[.]" However, the Second Circuit has held that this provision "seems to have been properly read as directed only to situations in which an application has been made by an interested party to have the receivership completed by sales or other dispositions and the district court has refused so to order." *IIT v. Vencap, Ltd.*, 519 F.2d 1001, 1020 (2d Cir. 1975), *abrogated on other grounds by Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 130 S. Ct. 2869, 177 L. Ed. 2d 535 (2010); *see also S.E.C. v. Olins*, 541 F. App'x 48, 50 (2d Cir. 2013) ("In *IIT v. Vencap, Ltd.*, however, we rejected this very argument, holding that § 1292(a)(2) did not provide jurisdiction over the appeal of an order permitting disbursement of receivership funds").

The Mayers also might be able to appeal the Order under the collateral order doctrine, because it finally disposes of a substantial portion of the funds managed by the receiver. "The collateral order doctrine permits appeals of interlocutory orders only when three conditions are satisfied: that an order [1] conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3] be effectively unreviewable on appeal from a final judgment." *S.E.C. v. Olins*, 541 F. App'x at 51 (quotation marks omitted). However, *Olins* observed that the court "previously held that the collateral order doctrine does not permit appeal of the scores of discretionary administrative orders a district court must make in supervising its receiver, even in cases where a particular order does finally dispose of certain receivership funds[.]" *Id.* (quotation marks omitted). Whether this description applies to the Order, or whether the Order is something more significant, is a matter about which opinions might differ.

Though the Mayers likely will be pursuing appeals under 28 U.S.C. § 1292(a)(2) and the collateral order doctrine, I believe it most prudent also to seek certification from this Court.

**Certification Under 28 U.S.C. § 1292(b)**

The Court has the authority, under 28 U.S.C. § 1292(b), to certify the Order for immediate appeal. I will discuss the factors involved in that evaluation below, but one factor that a number of courts have found significant is whether an appeal as of right is already pending. Such a situation removes any concern about conducting "piecemeal litigation" through interlocutory appeals. *Figueiredo Ferraz Consultoria E Engenharia de Projecto LTDA. v. Republic of Peru*, 2009 WL 5177977, at *2 (S.D.N.Y. Dec. 15, 2009) ("Although interlocutory appeals are normally disfavored because they create piecemeal litigation, that dilemma is not present in this case because Defendants have appealed the FSIA ... determinations as of right [citation omitted]"); *Atlantica Holdings, Inc. v. Sovereign Wealth Fund Samruk-Kazyna JSC*, 2014 WL 1881075, *2 (S.D.N.Y. May 9, 2014) (where part of order already is appealed, "the salutary objective of avoiding



piecemeal review would be aided by allowing an immediate appeal of other issues decided in the same order" [quotation marks omitted]). It is for this reason that I suggest that the Court may desire to defer a decision on certification until it is determined whether Vilar, Tanaka or the Entity Defendants will appeal.

28 U.S.C. § 1292(b) sets forth three questions the Court should consider in determining whether to certify an interlocutory appeal: (1) whether the "order involves a controlling question of law[;]" (2) whether "there is substantial ground for difference of opinion[;]" and (3) whether "an immediate appeal from the order may materially advance the ultimate termination of the litigation." "The three factors should be viewed together as the statutory equivalent of a direction to consider the probable gains and losses of immediate appeal." *Figueiredo*, 2009 WL 5177977, at *2 (*quoting* 16 Wright, Miller & Cooper, *Federal Practice & Procedure* § 3930 at 428 (2009)).

The first two elements are related, and it is appropriate to consider them together. In *Atlantica Holdings*, 2014 WL 1881075, *1, for example, the court observed:

> Whether the S–K Fund satisfies the first two prongs of that test is a close question. But in view of (1) the fact that the issue addressed by the Court in its Opinion and Order … would, at a minimum, importantly affect the conduct of this action, and (2) the somewhat unsettled and evolving nature of the law, … the Court concludes that it does. [quotation marks and citations omitted]

There are two controlling questions of law in the portion of the Order the Mayers seek to appeal, about which there is substantial ground for difference of opinion: whether the Court is bound by the Mayers' state court judgments in determining the value of their claim; and whether the Court may order equal calculation and distribution of claims of GFRDA and ATGF investors merely because assets were commingled and investors were defrauded, without regard to other differences between those two groups.

The Mayers had argued that full-faith-and-credit required the receiver and the Court to value the Mayers' claim in the amount determined by their judgments. The Court rejected this objection. Resolution of this issue will determine the Mayers' share of the funds available ultimately to be distributed and will, in turn, affect the relative amounts to be distributed to all other investors. The Order focused on the question whether the Mayers' judgments required that they be given priority in the distribution. None of the cases cited by the Court in the Order addressed the question whether a receiver or the Court can recalculate the amount owed to a fraud victim whose loss was reduced to judgment before the receiver was appointed. One of the cases the Court cited, *Stuhler v. State*, 127 Misc.2d 390, 393, 485 N.Y.S.2d 957, 959 (Sup. Ct.), *aff'd*, 493 N.Y.S.2d 70 (App. Div. 1985), observed that "[i]t is not disputed that petitioners were defrauded of [the amounts of their judgments]…" Additionally, the Mayers' intended appeal would raise the question whether the Court's prior rulings (that the money given to the receiver's control belonged to Vilar and Tanaka for purposes of issuing an order of forfeiture of substitute assets), affects the Mayers' rights as judgment creditors. The Mayers contend that the Court's prior ruling precludes the Court's later finding that the judgment debtors, as fraudsters, had no interest in those funds. *See* Order, p. 18 ("by seeking to execute against the Receiver's assets, the Mayers



assume those assets belong to Defendants. In truth, however, the assets rightfully belong to investors"). To my knowledge, these are issues of first impression in the Second Circuit.

Regarding the second controlling question, the Court found that GFRDA and ATGF investors should be treated the same (for calculation of their claims and distribution of money), solely because funds were commingled and because all were defrauded. Order, p. 17. But the Second Circuit has suggested that this is not enough. *Commodity Futures Trading Comm'n v. Walsh*, 712 F.3d 735, 750 (2d Cir. 2013) ("the record does not support the 3M Group's characterization of the district court as adopting a principle that all investors are similarly situated 'merely' when all have been defrauded"); s*ee also, Chemical Bank New York Trust Co. v. Kheel*, 369 F.2d 845, 848 (2d Cir.1966) (Friendly, J., concurring) ("equality among creditors who have lawfully bargained for different treatment is not equity but its opposite"). Here, there is no dispute that GFRDA investors sought the safety of guarantees and a fixed return, while ATGF investors sought speculation (among other differences). The Mayers seek to contend on appeal that such differences require different methods of calculating claims and ordering distributions.

An immediate appeal will advance the ultimate termination of the litigation. The Court's rulings on the controlling questions above will affect future distributions. These issues certainly will arise again, and need to be resolved again, when any subsequent distribution is considered. Though the Mayer recognize that the Court would have the authority to reach a different conclusion on those questions in a subsequent distribution, the language of the Order strongly suggests that the Court has finally determined that the Mayers' judgments will not impact the distributions and that GFRDA and ATGF investors are situated similarly enough to warrant equal treatment. If an appeal of these issues must await an order approving a final distribution, then that final distribution might be delayed while the appeal is prosecuted. Such a delay would prejudice all victims and investors, including the Mayers.

It is clear that a final distribution will not be ordered for some time. Among other things, the receiver has until July 25, 2014 to submit a status report regarding his progress in valuing assets and to propose a timeline for future distributions. Doc. No. 437. Addressing these controlling questions now is therefore unlikely to delay any future distribution.

Accordingly the Mayers respectfully request that the Court certify the Order for interlocutory appeal.

Respectfully submitted,

S/Patrick W. Begos

cc:    Distribution List (by email)