# ALFRED HEITKONIG
PO BOX 9024038  SAN JUAN, PR  00902   TEL: 917 721 2300   EMAIL: alfredo@ahfs.biz

August 28, 2014

Hon. Richard J. Sullivan
United States District Judge
Southern District of New York
Thurgood Marshall US Courthouse
40 Foley Square
New York, NY 10007

Re: <u>Comments to Receiver's Third Status Report</u>

Dear Judge Sullivan,

I am an Amerindo investor claimant and write to bring to the Court's attention several points in response to the Receiver's Third Status Report, comments to which are due by August 29th.

In his report, the Receiver estimates available funds for distribution of $57 million. This is welcome news, as there presently are approximately $30 million in approved claims for distribution.  Thus, the Amerindo investor claimants may receive a distribution in respect of profit above the return of principal (it should be noted, however, that in the Heitkoenig account, our approved principal amount remains understated by at least $824,331.83). Unfortunately, monies from UK Benefit Scheme and similar accounts, approximately valued at $22 million, have inexplicably not been included in the "Available Funds" for distribution calculations.  This is a major issue.

As you will recall, in the Receiver's Amended Motion that set forth the methodology for claim valuation and distribution, the Court, the SEC and the Receiver found that due to the commingling of accounts, monies and other fraudulent behavior by Vilar, Tanaka and Amerindo, the ATGF investment vehicle was in fact a sham and instead opted an ATGF claim valuation and interim distribution approach based on all investor claimants' amounts originally invested – rather than an equal per share price for all ATGF investor claimants.

Since Vilar, Tanaka and Amerindo commingled monies and perpetrated various fraudulent acts, it is therefore consistent and correct to take the position that the UK Benefit Scheme and similar accounts were the result of the very same commingling and fraudulent acts perpetrated by Vilar, Tanaka and Amerindo. It is illogical to say that ATGF was the result of the stated commingling and fraudulent acts of Vilar, Tanaka and Amerindo but that the UK Benefit Scheme (and other similar accounts/funds) were not. It is therefore my position that the UK Benefit Scheme funds (and similar account funds) must be made available for interim distributions to the Amerindo investor claimants. I therefore object and oppose that the UK Benefit Scheme (and similar monies/funds) are not included in the "Available Funds" to the Amerindo investor claimants and subsequent distributions.

The Third Status report also shows that *"On July 19, 2013, the Receiver filed his First Status Report which the Court "so ordered" on July 30, 2013 [ECF Doc. Nos. 296 and 297]. Among other things, the Report established (a) August 6, 2013 as the deadline for the Receiver to publish notice of the proof of claims bar date and (b) September 20, 2013 as the bar date to file proofs of claim."*

I have no objection to the new claims presented in the Receiver's Third Status Report (well beyond the 9/20/13 published deadline), as long as these claims are fully investigated and that the inequities in my claim can be re-evaluated now as well.

The Receiver's amended methodology *"gives GFRDA investors, who believed they were investing in relatively secure investments, the benefit of accrued interest thru the date of their last statement"*.

The GFRDA portion of our claim is approved for interim distribution in the amount of $3,296,897.46. Our GFRDA interest rate shown on my family's last Amerindo statement is only 5%. We were promised and agreed to a 15% GFRDA interest rate. This agreed 15% rate was unilaterally reduced by Amerindo without prior notice to us or our consent; I complained to Amerindo, yet Amerindo ignored my complaints and redemption requests. Certainly, Amerindo had no right to refuse to return our GFRDA funds and also lower the pre-agreed interest rate. Since our documentation clearly shows that Amerindo refused to return our monies, the pre-agreed interest rate should be applicable to our account.

This unilateral interest rate reduction was in direct contradiction to the GFRDA Offering Circular and Vilar's promises to us in his 9/20/91 letter (attached to our Proof of Claim), in which Vilar and Amerindo promise that *"[I] personally feel that the most important thing in making your decision (to invest in Amerindo GFRDA) is that you feel sufficiently confident about your ability to redeem this money and interest when you require it."* In addition, the SEC's Statement of Undisputed Material Facts (filed in case 05 Civ. 5231 RJS) states: *"Vilar and Tanaka failed to redeem certain investors' investments upon their request, discouraged investors from redeeming their investments..."*. In our case, Amerindo did not only discourage us from redeeming our GFRDA investment, they refused to return it to us and reduced our interest rate to which we should be compensated.

I rejected Amerindo's reduction of our 15% GFRDA interest rate and demanded the return of our principal. Letters evidencing this are attached to our Proof of Claim. Our GFRDA account is understated in our Amerindo statements of account and remains understated in our Receiver's Approved Claim.

Upon review of my correspondence to Amerindo, I note that I began to voice opposition when Amerindo unilaterally dropped the interest rate to 13%. I began demanding return of my family's principal when Amerindo unilaterally dropped our GFRDA interest rate to 11%. Since my documentary evidence only documents written complaints when Amerindo unilaterally dropped my family's GFRDA interest to 11%, and to eliminate any doubt whatsoever (although our GFRDA claim should be for 15%), I propose that our GFRDA claim should be approved at 11% interest.

2

I submit that our approved GFRDA claim is understated at $3,296,897.37 and must be increased by $824,221.83 (i.e., interest drops no lower than 11%) to properly account for our re-invested principal.

Many claims have already been approved for interim distributions with unclear and incomplete documentation. My family's claim is properly documented and clearly supported by facts as presented in our Proof of Claim and should be approved to include the additional $824,221.83 in our GFRDA account.

One of the claims specified in the Receiver's Third Status Report is for Maria Dichov in the amount of $1,567,528.62. I believe that Ms. Dichov may have been married to Mr. Vilar in the 1980's and early 1990's. Perhaps I am mistaken, nevertheless the claim raised another issue of another wife for me: Mrs. Renata Tanaka.

Ms. Tanaka was the Comptroller of Amerindo. Vilar, Tanaka and Amerindo defrauded the universe of Amerindo investors and perpetrated numerous acts of fraud. There is no doubt of these facts as they stand convicted of same. I respectfully submit that these fraudulent acts and activities could not have occurred without the involvement and intervention of the Comptroller of Amerindo, Ms. Renata Tanaka. She has never been interviewed or deposed. England is one of the closest allies of the USA. Surely, an investigation of Mrs. Tanaka is warranted and long overdue.

I propose that the door remain open to investigate further and that funds be made available to the Receiver for such purpose; that the Receiver be empowered to exhaust any and all leads for funds that may be due to Amerindo investor claimants and made available for subsequent interim distribution. I cannot imagine any one individual who would be more important to investigate than Ms. Tanaka. I also cannot imagine that any Amerindo investor claimant would be opposed to such investigation.

There exist other important collection avenues in need of investigation. For example, Vilar gave millions of dollars to the Metropolitan Opera precisely at the time the fraud was occurring; there were even personal donations of ATGF shares to the MET by Vilar, which could have easily been part of this fraud. Did Vilar even own shares of ATGF? Why did he not then file Proofs of Claim? I would like to see monies set aside for such investigations and to also fully investigate any claims with unclear or incomplete documentation.

I appreciate your Honor considering the foregoing issues.

Respectfully submitted,

Alfred Heitkonig