**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** <br><br> Plaintiff, <br><br> v. <br><br> **AMERINDO INVESTMENT ADVISORS INC.**, *et al.*, <br><br> Defendants. | **05 Civ. 5231 (RJS)** <br><br> **ECF CASE** |

### RECEIVER'S POSITION IN RESPONSE TO ADDITIONAL INVESTOR CLAIMS

Ian J. Gazes, the Court appointed receiver (the "Receiver") in the above-captioned case, submits this position in response to Additional Claims (herein defined), and respectfully states as follows:

### I. BACKGROUND

1. On October 17, 2012, the Court entered an order appointing the Receiver and empowered him "to investigate and determine the value of investor assets that have been seized or frozen pursuant to the forfeiture order in the [related] criminal case, to consider what actions can and should be taken to avoid dissipation of those assets, and to submit a report to the Court regarding his findings and recommendations. Upon receiving his report, the Court will determine whether Mr. Gazes should be empowered to take broader action, such as managing the assets and beginning a claims process for investors" [ECF Doc. No. 267].

2. On May 30, 2013, the Receiver filed his Initial Report and Recommendations ("R&R") [ECF Doc. No. 283].

3. On June 20, 2013, the Court signed two orders adopting the R&R and directing the Receiver to "begin the process of establishing a distribution fund and a claims and interim distribution procedure" [ECF Doc. Nos.290 and 291].

4. On July 19, 2013, the Receiver filed his First Status Report which the Court "so ordered" on July 30, 2013 [ECF Doc. Nos. 296 and 297]. Among other things, the Report established (a) August 6, 2013 as the deadline for the Receiver to publish notice of the proof of claims bar date and (b) September 20, 2013 as the bar date to file proofs of claim.

5. On October 4, 2013, the Receiver filed his Second Status Report [ECF Doc. No. 314]. The Court "so-ordered" the Receiver's Second Status Report and adopted the Receiver's proposals set forth therein on October 28, 2013 [ECF Doc. No. 322].

6. On February 8, 2014, the Receiver moved the Court for an order (a) Fixing Investor Claims and (b) Authorizing the Receiver to Make an Interim Distribution (the "Distribution Motion") [ECF Doc. No. 355].

7. On February 24, 2014, the Receiver filed an amended motion for an order (a) Fixing Investor Claims and (b) Authorizing the Receiver to Make an Interim Distribution (the "Amended Distribution Motion") [ECF Doc. No. 370].

8. On April 18, 2014, the Receiver filed an affidavit which, among other things, further revised the amounts of his proposed first interim distribution as set forth in the Amended Distribution Motion [ECF Doc. No. 422].

9. On May 6, 2014 the Court entered a memorandum and order (the "May 6th Order") which, *inter alia*, ordered that:

> The Receiver shall distribute funds according to the schedule set forth in the Revised Interim Distribution Schedule. Before distributing any funds to a claimant, however, the Receiver must obtain an affidavit from that

claimant swearing to the accuracy of the claim and statements made in
connection with the claim.

[ECF Doc. No. 432]

10. Between May 30, 2014 and June 18, 2014, the Receiver completed the First Interim Distribution by disbursing the aggregate amount of $18,718,060.86 ("First Interim Distribution"). Following the First Interim Distribution, the aggregate unpaid balance of allowed investor claims was $30,952,721.91or 62% of the aggregate allowed claims.

11. On July 29, 2014, the Receiver filed his Third Status Report [ECF Doc. No. 455]. In the report, the Receiver noted that in addition to the investor claims that were the subject of the First Interim Distribution, the Receiver had also received seven additional potential investor claims (the "Additional Claims"). A schedule of the Additional Claims is attached hereto to as Exhibit "A". The Receiver recommended, among other things, that the Additional Claims be valued "utilizing the same formulae approved by this Court for the First Interim Distribution" and that the deadline to object to the Additional Claims be set for August 29, 2014.

12. On August 4, 2014, the Court endorsed the Third Status Report and ordered that "any objections to the Additional Claims shall be filed no later than August 29, 2014" [ECF Doc. No. 459].

## II. RECEIVER'S POSITION

13. As required by the Court's May 6th Order, the Receiver has utilized the same method for valuing the Additional Claims as that set forth in the Receiver's Amended Motion for an Order (a) Fixing Investor Claims and (b) Authorizing Interim Distribution dated February 24, 2014 [ECF Doc. 370].[1]

---

[1] Under this method, the allowed amount of any claim for interim distribution purposes only is equal to the account balance indicated on the last available statement less any subsequent distributions..

Claim No. 34 Christina Lohman

14. Ms. Lohman submitted a proof of claim for $1,394.86. *See* Exhibit "B" hereto. This amount is supported by a statement on "Amerindo Funds" letterhead dated September 30, 2005 for an investment held in the "Amerindo Technology Fund Class D", with handwritten note stating "Munder Internet Fund". Also included with Ms. Lohman's claim are two documents entitled "Supplements to the Prospectus" dated May 31, 2005 and June 6, 2005 respectively.

15. The Receiver's investigation has revealed that the Amerindo Technology Fund ("ATF"), the fund in which Ms. Lohman invested, was an open end mutual fund initially managed by Mr. Vilar and Mr. Tanaka through Amerindo Investment Advisors, Inc. Following the 2005 arrests of Vilar and Tanaka, the independent directors of the fund contacted Munder Capital Management ("Munder") who, at the time, managed a similar technology mutual fund called the Munder Internet Fund. In June 2005, Munder assumed management of ATF. Thereafter, the ATF shareholders approved a plan of reorganization to merge ATF into the Munder Internet Fund. Based on the foregoing, Ms. Lohman now holds shares in the Munder Growth Opportunities Fund f/k/a the Munder Internet Fund and does not hold a claim against the Receivership assets. As a result, Ms. Lohman's claim should be disallowed in its entirety.

Claim No. 35 Ana R. Acevedo

16. Ms. Acevedo filed a proof of claim without stating a claim amount. *See* Exhibit "C" hereto. Rather, Ms. Acevedo included with her claim (a) copies of cancelled checks in the respective amounts of $100,000 and $60,000, (b) a letter on Amerindo stationary dated October 22, 1991 confirming her $60,000.00 investment in an Amerindo Fixed Rate Deposit Account and the purchase 10,164.19 ATGF shares for $100,000.00, and (c) three Amerindo account

statements.  The last of these, dated March 31, 2002, showed balances of: $640,934.75 in the fixed deposit account; $239,800.65 representing 7,665.82 shares of ATGF; and accrued interest of $24,583.80 for a total account balance of $905,319.20.   Based on the March 31, 2002 statement, the Receiver submits that Ms. Acevedo should have a total allowed claim of $905,319.20.

Claim No. 36 Jacqueline A. Gaztambide, on behalf of Jacqueline A. Gaztambide, Ana R. Acevedo and Annette Acevedo

17. Ms. Gaztambide's proof of claim also does not specify a claim amount. *See* Exhibit "D" hereto.  However, the materials submitted with the proof of claim include an ATGF subscription letter which identifies the three claimants, Jacqueline A. Gaztambide, Ana R. Acevedo and Annette Acevedo, as joint account owners, and a letter from Amerindo Investment Advisors dated May 23, 1996 confirming the receipt of two checks totaling $65,000.00 which were used to purchase shares of ATGF.  No additional statements were provided.  Accordingly, the Receiver submits that the Gaztambide claim be allowed in the amount of $65,000.00.

Claim No. 37 Maria Dichov

18. In her proof of claim, Ms. Dichov asserts that she invested $500,000.00 in the Amerindo Guaranteed Hedged Equity Fund ("GHEF") on or about September 2, 1998 and purchased 69,166.54 ATGF shares for the sum of $2,520,000.00 on or about August 17, 2001. *See* Exhibit "E" hereto.   An Amerindo account statement dated May 31, 2004, shows a GHEF balance of $500,000.00, an ATGF balance of $1,050,259.23, and accrued interest of $17,269.39 for an aggregate account balance of $1,567,528.62.

19. As set forth in the proof of claim, Ms. Dichov is the former wife of Mr. Vilar. While Ms. Dichov did submit documentation of a $500,000.00 wire transfer for her initial GHEF investment, there is no similar documentation regarding her purchase of ATGF shares.  Instead,

Ms. Dichov submitted a letter, dated August 17, 2001, from Mr. Vilar stating, "This is to confirm that I agreed to transfer the sum of $2,520,000 to you as part of the divorce settlement. You, in turn, used these funds to purchase shares in The Amerindo Technology Growth Fund."

20. The Receiver does not object to that portion of the Dichov claim ($517,269.39) based on her investment in GHEF. However, in light of Ms. Dichov's personal relationship with Mr. Vilar, he does object to the balance of her claim absent further evidence of her purchase of ATGF shares. In the event Ms. Dichov is able to produce such evidence, the Receiver submits Ms. Dichov would be entitled to an allowed claim of $1,567,528.62 as indicated on the May 31, 2004 account statement.

Claim No. 38 Los Angeles Opera Company

21. Claim number 38 was submitted by the trustee of the Tara Glynn Colburn Trust on behalf of trust beneficiary, the Los Angeles Opera Company ("LA Opera"). *See* Exhibit "F" hereto. As set forth in the materials accompanying the LA Opera claim, Ms. Colburn invested $1,000,000.00 in an "Amerindo Fixed Rate Deposit Account" on or February 10, 2000 to be repaid with interest in the amount of $1,271,240.25 due on February 9, 2003. This investment was eventually transferred to the Tara Glynn Colburn Trust after Ms. Colburn's passing in May 2003. In further support of the LA Opera claim, the Colburn trustee submitted a letter dated November 8, 2002 from Amerindo Investment Advisors to Ms. Colburn confirming the account opening with a $1 million deposit and accumulated interest for the 3 year period ending February 9, 2003 of $271,240.25.

22. In 2003, the Colburn Trustee commenced an action in the Supreme Court for the State of New York against Amerindo Investment Advisors Inc. alleging that Amerindo was indebted to the Colburn Trustee in the amount of $1,271,240.25. On or about September 14,

2004, the Colburn Trust and Amerindo entered into a settlement agreement whereby Amerdino agreed to pay the Colburn Trustee the sum of $1,486,371.78 payable in three installments of $100,000.00, $450,000.00 and $936.371.78 respectively. The first two installments totaling $550,000.00 were remitted to the Colburn Trust leaving a balance of $936,371.78 under the terms of the settlement agreement.

23. Notwithstanding the settlement agreement, the Receiver submits that the LA Opera should have an allowed claim of $721,240.25 based on the account balance set forth in the November 8, 2002 letter less the $550,000.00 distributed under the terms of the settlement agreement.

Claim No. 39 Lily Cates through Anna Gladkoff

24. The Gladkoff claim in the amount of $550,000.00 was filed by Lily Cates as heir to Anna Gladkoff. *See* Exhibit "G" hereto. The claim amount is based on (a) a $300,000.00 investment in "Amerindo B2B Mutual Fund" in November 2000, and (b) an additional $250,000.00 investment with Amerindo in January 2001. However, after discussions between counsel and the Receiver, Cates has voluntarily withdrawn that portion of the claim attributable to the second $250,000.00 investment based on the Receiver's objection that there is insufficient documentation of the $250,000.00 investment [ECF Doc. No. 462]. As evidence of the first $300,000.00 investment, Cates submitted a copy of a cancelled check made payable Amerindo Investments. Based on the foregoing, the Receiver submits that the Gladkoff claim be allowed in the amount of $300,000.00.

Claim No. 40 David Mainzer

25. Although Mr. Mainzer asserts a claim against one of the Amerindo defendants, the submitted proof of claim reflects an alleged investment in an entity known as "Amerindo

Master Venture Fund". *See* Exhibit "H" hereto. Mr. Mainzer further states that he does not know the principal amount invested and that he has no records related to his investment as requested by the Receiver. Based on the foregoing, the Receiver submits that absent further documentation evidencing the claim, Mr. Mainzer's claim should be disallowed in its entirety.

### III. CONCLUSION

WHEREFORE, the Receiver requests for interim distribution purposes only, and subject to the Receiver's receipt of investor affidavits required under the May 6th Order, that the Court entered an order fixing the allowed amount of the Additional Claims in the amounts set forth on Exhibit A hereto and grant such other and further relief as is just and proper.

New York, New York  
August 29, 2014                     /s/ Ian J. Gazes_____  
                                    Ian J. Gazes, Receiver  
                                    Gazes LLC  
                                    151 Hudson Street  
                                    New York, New York 10013  
                                    (212) 765-9000