Vivian Shevitz
Attorney at Law
46 Truesdale Lake Drive
South Salem, New York 10590
(914) 763-2122
Vivian@shevitzlaw.com

September 9, 2014

Hon. Richard J. Sullivan   (ECF Filing)
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

      Re:  SEC v. Amerindo et al.  05-cv-5231 (RJS)
      <u>Objection to Swanson conclusions DOC 469 About Gladkoff claim.</u>

Dear Judge Sullivan:

  Defendants object to conclusions drawn by Edward Swanson in his letter of September 8, 2014 (not cc'd to me).  Mr. Gazes apparently sent Mr. Swanson to Munder capital to "investigate" the claim.  Mr. Swanson reports that someone from Munder supposedly told Mr. Swanson, who then told Mr. Gazes, that Munder does not have an account in the name of Lily Cates' mother.  Mr. Swanson apparently contends that therefore, Ms. Cates should be paid for this claim out of Amerindo Panama funds.

  It bears noting that no one except Edward Swanson, not even Ms. Cates, signed the 300,000 claim now pending before Mr. Gazes.  No one has stated anything under oath as to this claim.  More significantly, there is no one with personal knowledge as to whether Anna Gladkoff took a redemption of her B2B /Amerindo Technology Fund claim at any time.  All that Ms. Cates advanced is a check written at the time of the purchase of Amerindo B2B Funds.

  Mr. Swanson "argues" that the check was "made out to Amerindo Investments" and was deposited by Amerindo Investments.  Amerindo Investments did not imply a Panama fund.  In any event, the check "delivered" to Amerindo for this purchase (if Cates delivered it) was deposited by the Portland Maine registrar.  (DOC 466-7 p.6).

  In fact, at the March 14, 2014 hearing in this case, Mr. Swanson himself established that the check had been deposited in a Portland Maine bank.  He said he had looked it up himself.  At page 44 of that hearing transcript:

> Lily subsequently found a cancelled check which we delivered to
> the Court in March in our revised proof of claim.  That check,
> which the Court has a copy of, is made out, it's from Anna
> Gladkoff, Lily Cates to Amerindo Investments and it says in the
> memo at the bottom: Amerindo B2B mutual fund. And on the backside
> it shows that it was deposited. There is actually a reference to
> a People's Heritage Bank, which I looked up and is in Maine. Ms.

```
Cates does not have any accounts in Maine and it was written out
to Amerindo Investments. So we have evidence that we have
submitted of a second deposit. Actually, it was the first one in
November of 2000 of $300,000. So the total is $550,000.
```

The claim rejected by Mr. Gazes, that of Ms. Lohmann (DOC 466-2) (whose late claim somehow made its way to Mr. Gazes) shows that Ms. Lohmann's account appears on an account statement headed "Amerindo Funds, P.O. Box 446, Portland ME 04112". That was where the Amerindo Funds were registered and handled.

No one can say why Munder does not show an account for Cates' mother. Perhaps she withdrew her money. Perhaps the Directors who transferred the Amerindo Fund to Munder, as the SEC knew was about to happen (see June 1, 2005 Transcript), [1] might have knowledge.

Paying a baseless claim out of Panama funds should not be an option. The Cates' claim is without substance, unreliable and is not a claim against Amerindo Panama.[2]

        Very truly yours,
        /s/
        Vivian Shevitz

Cc: all counsel

---

[1] SEC Counsel Kay Lackey told Judge Swain about the separate fund at a hearing on June 1, 2005 (at which neither defendant was present or represented), and in fact precipitated the give-away of the fund to Munder Capital. When asked about where and how monies were held and for which clients, Ms. Lackey first said that the SEC "do[es]n't have complete information" but knew (from her dealings with Eugene Licker, who represented the fund) that defendants' authority was being immediately terminated (June 1, 2005 Tr.p.9):

```
...the mutual fund itself ...has a separate custodian. In
fact, the fund has taken action to terminate Mr. Tanaka and
Mr. Vilar's ability to make any advisory decisions on their
behalf. The fund counsel has informed me that they are in
the process of trying to get a new advisor, and they
anticipate that that will be done in the next day or two.
```

[2] There has never been commingling between U.S. funds and Panama funds. Ms. Cates apparently would wish to do so. (In fact, despite the SEC's characterization, there is no real "commingling" of the Amerindo Panama clients' *accounts*. When they deposited funds, the funds were commingled. But the *account* of each client was credited immediately and properly – just as a teller who takes deposits of clients all day puts the funds in the same drawer, but issues receipts that properly credit the deposit to a particular account for that client. Here, the SEC and receiver have *never* looked at the accounting records maintained by Amerindo Panama. (DOC 201, SEC response to Joint Courts' Order that it produce numbers, 2-21-12, p.2-3 (The SEC staff has never seen the full universe of Amerindo's corporate records".) Any sound basis for all of its positions, and those of the Receiver who embraces such decision making, is lacking. Investors were treated, as by the bank that employs the teller who commingles deposits, according to their accounts, but the SEC and Receiver eschew the accounting records.