**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

---

**SECURITIES AND EXCHANGE COMMISSION,**

Plaintiff,

v.

**AMERINDO INVESTMENT ADVISORS INC.,** *et al.*,

Defendants.

**05 Civ. 5231 (RJS)**

**ECF CASE**

---

**RECEIVER'S RESPONSE TO OBJECTIONS TO ADDITIONAL INVESTOR CLAIMS**

Ian J. Gazes, the Court appointed receiver (the "Receiver") in the above-captioned case, submits this response to the objections to Additional Claims (herein defined) of (A) Alfred Heitkonig; (B) Paul Marcus, the Deane J. Marcus Trust, the Steven E. Marcus Trust, the Cheryl Marcus-Podhaizer Trust, and the Eve S. Marcus Children's Trust; (C) Lisa Mayer and Debra Mayer; and (D) the above-captioned defendants (the "Defendants"), and respectfully states as follows:

### I. BACKGROUND

1. On February 8, 2014, the Receiver moved the Court for an order (a) Fixing Investor Claims and (b) Authorizing the Receiver to Make an Interim Distribution [ECF Doc. No. 355].

2. On February 24, 2014, the Receiver filed an amended motion for an order (a) Fixing Investor Claims and (b) Authorizing the Receiver to Make an Interim Distribution (the "Amended Distribution Motion") [ECF Doc. No. 370].

3       On April 18, 2014, the Receiver filed an affidavit which, among other things, further revised the amounts of his proposed first interim distribution as set forth in the Amended Distribution Motion (the "Revised Interim Distribution Schedule") [ECF Doc. No. 422].

4.      On May 6, 2014 the Court entered a memorandum and order (the "May 6th Order") which, *inter alia*, ordered that:

> The Receiver shall distribute funds according to the schedule set forth in the Revised Interim Distribution Schedule. Before distributing any funds to a claimant, however, the Receiver must obtain an affidavit from that claimant swearing to the accuracy of the claim and statements made in connection with the claim.

[ECF Doc. No. 432]

5.      Between May 30, 2014 and June 18, 2014, the Receiver completed the First Interim Distribution by disbursing the aggregate amount of $18,718,060.86 ("First Interim Distribution").  Following the First Interim Distribution, the aggregate unpaid balance of allowed investor claims was $30,952,721.91or 62% of the aggregate allowed claims.

6.      On July 29, 2014, the Receiver filed his Third Status Report [ECF Doc. No. 455]. In the report, the Receiver noted that in addition to the investor claims that were the subject of the First Interim Distribution, the Receiver had also received seven additional potential investor claims (the "Additional Claims") following the September 20, 2013 claims bar date (the "Bar Date").  The Additional Claims are set forth below in paragraph 8.  The Receiver recommended, among other things, that the Additional Claims be valued "utilizing the same formulae approved by this Court for the First Interim Distribution" and that the deadline to object to the Additional Claims be set for August 29, 2014.

7. On August 4, 2014, the Court endorsed the Third Status Report and ordered that "any objections to the Additional Claims shall be filed no later than August 29, 2014" [ECF Doc. No. 459].

8. On August 29, 2014, the Receiver filed his response to the Additional Claims (the "Receiver's Response") [ECF Doc. No. 466]. The Receiver's proposed allowed amounts for each of the Additional Claims are as follows:

| Claimant | Allowed Amount |
|---|---:|
| Christina Lohmann (the "Lohmann Claim") | $0.00 |
| Ana Acevedo (the "Acevedo Claim") | $905,319.20 |
| Jacqueline A. Gaztambide, Ana R. Acevedo, Annette Acevedo (the "Gaztambide Claim") | $65,000.00 |
| Maria Dichov (the "Dichov Claim") | $517,269.39 |
| LA Opera (the "LA Opera Claim") | $721,240.25 |
| Anna Gladkoff (the "Gladkoff Claim") | $300,000.00 |
| David Mainzer (the "Mainzer Claim") | $0.00 |

9. On September 4, 2014, the Court entered an order directing the Receiver to respond to the objections to Additional Claims filed by (A) Alfred Heitkonig (the "Heitkonig Objection") [ECF Doc. No. 463]; (B) Paul Marcus, the Deane J. Marcus Trust, the Steven E. Marcus Trust, the Cheryl Marcus-Podhaizer Trust, and the Eve S. Marcus Children's Trust (the "Marcus Objection") [ECF Doc. No. 464]; (C) Lisa Mayer and Debra Mayer (the "Mayer Objection") [ECF Doc. No. 467; and (D) the Defendants (the "Defendants' Objection") [ECF Doc. No. 468].

## II. THE OBJECTIONS AND RECEIVERS RESPONSE

**A.     The Heitkonig Objection**

10. The Heitkonig Objection is predominately devoted to issues unrelated to the allowability of the Additional Claims. To the extent that Mr. Heitkonig does address the Additional Claims, he simply states, "I have no objection to the new claims presented in the Receiver's Third Status Report (well beyond the 9/20/13 published deadline), as long as these claims are fully investigated and that the iniquities in my claim can be re-evaluated now as well."

11. The Receiver submits that the Additional Claims have been adequately investigated as set forth in the Receivers Response. With respect to the issues surrounding the "iniquities" asserted by Mr. Heitkonig referencing the methodology of calculating the claim amount, the Receiver further submits that these issues are either moot or not yet before the Court. The method for determining the allowed investor claim amount for interim distribution purposes was fixed by the May 6th Order. The method for valuing claims in the context of a final distribution will be the subject of future reports and recommendations by the Receiver.[1]

**B.  The Marcus Objection**

12. Marcus concurs with the Receiver's recommendations as concerns the Lohmann, Gaztambide, and Mainzer Claims but diverges in varying degrees from the Receiver's valuations of the Acevedo, Dichov, LA Opera, and Gladkoff as set forth below.

13. **Acevedo:** With regard to the ATGF investment portion of the Acevedo claim[2], Marcus argues the Receiver is not applying the correct methodology when calculating the allowed claim as set forth in the May 6th Order. Marcus first asserts the Receiver should be utilizing the initial investment amount in 1991 of $100,000 as the claim amount and not the

---

[1] In the May 6th Order, the Court noted, "…that the Receiver's motion is only for an interim distribution. If, going forward, the Receiver determines that Amerindo's assets exceed investor claims, plus interest – for instance, if some of Defendants' risky investments from before 2005 turned out to be winners – it might be appropriate to allocate gains differently to GFRDA and ATGF investors. The Court, however, will address that situation when, and if, it arises..."

[2] Acevedo submitted copies of cancelled checks and an Amerindo Letter in 1991 reflecting her initial investments as well as an Amerindo Statement in 2002 reflecting the value of the ATGF shares and GFRDA investment.

4

amount set forth in the 2002 Amerindo Statement. Marcus then concludes this claimant's initial investment in 1991 of $100,000 should now be a zero (0) dollar claim because of "redemptions" between 1991 and 2002 and, therefore, Acevedo had been paid back her initial investment. As to GFRDA portion of the claim, Marcus argues that Acevedo should not receive interest as reflected in the 2002 Amerindo statement and the claim amount should be $60,000 representing Acevedo's initial investment in a GFRDA in 1991.

14.  The May 6th Order approved the Pooling Method of Net Contribution Amounts ("NCA") proposed in the Amended Distribution Motion. Using the NCA method, GFRDA investments are valued according to the last available statement balance with no allowance for any interest accruing *after* the statement date. ATGF investments are valued by either (a) the amount of an investor's contributions to the ATGF fund less the amount of any subsequent redemptions; or (b) *if the amount of an investor's initial contributions could not be verified*, the ATGF statement balance reflected on the last available statement, less any subsequent redemptions.

15.  Acevedo's last available Amerindo statement, dated March 31, 2002, shows a GFRDA balance of $640,934.75, plus accrued interest of $24,583.80, for a total allowed GFRDA claim of $665,518.55. The March 31st statement also shows an ATGF balance of $239,800.65 representing 7,665.82 shares. Although, Acevedo did submit a copy of a letter on Amerindo stationary, dated October 22, 1991, confirming her purchase of 10,164.19 ATGF shares for $100,000.00, as well as her initial $60,000.00 GFRDA investment, the Receiver cannot confirm that the October 1991 letter accurately reflects the sum of *all* principal contributions to ATGF. Given the apparent change in the number of ATGF shares held by Acevedo over the course of a decade and, accordingly, the difficulty in verifying her aggregate

5

principal contributions to and redemptions from the fund, the Receiver submits that the March 2002 statement should be utilized as Acevedo's allowed ATGF claim amount. The NCA method relies on the last available statement where the amount of principal contributions cannot be verified. Although the Receiver can confirm the initial investment, the 2002 Amerindo Statement reflects a reduction in the number of shares and, therefore, puts into play the question of what happened between 1991 and 2002. Because the Receiver cannot calculate the value of what appears to be a redemption during those ten (10) plus years where the principal increased and the share number decreased, the Receiver determined the equitable method of calculating the claim was to use the Amerindo 2002 statement.

16. The valuation as concerns the GFRDA investment claim is consistent with the NCA method as it was previously applied in determining the amount of allowed GFRDA claims for purposes of the First Interim Distribution. The last statement including accrued interest sets forth the claim amount without inclusion of interest post the last statement. Although Marcus correctly notes the nearly $600,000.00 increase in the GFRDA balance from October 1991 to March 2002, Marcus does not draw a reasonable inference therefrom. The principal amount and composition of Acevedo's investments must have changed between 1991 and 2002. This is confirmed by the change in the number of ATGF shares between 1991 and 2002.

17. **Dichov**: Marcus disagrees with the Receiver only as to the allowability of interest on Dichov's initial $500,000.00 Amerindo Guaranteed Hedged Equity Fund ("GHEF") investment. Again, the Receiver submits that the NCA method for valuing guaranteed investments is based on the balance set forth on the last available account statement including an interest on principal reflected as of the date of such statement. Because the last available

statement, dated May 31, 2004, shows a non-ATGF balance of $517,269.39, the Receiver submits that the Dichov Claim be allowed in that amount.

18. **LA Opera**: Marcus first asserts that the claim should be disallowed in its entirety as untimely. The Receiver disagrees. First, counsel for the LA Opera has represented to the Receiver that the LA Opera did not receive a proof of claim form prior to the Bar Date. The Receiver notes that his initial mailing of proofs of claim was not based on a comprehensive list of potential claimants as no such list was or is available. In reviewing the relevant mailing lists, it does not appear that a proof of claim form was sent to the LA Opera prior to the Bar Date. Even assuming that the LA Opera did have notice of the Bar Date, actual or otherwise, the equities weigh in favor of permitting late claims to participate because, *inter alia*, of the age of the case.

19. As to the substance of the LA Opera Claim, Marcus differs with the Receiver only to the extent that the Receiver has allowed accrued interest. Once again, the Receiver submits that his valuation is consistent with the NCA method for valuing GFRDA investments which relies on the last available statement balance with no allowance for any interest accruing *after* the statement date. In support of the claim, the LA Opera submitted a letter from Amerindo showing an account balance on its GFRDA investment of $1,271,240.25, representing principal of $1,000,000.00 plus accrued interest. The LA Opera acknowledges that it subsequently received distributions of $550,000.00. Under the approved NCA method, the allowed amount of the LA Opera Claim is $721,240.25, representing the last know account balance, less subsequent distributions.

20. **Gladkoff**: Marcus argues that the Claimant, now deceased, through her elderly daughter, Cates, has submitted insufficient documentation to support the claim. In particular,

7

Marcus asserts that the May 6th Order strictly prescribes that Cates provide either an account statement or additional correspondence related to Gladkoff's investments in order for the claim to be allowed. As an initial matter, $250,000.00 of the Gladkoff Claim based on a handwritten letter from Amerindo dated January 6, 2001 has been withdrawn so that Cates now seeks $300,000.00 rather than $550,000.00 [ECF Doc. No. 462]. As evidence of the $300,000.00 claim, Cates submitted a copy of a cancelled check made payable to "Amerindo Investments". The Receiver submits that, taken together, the cancelled check and the January 2001 letter, the documentation supports the conclusion that Gladkoff invested funds with the Amerindo defendants. First, the $300,000.00 check appears to have been cashed by or on behalf of Amerindo Investments. Second, the handwritten January 2001 letter signed only as "Heather" and the reference to Ms. Gladkoff's accountants suggest a prior investment relationship between the parties. Finally, the paucity of documentation such as account statements is not peculiar to the Gladkoff Claim but common to many other investor claims. Based on the foregoing, the Receiver again submits that the Gladkoff Claim, be allowed in the amount of $300,000.00.

C. **The Mayer Objection**

21. The Mayers do not articulate any specific objections to the Additional Claims but instead state, "The Mayers asserted comprehensive objections to the Receiver's first proposed interim distribution (Doc. No. 376), which objections the Court generally overruled (Doc. No. 432). In order to preserve their rights, the Mayers hereby reassert in connection with the Additional Investor Claims the objections stated in Document 376." As with the Heitkonig Objection, the Receiver submits that the method for fixing the amount of allowed investor claims for interim distribution purposes was fixed by the May 6th Order and should not now be modified.

**D.     The Defendants' Objection**

22.     On its face, the Defendants' Objection is largely devoted to the airing of general grievances against the Receiver, which are either moot by virtue of prior decisions and orders of the Court or wholly unrelated to the allowability of the Additional Claims.  The one specific objection concerns the Gladkoff Claim.  The Receiver believes Defendants are asserting that based on the $300,000.00 check issued by Gladkoff to allegedly invest in Amerindo B2B Mutual Fund, the claim should be zero because that fund was merged into the Munder Internet Fund. The Receiver reaches a contrary conclusion in that the Receiver believes that Gladkoff holds an allowable claim in the Receivership assets for the reasons articulated above and in the Receiver's Response to Additional Claims. Although the Defendants assert there are additional claimants elsewhere the Defendants to date has refused to turn over any contact information for those alleged investors.

### III. CONCLUSION

For all the foregoing reasons the Receiver respectfully submits that the objections of Heitkonig, Marcus, Lisa and Debra Mayer and the Defendants be overruled in all respects, and for such other and different relief as this Court may seem just and proper.

New York, New York  
September 19, 2014                                                    Respectfully submitted,


  /s/ Ian J. Gazes_____  
Ian J. Gazes, Receiver  
Gazes LLC  
151 Hudson Street  
New York, New York 10013  
(212) 765-9000