UNITED STATE DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

………………………………………………………………....X
                                                                  :
SECURITES AND EXCHANGE COMMISION       :
                                                                  :       05 Civ. 5231 (RJS)
                                Plaintiff,                  :
                                                                  :
                v.                                              :       ECF CASE
                                                                  :
AMERINDO INVESTMENT ADVISORS, INC., et al   :
                                                                  :
                                Defendants,            :
………………………………………………………………….X


**RESPONSE OF CLAIMANTS ANA R. ACEVEDO AND MARIA DICHOV TO THE OBJECTIONS OF CLAIMANTS PAUL MARCUS, THE DEANE J. MARCUS TRUST, THE STEVE E. MARCUS TRUST, THE CHERYL MARCUS-PODHAIZER TRUST AND THE EVE S. MARCUS CHILDREN'S TRUST TO ADDITIONAL CLAIMS**

Claimants Ana R. Acevedo and Maria Dichov, by their counsel Cahill Partners LLP, hereby file a Response to the Objections Of Claimant Paul Marcus, The Deane J. Marcus Trust, The Steve E. Marcus Trust, The Cheryl Marcus-Podhaizer Trust And The Eve S. Marcus Children's Trust [the "Marcus Claimants"] To Additional Claims, dated August 29, 2014 (Docket No. 464).

**Introduction**

1.      This Response addresses the Objection of the Marcus Claimants to the extent it pertains to the Receiver's treatment of Ana R. Acevedo's and Maria Dichov's Claims in Receiver's Position In Response To Additional Investor Claims, filed August 29, 2014 ("Receiver's Position") (Docket No. 466).

1

I.   **The objections to the Receiver's allowance of the Claim of Ana R. Acevedo are without merit.**

    2.   In summary, the Marcus Claimant's objections to Mrs. Acevedo's Claim are that:

        a.   The GFRDA deposit amount allowed by the Receiver, $640,934.75, should be allowed only in the amount of $60,000, reducing the Receiver's proposed amount by the amounts of accrued interest, included on the Statement of Account submitted with the her Claim, that Receiver included in his claim calculation; and

        b.   The ATGF investment allowed by the Receiver, $239,800.65, which was supported by documentation that established Mrs. Acevedo's original ATGF investment was $100,000 and was valued on her last statement at the allowed amount, should be reduced to zero because the "evidence" indicates that she has already received back more than her full amount invested in ATGF.

    3.   Ms. Acevedo has produced documents and information in precisely the form required by the Receiver's approved methodology for valuing claims, and the Marcus Claimant's offer no reason why the Receiver's conclusions regarding Mrs. Acevedo's Claim, stated in the Receiver's Position (Docket No. 466), at para. 16, are not correct under the approved procedure for claims. The Marcus Claimants' Objections are addressed in turn, below.

A.   **The Receiver's calculation of Acedvedo's GFRDA claim amount was correct under the methodology approved by the Court.**

    4.   The Marcus Claimant's objection to the GFRDA calculation by the Receiver is based on a single line in the Court's May 6, 2014 Memorandum and Order. In discussing whether, due to the comingling of funds by the Defendants, investors in GFRDA and ATGF should be treated differently or the same, the Court said, "That kind of comingling and similar

2

treatment is precisely the situation that calls for a *pro rata* distribution based on each victim's investment amount." Memorandum and Order, May 6, 2014 ("Memorandum and Order") (Docket No. 413), at p. 17.  The Marcus Claimants, who invested solely in ATGF, seize on that turn of phrase to attempt to un-do the Receiver's use, in valuing this claim, of the existing distribution methodology that was approved in the Memorandum and Order.

5.     The Court's Memorandum and Order was on the Receiver's motion was to approve the distributions in the Receiver's initial Motion For An Order (A) Fixing Investor Claims and (B) Authorizing Interim Distribution, filed February 2, 2014 ("Receiver's Original Motion") (Docket No. 355) as modified by Receiver's Amended Motion For an Order (A) Fixing Investor Claims and (B) Authorizing Interim Distribution, filed February 24, 2014 ("Receiver's Amended Motion") (Docket No. 370).  The Receiver's motion papers fully explained the methodology employed in arriving at his proposed distribution amounts.

6.     That methodology for establishing a GFRDA claim is clear, and includes interest on GFRDA accounts.  Under the Receiver's Revised NCA Method, the allowed amount of a GRFDA based investor claim would consider the account balance as of the last available account statement, which included interest accrued through the statement date, but with no interest component subsequent to the statement date. Receiver's Amended Motion, *supra*, p.3, para. 5. In its Memorandum and Order, the Court approved the Interim Distributions calculated using that methodology.

7.     The alterations to the Total Allowed Claims found in comparing the Receiver's proposed claim amounts in his proposed claim amounts in the Amended Motion (Docket No. 370-2) to those in the Original Motion (Docket No. 355-2) demonstrate that the distributions approved  by the Court included accrued interest set forth on the account statements.  The

changes to claim amounts in the Amended Motion are reductions required by the change to the Revised NCA methodology, which excluded the addition of that portion of interest calculated interest from the date of a Claimant's latest submitted statement to the Valuation Date of May 25, 2005, but still included accrued interest amounts included in the account statements submitted with the claims.

8.  The Receiver's treatment of the claim of Robert Cox is typical. Mr. Cox's claim was based upon his ownership of GFRDA, and his account statement showing a value of $85,126.90. Receiver's Original Motion, p. 21, para. 54. In his original Motion the Receiver allowed $104, 638.60, well above the amount on the submitted 2002 statement, $85,126.90. A simple calculation shows that the difference between the two amounts came about because the Receiver originally added 6.5% interest (the rate stated on the account statement) for the period between the statement date and the Valuation Date, as required by the Receiver's then-proposed valuation method. In the Amended Motion, using the Revised NCA methodology, the Receiver reduced the allowed claim amount to the statement amount of $85,126.90. In neither of those calculations did the Receiver eliminate the accrued interest contained in the statement amount. To do so would have violated the Receiver's own recommended claims protocol.

9.  In its Memorandum in support of the first interim distribution the SEC made it clear, contrary to what the Marcus Claimants asset, that the proposed interim distribution did treat GFRDA investor claims somewhat differently from ATGF claim, by awarding a degree of interest to the former, but not to the latter:

> "Although the interim distribution is a pro rata distribution, the calculation of the GFRDA investor claims includes some accrued, but unpaid, interest, while the calculation of other claims does not include accrued interest. The Commission staff submits that it is appropriate to include an interest component for the GFRDA investors,

4

who believed they were investing in very low risk investment that paid interest only, while ATGF and ATGF II hedge fund investors knowingly assume the volatility of technology stocks." Plaintiff Securities and Exchange Commission's Memorandum In Support of Receiver's Proposed Interim Distributions ("SEC Memo In Support"), filed March 7, 2014, at p.1 fn. 1 (Docket No. 391).

10. In valuing Mrs. Acevedo's GRFDA claim, the Receiver correctly followed the same methodology that was employed in arriving at the claim amount in the first interim distribution. Receiver's Position (Docket No. 466), at p. 2, para. 13. The Receiver included in the GRFDA portion of the allowed claim the two figures related to the GRDA investment that were stated on the latest statement submitted by Ms. Acevedo: the 'value' of the GRFDA account ($640,934.75), which included accrued interest, and the separate interest amount credited for that statement period ($24,583.80), for a total GRFDA claim amount of $665,518.55.

11. There is nothing in the Court's Memorandum and Order to suggest that these additional claimants, including Mrs. Acedvedo, are to be treated any differently than the claimants included in the First Interim Distribution. The Receiver has, correctly, uniformly applied the claim methodology presented to the Court.

12. The Receiver's treatment of Mrs. Acedvedo's GFRDA claim is, thus, entirely consistent with the methodology approved by the Court and employed by the Receiver for all other claims, and with the documentation submitted to support the Claim.

**B. The Receiver's calculation of Acevedo's ATGF claim amount was correct under the methodology approved by the Court.**

5

13. Here again, in filing that portion of her claim relating to her investment in ATGF Mrs. Acevedo has complied with the Receiver's procedures. In her Claim (Docket No. 466-3, Exh. C), Mrs. Acevedo attached appropriate documentation: her correspondence with Amerindo Investment Advisors, Inc., copies of her checks sent to fund investments and a letter back from American Technology Growth Fund Limited confirming, *inter alia*, the amount of her investment in AFTG, and subsequent account statements.

14. In addition, in her Claim Mrs. Acevedo made the following statements, which will be part of what she swear to when submitting the Affidavit required by the Court before any distribution can be made to her:

    a. In Part A of the Claim Form, covering principal funds and profits as of May 25, 2005, Mrs. Acedvedo stated, "Never redeemed any moneys. Profits should be those valid on 5/25/2005."

    b. In Part B of the claim form, covering principal funds and profits after May 25, 2005, Mrs. Acedvedo stated, "On this investment nothing was ever redeemed".

15. The Marcus Claimants' objection to the Receiver's allowance of Mrs. Acevedo's claim amount is based upon their speculation about a supposed redemption of ATGF shares that the Marcus Claimants infer from an entry on the Amerindo statements attached to Mrs. Acevedo's Claim. They offer no direct proof that such a redemption occurred, or that Mrs. Acevedo ever received money back from ATGF in any manner, which Mrs. Acevedo has denied.

16. The record is very clear that documents originating with Amerindo are unreliable. In its SEC Memo In Support of the Receiver's Proposed Methodology, cited *supra* (Docket No. 391), the SEC advised the Court that:

6

      a.      " In the Commission staff's view, the extensive commingling and diversion of funds from the ATGF and ATGF II hedge funds over the years rend the account statements reflecting the NAV of those funds inherently unreliable." Id., p.6. ; and

      b.      "Moreover, there do not appear to be any reliable records reflecting the actual amount of shares outstanding for either fund. Id., p. 7.: and

      c.      "By their [the Individual Defendants'] own admission, the accounting of Amerindo Investment Advisor Inc's ("Amerindo Panama"), the advisor to ATGF, ATGF II and one of the advisers to the FRGDAs, was "irregular" (Ind'l Dfs. Obj. at 19-20), [and] Tanaka himself testified at his sentencing hearing that … 'laxness in our documentation.…got the firm in trouble." Id., p.7.

      d.      There was a group of Amerindo private clients (as opposed to the so-called Public Clients who had custodial accounts) for whom, Tanaka explained, Amerindo maintained, at best, "lax" documentation". Id.

      Mrs. Acevedo was in that group of private clients.

17.      The Receiver was well aware of the deficiencies of Amerindo's record keeping. In his Original Motion (Docket No. 355) fixing investor claims and proposing an interim distribution, the Receiver noted "…the dearth of available documentation, as well as questions as to the reliability of the information that is available…. Original Motion, *supra* at p.1, para. 2.

18.      With that understanding of the sparseness and unreliability of documentation, the Receiver proposed the following methodology for fixing Investor Claims:

> "First, the representations and supporting documents submitted in connection with the Investor Claims shall be sufficient to establish a prima facie entitlement to an allowed Investor Claim unless there is a **compelling basis** to challenge the reliability of such representations and documents.  By way of example, an investor who has submitted a single Amerindo account statement from 1999 and has represented that no subsequent redemptions or withdrawals were made shall have an allowed Investor Claim. "
> Id., p. 2, para2. (emphasis supplied)

19.      It is submitted that the Marcus Claimants' Objection does not present the required compelling basis to disturb the Receiver's conclusion.  In the face of the irregularity of the

7

record keeping, see *supra*, para. 16.c., and the fact that "…there do not appear to be any reliable records reflecting the actual amount of shares outstanding…", see, *supra*, para. 16.b.,  Amerindo records are not, without more, sufficient to rely on to establish a compelling basis for anything.

20.     Of necessity, the Receiver has relied on the sworn statements of the Claimants to deal with the infirmities of the recordkeeping.  In the claim of Dr. E. Ronald Salvitti, the Receiver simply relied on the Claimant's statement in the proof of claim to determine that he did not receive any distributions. Original Motion, supra (Docket No. 355), at p.8.  See also, Claim of Surinder Rametra, Id. at p. 11.  Claimant James Charles was unable to produce any evidence other than an investment in GFRDA, but was allowed a claim in ATGF without submitting any documentation at all for it.  The claim was allowed solely on the basis of a sworn statement of Mr. Charles to establish an ownership interest in a specific amount of ATGF shares. Original Motion, Id.at p.12.

21.     Moreover, the notion that the Statement is explained by a distribution to Mrs. Acevedo, which she has categorically denied, is rebutted by the equal, demonstrated possibility that the reduction in the amount of shares represents a defalcation by the principals of Amerindo. In determining the wrongful gain attributable to Defendants, this Court detailed an instance where an account statement of Lily Cates documented a $250,000 outbound transfer that reduced Cates' account balance.  However, the Court noted that the transfer was accomplished by Amerindo using a letter from Tanaka bearing Cate's forged signature, and the money was subsequently transferred to Vilar.   Memorandum and Order (Docket No. 432), *supra*, at page 7. It is, thus, equally possible that the reduction of the share amount on Mrs. Acevedo's statement may be evidence of another incident of theft by the Amerindo principals from a client account.

22. Mrs. Acevedo has stated in her Claim that she received no distributions of any kind from her investments with Amerindo. Given the unreliability of the records and the demonstrated use of Amerindo records to execute thefts from clients, as in the case of Lily Cates, the unexplained reference to a particular number of shares on an Amerindo statement provides no basis, much less the required compelling basis, to put Mrs. Acevedo's statement into question, or to reduce her Claim.

23. It is respectfully submitted that the Marcus Objection is without merit.

## II. The objections to the Claim of Maria Dichov are legally insufficient.

**Introduction**

24. The Marcus Claimants assert three grounds for object to Maria Dichov's claim:

a. That the Receiver's addition of interest to Ms. Dichov's claim for her investment in the Guaranteed Hedged Equity Fund was incorrect;

b. That her claim based upon her investment in ATGF should be rejected because of Ms. Dichov's the fact that Ms. Dichov was, at one time, married to Vilar; and

c. That her claim based upon her investment in ATGF should be rejected because she has not presented sufficient proof that Amerindo received payment for those shares.

Those objections are addressed in in turn, below:

### A. The Receiver's addition of interest to Ms. Dichov's claim for her investment in the Guaranteed Hedged Equity ("GHEF") was correct.

25. A review of the Amerindo statements and other materials attached to Ms. Dichov's Claim indicate that GHEF, like GFRDA and unlike AGTF, was a conservative investment vehicle intended to produce annual income at low risk. See, Receiver's Position, Exhibit D. Unlike ATGF, an equity fund, and like GFRDA, the Amerindo statement and correspondence indicate that the investment in GHEF has a maturity date and and a fixed annual interest rate.

26.     Given the similarity in type between GHEF and GFRDA, the Receiver's decision to include interest in the claim allowed in respect of GHEF was consistent with the Receiver's approved methodology.  The reasons why interest was properly included in claims allowed in respect of investments in GFRDA are fully discussed above, at paragraphs 4 through 12. Those reasons are equally applicable here.

**B.      Disallowance of Ms. Dichov's ATGF claim on the ground that Vilar was formerly her husband is impermissible.**

27.     Under the Receiver's approved methodology for fixing Investor Claims:

> "First, the representations and supporting documents submitted in
> connection with the Investor Claims shall be sufficient to establish
> a prima facie entitlement to an allowed Investor Claim unless
> there is a **compelling basis** to challenge the reliability of such
> representations and documents.  By way of example, an investor
> who has submitted a single Amerindo account statement from 1999
> and has represented that no subsequent redemptions or withdrawals
> were made shall have an allowed Investor Claim. "
> Original Motion, supra at p.2, para. 2.  (emphasis supplied).

28.     The Marcus Claimants offer no explanation of why a former marital relationship, which at the time of the events relevant to Ms. Dichov's claim had dissolved into an acrimonious divorce, should give rise to any concern about the legitimacy of the claim.  Perhaps in a relationship where one party had reason to protect the other a concern could be raised that the parties could be complicit.  However, the situation here is the opposite.  By 1998 the parties were actively litigating a divorce case, and the obligation to provide Ms. Dichov with the ATGF investment that forms the part of her claim is embodied in a formal property settlement agreement negotiated between counsel and made an order of the court hearing the divorce action. A copy of that document has been provided to the Receiver to further document Ms. Dichov's Claim.

29.  The Marcus Claimants' reliance on the former marital relationship between Ms. Dichov and Vilar is, thus, illogical conjecture, and hardly enough to provide a "compelling basis" to challenge the reliability of the documents submitted with the Claim, including the letter from Vilar confirming that money he owed her was used to purchase ATGF shares. See, Receiver's Position, Exhibit E.

30.  It is, further, significant that the Marcus Claimant's Objection cites no law for the proposition that marital status or, in this case, former marital status, can in and of itself be grounds for discriminating against a Claimant.

31.  In the Response to the Marcus Claimants' Objection to the Acevedo claim, above, several other claims were discussed where the Receiver accepted statements in the claim form as proof where no documentary evidence had been presented.  See, *supra*, para.20.  Of particular note in connection with Ms. Dichov's Claim is the Receiver's allowance of James Charles' claim for an interest in ATGF despite the complete absence of any documentation showing an acquisition of that interest or that a previously owned investment in GRFDA had been used to purchase the claimed ATGF shares.  The Receiver allowed Mr. Charles' claim based purely on his sworn statement of his ownership interest, far less evidence that Ms. Dichov presented in her claim.

**E.   Disallowance of Ms. Dichov's ATGF claim on the ground that Vilar owed a debt to Dichov, and that Ms. Dichov has not documented funds flowing from Vilar to Amerindo to fund the ATGF purchase, is impermissible.**

32.  The Marcus Claimants' objection on this point is pure argument.  In sum they are claiming, without stating any factual basis for it, that because Vilar owed Ms. Dichov money,

had control over Amerindo and it would have been cheaper for him to issue shares without paying for them, then this must have happened.

33. This is pure conjecture. Ms. Dichov's Claim documents are entitled to the same deference—acceptance in the absence of a compelling basis---as those of all of the other investors claimants. The Marcus Claimant's cite no authority that pure conjecture of this sort is sufficient to rebut a prima facie case under any standard, much less the high threshold created by the required of a "compelling basis" included in the Receiver's approved procedures.

34. And it is noteworthy here to observe that the inclusion of the "compelling basis" requirement, which operates to give deference to Claimants' statements and submissions in the claims process, makes great sense in this case. The Amerindo documents were famously irregular, See, *supra*, at paras. 16-18. The threshold that the Marcus Claimant's would impose on Ms. Dichov, and only Ms. Dichov, in an impossible one to meet. That proof exists, if anywhere, in the records of Amerindo, which all must acknowledge are incomplete at best. Id., and in the ordinary course are not something of which Ms. Dichov would, or could, have access or knowledge.

36.     For the foregoing reasons the Marcus Claimant's Objection to Ms. Dichov's claim should be rejected in its entirety.

Dated:  New York, New York
        September 19, 2014

                                      Cahill Partners LLP

                                      By  s/Paul A. Winick
                                      Paul A. Winick
                                      Ronald W. Adelman
                                      70 West 40th Street
                                      New York, New York 10018
                                      (212) 719-4400
                                      *Attorneys for Claimants Ana R. Acevedo and Maria Dichov*