**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**SECURITIES AND EXCHANGE COMMISSION,**

**Plaintiff,**

**v.**

**AMERINDO INVESTMENT ADVISORS INC.,** *et al.*,

**Defendants.**

**05 Civ. 5231 (RJS)**

**ECF CASE**

---

**RECEIVER'S APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE
RETENTION OF OXIS CAPTIAL, INC. AND STILLPOINT CAPITAL LLC AS
ADVISOR/LIQUIDATOR**

TO:    **THE HONORABLE RICHARD J. SULLIVAN**
       **UNITED STATES DISTRICT JUDGE:**

Ian J. Gazes, the Court appointed receiver (the "Receiver") in the above-captioned cases

submits this application (the "Application") in support of the entry of an order authorizing and

empowering the Receiver to retain Oxis Capital, Inc. to analyze, market and, if necessary sell

certain Receivership assets consisting of private securities through StillPoint Capital LLC as

more fully described below, and respectfully states as follows:

## I. BACKGROUND

1.      On October 17, 2012, the Court entered an order appointing the Receiver and

empowered him "to investigate and determine the value of investor assets that have been seized

or frozen pursuant to the forfeiture order in the [related] criminal case, to consider what actions

can and should be taken to avoid dissipation of those assets, and to submit a report to the Court

regarding his findings and recommendations. Upon receiving his report, the Court will determine

whether Mr. Gazes should be empowered to take broader action, such as managing the assets and beginning a claims process for investors" [ECF Doc. No. 267].

2.      On May 30, 2013, the Receiver filed his Initial Report and Recommendations ("R&R") [ECF Doc. No. 283].

3.      On June 20, 2013, the Court signed two orders adopting the R&R and directing the Receiver to "begin the process of establishing a distribution fund and a claims and interim distribution procedure" [ECF Doc. Nos.290 and 291].

4.      On July 19, 2013, the Receiver filed his First Status Report, which the Court "so ordered" on July 30, 2013 [ECF Doc. Nos. 296 and 297].  Among other things, the Report established (a) August 6, 2013 as the deadline for the Receiver to publish notice of the proof of claims bar date and (b) September 20, 2013 as the bar date to file proofs of claim.

5.      On October 4, 2013, the Receiver filed his Second Status Report [ECF Doc. No. 314].  The Court "so-ordered" the Receiver's Second Status Report and adopted the Receiver's proposals set forth therein on October 28, 2013 [ECF Doc. No. 322].

6.      On February 8, 2014, the Receiver moved the Court for an order (a) Fixing Investor Claims and (b) Authorizing the Receiver to Make an Interim Distribution (the "Distribution Motion") [ECF Doc. No. 355].

7.      On February 24, 2014,the Receiver filed an amended motion for an order (a) Fixing Investor Claims and (b) Authorizing the Receiver to Make an Interim Distribution (the "Amended Distribution Motion") [ECF Doc. No. 370].

8.      On April 18, 2014, the Receiver filed an affidavit which, among other things, further revised the amounts of his proposed first interim distribution as set forth in the Amended Distribution Motion [ECF Doc. No. 422].

9.      On May 6, 2014 the Court entered a memorandum and order (the "May 6th Order") which, *inter alia*, ordered that:

> The Receiver shall distribute funds according to the schedule set forth in the Revised Interim Distribution Schedule. Before distributing any funds to a claimant, however, the Receiver must obtain an affidavit from that claimant swearing to the accuracy of the claim and statements made in connection with the claim.

[ECF Doc. No. 432]

10.      Between May 30, 2014 and June 18, 2014, the Receiver completed the First Interim Distribution by disbursing the aggregate amount of $18,718,060.86 ("First Interim Distribution"). Following the First Interim Distribution, the aggregate unpaid balance of allowed investor claims was $30,952,721.91or 62% of the aggregate allowed claims.

11.      On July 29, 2014, the Receiver filed his Third Status Report [ECF Doc. No. 455]. In the report, the Receiver noted that in addition to the investor claims that were the subject of the First Interim Distribution, the Receiver had received seven additional potential investor claims (the "Additional Claims"). The Receiver recommended, among other things, that the Additional Claims be valued "utilizing the same formulae approved by this Court for the First Interim Distribution" and that the deadline to object to the Additional Claims was set for August 29, 2014.

12.     On August 4, 2014, the Court endorsed the Third Status Report and ordered that "any objections to the Additional Claims shall be filed no later than August 29, 2014" [ECF Doc. No. 459].

13.     The Receiver noted in the Third Status Report that the receivership assets include shares of privately-held companies.  The Receiver further stated he had been in contact with various third-party companies, who specialize in the liquidation of privately-held shares.

## II. RELIEF SOUGHT

14.     The Receiver seeks entry of an order, substantially in the form attached as Exhibit "A", authorizing the Receiver to employ Oxis Capital, Inc. ("Oxis Capital") to analyze and market receivership assets primarily consisting of private securities (the "Securities") and, if necessary, the sale of the Securities through StillPoint Capital LLC ("StillPoint"). The Securities include without limitation the following:

| Security Description | Shares |
|---|---|
| Adexa Inc Ser C Pfd Rstd | 78,740 |
| Calient Networks Inc Series A-1 Pfd Rstd | 20,956 |
| Cidra Corp Class A Com Rstd | 112,054 |
| Cidra Corp Non-Vtg Red Pfd Rstd | 3,305 |
| Cidra Corp Series D Conv Pfd Rstd | 19,700 |
| Ebags Ser B Pfd Rstd | 528,814 |
| Ensim Corp Ser-C Pfd Rstd | 219,808 |
| Intouch Group Inc Ser A Pfd-Rstd | 607,600 |
| Intouch Group Inc Ser B Pfd-Rstd | 128,334 |
| Intouch Group Inc Ser-C Pfd-Rstd | 158,334 |
| Intouch Group Inc Ser D Pfd-Rstd | 113,636 |
| Locus Discovery Inc Series C Pfd | 1,475,055 |
| Locus Pharmaceuticals Inc | 250,000 |

15.     The Receiver has determined that Oxis Capital is qualified and competent to perform the services described herein and the Oxis Capital fees, which have been negotiated, are

reasonable. Marc Winthrop, the principal of Oxis Capital and the responsible person for this engagement, previously co-founded and operated an entity known as Triangle Capital LLC for more than twenty-five years; was the director of the technology investment banking group of Prudential Securities; and prior to Prudential Marc Winthrop was the Vice President at Advantage Capital Partners, a 900 million equity fund. The Oxis Capital brochure is attached hereto as Exhibit "B". The Receiver had approached larger dealer-broker houses such as Duetche Bank Securities and Goldman Sachs but neither would undertake the engagement primarily because they do not sell private securities in the secondary market. The Receiver investigated a smaller firm, which sought a larger monthly fee over a longer period of time but a smaller success fee. The Receiver interviewed Oxis Capital and felt Oxis Capital was qualified and would get this job done on a more expeditious basis.

Terms of Engagement

16.    The terms of Oxis Capital's retention are set forth in the engagement letter (the "Engagement Letter") annexed hereto as Exhibit "C".

17.    As set forth in greater detail in the Engagement Letter, Marc Winthrop will be the individual responsible for performing the services contemplated under the Engagement Letter, which duties include but are not limited to:

    a.    evaluating the Securities and their issuers to ascertain the financial
          health of the issuers, as well as researching the origination of the
          Securities and accompanying documentation;

    b.    developing, compiling and updating on an ongoing basis a list of
          parties, who may be interested in acquiring the Securities;

    c.    developing any additional materials, as necessary, to describe the
          Securities;

     d.       marketing the Securities to appropriate investors; and

     e.       conducting the overall transaction process, including initiating and maintaining contact with potential investors, overseeing due diligence efforts and assisting the Receiver with general transaction process strategy and management.

18.     As set forth in the addendum to the Engagement Letter (the "Addendum"), if the Receiver and the Court agree to a sale of the Receivership Assets such sale may require a licensed dealer-broker.  Marc Winthrop, the principal of Oxis Capital, is a licensed broker dealer and registered representative with StillPoint Capital, LLC, and a FINRA member broker-dealer. Any broker-dealer sales of the Securities would be conducted through StillPoint by Marc Winthrop on behalf of the Receiver. There will be no duplication of services and any fees/expenses paid to StillPoint arising from a sale will be credited against any fees/expenses due Oxis Capital.

Compensation

19.     There are principally two (2) phases of the engagement. First, Oxis Capital will investigate and market the Securities principally to determine the viability of selling same and identifying the market and potential buyers. For this phase of the project Oxis Capital will receive a retainer $10,000 upon approval of the retention, and $5,000 per month commencing with thirty (30) days after entry of the retention order continuing for a period of six (6) months but in no event shall the fee for this phase exceed $35,000.00. Second, if Oxis Capital brings about a Transaction as that term is defined in the Engagement Letter Oxis Capital will receive a success fee of seven (7) per cent of the aggregate amount of the proceeds received by the Receiver. However, in the event a sale of the Securities is conducted through StillPoint any payment to StillPoint in accordance with the Engagement Letter shall be deemed a payment to

Oxis Capital. In addition Oxis Capital is entitled to reimbursement for expenses but may not

incur an expense for any one item that is greater than $1,000 without the Receiver's consent. The

payment of any success fee is subject to Court approval.

Disclosures

20.    In the Engagement Letter and Addendum, Marc Winthrop, Oxis Capital, and

StillPoint represent that they have neither had nor presently have any connection with the

captioned defendants and, therefore, the Receiver believes the parties are disinterested.

21.    In addition to the above, the Receiver has learned that Marc Winthrop, the

principal of Oxis Capital, is an acquaintance of SEC Senior Counsel Mark Salzberg. Mr.

Salzberg advised the Receiver that Mr. Winthrop's children attend the same school and the

Salzberg family has made a small charitable contribution to a non-profit of which Mr. Winthrop

is a board member. Mr. Salzberg was neither involved in the selection process nor the retention

of Oxis Capital/StillPoint.

22.    Further, David J. Margules, a partner at Ballard Spahr Stillman & Friedman, LLP,

Delaware office, had recommended Marc Winthrop as a candidate to Julian Freidman also a

partner at Ballard Sparr firm, New York office. Mr. Friedman represents Deane Marcus and the

Marcus trusts, claimants in this matter. Mr. Margules advised as follows:

"I met Marc Winthrop several years ago when he was the investment banker advising a
company that was in litigation adverse to my client, who was a founder of that company.  We
developed a good rapport.  From time to time, Marc called me to ask me informally for my views
about legal matters in which he had an interest.  I gave him views informally.  I was never
retained by him for any purpose and have never asked for nor received compensation."


CLARRIFICATION OF ORDER [ECF DOC NO. 291]

23.    Pursuant to Order of this Court, ECF Doc No. 291 the Court stated as follows:

"IT IS FURTHER ORDERED THAT neither the Receiver nor any professionals retained or employed by the Receiver shall have or incur any liability to any entity/person for any action taken or omitted to be taken in connection with or related to the preparation, implementation, or administration of the Claims Process except for willful misconduct or gross negligence."

24.     Based upon the Defendants activities in these cases and for clarification purposes the Receiver asks that the liquidation of Receivership Assets including the Securities be deemed part of the "Claims Process". This avoids any misinterpretation that the Receiver and his professionals including Oxis Capital, StillPoint, Marc Winthrop and their respective employees are deemed "professionals" as that term is used in the foregoing decretal paragraph. This is critical to the Receiver and his professionals given the Defendants' activities in this case and the Receiver's ability to retain professionals.

**WHEREFORE**, the Receiver respectfully prays for entry of the annexed proposed Order in pertinent part authorizing the Receiver to employ Oxis Capital Inc. and StillPoint Capital LLC for the purpose of analyzing, marketing and selling the Securities pursuant to the terms and conditions set forth in the Engagement Letter and Broker Dealer Addendum to Letter Agreement attached as Exhibit "C", clarification of this Court's Order ECF Doc No. 291, and such other and different relief as to this court may seem just and proper.

Dated:  New York, New York          S/Ian J. Gazes
        September 29, 2014          Ian J. Gazes, Receiver
                                    151 Hudson St.
                                    New York, New York 10013
                                    (212) 765-9000