Vivian Shevitz
Attorney at Law
46 Truesdale Lake Drive
South Salem, New York 10590
(914) 763-2122
Vivian@shevitzlaw.com

October 6, 2014

Hon. Richard J. Sullivan   (ECF Filing)
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

          Re:  SEC v. Amerindo et al.  05-cv-5231 (RJS)
          <u>Objection to Request (DOC 487) to Hire Oxis Capital and its Broker</u>

Dear Judge Sullivan:

    Defendants object to the Receiver's Request to hiring (at $35,000) Oxis Capital, and its captive broker, Still Point Capital (who will charge 7% commission on top of the fee), to sell "certain" private securities.

    In its original August 2, 2012 opposition to hiring David Ross, who initially evaluated privates and provided a report to the Court (DOC 408, 1/29/2010), the SEC suggested that Mr. Ross should not be authorized to do the work because of some perceived "conflict" in his having done work for Mr. Tanaka and Mr. Marcus previously.  The SEC wanted no hint of a conflict.[1]

    Mr. Gazes reports that Mr. Winthrop, the person chosen to get $35,000 *plus* 7% commission for selling "certain" private equities, is an "acquaintance" of SEC counsel Mark Salzberg, and that Mr. Salzberg who has contributed money to Mr. Winthrop's private charity.  Further, the "recommendation" was made by a partner of Julian Friedman, Mr. Marcus's personal attorney.   There is more than a "hint" of a conflict herein.

---

[1] The August 2, 2012 letter to the Court written by the SEC, FILED as DOC 238, 8/3/12, states:

"Although the Commission staff believes that Mr. Ross is well-qualified and has acquired knowledge of the assets to be administered, we believe that his prior paid representation of Mr. Tanaka in his criminal case and his work for Paul Marcus, an ATGF investor in this case, creates a potential conflict of interest that should be avoided if at all possible.  ... The Commission staff believes that the integrity of the process requires that a neutral receiver with no hint of conflict be appointed for this task. In the Commission staff's view, any appointed receiver could consult with Mr. Ross (on a paid basis, if need be) to obtain the benefit of his accumulated knowledge of the receivership assets."

Further this adviser –liquidator-broker proposes NOT to evaluate ALL the private securities, nor to attempt to sell *all* of them. Rather he proposes to "sell certain" securities – perhaps only those for whom he already has secured a buyer. This is still not an evaluation of private securities, which was the very first task Ordered of a receiver. Yet the receiver proposes to pay Mr. Winthrop $10,000, apparently to continue to look at these private securities, then $5,000 per month, and on top of that an exorbitant 7% commission if his own broker, to whom he proposes an automated transfer, sells these "certain" securities. Defendants object.

It is not necessary to pay anyone to sell private equities (as opposed to valuing them). In the normal course, if one goes directly to the company and asks for other shareholders / investors who might be willing to buy them, it *costs nothing*. Plus, the company can even possibly give the holder an up-to-date evaluation based upon latest company balance sheet data and recent transactions in the securities. Apparently nothing was done in this regard. Defendants could have undertaken this task without creating another expense against the "substitute assets". Or, David Ross could have done so (at $125/hour, a fraction of the price quoted by Mr. Winthrop). Indeed, it is straightforward to examine the private companies list proposed to be sold by Mr. Gazes and Mr. Winthrop now, by comparing them to the valuations reached after a proper examination by David Ross in 2010 (DOC 408 filed in the criminal case, 05 cr 621). Additionally, a portion of what Mr. Gazes/ Mr. Winthrop propose to sell consists of shares of Intouch, allocated to the Mayers. The Mayers had requested that their portion be distributed to them by separate certificate. Amerindo twice passed asked Intouch directly but to no avail.

Additionally as the Court of Appeals stated in *Eberhard v. Marcu*, 530 F.3d 122 (2d Cir. 2008), it is inappropriate to use an SEC proceeding to liquidate a receivership estate. While there were later cases that allowed liquidation, those were Ponzi schemes. As this Court acknowledged at the original sentencing, 2/5/10 this is not a Ponzi case. Moreover, it has not even been determined that complete sale of the portfolio is necessary to fund client redemptions. Liquidation is plainly improper to fund disputed increasing penalties to the defendants. The distress sale proposed by Mr. Gazes, without even evaluating all the private equities, should be denied, and further personnel should not be hired at the expense of the defendants and the "substitute assets." The Second Circuit will take up this appeal in the relative near future. In the meantime investors have obtained some of their funds. This step is not necessary and there is more than a hint of conflict in Mr. Gazes' proposed proceeding.

Finally, there is still a stay of the distribution of "substitute assets" in effect in this SEC case. DOC 38, Second Circuit cases 13-2527, 13-2550 (8/21/13). And, there is a pending appeal in the SEC case, which will challenge the actions taken in this Court concerning these assets as well as the bases for remedies imposed. (Second Circuit 14-2425). While this Court has stated that the government can "make good" financially if it continues to disburse defendants' funds, that notion does not "hold" well, except in theory, when the assets are the *private* equities, which cannot be re-purchased easily. Then there will be no effective recourse.

                                    Very truly yours,
                                    /s/
                                    Vivian Shevitz

Cc: all counsel