**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,**<br><br>**Plaintiff,**<br><br>v.<br><br>**AMERINDO INVESTMENT ADVISORS INC.**, *et al.*,<br><br>**Defendants.** | **05 Civ. 5231 (RJS)**<br><br>**ECF CASE** |

**RECEIVER'S MOTION FOR AN ORDER (A) CLARIFYING THE DESIGNATION OF RECEIVERSHIP ASSETS; AND (B) ENJOINING THE DEFENDANTS AND THEIR REPRESENTATIVES FROM INTERFERING WITH THE COURT'S JURISDICTION OVER THE RECEIVERSHIP ASSETS, INCLUDING IN THE PROCEEDING KNOWN AS "AMERINDO INTERNET GROWTH FUND LTD. (IN OFFICIAL LIQUIDATION)"**

TO:     THE HONORABLE RICHARD J. SULLIVAN
        UNITED STATES DISTRICT JUDGE

Ian J. Gazes, the Court appointed receiver (the "Receiver") in the above-captioned civil case, hereby moves this Court (the "Motion") for entry of an order, substantially in the form annexed hereto as Exhibit "A":  (a) clarifying that the receivership assets (collectively, the "Receivership Assets") are the assets identified in the Order of Forfeiture of Substitute Assets[1], a copy of which is attached hereto as Exhibit "B", [ECF Doc No. 463]; and (b) enjoining the Defendants and their representatives, including counsel to the Defendants, from interfering with this Court's jurisdiction over the Receivership Assets, including, without limitation, the

---

[1] The Receiver is not currently administering the assets  identified in the Forfeiture Order defined as (a) Amerindo Advisors (UK) Ltd. Ret. Benefits Scheme, (b) Amerindo Investment Advisors Inc. Money Purchase Plana and Trust, (c) the right, title and interest of Tanaka in one or more apartment units located at 860 United Nations Plaza, (d) right, title and interest of Vilar in 7 High Coombe Place, Warren Cutting, Kingston Upon Thames, Surrey, England, and (e) the right, title and interest of Tanaka in approximately 32 race horses, which is without prejudice of the Receiver to pursue such assets in the future.

Receiver's recovery of the Receivership Asset in the action entitled  Amerindo Internet Growth

Fund Ltd. (in Official Liquidation)" (the "Cayman Proceeding") for the benefit of Amerindo

investors, without first seeking leave of this Court, respectfully states as follows:

## I. <u>PRELIMINARY STATEMENT</u>

1.      Pursuant to various orders of the Court, the Receiver is empowered to seek, *inter*

*alia*, the recovery, liquidation and turnover of the Receivership Assets, implement an investor

claims process and distribute the Receivership Assets to investors.  In certain instances, however,

the Defendants and their counsel, have attempted to interfere with the Receiver's authority to do

so. For the reasons hereinafter delineated, the Receiver seeks entry of the attached Order

clarifying that the Receivership Assets, wherever held, are the assets defined in the Forfeiture

Order, and are to be broadly defined to include, without limitation, cash or its equivalent,

securities, bonds, depository accounts, claims, causes of action, accounts, escheated assets,

dividends, etc. wherever held for and on account of the following companies:

Amerindo Investment Advisors Inc.
Amerindo Investment Advisors, Inc.
Amerindo Investment Advisors (UK) Ltd.
Techno Raquia, S.A.
Amerindo Management Inc.
Amerindo Technology Growth Fund Inc.
Amerindo Technology Growth Fund II, Inc.
Olafson, Inc.
Amerindo Master Venture Fund LLC

(collectively the "Companies")

2.      In addition, the Receiver hereby requests that the Court enjoin the Defendants and

their representatives from interfering with the Court's jurisdiction over the Receivership Assets[2].

---

[2] The Defendants have previously attempted to interfere with the Receiver's Court ordered duties. For example, in
July 2013, the Defendants sent a letter addressed as "Letter to Our Investors – July 2013", a copy of which is
attached hereto as Exhibit "D", in which the Defendants set forth confusing information about the collection and

Specifically the Receiver requests the foregoing because the Defendants, through Vivian Shevitz

as counsel to Amerindo Technology Growth Fund II, Inc. ("ATGF II"), sent a letter to the

Cayman Liquidators in the Cayman Proceeding, David A.K.Walker, asserting, *inter alia*,

> "…there are substantial issues under U.S. law relating to the legitimacy of the receiver
> and the propriety of his control over foreign assets…"

A copy of the Defendants letter dated September 2, 2014 is attached hereto as Exhibit "C" (the
"Shevitz Letter").

The "assets" referenced by Ms. Shevitz consist of a dividend to be paid by the Cayman

Liquidators in the approximate amount of $4,000,000 (the "Dividend"), which is owed to ATGF

II - a Receivership Asset - and thus under the jurisdiction of this Court.  The Receiver has sought

to recover this asset for the benefit of Amerindo investors.  Due to Ms. Shevitz's conduct, the

Receiver requests that the Court enter the attached order declaring that the Dividend in the

Cayman Proceeding constitutes a Receivership Asset and the Receiver is empowered to seek and

receive a turnover of same[3]. Further the Receiver requests that the Court enjoin the Defendants

and their representatives from taking any action that interferes with the Receiver's duties to

recover and liquidate the Receivership Assets by requiring them to first seek leave of this Court.

## II.  BACKGROUND

### A.      Procedural Background

3.      On October 17, 2012, the Court entered an Order appointing the Receiver and

empowered him "to investigate and determine the value of investor assets that have been seized

---

allocation of the Receivership Assets. This letter argued that the Receiver did not have the right to liquidate the
Receivership Assets, let alone the authority to return the Receivership Assets to the investors, arguments that were
untrue.  The letter was signed by Alberto Vilar and Gary Tanaka, and included after the signature line an
"Appendix" attributed to Vivian Shevitz.

[3] The Receiver requires this finding because the Cayman Island Court is not familiar with the captioned civil matter
and will likely deny the Receiver's request for a turnover of the Dividend because the Defendants assert that it is not
a Receivership Asset.

or frozen pursuant to the post-conviction forfeiture order in the [parallel] criminal case to consider what actions can and should be taken to avoid dissipation of those assets identifying the receivership assets, and to submit a report to the Court regarding his findings and recommendations. Upon receiving his report, the Court will determine whether Mr. Gazes should be empowered to take broader action, such as managing the assets and beginning a claims process for investors." (the "Appointment Order")  [ECF Doc. No. 267].

4.      The Receivership Assets identified in the Forfeiture Order include, without limitation, various assets held in the name of the Companies including, without limitation, the accounts at JP Morgan (the "JP Morgan Accounts"), and Account No. 64524357 (the "SG Account") in the name of Amerindo Technologies Growth Fund held at SG Americas Securities, LLC ("SG").

5.      By Memorandum and Order dated March 11, 2013 (the "March 11th Order"), the Court "reaffirm[ed] its October 17, 2012 Order…appointing Ian Grazes [sic] as receiver" and directed the Receiver to "investigate and determine the value of investor assets and the value of the Individual Defendants' claims to monies that have been frozen pursuant to the restraining order in the criminal case; consider what actions can and should be taken to avoid dissipation of those assets; and submit a report to the Court regarding his findings and recommendations by April 22, 2013" [ECF Doc. No. 272].

6.      On May 30, 2013, the Receiver filed his Initial Report and Recommendations ("R&R") [ECF Doc. No. 283].

7.      On June 19, 2013, the Court signed two Orders (together, the "Claims and Distribution Orders") which, among other things, adopted the R&R and:

(a)  authorized the Receiver to establish a claims distribution fund consisting of the cash and the liquidation proceeds of the public securities held in the JP Morgan Accounts;

(b)  directed that the entities holding on deposit the Miscellaneous Accounts turnover, at the Receiver's written direction, all cash held on deposit in the Miscellaneous Accounts;

(c)  authorized the Receiver to direct the turnover of all cash and other assets held in additional accounts not explicitly identified but nonetheless subject to the Forfeiture Order (the "Additional Accounts") including $4,000,000 attributable to the Amerindo Technology Growth Fund II (the "Cayman Assets"), being held by the liquidators for the Amerindo Internet Growth Fund in the Cayman Islands (the "Cayman Liquidation Proceeding"); and

(d)  provided for the Receiver's retention of additional professionals subject to Court approval.

8.      On July 19, 2013, the Receiver filed his First Status Report which the Court "so ordered" on July 30, 2013 [ECF Doc. Nos. 296 and 297].  Among other things, the First Status Report authorized the Receiver to establish a distribution fund for the benefit of investor claimants.

9.      On August 30, 2013, the Second Circuit Court of Appeals affirmed the convictions of the individual Defendants in the related criminal case, but remanded the case to this Court for resentencing.

10.     On October 28, 2013, the Court "so-ordered" the Receiver's Second Status Report and adopted the Receiver's proposals set forth therein [ECF Doc. No. 322].

11.     On November 22, 2013, the Court entered an Order authorizing the Receiver's retention of the Cayman Island law firm of Solomon Harris in connection with the Cayman Liquidation Proceeding.

12.     On May 6, 2014 the Court entered a Memorandum and Order (the "May 6th Order") which, *inter alia*, authorized the Receiver to make an interim distribution to investor claimants.

13.     On August 4, 2014, the Court endorsed the Receiver's Third Status Report, dated July 29, 2004 [ECF Doc. No. 459].  Among other things, the Third Status Report comprehensively identified all known Receivership Assets including the Dividend and the SG Account.

**B.      The Cayman Liquidation Proceeding**

14.     On or about July 1, 2014, the Receiver's Cayman Island counsel filed a summons in the Grand Court of the Cayman Islands seeking (a) recognition of the Receiver's appointment, and (b) an Order directing the joint official liquidators (the "Cayman Liquidators") of Amerindo Technology Growth Fund Ltd. to distribute to the Receiver all assets due to ATGF II.  ATGF II is a Receivership Asset under the jurisdiction of this Court.

15.     On or about September 2, 2014, Defendants' counsel sent the Shevitz Letter to the Cayman Liquidators regarding the Receiver's recognition application.  On the one hand, the Shevitz Letter generally denies the Receiver's authority over any investor funds, including the Dividend, while, on the other hand, portrays the Defendants' as victims who will inevitably be vindicated as a result of their pending appeals.  Most notably, counsel argues that the vacatur of the Forfeiture Order leaves the Receiver without authority to act and that the Dividend does not constitute a Receivership Asset.  As result of the Shevitz Letter, the Cayman Liquidator has requested further clarification of the Receiver's authority to seek a turnover of the Dividend, and the hearing authorizing the turnover of the Dividend has been adjourned.

**C.      The SG Account**

16.     As part of his attempts to recover Receivership Assets, the Receiver requested a turnover of the funds in the SG Account, an asset specifically delineated in the Forfeiture Order. Although SG has advised the Receiver that it would like to liquidate the securities contained in the account and release the sale proceeds to the Receiver, SG is reluctant to do so because the Court's Claims and Distribution Order only refers to the turnover of "cash" held on deposit in the Miscellaneous Accounts, including the SG Account, and SG is concerned that the Defendants will assert claims against them. Consequently, the Receiver seeks clarification of the Order to include, among other things, securities.

### III.  ARGUMENT

**A.     Clarification of the Appointment Order**

17.     A district court's authority to appoint a receiver is well settled. *See e.g., SEC v. American Bd. of Trade, Inc.*, 830 F.2d 431, 436 (2d Cir. 1987) ("Although neither the Securities Act of 1933 nor the Securities Exchange Act of 1934 explicitly vests district courts with the power to appoint trustees or receivers, courts have consistently held that such power exists"). Moreover, "a court that appoints a receiver has 'jurisdiction to decide all questions of the preservation, collection and distribution of [the] assets' of the entity in receivership." *Eberhard v. Marcu,* 530 F.3d 122, 129 (2d Cir. 2008) (*quoting Chicago Title & Trust Co. v. Fox Theatres Corp.*, 69 F.2d 60, 61 (2d Cir. 1934).  Here, the Appointment Order initially limited the Receiver to investigating and determining the value of investor assets identified in the Forfeiture Order. Thereafter, however, the Court significantly expanded the Receiver's role and authority.  The March 11th Order, the Claims and Distribution Orders, and the Court's endorsement of the First, Second, and Third Status Reports authorized the Receiver, among other things, to object to investor proofs of claims, remit certain and approved interim distributions on account of investor

claims, and to liquidate investor assets previously held and/or controlled by the Defendants including assets not explicitly identified in the Forfeiture Order. Though the Appointment Order refers to the Forfeiture Order, this reference only serves to identify those assets that the Court initially directed the Receiver to investigate and value. Indeed, shortly after the Second Circuit's remand of the criminal case for resentencing, the Court nonetheless approved the Receiver's retention of Solomon Harris for the express purpose of assisting in the turnover of funds held by the Cayman Liquidator.  More recently, the Court endorsed the Receiver's Third Status Report in which the Receiver again described with particularity, the Dividend and the SG Account and his ongoing efforts to secure a turnover thereof for the benefit of investor claimants.  Thus, it is clear that the Court has granted the Receiver authority to secure a turnover of the Dividend as well as the non-cash assets held in the SG Account.

18.     Although the arguments raised by the Defendants in the Shevitz Letter to the Cayman Liquidator are without merit, the Receiver nonetheless submits that clarification of the Appointment Order will only serve to further the efficient administration of the receivership estate.  Aside from the Defendants, SG America has questioned the Receiver's authority to administer the securities held in the SG Account because the account contains securities and not cash.  Therefore, the Receiver requests the entry of an order clarifying, pursuant to the Court's inherent power to effectuate its own orders, that (a) the Receivership Assets consist of all of the Companies' assets, wherever held, and (b) the Receiver is empowered to take any and all steps necessary to recover such assets. The Receiver also seeks authority to pay SG the ordinary and customary brokerage fees/expenses attendant to the liquidation of the securities held at SG without further order of this court.

**B.**     **Injunctive Relief**

19.     Where a receiver has been appointed, the court has authority to issue injunctions to preserve receivership assets.  *See, e.g., SEC v. Byers*, 609 F.3d 87, 91 (2d Cir. 2010) ("[D]istrict courts may issue anti-litigation injunctions . . . as part of their broad equitable powers in the context of an SEC receivership."); *SEC v. Wencke*, 622 F.3d 1363, 1369 (9th Cir. 1980) (same); *Schauss v. Metals Depository Corp.*, 757 F.2d 649, 654 (5th Cir. 1985)  ("[S]everal courts have recognized the importance of preserving a receivership court's ability to issue orders preventing interference with its administration of the receivership property.  In both securities fraud cases and bankruptcy proceedings, Courts of Appeals have upheld orders enjoining broad classes of individuals from taking action regarding receivership property.") (internal citations omitted); *see also*, 28 U.S.C. section 1651(a) ("All Writs Act") ("The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions . . . .")  Here, interference with the liquidation of Receivership Assets is not merely hypothetical but actual.  Accordingly, the Receiver requests that the Court enjoin the Defendants or any person acting on behalf of the Defendants, from taking any action interfering with the taking of control, possession, or management of Receivership Assets by the Receiver in the Cayman Proceeding and require the Defendants and their representatives/counsel to first seek leave of this Court's  before taking any action that may interfere with the Court's jurisdiction over the Receivership Assets and the Receivers duties to take control, possession and liquidation of the Receivership Assets.

WHEREFORE, the Receiver respectfully requests entry of the attached proposed Oder,

and grant the Receiver such other, further and different relief this Court deems just and proper.

Dated: New York, New York                    Respectfully Submitted,
      October 6, 2014                              Gazes LLC

                                                    By:/IAN J. GAZES
                                                   (Receiver)
                                                   151 Hudson Street
                                                   New York, New York 10013
                                                   (212) 765-9000