Vivian Shevitz<br>
Attorney at Law<br>
46 Truesdale Lake Drive<br>
South Salem, New York 10590<br>
914-763-2122<br>
vivian@shevitzlaw.com

September 2, 2014

David A.K. Walker (david.walker@ky.pwc.com) (cathlin.rossiter@ky.pwc.com)
PriceWaterhouse Coopers  (and also by fax: 345 945 4237)
PwCCorporate Finance Recovery
(Cayman) Limited
P.O. Box 219GT
5th Floor – Strathvale House
George Town, Cayman Islands

        Re:  Amerindo Internet Growth Fund Ltd., ("Amerindo Cayman"
          or "Cayman Fund")
          Application of Ian Gazes for Recognition
          Hearing Of September 5, 2014
          Statement of ATGF II, Inc.

Dear Mr. Walker:

  I write in connection with the summons to Amerindo Technology Growth Fund, II , Inc. ("ATGF II"), to which I am counsel, in the Matter of Amerindo Internet Growth Fund Ltd.  Mr. Sam Dawson, of Solomon Harris, sent me a Summons along with the Affidavit of Ian Gazes seeking recognition as receiver for the purpose of receiving a distribution from the Cayman Fund.  Please forward this letter to the Grand Court on behalf of my client, ATGF II, Inc., a Panamanian corporation I now represent *pro bono* in the underlying Securities and Exchange Commission case and in an appeal of the Orders both appointing Ian Gazes, and allowing his control of assets of foreign corporations.

  Specifically I write to request *pro bono* counsel in connection with this matter in the Grand Court because – as discussed below – there are substantial issues under U.S. law relating to the legitimacy of the receiver and the propriety of his control over foreign assets.  The issues

1

are very complicated. Names of investment vehicles and accounts are similar. ATGF II is a corporation that owns a bank account, not a "fund" and not the investor in the Cayman Fund. The receiver and his counsel have not told the whole story. Because the U.S. government has restrained and now seeks to take all of ATGF's (and the Former Directors') assets, ATGF II has no funds to be able to defend their position or litigate it here. (At the same time, legal fees for Mr. Gazes's counsel, Mr. Dawson, are claimed and paid out of the restrained receivership funds (my clients' funds) -- my clients' – which they have been barred from accessing since 2005. Paying for the "other side", but not allowing access, has made it impossible to properly defend or challenge the receiver's position either here or in the United States Courts.

Under United States law, the Orders issued by the District Court appointing Mr. Gazes and permitting him to take certain steps, are "final orders" of the District Court in respect to the litigation of the SEC case at the lower federal court level, but they are *not* "final" as to the parties in the case; rather they subject to timely appellate review by the United States Court of Appeals. (28 United States Code section 1291 (courts of appeals shall have jurisdiction of appeals from all final decisions of the district courts).)

Mr. Tanaka and Mr. Vilar, the individuals ("Former Directors") who were prosecuted here, and their corporate entities, including ATGF II, Inc., have filed timely appeals in both the civil SEC case and in the criminal case: these appeals are pending in the United States Court of Appeals for the Second Circuit. *Securities and Exchange Commission v. Amerindo Investment Advisors Inc. et al.*, 14-2425; *United States v. Vilar*, 14-1452; *United States v. Tanaka*, 14-1453.

Just as the District Court's order imposing "forfeiture" was overturned by the United States Court of Appeals for the Second Circuit (as discussed below), there is a reasonable

probability that the orders in these cases, relied on by Mr. Gazes for recognition here, will be overturned.

### The Merits of Ian Gazes' Application for Recognition

The Grand Court should know that there are major inaccuracies and omissions in Mr. Gazes' affidavit seeking recognition. First, Mr. Gazes describes the source of his authority over the ATGF II assets as a November 9, 2010 Order, which he calls the "Substitute Asset Forfeiture Order." (Gazes affidavit paragraph 14). That Order was an incident of the sentence in the criminal case, *United States v. Vilar and Tanaka*, 05 cr 621, Southern District of New York. The Order has been vacated.[1]

Mr. Gazes did not tell the Grand Court that the November 9, 2010 Order and *all* sentencing orders were overturned by the Court of Appeals. *United States v. Vilar and Tanaka*, 729 F.3d 62 (2d Cir. 2013). (The appeals in that case bear docket numbers 10-521, 10-580, and 10-4639; the defendants specifically appealed the November 10, 2010 forfeiture order.) The Court of Appeals *vacated* forfeiture orders entirely, stating:

> "... we ... remand with instructions to vacate the forfeiture order because, as the government concedes and the District Court itself has confessed, due to arithmetical mistakes, the calculation of the final forfeiture amount was clearly erroneous."39 ... In sum, we remand the cause to the District Court with directions to vacate the sentences of Vilar and Tanaka, and to proceed to resentence the defendants in terms consistent with this opinion.

---

[1]  For the government to have full power over those assets, which include ATGF II and other accounts – in fact, *all* assets of the defendants –a "final order of forfeiture" as to those assets was required. (See Statements of Chief of Asset Forfeiture Sharon Levin, at Hearing on January 10, 2012, pgs. 7, 9, in the joined criminal and civil (SEC) cases.) No such order was ever entered; the US Attorney's office advised the district court it was no longer seeking such an order, and the court denied a final order of forfeiture. DOCUMENT 518, 4/6/12, 05 cv 5231 (Southern District of New York). At a hearing on September 23, 2011 in the SEC case (DOCUMENT 168, 05 cv 5231.), Chief of Asset Forfeiture Sharon Levin told the Court that if the forfeiture were reversed, the defendants would get their property back. (Transcript p.12). This has not happened. Mr. Gazes, as receiver, is asserting a right to those assets, and to exclude the defendants from participating in the distribution, solely by reason of the forfeiture order, which has now been vacated.

| | | |
|---|---|---|
| 08/30/2013 | 228<br>54 pg, 366.58 KB | OPINION, affirming the judgments of the district court and remanding to the district court with instructions to vacate both sentences, by JON, JAC, CJS, FILED.[1029942] [10-521, 10-580, 10-4639] |

The revised sentencing ordered by the Court of Appeals occurred on April 24, 2014. Orders issued in connection with the re-sentencing (including a forfeiture order which does not include specific assets) are being appealed. (Docket Numbers 14-1452 and 14-1453). There is no viable substitute asset forfeiture order, and no Order authorizing seizure or control of the Panamanian assets over which Mr. Gazes exercises control despite the vacatur of the authorization. Thus, both Mr. Gazes' and the District Court's authority to deal with and control the Panamanian assets at issue, and the notion that there is a proper "forfeiture", are being appealed to the United States Court of Appeals as are the sentences imposed in April 2014 in the criminal case. There is no final order authorizing Ian Gazes to act as receiver or control assets of a Panamanian corporation.

Furthermore, even the Substitute Asset Forfeiture Order on which Mr. Gazes relies did not include the Cayman Fund as an asset the government sought to forfeit. In fact, in March 2011, the Chief of Asset Forfeiture told counsel (in an email reproduced in the footnote) that the government was *not* seeking to forfeit the Cayman Fund.[2] An SEC Receiver, therefore, has no basis to obtain that asset.

---

[2] **From:** Levin, Sharon (USANYS) [mailto:Sharon.Levin@usdoj.gov]
**Sent:** Thursday, March 10, 2011 5:24 PM
**To:** scwolfe@hpplegal.com
**Cc:** ndershowitz@lawdea.com; vivian@shevitzlaw.com; Naftalis, Benjamin (USANYS)
**Subject:** Re:
Susan --
**We did not provide the defendants with notice because we are not seeking to forfeit the account.** Rather we are requesting that the Court vacate the restraining order and release the account. The account was never subject to the Order of Forfeiture of Substitute Assets. While we are simply seeking to release the restraint on the account, my understanding is that the account is subject to the Liquidation Proceeding in the Cayman Islands. In the stipulation, the Liquidator agrees to give the Government notice prior to distribution of the funds in the account. .....
- Sharon

There is no assurance here that the *actual* investors *in* the Cayman Fund will receive precisely what is due them.[3] We have no information about the breakdown of payments made or contemplated to be made to investors. Until now, when ATGF II was summoned, the liquidator and Mr. Gazes have kept the individual defendants and counsel in the dark. In fact counsel for Mr. Gazes, in his application for recognition, gave us *redacted* pages 153-155 of the Exhibits to his application, which obscure seemingly important information. Those pages are the Notes of the Hearing before Hon. Chief Justice Smellie on October 17, 2013, concerning this matter. We do not know why. Blocked out, is an apparent entry of an apparent person or entity, in addition to Mr. Gazes, who seeks a distribution, (p.153), as well as a sentence at the end of a description attributable to the Chief Justice, concerning the applicable law governing the recognition of the receiver, and the entire last paragraph of the notes of the hearing, the subject of which is unknown to us therefore. (p.155).

---

**From**: Susan C Wolfe [mailto:scwolfe@hpplegal.com]
**Sent**: Thursday, March 10, 2011 04:06 PM
**To**: Levin, Sharon (USANYS)
**Cc**: Nathan Z. Dershowitz <ndershowitz@lawdea.com>; vivian@shevitzlaw.com <vivian@shevitzlaw.com>
**Subject**:
Dear Sharon,
We have been looking at the Cayman Amerindo stipulation with some consternation, wondering Primarily why we did not get notice of the matter. Could you let us know what the amount involved is; whether the account is specified in the restraining order ( the stip says that the account is not a substitute asset); and why defendants are not parties to the proceedings? Since appellate counsel were not involved in any trial court proceedings on this, could you tell us if the trustee/receiver has succeeded the defendants in interest in some way, and how/when that happened?
Thank you, Susan Wolfe

---

[3] A number of investors of Amerindo Panama have objected to the receiver's methodology of selecting claims to pay and deciding what to pay. See DOCUMENTS filed 8/29/14, *SEC v. Amerindo*, et al., 05 cv. 5231 (Southern District of New York). Other investors do not have lawyers to make objections. The receiver has not looked at the Amerindo books and records to obtain the account information from them. He has changed his methodology completely within a 3-week period. DOCS 355 and 370. Some investors were entirely excluded from the claims process. Further, though the receiver is paying some Amerindo Panama investors out of what he labels "substitute assets", in fact, the United States Court of Appeals, in case 13-2527, by Order dated 8/21/13, ordered a stay of the distribution of "substitute assets." (DOCUMENT 38) ("The motions for stay and for reconsideration are granted only to the extent that they request a stay of the distribution of the substitute assets.")

Only now for the first time, have we had any notice of proceedings in the Cayman Court, with the service of the Summons on my client in the SEC appeal, ATGF II, Inc. We know that ATGF Fund, not the account ATGF II, is the investor in the Cayman Fund (discussed below). Further, we know that there were fees due to Amerindo U.S. (not Amerindo Panama) but there is no indication that such fees are accounted for. Mr. Gazes was never charged with acting for Amerindo U.S. Further, Renata Tanaka was also a creditor because of unpaid interest on her investment. We do not know why the US Attorney or the SEC believes she should be excluded from obtaining her due. She was not prosecuted. She was never found guilty of anything. She is entitled to her investment, especially because the US Attorney specifically *disclaimed* attempting to forfeit the Cayman Fund. Because of the redactions in the documents included as Exhibits to Mr. Gazes' application for recognition (and the lack of any information previously), we do not know whom the SEC or Court intends to pay.

Second, contrary to Mr. Gazes' assertion in paragraph 2 of his affidavit filed July 1, 2014, <u>ATGF II, Inc.</u>, for which Mr. Gazes seeks the right to take and distribute a share of the Cayman Fund, <u>is not itself a fund and was not the investor in the Cayman Fund</u>. The investor in the Cayman Fund the ATGF Inc., an open ended fund incorporated in Panama, which has investors through Amerindo Panama. The Amerindo and Cayman records should show this.

Though the SEC mistakenly thought that ATGF II was a fund, when it first brought the case in 2005, in fact there is *no* ATGF *II* fund.[4] ATGF II is but the name of *bank account* used

---

[4] The SEC apparently *thought* that ATGF II was (like ATGF I) "a fund" when it started this case in 2005, perhaps because, among one of the Amerindo Panama client's papers was a 1985 offering circular for a prospective fund, called "ATGF II". But ATGF II never got off the ground as a fund. There is no investor who presented a claim to Ian Gazes that demonstrates any interest in any fund called "ATGF II", though there are investors in a Panamanian hedge fund managed by Amerindo Panama, called the Amerindo Technology Growth Fund, Inc. (ATGF). ATGF is the investor in the Amerindo Cayman Internet Growth Fund, the company in liquidation. ATGF II was just a bank account that may or may not have been used to transfer funds at any time.

to facilitate trading by Amerindo Panama (also now my client, appealing the Orders of receivership here), as the US Attorney's Office wrote in its brief (p.202) to the United States Court of Appeals for the Second Circuit. (DOCUMENT 235, Appeal 10-521, filed 4/18/2012).[5] That bank account is one of four bank accounts now controlled by Ian Gazes pursuant to orders of the United States District Court for the Southern District of New York now being appealed. Money *from* the bank account may have been transferred for an investment at some point, but the account is not an *investor* in anything. Any transfer *from* the ATGF II account was a transfer for an investment made by some (other) client of Amerindo or to facilitate transfers (booked and accounted for, by a prior SEC Monitor in December 2005) between Amerindo entities.

Re: Sufficient Connection Between ATGF II and U.S. Court To Justify A United States Judge's Appointment of A Receiver over Foreign Assets: A Challenge On Appeal, 14-1425:

Mr. Gazes' affidavit (paragraphs 26-27) addresses the Grand Court's previous ruling (again, defendants and counsel were unaware previously) that it will recognize a foreign receiver

---

There are no investors with any interest specifically in ATGF II's account. As the US Attorney's office and the SEC have acknowledged, "no one particular investor-claimant has an individual interest in the individual substitute assets. Rather, all of the victims and Amerindo investors have a claim against Amerindo as a whole ...." (DOC 512, filed 2/21/12 by Assistant U.S. Attorney Sharon Levin, the Chief of Asset Forfeiture, in *United States v. Vilar*, 05 cr 621 (S.D.N.Y.). "To the best of the SEC staff's knowledge, no individual investor owns any of the accounts or other assets identified in the Substitute Asset Order, nor do any of them possess any right to any specific account or other asset identified in the Substitute Assets Order (including, without limitation, the private securities)." Statement of SEC counsel Mark D. Salzberg, in letter to Court, 2-21-12.

[5]  Case: 10-521   Document: 250   Page: 235   04/18/2012   584510   280
202
... The Government has never argued, however, that the Bear Stearns Accounts contained only GFRDA funds. Indeed, the very names of those accounts — such as ATGF I (Amerindo Technology Growth Fund) and ATGF II (Amerindo Technology Growth Fund II) — bespoke the commingled nature of the funds contained within those accounts. And the Amerindo Technology Growth Fund (or ATGF) was a separate investment vehicle which, for the most part, was invested only in technology stocks and had a separate assortment of private investors. (See, e.g., Tr. 867-69, 872; SA 732-33 (ATGF investor update describing holdings as 93% equities and 7% cash)). As the record makes clear, the Bear Stearns Accounts contained substantial ATGF funds, as well as funds derived from other sources, in addition to the GFRDA funds that were the subject of the instant prosecution.

only if there is "evidence of a 'sufficient connect' between the entity to which the foreign receiver has been appointed (Mr. Gazes states it is ATGF II, Inc.), and the jurisdiction in which that receiver has been appointed [the United States District Court for the Southern District of New York.] Mr. Gazes quotes allegations from the SEC's amended complaint and accepts the allegations as if proven. He states that "in [his][ view the above shows a substantial connection between ATGF II and the United States both in the sense of its seat of management and its business activities."

The rulings refusing to dismiss the case against the Amerindo Panama and UK entities are being appealed explicitly on the ground (among others) that the District Court lacked jurisdiction to impose a receivership over Panamanian assets pertaining to foreign claims of investors *not* proven to have been defrauded and not deemed "victims" under the United States securities laws. Hence there is no basis for the SEC to "remediate."

It is important to note that in its October 2013 decision affirming the convictions and vacating the forfeiture order, the United States Court of Appeals significantly limited the government's vast initial charges, brought in 2005, against Amerindo. The charges were already "shrunk" with a report from the SEC Monitor appointed in June 2005, who, in December 2005, exonerated Amerindo U.S., the US Advisory Company (see Gazes affidavit para. 6). [6]

---

[6] The SEC first brought its case in 2005 only against the individuals, Alberto Vilar and Gary Tanaka, and their U.S. Advisory Company, called Amerindo US -- not against a Panama entity or defendants' operations of it. The SEC claimed massive fraud. The SEC Court then *denied* a Receiver but installed a Monitor. After six months, he exonerated Amerindo U.S. by a report he filed in December 2005. DOC 48, Southern District of New York case 05cv5231. Amerindo US was 98% of defendants' business. All $1.2 billion under management was returned to investors. Thereafter, as Ian Gazes writes, the SEC added offshore entities in an amended complaint filed in November 2005. Its authority to do so – to exercise regulatory and enforcement authority over Panamanian and UK securities businesses is challenged in the appeal pending as to the SEC case. (14-2425, appealing denial of Orders premised on DOCUMENTS 352, 353, and 354, Opposition to Disgorgement and Penalties in the SEC case, 05 cv 5231). In the amended complaint the SEC included "ATGF II" and mis-identified it as a "fund."

However, in a submission to the Court in February 21, 2012 (DOCUMENT 201, 05 cv 5231 (SDNY)), Mark Salzberg, counsel for the SEC stated, that the SEC had never looked at the Amerindo records (which were

8

The Court of Appeals ruled (729 F.3d 62 (2d Cir. 2013)) that there were only three investors, as to whom the United States had proved any violation of Untied States securities laws (based on improper disclosures or omissions to disclose, required by United States securities laws). It wrote specifically that any other investors were *not victims* for restitution purposes, in the criminal case (and would not have a right of action in a civil case). (Opinion, footnote 37). Because of this limitation, the vast number of transactions and investors, we have argued, are not within the authority of the SEC to remediate, and thus not amenable to a United States Court's imposition of a receivership to effectuate any such remedy.

In DOCUMENTS 352, 353, and 354, in the SEC Case (SDNY, 05 cv 5231) – the rulings on which are on appeal (14-2425) -- the defendants have argued that based on that limitation by the United States Court of Appeals in *this* case and based on the 2010 ruling of the United States Supreme Court post-dating this prosecution, *Morrison v. National Australia Bank, Ltd.*, 130 S. Ct. 2869 (2010) that the Securities laws of the United States *do not apply* to foreign transactions), the Orders imposing a U.S. receivership over assets *not* involved in a securities law violation are invalid, as the SEC does not have jurisdiction to impose U.S. rules or remedies over foreign securities operations, and exceed the District Court's jurisdiction and authority.

---

housed in the UK, subsequently transshipped to the U.S. Attorney) but knew that the US Attorney had done so, but had not looked at ATGF because it had not been part of government's criminal case. Mr. Salzberg wrote:

> The SEC staff has never seen the full universe of Amerindo's corporate records. In particular, the SEC staff understands that the USAO obtained substantially all of the corporate records concerning the ATGF and GFRDA investment vehicles from Amerindo's former London office -- including investor files containing ATGF and GFRDA account statements (to the extent they exist) -- after the SEC's civil action was stayed. To the extent that a limited sub- set of individual investors have contacted the SEC staff over the years and provided account statements, the SEC staff has forwarded this information to the USAO for inclusion in their submission. The SEC staff notes, however, that it is unable to verify whether any such account statement is, in fact, the last known statement for such investor as each investor merely produced documents in his or her possession.
>
> Moreover, the SEC staff understands that the USAO analyzed GRFDA investor files from Amerindo's London office in connection with the criminal trial but did not do so with respect to ATGF investors as the ATGF investment vehicle was not part of the USAO's case-in- chief.

Further, defendants argue that there is no personal jurisdiction over the foreign corporations or the assets. First, in the SEC's declaration for a certificate of default as to the Amerindo foreign corporations, including ATGF II (SEC DOC 301, 9/10/13), it purported to serve Amerindo Panama, AMI, and the other Panamanian corporations or entities, by providing documents to Gary Tanaka or Alberto Vilar when the SEC and US Attorney, convening with the custodian bank, prevented defendants from accessing and using their moneys to defend. When purported to have been served by the SEC in November 2005, defendants could do nothing to defend. The same is true in this liquidation. When the action commenced, *all* defendants' funds were restrained.

Second, the United States Supreme Court, in a recent decision postdating the initiation of these prosecutions, ruled that there are Constitutional restrictions against a Court exercising general jurisdiction over a foreign entity. In *Daimler AG v. Bauman,* 134 S. Ct. 746, 187 L.Ed. 2d 624, 639-40 (2014), the Court ruled that a foreign defendant is not amenable to jurisdiction over it by a United States court generally ("only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there… [T]he place of incorporation and principle place of business are 'paradig[m] … bases for general jurisdiction.'") Here, the Court and Ian Gazes are purporting to deal with offshore assets of foreign corporations, the business of which was consisted of managing and trading offshore investments, and that the seat of the business was the UK, where Mr. Tanaka resided and worked as chief trader for the Amerindo entities and as the head of the offshore back office (Panama and UK). The ruling rejecting dismissal as against ATGF II and the other corporate entities and their assets, is among those issues pending on appeal in the case in which Mr. Gazes claims to derive authority over foreign corporation ATGF II and its assets.

Need For Pro Bono Counsel: Mr. Gazes' counsel asked in his letter enclosing the summons whether ATGF II intends to have counsel appear. As indicated, I represent it (and defendants) *pro bono* because *all* of the assets of Gary Tanaka and Alberto Vilar, and the corporate entities, are and have been *restrained* since they were arrested in 2005. Aside from amounts borrowed from family and friends, they have been unable to access funds to pay for lawyers for themselves and their corporation, including ATGF II (as well as others at issue in this case). ATGF II most definitely would want to appear with attorneys here, but because of this seizure of funds, cannot retain any attorney. I am not able to appear in the Cayman Islands. We thus ask – through this letter – for the Grand Court to appoint a *pro bono* lawyer.

Very truly yours,

/s/

Vivian Shevitz

Cc: Sam Dawson (SDawson@solomonharris.com)
   Solomon Harris
   FirstCaribbean House
   PO Box 1990
   Grand Cayman KY1-1104   Cayman Islands

   Ian Gazes  (by email)

  Robert J. Rosenberg  (Robert.rosenberg@lw.com)
  Michael J. Riela  (Michael.riela@lw.com)
  Lathan & Watkins LLP
  885 Third Ave. Suite 1000
  New York, New York 10022
      (RE: Chapter 15 case 07-10327 (RDD), Cayman Internet Growth Fund Ltd.)

  Sharon Levin, AUSA (by email)
  Neal Jacobson, SEC counsel (by email)
  Mark Salzberg, SEC counsel (by email)
  Mr. Humes, SEC counsel (by email, humesr@sec.gov).