# AMERINDO INVESTMENT ADVISORS (PANAMA)

## LETTER TO OUR INVESTORS - JULY 2013

To Our Investors:

*What is the current status of our investment capital ?*  Nearly $50 million has been on deposit, sitting unmanaged and without earning interest after our forced closure in May 2005 by the United States Attorney in the Southern District of New York (DOJ, for "Department of Justice") and the Securities and Exchange Commission (SEC) (together, "The Feds").

*Will we ever receive full recovery for our investments ?*  Throughout our ordeal we have always declared our intention to pay our clients their full redemptions: that is, the balance on our books at May 2005. This includes any catch-up interest due on all fixed-rate deposits up until that cut-off date. The Feds have made this straight-forward task impossible so far. Fortunately, the vast majority of our private clients have already received more, if not vastly more, than their original balances invested with us.

*Why am I ineligible for any further returns on my investment past May 2005 ?*  Because of the illegal *de facto* freeze on your funds by The Feds, Amerindo was constrained from managing your capital for further appreciation after that cutoff. An in-depth investigation in early 2010 highlighted the *indifference* on the part of The Feds (no investment manager was in place while we were constrained from rendering our expertise), if not *neglect*, in that some of the assets were even astoundingly permitted to be declared "abandoned," then seized, by the custodian J.P. Morgan Chase. In addition, it was determined balances over $20 million did not accrue any interest at all -- though we have brought this to the attention of The Feds repeatedly). As a direct consequence, it was calculated on a full evaluation, including private securities, this portfolio *decreased*, in fact, by about $1 ½ million between 2005 and 2010 because of the government's refusal to let us, or anyone else, manage these investments).

*Why didn't we receive our redemption proceeds earlier, if these assets were always intact, as you indicated ?*  Amazingly, it is because the existence of these assets were deemed "not relevant" by the lead DOJ prosecutor (who apparently was concerned if this pot of money were indeed "relevant" it would show that his haste and zeal to convict us was based on patently false assumptions). Without doubt, the prosecutor and the SEC knew about these assets in 2005 when they shut us down. No one seemed to care enough to allow us to pay our investors.

We prepared a precise valuation of those assets for the court's attention in early 2010 (following a nine-month research and analysis--instigated and funded by us despite the fact the Feds had decimated our defense funds). Sadly, no one told the jury about this pot of assets during our criminal trial, which did not commence until late 2008. This fact would have indicated to the jury that, contrary to the Feds' claims, the Amerindo clients referred to by the Feds as "victims" had not lost a penny of their investment (and never had). The very existence of this money continues to be an embarrassment to The Feds, because of their sensational initial public accusation of a Madoff-like "huge Ponzi scheme" on our part, which was a complete fabrication. By hammering on this falsehood they even enticed some of our investors to testify for the prosecution in the "fraud" trial about our contractual relationships.

Since then, the Feds have acted under a "cover-up" mode. Finally, in May 2013, a court-appointed Receiver proclaimed officially that it "appeared" there were "sufficient assets" to pay all our offshore clients all along (even though no one would have imagined a "run on the bank" at the time). Though the Feds have claimed to have been always acting in the interest of our clients, most shockingly they did not have the decency to keep you informed during these over eight past years--to at least to relieve your anxiety-- in revealing the certainty of receiving your still-pending 100% investment proceeds after all this time. Meanwhile, you are still waiting.

*What is the projected payout timetable ?*  Our best guess is that initial payouts will be in your hands early in 2014. An appeal of our conviction was argued in August 2012 after written briefs were submitted. We are still awaiting the decision of the Second United States Court of Appeals (New York). We anticipate a successful outcome, probably by the end of this summer, because this same court released both of us on bail pending appeal, that is, prior to the final decision. This is a concession which is highly unusual. We hope to have wrested official "control" over the funds at that time. We will first need to ascertain and validate the correct amount of our obligations to our clients -- some of whom might have become 'lost' over the intervening years because the Feds, as yet, have not deemed it necessary to even begin the process to evaluate their client claims.

*What is the outlook for the appeal of the criminal convictions and the SEC case against you and Amerindo ?*  We are hopeful of full exoneration along with the return of our 'frozen' funds. At that point we will be

able to start rebuilding our lives after years of incarceration, the loss of our long-established international company and the besmirching of our professional reputations. We will then finally be able to devote our total energies to finish the important task of returning the full investment balances to you.

In closing, it should be obvious to all we did not perpetrate a "fraud," to leave hapless "victims" in our wake. We have included a copy of a recent submission in our legal proceedings. This will give you an overview of recent progress in key legal happenings. We have always tried our best to maximize your investment returns. We only wish we could have avoided this colossal waste of time, and the stagnancy of your investment capital. But we have been caught in the cross-hairs of an unrelenting federal campaign to whitewash an unjustifiable act of the wanton destruction of our business and lives, initiated on false accusations.

Once again, we will return your account balances as of the date we last had control over them, and assure you of our intention and best efforts to accomplish remitting the funds to you as soon as possible.

With best regards,

*Alberto Vilar  /  Gary Tanaka*

\*\*\* Since our release from prison we have been supported by Social Security benefits and the generosity of our friends and family and two of our appellate lawyers. Our legal struggle is maintained by court-appointed counsel and deferred legal compensation. Alberto has lost his remaining New York residence. Gary has not been allowed to go back to his home in London since 2005, not having seen his family, including son Alex, who is now nearly age 17.

*This is anticipated to be the first of a series of informative updates to our investors. We have not contacted you before now because of a combination of Fed intimidation and advice to the contrary from our previous lawyers. Whereas we have attempted to locate all of our clients from our outdated files we apologize for any omissions and oversights. Please assist us by 1) notifying us of any of your recent contact changes (address, phone number, email), and by 2) passing this letter on to any clients you might suspect have slipped out of touch. You can contact us at our specially designated email address, Amerindo.clients@gmail.com. We look forward to any and all of your comments. Please allow for some delays in our responses back to you because of our shortage in staff and resources.*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## APPENDIX: 30 MAY 2013 LETTER FROM VIVIAN SHEVITZ

I am a federal appeals lawyer, former Chief of Appeals of the US Attorney's office, Eastern District of New York (1978-82), representing Alberto Vilar and Gary Tanaka, the founders of Amerindo Investment Advisers Inc., a US Advisory Company of sterling reputation for 25 years. It was shuttered precipitously in May 2005 after 19 armed federal agents executed a secretly-obtained search warrant at Amerindo's New York offices, publicly announced they expected losses in the millions, and arrested my clients, its founders, and trader, on the most tenuous of charges after only 5 weeks' "investigation" on wild allegations -- publicly proclaimed -- that there would be mega-millions of dollars of client losses (because Amerindo was such a successful company). United States v. Vilar and Tanaka, 05 cr 621 (RJS) (SDNY); appeal 10-521 (US Court of Appeals).

Though Mr. Tanaka and Mr. Vilar never lost a dime of any client's money through fraud (though there were of course normal trading losses in the accounts, fully disclosed and accounted for) and in fact *no client* had claimed "fraud," just delayed redemptions, the damage was done. And it is still being done. The SEC and US made sure these men would not be able to defend themselves properly after bankrupting their highly-regarded $1.25 billion US company, Amerindo Investment Advisors, by "simply" asking their big investment bank, then Bear Stearns, now JP Morgan, to just 'hold onto' the Amerindo funds custodied there until and unless the SEC and US Attorney authorized its release. This, it refused to do even now, and I have been "forced" to defend these men without fee because 9 years later, the same prosecutors and SEC lawyers are trying to take all of their assets (without ever proving the "loss" they proclaimed 9 years ago and still proclaim), and force them to execute a release of the government and JP Morgan despite their malfeasance. I am doing this without for no current fees because, although *criminal defendants* are entitled to appointed counsel (and I represent Mr. Vilar on an appointed basis in the Second Circuit), *civil defendants*, in an SEC case, are not entitled to counsel. The government -- with the complicity of the trial judge who has done the prosecutors' work -- has just shifted all the financial/"forfeiture" litigation to the parallel sister "*civil case*" and has refused to release money for them to pay fees to anyone, to take care of their own needs, or for any purpose.

A year into the litigation a different federal judge held that that search was unconstitutional and that the government's theory that "Amerindo" was fraudulent was unsustainable. An SEC Monitor responsibly concluded that all money of the US Advisory clients, institutions and pension funds, was "there", and all US company investors got their money back. There was no need for a Monitor.

Nevertheless, the same prosecutors who drafted the defective and unconstitutional search warrant, and the same SEC lawyer who was present at Amerindo's offices when the unconstitutional search was occurring, have continued to claim these defendants are responsible for millions of dollars of client losses. They *intimidated* everyone around the defendants, including defendants' own lawyers, into "not looking". They intimidated and bullied defendants themselves – and got defense counsel to "buy into" – the threat of yet greater punishment for what they intimated was yet unindicted offshore "fraud."

When, before sentencing in 2010, it came to light (through a defendant-retained expert's analysis of private tech securities held since 2005) that in fact there had been assets in the Amerindo accounts (frozen at JP Morgan) sufficient to have paid out all investors as of 2005, but depreciating since that time because the government never required or arranged for the assets to be managed and refused to allow the defendants to continue managing their own funds -- the prosecutor told the judge that it was "irrelevant" and defendants should be sentenced *as if* there was a fraud and there were losses. Worse, without ever ascertaining the amount of Amerindo customer claims or the amount of assets held frozen, they secured a "restraining order" as to *all* defendants' assets, including UK pensions, pushing through (before I was on the case) a "forfeiture order" that now (on appeal) the government admits is wrong and must be vacated. (Appeal 10-521, US v Vilar, argued at the Second Circuit Court of Appeals August 21, 2012).

Still to this day, the government is trying to bully defendants into giving up their claims against the government. They threaten to hold up an investor claim process – one we've sought for *years* now – unless we sign a provision *releasing* from liability the DOJ, the SEC, and JP Morgan. That process, and evaluation of frozen assets, was and is a necessary step for Mr. Vilar and Mr. Tanaka, because, as we've told the government repeatedly, it would *demonstrate* that client funds were not "lost" or missing. The SEC and DOJ are pouring millions of dollars into the ninth year of this prosecution to hide their wrongdoing, and immunize themselves and JP Morgan, while Amerindo investors whose money has been tied up for years, while their client's funds, and they, are left hanging.

The Second Circuit took the unusual step of granting bail on October 2, 2012. But the trial judge, who worked with the prosecutor in the Southern District of New York's US Attorney's office with him – as unfortunately, Mr. Tanaka's defense counsel also did-- continues to give the prosecutors *carte blanche*.

The latest move -- to which I responded yesterday -- prompted me to reach out for you. To try to pry the accounts loose and grab far more than "investor money" for JP Morgan to do with what it wants, the government got the Court to appoint a receiver. Instead of trying to hold JP Morgan accountable to maximize the assets, he has worked *with* JP Morgan and was set to recommend it continue to hold the assets, continue to run the show, and to set its own fees and expenses. The SEC's and DOJ's position? 'Sure, go ahead, do it'. And if defendants want to have their clients paid, and first have their clients' claims evaluated (for the first time in 8 years), the defendants should have to pay more, *and sign a complete and total release.* We said no. Someone should be watching this. The attached letter was sent to the Court yesterday, concerning the receiver's plan to push the SEC's agenda, with little regard for the defendants' constitutional rights, or for those of defendants' investors.

**UPDATE MAY 30, 2013.** Today the receiver filed the expected report. Stunningly, he still "recommends" employing JP Morgan without its even setting forth its fee structure. More stunning is this: As an obvious afterthought to a report prepared before our anticipatory objection, the receiver inserted, as a footnote, the following, which is the receiver's most important conclusion: *"It is believed that the amount of individual investor claims as of May 25, 2005, the last date on which the various investor accounts were actively managed, can be fixed with certainty, and that there should be sufficient cash and public securities in the investor accounts to pay these claims."*

If this is the case, the government's whole case should fail. The prosecutor and SEC have supported its "fraud" case with the allegation that there would be millions of dollars "missing" and lost. They are wrong. There was no fraud. The government suppressed this evidence and convicted defendants on false accusations. It should report the Receiver's conclusion that assets were there all along to have paid investors as of May 25, 2005 to the Court of Appeals and state it to the press.

These men were prosecuted as if their accounts had been "stolen" when the government knew and knows that there was no loss and no theft. As the Supreme Court wrote in a 1956 opinion, "the dignity of the United States Government will not permit the conviction of any person on tainted testimony; this conviction is tainted, and justice requires that petitioners be accorded a new trial." *Mesarosh v. United States*, 352 U.S. 1, 4-9 (1956) (granting motion of Solicitor General to remand the case to the trial court for further proceedings because it learned of untruthful testimony given before other tribunals by a Government witness.)

This case may be worse than the Ted Stevens prosecution with prosecutors gone wild but with defendants completely cut off from their funds to defend this. This cohort of prosecutors in the SDNY around 2005, have done this before, with the notorious *United States v. Stein*, 541 F.3d 130, 136 (2d Cir. 2008) where the SDNY prosecuted KPMG employees after induced KPMG to stop paying the employees' defense costs, through bullying and intimidation of KPMG. The Second Circuit dismissed the indictment for the government wrongdoing. The same thing ought to be done here. And it should be done by prosecutorial action.

I too am seeking to hold the government and JP Morgan accountable for criminal wrongs. No one will listen. They should. Is anyone watching? I hope someone will look at this.

Please confirm any changes or additions for your address and e-Mail ID to:

Amerindo.clients@gmail.com