UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X

| | | |
|---|---|---|
| SECURITIES and EXCHANGE COMMISSION, | : | No. 05 Civ. 5231 (RJS) |
| | : | |
| Plaintiff, | : | Opposition to Receiver |
| | : | Application to Enjoin |
| --against-- | : | Defendants From Responding |
| | : | To Foreign Court Proceeding |
| AMERINDO INVESTMENT ADVISORS | : | Concerning Assets Not Subject |
| INC., et al., | ; | To Any Valid Court Order |
| | : | |
| Defendants. | : | |

-----------------------------------------------------X

VIVIAN SHEVITZ, ESQ., under penalty of perjury hereby declares:

1.      This declaration is submitted in opposition to the Receiver's motion (DOC 491) for an order (A) "clarifying" the Order appointing him as receiver, apparently *nunc pro tunc,* so that he can apply the "clarified" order in an ongoing Cayman Islands liquidation proceeding, and (B) enjoining the defendants and me, their counsel, from what the Receiver calls "interfering with this Court's jurisdiction over the Receivership Assets, including, without limitation, the Receiver's recovery of the Receivership Asset in the action entitled Amerindo Internet Growth Fund Ltd. (in Official Liquidation) (the "Cayman Proceeding") ... without first seeking leave of this Court ..." [1]

---

[1] A third decretal clause in the Proposed Order (DOC 491-1) also includes an Order that the Receiver should be allowed to pay SG Americas Securities, LLC "or any other custodian of a Receivership Asset, the customary fees and expenses attendant to the liquidation of any Receivership Asset."   The Receiver does not discuss SG's application or objection to the proceeding in the Cayman matter except for referring to it, nor provides any vehicle for discussion of the matter.   Before approving any expenditure the Receiver seeks, he should be required to produce all documents relating to the matter – including SG's opposition to the actions he seeks to take in the Cayman matter, and all filings concerning the assets there. Defendants have been excluded from Notice and an Opportunity to be heard because the government and receiver have withheld all relevant information.

1

2.      At the outset we note that the Receiver's claim that we are improperly "interfering" with his duties ignores three key factors: (1) Defendants have a Due Process right to defend themselves in any action related to this Court's orders; (2) enjoining counsel from exercising Defendant's Due Process rights itself would violate Defendants' right to effective assistance of counsel; and (3) the undersigned defense counsel filed a response in the Cayman Islands proceedings only because and after I was summoned to do so in that court and as such was merely responding to the papers served upon me on the defendants' behalf therein.

3.      The right to defend oneself and be represented by counsel while doing so are two of the most bedrock principles of Constitutional law under both United States law *as well as* the law of the Cayman Islands.  Compare Due Process Clause, Fifth Amend., U.S. Const. ("No person shall be … deprived of life, liberty, or property, [emphasis added] without due process of law."); and Assistance of Counsel Clause, Sixth Amendment, U.S. Const. ("In all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defense."); with Schedule 2, Section 7, Cayman Islands Constitutional Order 2009 ("Everyone has the right to a fair and public hearing in the determination of his or her legal rights and obligations by an independent and impartial court within a reasonable time."); Schedule 2, Section 15 ("Government shall not interfere in the peaceful enjoyment of any person's property and shall not compulsorily take possession of any person's property, or compulsorily acquire an interest in or right over any person's property of any description, exception in accordance with the law…"); and Schedule 2, Section 5, Cayman Islands Constitutional Order 2009 ("Any person who is arrested or detained shall have the right, at any stage and at his or her own expense, to retain and instruct without delay a legal practitioner of his or her own choice, and to hold private communication with him or her, and in the case of a minor he or she shall also be afforded a

reasonable opportunity of communication with his or her parents or guardian; but when a person arrested or detained is unable to retain a legal practitioner of his or her own choice or be represented by a legal practitioner at the public expense in accordance with section 7[2][d], he or she may be represented, and hold private communication with, such person as the court may approve.").[2]

4.      Courts have long held that while "[t]he due process clause does not guarantee to the citizen of a state any particular form or method of state procedure … [i]ts requirements are satisfied if he has reasonable notice and reasonable opportunity to be heard and to present his claim or defense; due regard being had to the nature of the proceeding and the character of the rights which may be affected by it." Dohany v. Rogers, 282 U.S. 362, 369 (1930). Similarly, while the Sixth Amendment's Assistance of Counsel Clause (as well as the analogous provisions of the Cayman Islands' Constitution) relates to criminal prosecutions, not necessarily civil liquidation proceedings, here the liquidation proceedings are directly related not merely to civil proceeding but also to Defendants' related criminal case for which the underlying basis for forfeiture is derived.

5.      As such, under the most basic tenets of Constitutional law – both in the United States and in the Cayman Islands – Defendants Vilar and Tanaka (and their companies) have a fundamental right to defend themselves against the Receiver's actions. This is particularly true where, as will be discussed infra below, the Receiver seeks to liquidate property that: (1) has never been subject to a substitute asset order in this Court; and (2) the only substitute asset order

---

[2]      The defense notes for sake of clarity that citations to "Schedule 2, Section ___, Cayman Islands Constitutional Order 2009," are, upon information and belief, the formal manner in which to cite to the Cayman Islands' Bill of Rights, which is itself incorporated as part of the Cayman Islands Constitution.

that has ever been in place is this Court was vacated by the Second Circuit and never reinstated upon remand and re-sentencing.

6.      Before proceeding further, it is also important to highlight that defendant's assertion of his right to Due Process in the Cayman Islands proceedings was not intended as an act of interference or obstruction.  To the contrary, the reason we responded in the Cayman Islands proceeding was because I was specifically served with a Summons as attorney for ATGF II, Inc., one of the defendants I represent in the appeal of this Court's decisions in 05 Cv. 5231. (Appeal 14-2425).  (See Exhibit 1 hereto, Summons and Amended Summons, along with letter and email sent to Vivian Shevitz by Mr. Gazes' Cayman counsel Solomon Harris)..  Receipt of the Summons, therefore, obligated me to respond.

7.      Notably, Mr. Gazes' Cayman Islands attorneys included the Affidavit that Mr. Gazes submitted to the Cayman Court seeking recognition in that foreign tribunal to accomplish what he states he has a right to accomplish.  (The Gazes affidavit is attached as Exhibit 2 hereto).

8.      The Summons package also included Exhibits to Mr. Gazes' affidavit.  Mr. Gazes' affidavit, together with an Exhibit of a redacted Note of the Cayman Court (Exhibit 3 hereto), suggests there are other claimants to funds whom we do not know, because they were redacted prior to service upon the undersigned.   The affidavit and exhibits reveal that the Cayman Islands Court is concerned about foreign receivers, and is expressing principles echoing those  expressed in Morrison v. National Australia Bank Ltd, 130 S.Ct. 2869 (2010) and more recently in Gucci America, Inc. v. Bank of China, 11-3934 (2d Cir. 9/17/2014) (international comity), discussing Daimler AG v. Bauman, 134 S. Ct. 746 (2014) (Due Process concerns relating to subjecting foreign corporations to a court's general jurisdiction based only on contacts of in-state subsidiary). (Gucci also deals with the requirement of specificity (violation of "clear

and unambiguous" provisions) when seeking to enforce compliance with Court orders with civil monetary penalties and contempt).

9.      Defendants responded to correct some material misstatements made by the receiver in connection with the inquiry of the Cayman Islands Court – first and foremost being an attempt to collect "substitute assets" when no substitute asset order (and certainly not the Order pointed to by Mr. Gazes in his sworn affidavit) is in effect.  As this Court is aware, the Second Circuit remanded Defendants' criminal case with instructions to vacate all of the sentencing orders in this case and then to conduct *de novo* re-sentencings.  See United States v. Vilar, 729 F.3d 62, 99 (2d Cir. 2013) ("The February 8, 2010, and February 10, 2010, judgments of conviction of the District Court are AFFIRMED in all respects, except for the sentences; and the cause is REMANDED to the District Court with instructions to vacate both sentences and proceed to a *de novo* resentencing consistent with this opinion.") (emphasis added).  This Court, of course, is required to follow the Second Circuit's remand order, and in fact vacated all of the sentencing orders and issued new sentences and revised judgments (including a forfeiture order, but not in the amount of the February 2010 sentencing) after remand.  This Court did not reinstate the original substitute asset order, nor issue a new order concerning "substitute assets" in connection with the revised judgments and forfeiture orders.  Mr. Gazes appears nonetheless to have relied upon the original substitute asset order, while at the same time failing to notify the Cayman Islands court that said order had been vacated as a result of rulings by the United States Court of Appeals for the Second Circuit.

10.     As this Court is also aware, the defendants are presently appealing this Court's rulings underlying Mr. Gazes' receivership (Appeal 14-2425), and are also appealing the criminal sentences (Appeals 14-1452, 14-1453).  Such appeal remains pending before the United

States Court of Appeals for the Second Circuit -- a fact which my letter to the Cayman Islands liquidators correctly brings to the attention of the liquidators in the Cayman Islands proceedings.

11.     As to the vacated "substitute asset forfeiture order" to which Mr. Gazes's relied upon for his authority in the Cayman Islands liquidation proceedings, it also should be noted that the Amerindo Cayman Internet Growth Fund is not in fact listed on the substitute asset forfeiture order referenced by Mr. Gazes (DOC 463, 05 cr 621), attached as Exhibit B to Mr. Gazes' motion as DOC 491-2), regardless of whether or not that original order somehow remains in effect.  To the contrary, when defendants expressed surprise that we had not been notified as parties in the SEC case (or the criminal case) when the government originally sought to (in essence) manage those Cayman Islands assets, Sharon Levin stated in an email to present counsel and then-co-counsel, in 2011, that the government was not seeking to forfeit the Cayman Islands account, but was leaving the matter to the Cayman court.  See Email from Sharon Levin, dated, March 10, 2011 (annexed hereto as Exhibit 4).

12.  Further, when ruling that the 2005 search of Amerindo U.S. was unconstitutional in its overbreadth by Order dated 4/7/2007, District Judge Karas specifically mentioned the complete absence of any accusation in *any* of the papers regarding Amerindo Cayman,[3] thus

---

[3] Judge Karas wrote:

> Specifically, the Affidavit alleges wrongdoing involving three investment vehicles – the GFRDA, Rhodes Capital, and the Amerindo SBIC funds – and three potentially tainted accounts – ATGF I, ATGF II, and AMI. It also identifies two suspects and two groups of alleged victims. The warrant application further sets forth facts suggesting that the improper activities involved three of the Amerindo entities, namely, Amerindo U.S., Amerindo U.K. and Amerindo Panama. Notably, however, the warrant application does not mention Amerindo Investment Advisors (Cayman) Limited ("Amerindo Cayman") in conjunction with any of the substantive allegations. Reading the Affidavit broadly, and aggregating the alleged schemes, the Affidavit describes the potential misuse of tens of millions of dollars of Amerindo investor funds.... The overbreadth of such a warrant relative to the

obviating the government's suggestion that it was entitled to documents of any entity except those identified in the supporting papers (DOC 185, ECF pages 36-39,  05cr 621, 4/7/07).[4]

        12.     Given these circumstances, and the fact that there are no final orders in this Court in the SEC case or in the re-sentencing that are not presently subject to appeal,  the receiver's motion to enjoin the defendants and the undersigned from defending their property interests in the Cayman Islands liquidation proceedings is in direct conflict with the Due Process clauses of

---

underlying affidavit is particularly apparent when one compares the monetary value of the alleged misappropriations with the amount of assets managed by Amerindo. While the Warrant application alleges that Vilar and Tanaka misused approximately $25 million in funds, the Warrant Rider authorizes the search and seizure of documents relating to all $1.2 billion in assets managed by Amerindo.

[4] .  To the contrary, Judge Karas ruled there was not even sufficient "evidence" to support a finding that there was probable cause to believe Amerindo was an enterprise (if it was one) that was "permeated with fraud.".  Judge Karas rejected the government's position, stating (ECF DOC 185, p.39):

> Here, however, the warrant application fails to establish that the evidence presented in the application is "just the tip of the iceberg," Burke, 718 F. Supp. at 1140, or that "[Defendant's] operation was, solely and entirely, a scheme to defraud." United States v. Brien, 617 F.2d 299, 307 (1st Cir. 1980).  On the contrary, the Affidavit itself makes no explicit allegation that the Amerindo entities were permeated with fraud. As noted, the Amerindo entities managed approximately $1.2 billion in assets, and it appears that the Government does not contest that some portion of these assets, if not a substantial majority of them, were managed lawfully. Yet, the wrongdoing alleged in the Affidavit touches on but a fraction of those assets. Moreover, the Warrant application sufficiently identifies only two victims of Defendants' alleged conduct. This falls far short of the evidence presented in cases where the all-records exception has been applied, as those cases involved rampant misconduct and little, if any, legitimate business activities.

While this Court ruled that documents seized pursuant to the unconstitutional search would be admissible regardless of the unconstitutional action taken by the government, the factual rulings of Judge Karas have never been disturbed.  These matters will be before the Second Circuit in connection with the appeal of the rulings in this case in that the SEC has continued to act – and has induced its Receiver to act -- as if the original allegations, predating any defense, were 100 % true, when in fact they have been shown flawed.

the United States and Cayman Islands' Constitutions, as well as in indirect conflict with the Assistance of Counsel clauses of these same two Constitutions.   As a result, we respectfully submit that the Receiver's motion to enjoin the defendants and defense counsel from defending against the Cayman Islands liquidation proceedings should be rejected.

13.   Mr. Gazes' "clarifications" in fact ask the Court to change the Receivership orders. These are on appeal. So are the Court's forfeiture orders (and the re-sentences).  This Court has no jurisdiction to modify or change them. Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 58 (1982) ("**The filing of a notice of appeal is an event of jurisdictional significance - it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal**").  See Fed. R. Civ. P. 12.1 (re: motion for relief that is barred by a pending appeal); In re Federal Facilities Trust, 227 F.2d 651 (7th Cir. 1955), and cases at 654–655 (mentioned in the notes to Rule 12.1.)[5]

WHEREFORE, the receiver's motion for injunctive relief should be denied because granting such application would violate the Constitutional rights afforded to the defendants under both the United States and Cayman Islands Constitutions.


Dated:  October 21, 2014

                                        Respectfully submitted,

                                        _____/s/_____
                                        Vivian Shevitz

---

[5] All of the receivership orders up to the time of the Notice of Appeal were identified as Orders 'involved in the appeal." 14-2425 (2d Cir. appeal).  In the criminal case the forfeiture and other sentences are on appeal as well.