UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
SECURITIES and EXCHANGE              :
COMMISSION,                                          :         No. 05 Civ. 5231 (RJS)
                                                                  :         SUPPLMENTARY
                        Plaintiff,                    :         REPLY TO RECEIVER's
                                                                  :         RESPONSE (DOC 500)
        --against--                                  :         ON RECEIVER MOTION
                                                                  :         TO ENJOIN AND CLARIFY
AMERINDO INVESTMENT ADVISORS  :
INC., et al.,                                          ;
                                                                  :
                        Defendants.               :
------------------------------------------------------X

VIVIAN SHEVITZ, ESQ., under penalty of perjury hereby declares:

1.  This declaration is submitted in reply to the Receiver's submission (DOC 500) in response to defendants' objections to his motion to enjoin their participation in the Cayman court and to have the receivership orders "clarified" and to supplement the opposition to his motion.

2.  Mr. Gazes claims he does not seek a "modification" of the receivership orders, but "merely" a "clarification" (DOC 500 p.3 paragraph 5).

3.  Defendants have contested the receivership orders in part on the ground that they were not "clear." As a result, if there is a problem with this Court's prior orders the SEC should address the problem on appeal. This Court does not have jurisdiction to "change" the orders or "clarify" them.

4.  Mr. Gazes then says that in any event, he seeks "clarification" that "the receivership assets include all of the assets listed in the Forfeiture Order, wherever held" (DOC 500 para. 6) or, as he also states it, "the Receiver respectfully requests that the Court enter the proposed Order to clarify that the

1

> Receivership Assets include <u>all of the assets of the Companies (in whatever form held</u>") (*id.*) (parenthetical in original and emphasis added).

5. The problem is, however, that the forfeiture order that "listed" the assets he presently seeks no longer exists because it was vacated by the Second Circuit when the Circuit remanded Vilar and Tanaka's criminal appeal "with instructions to vacate both sentences and proceed to a *de novo* resentencing consistent with" the Circuit's opinion. United States v. Vilar, 729 F.3d 62, 99 (2d Cir. 2013).

6. Thus, regardless how Mr. Gazes characterizes it, since no substitute asset forfeiture order is presently in effect, it appears that Mr. Gazes is actually seeking to obtain a new substitute asset forfeiture order. Of course, the Receiver's role does not include seeking a motion for substitute assets. (Even were it his role, a motion for injunctive relief would not be a proper way to do so.)

7. The receiver now argues that the reference in his motion for injunctive relief to the substitute asset order was "merely definitional". As he puts it.

> While the Order that defined the scope of Receivership Assets referenced the Order of Forfeiture of Substitute Assets (attached to the Motion as Exhibit B), the Receiver respectfully asserts that such reference was merely definitional and that the Second Circuit's subsequent rulings in the parallel criminal action (05 Cr. 621 (RJS)) did not, in any way, modify the scope of the Receivership Assets. [Case 1:05-cv-05231-RJS Document 500 Filed 10/31/14 Page 3-4].

8. This shift in the receiver's argument is a tacit acknowledgment that the substitute asset forfeiture order is no longer in place. It also begs the question: Why didn't he tell the Cayman Court that the substitute asset order was vacated --or was

being referenced only for "definitional" purposes since it had in fact been vacated -- by the Court of Appeals?)

9. There is no substitute asset forfeiture, and the property interests "secured" by that order, must therefore be released.

10. Defendants argue, and believe that the law supports the argument, that they have been deprived of their property without Due Process. Sharon Levin told the SEC court on 9/23/11: ((DOC 168, Tr. p.12) ... "in the event the conviction is reversed <u>or the forfeiture is reversed on appeal the defendants would get their money or property back</u> ..." ECF DOC 168, p.12 (10/21/11). See <u>Republic National Bank of Miami v. United States</u>, 506 U.S. 80 (1992) (when a forfeiture order is overturned, the property subject to forfeiture must be returned.)

11. This eventuality noted by Sharon Levin came to pass. The government has no property interest in the substitute assets. Moreover, there is more property held than is sufficient to cover the legitimate debts of Amerindo Panama to its clients, and the excess should be, and should have been, returned to defendants. Judge Swain recognized at that same hearing: the only "hold" on property that exceeds a restitution amount was the substitute asset forfeiture order.

12. A decision last week by the Second Circuit demonstrates the scrutiny required of "property interests" relied on for a seizure by "attachment". In <u>Hausler v. JP Morgan Chase Bank, N.A.</u>, No. 12-1264 (L) (2d Cir. October 27, 2014), an interpleader action was commenced by JP Morgan, which was holding funds sought by a party with a judgment against a foreign country. The Court of Appeals held that plaintiff, who had a judgment and wanted to attach the property

3

      held by JP Morgan pursuant to the Terrorism Risk Insurance Act, could not attach those funds because the property would have had to have been sent by the foreign debtor to be traceable, and thus seizable.  It was not.

13.    Here, the only basis to seize the property identified in the Substitute Asset Forfeiture Order, and for Mr. Gazes to have that property to "administer", was the substitute asset forfeiture order itself -- an order that has been reversed and vacated.  As a result, the receiver has no authority to hold assets of these defendants "in whatever form held."  Seizure or forfeiture of "all assets" is not an authorized consequence of judgments in their related criminal and civil cases.

14.    Nor is this merely a technical objection; it is about property rights, the right to a release of properties that should not be held, the right to excess,[1] the Constitutions of two nations, and Due Process of Law.

---

[1]    In his initial report to the Court on May 30, 2013 (DOC 283), Ian Gazes reported in a footnote that he believed there would be sufficient assets to pay Amerindo clients on the basis of the last account statements – a basis that made sense and which had been proposed by defendants in a July 27, 2012 submission but rejected without a reason.  If the "method" envisaged by the receiver at the beginning had been adopted there would have been little dispute.  Clients had accepted their account statements (as did the Court of Appeals in its affirmance of the mail fraud conviction, ruling that the government was not required to prove that the Cates account statement was itself false and fraudulent, as the indictment had charged; there was no such proof).
    There would have been little dispute because (as Mr. Gazes is finding out) there are sufficient assets (and there always were) when liquidated to cover debts to investors as of May 26, 2005-- with an excess.
    The possibility that defendants may be entitled to their fees, to their property, has not been "acceptable" to the SEC.  Perhaps concerned with its own liability for destroying Amerindo U.S. in light of the Monitor's exoneration of Amerindo U.S. (DOC 48 05 cv 5231) and Judge Karas' ruling (DOC 185, 05cr621) that the search and seizure on the "enterprise" theory was not even supported by probable cause (*see* Harris v. O'Hare, 12-4350cv (2d Cir. October 30, 2014) (damages for Fourth Amendment violation), the SEC "induced" Mr. Gazes to change his methodology for valuing investor claims after he had filed what he had deemed a fair proposal.  This happened virtually overnight between February 8, and February 24, 2014.  The new methodology incorporates incomprehensible calculations, such as inflated GFRDA interest rates, and one at total variance to investment industry convention – varying the ATGF net asset values

15. Mr. Gazes has no answer to the objection that he did not tell the Cayman Court that the substitute asset forfeiture order was vacated. Nor mentioned that the rulings appointing him were on appeal. Instead, he obfuscates, and as he can't challenge the facts, he attacks the facts' conveyor (me).

16. Mr. Gazes thus argues that I, not he, attempted to mislead the Cayman Court, however nothing I wrote to the Cayman Court is inaccurate.

17. I stated that the Orders are on appeal and are disputed. That is true.

18. It is the Receiver who has attempted to mislead the Cayman Court into believing that it had a right to seize substitute assets when no order was in place, not to mention the Receiver's failure to alert the Cayman Court that the civil orders were presently under appeal.

19. My emails to JP Morgan do not establish interference either. They evince a lengthy history of the Receiver attempting to mislead other entities into believing that no disputes remain in relation to the civil case, when in fact challenges were pending at the time of the emails to JP Morgan (*i.e.,* the prior criminal appeal) and remain pending today (*i.e.*, the present criminal and civil appeals).

---

among the same fund investors. This elicited shock and protest from many clients. And as Mr. Heitkoenig said, it happened almost overnight. (DOC 412 ("On February 8, 2014, the Receiver filed his motion for an order of the Court fixing Investor Claims and authorizing the Receiver to make an interim distribution on account of allowed claims [DOC 355].... Following a review of the Motion by the SEC staff and after "extensive consultation" with the SEC staff, on February 24, 2014, the Receiver filed an Amended Motion ...with a significantly different methodology as to the valuation and resulting distribution but based on the same original claim documentation submitted by investors, which had been filed with the Court and attached to the Receiver's Motion to fix investors' claims (Docket #363)".

The methodology – and Mr. Gazes' authority – are issues now on appeal. Defendants have a Constitutional right to contest the government's, and Mr. Gazes', conduct.

20. Mr. Gazes has overstepped any authority he had, and dishonestly represented the record to the Cayman Court. He has not even begun to deal with the Constitutional challenges raised in our objections, both with respect to United States law, and the law of the Cayman Islands.

21. The Court should deny the receiver's motion to "enjoin" and to "clarify". Instead, this Court should reprimand the receiver – an officer of this Court – for misleading the Cayman Court, for overstepping his role as Receiver, and for attempting to interfere with the defendants' Constitutional right to Due Process of law.

Dated: November 3, 2014

_____/s/_____
Vivian Shevitz