UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>AMERINDO INVESTMENT ADVISORS INC., *et al*.,<br><br>Defendants. | 05 Civ. 5231 (RJS)<br><br>ECF CASE |

### RECEIVER'S OMNIBUS REPLY TO OBJECTIONS TO THE RECEIVER'S MOTION FOR AN ORDER AUTHORIZING AND DIRECTING A SECOND INTERIM DISTRIBUTION

Ian J. Gazes, the Court appointed receiver (the "Receiver") in the above-captioned case, respectfully submits this omnibus reply ("Reply") to the following objections (the "Objections") to the Receiver's motion for an order of the Court authorizing and directing the Receiver to remit a second interim distribution on account of allowed investor claims (the "Second Distribution Motion") (Doc. No. 499):

(a) Defendants' Opposition to Receiver Application for Order Authorizing Second Distribution (the "Defendants' Objection") (Doc. No. 501);

(b) Objections of Marcus Claimants to the Receiver's Motion for a Second Interim Distribution (the "Marcus Objection") (Doc. No. 504);

(c) Lisa and Debra Mayer's Objections to Receiver's Motion for an Order Authorizing and Directing a Second Interim Distribution (the "Mayer Objection") (Doc. No. 505); and

(d) Heitkoenig Claimants Objections to the Receiver's Motion for an Order Authorizing and Directing a Second Interim Distribution (the "Heitkoenig Objection") (Doc. No. 506).

1

**Objections to the Court Approved Valuation Method**

1. On May 6, 2014, the Court entered a memorandum and order (the "May 6th Order") which, among other things, adopted the Receiver's proposed method for valuing investor claims for interim distribution purposes (hereinafter the "NCA Method"). Thus, the Receiver asserts the only issue raised by the Second Distribution Motion is whether the proposed second interim distribution is consistent with the Court approved NCA Method. Nevertheless, the objectants now ask this Court to reconsider the NCA Method based on several arguments that have previously been considered and rejected by the Court. Most notably, the Marcus claimants argue that the NCA Method should be abandoned in favor of a method that largely eschews the factual findings and legal conclusions set forth in the May 6th Order.

2. As an initial matter, the May 6th Order sets a floor on the allowed amount of each investor claim. That is, assuming the receivership realizes sufficient funds, each claimant will receive cumulative interim distributions in an amount no less than the allowed claim amounts set forth on Exhibit A to the Second Distribution Motion. The May 6th Order also provides that if all allowed claims are paid in full or full payment becomes reasonably certain, a new valuation method may be appropriate in connection with the distribution of any surplus funds. This interpretation of the May 6th Order is readily inferred from the Court's subsequent order of October 17, 2014, which relied on the NCA Method in fixing the allowed amount of certain additional investor claims (Doc. No. 495).

3. Notwithstanding the foregoing, the Marcus claimants now argue that the Court contemplated periodic modifications to the NCA Method that would result in upward and downward adjustments to allowed claim amounts. Even assuming that the May 6th Order may be revised during the interim distribution period, none of the objectants have offered a fair and

2

reasonable alternative. In particular, the Marcus claimants propose a revision to the valuation of ATGF based claims that assigns a uniform value to each individual ATGF share. By focusing almost exclusively on the supposed inequitable treatment among ATGF claimants, however, the Marcus claimants essentially ignore the Court's justifications for approving the NCA Method in the first instance.[1] Most notably, the Court noted:

> [N]o matter what ATGF and GFRDA investors were promised or expected, the whole operation was a fraud. The reality is that all investor funds went into a single account that was subsequently pilfered. That kind of commingling and similar treatment is precisely the situation that calls for a *pro rata* distribution of remaining assets based on **each victim's investment amount** [emphasis added]."

May 6th Order, at p. 17 (*citations omitted*). Thus, once the Court determined that all investor funds had been commingled as part of the Defendants' fraud, the claim valuation process became a matter of determining the amount of each claimant's initial investment regardless of investment type.

4. By contrast, the Marcus claimants now seek to retroactively impose a uniform yet essentially arbitrary net asset value to ATGF shares– an approach already proposed to but rejected by the Court – that would result in a substantial increase in the allowed amount of the Marcus claims and substantial reductions of other investor claims. *See* Marcus Objection, Ex. A. In doing so, the Marcus claimants misapprehend the May 6th Order's reference to future modifications of the claim valuation method. Again, the May 6th Order adopts the NCA Method and fixes the amount of allowed investor claims for interim distribution purposes but also acknowledges that a new method for the allocation of any surplus funds above the cumulative

---

[1] The Marcus claimants incorrectly raise the possibility that certain investor claimants may have selectively submitted account statements in an effort to maximize the amount if their claims under the NCA Method. The Receiver notes that all investor claims paid under the first interim distribution were submitted well in advance of the Receiver first proposing the NCA Method. In addition, all investors receiving distributions submitted a declaration under penalty of perjury as to the accuracy of their proofs of claim.

amount of the allowed investor claims may be appropriate. The Receiver asserts, however, that any future consideration of a new valuation method would be limited to the allocation of surplus funds rather than downward revisions to allowed claims already paid. Thus, the Marcus claimants' fear of over-payment is unfounded. Moreover, as a practical matter, the Marcus proposal would open the door to continual re-litigation of settled matters prior to every distribution in the case without advancing the goal of fair and equitable distributions for all investor claimants. Accordingly, the Receiver requests that all objections related to the Court approved NCA Method, including the Marcus Objection, be overruled again.

**The OGCI Overpayment**

5. Without any factual basis, the Defendants insinuate some sort of collusion or other impropriety among the Receiver, J.P. Morgan, and investor claimant, QGCI Nominees Limited in connection with an inadvertent over-payment by J.P. Morgan in connection with QGCI's allowed claim. The Receiver reiterates that this was product of a bank error in carrying out the Receiver's specific payment instructions.[2] Moreover, the bank's inadvertent over-payment is without prejudice to either other claimants or the Defendants as QGCI will not receive any additional interim distributions until such time as the remaining investor claimants have received the same *pro rata* distribution as QGCI.

**Additional Objections of the Heitkoenig Claimants**

6. The Heitkoenig claimants join the Marcus' objection to the Court's adoption of the NCA Method but also raise several issues not related to the Second Distribution Motion which the Receiver will nonetheless briefly address. First, the Heitkoenig claimants seek

---

[2] Although the Receiver's payment instructions to J.P. Morgan denominated all interim distribution amounts in U.S. Dollars, J..P. Morgan misinterpreted the OGCI distribution amount as being denominated in British pounds.

explanation as to why the Receiver has not liquidated that certain account held at J.P. Morgan in the name of The Trustees of the Amerindo Adv. (UK) Ltd. Retirement Benefits Scheme (the "UK Benefit Scheme").  In brief, the UK Benefit Scheme is subject to claims by the Trustee of the UK Benefit Scheme as well as to claims by other participants in the scheme aside from the Defendants.  Because resolution of the ownership of the UK Benefits Scheme is likely to take time and divert resources from the current focus of distributing available funds to investors, the Receiver has deferred determination of the disposition of the UK Benefits Scheme.

7. Second, the Heitkoenig claimants believe there is a shortfall in the funds currently held in the Receivership accounts of $449,986.00.  The Receiver notes that the $21,000,000.00 figure reported in the Receiver's Second Status Report represented an approximate aggregate cash amount held in four J.P. Morgan accounts with the actual figure being $20,976,097.  Of this amount, $20,548,741.00 was held in the ATGF II account which the Receiver has been using as a distribution account.  As set forth in below, there are no unaccounted for funds from the JP Morgan accounts

| | | |
|---|---|---|
| Second Status Report | $ | 20,976,097.00 |
| | $ | 1,071,477.65 |
| Third Status Report | $ | (18,718,060.86) |
| | $ | (206,047.81) |
| Third Status Report | $ | (155,972.46) |
| Third Status Report | $ | 14,400,804.73 |
| **Total Receivership Assets** | **$** | **17,368,298.25** |

| | | |
|---|---|---|
| ATGF II Account Balance | $ | 16,942,215.20 |
| Other JP Morgan Accounts | $ | 426,083.05 |
| **Total JP Morgan Accounts** | **$** | **17,368,298.25** |

9.      Third, it is claimed that Alfred Heitkoenig previously submitted an amended proof of claim which has been ignored by the Receiver.  However, no actual proof of claim was ever filed or received.  Rather, Mr. Heitkoenig submitted a letter to the Court asserting he was entitled to an amount greater than that proposed by the Receiver for the First Interim Distribution. (Doc. No. 431).

## CONCLUSION

**WHEREFORE**, the Receiver respectfully requests overrule each of the Objections, grant the Receiver's Second Distribution Motion, and grant such other and further relief as to the Court deems just and proper.

Dated: New York, New York            GAZES LLC
       November 24, 2014             Attorneys for Ian J. Gazes, Receiver

                                     _/s/ Ian J. Gazes_____
                                     Ian J. Gazes
                                     Gazes LLC
                                     151 Hudson Street
                                     New York, New York 10013
                                     (212) 765-9000